IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br>A Delaware Corporation,<br><br>Defendant. | C.A. No. 05-10990 DPW |

## DECLARATION OF ROBERT P. HART

I Robert P. Hart declare as follows:

1. I have personal knowledge of the following facts and could competently testify as to the truth of each statement if called as a witness.

2. I have been employed by Harman International Industries, Incorporated ("Harman). I have been employed with Harman for 4 years, as its Chief Intellectual Property Counsel. I am also a licensed and practicing attorney, duly authorized to practice law in California (under the multi-jurisdictional practice rules), Illinois, Oklahoma and Washington, D.C., and I am a member in good standing of those bars.

3. Harman International Industries, Incorporated ("Harman") is a Delaware corporation with corporate headquarters in Washington, D.C. Harman also has a principal place of business in Northridge, California.

4. Harman does not make, use, sell, offer for sale or import any automobile navigation system products in Massachusetts.

5. Harman is a leading manufacturer, distributor, and retailer of consumer electronic products, who prides itself on making the best audio and video products in the world.

6. Harman's subsidiary Harman Becker Automotive Systems GmbH and Harman Becker Automotive Systems, Inc. makes and sells automobile navigation system products for original equipment manufacturers ("OEMs"), also known as automobile manufacturers.

7. Harman's wholly owned subsidiary Lexicon, Inc. ("Lexicon"), is incorporated in Massachusetts. Lexicon does business as Harman Specialty Group, and makes high end loud speakers marketed under the Revel® brand; high end, home theater audio electronic components (digital audio processors, power amps, receivers, and DVD/CD disk players) marketed under the Lexicon® brand name; and high end, home theater audio electronic products (amplifiers, controllers, preamplifiers and CD players) sold under the Mark Levinson® brand name.

8. Lexicon does not make, use, sell, offer for sale, or import any automobile navigation system products.

9. Harman's wholly owned subsidiary Madrigal Audio Laboratories, Inc., ("Madrigal") is incorporated in Delaware – not Massachusetts. In any event, prior to July 1, 2003, Madrigal sold high end, home theater audio and visual products under the Madrigal® and Proceed® brand names and high end, home theater audio electronic products (amplifiers, controllers, preamplifiers and DVD/CD disk players) under the Mark Levinson® brand name. On July 1, 2003, the assets of Madrigal were transferred to Lexicon and the Proceed® brand name was discontinued. Madrigal continues to exist merely as a shell corporation in Delaware.

10. Madrigal does not now, and has never been involved in the making, using, selling, offering for sale, or importing any automobile navigation system products.

11. I personally participated in the negotiations that occurred between Harman and MIT that followed MIT's March 23, 2003 assertion that Harman's navigation system products infringe United States Patent No. 5,177,685 (the "'685 Patent").

12. Starting on December 12, 2003 and continuing until March 14, 2005, MIT's Robert Swartz represented to me during our negotiations that MIT has not licensed or commercialized the '685 patent.

13. On December 12, 2003, I, along with Harman's European counsel, Dr. Tim Bast, and Harman's outside patent counsel, Meredith Addy, met with MIT's Robert Swartz. This meeting occurred at Robert Swartz's Deerfield, IL office located at 520 Lake Cook Road. Mr. Swartz, during that meeting, he threatened to sue not only Harman, but Harman's customers, including Porsche, by making veiled references to Ray Niro, a well-known patent litigation in Chicago, who often handles patent infringement lawsuits on a contingency fee basis.

14. During the December 12, 2003 meeting, Harman presented its written analyses and a *prima facie* case demonstrating the invalidity of each claim of the '685 patent that MIT had asserted. MIT then asserted 4 additional claims of the '685 patent against Harman.

15. On July 13, 2004, I personally participated in a telephone conference with MIT's Robert Swartz and Ms. Addy. I met with Ms. Addy in Chicago where we contacted MIT's Swartz in his Deerfield, IL office using the Illinois telephone numbers he provided to us.

16. During the July 13th telephone conference, MIT refused to consider Harman's *prima facie* case of invalidity of the '685 patent.

