## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

### BOSTON DIVISION

| | |
|---|---|
| **MASSACHUSETTS INSTITUTE OF TECHNOLOGY,** | |
| **Plaintiff,** | |
| **v.** | **Case No: 05-10990 DPW** |
| | **Hon. Douglas P. Woodlock** |
| **HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,** A Delaware Corporation, | |
| **Defendant.** | |

## DEFENDANT HARMAN'S REPLY IN SUPPORT OF ITS
## RULE 12(B)(3) MOTION TO DISMISS UNDER THE FIRST-TO-FILE RULE[1]

---

[1]    As filed, Harman moved under Rule 12(b)(2) & (3) to dismiss for lack of personal jurisdiction or under the first-to-file rule. MIT requested broad discovery, much of which had no bearing on the lack of personal jurisdiction over Harman, claiming it could not otherwise respond to Harman's motion. Rather than engage in costly, time-consuming discovery that is unrelated to the merits of the parties' dispute, Harman withdrew only the Rule 12(b)(2) portion of the present motion on June 30, 2005.

MIT's suit here in Massachusetts should be dismissed because it is nothing more than the infringement counterclaim it should have filed in the Illinois suit that Harman brought eight weeks beforehand. It was MIT who centered the parties' dispute in Illinois, not Harman. MIT engaged Robert Swartz—its Manager, Intellectual Property—to assert the patent-in-suit against Harman. MIT Opp. Br., Ex. 3.1 at 2 n.1. MIT concedes that Robert Swartz "lives in Illinois," "assist[ed] MIT in licensing some of its technology, began discussions with Harman about licensing [U.S. Patent 5,177,685] the '685 patent," and "had meetings with Harman in Chicago." MIT Ill. Br. at 2, 4; MIT Opp. Br., Ex. 3.1 at 2 n.1.

MIT also concedes that its Illinois agent repeatedly charged Harman with infringement. MIT Opp. Br. at 5, ¶¶ 7-8. MIT's Illinois agent threatened more than once to sue Harman. *See* MIT Opp., Ex. 3.2 (attaching Harman's Ill. Ex. 6) ¶¶ 13-27. MIT's accusations against Harman and Harman's customers provided the basis for Harman's reasonable apprehension of being sued. *Sierra Applied Sciences, Inc. v. Adv. Energy Indus., Inc.*, 363 F.3d 1361, 1374-75 (Fed. Cir. 2004) (reversing dismissal and finding independent grounds for reasonable apprehension based upon two letters, spaced more than four years apart, that charged infringement and threatened to "aggressively protect [patent] rights"); *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002) (reversing dismissal where patentee informed competitor's customers that competitor was infringing); *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 737-38 (Fed. Cir. 1988) (finding reasonable apprehension where patentee threatened manufacturer and its customer but did not expressly charge infringement).

Only after the parties negotiated for two years in an effort to resolve their dispute without litigation; only after Harman presented multiple, detailed analyses demonstrating the non-infringement, invalidity, and unenforceability of each claim MIT asserted (Compl. at ¶¶ 22-29)

1

while MIT's charges of infringement and threats of litigation became more persistent; only after the parties agreed on a final meeting and Harman negotiated in good faith in that final meeting, just as it had with all prior meetings and communications, even though MIT again refused to address the substance of Harman's analyses; and only after MIT demonstrated in those negotiations that it would continue to demand a royalty from Harman for an invalid patent that was not infringed, did Harman file suit.

Far from being "completely unrelated to the dispute at issue" as MIT claims, MIT Br, at 3, ¶ 2, Illinois is the forum that MIT lured Harman into for commercial purposes. That Harman filed suit in Illinois can neither surprise nor prejudice MIT. Having availed itself of the benefits of Illinois to commercialize its patent, MIT's request to "litigate in its home forum" of Massachusetts is improper gamesmanship. MIT Br, at 3. MIT's suit here belies Federal Circuit law, First Circuit law and the law in this district—law that MIT made no effort to distinguish. *See Genentech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 936 (Fed. Cir. 1993) (vacating dismissal of a first-filed declaratory action and finding that "When the patentee has explicitly charged that a current activity of the declaratory plaintiff is an infringement, 'certainty has rendered apprehension irrelevant, and one need say no more.'"); *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987) ("Where identical actions are proceeding concurrently in two federal courts, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred...."); *Holmes Group, Inc. v. Hamilton Beach/Proctor Silex*, 249 F. Supp. 2d 12, 15 (D. Mass. 2002) ("where two identical actions are pending concurrently in two federal courts, the first-filed action is generally preferred, even if it is a request for a declaratory judgment") (citing *Genentech*, 998 F.2d at 936, 937-38.)

MIT's contrived claims of poverty and inconvenience fall far short of the "oppressiveness and vexation" or "compelling circumstance" that warrant deviation from the first-to-file rule. *See Genentech,* 998 F.2d at 937-38; *GSI Lumonics, Inc. v. BioDiscovery, Inc.*, 112 F. Supp. 2d 99, 104-05 (D. Mass. 2000) (refusing to dismiss or transfer first-filed declaratory action because litigating in the first filed forum was not oppressive or vexatious) (quoting *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 728 (1st Cir. 1996) (internal quotation marks omitted)).

MIT chose Illinois, not Harman. MIT's suit here, which is nothing more than the infringement counterclaim that it should have filed in Illinois, should be dismissed.

## I.    Harman's First-Filed Illinois Action Is Proper And Entitled To Precedence.

MIT disregards the nearly two years of negotiations (including the claim charts Harman provided to MIT that demonstrate invalidity and non-infringement), repeated express charges of infringement and multiple threats of suit, and —facts that MIT has not denied here or in its Illinois filings—that led Harman to file suit. MIT Opp. at 2; *See* MIT Opp., Ex. 3.2 (attaching Harman's Ill. Ex. 6) (MIT "threatened … to take this to the court system."); *See* MIT Opp., Ex. 3.2 (attaching Harman's Ill. Ex. 6) at ¶¶ 13-27. MIT has not denied that it expressly charged Harman with infringement or that such a charge satisfies the actual controversy requirement for Harman's earlier-filed suit. *See Genentech*, 998 F.2d at 936-37; *Sierra Applied Sciences, Inc. v. Adv. Energy Indus., Inc.*, 363 F.3d 1361, 1374-75 (Fed. Cir. 2004) (reversing dismissal and finding independent grounds for reasonable apprehension based upon two letters, spaced more than four years apart, that charged infringement and threatened to "aggressively protect [patent] rights"); *Vanguard Research, Inc. v. Peat, Inc.*, 304 F.3d 1249, 1255 (Fed. Cir. 2002) (reversing dismissal where patentee informed competitor's customers that competitor was infringing). Nor has MIT refuted that absent MIT's charges of infringement, the "totality of circumstances," with or without express threats of litigation, gives rise to an actual controversy. *Arrowhead*, 846 F.2d

3

at 735 (totality of circumstances supported reasonable apprehension where the "[patentees] conduct, including its statements [fell] short of an express charge").[2]

MIT's reliance on *Kleinerman* as compelling deference to this second-filed action is wrong and easily distinguishable. In *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 124-25 (D. Mass. 2000), the parties' negotiations had just begun and the second-filed suit came just two weeks after the first-filed declaratory action. Here, the parties negotiated for two years before Harman filed suit, and MIT filed eight weeks after Harman.. MIT's accusations of "negotiation tactic" and "forum shopping" by Harman are not supported by the record and do not suffice to overcome the strong presumption in favor of Harman's first-filed action. *Genentech,* 998 F.2d at 937-38. Under *Kleinerman*, the 8-weeks that MIT waited after Harman filed suit before filing suit against Harman here is a far cry from the 2-week "reasonable time" the *Kleinerman* court found. *Kleinerman*, 107 F. Supp. 2d at 123. And, MIT concedes, as it must, that Harman did not rush to file suit after MIT "notified Harman of suspected infringement." *See* MIT Opp. at 5, ¶ 7 (admitting that the parties' negotiations "ensued" nearly two years ago, "[b]eginning in 2003" when MIT's Illinois-based "Manager of Intellectual Property" began accusing Harman's *customers* of infringing the patent-in-suit); Harman Br., Ex. D; *Kleinerman*, 107 F. Supp. 2d at 124-25 (declaratory action was precipitously filed where alleged infringer was only recently "notified of suspected infringement").

Further distinguishing *Kleinerman*, MIT does not dispute that Harman negotiated in good faith with MIT for nearly two years before filing suit, including attending several meetings,

---

[2] Harman's reasonable apprehension is fully explained in the Illinois filings. *See* MIT Opp., Ex. 3.1. Neither here nor in Illinois has MIT denied that it expressly charged Harman with infringement or that the totality of circumstances shows Harman was placed in reasonable apprehension of being sued by MIT. The actual controversy issue, fully briefed in the Illinois Action. More importantly, MIT has made no effort here or in Illinois to distinguish the law upon which Harman relies.

4

providing detailed invalidity, non-infringement and unenforceability analyses. *See* MIT Opp. at 5, ¶ 7 and Exs. 3.3 and 3.4. Harman's good faith negotiations refute any accusation that Harman raced to the courthouse. *Kleinerman* at 124 (finding DJ plaintiff "cannot be accused of racing to the courthouse because it negotiated in good faith with [patent owner] for over eight months before filing for declaratory judgment"). MIT makes no showing, as *Kleinerman* requires, that it was negotiating in "good faith." Rather, the "unreasonable" royalty rates that MIT demanded from Harman just before Harman finally filed suit and MIT's steadfast refusal to consider Harman's *prima facie* showings of invalidity, non-infringement and unenforceability suggest otherwise. *See* MIT Opp., Ex. 3.2 (attaching Harman's Ill. Ex. 6) at ¶¶ 14,16-19, 21 and 26.

