## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MASSACHUSETTS INSTITUTE OF TECHNOLOGY,**<br><br>    **Plaintiff,**<br><br>  v.<br><br>**HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,**<br>A Delaware Corporation,<br>    **Defendant.** | Case No: **05-10990 DPW**<br>**Hon. Douglas P. Woodlock** |

### DEFENDANT HARMAN'S MOTION TO ISSUE LETTERS ROGATORY

Plaintiff Massachusetts Institute of Technology ("MIT") filed suit against Harman International Industries, Incorporated ("Harman") alleging that Harman infringes U.S. Patent No. 5,177,685 (the '685 patent"). According to MIT's disclosures under Rule 26(a)(2) of the Federal Rules of Civil Procedure, James R. Davis has "discoverable information concerning disputed facts relevant to this action…". Ex. B at 2. Indeed, not only is Dr. Davis a named inventor of the '685 patent, his doctoral work at MIT formed the basis for the '685 patent. *See* Ex. H (naming Christopher Schmandt, Dr. Davis' thesis advisor, as the other inventor); Ex. G. The written description of the '685 patent, from which the alleged inventions claimed are derived, mirrors Dr. Davis' thesis titled, "Back Seat Driver: Voice Assisted Automobile Navigation" Ph.D. Thesis, Massachusetts Institute of Technology (Sep. 1989) and draws on related work titled "Direction Assistance." *See* Ex. H at cols. 1-2 (citing as prior art several works by Dr. Davis).

Dr. Davis appears to be a U.S. citizen who, according to MIT, currently resides in Canada at 27 Borden Street, Toronto Ontario Canada M5S 2M8. *See* Ex. B at 2; Ex. G. MIT's counsel also represents Dr. Davis but refuses to accept service of a subpoena for Dr. Davis. *See* Ex. D. Defendant Harman thus moves pursuant to 28 U.S.C. § 1781 for the issuance of letters rogatory, seeking the assistance of the Ontario Superior Court of Justice, by giving effect to the letters rogatory and enforcing a demand for testimony and the production of documents identified in Exhibit A upon James R. Davis. A Proposed Order to that effect is attached as Exhibit I.

## I.    HARMAN HAS BEEN UNSUCCESSFUL IN ITS ATTEMPTS TO SEEK ACCESS TO DR. DAVIS AND HIS DOCUMENTS THROUGH HIS (AND MIT'S) COUNSEL.

As a named inventor, there is no question that Dr. Davis' documents are both relevant and likely to lead to the discovery of admissible evidence. *See e.g. Abbott Labs. v. Impax Labs., Inc.*, No. Civ.A. 03-120-KAJ, 2004 WL 1622223, at *2 (D. Del. July 15, 2004) (granting a motion for international judicial assistance in the form of letters rogatory to compel the production of documents held by a foreign named inventor). MIT agrees and identifies Dr. Davis as having discoverable information relating to "Conception, Reduction to Practice, and Prosecution of the '685 Patent." Ex. B at 2. However, when Harman sought many of the same documents from MIT as it now seeks from Dr. Davis, MIT wholly refused to produce responsive documents. *See e.g.,* Ex. F, Document Request Nos. 1, 6, 7, 8, 9, 10, 17, 21, 22, 23, 27, 28, 29 (MIT has refused to produce any documents in response to eleven of the thirteen relevant requests, namely 7, 8, 9, 10, 17, 21, 22, 23, 27, 28, and 29).

On October 12, 2005, Harman requested that counsel for MIT accept service of a subpoena for Dr. Davis. *See* Ex. C. Counsel for MIT confirmed on October 14, 2005 that it also "represents Dr. Davis" but claimed that it allegedly is "not currently authorized to accept service on his behalf." Ex. D. In the spirit of cooperation, Harman's counsel initiated discussions with

MIT's and Dr. Davis' counsel to gain access to Dr. Davis and his documents. These discussions have proven unproductive.

During the discussions between the parties, including the most recent discussion on October 18, 2005, counsel for MIT and Dr. Davis stated that it has made no attempt to recover or produce documents currently in Dr. Davis' possession, nor will it do so despite being served with proper requests for production under Rule 34 of the Federal Rules of Civil Procedure. *See* Ex. E, at 7. Thus, MIT's document production to date has included *no* responsive, discoverable documents from Dr. Davis. MIT's and Dr. Davis' counsel would not confirm whether it had even sought from Dr. Davis authorization to accept service. Rather, MIT's and Dr. Davis' counsel appears to have access to Dr. Davis and his documents, but chooses instead to use the fact that Dr. Davis resides in Canada as a bargaining chip in some discovery tactic. *See* Ex. D; Ex. E at 7.

## II. HARMAN HAS EXHAUSTED ALL OTHER REASONABLE ALTERNATIVES TO GAIN ACCESS TO DR. DAVIS, AND THIS REQUEST FOR LETTERS ROGATORY IS HARMAN'S LAST RESORT.

As discussed above, Harman has exhausted available avenues of obtaining Dr. Davis' documents, including: (a) serving Harman's First Set Of Requests For The Production Of Documents And Things (Nos. 1-28); (b) asking MIT's and Dr. Davis' counsel to accept service of a subpoena; and (c) engaging in two teleconferences regarding Harman's requests for access to Dr. Davis. Harman nonetheless is forced to seek the assistance of the Canadian courts through letters rogatory issued pursuant to 28 U.S.C. §1781 and this Court's inherent authority. *See, e.g., Ings v. Ferguson*, 282 F.2d 149, 152-3 (2d Cir. 1960) ("whether removal of records from Canada is prohibited is a question of Canadian law and is best resolved ... by Canadian courts ... full opportunity to obtain such [evidence] ... is afforded ... by the procedural laws ... i.e. letters rogatory."); *see also DBMS Consultants, Ltd. v. Computer Assoc. Int'l, Inc.*, 131 F.R.D. 367, 369

(D. Mass. 1990) ("It is well settled that the courts have inherent authority to issue letters rogatory.").

