UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, <br><br> Defendant. | Civil Action No.: 05-10990 DPW |

## MIT'S MOTION TO COMPEL PRODUCTION OF DISCOVERY AND DEPOSITIONS

Pursuant to Rules 26, 30, 34, and 37 of the Federal Rules of Civil Procedure, and Local Rules 34.1, and 37.1, Plaintiff Massachusetts Institute of Technology ("MIT") hereby moves for an order compelling Defendant Harman International Industries, Inc. ("Harman") to produce technical evidence directly related to its infringing activities, and deposition dates.

It has been *six months* since MIT served its written discovery requests, and three months since this Court instructed Harman to comply with its obligations to work with MIT to resolve discovery disputes, yet Harman still has not produced 1) samples of its accused products as it sells those products to its customers; 2) the software and source code used by those products; or 3) dates for depositions of its technical witnesses. After six months of continuous stalling and promising of the information "next week," "after the holidays," "when people return from vacation," etc., and with discovery rapidly coming to a close, Harman now *refuses* to produce any technical information *central* to MIT's infringement case except under extreme conditions -- for example, only if MIT inspects the source code in Harman's counsel's offices. Indeed, despite the April 21, 2006 close of fact discovery, Harman just last week, for the first time, stated it

would refuse to schedule even a *single* technical witness's deposition, until MIT provides Harman detailed infringement contentions -- contentions that necessarily need the technical information that Harman withholds.

Without the Court's immediate intervention, MIT has no easy access to the software, database or source code included with Harman's products, or to witnesses who can testify in detail how the product was designed and operates.  MIT has the right to have this information with sufficient time to give it a chance to review and analyze prior to exchanging claim construction contentions -- *which were scheduled by agreement towards the end of discovery, and clearly not as gating issues*.  MIT comes to the Court, having already produced its documents and scheduled its witnesses for deposition, to ask the Court to compel Harman to produce the discovery sought, to provide immediate deposition dates for all witnesses noticed by MIT, and to set a schedule for completion of fact discovery commensurate with those productions.

### A.    Harman's Refusal to Produce Product Samples, Software and Source Code.

MIT first served its requests for production of documents on July 26, 2005.  Those requests included requests for:

1)    "documents and things concerning the design, development, manufacture, marketing, sale or offer for sale of any automobile navigation system products or services used, manufactured or sold by Harman;" and

2)    "[a] sample of each automobile navigation system product or service, used, manufactured or sold by Harman."

After taking a first extension, Harman responded on September 6, 2005, stating that it would "produce existing, responsive, non-privileged document relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States," and would "produce existing,

responsive, non-privileged representative samples of its United States TrafficPro®, Rb3/Rb4®

and M.O.A.R. products." (See Exs. 1 & 2, Reqs. 8, 22.)

*Here it is four months later, and to date, no product samples, software, or source code*

*has been produced*. Importantly, the delay is not MIT induced or sanctioned. MIT requested

these items in numerous conversations and correspondence, at least on September 20, 2005,

November 11, 2005, November 23, 2005, and January 10, 2005. (See Exs. 3 - 6.) Virtually

every time, Harman's counsel told MIT's counsel that production of items such as the product

samples were "in progress," promising at one point that he "expect[ed the samples] to be ready

for delivery soon," and then on December 8 saying that the samples would be produced by

December 19. (See Exs. 7 - 8.)

On January 17, 2006, for the first time, Harman's counsel stated that "product samples"

for certain of its accused products (but not all of them) were available for pick-up by MIT's

counsel, but that these product samples would be doctored by Harman's engineers and that MIT

would have to pay for those modifications. Harman's counsel has stated that it will only release

these products to MIT on the condition that MIT agree to pay the "cost" of such units at $3,000

per unit, many times greater than the actual cost of these products to Harman's customers. (See

Ex. 9.)

MIT's discovery request was clear and simple: MIT wants a sample of the products as

sold, not products modified by Harman's engineers for this litigation. MIT is entitled to

"samples of *actual products as commercially sold* by Harman." (See Ex. 3.) Yet, Harman

refuses to produce these most basic and centrally relevant items – the software and product

samples – which MIT sought by discovery requests served on Harman six months ago.

Equally obstructionist is Harman's refusal to produce the source code used by Harman's accused products. During conversations on January 6 and 12, again for the first time after months of delay, Harman's counsel stated that Harman would not, absent Court order, allow MIT's counsel to take possession of any electronic or *printed* version of the source code for MIT's counsel to use in working with its experts to analyze the code. Instead, Harman's counsel offered to permit MIT's counsel and experts to access the code at *Harman's* counsel's offices in Chicago or Boston, with any information printed from those reviews first requiring approval of Harman's counsel prior to leaving with any printed pages.

This is not a case involving competitors – MIT is an educational institution, not a competitor in the automobile navigation market. The parties have agreed upon and submitted for the Court's approval a stipulated protective order to resolve any confidentiality concerns. MIT has offered to keep the software under the same security conditions as Harman is willing to keep it -- under lock and key at counsel's office.

There is no reason to suspect that MIT's counsel's office is any less secure than Harman's counsel's office. MIT's counsel has suggested language standard in these kinds of cases, which provided additional measures to ensure the protection of the confidentiality of Harman's code such as provision of one non-networked computer terminal on which the source code could be viewed, which would be housed in MIT's counsel's offices with appropriate levels of encryption and safeguarding. (See Ex. 10.) Harman's counsel refused this offer, stating in effect that it trusted its local counsel's office in Boston more than MIT's counsel. There is no reason for this gamesmanship. An appropriate protective order should be sufficient to quell any confidentiality concerns Harman has, and MIT's attorneys, as officers of the Court, are as able to ensure protection of this information as Harman's local counsel.

MIT now comes before the Court with a mere three months left in fact discovery, seeking that these items, those most central to its infringement case – samples of Harman's accused products as commercially sold to its customers, and the software and source code employed by those products, be produced immediately.

**B.    <u>Harman's Refusal to Schedule Technical Depositions</u>**

MIT noticed Harman's 30(b)(6) deposition on September 28, 2005. After months of stalling, finally, in a December 8 email, Harman's counsel memorialized an agreement of the parties to "work toward developing a tentative deposition schedule for all outstanding fact depositions by January 6." (See Ex. 8.) On January 6, MIT was prepared with dates for all the MIT witnesses that Harman had noticed; Harman's counsel, however, stated he needed yet more time to get dates for the witnesses MIT had noticed, and stated that he would be prepared with dates for depositions of all noticed deponents a week later, on January 13, 2006. On that date, again, Harman's counsel was *still* unprepared to schedule the noticed deposition.

Importantly, on January 12, for the first time, Harman's counsel refused to offer even one date of availability for *any* of Harman's technical witnesses. Harman's counsel now says, after delaying for four months, that Harman will not allow any technical witness to be deposed until MIT provides its claim construction contentions. MIT has, already, provided its infringement contentions, and so Harman knows precisely MIT's claims. For Harman to unilaterally set demands on contentions before fact discovery even begins, after stalling fact discovery for months, is wrong.

MIT is entitled to technical discovery from Harman, through Harman's witnesses, before it needs to commit to a claim construction. That is the scheduled the parties agreed to. Harman

has no right to stall for months, and then refuse to allow witnesses to be deposed until it gets

what it wants.

An order should be immediate, for the production of witnesses.  Given Harman's stalling,

that order should require the witness to be available within five days of MIT's counsel's

requested date.

<p style="text-align:center">*            *            *</p>

Certainly, there are other discovery issues outstanding which MIT's counsel is still trying

to resolve with Harman's counsel, and which MIT may ask the Court to address at a later date.

MIT raises these particular issues with the Court now as they most directly impact MIT's ability

to move forward with discovery in this case.

## REQUEST FOR RELIEF

WHEREFORE, MIT respectfully requests that this Court:

(1)    Order that Harman produce the following no later than February 3, 2006, or set an
alternative date:

a) product samples of each accused product as that product  is made commercially
available to Harman's customers;

b) the software that operates on those accused products (and all prior versions
thereof); and

c) the source code for those products, which will be housed at MIT's counsel's
offices;

(2)    Order that the date for exchange of preliminary claim constructions listed in the
Court's November 14, 2005 Scheduling Order be set for a date 30 days after Harman
has produced the product samples, software and source code as above
described;

(3)    Order that the parties set a schedule for completion of all currently noticed
depositions no later than February 3, 2006, or set an alternative date; and

(4)    Order such other and further relief as the Court deems equitable and/or
appropriate.

**Compliance with Local Rules 7.1 and 37.1**

MIT's counsel and Harman's counsel had numerous discussions, from September 2005 to present, attempting to resolve these disputes.  As the disputes remain unresolved after exhaustive discussions and months of delays, MIT now seeks the Court's assistance.

Respectfully Submitted,

Massachusetts Institute of Technology,
By its Attorneys,

/s/ Steven M. Bauer
Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
John W. Pint (BBO# 660548)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone:  617-526-9600
Fax:     617-526-9899

January 18, 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-10990 DPW |
| v. | ) ) | |
| HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, | ) ) ) | |
| Defendant. | ) ) ) | |

## MIT'S FIRST REQUEST FOR THE
## PRODUCTION OF DOCUMENTS AND THINGS (1-26)

Plaintiff Massachusetts Institute of Technology ("MIT"), pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests that Defendant Harman International Industries, Inc. ("Harman") produce for inspection and copying the documents and tangible things identified below. Such documents and things shall be produced within thirty (30) days of service of these requests at the office of PROSKAUER ROSE LLP, One International Place, 22nd Floor, Boston, MA 02110 or at another mutually convenient location.

These requests are to be deemed continuing and any information secured subsequent to service of such documents and things must be furnished with supplemental responses upon receipt of such information in accordance with Federal Rule of Civil Procedure 26(e).

<u>DEFINITIONS</u>

Notwithstanding any definition set forth below, each word, term, or phrase used in this request for documents and things is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.  For purposes of these document requests, the following definitions, regardless of whether the defined word is capitalized, shall apply:

A.    "MIT" means the Massachusetts Institute of Technology, including its servants, agents, representatives, employees, principals, attorneys, and all other persons, forms or corporations acting with it or on its behalf.

B.    "Harman" means Harman International Industries, Inc., including its servants, agents, representatives, employees, principals, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, successors-in-interest, and all other persons, forms or corporations acting with it or on its behalf.

C.    "'685 Patent" means U.S. Patent No. 5,177,685.

D.    The term "prior art" encompasses, by way of example and without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102-03.

E.    "Automobile navigation system product[s] or service[s]" refers to any product or service, or portion or component thereof which provides or is designed to provide real-time spoken driving instructions.  The term includes, but is not limited to, products or services, or portions or components thereof capable of being installed by an automobile manufacturer or independently of an automobile manufacturer.  The term includes, but is not limited to, Harman's TrafficPro® brand of automobile navigation system, its TrafficPro II™ brand of automobile navigation system, its RB3 and RB4 brands of automobile navigation system, and

equipment or components made, used, or sold by Harman for use in the Porsche®
Communication Management System.

  F.  "All" means "any and all."

  G.  Any word written in the singular shall be construed as plural and vice versa.

  H.  "Concerning" means referring to, relating to, describing, evidencing, or
constituting.

  I.  As used herein, the term "Document[s]" shall be synonymous in meaning and
equal in scope to the usage of the term in Fed. R. Civ. P. 34(a). Electronic correspondence is
also included within the meaning of this term. A draft or non-identical copy is a separate
document within the meaning of this term.