00070513.DOC /

17. MIT's Robert Swartz requested another meeting that was scheduled for August 23, 2004 in Chicago. MIT and Harman agreed meet at Swartz's Deerfield, Illinois office. I insisted that before MIT and Harman met again, MIT needed to provide a written response by MIT's patent counsel to Harman's *prima facie* case of invalidity and non-infringement.

18. By August 23rd, MIT still had not substantively responded to Harman's *prima facie* case of invalidity, unenforceability and non-infringement. The morning of August 23rd, I cancelled the meeting after a telephone conference from Ms. Addy's Chicago office to Mr. Swartz's Deerfield, Illinois office.

19. On November 17, 2004, Harman received MIT's written response from Charles G. Call. Mr. Call's letter further accused Harman of infringement by stating that Harman infringed 24 claims.

20. After considering Mr. Call's letter Harman requested a meeting at Harman's Northridge, California office with MIT. On January 19, 2005, Harman met with MIT's Robert Swartz in California.

21. During the January 19th meeting, Harman again supplemented its written presentation of its *prima facie* case of invalidity with additional arguments addressing the 24 claims that MIT had accused Harman of infringing as well as pointing out that Mr. Call's letter used the wrong legal standards.

22. At this meeting, MIT threatened to sue Harman and Harman's customers, including DaimlerChrysler, BMW, Audi and Porsche. Mr. Swartz mentioned the name of Mr. Joe Grear of the firm Stadheim & Grear. Mr. Grear is also a known litigator who frequently handles patent cases on contingency fee arrangements.

23. Also during the January 19th meeting, MIT's Robert Swartz stated that MIT's "attorneys were chomping at the bit" to get this case.

24. At the close of the January 19th meeting, I agreed to a final meeting with MIT's Robert Swartz. I insisted that the meeting include senior members of MIT in addition to Robert Swartz. Mr. Swartz suggested that Harman tour MIT's Media Lab. The parties agreed to a March 14, 2005 meeting at MIT's Media Lab in Cambridge, Massachusetts.

25. On March 14, 2005, I personally attended a meeting with MIT. In addition to myself, Harman was represented by its general counsel, European IP counsel, the vice president of legal affairs for Harman-Becker, the CFO of Harman-Becker, and Ms. Addy. MIT was represented by Robert Swartz, the executive director of MIT's Media Lab, the associate director of the Media Lab, director of finance and a licensing director of MIT's Media Lab.

26. The March 14th meeting started at approximately 9:30 a.m. (EST). MIT refused to consider Harman's *prima facie* showing of invalidity, unenforceability and non-infringement of the '685 patent. MIT demanded that Harman pay a large royalty. The meeting ended at approximately 10:45 a.m. (EST)

3

27. During the March 14th meeting, MIT demanded that Harman pay an amount that Harman determined to be an unreasonable royalty rate; MIT also threatened that the amount would be "a lot higher" if they [MIT] have to take this to the court system.

28. After the March 14th meeting ended, I called Harman's outside counsel, Kirkland & Ellis, and instructed them to file Harman's complaint against MIT in the Northern District of Illinois.

**I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.**

June 10, 2005

_____
Robert P. Hart

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>  Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br>A Delaware Corporation,<br><br>  Defendant. | C.A. No. 05-10990 DPW |

CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June 2005, I have served the following documents by hand to the attorneys of record for each party:

1. Notice of Appearance of Robert J. Muldoon, Jr. and James W. Matthews;

2. Defendant Harman International Industries, Inc.'s Rule 7.1 Corporate Disclosure Statement (2);

3. Defendant Harman International Industries, Inc.'s Motion to Dismiss;

4. Defendant Harman International Industries, Inc.'s Memorandum in Support of its Motion to Dismiss;

5. Declaration of Robert Hart; and

6. Appendix of Exhibits in Support of Motion to Dismiss.

/s/ James W. Matthews
Robert J. Muldoon, Jr., BBO # 359480
James W. Matthews, BBO# 560560
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110
617-646-2000