## II. The Balance of Convenience Does Not Favor Maintaining MIT's Second-Filed Action Here.

MIT candidly admits that it wants to proceed with this second-filed action in Massachusetts because MIT is located here, then urges that it is "more convenient" to litigate here for essentially two reasons: (1) "all" of MIT's evidence is here; and (2) MIT cannot afford to defend itself in a foreign forum. Even if true (which they are not), MIT's reasons do not approach the kind of "special circumstances" required to avoid application of the first-to-file rule. *Biogen, Inc. v. Shering AG.*, 954 F. Supp. 391, 397-98 (D. Mass 1996) (refusing to dismiss a first-filed declaratory action for patent non-infringement in favor of a second-filed infringement case absent a showing of special circumstances) (citing *Genentech v. Eli Lily Co.*, 998 F.2d 931, 937-38 (Fed. Cir. 1993)).

MIT not only fails to substantiate its assertion that "*all* of the information relevant to the case," *all* of the "information relevant to the claims in the case, and the potential witnesses and documents, are *all* located" in Massachusetts, MIT contradicts it. MIT Opp. at 5, ¶ 6; 8 (emphasis added); *see also* MIT. Opp., Ex. 4 at 1-2 (in Illinois, MIT argues that Harman's

evidence is likely to come from California, Michigan and Europe). MIT alleges that this "action involves Harman's automobile navigation products" and that Harman's evidence and "witnesses [are] in Michigan and Europe." MIT Opp. at 10 (emphasis added). MIT admits that the primary inventor of the patent-in-suit (and the most likely source of discoverable information regarding the scope of the invention, conception, and reduction to practice) is located in Canada. MIT Opp. at 5, ¶ 6.

Admittedly, MIT identifies a single potential witness, "an employee of MIT," who appears to be the primary inventor's uninvolved research advisor. *Id.* But the location of MIT's employees is irrelevant. *See Photogen, Inc. v. Wolf,* 2001 WL 477226 at *5 (N.D. Ill. 2001) (transfer denied because "[t]he parties will presumably ensure that [employees] are available to testify wherever the trial is held"). More importantly, MIT offers no reason to depart from the law in this district holding that factors "relat[ing] to ... domicile, the location of employees and witnesses, and the location of corporate officers, among others ... fall well short of any oppressiveness or vexation that would compel this Court to" disregard the strong presumption in favor of the first-filed case. *Biogen,* 954 F. Supp. at 397-98.

Equally unsupported and irrelevant is MIT's claim of poverty. *Iragorri v. Int'l Elevator, Inc.,* 203 F.3d 8, 15, 17 (1st Cir. 2000) ("mere suggestion of greater financial strain is meaningless"). MIT as of 2001 had the sixth largest endowment of all Universities in the United States, totaling over $6 Billion. *See* Ex. 1. MIT's "endowment is only one of many revenue streams." *Id.* At the end of fiscal year 2004, MIT boasted total investments valued at over $7.88 Billion; and during that same year, MIT received over $290 Million in "Cash Gifts." Ex. 1.

Likewise, MIT cannot credibly deny that it derives substantial revenue from its patent licenses, or that its activities are sponsored by major corporations resident in Illinois such as AT&T and Motorola. *See* Ex. 2. MIT's attempt to analogize its fiscal ability and its 12,000 employees (MIT Opp. at 4) to those of the sole individual plaintiff in *Kleinerman*, strains credulity and, at best, understates MIT's wealth and prowess. *See Kleinerman*, 107 F. Supp. 2d at 125 (when assessing the "comparative financial abilities of the parties" the Court compared Marcos Y. Kleinerman, ***an individual***, against *Luxtron Corp., and H.G. Associates*, ***two*** "clearly" more wealthy ***corporate defendants)***.

Litigating in a foreign forum is not unduly burdensome or onerous for MIT, it is "an inevitable cost of doing business." *Kleinerman*, 107 F. Supp. 2d at 125. Not surprisingly, MIT has sued and been sued in courts all across the United States and abroad on many occasions. *See* Ex. 3 (showing MIT has been a party to litigation in N.C., CA, DE, TX, FL, DC, CO, NY, PA, IL, LA, SC, KY). . Allowing MIT's later-filed suit to proceed here would "merely serve to shift the burden rather than to eliminate it." *Kleinerman*, 107 F. Supp. 2d at 126. Accordingly, Harman's first-filed action is entitled to substantial deference and MIT's second-filed suit should be dismissed.

## CONCLUSION

For these reasons, Defendant Harman International Industries, Inc.'s Rule 12(b)(3) Motion To Dismiss Under The First-To-File Rule should be granted.

Dated:  July 29, 2005

Respectfully submitted,


/s/ Courtney A.Clark /s/
Robert J. Muldoon, Jr. BBO# 359480
Courtney A. Clark BBO# 651381
**SHERIN AND LODGEN, LLP**
101 Federal Street
Boston, MA 02110
*Attorneys for Plaintiff*

William A. Streff Jr., P.C.
Michelle A. H. Francis
Jamal M. Edwards
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)
*Of Counsel*

EXHIBIT 1

# MIT Facts 2005

## Financial Data

MIT In Focus
Mission and Origins
Presidents of the Institute
Administrative Organization
· Building MIT's Resources
Academic Schools and Departments
Accreditation
Undergraduate Education
Graduate Education
Research at MIT
Lincoln Laboratory
The Campus
Faculty and Staff
Enrollments 2004–2005
International Students
Admission to MIT
Tuition and Financial Aid
Housing
MIT Computing
MIT Libraries
MIT Press
The Arts
Athletics and Recreation
MIT and the Community
MIT and Industry
Educational Partnerships
Research Alliances
OpenCourseWare
MIT Students after Graduation
Association of Alumni and Alumnae
Geographic Distribution of Alumni/ae
Financial Data
Frequently Asked Questions
*MIT Campus*

**Year-End Statistics, Fiscal Year 2004** (in millions)

**Value of Plant and Invested Assets**

| | |
|---|---|
| Book value of educational plant | $1,563.6 |
| Market value of endowed funds | $5,869.8 |
| Book value of total investments | $6,954.6 |
| Market value of total investments | $7,876.5 |

**Cash Gifts to MIT**

| | |
|---|---|
| Individuals | $163.1 |
| Corporations | $40.7 |
| Foundations | $80.4 |
| Other | $6.2 |
| **Total** | **$290.4** |

**Cash Gift Designations**

| | |
|---|---|
| Faculty chairs | $17.9 |
| Scholarships and other undergraduate aid | $8.5 |
| Undergraduate education and student life | $27.4 |
| Graduate fellowships | $23.8 |
| Research and education programs | $92.3 |
| Construction and renovations | $25.9 |
| Unrestricted | $91.8 |
| Undesignated | $2.8 |
| **Total** | **$290.4** |

**Fiscal Year 2004**
**Operating Expenditures** (in millions)
**Total: $1,839.9 million**



**Fiscal Year 2004**
**Operating Revenues (in millions)**
**Total: $1,832.4 million**



**Massachusetts Institute of Technology**

**TechnologyReview.com**



Print |

MIT's Financial State
By Sally Atwood July/August 2002

Endowment is a powerful thing. It buys faculty, students, and state-of-the art infrastructure and underpins the quality of life on any campus. It announces the wealth of an institution to the world. It's a measure of alumni loyalty and industry confidence. It's the nest egg that helps institutions weather the lean times, but most important, endowments provide financial stability and flexibility that allow institutions to grow and prosper.

Since 1998, MIT's endowment-donations to the Institute combined with returns on investments made with that money-has nearly doubled. As of June 30, 2001, it was valued at $6.1 billion, making it the sixth largest among U.S. colleges and universities. A red-hot economy and an investment strategy that places 40 to 45 percent of the money in alternative investments-in private equity, real estate and hedge funds-secured these gains. But in 2001, the value of MIT's endowment declined, losing 3.7 percent of its investment value. And the losses continue: treasurer Allan Bufferd '59, SM '61, ScD '65, expects the endowment to shrink by another eight percent in the fiscal year ending this June 30.

As the endowment contracts, so does the money available to spend from the return on its investments. And since money paid out of the endowment contributes 35 percent of the Institute's annual operating budget, leaner times are on the horizon. There will be fewer million-dollar lab start-up packages for new faculty in "hot" fields. The new program of Institute-funded fellowships to lure the best graduate students in the world will be trimmed back. And the Institute cannot be as aggressive in offering financial-aid packages that are competitive with those of other top-flight universities.

But the full impact of the endowment's decline will not be felt on campus until fiscal 2004, which starts July 1, 2003. That's because each fiscal year MIT pays out between 4.75 and 5.5 percent of the endowment's average value during the previous 36 months. As the months that include the decline in value are added into that moving average, the amount of money available to spend will decrease. "In fiscal 2003, the financial pressures get a little tighter," says Bufferd. "The year after, if we don't get some recovery in terms of our portfolio, that's a serious question for the Institute.