MIT claims that Dr. Davis, the primary named inventor of the '685 patent, possesses discoverable information. MIT's counsel has confirmed that it represents Dr. Davis; has implied that these documents are within its control; and further implied that it *could* produce these records in exchange for discovery concessions. *See* Ex. E at 7. Harman is severely prejudiced without access to Dr. Davis' documents and any further delay runs counter to the parties' and this Court's interests in a just and expeditious resolution of this matter. Without the requested relief, Harman will be unable to obtain access to Dr. Davis' documents or testimony. Accordingly, granting Harman's motion is in the interest of justice and fairness, and MIT can offer no good reason for this Court to deny Harman's request. *DBMS Consultants,* 131 F.R.D. at 369 (D. Mass. 1990) (granting request for letters rogatory and noting that good reason is necessary to deny such a request).

## CONCLUSION

For the reasons stated above, Harman respectfully requests that this Court issue letters rogatory to the Ontario Superior Court of Justice requesting that court to give effect to the letters rogatory and enforce a demand for testimony and the production of documents upon James R. Davis.

Dated:  October 20, 2005                              Respectfully submitted,


                                                     /s/ Courtney A. Clark
                                                     Robert J. Muldoon, Jr., BBO# 359480
                                                     James W. Matthews, BBO# 560560
                                                     Edward S. Cheng, BBO# 634063
                                                     Courtney A. Clark, BBO# 651381
                                                     **SHERIN AND LODGEN, LLP**
                                                     101 Federal Street
                                                     Boston, MA 02110

                                                     William A. Streff Jr., P.C.
                                                     Michelle A. H. Francis
                                                     Jamal M. Edwards
                                                     **KIRKLAND & ELLIS LLP**
                                                     200 East Randolph Drive
                                                     Chicago, IL  60601
                                                     (312) 861-2000 (phone)
                                                     (312) 861-2200 (fax)

                                                     *Attorneys for Defendant Harman International*
                                                     *Industries, Incorporated*


### LOCAL RULE 7.1(A)(2) CERTIFICATE

        Counsel for Harman International Industries, Incorporated hereby certify that they have
conferred with opposing counsel on the matters set forth in the foregoing Motion.



                                                     /s/ Courtney A. Clark
                                                     Courtney A. Clark

# EXHIBIT A

**EXHIBIT A**

**DOCUMENTS TO BE PRODUCED BY JAMES R. DAVIS**

1.      All documents referring or relating to *Direction Assistance*, *Back Seat Driver* or any other automobile navigation system including without limitation documents appearing on http://www.econetwork.net/~jdavis/ or any other website operated by James R. Davis.

2.      All documents in the possession, custody, or control of James R. Davis referring to or relating to U.S. Patent No. 5,177,685 (the '685 Patent), the application that lead to its issuance (application number 565,274), or the subject matter thereof, including without limitation all engineering notebooks, laboratory notebooks, records, logs and files created or maintained by, or at the direction of, James R. Davis.

3.      All thesis drafts, revisions, notes and documents referring to, or relating to, or leading up to the September 1989 thesis paper authored by James R. Davis, entitled "Back Seat Driver: Voice Assisted Automobile Navigation."

4.      All drafts, revisions, notes and documents referring to, or relating to, or leading up to the August 1989 paper co-authored by James R. Davis, entitled "The Back Seat Driver: Real Time Spoken Driving Instructions."

5.      All drafts, revisions, notes and documents referring to, or relating to, or leading up to the December 1986 Speech Research Group Technical Memo authored by James R. Davis, entitled "Direction Assistance."

6.      All drafts, revisions, notes and documents referring to, or relating to, or leading up to the August 1989 paper co-authored by James R. Davis, entitled "Synthetic Speech For Real Time Direction Giving"

7.    All documents referring or relating to confidentiality agreements, written or otherwise, between or among James R. Davis, Chris Schmandt or MIT and any person or entity regarding any portion of the subject matter of *Direction Assistance*, *Back Seat Driver*, the '685 patent or the application that led to the '685 patent.

8.    All documents referring or relating to any disclosure to, or use by, any person or entity of any portion of the subject matter of *Direction Assistance*, *Back Seat Driver,* the '685 Patent or patent application number 565,274.

9.    All documents concerning the first sale, first offer for sale, or first public use or display of *Direction Assistance*, *Back Seat Driver* or any portion of the subject matter of the '685 Patent.

10.    All documents referring or relating to any experimental use, field test, and/or prototype of *Direction Assistance*, *Back Seat Driver* or any alleged invention of the '685 Patent.

11.    All documents referring or relating to any reference known, considered, reviewed or evaluated before or during prosecution, or after the grant of, the '685 Patent.

12.    All documents passing between James R. Davis and MIT concerning or relating to automobile navigation systems, *Direction Assistance*, *Back Seat Driver*, the '685 patent, the subject matter of the '685 patent, or patent application number 565,274.

13.    Copies of all patents for which James R. Davis is named as an inventor.

14.    The personnel, student and/or employment history files for James R. Davis regarding to any work referring or relating to automobile navigation systems, *Direction Assistance*, *Back Seat Driver*, the '685 patent, the subject matter of the '685 patent, or patent application number 565,274, including without limitation curriculum vitae.

15.     All documents in the possession of James R. Davis relating to MIT's thesis submission, review, certification, acceptance and publication process(es).

16.     All documents in the possession of James R. Davis relating to MIT's invention disclosure and/or patent application, submission, review, certification, acceptance and publication process(es).

17.     All documents concerning incentives or rewards received by James R. Davis from MIT for work relating to *Direction Assistance*, *Back Seat Driver*, the '685 patent or any other issued patent, patent application or invention.