  J.  As used herein, the term "or" means "and/or."

  K.  As used herein, the term "Communication[s]" means all letters, memoranda, notes
and messages, whether printed, typed or handwritten, including but not limited to all electronic
modes of correspondence such as electronic mail and faxes, and including documents reflecting
conversations and meetings.

  L.  "Person" means any natural person or juridical person including any corporation,
partnership, sole proprietorship, agency, or business association of any type or character.

  M.  As used herein, the term "Identify" means:

    a)  with respect to persons, give, to the extent known, the person's full name,
present or last known address, and when referring to a natural person, the present or last known
place of employment, his/her title and position with that employer; and

b)    with respect to documents, give, to the extent known, the: (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

## INSTRUCTIONS

A.    When a claim of privilege is asserted in the objection to any request or any subpart thereof, and any document is not provided on the basis of that assertion, identify in the objection the nature of the privilege that is being claimed with respect to each such document. If the privilege is being asserted in the connection with a claim or defense governed by state law, indicate the particular privilege rule that is being invoked.

B.    When an objection is made to any request, or subpart thereof, state with specificity all grounds for the objection.

C.    With respect to each document which is withheld from production for any reason, provide a statement setting forth:

(i)      the name and title of the author(s);

(ii)     the name and title of the person(s) to whom the document was addressed;

(iii)    the name and title of the person(s) to whom copies of the document were sent;

(iv)    the date on which the document was written or otherwise produced and the date on which it was mailed, sent or delivered to its addressees;

(v)     the number of pages contained in the document;

(vi)    a brief description of the nature and subject matter;

(vii)   the grounds upon which it is being withheld; and

(viii)  the paragraph number to which the document is otherwise responsive.

D.      When a document contains both privileged and non-privileged material, the non-privileged material should be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, specifically indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and person performing the redaction or alteration.  Any notice of redaction must be clearly visible on the redacted document.

E.      If production of any requested document is objected to on the grounds that production is unduly burdensome, set forth the burden or expense of the proposed discovery and why Harman contends that the burden or expense outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues, as set forth in Fed. R. Civ. P. 26(b)(2).

F.      If requested documents are maintained in a file, the file folder is included in the request for production of those documents.

G.      For all documents produced by Harman in this litigation,

1.      Provide, by document Bates number range, the source of the original documents;

2.      Provide a log of all documents withheld on grounds of privilege; and

3.      Describe the company's document retention policies and efforts to preserve e-mail and other electronic documents responsive to MIT's discovery requests.

DOCUMENT REQUESTS

REQUEST NO. 1:

All documents and things concerning the scope, validity, infringement, or enforceability of the '685 Patent.

RESPONSE TO REQUEST NO. 1:


REQUEST NO. 2:

All documents and things concerning any search, investigation, review, opinion, study, analysis, event or reference concerning, without limitation, the scope, validity, infringement or enforceability of the '685 Patent, including but not limited to, opinions, summaries, notes, memoranda, or the equivalent prepared by Harman or any of its representatives.

RESPONSE TO REQUEST NO. 2:


REQUEST NO. 3:

All documents ever considered, evaluated, or possessed by Harman regarding the scope, novelty, patentability, validity, or enforceability of the subject matter disclosed and claimed in the '685 Patent.

RESPONSE TO REQUEST NO. 3:

REQUEST NO. 4:

All documents and things tending to support or refute any argument by Harman that the '685 Patent is invalid, void, and/or unenforceable under the patent laws of the United States, Title 35 of the United States Code.

RESPONSE TO REQUEST NO. 4:


REQUEST NO. 5:

All prior art patents and publications that Harman considers pertinent to the subject matter of the '685 Patent.

RESPONSE TO REQUEST NO. 5:


REQUEST NO. 6:

All documents and things concerning Harman's first awareness of the '685 Patent.

RESPONSE TO REQUEST NO. 6:


REQUEST NO. 7:

All documents and things concerning any of Harman's efforts, after Harman became aware of the '685 Patent, to modify any automobile navigation system products or services used, manufactured, or sold by Harman.

RESPONSE TO REQUEST NO. 7:

REQUEST NO. 8:

All documents and things concerning the design, development, manufacture, marketing, sale or offer for sale of any automobile navigation system products or services used, manufactured or sold by Harman, including but not limited to: all laboratory notebooks, test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental versions of such products.

RESPONSE TO REQUEST NO. 8:


REQUEST NO. 9:

If Harman contends that its automobile navigation system products and services do not infringe the '685 Patent, all documents and things that support or refute such a contention.

RESPONSE TO REQUEST NO. 9:


REQUEST NO. 10:

All documents concerning comparisons of any automobile navigation system product or service manufactured or sold by Harman, and any of the claims of the '685 Patent.

RESPONSE TO REQUEST NO. 10:

REQUEST NO. 11:

All documents concerning any plans, commitments, projections or reports relating to Harman's future production capacity for any automobile navigation system products or services.

RESPONSE TO REQUEST NO. 11:


REQUEST NO. 12:

All documents concerning the promotion, advertisement, demonstration, marketing and sale of any automobile navigation system products or services used, manufactured or sold by Harman, including, but not limited to: all advertising, press releases, product announcements, bulletins, solicitations, articles, speech or lecture texts, sales presentations, PowerPoint presentations, product brochures, memoranda, and catalogs.

RESPONSE TO REQUEST NO. 12:


REQUEST NO. 13:

All documents concerning any communication with, or relating to, any agent, dealer, wholesaler, distributor, customer, or potential customer of any automobile navigation system products or services, in the United States, or any other person, concerning transfers or projected transfers of such products in the United States, including without limitation, costs and sales, and anticipated or actual sales.

RESPONSE TO REQUEST NO. 13:

REQUEST NO. 14:

All documents sufficient to identify all prospective, existing and past customers of any automobile navigation system products or services, including documents concerning the dissemination of promotional materials for such products including, but not limited to: mailing lists, tear sheets, and periodicals in which promotional materials have appeared.

RESPONSE TO REQUEST NO. 14

REQUEST NO. 15:

All documents comprising pricing, price quotes, price lists, price announcements, actual prices, or projected prices, paid by, or expected to be paid by, customers for any automobile navigation system products or services.

RESPONSE TO REQUEST NO. 15:

REQUEST NO: 16:

All documents concerning communications, whether to or from suppliers or customers or any other persons, that relate to MIT or the subject matter of the '685 Patent.

RESPONSE TO REQUEST NO. 16:

REQUEST NO. 17:

All documents concerning any policy, guideline or agreement of Harman with respect to patent procurement, patent licensing and royalty rates.

RESPONSE TO REQUEST NO. 17:

REQUEST NO. 18:

All documents concerning any communication by or to persons other than MIT asserting patent

infringement by Harman.

RESPONSE TO REQUEST NO. 18:


REQUEST NO. 19:

All documents passing between Harman and any person who Harman expects to offer testimony

of at trial in this action, including, without limitation, any expert witness.

RESPONSE TO REQUEST NO. 19:


REQUEST NO. 20:

All documents and things reviewed, considered or relied upon by any experts retained by

Harman in connection with this matter or that are a basis for each opinion to be reached by such

experts.

RESPONSE TO REQUEST NO. 20:


REQUEST NO. 21:

All documents and things, including but not limited to, reports, studies, books, articles or

publications prepared by each expert retained by Harman in this matter concerning the subject

matter about which such expert is expected to testify.

RESPONSE TO REQUEST NO. 21:

REQUEST NO. 22:

A sample of each automobile navigation system product or service, used, manufactured or sold by Harman.

RESPONSE TO REQUEST NO. 22:

REQUEST NO. 23:

All documents and things Harman may use or intend to rely upon at trial.

RESPONSE TO REQUEST NO. 23:

REQUEST NO. 24:

All documents and things identified, relied upon, or referred to in response to MIT's First Set of Interrogatories.

RESPONSE TO REQUEST NO. 24:

REQUEST NO. 25:

Documents sufficient to reflect Harman's document retention policies or practices over the past two (2) years.

RESPONSE TO REQUEST NO. 25:

REQUEST NO. 26:

Copies of organizational charts sufficient to show Harman's organizational structures and

corporate management over the past two (2) years.

RESPONSE TO REQUEST NO. 26:

<div style="margin-left: 45%;">

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

By its Counsel,

*Kimberly A. Mottley*
Steven M. Bauer (BBO #542531)
Kimberly A. Mottley (BBO #651190)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110
Tel: (617) 526-9600
Fax: (617) 526-9899

</div>

Dated:  July 26, 2005

## Certificate of Service

I hereby certify that on July 26, 2005, a true and correct copy of the foregoing document was served upon opposing counsel by hand.

*Kimberly A. Mottley*
Kimberly A. Mottley

7113/61784-008  BNLIB1/140813v2

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No(s).: 05-10990 DPW |

## HARMAN'S RESPONSES TO MIT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS (1-26)

Defendant Harman International Industries, Incorporated ("Harman") responds to plaintiff Massachusetts Institute of Technology's ("MIT") First Request For The Production Of Documents And Things (1-26) with the answers and objections set forth below. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Harman reserves the right to supplement these responses and its production of documents to the extent it learns of additional responsive information and/or documents.

## GENERAL OBJECTIONS

Harman incorporates the following General Objections into its response to each Request for Production. Each of Harman's responses is made without waiver of or prejudice to these general objections.

1.      Harman objects to MIT's First Request For Production Of Documents And Things to the extent it seeks information and/or documents protected by the attorney–client

privilege, the attorney work product doctrine, or Rule 26(b)(3) of the Federal Rules of Civil Procedure. Any information or documents withheld on these grounds will be identified on a separate privilege schedule. With respect to any privileged or work product documents that were created or that came into being after the initiation of this lawsuit, Harman objects to listing any such documents on a privilege schedule because to do so would be unduly burdensome, would chill Harman in its communications with its attorneys about the subject matter of this litigation, and would abrogate Harman's work product privilege in this matter. For example, if Harman had to schedule documents that were created or that came into being after the initiation of this lawsuit, before Harman could communicate in writing with its attorneys about the subject matter of this litigation, Harman would be forced to make a choice between (a) confining its communications with its attorneys to oral communications, or (b) running the risk of abrogating its attorney work product privilege by having to provide plaintiffs with a log of each written communication it has with its attorneys.

2.      Harman objects to MIT's First Request For Production Of Documents And Things to the extent it seeks information and/or documents constituting trade secrets or other confidential research, development, or commercial information, including without limitation internal marketing, financial, strategic and customer information, within the meaning of Fed. R. Civ. P. 26(c). *See Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 578-89 (N.D. Ga. 1989) ("Courts have consistently held that marketing information is confidential commercial information and have afforded it some protection from discovery.") (citing *American Standard v. Pfizer, Inc.*, 828 F.2d 734 (Fed. Cir. 1987)). The parties are negotiating an agreed protective order. Once the Court enters the agreed protective order, the balance of the responsive, non–privileged documents will be produced.

3.      Harman objects to MIT's First Request For Production Of Documents And Things to the extent it purports to impose upon Harman duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure or the local rules of this Court.