Deeply serious? No. Serious, yes."

**Life in the Good Times**

The endowment works like a mutual fund with each share
receiving a dividend. Some donors restrict how the money from the
shares can be spent-for student financial aid, for example, or an endowed professorship. Other
shares are unrestricted; the Institute can use returns from them however it sees fit.

In 1998, each share in the endowment was paid $17.55. With the boom years folded into the
moving average, that number jumped to $42 a share for the fiscal year starting this July. Although
that dramatic increase has allowed the Institute to be more aggressive in areas vital to its mission,
increases per share in the coming years will be minimal, thus intensifying competition across the
Institute for general funds.

For the Department of Physics, which depends on general Institute resources to a greater degree
than most departments, the recent increase in return per share has been crucial for attracting new
talent. Last year the department received an estimate of nearly $2 million to build a new lab for an
incoming faculty member. Such start-up packages have accelerated dramatically in recent years at
top-caliber research universities, with million-dollar labs more common than not, according to
Marc Kastner, chair of the department. "The competition is incredible," he says.

The coming tight fiscal years couldn't come at a worse time for physics. A flurry of retirements
will force the department to hire four or five new faculty members a year over the next three years,
and lab start-up packages for them will have to come out of the Institute's general funds. With
intensified competition for a shrinking pool of dollars, physics may not always have the funds to
entice the best new faculty prospects.

For Kastner, good start-up packages are critical to maintaining the physics department's strength.
"We've had five Nobel Prize winners in the last 25 years. That's the result of investments made 40
years ago. We need to be doing the same thing now."

The high payout from the endowment also led to the Presidential Fellowship Program, which
offers the first Institute-funded graduate fellowships in the school's history. Until the program was
established in 1998, graduate fellowships were funded primarily through research grants, so they
required students to begin working on research as soon as they reached campus. Now, first-year
graduate students who have their expenses paid by the presidential fellowships have no research or
work requirements. This means they can take a year to learn about the research in their
departments and then decide what interests them most. The program has been especially important
for physics, which competes against a large group of top-tier schools for graduate students. Having
the first year of graduate school fully funded has attracted stronger students to the department,
Kastner says, because they can focus on academics first and research later.

According to Provost Robert Brown, the Presidential Fellowship Program is the area of greatest
concern across the Institute. "We built it into the budget to be supported internally off general
Institute funds with the expectation of replacing those funds with funds from the endowment raised
specifically for that purpose," he explains. But gifts to endow graduate fellowships have lagged,
and coupled with the decrease in unrestricted monies expected by 2004, that shortfall will force the
fellowship program to scale back.

Financial aid is another area where the huge jump in available funds has made a significant impact. For the academic year 2000-2001, undergraduates received $34.5 million in grants and scholarships. For 2002-2003, that figure has swelled to $42.8 million. Of that, $36.8 million comes from shares in the endowment that are restricted to financial aid and from gifts earmarked for that purpose. The remainder comes from the general, unrestricted funds from the endowment-the same pool that physics depends on.

Making more aid available was not done to offset rising costs, says Elizabeth Hicks, director of student financial services. Rather, it was an attempt to build more-competitive financial-aid packages. "We've made a tremendous effort to decrease what students are expected to borrow and earn," says Hicks. Students are now expected to contribute $5,600 during the academic year, down from the previous $7,600. But that number needs to be even lower, she says. Three of the top schools that compete with MIT for incoming students expect them to contribute less than the Institute does. Stanford University expects students to contribute $5,250, Harvard University $3,250 and Princeton University $2,320.

MIT's aid offerings also tend to be low because the Institute, unlike its competitors, still includes home equity in the financial-need analysis. "Our financial-aid packages are not as generous as our competitors'," says Hicks. "MIT has a lot of catching up to do."

Hicks hopes that, to allay some of the concerns about financial aid, the Institute's current capital campaign will raise enough new money for the endowment to satisfy a larger percentage of the financial-aid budget, reducing her reliance on unrestricted general funds.



### Planning for the Down Times

Looking forward to the fiscal 2004 budget, which will be based on the 36 months that include the endowment's recent losses, the Institute is already taking steps to soften the blow. First, for fiscal 2003, a percentage of the funds that could be spent from the endowment return were not distributed, reserved instead for tighter years-a kind of rainy-day fund. In addition, administrators are employing different budgeting strategies.

"We intimated clearly to everyone who is dependent on general funds that the growth they've seen in prior years is going to decline," says John Curry, MIT's vice president for administration, who collaborates with Brown and Chancellor Phillip Clay, PhD '75, on developing the Institute's operating budget.

Curry has provided financial officers with workshops on how to examine their budgets for ways to increase efficiencies. He also has held back one percent of nonsalary costs in fiscal 2001 and 2002. Other strategies include slightly lower salary increases, less-aggressive growth in financial-aid awards, and reevaluation of positions that open to see if they are necessary or if they can be left at least temporarily unfilled.

The lagging endowment affects tuition as well. In February, President Charles M. Vest HM announced that tuition for 2002-03 will be $28,230, a 4.7 percent annual increase. "There's no doubt that in times when the endowment is increasing, there's less pressure on raising tuition," says Brown.

Still, he says, return from the endowment is only one of many revenue streams that MIT considers when it sets tuition; others include new gifts to the Institute, sponsored research funds and auxiliary enterprises such as residence halls and dining halls. Even with the tuition hike, the Institute will experience a decrease in tuition revenue next year because the incoming class was decreased from 1,033 to 1,000 students to reduce crowding in residence halls.

Is MIT on sound financial footing? Absolutely, says Bufferd. "No institution with an endowment larger than us has outperformed us on an investment return basis in the last five years," he says.

But Bufferd feels that MIT is underendowed. The most telling financial measure, he says, is "not the size of your assets, it's the ratio of assets to your operating budget." The higher this ratio, the healthier and more flexible the institution. With MIT's total financial assets, as of June 30, 2001, weighing in at about $7.3 billion and an operating budget of about $1.4 billion, MIT's ratio is about five or six. By comparison, he says, the ratio at Harvard is eight or nine; at Williams College, it's been even higher. "You see that reflected in other things," he says. For example, in 2000-2001, Williams froze tuition.

The cost of developing science and engineering labs and furnishing them with the latest equipment puts a higher demand on MIT's resources than most other colleges and universities have to contend with. And with the key competitors for incoming students being schools with significantly larger endowments and less-intensive infrastructure demands than MIT, the need to grow the Institute's endowment continues to escalate.

Despite tough economic times, both Brown and Curry are confident that MIT can maintain its position. "The glass is always half full at MIT," says Curry. "I feel enormously positive about it now. When the going gets tough, the best get better, and that puts MIT in a very strong competitive position in bad times."

Brown echoes that confidence. "As an institution, we are able to attract the very best faculty, and our financial aid attracts the very best undergraduates," he says. "As long as we can do those things, we'll be fine."

**Top 10 Endowments, 2001**
*(in millions)*

| School | Endowment |
|---|---|
| Harvard | $17,951 |
| Yale | $10,700 |
| U. of Texas System | $9,364 |
| Princeton | $8,359 |
| Stanford | $8,250 |
| MIT | $6,135 |
| U. of California | $4,703 |
| Emory | $4,316 |
| Columbia | $4,293 |



| Texas A&M U. System and Foundation | $4,031 |

39.678016099195
CATEGORY_KEYWORDS:
UID:- UL: 2 - IE:False/

EXHIBIT 2

# MIT MEDIA LABORATORY SPONSORS



**CORPORATE AND
STRATEGIC RESEARCH
PARTNERS***
BT
Information and
    Communications University
The LEGO Group
Motorola, Inc.
Samsung Electronics Co., Ltd.
Swatch AG
Telmex

**RESEARCH CONSORTIA
AND JOINT PROGRAMS
Center for Bits and Atoms**
Hewlett-Packard
Microsoft Corporation
Sun Microsystems
UPM-Kymmene

**Changing Places**
Salt River Project
State Farm Insurance

**Communications Futures
Program**
Cisco Systems, Inc.
Comcast
France Telecom/Orange
Nokia Corporation
Nortel Networks

**Consumer Electronics Lab**
Best Buy
Corning Inc., Display Group
Seagate Technology
VEIL Interactive Technologies

**Digital Life (DL)**
Banco Bradesco
Bertelsmann AG
Brightstar Corporation
Cisco Systems, Inc.
France Telecom/Orange
Industrial Technology Research
    Institute
Nevengineering, Inc.
Nortel Networks
NTT Comware
Panasonic Technologies
    Company
Philip Morris USA
QUALCOMM Incorporated
Sony Corporation
Stan Winston Studio, Inc.
Telecom Italia LAB

**RESEARCH CONSORTIA
AND JOINT PROGRAMS (cont.)**

**$100 Laptop**
AMD
Google
News Corporation

**SIMPLICITY (formerly
Information Organized)**
AARP
Grupo Estado
Johnson & Johnson Services
Time Inc. Production
US Department of Defense

**Things That Think (TTT)**
Alps Electric Co., Ltd.
American Greetings Corporation
Brother Industries, Ltd.
Canon, Inc.†
Cleanup Corporation
FEI Company
Fraunhofer e.V.
Fujitsu
General Motors
Hewlett-Packard Company
Honda
Intel
International Business Machines
Kaiser Foundation Health Plan, Inc.
Konica Minolta Technology Center,
    Inc.
LG Electronics, Inc.†
Mattel, Inc.
Microsoft Corporation
Nokia Corporation
Ricoh Co., Ltd.†
Sanyo Electric Company, Inc.
Schlumberger
Sensormatic Electronics Corp.
Steelcase Inc.
Sun Microsystems
TOPPAN Printing Co., Ltd.
Toshiba†
Yamaha Corporation
Zebra Technologies