### Definitions

Notwithstanding any definition set forth below, each word, term, or phrase used in this exhibit is intended to have the broadest meaning permitted under the United States Federal Rules of Civil Procedure.   For purposes of these document requests, the following definitions apply:

1.     "MIT" means the Massachusetts Institute of Technology, including its servants, agents, representatives, employees, principals, attorneys and all other persons, forms or corporations acting with it or on its behalf.

2.     "Documents" shall have the full meaning ascribed to it in Federal Rule of Civil Procedure 34(a), including without limitation all handwritten, typed, printed, photocopied, graphic or computer-stored matter and further including without limitation documents or notes reflecting conversations or meetings.   Electronic correspondence is also included within the meaning of this terms.  A draft or non-identical copy is a separate document within the meaning of this term.

3

## Instructions

1.      With respect to any documents withheld on the basis of a claim of attorney-client privilege, attorney work product doctrine, or any applicable claim of privilege or immunity, provide a privilege log describing the documents, including the author(s), the recipient(s), the date and subject matter of the document and the specific ground upon which the refusal to answer is based, including facts supporting the claim of privilege such that Harman may assess the applicability of the privilege as required by Federal Rule of Civil Procedure 26(b)(5).  A description of any attachments or enclosures to the document is also required.

2.      Documents produced in response to these requests shall be labeled to correspond with the numbered paragraphs in these requests.

4

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-10990 DPW |
| HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, | ) ) ) | |
| Defendant. | ) ) | |

**INITIAL DISCLOSURES OF**
**MASSACHUSETTS INSTITUTE OF TECHNOLOGY**

Massachusetts Institute of Technology ("MIT") hereby makes the following initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) and Local Rule 26.2. MIT bases the following disclosures on information currently and reasonably available to it. MIT reserves the right to supplement these disclosures, as necessary, pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, and to rely on the testimony of any person it subsequently identifies as having knowledge relevant to this dispute. References to "the '685 patent" are to the patent-in-suit, U.S. Patent No. 5,177,685.

I.     The name and, if known, the address and telephone number of each individual likely to
       have discoverable information that the disclosing party may use to support its claims
       and defenses, unless solely for impeachment, identifying the subjects of information:

       MIT, based on current knowledge, information, and belief, identifies the following

individuals who may have discoverable information concerning disputed facts relevant to this action

at this time.

| Subjects of Information | Individual(s) Likely To Have Discoverable Information |
|---|---|
| 1. Conception, Reduction to Practice, and Prosecution of the '685 Patent | Christopher M. Schmandt<br>Massachusetts Institute of Technology<br>Media Lab<br>20 Ames Street<br>Room E15-368a<br>Cambridge, MA 02139<br>(617) 253-5156 |
| | Dr. James R. Davis<br>27 Borden Street<br>Toronto Ontario Canada M5S 2M8<br>(416) 929-5854 |
| | Dr. Sam Pasternack<br>Choate, Hall & Stewart LLP<br>53 State Street<br>Boston, MA 02109<br>(617) 248-5143<br>    *(as of August 1, 2005)*<br>Two International Place<br>Boston, MA 02110<br>(617) 248-5000 |
| 2. Ownership of the '685 Patent | Jack Turner<br>Assistant Director, Technology Licensing Office<br>Massachusetts Institute of Technology<br>5 Cambridge Center<br>Room NE25-230<br>Cambridge, MA 02139<br>(617) 253-6966 |

| Subjects of Information | Individual(s) Likely To Have Discoverable Information |
|---|---|
| 3. Products Made and/or Sold by Harman | Robert P. Hart<br>Chief Intellectual Property Counsel<br>Harman International Industries, Inc.<br>8500 Balboa Boulevard<br>Northridge, CA 91329<br>(818) 895-3433<br><br>John Peracchio<br>Senior Vice President<br>Business Administration & Legal Affairs<br>Harman Becker Automotive Systems<br>39001 West Twelve Mile Road<br>Farmington Hills, MI 48331<br>(248) 994-2100 |
| 4. Damages caused by Harman's Manufacture and Sales of Infringing Products | Jack Turner<br>(see above) |

II. **A copy of, or a description by category and location of, all documents, data compilations, and tangible things in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.**

MIT, based on current knowledge, information, and belief, identifies the following documents, data compilations, and tangible things in its possession that may be relevant to disputed facts in this action at this time. These documents are in MIT's possession, and can be made available upon reasonable notice from opposing counsel, and after the parties agree upon a mutually agreeable protective order to govern discovery in this case.

1.    The '685 patent.

2.    Documents relating to the conception and reduction to practice of the '685 patent.

3.    The prosecution file history of the '685 patent.

4.    Documents relating to ownership of the '685 patent.

5.    Documents relating to Harman products.

-3-

III. A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

MIT does not have a current computation of damages, and will provide a calculation of any and all damages it will be seeking pursuant to the Fed. R. Civ. P. after discovery has been completed.

IV. Any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

MIT is not aware of any applicable insurance agreement at this time relevant to the subject matter of the pleadings.

MASSACHUSETTS INSTITUTE OF TECHNOLOGY,

By its Counsel,

Steven M. Bauer (BBO #542531)
Kimberly A. Mottley (BBO #651190)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
Tel: (617) 526-9600
Fax: (617) 526-9899

Dated: July 26, 2005

## Certificate of Service

I hereby certify that on July 26, 2005, a true and correct copy of the foregoing document was served upon opposing counsel by hand.

Kimberly A. Mottley

# EXHIBIT C

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamal M. Edwards
To Call Writer Directly:
(312) 861-2464
jedwards@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: (312) 660-0719

October 12, 2005

**VIA E-MAIL**

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place, 14th Floor
Boston, MA 02110-2600

> Re:    *MIT v. Harman Int'l Indus. Inc.,*
> Case No. 05-10990 DPW

Dear Ms. Mottley:

Please confirm that you will accept service of a subpoena for James R. Davis, one of the named inventors of the patent-in-suit. If we do not receive such confirmation on or before October 14, 2005, we will understand that you will not accept service and that you do not represent Mr. Davis.