4.      Harman objects to MIT's First Request For Production Of Documents And Things to the extent it seeks to limit the documents or information that Harman may rely upon at trial in this matter. Harman's fact investigation, discovery and trial preparations are continuing, and Harman reserves the right to provide additional information and supplement its production of documents in response to these requests.

5.      Harman will make its document production available to MIT for inspection and copying at MIT's expense at the offices of Kirkland & Ellis nearest the site where the documents can be found.

6.      Harman objects to MIT's definition of "Harman" to the extent it includes in the term "subsidiaries" and any officers, directors, agents, servants, employees, etc. of those companies which are not related to this action. Harman will respond only on behalf of the entities disclosed in Harman's initial disclosures.

7.      Harman objects to MIT's definition of "automobile navigation system product[s] or service[s]" overly broad, unduly burdensome, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny. As defined, "automobile navigation system product[s] or service[s]" includes products or services that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. MIT is not permitted "to conduct 'fishing expeditions' in hopes of finding

3

products that might be infringing. . . ." *Moore U.S.A., Inc., v. Standard Register Co.*, 229 F.3d 1091, 1116 (Fed. Cir. 2000).

8.      Harman objects to these requests to the extent that they seek information already known to MIT, or available to MIT from documents in its own files or from public sources, or that Harman provided to MIT during the parties' 2 years of negotiations.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST NO. 1:

All documents and things concerning the scope, validity, infringement, or enforceability of the '685 Patent.

### RESPONSE TO REQUEST NO. 1:

Harman objects to Request No. 1 insofar as it purports to suggest that the '685 patent is something other than invalid, not infringed, and unenforceable as detailed in Harman's numerous presentations and correspondence throughout the parties' 2 years of negotiations, each of which is incorporated by reference.  Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

### REQUEST NO. 2:

All documents and things concerning any search, investigation, review, opinion, study, analysis, event or reference concerning, without limitation, the scope, validity, infringement or enforceability of the '685 Patent, including but not limited to, opinions, summaries, notes, memoranda, or the equivalent prepared by Harman or any of its representatives.

### RESPONSE TO REQUEST NO. 2:

Harman objects to Request No. 2 insofar as it purports to suggest that the '685 patent is something other than invalid, not infringed, and unenforceable as detailed in Harman's numerous presentations and correspondence throughout the parties' 2 years of negotiations, each of which

is incorporated by reference. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 3:**

All documents ever considered, evaluated, or possessed by Harman regarding the scope, novelty, patentability, validity, or enforceability of the subject matter disclosed and claimed in the '685 Patent.

**RESPONSE TO REQUEST NO. 3:**

Harman objects to Request No. 3 insofar as it purports to suggest that the '685 patent is something other than invalid, not infringed, and unenforceable as detailed in Harman's numerous presentations and correspondence throughout the parties' 2 years of negotiations, each of which is incorporated by reference. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 4:**

All documents and things tending to support or refute any argument by Harman that the '685 Patent is invalid, void, and/or unenforceable under the patent laws of the United States, Title 35 of the United States Code.

**RESPONSE TO REQUEST NO. 4:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 5:**

All prior art patents and publications that Harman considers pertinent to the subject matter of the '685 Patent.

**RESPONSE TO REQUEST NO. 5:**

Harman objects to Request No. 5 as vague and ambiguous as to the phrase "pertinent to the subject matter of the '685 Patent." Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents that establish the invalidity, unenforceability and/or non-infringement of the patent-in-suit.

**REQUEST NO. 6:**

All documents and things concerning Harman's first awareness of the '685 Patent.

**RESPONSE TO REQUEST NO. 6:**

Harman objects to Request No. 6 as not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 7:**

All documents and things concerning any of Harman's efforts, after Harman became aware of the '685 Patent, to modify any automobile navigation system products or services used, manufactured, or sold by Harman.

**RESPONSE TO REQUEST NO. 7:**

Harman objects to Request No. 7 as not reasonably calculated to lead to the discovery of admissible evidence. Harman further objects to this Request as overly broad, unduly burdensome, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Harman further objects to this Request as impermissible under Rule 407 of the

Federal Rules of Evidence to the extent it seeks documents related to any subsequent remedial measures Harman may or may not have taken.

**REQUEST NO. 8:**

All documents and things concerning the design, development, manufacture, marketing, sale or offer for sale of any automobile navigation system products or services used, manufactured or sold by Harman, including but not limited to: all laboratory notebooks, test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental versions of such products.

**RESPONSE TO REQUEST NO. 8:**

Harman objects to Request No. 8 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

**REQUEST NO. 9:**

If Harman contends that its automobile navigation system products and services do not infringe the '685 Patent, all documents and things that support or refute such a contention.

**RESPONSE TO REQUEST NO. 9:**

Harman objects to Request No. 9 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations

under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny. "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

**REQUEST NO. 10:**

All documents concerning comparisons of any automobile navigation system product or service manufactured or sold by Harman, and any of the claims of the '685 Patent.

**RESPONSE TO REQUEST NO. 10:**

Harman objects to Request No. 10 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence because MIT has not identified any asserted claim from the 58 claims of the patent-in-suit and because this Request is counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system product or service manufactured or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

**REQUEST NO. 11:**

All documents concerning any plans, commitments, projections or reports relating to Harman's future production capacity for any automobile navigation system products or services.

8

**RESPONSE TO REQUEST NO. 11:**

Harman objects to Request No. 11 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "any plans, commitments, projections or reports." Harman further objects to this Request as counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman.

**REQUEST NO. 12:**

All documents concerning the promotion, advertisement, demonstration, marketing and sale of any automobile navigation system products or services used, manufactured or sold by Harman, including, but not limited to: all advertising, press releases, product announcements, bulletins, solicitations, articles, speech or lecture texts, sales presentations, PowerPoint presentations, product brochures, memoranda, and catalogs.

**RESPONSE TO REQUEST NO. 12:**

Harman objects to Request No. 12 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections,

9

Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

**REQUEST NO. 13:**

All documents concerning any communication with, or relating to, any agent, dealer, wholesaler, distributor, customer, or potential customer of any automobile navigation system products or services, in the United States, or any other person, concerning transfers or projected transfers of such products in the United States, including without limitation, costs and sales, and anticipated or actual sales.

**RESPONSE TO REQUEST NO. 13:**

Harman objects to Request No. 13 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "transfers or projected transfers" and fails to specify a time period. Harman further objects to this request as counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement.

**REQUEST NO. 14:**

All documents sufficient to identify all prospective, existing and past customers of any automobile navigation system products or services, including documents concerning the dissemination of promotional materials for such products including, but not limited to: mailing lists, tear sheets, and periodicals in which promotional materials have appeared.

**RESPONSE TO REQUEST NO. 14:**

Harman objects to Request No. 14 as not reasonably calculated to lead to the discovery of admissible evidence as Harman's "all prospective, existing and past customers" are not relevant

to any claim or defense. Harman further objects to this Request as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman.

**REQUEST NO. 15:**

All documents comprising pricing, price quotes, price lists, price announcements, actual prices, or projected prices, paid by, or expected to be paid by, customers for any automobile navigation system products or services.

**RESPONSE TO REQUEST NO. 15:**

Harman objects to Request No. 15 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman.

**REQUEST NO: 16:**

All documents concerning communications, whether to or from suppliers or customers or any other persons, that relate to MIT or the subject matter of the '685 Patent.

11

**RESPONSE TO REQUEST NO. 16:**

Harman objects to Request No. 16 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks documents unrelated to the patent-in-suit and/or without specifying a time frame. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents concerning communications that relate to the '685 Patent.

**REQUEST NO. 17:**

All documents concerning any policy, guideline or agreement of Harman with respect to patent procurement, patent licensing and royalty rates.

**RESPONSE TO REQUEST NO. 17:**

Harman objects to Request No. 17 as overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence insofar as it seeks all "patent procurement, patent licensing and royalty rates."

**REQUEST NO. 18:**

All documents concerning any communication by or to persons other than MIT asserting patent infringement by Harman.

**RESPONSE TO REQUEST NO. 18:**

Harman objects to Request No. 18 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. Harman further objects to this Request to the extent it seeks evidence that would not be admissible under Federal Rule of Evidence 404.

**REQUEST NO. 19:**

All documents passing between Harman and any person who Harman expects to offer testimony of at trial in this action, including, without limitation, any expert witness.

12

**RESPONSE TO REQUEST NO. 19:**

      Harman objects to Request No. 19 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order. *See* August 4, 2005 Hearing Tr. at 13-15.

**REQUEST NO. 20:**

All documents and things reviewed, considered or relied upon by any experts retained by Harman in connection with this matter or that are a basis for each opinion to be reached by such experts.

**RESPONSE TO REQUEST NO. 20:**

      Harman objects to Request No. 20 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order. *See* August 4, 2005 Hearing Tr. at 13-15. Harman further objects to this Request to the extent it seeks privileged documents and things regarding a non-testifying expert. *See* Fed. R. Civ. P. 26(b)(3) and (4); *Edward Lowe Industries, Inc. v. Oil-Dri Corporation of America*, 1995 WL 399712, *2-3 (N.D. Ill. 1995) (tests done on allegedly infringing products protected as reports of non-testifying expert under Rule 26(b)(4)(B)); *Oueen's University at Kingston v. Kinedyne Corp.*, 161 F.R.D. 443, (D. Kan. 1995) (expert report regarding opposing party's patent protected under Rule 26(b)(4)(B)); *Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994) (documents prepared by non-testifying accounting expert constituted privileged work product under Rule 26(b)(3)).

**REQUEST NO. 21:**

All documents and things, including but not limited to, reports, studies, books, articles or publications prepared by each expert retained by Harman in this matter concerning the subject matter about which such expert is expected to testify.

**RESPONSE TO REQUEST NO. 21:**

Harman objects to Request No. 21 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order. *See* August 4, 2005 Hearing Tr. at 13-15. Harman further objects to this Request to the extent it seeks privileged documents and things regarding a non-testifying expert. *See* Fed. R. Civ. P. 26(b)(3) and (4); *Edward Lowe Industries, Inc. v. Oil-Dri Corporation of America*, 1995 WL 399712, *2-3 (N.D. Ill. 1995) (tests done on allegedly infringing products protected as reports of non-testifying expert under Rule 26(b)(4)(B)); *Oueen's University at Kingston v. Kinedyne Corp.*, 161 F.R.D. 443, (D. Kan. 1995) (expert report regarding opposing party's patent protected under Rule 26(b)(4)(B)); *Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994) (documents prepared by non-testifying accounting expert constituted privileged work product under Rule 26(b)(3)). Harman further objects to this Request to the extent it calls for documents and things that MIT can ascertain through materials already in MIT's custody or control or materials that are as readily available to MIT as Harman, or materials created by MIT.

**REQUEST NO. 22:**

A sample of each automobile navigation system product or service, used, manufactured or sold by Harman.

**RESPONSE TO REQUEST NO. 22:**

Harman objects to Request No. 22 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[E]ach automobile navigation system product or service, [sic] used, manufactured or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged representative samples of its United States TrafficPro®, Rb3/Rb4® and M.O.A.R. products.

**REQUEST NO. 23:**

All documents and things Harman may use or intend to rely upon at trial.

**RESPONSE TO REQUEST NO. 23:**

Harman objects to Request No. 23 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order. *See* August 4, 2005 Hearing Tr. at 13-15. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 24:**

All documents and things identified, relied upon, or referred to in response to MIT's First Set of Interrogatories.