**SPECIAL INTEREST GROUPS
Counter Intelligence**
Cleanup Corporation
**Gray Matters**
AARP
**Silicon Biology / Personal Fabrication**
Toshiba

**SPECIAL FUNDS**
ASCII Corporation
BT
CSK Corporation
Heller Werkstatt
Intel
The LEGO Group
Nortel Networks
NTT Comware
Performing Arts Center of Miami
SEED Foundation
SEGA
Telmex

**RESEARCH CONTRACTS**
Business Design Laboratory
Carnegie Corporation
Alex and Brit d'Arbeloff Fund
Hewlett-Packard Company
NASA
National Institute of Standards & Technology
National Science Foundation
Old Dominion University/NASA
Office of Naval Research
University of Memphis/NSF
University of Michigan/US Army/US Navy
University of Wisconsin/USAF
US Air Force
US Army
US Defense Advanced Research Projects
    Agency
US Navy

**AFFILIATES**
Telenor R&D

**ENDOWMENT AND NAMING GRANTS**
Rudge and Nancy Allen
Asahi Broadcasting Corporation
AT&T Corp.
Armand and Celeste Bartos
Benesse Corporation
BT
Joseph Chung
Alexander W. Dreyfoos, Jr.
Informatix, Inc.
The LEGO Group
LG Electronics, Inc.
MasterCard International
Misawa Homes
Motorola, Inc.
NEC
Isao Okawa
Schlumberger
Sony Corporation
Swatch AG
Telmex
Toshiba
Philippe Villers

March 2005

*Members of all consortia and special interest
groups, with resident researchers.

†Consortium sponsor with resident researcher.

EXHIBIT 3

**Civil Cases**

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 22 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | ncmdce | 1:2004mc00027 | 04/12/2004 | 0 | 06/09/2004 |

ARIAD PHARMACEUTICAL, ET AL vs. ELI LILLY & CO.

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 23 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | candc | 3:1999cv00042 | 01/07/1999 | 830 | 02/26/1999 |

RSA DATA SECURITY vs. BALTIMORE TECH

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 24 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | dedce | 1:2001cv00074 | 02/07/2001 | 830 | 09/18/2001 |

IKOS SYSTEMS INC., ET AL vs. AXIS SYSTEMS INC.

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 26 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | txsdce | 4:2005mc00100 | 03/23/2005 | | 03/31/2005 |

MASSACHUSETTS INSTITUTE OF TECHNOLOGY vs. IMCLONE SYSTEMS, INC.

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 27 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | candc | 3:2000cv00105 | 01/10/2000 | 830 | 01/11/2000 |

RSA SECURITY INC. vs. ENTRUST TECHNOLOGIES

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 28 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | flndce | 1:2002cv00127 | 07/07/2003 | 820 | 08/11/2003 |

ELSEVIER SCIENCE, ET AL vs. CUSTOM COPIES INC, ET AL

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 29 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | txsdce | 4:2005mc00138 | 04/15/2005 | | 06/29/2005 |

MASSACHUSETTS INSTITUTE OF TECHNOLOGY vs. IMCLONE SYSTEMS, INC.

| | | | | | | |
|---|---|---|---|---|---|---|
| 30 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | dcdce | 1:2001mc00263 | 06/25/2001 | 0 | 05/31/2002 |

NANOGEN, INC., ET AL vs. MOTOROLA INC, ET AL

| | | | | | | |
|---|---|---|---|---|---|---|
| 31 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | dcdce | 1:2003mc00265 | 07/02/2003 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 32 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | cofce | 1:2000cv00274 | 05/11/2000 | 118 | |

SWEET, ET AL vs. USA

| | | | | | | |
|---|---|---|---|---|---|---|
| 33 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | cacdce | 2:2003cv00283 | 01/10/2003 | 890 | 03/21/2003 |

ELSEVIER SCIENCE INC, ET AL vs. WESTWOOD COPIES INC, ET AL

| | | | | | | |
|---|---|---|---|---|---|---|
| 34 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | cofce | 1:2000cv00292 | 05/22/2000 | 134 | |

MASSACHUSETTS INSTIT vs. USA

| | | | | | | |
|---|---|---|---|---|---|---|
| 35 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | dcdce | 1:2005cv00294 | 02/08/2005 | 820 | |

BLACKWELL PUBLISHING, INC. vs. HAN

| | | | | | | |
|---|---|---|---|---|---|---|
| 36 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | txwdc | 5:1998cv00299 | 04/08/1998 | 550 | 05/28/1998 |

NELSON vs. SECRETARY OF DEFENSE

| | | | | | | |
|---|---|---|---|---|---|---|
| 37 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | txedce | 5:2001cv00343 | 12/28/2001 | 830 | 06/26/2002 |

MASS INST OF TECH, ET AL vs. GATEWAY, INC., ET AL

| | | | | | | |
|---|---|---|---|---|---|---|
| 38 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | txedc | 5:2001cv00344 | 12/28/2001 | 830 | 11/12/2004 |

MASS INST OF TECH, ET AL vs. ABACUS SOFTWARE, ET AL

| | | | | | | |
|---|---|---|---|---|---|---|
| 42 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | casdc | 3:2000cv00872 | 04/28/2000 | 830 | 07/30/2001 |

NANOGEN INC vs. MOTOROLA INC

| | | | | | | |
|---|---|---|---|---|---|---|
| 44 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | nyndc | 1:2002cv00979 | 07/26/2002 | 350 | |

SEALE vs. NEWELL, ET AL

| | | | | | | |
|---|---|---|---|---|---|---|
| 46 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | candc | 3:2000cv01091 | 03/28/2000 | 830 | 06/30/2000 |

RSA SECURITY INC. vs. IONA TECHNOLOGIES

| | | | | | | |
|---|---|---|---|---|---|---|
| 47 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | paedc | 2:2012md01203 | 12/11/1997 | 465 | |

DIET DRUGS vs. , ET AL

| | | | | | | |
|---|---|---|---|---|---|---|
| 48 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | ilndc | 1:2005cv01481 | 03/14/2005 | 830 | |

HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED vs. MASSACHUSETTS INSTITUTE OF TECHNOLOGY

| | | | | | | |
|---|---|---|---|---|---|---|
| 49 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | candc | 3:1999cv01581 | 04/01/1999 | 830 | 09/02/1999 |

RSA DATA SECURITY vs. NOVELL, INC.

| | | | | | | |
|---|---|---|---|---|---|---|
| 52 | MASSACHUSETTS INSTITUTE OF | ilcdc | 2:2003cv02034 | 02/20/2003 | 820 | 10/10/2003 |

3

TECHNOLOGY

ELSEVIER INC, ET AL vs. PARADIGM BOOKS INC, ET AL

53  MASSACHUSETTS INSTITUTE OF TECHNOLOGY          codce     1:1998cv02062   09/24/1998   830   11/30/1998

PEAK AUDIO, INC., ET AL vs. MA INSTITUTE TECHNOL

## Civil Cases

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 58 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | laedce | 2:2004cv03359 | 12/09/2004 | 190 | 01/06/2005 |

ENG DYNAMICS INC vs. MA INST OF TECH

| | | | | | | |
|---|---|---|---|---|---|---|
| 59 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | candc | 3:1998cv03472 | 09/11/1998 | 830 | 03/24/1999 |

RSA DATA SECURITY vs. SCHLAFLY

| | | | | | | |
|---|---|---|---|---|---|---|
| 61 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | txsdce | 4:1997cv04220 | 12/31/1997 | 830 | 05/05/1998 |

LIFECELL CORPORATION vs. INTEGRA LIFESCIENCES, ET AL

| | | | | | | |
|---|---|---|---|---|---|---|
| 62 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | nysdce | 1:2000cv05141 | 07/13/2000 | 190 | |

CONVOLVE, INC., ET AL vs. COMPAQ COMPUTER CORP, ET AL

| | | | | | | |
|---|---|---|---|---|---|---|
| 65 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | paedce | 2:1996cv05649 | 08/14/1996 | 830 | 11/24/1997 |

ELECTRO-PYROLYSIS vs. INTEGRATED ENVIRONME, ET AL

| | | | | | | |
|---|---|---|---|---|---|---|
| 66 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | cacdce | 2:2004cv06301 | 07/29/2004 | 820 | 11/18/2004 |

ELSEVIER INC vs. OZUNA

| | | | | | | |
|---|---|---|---|---|---|---|
| 67 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | cacdce | 2:2004cv06302 | 03/29/2005 | 820 | |

JOHNS HOPKINS UNIVERSITY vs. UNIGRAPH INC

## Civil Cases

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 161 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | paedce | 2:1998cv20446 | 05/20/1998 | 365 | 06/14/2002 |

LUKE, ET AL vs. AMERICAN HOME PROD., ET AL

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 162 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | candce | 5:2001cv21079 | 09/18/2001 | 830 | 12/05/2002 |

IKOS SYSTEMS, INC. vs. AXIS SYSTEMS, INC.