Very truly yours,

Jamal M. Edwards

cc: Robert J. Muldoon, Esq.

London        Los Angeles        Munich        New York        San Francisco        Washington, D.C.

# EXHIBIT D

One International Place
22nd Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

Kimberly A. Mottley
Direct Dial: 617-526-9616
Email: kmottley@proskauer.com

October 14, 2005

<u>Via Email</u>

Jamal M. Edwards, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Re:    MIT v. Harman International Industries, Inc.,
       <u>Civil Action No. 05-10990 DPW, U.S.D.C. Mass.</u>

Dear Jamal:

I write in response to your October 12, 2005 letter requesting that we accept service of a subpoena for James R. Davis.

We represent Dr. Davis, but are not currently authorized to accept service on his behalf. We will be prepared to discuss this matter with you on our call this morning, and hope to be able to resolve any issues then.

Yours truly,

Kimberly A. Mottley

Kimberly A. Mottley

# EXHIBIT E

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamal M. Edwards
To Call Writer Directly:
(312) 861-2464
jedwards@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax (312) 660-0719

October 18, 2005

**VIA E-MAIL**

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place, 14th Floor
Boston, MA 02110-2600

　　　　　Re:　　*MIT v. Harman Int'l Indus. Inc.,*
　　　　　　　　　Case No. 05-10990 DPW

Dear Ms. Mottley:

　　　　This letter memorializes our teleconference this morning, and further identifies the deficiencies of MIT's discovery responses.

### This Morning's Teleconference

I.　　**MIT's Concerns**

　　A.　**MIT's Document Requests Nos. 6 – 7.**

　　　　You confirmed that MIT continues to refuse to amend its complaint to allege willful infringement, despite our prior agreement that a timely amendment would have cured Harman's objections to MIT's discovery requests related to willfulness. Instead, you insist that by generally pleading "infringement" and by requesting "all relief available under the patent laws," in its Complaint, MIT has adequately plead that Harman has "willfully infringed" the '685 patent. Again we respectfully disagree that such general pleading is sufficient to put an accused infringer on notice of an allegation that it willfully disregarded the patent rights of another such that it might be subject to being assessed with punitive damages three times the amount awarded by the trier of fact. 35 U.S.C. § 284. Under MIT's theory of pleading, every complaint alleging patent infringement would also be a willful infringement case and every patent infringement defendant would face charges of willful infringement merely because the patentee plead a general request for "all relief available." This is clearly not common practice.

　　　　In fact, insufficiency of MIT's pleadings for this purpose is most evident when you consider that MIT's request for relief seeks "all relief available under the patent laws," which ostensibly would include injunctive relief under § 283 and lost profits under § 284. Yet, MIT

London　　　　　Los Angeles　　　　　Munich　　　　　New York　　　　　San Francisco　　　　　Washington, D.C.

## KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 18, 2005
Page 2

represented to the Court that MIT seeks only "a royalty on Harman's sales, and all the jury will need to do is decide the amount of that royalty." *See* August 1, 2005 Joint Statement at 3 (MIT's Position). Thus, MIT admittedly does not seek "all available relief under the patent laws." And, Harman is entitled to some specificity regarding MIT's allegations of infringement because MIT's pleadings are unclear in this regard.

Additionally, MIT's refusal to plead willfulness with specificity while demanding discovery on that issue is surprising in light of MIT's refusal to produce *any* documents related to the invalidity and unenforceability of the Patent-In-Suit "because validity and enforceability of the '685 patent are not presently at issue in this case." *See e.g.*, MIT's Responses to Harman's Document Requests Nos. 1, 6, 7, 8, 9, 10, 11, 17, 18, 24, 27, and 28. You stated that MIT believes these issues to be uncontested because Harman has yet to plead them. On the contrary, the controversy concerning the invalidity and unenforceability of the Patent-In-Suit arises from the fact that (1) MIT is only entitled to damaged for infringement if its patent is valid and enforceable; and (2) Harman's allegations of invalidity and unenforceability of the Patent-In-Suit in the Illinois Action. Indeed, the parties previously agreed that the discovery taken in this case would apply equally to the claims at issue in the Illinois action. Thus, MIT has been on notice of Harman's invalidity and unenforceability claims for some time and discovery concerning those issues is entirely proper.

We understand that you do not want us to consider assenting to MIT's amending the complaint after the deadline for doing so without leave of court has passed. We further understand that you consider the parties to have reached an impasse on this issue, although you represented that you will again confirm with your client that MIT will not amend its complaint.

### B. MIT's Document Requests Nos. 13 – 15.

We again requested that MIT reasonably limit the scope of these requests so that Harman can better understand which of its many products are at issue and avoid having a "moving target" for complying with its discovery obligations. We suggested that MIT narrow these requests to "Accused Products" and define "Accused Products" to include those products that MIT has accused of infringement based upon MIT's reasonable pre-filing investigation and products Harman identified in its discovery responses. You proposed that we limit MIT's document requests—for now—to apply only to the Traffic Pro product and the three other

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 18, 2005
Page 3

products Harman identified for you: RB3, RB4 and M.O.A.R.[1]. You were unwilling to limit the scope of MIT's requests to those three products for future requests. Instead, you insisted that MIT would use the discovery process to identify additional products that MIT might accuse of infringement; after which, those products would also become subject to MIT's discovery requests. We asked that MIT identify those products that it presently accuses (based upon MIT's reasonable pre-filing investigation), subject to MIT's right to accuse additional products at a later time, and propose a limitation on these requests that encompasses those accused products and any potentially accused products.