**RESPONSE TO REQUEST NO. 24:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

15

**REQUEST NO. 25:**

Documents sufficient to reflect Harman's document retention policies or practices over the past two (2) years.

**RESPONSE TO REQUEST NO. 25:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 26:**

Copies of organizational charts sufficient to show Harman's organizational structures and corporate management over the past two (2) years.

**RESPONSE TO REQUEST NO. 26:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

Dated:  September 6, 2005              Respectfully submitted,


/s/ Jamal M. Edwards /s/
Robert J. Muldoon, Jr., BBO# 359480
James W. Matthews, BBO# 560560
Edward S. Cheng, BBO# 634063
Courtney A. Clark, BBO# 651381
**SHERIN AND LODGEN, LLP**
101 Federal Street
Boston, MA 02110

William A. Streff Jr., P.C.
Michelle A. H. Francis
Jamal M. Edwards
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2005, I caused a true and correct copy of HARMAN'S RESPONSES TO MIT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS (1-26) to be served on the following counsel of record via email with a courtesy copy via U.S. Mail:

Steven M. Bauer, Esq. (sbauer@proskauer.com)
Kimberley A. Mottley, Esq. (kmottley@proskauer.com)
Proskauer Rose LLP
One International Place  14th Floor
Boston, Massachusetts  02110-2600

By: _____
Attorney for Defendant

# PROSKAUER ROSE LLP

One International Place
22ⁿᵈ Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

**Kimberly A. Mottley**
Direct Dial:  617-526-9616
Email: kmottley@proskauer.com

September 20, 2005

**<u>Via Email</u>**

Jamal M. Edwards, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601

Re:    MIT v. Harman International Industries, Inc.,
       <u>Civil Action No. 05-10990 DPW, U.S.D.C. Mass.</u>

Dear Jamal:

I write to memorialize our September 15 conversation, and to raise certain issues with respect to Harman's responses to MIT's initial round of discovery.

## I.    <u>Issues Addressed In September 15, 2005 Conversation</u>

### A.    <u>Protective Order</u>

I have discussed with MIT your proposal for a one-tiered protective order (where everything has the same level of  "confidentiality"), as opposed to the two-tiered order ("confidential" and "highly confidential - attorney's-eyes only") attached to my August 24, 2005 email to you.  For MIT to agree to a one-tiered order, it would need to include a provision which would permit certain named individuals at MIT's Technology Licensing Office (for example, Jack Turner) to have access to certain of Harman's documents.  There is no reason to limit disclosure to Mr. Turner, as he works for MIT (as opposed to any of Harman's competitors), and he would be willing to sign an undertaking representing that he would be bound by the use restrictions of the protective order.  Similarly, it should be clear that a "one-tiered" protective order should not be used as a way to prevent us from sharing pleadings filed with the Court with our client.

I understand that you may have additional, more minor issues with the draft order to discuss with me once you hear back from your client.

PROSKAUER ROSE LLP

Jamal M. Edwards
September 20, 2005
Page 2

I also asked you to agree that, in the event that the order is not finalized before document production, the parties would produce documents on an attorneys' eyes only basis pending execution of the order. You said you didn't anticipate that that will be a problem, but that you needed to check with your client and let me know.

B.    Document Production

You told me that Harman is unwilling to agree to exchange copy sets of the parties' document productions. You told me that you wanted each party to produce its documents for inspection at the parties' firm's offices (in Chicago for Harman's documents collected in the U.S., and Munich for its documents collected in Germany, and in Boston, for MIT's documents). You stated that you hope to have all the Harman documents collected by this week, and at that time you will let me know the volume of the production, and a summary of the contents of the production, at each location so that we can assess whether we need to do an on-site inspection prior to Bates labeling and copying, or whether we should send a vendor in to get a copy set of all of the documents.

As for products, you stated that the sample products your client could make available are those it uses in its testing, and are therefore not generally available to be housed at your offices for the duration of the inspection period. Your suggestion is that you will provide color digital photographs of the products, and after we see those photographs, we can decide which products warrant in-person inspection.

While photographs of "sample" products are helpful, we need samples of actual products as commercially sold by Harman, so that we have no dispute later that we are using and analyzing official Harman products.

C.    Depositions

We discussed the depositions of Mr. Hart, Mr. Perracchio, and Mr. Swartz. I asked that you provide dates of availability for Mr. Hart and Mr. Perracchio, as requested in my August 24, 2005 email to you. You told me that you would prefer that MIT send formal deposition notices for whatever depositions we want to take, and that only then would you work on rescheduling the depositions to mutually agreeable dates, and that going forward, that was the only way Harman would request depositions.

You also confirmed that, although Mr. Swartz's deposition was noticed for September 22, 2005, it will not take place on that date. We also agreed that we'd try to work together to get a full schedule for a first round of depositions (for both parties) before we agree to specific individual dates.

PROSKAUER ROSE LLP

Jamal M. Edwards
September 20, 2005
Page 3

## II.    **Harman's Discovery Responses**

Based on our initial review of Harman's Responses to MIT's first round of discovery
requests, we have identified certain issues that require supplementation or clarification, which
are addressed below.  Please note that these issues are only those we have noted to date, and we
reserve the right to raise additional issues in the future, if necessary.

A.    Harman's Limitation of Its Responses to Only Products Sold In the United
States, and Specifically, to its TrafficPro, Rb3/Rb4, and M.O.A.R.
Products

Harman has objected to MIT's requests for discovery concerning "any automobile
navigation system products or services used, manufactured, or sold by Harman," based on
Harman's claims that the scope of that request "includes products not used, made, sold, offered
for sale or imported into the United States," and on the basis of overbreadth.  (See General
Objection 7, and Specific Objections in response to MIT's Request Nos. 7, 8, 9, 10, 11, 12, 13,
14, 15, and 22 and Interrogatory Nos. 1, 3, and 4.)

It appears that Harman has responded or will respond to these requests to the extent that
the information or documents pertain to three products – the TrafficPro, Rb3/Rb4, and M.O.A.R.
products as they are sold in the United States.  Harman's general objection is inappropriate, but
given your answers, we can reserve further discussion about necessary supplementation until we
have information about and samples of those products, and see which documents Harman has
produced.

B.    Harman's Objections Based on Lack of a Time Period Limitation

To the extent Harman objected to MIT's Request No. 13 and Interrogatory No. 1, 2, 3,
and 4 based on lack of a time period limitation, please consider the limitation on such requests to
be August 9, 1990 to present.

C.    Harman's Refusal to Produce Documents Relevant to Damages, Validity,
Doctrine of Equivalents, and Willfulness

Harman appears to refuse to produce *any* documents concerning, among other things, its
first awareness of the '685 Patent (Request No. 6); Harman's efforts after such awareness to
modify its products (Request No. 7); Harman's future production capacity (Request No. 11);
Harman's communications with its customers about its products (Request No. 13); documents
sufficient to identify its customers (Request No. 14); pricing of its products (Request No. 15);
Harman's policies on licensing and royalty rates (Request No. 17); and other claims of patent
infringement made against Harman (Request No. 18).

PROSKAUER ROSE LLP

Jamal M. Edwards
September 20, 2005
Page 4

Clearly, these requests are relevant to damages, validity of the '685 patent, Harman's potential infringement under the doctrine of equivalents, and/or the potential willfulness of Harman's infringement. Please supplement the written responses to these requests immediately, to confirm that Harman will be producing documents responsive to MIT's Request Nos. 6, 7, 11, 13, 14, 15, 17, and 18.

      D.      Harman's "Counting" Objections to MIT's Interrogatories

Throughout its responses to MIT's interrogatories, Harman has decided to count single interrogatories as multiple interrogatories, thereby counting the eleven (11) interrogatories MIT served as seventeen (17). This is inappropriate, as MIT's interrogatories were numbered correctly. Indeed, using Harman's counting method, Harman has served at least 29 interrogatories already, thereby exceeding the 25 interrogatories permitted under Fed. R. Civ. P. 34. If Harman will not withdraw its counting objections, we will need to confer before MIT's responses are due, so that we have consistent counting methodology.

      E.      Harman's Reference to Its Entire Document Production, In Lieu of
              Answering Interrogatories

In response to MIT's Interrogatory Nos. 3, 4, 5, 6, 7, and 8, Harman merely refers to "documents and things that Harman has made available for inspection." This reference to Harman's entire document production is inappropriate, and insufficient.

Federal Rule of Civil Procedure 33(d) states:

Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served ... and the burden of deriving or ascertaining the answer is *substantially the same* for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained ... . A specification shall be *in sufficient detail* to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

Thus, Harman is only permitted to refer to documents (rather than providing substantive answers to interrogatories) when it would be as easy for MIT to glean the requested information from Harman's documents as it would be for Harman, and if Harman is to make such a reference to documents, it has to be to specific documents so that MIT can locate and identify the requested information.

PROSKAUER ROSE LLP

Jamal M. Edwards
September 20, 2005
Page 5

First, Harman has failed to identify documents with any specificity in response to any of these interrogatories, and must *at a minimum* supplement its responses by including references to specific documents within its production, or attach copies of the documents to any supplementation.

Second, as to Interrogatory Nos. 5 through 8, these are not interrogatories for which the information is as readily available to MIT through Harman's documents as it is to Harman. These interrogatories request that Harman identify its arguments as to why the '685 patent is invalid or unenforceable (both in general, and with specific reference to specified pieces of prior art) and the basis for Harman's claim that it does not infringe the '685 patent. Such information is clearly more readily available to Harman than to MIT through Harman's documents, and thus, Harman's responses to Interrogatory Nos. 5, 6, 7, and 8 require immediate substantive supplementation, beyond mere reference to documents within Harman's production.

F.    Information Missing from Harman's Responses to Interrogatory Nos. 2 and 10

Harman's response to Interrogatory No. 2 fails to identify the persons in charge of / most knowledgeable about the named activities therein, the time periods of their involvement in those activities, and the nature of their involvement. This information was requested by the interrogatory, and a wholesale reference to Harman's Initial Disclosures does not supply the requested information. Clearly, here, we are trying to get information to help us choose those individuals best suited for depositions in this case, to save both parties time and expense of unnecessary and duplicative depositions. Please supplement this interrogatory immediately.

Similarly, Harman's response to Interrogatory No. 10 lacks the specific information requested by the interrogatory, and instead only provides a list of names of people who "provided factual information in response to these Interrogatories." Furthermore, Harman refused to answer part (d) of the interrogatory, which seeks information about the completeness of Harman's discovery search efforts. Please supplement this interrogatory immediately.

G.    Executed Certification of Interrogatories

Finally, Harman's Responses to MIT's Interrogatories lack the necessary certification by your client. Please send us an executed certification page at your earliest convenience.

*           *           *

PROSKAUER ROSE LLP

Jamal M. Edwards
September 20, 2005
Page 6

I suggest we have a Rule 37 meet and confer later this week.  How is this Thursday, at 3:00 p.m.?

Yours truly,

Kimberly A. Mottley

# PROSKAUER ROSE LLP

One International Place
22nd Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

**David J. Cerveny**
Direct Dial: 617-526-9621
Email: dcerveny@proskauer.com

November 11, 2005

*Via Electronic Mail*

Michelle A. H. Francis, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Re:     MIT v. Harman International Industries, Inc., No. 05-10990 DPW (D. Mass.)