## Civil Cases

| | Name | Court | Case No. | Filed | NOS | Closed |
|---|---|---|---|---|---|---|
| 164 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY | scdce | 6:2004cv22138 | 09/07/2004 | 830 | 10/25/2004 |

TREXEL INC, ET AL vs. DISPOZO PRODUCTS INC

| | | | | | | |
|---|---|---|---|---|---|---|
| 165 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY ("MIT RESEARCH REACTOR") | kyedce | 3:1995cv00058 | 07/05/1995 | 893 | 01/20/1998 |

USA vs. AAI CORPORATION, ET AL

| | | | | | | |
|---|---|---|---|---|---|---|
| 168 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | nyedce | 0:1995cv03845 | 09/21/1995 | 440 | 09/18/1997 |

HEINRICH, ET AL vs. SWEET, ET AL

**Courtlink:**

| U.S. District - California Northern | 4:02cv5085 | Gateway Inc v. Electronics for Imaging Inc et al | | 06/27/2002 | 08/05/2002 | Active | NOS (830) Patent |
|---|---|---|---|---|---|---|---|
| Defendant The Massachusetts Institute of Technology | | | | | | | |



| U.S. District - California Northern | 5:02cv3141 | Samsung Electronics Co, Ltd et al v. Electronics for Imaging, Inc Et A | 06/28/2002 | 08/26/2002 | Active | NOS : (830) Patent |
|---|---|---|---|---|---|---|
| Defendant The Massachusetts Institute of Technology | | | | | | |

6

8 of 28 DOCUMENTS

**Law Bulletin Publishing Company**

*** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

UNITED STATES DISTRICT COURT

**COUNTY:** COOK COUNTY, ILLINOIS

**PLAINTIFF:** MA INST TECH ET AL

**DEFENDANT:** LIFECALL CORP

**CASE NAME:** MA INST TECH ET AL v. LIFECALL CORP

**CASE NUMBER:** 98C 0001158

**FILING DATE:** 2/24/98

**TYPE:** CIVIL SUIT-OTHER STATUTES-890 OTHER STATUTORY ACTIONS

**ATTORNEY:** KENNETH L BRESSLER

**JUDGE:** KOCORAS





Not Reported in F.Supp.2d
2004 WL 1724632 (S.D.Ind.)
(Publication page references are not available for this document.)
H

Only the Westlaw citation is currently available.

United States District Court,
S.D. Indiana, Indianapolis Division.
ELI LILLY AND COMPANY, Plaintiff,
**MASSACHUSETTS INSTITUTE OF TECHNOLOGY,** and Interneuron Pharmaceuticals, Inc.,
Involuntary Plaintiffs,
v.
TEVA PHARMACEUTICALS USA, INC., Defendant.
No. IP 02-0512-C-B/S.
July 29, 2004.

Dominick A Conde, Fitzpatrick Cella Harper & Scinto, New York, NY, for Plaintiff.

Brian H Corcoran, Katten Muchin Zavis Rosenman, Washington, DC, for Plaintiff.

Donald Knebel, Barnes & Thornburg, Indianapolis, IN, for Plaintiff.

Jeffrey C McDermott, Krieg Devault Alexander Capehart, Indianapolis, IN, for Plaintiff.

Timothy J Vezeau, Katten Muchin Zavis Rosenman, Chicago, IL, for Plaintiff.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW*

BARKER, J.

This case comes before the court, after a bench trial held November 12- 24, 2003, for decision on the issue of patent invalidity under 35 U.S.C. §§ 102 and 103. Plaintiff, Eli Lilly and Company ("Lilly"), filed suit against Defendant, Teva Pharmaceuticals USA, Inc. ("Teva"), for infringement of U.S. Patent No. 4,971,998 ("the '998 patent"). Teva conceded, based on the court's July 21, 2003 Claim Construction ruling, that its generic drug indication infringed Claim 2 of the '998 patent Therefore, the only decision currently before the court is whether the '998 patent is invalid, either as anticipated under 35 U.S.C. § 102 or obvious under 35 U.S.C. § 103. For the reasons explicated below, we conclude that the '998 patent was neither anticipated nor obvious, and is, therefore, valid and enforceable.

*Findings of Fact*

I. *Background* [FN1]

FN1. Unless otherwise indicated, these background facts are taken from the parties' joint submission of Facts That Are Admitted and Will Require No Proof at Trial. (Dkt.# 167.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Search Result                    Rank(R) 1 of 31                    Database
                                                                    LS-ALL

LAWSUIT RECORDS

Current Date:                07/27/2005
Court Last Updated:          07-24-2005
Source:                      CLERK OF THE COURT, SAN FRANCISCO COUNTY SUPERIOR
COURT, CA
Database Last Updated:       09-20-2001

CASE INFORMATION

Case Number:                 SCV 997436
Filing Date:                 08/24/1998

Case Type:                   SUPERIOR CIVIL

Filing Office:               SAN FRANCISCO COUNTY SUPERIOR COURT
Venue:                       SAN FRANCISCO, CA

PARTY INFORMATION

Plaintiff:                   AMERICAN ASBESTOS COMPANY - CROSS COMPLAINANT

Plaintiff:                   HAMILTON MATERIALS INC - CROSS COMPLAINANT

Plaintiff:                   QUINTEC INDUSTRIES INC - CROSS COMPLAINANT

Plaintiff:                   SHANNON CAY SUSAN

Plaintiff:                   SHANNON MICHAEL T

Plaintiff:                   THOMAS DEE ENGINEERING COMPANY - CROSS COMPLAINANT

Defendant:                   4520 CORP INC - CIVIL DEFENDENT
Defendant:                   AMCHEM PRODUCTS INC - CIVIL DEFENDENT
Defendant:                   AMERICAN ASBESTOS COMPANY - CIVIL DEFENDENT
Defendant:                   AMERICAN STANDARD INC - CIVIL DEFENDENT
Defendant:                   ANDERSON ROWE & BUCKLEY - CIVIL DEFENDENT
Defendant:                   AP GREEN SERVICES INC - CIVIL DEFENDENT
Defendant:                   ASTEN GROUP INC - CIVIL DEFENDENT
Defendant:                   A W CHESTERTON COMPANY - CIVIL DEFENDENT
Defendant:                   BLOUNT INC - CIVIL DEFENDENT
Defendant:                   BROWN & ROOT TECHNICAL SERVICES INC - CIVIL
DEFENDENT
Defendant:                   CBS CORPORATION - CIVIL DEFENDENT
Defendant:                   CHEVRON PRODUCTS COMPANY - CIVIL DEFENDENT
Defendant:                   CLEAVER-BROOKS - CIVIL DEFENDENT
Defendant:                   DARCOID COMPANY OF CALIFORNIA - CIVIL DEFENDENT
Defendant:                   DILLINGHAM CONSTRUCTION NA INC - CIVIL DEFENDENT
Defendant:                   DRESSER INDUSTRIES INC - CIVIL DEFENDENT
Defendant:                   DURABLA MANUFACTURING COMPANY - CIVIL DEFENDENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

| | |
|---|---|
| Defendant: | E J BARTELLS CO THE - CIVIL DEFENDENT |
| Defendant: | FLUOR CORPORATION - CIVIL DEFENDENT |
| Defendant: | GARLOCK INC - CIVIL DEFENDENT |
| Defendant: | GENERAL CABLE CORP - CIVIL DEFENDENT |
| Defendant: | GENERAL ELECTRIC CAPITAL CORP - CIVIL DEFENDENT |
| Defendant: | GENERAL ELECTRIC COMPANY - CIVIL DEFENDENT |
| Defendant: | GRAYBAR ELECTRIC COMPANY INC - CIVIL DEFENDENT |
| Defendant: | HAMILTON MATERIALS INC - CIVIL DEFENDENT |
| Defendant: | INTERNATIONAL HARVESTER COMPANY - CIVIL DEFENDENT |
| Defendant: | JOHN CRANE INC - CIVIL DEFENDENT |
| Defendant: | JT THORPE & SON INC - CIVIL DEFENDENT |
| Defendant: | KAISER ALUMINUM & CHEMICAL CORPORATION - CIVIL DEFENDENT |
| Defendant: | KEENAN PROPERTIES INC - CIVIL DEFENDENT |
| Defendant: | **MASSACHUSETTS INSTITUTE** OF **TECHNOLOGY** - CIVIL DEFENDENT |
| Defendant: | METALCLAD INSULATION CORPORATION - CIVIL DEFENDENT |
| Defendant: | MOBIL OIL CORPORATION - CIVIL DEFENDENT |
| Defendant: | NORTH AMERICAN REFRACTORIES CO (NARCO) - CIVIL DEFENDENT |
| Defendant: | OKONITE COMPANY INC THE - CIVIL DEFENDENT |
| Defendant: | OKONITE COMPANY THE - CIVIL DEFENDENT |
| Defendant: | OSCAR E ERICKSON INC - CIVIL DEFENDENT |
| Defendant: | OWENS CORNING - CIVIL DEFENDENT |
| Defendant: | PACIFIC MECHANICAL CORPORATION - CIVIL DEFENDENT |
| Defendant: | PARSONS ENERGY & CHEMICALS GROUP INC - CIVIL DEFENDENT |
| Defendant: | PLANT INSULATION COMPANY - CIVIL DEFENDENT |
| Defendant: | POWER PIPING CO - CIVIL DEFENDENT |
| Defendant: | QUINTEC INDUSTRIES INC - CIVIL DEFENDENT |
| Defendant: | RAPID-AMERICAN CORPORATION - CIVIL DEFENDENT |
| Defendant: | RAYBESTOS-MANHATTAN INC - CIVIL DEFENDENT |
| Defendant: | RILEY STOKER CORPORATION - CIVIL DEFENDENT |
| Defendant: | ROCKBESTOS COMPANY - CIVIL DEFENDENT |
| Defendant: | ROME CABLE CORPORATION - CIVIL DEFENDENT |
| Defendant: | SCOTT CO OF CALIFORNIA - CIVIL DEFENDENT |
| Defendant: | SEARS ROEBUCK & CO - CIVIL DEFENDENT |
| Defendant: | SEQUOIA VENTURES INC - CIVIL DEFENDENT |
| Defendant: | SIMPLEX TECHNOLOGIES INC THE - CIVIL DEFENDENT |
| Defendant: | STEEL GRIP SAFETY APPAREL INC - CIVIL DEFENDENT |
| Defendant: | TEXACO REFINING & MARKETING INC - CIVIL DEFENDENT |
| Defendant: | THOMAS DEE ENGINEERING COMPANY - CIVIL DEFENDENT |
| Defendant: | TRIPLE A MACHINE SHOP INC - CIVIL DEFENDENT |
| Defendant: | UNITED STATES MINERAL PRODUCTS COMPANY - CIVIL DEFENDENT |
| Defendant: | UNIVERSITY MECHANICAL & ENGINEERING CONTRACTORS IN - CIVIL DEFENDENT |
| Defendant: | WR GRACE & COMPANY - CONN - CIVIL DEFENDENT |

TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
ADDITIONAL CHARGES APPLY.

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



*The preceding public record data is for information purposes only and is not the official record.  The fact that a party is named as defendant does not necessarily imply a claim for money or performance against that party.*

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Search Result                      Rank(R)  4 of 31                      Database
                                                                        LS-ALL

LAWSUIT RECORDS

Current Date:                07/27/2005
Court Last Updated:          07-25-2005
Source:                      CLERK OF THE COURT, JEFFERSON PARISH 24TH JUDICIAL
COURT, LA
Database Last Updated:       04-07-2005

                              CASE INFORMATION

Case Number:                613650
Filing Date:                11/08/2004

Filing Office:              JEFFERSON PARISH 24TH JUDICIAL COURT
                            200 DERBIGNY ST
                            GRETNA, LA 70053
Venue:                      JEFFERSON, LA

                              PARTY INFORMATION

Plaintiff:                  ENGINEERING DYNAMICS INC

Defendant:                  **MASSACHUSETTS INSTITUTE OF TECHNOLOGY**
                            GRETNA, LA 70053

              TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
          CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
                          ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the
official record.   Certified copies can only be obtained from the official
source.   The public record items reported above may have been paid, terminated,
vacated or released prior to today's date.*

*The fact that a business is named as a suit defendant does not necessarily imply
a claim for money or performance against that business.   Some lawsuits are
actions to clear title to property and businesses may be named as parties
because they themselves have a lien or claim against the property.   This
situation is a possibility particularly if there are multiple suit defendants.*

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Search Result                          Rank(R)  7 of 31                          Database
                                                                                 LS-ALL

LAWSUIT RECORDS

Current Date:                  07/27/2005
Court Last Updated:            07-25-2005
Source:                        CLERK OF THE COURT, MARICOPA COUNTY SUPERIOR
COURT, AZ
Database Last Updated:         07-07-2005

                               CASE INFORMATION

Case Number:                   CV2003-016491
Filing Date:                   08/28/2003

Case Type:                     OTHER - DECLARATORY JU

Filing Office:                 MARICOPA COUNTY SUPERIOR COURT
                               201 W JEFFERSON ST
                               PHOENIX, AZ 85003
Venue:                         MARICOPA, AZ

                               PARTY INFORMATION

Plaintiff:                     HAZEL S DICKSON

Defendant:                     **MASSACHUSETTS INSTITUTE OF TECHNOLOGY**

            TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
       CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
                        ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the*
*official record.  Certified copies can only be obtained from the official*
*source.  The public record items reported above may have been paid, terminated,*
*vacated or released prior to today's date.*

*The fact that a business is named as a suit defendant does not necessarily imply*
*a claim for money or performance against that business.  Some lawsuits are*
*actions to clear title to property and businesses may be named as parties*
*because they themselves have a lien or claim against the property.  This*
*situation is a possibility particularly if there are multiple suit defendants.*

END OF DOCUMENT

         (C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

                                                        Westlaw.

Search Result                         Rank(R)  8 of 31                      Database
                                                                            LS-ALL

LAWSUIT RECORDS

Current Date:              07/27/2005
Court Last Updated:        07-25-2005
Source:                    CLERK OF THE COURT, NEW CASTLE COUNTY CHANCERY
COURT, DE
Database Last Updated:     07-15-2005

                              CASE INFORMATION

Case Number:               20479 NC
Filing Date:               08/01/2003

Case Type:                 TRUSTS

Filing Office:             NEW CASTLE COUNTY CHANCERY COURT
Venue:                     NEW CASTLE, DE

                              PARTY INFORMATION

Plaintiff:                 J.P. MORGAN TRUST COMPANY OF DELAWARE

                           *Attorney:*
                           THOMAS R. PULSIFER

Defendant:                 PHOTO ELECTRONICS CORPORATION
Defendant:                 **MASSACHUSETTS INSTITUTE OF TECHNOLOGY**
Defendant:                 THE RAYMOND F. KRAVIS CENTER FOR THE PERFORMING
ARTS, INC.
Defendant:                 GILBRETH, WILLIAM J.
Defendant:                 TIAA-CREF TRUST COMPANY

          TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
       CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
                      ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the*
*official record.  The fact that a party is named as defendant does not*
*necessarily imply a claim for money or performance against that party.*

END OF DOCUMENT

        (C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Search Result                         Rank(R) 9 of 31                    Database
                                                                         LS-ALL

LAWSUIT RECORDS

Current Date:              07/27/2005
Court Last Updated:        07-07-2005
Source:                    CLERK OF THE COURT, SARASOTA COUNTY CIRCUIT COURT,
FL
Database Last Updated:     05-20-2005

                              CASE INFORMATION

Case Number:               996738
Filing Date:               05/27/1999

Filing Office:             SARASOTA COUNTY CIRCUIT COURT
                           2000 MAIN STREET
                           SARASOTA, FL 34237
Venue:                     SARASOTA, FL

                              PARTY INFORMATION

Plaintiff:                 JOAN E APPEL

Defendant:                 **MASSACHUSETTS INSTITUTE OF TECHNOLOGY**
Defendant:                 ROBERT A BUTTERWORTH

        TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
     CALL WEST DOCUMENT RETRIEVAL AT 1-877-DOC-RETR (1-877-362-7387).
                   ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the
official record.  Certified copies can only be obtained from the official
source.  The public record items reported above may have been paid, terminated,
vacated or released prior to today's date.*

*The fact that a business is named as a suit defendant does not necessarily imply
a claim for money or performance against that business.  Some lawsuits are
actions to clear title to property and businesses may be named as parties
because they themselves have a lien or claim against the property.  This
situation is a possibility particularly if there are multiple suit defendants.*

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Search Result                    Rank(R) 11 of 31                    Database
                                                                      LS-ALL

LAWSUIT RECORDS

Current Date:              07/27/2005
Court Last Updated:        07-26-2005
Source:                    CLERK OF THE COURT, OAKLAND COUNTY CIRCUIT COURT,
MI
Database Last Updated:     07-08-2005

                              CASE INFORMATION

Case Number:               96527787CK
Filing Date:               08/02/1996

Status:                    DISMISSED - 11/01/1996

Filing Office:             OAKLAND COUNTY CIRCUIT COURT
                           1200 TELEGRAPH RD
                           PONTIAC, MI 48341
Venue:                     OAKLAND, MI

                              PARTY INFORMATION

Plaintiff:                 MARY JOHNSON

                           *Demand by Party:*
                           $10,000.00

Defendant:                 **MASSACHUSETTS INSTITUTE OF TECHNOLOGY**
                           MI

              TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
         CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
                           ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the
official record.  Certified copies can only be obtained from the official
source.  The public record items reported above may have been paid, terminated,
vacated or released prior to today's date.*

*The fact that a business is named as a suit defendant does not necessarily imply
a claim for money or performance against that business.  Some lawsuits are
actions to clear title to property and businesses may be named as parties
because they themselves have a lien or claim against the property.  This
situation is a possibility particularly if there are multiple suit defendants.*

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Search Result                          Rank(R)  16 of 31                        Database
                                                                                LS-ALL

LAWSUIT RECORDS

For Supreme Court WestDocket see 0102041/1999

Current Date:                 07/27/2005
Court Last Updated:
Source:                       NEW YORK SUPREME COURT, NEW YORK
Database Last Updated:

                              CASE INFORMATION

Title:                        MASSACHUSETTS INSTITUTE  OF TECHNOLOGY v.
TUGRULBEY, KIRYAMAN  DONALD BUTTERFIELD
Case Number:                  0102041/1999
Filing Date:                  02/21/2001

Case Type:                    U.C.C.; MOTION

Status:                       DISPOSED

Filing Office:                NEW YORK SUPREME COURT, NEW YORK
Venue:                        NEW YORK, NY
Judge:                        LEBEDEFF, D.A., ACTIVE