Regarding Request Nos. 13 and 14, we asked MIT to assure us that it will not (as it threatened to do during the parties' 2-year pre-filing negotiations) harass Harman's customers. You expressed concern over future inconsistent interpretations of the word "harass." We asked MIT to agree that it will seek all discovery from Harman *first*, and only after MIT allows Harman an opportunity to cure any noted deficiencies will MIT seek discovery directly from Harman's customers. You agreed to consider an agreement along those lines and provide a written proposal to us. We further stated that we maintain our objection as to the identity of "prospective" customers in Request No. 14, which we now realize also applies to "potential customers" in Request No. 13.

## C. MIT's Interrogatory No. 2

MIT objected to our reference to Harman's initial disclosures in response to this interrogatory. We agreed to provide a supplemental response to cure this objection.

## II. Harman's Concerns

### A. Privilege Logs & MIT's Document Production

We requested that the parties exchange privilege logs this afternoon. You informed us that MIT would not be able to produce its privilege log any earlier than the close of business on Friday. We agreed to conduct a mutual exchange via e-mail of PDF versions of our respective privilege logs at the close of business on Friday.

---

[1] We also confirmed that we have produced existing, non-privileged documents related to M.O.A.R. that we were able to locate during our reasonable investigation. And, we informed you that our discovery efforts are on-going and we will supplement as required under the Federal Rules.

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 18, 2005
Page 4

You confirmed that MIT will also be producing documents in response to Harman's Document Requests on Friday, October 21, 2005. Please let us know as soon as these documents become available.

## B. MIT's Failure to Respond to Any of Harman's Interrogatories

MIT has not yet responded to *any* of Harman's seven interrogatories. Instead, MIT has lodged 17 general objections, and several specific objections to each interrogatory without identifying which objections apply to which interrogatory. During our call we asked you to confirm that MIT would be supplementing its interrogatory responses to provide, *at least* the information it should have had in its possession as the result of its reasonable pre-filing investigation, prior to filing the Complaint. You stated that you did not interpret our requests as seeking that information and that MIT would not provide such information unless Harman revises its interrogatories. We respectfully disagree, for at least the following reasons.

As an initial matter, we find it quite unusual that MIT failed to respond to *any* of Harman's interrogatories. We find it very difficult to understand how MIT has absolutely no discoverable information regarding, at least: its interpretation of the claims of MIT's own patent (Interrogatory Nos. 1 and 2); whether MIT is charging Harman with literal or doctrine of equivalents infringement and why (Nos. 3 and 4); how Harman's products infringe any claim of the Patent-In-Suit (No. 5); whether MIT had a working prototype of the invention claimed in its own patent and where and how that prototype was created, implemented (as claimed in MIT's patent), ... demonstrated ... and/or reduced to practice (Nos. 6 and 7). This is standard and basic patent discovery to which Harman is entitled.

To the extent that MIT claims it requires additional discovery to respond to Harman's interrogatories or that Harman's requests are premature, MIT should at least be able to provide the information it relied upon at the time it filed its complaint and accused Harman of infringement. As part of its pre-filing investigation, MIT was required to compare at least one "properly construed claim . . . . with the accused device to determine whether all of the claim limitations are present either exactly or by a substantial equivalent." *Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1141 (Fed. Cir. 1997); *see also Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002). Thus, MIT should have discoverable information in response to each of Harman's interrogatories, regarding the at least one "properly construed claim" that it compared against at least one "accused device to determine whether all of the claim limitations are present either exactly or by a substantial equivalent." MIT's pre-filing investigation documents are thus precisely the type of information sought by Harman's Interrogatories Nos. 1-7. Please confirm that MIT will supplement its responses to include, at least, the information it was required to have in its possession prior to filing suit against Harman.

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 18, 2005
Page 5

Additionally, we note that many of MIT's 17 general objections are improper and we cannot discern what information MIT is withholding and upon which objection MIT's refusal to respond is based. A most egregious example is MIT's general objection no. 2, which purports to treat Harman's 7 interrogatories as 29 interrogatories without explaining how MIT arrived at that number and what information is being withheld based upon this objection. Please confirm that MIT will withdraw this general objection, or state which of Harman's interrogatories this objection applies to and what information is being withheld on this basis.

Another example is MIT's general objection no. 6 that objects to providing information "not in the possession, custody or control of MIT ... not owned by MIT, or .... subject to a non-disclosure agreement ... or confidentiality agreement with a third-party." Here again, MIT fails to specify to which requests this objection applies, and Harman cannot determine what information is being withheld based upon this objection. Please withdraw this general objection.

Likewise, MIT's general objection No. 7 objects to Harman's interrogatories as "vague, ambiguous, and/or confusing, incomprehensible and/or unanswerable because of undefined or ill-defined terms and/or confusing syntax, or [because] they fail to describe with reasonable particularity the information sought." Again, MIT has failed to specify to which interrogatories this general objection applies; thus, Harman cannot determine what information is being withheld based upon this objection. Nonetheless, we find it hard to understand why MIT objects to "undefined or ill-defined terms," when you told me during our last teleconference that terms which are not specifically defined should be defined according to their "plain and ordinary meaning." Additionally, we find it particularly improper for MIT to object to Harman's use of terms that come directly from MIT's own patent. *See e.g.*, Interrogatory Nos. 1 and 7. Please withdraw this general objection.

MIT's general objection No. 8 appears to be duplicative of MIT's specific objections regarding overbreadth, undue burden, and oppression. Thus, we are not sure what purpose this general objection serves; nor are we able to determine which interrogatories this objection applies to and what information is being withheld on this basis. Please withdraw this general objections.

Also, MIT's general objection No. 10 states that "[i]nformation supplied in MIT's responses may not be based solely upon the knowledge of the executing parties, but may include the knowledge of MIT'agents, representatives, and attorney(s), unless privileged." Aside from the fact that MIT's responses provide *no information at all*, MIT has failed to identify any of these other parties and for which responses they provided information. Please confirm that MIT

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 18, 2005
Page 6

will provide the identifies of any other parties who provided information related to MIT's responses and for which responses they provided information.