Dear Michelle:

At this point, we can no longer accept the continual delay on Harman's part that has characterized this litigation. Harman has stalled discovery over the most minute complaints and has refused to work towards anything approaching a cooperative discovery practice. Before we need to bring our discovery issues to the court, we want to make one last try, hopefully to finally agree on issues or at least, confirm that we cannot agree on them.

We are leaning towards asking the Court for a discovery conference to address any issues remaining after the next call, including (as of now) your refusal to provide any deposition dates, your refusal to provide copies of documents, your refusal to produce documents relating to Harman's knowledge of the patent in suit, and your refusal to negotiate in good faith to resolve these issues.

We will be available to discuss these issues and any other open discovery issues today or Monday. Does 4:00 est/3:00 cst work for you? If you are not available then, please suggest another time.

Here is what we would like to discuss and resolve today.

PROSKAUER ROSE LLP

Michelle A. H. Francis, Esq.
November 11, 2005
Page 2

_Depositions_

We remain prepared to set a comprehensive deposition schedule.  MIT has been attempting to set deposition dates since _mid-August_, but have yet to receive even _one_ suggested date from Harman.

Here's our proposal:  you provide dates for Mr. Munn and Mr. Butler in Michigan (or Chicago, if it is easier for you), and we will arrange for the deposition of Mr. Swartz in Chicago that same week.  You pick the dates, and we move ahead.

Of course, at the same time, you must provide deposition dates for our outstanding deposition notices, including for our 30(b)(6) notice of Harman served on September 28, 2005 as well as the remaining notices that you have had for nearly two weeks.  Either commit to getting us dates, or we will need to go to the court about your failure to do so.

_Production of Documents Concerning Willfulness_

We have been asking for Harman to produce documents relating to its knowledge of the patent in suit from the very beginning.  As we understand it, your only reason to refuse is that the pleadings did not expressly mention "willfulness."  Rather than continue to fight about this MIT has now alleged that Harman has willfully infringed MIT's patent in its answer to Harman's counterclaim for declaratory judgment.  You no longer have any argument for not producing these documents.  At this point, either commit to producing them, or we will need to go to the court about your refusal to do so.

_Production of Documents From Harman's Predecessor_

In Mr. Edwards' letter of November 9, 2005, Harman represented that the "prior owners" of the Harman automobile navigation products were employed by a predecessor of Harman and not an independent entity, as you have been contending prior to that letter.  Because the "prior owner" was a predecessor entity, the documents you have been claiming are still owned by the "prior owner" are legally in the possession, custody and control of Harman, regardless of whether title to the documents passed to Harman or remained in the predecessor's control.  This is a basic legal principle under U.S. and German law.  Furthermore, although you have been promising to produce these documents for several months now, we still don't have them.  Please commit to producing these documents by a date certain, or we will need to go to the court about your refusal to do so.

PROSKAUER ROSE LLP

Michelle A. H. Francis, Esq.
November 11, 2005
Page 3

_Production of Other Documents and Things_

Now that we have begun review of Harman's production, it is clear that it is deficient in a number of areas, particularly where we have found that no documents have been produced even though such documents almost certainly exist:

1. Samples of the accused products;

2. Technical schematics and flow charts related to Harman's navigation products;

3. Documents detailing the structure, function, operation and features of Harman's products;

4. Documents, including correspondence, concerning any Harman customers' or potential customers' attempts to qualify or otherwise evaluate Harman's navigation products;

5. Documents, including correspondence, regarding the development of products for specific customers such as Ford and Chrysler;

6. Documents concerning Harman's marketing efforts;

7. Correspondence concerning sales and marketing, including with customers and potential customers;

8. Presentations made to customers and potential customers (power point presentations, etc.) by Harman sales or other personnel;

9. Documents, including internal and external correspondence, concerning the pricing of Harman's navigation products;

10. Documents regarding Harman's sales effort in marketing its navigation products; and

11. A comprehensive list of all of Harman's automobile navigation products and services.

With respect to number 11, Harman has placed all such products (and more) at issue in its counterclaim for a declaratory judgment, which requests a declaration that no Harman product infringes MIT's patent.

MIT first served its requests for the production of documents on July 26, 2005.  In nearly four months, it appears that Harman has made only a cursory document production.  We would have thought that Kirkland & Ellis would be more diligent about its document production practices.  We need a commitment that you will produce these documents, or we will need to go to the court about your refusal to do so.

PROSKAUER ROSE LLP

Michelle A. H. Francis, Esq.
November 11, 2005
Page 4

<u>Delivery of Documents</u>

We understand that Harman has a few documents (approximately 100 pages) ready for production, but that it is refusing to produce them.  We have asked that you copy the documents and send them to us with an invoice covering shipping and copying costs.  We will deduct the expenses that Harman incurs from those that MIT incurred in its last production, which will be considerably greater.

We do not understand your reason for refusing to produce copies, by requiring us to send someone to your office to pick up originals and make copies.  I note that we have now produced two sets of documents, including the documents produced yesterday, even though this issue remains unresolved.  To avoid such issues in the future, we suggest that both parties agree to a standard cost per page for copying and to reimburse such costs within a reasonable amount of time, to be agreed to by the parties.  I trust that this will allay the concerns you have expressed.  We are also open to reasonable alternatives.

Please let us know whether you will agree to provide copies of these documents, as Harman is required to do under the Rules, or whether we will need to go to the court about your refusal to do so.

\*       \*       \*

The Judge warned the parties should resolve discovery disputes rather than file motions, but that warning was not intended to give Kirkland & Ellis carte blanche to refuse to make any agreements.   Because Harman has continually refused for months now to definitively commit to or reject our proposals, we believe that a discovery conference with the Court is appropriate.  We are willing to make one last effort, however, before going to the court.

Sincerely,

David J. Cerveny

One International Place
22nd Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

**David J. Cerveny**
Direct Dial: 617-526-9621
Email: dcerveny@proskauer.com

November 23, 2005

*Via Electronic Mail*

Jamal M. Edwards, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601

Re:     <u>MIT v. Harman International Industries, Inc.</u>, No. 05-10990 DPW (D. Mass.)

Dear Jamal:

This letter summarizes our telephone calls of Monday, November 21, 2005, and last Wednesday, November 17, 2005.

*Protective Order*

With one exception, we agreed on the terms of a protective order regarding confidentiality.  You indicated that Harman additionally seeks to include a provision that requires that MIT first seek discovery from Harman before seeking it from any third party.  I indicated that MIT would not agree to that provision, because it limits MIT's ability to conduct discovery to less than what is allowed by the Rules of Civil Procedure, and because Harman had no basis to believe that Proskauer Rose would seek to harass Harman's customers through the discovery process, especially given that we have not yet sought any discovery from Harman's customers -- despite months of discovery and discovery disputes.

Otherwise, we are in agreement on the terms of the proposed protective order, and the parties have agreed to abide by the terms of the November 11, 2005 draft of proposed protective order that I sent to you, until the Court enters a protective order regarding confidentiality.  We still need to determine the mechanics of filing our respective proposed orders with the Court.  I believe that we are in agreement that we should file the order jointly.  If you prepare and transmit to me the text in support of Harman's additionally proposed provision, we will prepare MIT's response and place both in a joint proposed order, which we can finalize and file, hopefully next week.

PROSKAUER ROSE LLP

Jamal M. Edwards, Esq.
November 23, 2005
Page 2


_Document Production_

Last Wednesday, you indicated that Harman was in the process of providing the documents outlined in items 1-2, and 4-10 of my November 11, 2005 letter to Michelle Francis.  I noted that the list of missing items in my November 11, 2005 letter likely was not exhaustive.

With respect to item 3 from my letter, you indicated that documents had been produced.  I indicated that, while it is true that some documents regarding the structure, function, operation, and features of Harman's products had been produced, we have not received documents that completely illustrate those aspects of the accused products, especially with respect to Harman's database and software.  For example, it does not appear that Harman has produced all versions of the software associated with Harman's accused products, or all documents associated with the development of each accused product.

With respect to item 11 from my letter, you indicated that Harman was not withholding any information regarding the products made, used or sold in the United States.  You indicated that you would consider providing a written confirmation that the products accused of infringement (i.e., Traffic Pro and Traffic Pro II, RB3, RB4, Advanced Audio GPS Navigation System and M.O.A.R. (if different than the Advanced Audio GPS Navigation System)) are the only products of Harman or a Harman affiliate that are made, used, sold, offered for sale, had made or imported in/into the United States by Harman, any affiliate of Harman, or, to the best of Harman's knowledge, any other person or entity.

You indicated that, despite the explicit pleading in MIT's answer, Harman would not produce documents related to willfulness.  We discussed, however, an agreement whereby MIT would amend the pleadings to add allegations of willfulness and importation in the Complaint and Harman would provide an answer to the complaint within a short period, e.g., one week.  Under such an agreement, there would be only very limited alterations to the pleadings to allow quick answers and avoid any delay in the proceedings.  MIT still contends that willfulness has been plead in both its complaint and answer to Harman's counterclaim for a declaratory judgment, but it will consider amending the Complaint as Harman requested, if we are able to reach a reasonable agreement on this issue.   Please let me know where Harman stands on this issue as soon as possible, as it will dictate whether MIT takes this issue to the Court.

You indicated that Harman had requested product samples of all accused products on October 28, 2005, and that it would take approximately 30-60 days to receive those products.  You also indicated that you expected the products to be ready for production within the next couple of weeks.

PROSKAUER ROSE LLP

Jamal M. Edwards, Esq.
November 23, 2005
Page 3

With respect to the schematics that MIT requested, you indicated that Harman produced documents on the CD at items 27-97 (in a diagrams directory) that include some of the requested schematics.  I indicated that I would review those documents again and let you know if there were additional schematics that MIT requires.  I also noted that MIT had requested all schematics for each accused product, including any mechanical or manufacturing drawings, electrical schematics, flow charts, or other graphical or schematic representations of the accused products.

You indicated that Harman produced documents concerning orders from its customers on Harman's CD at 16-17.

You indicated that Harman expected to complete its production of documents from within the United States by the end of November or early December and expected to complete its production of documents from outside the United States by the end of January, 2006.  With respect to the later category, you also indicated that there would be an interim production of documents within several weeks after December 19, 2005.  I indicated that, given the amount of time Harman has had to respond to MIT's document requests, the end of January may be too long to wait, especially if Harman were to produce a large volume of documents at that time that would make it difficult to review the documents and conduct depositions or other investigation prior to the close of discovery.  You indicated that Harman would seek to produce as many of the documents as possible prior to the end of January.  This is obviously an issue that we will need to continue to monitor over the next several weeks to ensure that the document production moves forward and toward a timely completion.

_Depositions_

With respect to the "prior owners" of innovative systems, you stated that you had not yet been able to contact Mr. Riemann and Mr. Will, that you would continue to try to do so, but that, at this point, MIT could also attempt to contact them.

We initially agreed that the depositions of Messrs. Butler, Munn and Swartz would occur in the same week.  After checking on potential dates, you indicated that Mr. Munn would be difficult to schedule, and that you intended to file an amended initial disclosure that listed additional witnesses that MIT could depose instead of Mr. Munn.  However, you also indicated that you would provide dates for Mr. Munn's deposition, but that the deposition would likely need to occur at a later time.  Further, you indicated an expectation that the depositions of Mr. Butler and a third witness from Harman's upcoming amended initial disclosures could occur the week of December 19, 2005.  We will confirm Mr. Swartz's availability that week.