                              PARTY INFORMATION

Plaintiff:                    **MASSACHUSETTS INSTITUTE**  OF **TECHNOLOGY**
Defendant:                    TUGRULBEY, KIRYAMAN  DONALD BUTTERFIELD

Firm Name:                    SHARINN & LIPSHIE P.C., ATTORNEY OF RECORD LAW
FIRM

                              ATTORNEY FOR: PLAINTIFF
                              200 GARDEN CITY PLAZXA,STE 506
                              GARDEN CITY , N.Y. 11530
                              516-736-6600

Firm Name:                    CHARLES J. FINE, ATTORNEY OF RECORD LAW FIRM
                              ATTORNEY FOR: DEFENDANT
                              1501 BROADWAY
                              NEW YORK, NY 10036
                              212-540-0966

            TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
      CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
                      ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the
official record.  The fact that a party is named as defendant does not
necessarily imply a claim for money or performance against that party.*

            (C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Search Result                    Rank(R) 17 of 31                    Database
                                                                     LS-ALL

LAWSUIT RECORDS

For Supreme Court WestDocket see 0125252/2002

Current Date:                    07/27/2005
Court Last Updated:
Source:                          NEW YORK SUPREME COURT, NEW YORK
Database Last Updated:

                         CASE INFORMATION

Title:                           MASSACHUSETTS INSTITUTE   TECHNOLOGY v. BAAH,
KWABENA   AND GLADYS BAAH
Case Number:                     0125252/2002
Filing Date:                     02/10/2004

Case Type:                       OTHER; MOTION

Status:                          DISPOSED

Filing Office:                   NEW YORK SUPREME COURT, NEW YORK
Venue:                           NEW YORK, NY
Judge:                           DIAMOND, MARILYN G., ACTIVE

                         PARTY INFORMATION

Plaintiff:                       **MASSACHUSETTS INSTITUTE   TECHNOLOGY**
Defendant:                       BAAH, KWABENA   AND GLADYS BAAH

Firm Name:                       BRIAN J. OBERMAN, ATTORNEY OF RECORD LAW FIRM
                                 ATTORNEY FOR: PLAINTIFF
                                 160 EAST 56TH STREET - 7TH FL
                                 NEW YORK, NEW YORK 10022
                                 212-517-7480

              TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
        CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
                         ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the*
*official record.  The fact that a party is named as defendant does not*
*necessarily imply a claim for money or performance against that party.*

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Search Result                          Rank(R) 21 of 31                          Database
                                                                                  LS-ALL

LAWSUIT RECORDS

Current Date:              07/27/2005
Court Last Updated:        07-12-2005
Source:                    CLERK OF THE COURT, SUPERIOR COURT OF CONNECTICUT,
BRIDGEPORT, CT
Database Last Updated:     02-19-2006

CASE INFORMATION

Case Number:               CV054005006S
Filing Date:               01/06/2005

Case Type:                 CONTRACTS - COLLECTIONS
Status:                    WITHDRAWAL OF ACTION - 01/25/2005

Filing Office:             SUPERIOR COURT OF CONNECTICUT, BRIDGEPORT
Venue:                     BRIDGEPORT, CT

PARTY INFORMATION

Plaintiff:                 **MASSACHUSETTS INSTITUTE OF TECHNOLOGY**

                           *Attorney:*
                           DORAN & CHINITZ LLC
                           1698 POST ROAD EAST
                           WESTPORT, CT 06880
                           *Lic. No.: FIRM NUMBER: 418346*

Defendant:                 CASEY, MATTHEW
     7 ROCKY ACRES LANE WESTPORT, CT
                                06880

Defendant:                 CASEY, BARTHOLOMEW

          TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
      CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
                        ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the
official record.  The fact that a party is named as defendant does not
necessarily imply a claim for money or performance against that party.*

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Westlaw.*

Search Result                          Rank(R)  24 of 31                          Database
                                                                                  LS-ALL

LAWSUIT RECORDS

Current Date:                  07/27/2005
Court Last Updated:            07-24-2005
Source:                        CLERK OF THE COURT, SAN FRANCISCO COUNTY SUPERIOR
COURT, CA
Database Last Updated:         09-20-2001

                              CASE INFORMATION

Case Number:                   SCV 310299
Filing Date:                   02/29/2000

Case Type:                     SUPERIOR CIVIL

Filing Office:                 SAN FRANCISCO COUNTY SUPERIOR COURT
Venue:                         SAN FRANCISCO, CA

                              PARTY INFORMATION

Plaintiff:                     **MASSACHUSETTS INSTITUTE** OF **TECHNOLOGY**

Defendant:                     JULIAN ALEXANDER - CIVIL DEFENDENT

                TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
        CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
                        ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the
official record.  The fact that a party is named as defendant does not
necessarily imply a claim for money or performance against that party.*

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Search Result                          Rank(R) 26 of 31                          Database
                                                                                 LS-ALL

LAWSUIT RECORDS

Current Date:                07/27/2005
Court Last Updated:          07-24-2005
Source:                      CLERK OF THE COURT, SAN DIEGO COUNTY SUPERIOR
COURT, CA
Database Last Updated:       05-27-2005

                             CASE INFORMATION

Case Number:                 IC767975
Filing Date:                 05/25/2001

Case Type:                   ACCOUNT STATED

Filing Office:               SAN DIEGO COUNTY SUPERIOR COURT - SAN DIEGO
Venue:                       SAN DIEGO, CA

                             PARTY INFORMATION

Plaintiff:                   **MASSACHUSETTS INSTITUTE OF TECHNOLOGY** - PRIMARY
PLAINTIFF

Defendant:                   ROMERO ANGELA - SECONDARY DEFENDANT
Defendant:                   SANCHEZ ANGELA L ROMERO - SECONDARY DEFENDANT
Defendant:                   ROMERO LAURIE - SECONDARY DEFENDANT

              TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
       CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
                         ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the*
*official record.  The fact that a party is named as defendant does not*
*necessarily imply a claim for money or performance against that party.*

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Search Result                     Rank(R) 29 of 31                     Database
                                                                       LS-ALL

LAWSUIT RECORDS

Current Date:              07/27/2005
Court Last Updated:        07-13-2005
Source:                    CLERK OF THE COURT, PALM BEACH COUNTY CIRCUIT
COURT, FL
Database Last Updated:     12-08-2004

                          CASE INFORMATION

Case Number:              0200246612
Filing Date:              02/25/2002

Demand:                   IN EXCESS OF $14,999.00

Filing Office:            PALM BEACH COUNTY CIRCUIT COURT
                          301 N OLIVE AVE 9TH FLOOR
                          WEST PALM BEACH, FL 33401
Venue:                    PALM BEACH, FL

                          PARTY INFORMATION

Plaintiff:                PGA RESORT LTD DBA PGA NATIONAL RESORT & SPA

Defendant:                **MASSACHUSETTS INSTITUTE OF TECHNOLOGY**

          TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
    CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
                     ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the
official record.  Certified copies can only be obtained from the official
source.  The public record items reported above may have been paid, terminated,
vacated or released prior to today's date.*

*The fact that a business is named as a suit defendant does not necessarily imply
a claim for money or performance against that business.  Some lawsuits are
actions to clear title to property and businesses may be named as parties
because they themselves have a lien or claim against the property.  This
situation is a possibility particularly if there are multiple suit defendants.*

END OF DOCUMENT

          (C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Search Result                        Rank(R) 31 of 31                        Database
                                                                             LS-ALL

LAWSUIT RECORDS

Current Date:                 07/27/2005
Court Last Updated:           07-21-2005
Source:                       CLERK OF THE COURT, DUVAL COUNTY/COUNTY COURT, FL
Database Last Updated:        06-24-2005

                              CASE INFORMATION

Case Number:                  98-0119SP
Filing Date:                  01/06/1998

Demand:                       $4,999.00

Filing Office:                DUVAL COUNTY/COUNTY COURT
                              330 E BAY STREET
                              JACKSONVILLE, FL 32202
Venue:                        DUVAL, FL

                              PARTY INFORMATION

Plaintiff:                    WHITE LINE TRUCKING INC.

Defendant:                    **MASSACHUSETTS INSTITUTE OF TECHNOLOGY**
                              CAMBRIDGE, MA

DUNS:                         19-239-5697
HQ DUNS:                      00-142-5594

               TO ORDER ORIGINAL FILINGS OR OTHER RELATED DOCUMENTS,
        CALL WEST DOCUMENT RETRIVAL AT 1-877-DOC-RETR (1-877-362-7387).
                        ADDITIONAL CHARGES APPLY.