MIT's general objection no. 14, states that "[t]he presence or absence of any general or specific objection does not mean that MIT does not object on any other grounds." This is clearly improper. Rule 33(b)(1) requires MIT to answer each interrogatory "fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable." This must occur "within 30 days after the service of the interrogatories." Rule 33(b)(3). Thus, "[a]ny ground not stated [by MIT] in a timely objection is waived…" Rule 33(b)(4).

To date, we have not received the required verification for MIT's interrogatory responses. Kindly send us that verification immediately.

## C. MIT's Refusal to Produce Documents

Out of Harman's 29 document requests, MIT refuses to produce *any* documents in response to at least 20 requests. And, MIT has agreed to produce limited documents in response to *only* 9 of Harman's 29 requests. Again, MIT has asserted 18 general objections instead of providing proper responses to our reasonable standard discovery requests.

As discussed above, MIT's claim that invalidity and unenforceability are not at issue is erroneous. Nonetheless, Harman's Answer, Counterclaims and Reliance on Jury Demand/Jury Demand served today obviates the need for any further dispute as to whether the invalidity and unenforceability of the Patent-In-Suit are at issue. Accordingly, please withdraw this objection and provide documents in response to Request Nos. 7-11, 17-18, 24, 27, and 28 immediately.

Harman's Document Request Nos. 2-4 seek, *inter alia*, all documents MIT relied upon when asserting infringement against Harman. As discussed above, this information should have been assembled before MIT filed suit and unquestionably is discoverable. Particularly inappropriate is MIT's "overbroad, unduly burdensome" objection to Request No. 2, which seeks "all documents and things upon which MIT relied, at the time MIT filed its Complaint, to support the allegations that Harman has infringed the Patent-In-Suit." MIT's representation that it will produce similar documents in response to *other requests*, but not in response to Request Nos. 2 is improper and insufficient. Rule 34 requires MIT to "serve a written response" to each request, stating "with respect to each item or category, that inspection and related activities will be permitted as requested." Please withdraw your objections to Request Nos. 2-4 and produce responsive documents.

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 18, 2005
Page 7

### D. MIT's Refusal To Accept Service of A Subpoena for James R. Davis, a Named Inventor of the Patent-In-Suit.

You confirmed that you represent James R. Davis, a named inventor of the patent-in-suit, in connection with this lawsuit but that you will not accept service of a subpoena for him or his documents. You also confirmed that MIT's document production does not and will not include any documents in Mr. Davis' possession, custody or control. You proposed that we negotiate an agreement to accept service on behalf of all foreign witnesses before you would agree to accept service on Mr. Davis' behalf. We respectfully decline MIT's proposal. Please confirm that the address given for Mr. Davis in MIT's initial disclosures is an accurate address.

Please bear in mind that the above-identified issues are part of our on-going discussions regarding discovery, and we reserve the right to raise further issues as our discussions and production efforts progress. We look forward to discussing the remaining issues with you, including those raised in this letter, during the continuation of our call at 4:30 p.m. CST this afternoon.

Very truly yours,

Jamal M. Edwards

cc: Robert J. Muldoon, Esq.

# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

### BOSTON DIVISION

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br>A Delaware Corporation,<br>Defendant. | Case No: **05-10990 DPW**<br>Hon. Douglas P. Woodlock |

### HARMAN'S FIRST SET OF REQUESTS FOR THE
### PRODUCTION OF DOCUMENTS AND THINGS (Nos. 1-28)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Harman

International Industries, Incorporated ("Harman") requests that Massachusetts Institute of

Technology ("MIT") produce, in accordance with the Federal Rules of Civil Procedure and the

Local Rules of this Court, the following documents and things within thirty (30) days from

receipt of this First Set Of Requests For The Production Of Documents And Things at the law

offices of Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601, or at such

other place as the parties may agree.

### REQUESTS

1. All documents and things referring or relating to U.S. Patent No. 5,177,685 (the

"Patent-In-Suit"), the application that lead to its issuance (application number 565,274), or the

subject matter thereof, including without limitation all engineering notebooks, laboratory

notebooks, records, logs, and files created or maintained by, or at the direction of, Dr. James R. Davis, Mr. Christopher M. Schmandt or Dr. Sam Pasternack.

2. All documents and things upon which MIT relied, at the time MIT filed its Complaint, to support the allegations that Harman has infringed the Patent-In-Suit.

3. All documents and things upon which MIT relied, at the time MIT sent its March 24, 2003 letter to Porsche (See Ex. A to Harman's Complaint in Case No. 05 C 1481), to support the assertion that Porsche needs "to license on a non-exclusive basis the right to practice these patents." ·

4. All documents and things upon which MIT relied, at the time MIT sent letters to competitors or potential customers of Harman such as Garmin International, Inc., Alpine Electronics, Inc., Siemens AG, DaimlerChrysler AG, Bayerische Motoren Werke AG (BMW) and/or any other company to support the assertion that these companies need to license the Patent-In-Suit.

5. All documents and things referring or relating to Harman and/or any Harman product.

6. All documents and things referring or relating to Back Seat Driver.

7. All documents and things referring or relating to any disclosure of any portion of the subject matter of the Patent-In-Suit to any third party.

8. All documents and things referring or relating to any disclosure to, or use by, any third party of any portion of the subject matter of the Patent-In-Suit before the filing date of patent application number 565,274.

9. All documents and things concerning the first sale, first offer for sale, or first public use or display of any alleged invention of the Patent-In-Suit.

2

10. All documents and things referring or relating to any experimental use, field test, and/or prototype of any alleged invention of the Patent-In-Suit.

11. Documents sufficient to show each and every prototype, project, or product conceived, designed, researched, manufactured, used, sold, offered for sale, or imported into the United States allegedly within the scope of any claim of the Patent-In-Suit, including without limitation any activity of any third party in making, using, selling or offering for sale any product allegedly within the scope of any claim of the Patent-In-Suit.