If we do hold the depositions the week of the 19th, because it is the holiday week, the depositions will need to take place December 19-21, 2005.

PROSKAUER ROSE LLP

Jamal M. Edwards, Esq.
November 23, 2005
Page 4

You also stated that you expected to have proposed dates for the 30(b)(6) deposition of Harman by early next week, the week of November 28, 2005.

*Document Copying Costs*

For the copying and delivery of documents, we agreed that each party will deal directly with the opposing party's vendor to make copies, and make the copies available to counsel thereafter. We continue to agree that the party requesting discovery shall bear the cost of making and shipping its copies of the documents. I urge you to consider whether for small productions (under 500 pages) whether we shouldn't just agree to produce those to each other as a matter of courtesy and convenience.

Finally, I suggest that we meet early next week to ensure that these matters remain on track. I am available at 3:00 est/2:00 cst on Monday, November 27, 2005. If that time does not work for you, please suggest a different time.

Thank you for your cooperation in resolving these issues.

Sincerely,

David J. Cerveny

One International Place       LOS ANGELES
22nd Floor                WASHINGTON
Boston, MA 02110             BOSTON
Telephone 617-526-9600       BOCA RATON
Fax 617-526-9899             NEWARK
                             NEW ORLEANS
                             PARIS

# PROSKAUER ROSE LLP

**David J. Cerveny**
Direct Dial:  617-526-9621
Email: dcerveny@proskauer.com

January 10, 2006

*Via Electronic Mail*

Jamal M. Edwards, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601

Re:    <u>MIT v. Harman International Industries, Inc.</u>, No. 05-10990 DPW (D. Mass.)

Dear Jamal:

I write to follow up on our January 6 conversation, and your letter sent later that night.  I, too, thought we had been making headway over the past several weeks before the holidays.  Unfortunately, it appears that our reliance on your representations that things were getting accomplished was misplaced, and that Harman has not actually undertaken to accomplish many of the things it had promised to accomplish over the past few months, such as provide the initial deposition schedule originally promised for last Friday, produce the balance of its U.S. documents as originally promised for the week of December 19, provide the samples of accused products as originally promised in late November, or schedule the production of the balance of the German documents, which you originally said were to be gathered during a trip scheduled for December that was later pushed to January and that now does not appear to be scheduled at all.

Obviously, I disagree with many of your characterizations of our previous conversations.  However, rather than attempting to clarify every misstatement, I have attempted herein accurately and briefly to capture the status of the outstanding discovery issues, without rehashing every back-and-forth – even though much of what you now contend is expressly contradicted by the prior correspondence.  My hope is that this will clarify where we have disagreements, so that we can move forward either by reaching agreement or by seeking court intervention.  My hope remains that the former will prevail, and we can get our negotiations back on the right track.

However, discovery's close is rapidly approaching.  If we cannot reach resolution of these issues very shortly, we will have no choice but to file a motion to preserve our rights.  Of course, we can continue our negotiations after a motion is filed, and work to resolve as much as we can

PROSKAUER ROSE LLP

Jamal M. Edwards, Esq.
January 10, 2006
Page 2

before any opposition would be due, but – as I noted several time during our last call – Harman must get this discovery moving.

**I.**    **Document Production / Interrogatory Supplementation**

Per our discussion, I understand the following efforts to be underway on your end in meeting Harman's discovery obligations, pursuant to the requests served on you on July 26, 2005:

A)    Production of documents received by you the week of December 19, 2005 (6GB electronic documents, and paper documents) (Are the 800 pages of documents you made available Friday evening for inspection the beginning of this production?);

B)    Production of product samples containing executable versions of the software (which I understand are on their way to you now); and

C)    Source code for each version of the navigation system database used in the Accused Harman products (which I understand you have ready to produce, pending receipt of a signed copy of the protective order. A copy of the protective order, signed on MIT's behalf, is attached. Once you countersign, we can get this filed with the Court as part of our joint motion submitting the Amended Complaint and Answer. However, as the parties have agreed to abide by the Protective Order pending the Court's endorsement, there is no reason to delay the production on this account.).

At this point, with the close of fact discovery a mere three months away, we need these documents and things in-hand. As we have now been requesting for literally months now, we need a commitment from you, a date certain, by which we will receive these items. If you do not provide such dates by the close of business tomorrow, or if you propose dates that are unreasonable in light of the discovery schedule we are facing, we will seek the Court's assistance – which, of course, will not preclude you from producing the information before the Court needs to act.

Other than items B and C set forth above, I understand that you consider the production of documents in Harman's possession, custody or control from Germany to be complete at this time. Although you stated prior to the holidays that you intended to make another trip to Germany for further document collection, my understanding from our Friday conversation is that you do not expect any further trip to Germany to uncover additional documents responsive to MIT's requests. Similarly, I understand that your search for documents in the possession, custody or control of Harman Consumer Group turned up nothing responsive to MIT's requests. Please confirm by the end of the day tomorrow or we will presume these statements reflect Harman's current position.

PROSKAUER ROSE LLP

Jamal M. Edwards, Esq.
January 10, 2006
Page 3

You agreed during our Friday conversation to supplement further Harman's Response to Interrogatory No. 1 after receipt of MIT's Amended Complaint, if necessary.  You now have the Amended Complaint.  Please advise by close of business tomorrow whether you will further supplement your response to Interrogatory No. 1 by close of business on Friday, January 13, 2006.  If you will not agree to supplement your response, we will seek the Court's assistance.

## II.       Deposition Scheduling

In your December 8 email, you memorialized our agreement to provide a fulsome deposition schedule by January 6.  During our January 6 conversation, we fulfilled our end of that bargain by confirming for you that Mr. Swartz is available on January 24, 2006, and Dr. Davis is available any day during the week of February 13, 2006.

You, on the other hand, provided deposition availability of only one of the witnesses MIT has noticed, regardless of the fact that all of MIT's depositions were noticed before November 1, 2005.  You confirmed that Mr. Butler is available for deposition following Mr. Swartz's deposition, and stated that you would let us know whether the new "conflict" in Mr. Radamski's schedule – who was scheduled for his deposition prior to the holidays – could be resolved by close of business yesterday.  You also stated that, should you not be able to produce Mr. Radamski that week, you would supply another witness for deposition in his stead.  We did not hear from you yesterday.  At this time, if Mr. Radamski is not available, we request that you provide Mr. Munn, who we originally noticed and agreed to forgo upon Harman's promise to supply Mr. Radamski instead of Mr. Munn.

You also represented that you would have a full schedule of dates for the remaining noticed depositions by Friday, January 13 (which you previously agreed to do by January 6).  I hope that on Friday, we actually can work toward developing a fulsome deposition schedule, but if we do not, we have no room for further delay, and we will have to seek assistance from the Court.

We received your deposition notices served following our call and after business hours last Friday for Jack Turner, Christopher Schmandt and Charles Call.  We represent all three of these individuals for purposes of this litigation, and will work with them to identify dates when they are available for deposition.  We will accept a subpoena on Charlie Call's behalf, on the condition that you work with us to agree to a mutually acceptable location and date of his deposition, and also on the condition that our acceptance of the subpoena is presently limited to his deposition only and not acceptance for purposes of trial at this time.

## III.      Claim Construction Contentions

As we discussed at length during our Friday conversation, MIT is entitled to infringement discovery before submitting claim construction and infringement contentions.  There is no question that you have yet to produce the product samples, software, and source code, which

PROSKAUER ROSE LLP

Jamal M. Edwards, Esq.
January 10, 2006
Page 4

bear directly on MIT's infringement contentions and which you promised to produce nearly a month ago. Once we have Harman's production of these documents and things, we will need at least 30 days before we can commit MIT to a position on claim construction. This, of course, is consistent with the amount of time that MIT would have had to review documents and prepare its contentions had Harman abided by its prior promises regarding discovery, including document productions the taking of the initial depositions we had agreed to.

The purpose of the claim construction exchange set forth in the scheduling order was to allow the parties to begin working to identify where they can reach agreement on claim construction, and where the disagreements will remain for the Court to resolve during *Markman* proceedings. This purpose would not be advanced by exchanging claim construction contentions before receipt of the remainder of Harman's production or prior to the parties meeting to discuss which claim terms need to be construed.

<div align="center">*          *          *</div>

I look forward to hearing from you on several of these matters no later than the close of business tomorrow, and further discussing deposition scheduling on Friday. Please let me know if 2:00 EST on Friday works for that conversation. If not, please provide an alternate time.

Thank you for your cooperation in resolving these issues.

Sincerely,

David J. Cerveny

Enclosure

cc:     Kimberly A. Mottley

## Mottley, Kimberly

| | |
|---|---|
| **From:** | Jamal Edwards [jedwards@kirkland.com] |
| **Sent:** | Tuesday, December 06, 2005 5:20 PM |
| **To:** | Cerveny, David |
| **Cc:** | Harman-mit@kirkland.com; MIT_Harman |
| **Subject:** | Re: MIT v. Harman - Discovery |

David:

In your letter of November 23rd, you outlined the outstanding issues MIT has with Harman's discovery. As demonstrated below, Harman has diligently addressed and made progress on each issue. Even though Harman requested them months ago, we just received MIT's production of documents from Mr. Swartz's files. And, we continue to await MIT's supplemental responses to Harman's interrogatories. As I suggested before, more progress will be made if we focus our energies on completing the tasks at hand and refrain from finger-pointing and mischaracterizations. We are happy to discuss these concerns, provided MIT is prepared to respond to the outstanding deficiencies Harman has repeatedly noted concerning MIT's discovery responses and document production.

## I. Harman's Issues

MIT's Refusal to Meaningfully Supplement Its Interrogatory Responses

You stated:   " As we have stated repeatedly, MIT's answers to those contention interrogatories (1) are not presently due under the current schedule, and (2) do not request the additional information that Harman seeks regarding MITs pre-suit investigation, which (3) is privileged information in any event.  MIT has produced all non-privileged documents related to those issues, and has nothing more to produce at this time.  Finally, even if MIT wanted to fully respond to those interrogatories at this time, it could not, because Harman's discovery responses continue to remain inadequate and incomplete on every front."

In response, I offer the following:

(1) MIT's infringement contentions (due November 4) are now long over due. The document MIT served was woefully inadequate. MIT objected to Harman's interrogatories are "premature" contention interrogatories. On the contrary, the time has long passed for MIT to disclose its infringement contentions, which necessarily include some construction of the claims it has asserted showing how such claims read on the products MIT has accused of infringement. And, as we have previously shown, the case law and logic clearly dictate that Harman is entitled to know how MIT contends that Harman infringes and why.  See e.g. Rickles, Inc. v. Francis Denney Corp., 508 F.Supp. 4, 7, fn. (D. Mass 1981) (noting that the purpose of interrogatories is "to facilitate trial preparation, to provide facts, to narrow the issues and to reduce the chance of surprise."); see also Thomas & Betts Corp. v. Panduit Corp., 1996 WL 169389 at *2 (N.D. Ill. 1996) (compelling early responses to contention interrogatories in the interest of "narrowing the issues and finding out exactly what [plaintiff] actually contends")

(2) Harman's interrogatories (Nos. 1-5) seek the information MIT relied upon: (1) at the time MIT asserted claims of infringement against Harman and its customers; and (b) at the time MIT filed suit against Harman. With respect to MIT's pre-filing investigation, there can be no reasonable debate that MIT (should have) relied upon its pre-filing investigation (as Rule 11 requires) at the time it filed suit against Harman. MIT's continued refusal to provide any discovery concerning its infringement contentions and its pre-filing investigation is inexplicable and prejudices Harman's ability to prepare its defense.