*The preceding public record data is for information purposes only and is not the
official record.  Certified copies can only be obtained from the official
source.  The public record items reported above may have been paid, terminated,
vacated or released prior to today's date.*

*The fact that a business is named as a suit defendant does not necessarily imply
a claim for money or performance against that business.  Some lawsuits are
actions to clear title to property and businesses may be named as parties
because they themselves have a lien or claim against the property.  This
situation is a possibility particularly if there are multiple suit defendants.*

          (C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

```
                           11 of 28 DOCUMENTS

                *** THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY ***

                LOS ANGELES COUNTY SUPERIOR COURT CIVIL CASE INDEX

CASE NAME: MASSACHUSETTS INSTITUTE TECH v. FOX MICHAEL A

CIVIL CASE NUMBER:  BC 311292

FILING DATE: 02/27/2004

DISTRICT: CENTRAL (LOS ANGELES)

CASE TYPE: CIVIL

PARTY:
PLAINTIFF                    DEFENDANT                    COMMENT
---------                    ---------                    -------

MASSACHUSETTS INSTITUTE TECH FOX MICHAEL A
```



25 of 28 DOCUMENTS

*** THIS DATA IS FOR INFORMATION PURPOSES ONLY ***

CIVIL SUMMONS CIVIL COURT OF THE CITY OF NEW YORK-NEW YORK

MASSACHUSETTS INSTITUTE TECH v. LEEUW, LEROTHODT

**Plaintiff:** MASSACHUSETTS INSTITUTE TECH

**Defendant:** LEEUW, LEROTHODT
             195 CLAREMONT
             NEW YORK CITY, NY 10027

**Docket Number:** 3169195

**Filing Date:** 10/5/1995

**Type:** CIVIL SUMMONS

**Amount:** $14,973

**Attorney:** SACHS AND KUSHNER




598 N.W.2d 339 (Table)                                          Page    2
460 Mich. 860, 598 N.W.2d 339 (Table)
**(Publication page references are not available for this document.)**
н

(The decision of the Court is referenced in the North Western Reporter in a table captioned "Supreme Court of
Michigan Applications for Leave to Appeal.")


Supreme Court of Michigan
In re Estate of Henry Clyde Johnson, Deceased; Mary Ellen Gotshall
v.
**Massachusetts Institute of Technology**
NO. 112937.  COA No. 201404.
June 29, 1999


Disposition:  Application for leave to appeal the May 26, 1998 decision of the Court of Appeals is DENIED.

Mich. 1999.

In re Estateof Johnson

460 Mich. 860, 598 N.W.2d 339 (Table)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                              **Page   3**
1999 WL 165616 (Conn.Super.)
**(Publication page references are not available for this document.)**

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.
Kenneth REEVES, et al.,
v.
**MASSACHUSETTS INSTITUTE OF TECHNOLOGY**, et al.
No. 96-6110.
Feb. 2, 1999.

Memorandum

ZOBEL.

1. The parties, by written stipulation, submitted "All issues now pending between them to Alice E. Richmond, Esq. as arbitrator." Ms. Richmond held hearings in which the parties were free to introduce evidence. For present purposes, we may take it that the matter of attorneys fees was mentioned, but no evidence was produced.

2. The Arbitrator's award was for damages without a multiplier, but the Arbitrator specifically found a violation of G.L.c. 93A.

3. It is also undisputed that no evidence pertaining to attorneys fees was submitted to the Arbitrator.

4. It is also undisputed that Plaintiff did not at any time file an application to the Arbitrator to modify or correct the grounds for her award or to clarify it. Nor did Plaintiff make any similar application to the Court.

5. Under the circumstances, I regard it as a matter of law, that this Court can neither remand the matter to the Arbitrator nor hold separate hearings on the question of attorneys fees.

6. I regard it as a matter of law that under the terms of the reference to the Arbitrator the question of attorneys fees should have been raised before her.

7. Therefore, I conclude that Plaintiff is not entitled to relief in respect of so much of Plaintiff's motion as seeks an award of fees.

ORDER

Accordingly, it is *Ordered,* that Judgment enter forthwith for Plaintiff in the amount of the arbitration award, namely, $33,000, plus interest on $25,000 from May 20, 1996, and on $8,000 from September 25, 1996.

Conn.Super.,1999.

Reeves v. **Massachusetts Institute** of **Technology**

1999 WL 165616 (Conn.Super.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in A.2d                                                                                                 **Page    4**
1998 WL 1781624 (Pa.Com.Pl.)
**(Publication page references are not available for this document.)**
**c**

Only the Westlaw citation is currently available.

Court of Common Pleas of Pennsylvania.
Rosemarie LUKE and Thomas Luke, husband and wife, Plaintiffs
v.
AMERICAN HOME PRODUCTS CORPORATION, a Delaware Corporation; Wyeth-Ayerst
Laboratories Company, a Delaware Corporation and subsidiary of American Home
Products Corporation; Interneuron Pharmaceuticals, Inc., a Delaware
Corporation; Richard J. Wurtman, Ph.D.; Judith Wurtman, Ph.D.; and
**Massachusetts Institute of Technology;** Charles R. Grubb, D.O., and Warren
Medical Associates, P .A., Defendants
No. 1998-C-01977.
Nov. 18, 1998.

Edward J. Carreiro, Jr., Esquire, Hatboro, Counsel for Plaintiff.

James A. Young, Esquire, Christie, Parabue, Mortenson & Young, PC, Philadelphia, Counsel for The University of Pennsylvania Health System, University City Family Medicine and Catherine Fleming, M.S.

Thomas M. McGraw, Esquire, Philadelphia.

Bennett G. Picker, Esquire, Ellen Rosen Rogoff, Esquire, Daniel T. Fitch, Esquire, Stradley, Ronon, Stevens & Young, Philadelphia, Counsel for SmithKline Beecham Corp.

Alan H. Starr, Esquire, White & Williams, LLP, Philadelphia.

David E. Nicklin, M.D., Philadelphia.

Drug Emporium, Inc., Upper Darby.

Suzanne Gross, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia.

Rugby Laboratories Inc., Glenview, IL.

OPINION OF THE COURT

HOGAN, J.

I. FACTUAL AND PROCEDURAL HISTORY

Defendants Richard J. Wurtman, M.D., and Judith Wurtman, Ph.D., began investigating dexfenfluramine hydrochloride for possible approval by the Food and Drug Administration in the early 1970's. In 1980, after discovering that dexfenfluramine hydrochloride suppressed one's appetite for carbohydrates, Defendant Massachusetts Institute of Technology (hereinafter "MIT") was issued a "use" patent. In 1988, Defendants Richard J. Wurtman, Judith Wurtman and MIT founded Defendant Interneuron Pharmaceuticals, Inc. to market dexfenfluramine hydrochloride as a weight loss treatment drug. The Food and Drug Administration

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



26 of 28 DOCUMENTS

Superior Information Services, L.L.C.

* * * THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY * * *

CIVIL SUITS FROM MARYLAND
MARYLAND DISTRICT COURT

**Defendant:** MUHAMMAD BILAL BHUTTA

**Defendant Address:** MUHAMMAD BILAL BHUTTA
#102
13818 CASTLE BV
SILVER SPRING, MD 20904

**Plaintiff:** MASSACHUSETTS INST. OF TECHNOLOGY

**Plaintiff Address:** MASSACHUSETTS INST. OF TECHNOLOGY
77 MASSACHUSETTS AV
CAMBRIDGE, MA 02139

**Plaintiff Attorney:** COLLINS, PHILIP J
BETHESDA, MD 20817

**Number:** 0601-013791-2000

**Vendor Number:** DS-00013791-2000

**Date:** 5/24/2000

**Filing Type:** CIVIL SUIT

**Case Type:** CONTRACT

**Amount:** $18,650.15

**Status:** OPEN

**County Filed:** MONTGOMERY

**Place Filed:** MARYLAND DISTRICT COURT

**Description:** CIVIL SUITS

  

Search Result Citations List - DOCK-STATE-ALL - PTN(MASSACHUSETTS /1 INSTITUTE
                    /2 TECHNOLOGY) & FLD(AFT 07/01/1995)

| Rank | Case Number | Case Title | Filing Date | Court | Misc. Info |
|---|---|---|---|---|---|
| 2. | 200111311 | BARNES, TRINA v. MIT CORPORATION (DBA MASSACHUSETTS INSTITUTE OF TE | 02/28/2001 | DISTRICT COURT | HARRIS, TX |
| 3. | CJ-2005-2138 | CARPENTER, TIMOTHY J v. MASSACHUSETTS INSTITUTE OF TECHNOLOGY | 03/14/2005 | DISTRICT COURT | OKLAHOMA, OK |
| 8. | PB2002-004293 | IN RE RICHARD P. DICKSON | 09/26/2002 | SUPERIOR COURT OF ARIZONA | MARICOPA, AZ |
| 9. | PRSPR041731 | IN THE MATTER OF STEVEN K KNAPP CHARITABLE TRUST | 06/02/2000 | SUPERIOR COURT | SANTA CRUZ, CA |
| 14. | CL03000313-00 | MASS INSTITUTE OF TECHNOLOGY v. BLAIR, REGINA | 02/05/2003 | VIRGINIA BEACH CIRCUIT | VIRGINIA BEACH, VA |
| 15. | CL03000772-00 | MASS INSTITUTE OF TECHNOLOGY v. BLAIR, REGINA JONES | 03/21/2003 | VIRGINIA BEACH CIRCUIT | VIRGINIA BEACH, VA |
| 16. | CL03002132-00 | MASS INSTITUTE OF TECHNOLOGY v. BLAIR, REGINA JOANN | 07/31/2003 | VIRGINIA BEACH CIRCUIT | VIRGINIA BEACH, VA |
| 22. | 200458684 | MASSACHUSETTS INSTITUTE OF TECHNOLOGY (C/O DARYL J v. CARPENTER, TIMOTHY J (AS ADMINISTRATOR OF THE ESTA | 10/18/2004 | DISTRICT COURT | HARRIS, TX |

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