12. All documents and things referring or relating to Robert Swartz and/or Web Telephony, LLC.

13. All documents and things relating to any assertion, charge, claim, or allegation of infringement of the Patent-In-Suit, including without limitation correspondence, pleadings, discovery sought or obtained, transcripts, exhibits, videotapes, expert reports, or opinion.

14. All documents and things referring or relating to MIT's decision to assert the Patent-In-Suit against Harman or any third party.

15. All documents and things evidencing, referring or relating to any communication between MIT, or anyone acting or purporting to act on MIT's behalf, and any party other than MIT, regarding the Patent-in-Suit or this litigation.

16. Documents sufficient to show the complete chain of title for, and MIT's ownership of and standing to sue under, the Patent-in-Suit.

17. All documents referring or relating to any prior art known, considered, reviewed or evaluated before or during prosecution, or after the grant of, the Patent-In-Suit.

18. All documents referring or relating to any search, investigation, study, analysis, evaluation or opinion relating to prior art, patentability, novelty, validity, enforceability,

ownership and/or infringement of any claim of the Patent-In-Suit and the results of any such search or investigation.

19. Documents sufficient to show MIT's document retention policies from 1987 to present.

20. All documents and things referring or relating to MIT's first knowledge of any Harman product that MIT alleges infringes the Patent-In-Suit.

21. All documents and things passing between MIT and any named inventor of the Patent-In-Suit.

22. Copies of all patents for which any named inventor of the Patent-In-Suit is named as an inventor.

23. The personnel, student and/or employment history files for each of the named inventors of the Patent-In-Suit and any MIT students and/or employees disclosed in MIT's initial disclosures, including curricula vitae.

24. All documents and things concerning any opinion concerning the validity, enforceability, or infringement by any person of the Patent-In-Suit.

25. All documents referring or relating to Charles G. Call, including without limitation all documents provided to or received from Charles C. Call.

26. All documents referring or relating to the funding or sponsorship for the Media Lab, including but not limited to the work and/or project that led to the Patent-In-Suit.

27. All thesis drafts, revisions, notes and documents referring or relating or leading up to the September 1989 thesis paper authored by James R. Davis, entitled Back Seat Driver: voice assisted automobile navigation.

28. Documents sufficient to show MIT's thesis submission, review, certification, acceptance and publication process(es).

29. Documents sufficient to show all incentives or rewards by MIT to inventors for issued patents.

Dated:   September 6, 2005

_____

Robert J. Muldoon, BBO #359480
James W. Matthews, BBO #560560
Edward S. Cheng, BBO #634063
SHERIN & LODGEN LLP
101 Federal Street
Boston, MA 02110
(617) 646-2000


William A. Streff Jr. P.C.
Michelle A.H. Francis
Jamal M. Edwards
KIRKLAND & ELLIS L.L.P.
200 East Randolph Drive
Chicago, IL  60601
312.861.2000

*Attorneys for Defendant Harman, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2005, I caused a true and correct copy of HARMAN'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-28) to be served on the following counsel of record via email with a courtesy copy via U.S. Mail:

Steven M. Bauer, Esq. (sbauer@proskauer.com)
Kimberley A. Mottley, Esq. (kmottley@proskauer.com)
Proskauer Rose LLP
One International Place  14th Floor
Boston, Massachusetts  02110-2600

By: _____
Attorney for Defendant

.

# EXHIBIT G

 # Jim Davis
jrd3@alum.mit.edu

# Professional

I'm interested in building software systems that improve communication among people. I believe that communication mediums of the future will have an increasing understanding of the structure and content of the messages they transmit. They will manipulate, reformat, and even generate that content. I am interested in hypertext systems, network information access, and collaboration.

## Technical Biography

The first image I had of computers came from my father, when he was a field repairman for IBM. He used to bring home broken boards for me to play with. The PC (printed circuit) boards of those long ago days were a lot more interesting to look at than today's boards, they had lots of different shapes and colors. Of course I had no clue what any of them did. In 1973 I entered MIT, where I studied at the Architecture Machine Group, the ancestor of the Media Lab. From 1977 until 1985 I worked in a variety of industrial and research positions, including the Multics project, and culminating in the Atari Cambridge Research Lab. In 1985 I entered the Media Lab doctoral program. My main pieces of work there were *Direction Assistance* (which gives spoken driving instructions over the telephone) and *Back Seat Driver* (which does the same thing in a car, while you're driving.). In 1989 I received a PhD, and after a year's post-doc I began to work for Xerox, first at the Design Research Institute, and then at PARC. Since then, I worked for two startups (Coursenet and Intelligent Markets) in SF, with a brief stop at Sybase in between. Now I work for the Ontario Principal's Council in Toronto.

## What's here

collected papers
        The papers I've published in the technical/scholarly world.
unpublished writings
software
        Free, unsupported sofware, all of which has been released by Xerox, but is provided with NO
        WARRANTIES, EXPRESS OR IMPLIED, of any kind. Includes, among others, a cheap HTML
        parser in perl.
Hacks
        Nothing special
Pictures including Death Valley and Yosemite

# Personal Biography

Jim Davis                                                                     Page 2 of 2

This is brief, because all I really hope to do here is distinguish myself from all the other people named "Jim Davis" In particular, I am not the one who draws the comic strip featuring the cat (whose name I will not mention here, lest it make my web page even more likely to be found by those seeking that person.)

I was born in Berkeley, California on December 28, 1955. I went to high school in Suffern, New York (40 miles north of the city). In 1973 I moved to Cambridge to attend MIT. My son, Adam, was born in 1977, the same year I graduated. In 1985 I returned to MIT to get my PhD. In 1990 I married Anna Korteweg. In 1991 I moved to Ithaca, New York, and in 1996 back to Berkeley, where I now reside. My daughter Michal Korteweg Davis was born on May 28, 2002. In July, 2004, we moved to Toronto, Canada.