(3) We fail to understand how any privilege precludes MIT from responding to an interrogatory. The attorney-client privilege protects documents and testimony, not interrogatory responses. There is no reason why MIT can't state its positions and which documents it relied upon prior to asserting infringement and filing suit against

Harman.  As you know, in this instance, MIT bears the burden of establishing the applicability of privilege and/or work product protection.  <u>Colonial Gas Co. v. Aetna Casualty and Surety Co.</u>, 144 F.R.D. 600, 605 (D. Mass. 1992) (citing <u>In re Atlantic Fin. Management Sec. Litig.</u>, 121 F.R.D. 141, 145 (D. Mass. 1988) (compelling production of certain documents over objections of privilege and/or work product).   MIT has failed to even make out a prima facie case of privilege and/or work product with respect to any particular document or response.  And, to the extent any document is MIT's production is responsive and privileged, it should be logged on MIT's privilege log, not withheld.  Please explain how MIT contends privilege and/or work product entitle MIT to absolutely refuse to respond and produce responsive documents in response to Harman's interrogatories Nos. 1-6.

Finally, the status of Harman's discovery responses does not affect MIT's ability to respond to Harman's discovery requests and should not be used a bargaining chip or excuse for further delay.  Nonetheless, as demonstrated above, MIT's discovery responses are hardly inadequate or incomplete, as Harman has addressed each deficiency noted by MIT.  If MIT has further deficiencies about which Harman is not aware, please advise.

## II. MIT's Issues

<u>Document Production</u>

As promised we have been collecting documents in response to your items 1-2 and 4-10 of your November 11th letter to Michelle Francis.  Indeed, I just returned from a personal visit to my client's offices to collect additional documents.  As soon as we have completed our review and labeling of those documents, we will be producing them to MIT.

Regarding your item 3: During my visit last week, I collected additional documents in response to your request.  My client is currently searching its files for any additional documents that may also be responsive.   As soon as we have completed our review and labeling of those documents, we will be producing them to MIT.

Regarding product samples:  I personally inspected product samples during my trip last week.  My client is completing assembly and making some adjustments to the samples so that they are ready for delivery and demonstration outside of their native vehicle-installed environment.    As promised, we expect them to be ready for delivery soon.

Regarding MIT's requests for schematics: I cited you to documents that Harman believes are responsive.  You said you'd review and let me know if MIT requires additional documents.  I have not heard from you.   I have nonetheless collected last week and asked my client to search again for responsive documents.  As soon as we have completed our review and labeling of those documents, we will be producing them to MIT.

Regarding customer orders:  In addition to the documents Harman has already produced, I collected last week and have asked my clients to search further for additional responsive documents, including RF@s, Quotes, Correspondence and the like.  As soon as we have completed our review and labeling of those documents, we will be producing them to MIT.

<u>Depositions</u>

I met with several of the people identified in Harman's supplemental initial disclosures.  We have determined that further supplementation is required, which was confirmed during my meetings last week.  I expect to be in a position to serve Harman's Second Supplemental Initial Disclosures by the end of this week.

The first two Harman witnesses will be available the week of January 9 in Chicago.  One of those witnesses is Mr. Butler.  The second witnesses identity will be revealed after we confirm our supplemental initial disclosures.  After meeting with Mr. Munn, we have determined that he is not a knowledgeable witness regarding the issues in this case and will be offering a different witness in his stead.  The identity of Mr. Munn's replacement will be disclosed in Harman's next supplement to its initial disclosures.

Please confirm Mr. Swartz' availability on January 9 or 10 in Chicago, we will present Harman's witnesses that week following Mr. Swartz' deposition.

We have determined that Harman will need to designate three different individuals to respond to the three topics in MIT's 30(b)(6) notice to Harman. We are in the process of identifying dates for each of the three designees, which will depend upon (1) their schedules, and (2) the time needed to prepare each witness. These depositions will not occur until after the first round of depositions the week of January 9. As soon as I have firm dates, I will let you know.


Regards,


Jamal.


**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**

200 East Randolph Drive ♦ 53rd Floor |Chicago, IL 60601 | 312.861.2464 **Direct** | 312.861.2200 **FAX**

**www.kirkland.com/jedwards**


| "Cerveny, David" <dcerveny@proskauer.com> | To "Jamal Edwards" <jedwards@kirkland.com> |
|---|---|
| 12/05/2005 07:24 PM | cc "MIT_Harman" <MIT_Harman@proskauer.com>, Harman-mit@kirkland.com |
| | Subject MIT v. Harman - Discovery |


Jamal,
It has now been more than two weeks since we agreed to a resolution of many of the outstanding discovery disputes, but, since then, Harman has not taken any action to follow through with those agreements. Last Tuesday, November 29, 2005, you indicated that Harman would be serving its amended initial disclosures today, that you would have deposition dates for Harman's 30(b)(6) deposition, and that you would have deposition dates for the two initial individual depositions that we had tentatively scheduled for the week of December 19, 2005 (which is now less than two weeks away). As you did not contact me today as I requested in my email of this morning to discuss the status of discovery, I presume that Harman does not have those dates and will not be serving its revised initial disclosures today.

Once again, we are in a position where we can no longer wait for Harman to comply with its discovery obligations, which it has continually failed to do for months on end. Thus, unless the parties reach a definitive agreement - no later than 5:00 p.m. e.s.t. on Wednesday, December 7, 2005 - regarding the scheduling of the noticed depositions, the scheduling of the remaining document production, the production of documents related to willfulness, and the other issues that the parties addressed two weeks ago, as outlined in my summary letter dated November 23, 2005, MIT plans to file a motion to compel.

We remain open to resolving these issues by agreement, but the issues must be finally resolved or we will seek an order from the Court directing that they be resolved.

David J. Cerveny
Proskauer Rose LLP
One International Place
Boston, Massachusetts  02110-2600
Tel:  617-526-9621
Fax: 617-526-9899

dcerveny@proskauer.com

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify the sender immediately by replying to this message and destroy all copies of this message and any attachments. Thank you.


----------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.


================================================================================


************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee.  It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful.  If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
************************************************************

**Mottley, Kimberly**

| | |
|---|---|
| **From:** | Jamal Edwards [jedwards@kirkland.com] |
| **Sent:** | Thursday, December 08, 2005 3:25 PM |
| **To:** | Cerveny, David |
| **Cc:** | Harman-mit@kirkland.com; MIT_Harman |
| **Subject:** | RE: MIT v. Harman - Discovery |

Dave:

I am pleased we were able to make additional progress on discovery issues.  To confirm, we addressed the following:

I. Document Production

      I advised you that Harman will be producing additional responsive documents from our Farmington Hills location the week of December 19.  Assuming we receive the documents next week as expected, we should be able to produce them to MIT by Monday December 19.  I expect most of the documents will be produced on DVD. I expect these documents to include the following:  customer specifications and correspondence, design plans and marketing/sales proposals and presentations, RFQs, quotes, end-user complaints and OEM customer complaints, and any additional documents that may be found after a reasonable search based on Harman's understanding of MIT's claims and requests.

      I expect our product samples to be ready by December 19.    We also have some additional paper documents that will be produced at that time, which were also collected from our Farmington Hills office.

      You confirmed that MIT believes it has produced all responsive, non-privileged documents in its possession, custody or control, including documents from Mr. Swartz's, Mr. Call's and Dr. Davis' files.  We will continue reviewing the documents received to date and will respond in writing regarding any deficiencies we notice.

II. Claim Construction/Contentions

      We agreed we would confirm with our clients that the parties will agree to extend until January 20, 2006, the previously agreed January 4, 2006 deadline for exchange of proposed claim elements for construction and preliminary claim construction.  This will allow both parties time to prepare and present their preliminary claim construction positions to each other so that the parties may determine where an agreement might be reached and to narrow the issues for construction by the Court.  You stated that MIT's pleading will contain substantive responses to Harman's interrogatories Nos. 1-5.  The parties will meet and confer on or around February 3, 2005, to discuss claim construction positions and room for agreement.

III. MIT's Supplemental Interrogatory Responses

      You stated that you were nearly finished preparing MIT's supplemental responses to Harman's interrogatories Nos. 6-7, and that we could expect to receive them next week.  You agreed to report back with a definitive date tomorrow.

IV. Depositions

      We agreed that we would plan our first round of depositions for the week of January 9.  Harman proposes that Mr. Swartz' deposition occur on Monday, Jan 9, and that the depositions of Harman's two witnesses occur on Jan 11 and 12.  All three depositions will occur at Kirkland's Chicago office.  You agreed to confirm Mr. Swartz' availability on January 9, 2006.

You also stated that you would check with Dr. Davis to confirm his availability for the Week of January 23. You stated that MIT would prefer his deposition to occur in Boston.  Please confirm his availability as soon as possible.

We also agreed to work toward developing a tentative deposition schedule for all outstanding fact depositions by January 6.  This will allow us time to discuss during our first round of depositions the week of January 9.

We agreed that further depositions, including Harman's 30(b)(6) will not occur until after February 3, 2006, thus allowing time for the parties to receive and confer about each others propose claim constructions, infringement contentions and invalidity positions.  Harman will make every effort to present its 30(b)(6) designees soon thereafter, and we will work diligently to present dates in February that will work for both parties.  We should confer again about potential dates when we discuss our tentative deposition schedule on January 6, and during our first round of depositions.

V. Amendment of Pleadings

We discussed a stipulated amendment of the complaint whereby MIT will amend only to allege willful infringement and infringement by import.  You stated that MIT would agree to a very narrow amendment whereby MIT will limit its amendment to parroting the language of the statute regarding willful infringement and infringement by import into the United States.   I told you that Harman was not inclined to agree to a shortened answer period, but that we would consider stipulating to answering only in response to MIT's narrow amendments, and that the amendment will not toll or delay the currently agreed schedule.   We both agreed to confer again with our clients on this point and to confirm our agreement by e-mail afterwards.

As discussed, we both recognize that the proposals and agreements made during our call are subject to final approval by our clients and respective superiors.  Nonetheless, it appears that we have made significant progress and I look forward to continued progress in the future.

Thanks for your cooperation,

Jamal.

**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**

200 East Randolph Drive ♦ 53rd Floor |Chicago, IL 60601 | 312.861.2464 **Direct** | 312.861.2200 **FAX**

**www.kirkland.com/jedwards**

| "Cerveny, David" <dcerveny@proskauer.com> | To "Jamal Edwards" <jedwards@kirkland.com> |
|---|---|
| 12/07/2005 04:31 PM | CC Harman-mit@kirkland.com, "MIT_Harman" <MIT_Harman@proskauer.com> |
| | Subject RE: MIT v. Harman - Discovery |

Jamal,

Your response is a step in the right direction, but we need to ensure that outstanding discovery issues are resolved in a timely and reasonable manner.  We are available tomorrow at noon est/11 cst to discuss all open discovery issues.  During that meeting and as part of any broader resolution, we expect Harman to commit to a

definitive schedule for the completion of outstanding discovery, including document production dates, the scheduling of initial depositions, and a deadline for finalizing all remaining dates for the other noticed depositions.