I've played in some rock bands in Boston and Ithaca, New York. All were fun, none were famous.

I used to practice the dance form known as Contact Improvisation, and for many years was the curator of the CI web site, but no longer. It is now at http://www.contactimprov.net/.

Okay, am I the Jim Davis you were looking for? If not, good luck searching for the right one.

For the academically inclined, here's my vita. For the industrial, here is my resume.

Updated 12 August 2004

# EXHIBIT H

US005177685A

# United States Patent [19]

## Davis et al.

[11] Patent Number: 5,177,685

[45] Date of Patent: Jan. 5, 1993

[54] **AUTOMOBILE NAVIGATION SYSTEM USING REAL TIME SPOKEN DRIVING INSTRUCTIONS**

[75] Inventors: James R. Davis, North Cambridge; Christopher M. Schmandt, Milton, both of Mass.

[73] Assignee: Massachusetts Institute of Technology, Cambridge, Mass.

[21] Appl. No.: 565,274

[22] Filed: Aug. 9, 1990

[51] Int. Cl.⁵ ............................................. G01C 21/00
[52] U.S. Cl. .............................. 364/443; 340/988; 364/449; 364/453
[58] Field of Search ................ 340/988, 989, 990, 995; 364/443, 444, 449, 450, 453, 436

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,139,889 | 2/1979 | Ingels | ........................... 340/989 X |
| 4,697,281 | 9/1987 | O'Sullivan | ........................... 455/33 X |
| 4,734,863 | 3/1988 | Honey et al. | ..................... 340/988 X |
| 4,796,191 | 1/1989 | Honey et al. | ....................... 364/450 |
| 4,812,843 | 3/1989 | Champion, III et al. | ...... 340/989 X |
| 4,882,696 | 11/1989 | Nimura et al. | . |
| 4,891,761 | 1/1990 | Gray et al. | ........................ 364/449 X |
| 4,926,336 | 5/1990 | Yamada | .......................... 364/444 |

(List continued on next page.)

### OTHER PUBLICATIONS

"Synthetic Speech for Real Time Direction–Giving", C. M. Schmandt et al., Digest of Technical Papers, International Conference on Consumer Electronics, Rosemont, Ill., Jun. 6–9, 1989.
"Synthetic Speech for Real Time Direction Giving", C. M. Schmandt et al., IEEE Transactions on Consumer Electronics, 35(3):649–653, Aug. 1989.
"The Back Seat Driver: Real Time Spoken Driving Instructions", J. R. Davis et al., Proceedings of the IEEE Vehicle Navigation and Information Systems Conference, Toronto, Canada, Sep. 1989.
"Back Seat Driver: Voice Assisted Automobile Navigation", by J. R. Davis, Ph.D. Thesis, Massachusetts Institute of Technology, Sep., 1989.
"CD–ROM Assisted Navigation Systems", by O. Ono

et al., Digest of Technical Papers, IEEE International Conference on Consumer Electronics, Rosemont, Ill., Jun. 8–10, 1988.
"Attention, Intentions, and the Structure of Discourse", by B. J. Grosz and C. L. Sidner (Computational Linguistics, 12(3):175–204, 1986.
"The Intonational Structuring of Discourse", by J. Hirschberg et al., Proceedings of the Association for Computational Linguistics, 136–144, Jul. 1986.
Automobile Electronic News, vol. 1, No. 16., "U.K. Picks GEC to Head Navigation Project", by James Fallon, Aug. 28, 1989.
"Softening of the Arteries", by Bruce Weber, The New York Times Magazine, p. 78, Aug. 26, 1990.
"Terminal Back Seat Driver", Technology Review, Jul., 1990, p. 10.

(List continued on next page.)

Primary Examiner—Parshotam S. Lall
Assistant Examiner—Edward Pipala
Attorney, Agent, or Firm—Choate, Hall & Stewart

[57] **ABSTRACT**

An automobile navigation system which provides spoken instructions to the driver of an automobile to guide the driver along a route is disclosed. The heart of the system is a computing apparatus comprising a map database, route finding algorithms, a vehicle location system, discourse generating programs, and speech generating programs. Driver input means allows the driver to enter information such as a desired destination. The route finding algorithms in the computer apparatus calculate a route to the destination. The vehicle location system accepts input from a position sensor which measures automobile movement (magnitude and direction) continuously, and using this data in conjunction with the map database, determines the position of the automobile. Based on the current position of the automobile and the route, the discourse generating programs compose driving instructions and other messages according to a discourse model in real time as they are needed. The instructions and messages are sent to voice generating apparatus which conveys them to the driver.

**58 Claims, 3 Drawing Sheets**



# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **MASSACHUSETTS INSTITUTE OF TECHNOLOGY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,**<br>A Delaware Corporation,<br>**Defendant.** | Case No: **05-10990 DPW**<br>**Hon. Douglas P. Woodlock** |

**[PROPOSED] ORDER GRANTING
DEFENDANT HARMAN'S MOTION TO ISSUE LETTERS ROGATORY**

WHEREAS, this Court has considered the parties' arguments on Defendant Harman's Motion To Issue Letters Rogatory, requesting this Court's assistance in seeking the aid of the Ontario Superior Court of Justice to enforce a demand on Dr. James R. Davis, 27 Borden Street, Toronto Ontario Canada M5S 2M8 for testimony at a time mutually agreed to by counsel for Dr. Davis and counsel for Harman and the production of documents in his possession or under his control as set forth in Exhibit A to said motion; and

It appearing to this Court that it is desirable that the Letters Rogatory issue so that the request can be served.

IT IS ORDERED that Defendant Harman's Motion To Issue Letters Rogatory is granted.

Dated: _____

_____
Honorable Douglas P. Woodlock, United States District Judge