Dave

---

**From:** Jamal Edwards [mailto:jedwards@kirkland.com]
**Sent:** Wednesday, December 07, 2005 3:24 PM
**To:** Cerveny, David
**Cc:** Harman-mit@kirkland.com; MIT_Harman
**Subject:** Re: MIT v. Harman - Discovery


Dave

Please let me know if my response yesterday does not address your concerns; and, if so, please confirm that you'll be available to discuss tomorrow at 11:00a CST.

Thanks,

Jamal.

**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**

200 East Randolph Drive ♦ 53rd Floor │Chicago, IL 60601 | 312.861.2464 **Direct** │ 312.861.2200 **FAX**
**www.kirkland.com/jedwards**


"Cerveny, David" <dcerveny@proskauer.com>

12/05/2005 07:24 PM

To "Jamal Edwards" <jedwards@kirkland.com>

cc "MIT_Harman" <MIT_Harman@proskauer.com>, Harman-mit@kirkland.com

Subject MIT v. Harman - Discovery



Jamal,
It has now been more than two weeks since we agreed to a resolution of many of the outstanding discovery disputes, but, since then, Harman has not taken any action to follow through with those agreements. Last Tuesday, November 29, 2005, you indicated that Harman would be serving its amended initial disclosures today, that you would have deposition dates for Harman's 30(b)(6) deposition, and that you would have deposition dates for the two initial individual depositions that we had tentatively scheduled for the week of December 19, 2005 (which is now less than two weeks away).  As you did not contact me today as I requested in my email of this morning to discuss the status of discovery, I presume that Harman does not have those dates and will not be serving its revised initial disclosures today.

Once again, we are in a position where we can no longer wait for Harman to comply with its discovery obligations, which it has continually failed to do for months on end. Thus, unless the parties reach a definitive agreement - no later than 5:00 p.m. e.s.t. on Wednesday, December 7, 2005 - regarding the scheduling of the noticed depositions, the scheduling of the remaining document production, the production of documents related to willfulness, and the other issues that the parties addressed two weeks ago, as outlined in my summary letter dated November 23, 2005, MIT plans to file a motion to compel.

We remain open to resolving these issues by agreement, but the issues must be finally resolved or we will seek an order from the Court directing that they be resolved.

David J. Cerveny
Proskauer Rose LLP
One International Place
Boston, Massachusetts  02110-2600
Tel:  617-526-9621
Fax: 617-526-9899
dcerveny@proskauer.com

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify the sender immediately by replying to this message and destroy all copies of this message and any attachments. Thank you.

----------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

==============================================================================

*********************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee.  It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful.  If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*********************************************************

----------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

==============================================================================

*********************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee.  It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited

and may be unlawful.  If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
***********************************************************

1/11/2006

| | | |
|---|---|---|
| | One International Place | LOS ANGELES |
| | 22nd Floor | WASHINGTON |
| | Boston, MA 02110 | BOSTON |
| | Telephone 617-526-9600 | BOCA RATON |
| | Fax 617-526-9899 | NEWARK |
| | | NEW ORLEANS |
| | | PARIS |

# PROSKAUER ROSE LLP

**Kimberly A. Mottley**
Direct Dial:  617-526-9616
Email: kmottley@proskauer.com

January 18, 2006

*Via Electronic Mail*

Jamal M. Edwards, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601

   Re:  <u>MIT v. Harman International Industries, Inc.</u>, No. 05-10990 DPW (D. Mass.)

Dear Jamal:

   I write to follow-up on our conversation yesterday, and in response to your letter sent thereafter.

## I.  <u>Depositions</u>

   We understand that you are available to take the depositions of MIT's witnesses on the following dates, pursuant to our offers of availability during yesterday's call:

   February 7 – Robert Swartz (Boston)
   February 8 – Chris Schmandt (Boston)
   February 9 – Jack Turner (Boston)
   February 16 – Jim Davis (Boston)
   April 13 – Charles Call (Fort Meyers)

   You offered us the deposition of Mr. Radamski on February 3, 2006 (Chicago), Mr. Giffin on February 21, 2006 (New York), and Mr. Eelman on February 15, 2006 (Chicago).  We don't know why you continue to try to schedule these so far apart, when we cooperatively agreed to provide witnesses to allow efficient travel on your end.  We are not available on February 3 for Mr. Radamski's deposition in Chicago.  Since you told me that Mr. Radamski is "generally available," we would like to take his deposition on February 14, so that we will have two Chicago depositions back-to-back to minimize travel costs.  Alternatively, we will re-schedule

PROSKAUER ROSE LLP

Jamal M. Edwards, Esq.
January 18, 2006
Page 2

Dr. Davis to February 14, so that we can take Radamski and Eelman on February 15 and 16. Please let me know which of these options works best for you.

You also offered Harman's 30(b)(6) deposition on Topic 2 on April 18, 2006. Our willingness to defer that deposition that long depends on who will represent Harman in this deposition, so please let us know that. We do not want to agree to defer an important fact witness that far, simply because you may designate the witness as a 30(b)(6) witness.

You stated that, upon "further discussions" with your client, you now understand that Messers. Munn and Molzen are not as knowledgeable as others you have now identified as more knowledgeable, and potentially as trial witnesses for Harman – Messers. Radamski and Naife. Based on your representations, we hereby withdraw (without prejudice) the deposition notices for Messers. Munn and Molzen, and enclosed are the deposition notices of Messers. Radamski and Naife in their stead, as you suggested. To be clear, we are withdrawing these depositions on your representations that the witnesses were misidentified by you. If it later appears that Messers. Munn and Molzen may have relevant information, we reserve the right to re-notice their depositions.

You confirmed that Harman will refuse to produce (or even schedule) *any* "technical" witnesses until you have MIT's claim construction contentions. First, you should have produced these witnesses months ago, pursuant to our deposition notice served on September 28, 2005, for November 2, 2005. You have not offered a *single* available date for this deposition, but for yesterday's offer of April 18, 2006 for Topic 2 as discussed above. We have been waiting for dates for this deposition from you for six months -- at this point, we will take this up with the Court.

Finally, you informed us that Mr. Rauterberg is no longer a Harman employee. I asked whether you are representing him for purposes of this litigation, and you replied that you are still checking into that. Please let us know by the end of the week whether you represent him or not.

II.    **Source Code**

We have reviewed your proposal in yesterday's letter. Although we may be able to agree upon the number of experts who have access to the source code, we see no reason why the source code terminal must be housed at Harman's local counsel's offices instead of our offices here. As you so aptly put it during yesterday's call, we are all officers of the Court, and your suggestion that we would not abide by the strictures of the protective order is inappropriate. We will take this matter up with the Court.

PROSKAUER ROSE LLP

Jamal M. Edwards, Esq.
January 18, 2006
Page 3

## III.    **Product Samples**

Yesterday, you informed us that you have what you call "product samples" available for inspection and purchase at $3,000 per unit, for Harman's TrafficPro II, RB3, RB4, and M.O.A.R. products.  You stated that these samples have been significantly modified from the units sold and shipped to Harman's customers (which have list prices in the $500-$700 range).

What we asked for in Document Request No. 22 (served *six months ago* now), and in my follow-up September 20, 2005 letter, are "samples of actual products as commercially sold by Harman," with no modifications or alterations, sold to us at the same price as Harman charges its customers.  Your refusal to produce these product samples as commercially available is inexcusable, and we will raise this with the Court.

Sincerely,

Kimberly A. Mottley

Enclosures

One International Place
22ⁿᵈ Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

**Kimberly A. Mottley**
Direct Dial: 617-526-9616
Email: kmottley@proskauer.com

January 17, 2006

*Via Electronic Mail*

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601

      Re:     <u>MIT v. Harman International Industries, Inc.</u>, No. 05-10990 DPW (D. Mass.)

Dear Craig:

      Following up on our call today, you told me you would not produce source code (whether written or electronic) for our or our experts' review, other than in your offices.  We told you we would move to compel.  Pending resolution of that motion, we remain open to any reasonable terms to protect your code while in our possession.

      Below is the provision I have used in past protective orders to address confidentiality concerns of parties producing source code.  If your client will agree to produce the source code, protected by a provision akin to that listed below, let us know.

<u>Special Restrictions on Production and Use of Computer Software</u>:  To the extent that parties produce confidential computer software or data in machine readable or executable format ("Source Code"), and mark those tapes or CD-ROMs with the legend "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER, NO COPY PERMITTED, OUTSIDE COUNSEL'S EYES ONLY"  such materials are to be used by the receiving party only under the following conditions in addition to those described in this Protective Order for Confidential Material:

(a)     Source Code shall be produced on a laptop computer or on a CD-ROM or tape, including any proprietary software or otherwise unavailable software (within the producing party's possession, custody and/or control) that is necessary to read the Source Code, or shall identify the commercial program necessary to read it.  The Source Code shall identify the software release version.  The laptop computer or CD-ROM or tape shall be kept at the offices of outside

PROSKAUER ROSE LLP

Craig D. Leavell, Esq.
January 17, 2006
Page 2

trial counsel, and shall not be removed therefrom without prior written notice and permission of opposing counsel. If the Source Code is produced on a CD-ROM or tape, then the CD-ROM or tape shall be maintained in a locked cabinet or the like, when not in use. No back-up copies of the laptop computer or CD-ROM or tape may be made at any time without the express written consent of the parties. Should the laptop computer or CD-ROM or tape become damaged, the producing party shall exchange the damaged laptop computer or CD-ROM or tape for an undamaged laptop computer or CD-ROM or tape.

(b)     If the Source Code is produced on a CD-ROM or tape, then the Source Code may be copied from the CD-ROM or tape to a single hard drive of a single desktop computer ("Desktop Computer"), maintained at the office of trial counsel, in a locked office. The Desktop Computer may not be connected to any network, phone line, wireless network, or any other computer. No electronic files may be transferred or copied from the Desktop Computer, and the Desktop Computer may not be removed from the locked office described above. All files on the hard drive of the Desktop Computer shall be encrypted, and the Desktop Computer shall be protected by password. The exact nature of the encryption and the password protection shall be agreed by all parties.

(c)     If the Source Code is produced on a laptop computer, then the laptop computer shall be maintained at the office of trial counsel, in a locked office. The laptop computer may not be connected to any network, phone line, wireless network, or any other computer. No electronic files may be transferred or copied from the laptop computer, and the laptop computer may not be removed from the locked office described above.

(d)     The laptop computer or the Desktop Computer may have a printer directly attached to the computer (not through any network or server). Any printed material shall be labeled "Highly Confidential – Subject to Protective Order, Outside Counsel's Eyes Only," and shall be subject to the same terms and conditions as the laptop computer, CD-ROM, or tape.

(e)     Notwithstanding the above, counsel may make copies for depositions and bring those copies to the depositions, but such copies shall be kept with counsel at all times and not given to the Court Reporter. Deposition testimony relating to the Source Code and documents derived from the Source Code shall be treated as for outside counsel's and expert's eyes only. If either party intends to offer any evidence at trial on the Source Code, the Court shall take appropriate measures to preserve the confidentiality of the Source Code to the extent reasonable practicable.

Sincerely,

Kimberly A. Mottley