## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MASSACHUSETTS INSTITUTE OF TECHNOLOGY,** )<br>)<br>)<br>)<br>) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No(s).: 05-10990 DPW** |
| ) | **Hon. Douglas P. Woodlock** |
| **HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,** )<br>)<br>)<br>) | |
| **Defendant.** )<br>) | |

## HARMAN'S MOTION TO COMPEL MIT'S COMPLIANCE WITH THE COURT'S SCHEDULING ORDER AND TO COMPEL MIT'S RESPONSES TO HARMAN'S INTERROGATORIES NOS. 1-5

Defendant Harman International Industries, Incorporated hereby moves to compel

Plaintiff Massachusetts Institute of Technology to comply with the Court's Scheduling Order and

Respond to Harman's Interrogatories Nos. 1-5. A Memorandum supporting this Motion is

attached hereto.

Dated:  January 24, 2006                  Respectfully submitted,


/s/ Courtney A. Clark
Robert J. Muldoon, Jr., BBO# 359480
James W. Matthews, BBO# 560560
Edward S. Cheng, BBO# 634063
Courtney A. Clark, BBO# 651381
**SHERIN AND LODGEN LLP**
101 Federal Street
Boston, MA 02110

William A. Streff Jr., P.C.
Michelle A. H. Francis
Jamal M. Edwards
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

*Attorneys for Defendant*

## LOCAL RULE 7.1(A)(2) CERTIFICATE


Counsel for Harman International Industries, Incorporated hereby certify that they have conferred with opposing counsel on the matters set forth in the foregoing Motion, and have attempted in good faith to resolve or narrow the issues.


/s/ Courtney A. Clark
Courtney A. Clark

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, A Delaware Corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) )  **Case No. 05-10990 DPW**  <br><br> Hon. Douglas P. Woodlock |

**MEMORANDUM IN SUPPORT OF HARMAN'S MOTION TO COMPEL MIT'S COMPLIANCE WITH THE COURT'S SCHEDULING ORDER AND TO COMPEL MIT'S RESPONSES TO HARMAN'S INTERROGATORIES NOS. 1-5**

In support of Defendant Harman International Industries, Incorporated's ("Harman") Motion to Compel Plaintiff MIT's Compliance with the Court's Scheduling Order and Motion to Compel Plaintiff's Responses to Defendant's First Set of Interrogatories (Nos. 1-5), Harman states the following.

**I.    DISCOVERY CONFERENCES**

Harman and MIT held several discovery conferences via telephone and written correspondence regarding the issues raised in this Motion, but have been unable to resolve all of the issues. Counsel for Harman (Michelle Francis, Craig Leavell and/or Jamal Edwards) convened discovery conferences with counsel for MIT (David Cerveny and/or Kimberly Mottley) beginning on October 12, 2005 and continuing through January 17, 2006 (including teleconferences on Oct. 12, 14, 18, 27; Nov. 1, 17, 21, December 8 and 20, 2005; January 6, 12, 17 and 24, 2006). As of January 23, 2006, the parties had reached agreement on the following discovery issues: (1) the protective order (with one exception for presentation to the Court at a

later time); (2) several issues regarding the parties' respective document productions; (3) limited initial deposition scheduling; (4) and other housekeeping matters.

This motion seeks the Court's assistance in compelling MIT to comply with the Court's September 4, 2005 Scheduling Order (as modified by the parties' agreement), which requires the parties to exchange preliminary claim construction positions on January 20, 2006. In the interests of judicial economy, this motion also presents a critical discovery issue about which the parties could not agree: Harman's right to discovery regarding MIT's infringement contentions and claim construction positions.

## II.    NATURE OF THE CASE & RELEVANT FACTS

On September 4, 2005, after a scheduling hearing, this Court ordered that the parties must exchange their preliminary claim constructions positions on January 4, 2006. Shortly thereafter, Harman also served its First Set of Interrogatories to MIT on September 6, 2006. Harman's Interrogatories seek standard discovery from MIT; specifically, Interrogatories Nos. 1-5 seek MIT's infringement contentions and then-current claim construction positions. **MIT refused to respond to any of Harman's interrogatories *for more than four months*, until on January 9, 2006, when *MIT responded to only _two_ of Harman's seven interrogatories*.** Despite several discovery conferences and attempts by Harman to compromise, MIT absolutely refused and continues to refuse to respond to Harman's Interrogatories Nos. 1 – 5 (seeking MIT's position as to how Harman infringes and how MIT currently construes its own patent). Not only do those interrogatories seek standard patent discovery to which Harman is entitled (as discussed below) but *the Court has ordered that MIT provide at least its preliminary claim construction positions on January 4, 2006*. Despite MIT's stated intentions to violate the Court's order by refusing to provide any discovery on claim construction, Harman made a final effort to compromise by agreeing with MIT to extend the January 4th deadline for exchange of

2

preliminary claim construction positions to January 20, 2006, relying to its detriment upon MIT's promise that the January 20th filing would also include substantive meaningful responses to Harman's Interrogatories Nos. 1-5. *See* Ex. A. MIT's refusal to comply with this Court's Scheduling Order, and refusal to provide Harman with critical discovery to which it is entitled, is inexcusable.

Federal Circuit law requires a plaintiff in a patent infringement suit to, "at a minimum, … interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004). Harman served MIT with seven interrogatories on September 6, 2005, making MIT's responses due October 6, 2005. *See* Ex. C. Two of the seven interrogatories (Nos. 1 and 2) seek MIT's construction of the claims it is asserting against Harman—discovery essential to the non-infringement, invalidity and unenforceability claims at issue.[1] Three interrogatories (Nos. 3, 4 and 5) seek MIT's application of its asserted claims to the accused products—information that MIT should have readily available as a result of the nearly two years it has spent asserting the patent-in-suit against Harman and as a requirement under Rule 11 of the Federal Rules of Civil Procedure before filing this action. *See Q-Pharma*, 360 F.2d at 1300-01 (requiring that the attorney compare the accused device with the interpreted claims before alleging infringement.)

Harman drafted its interrogatories so that MIT could simply insert its contentions with respect to each asserted claim element into the columns of a table:

| Col. 1 | Col. 2 | Col. 3 | Col. 4 | Col. 5 | Col. 6 | Col. 7 |
|--------|--------|--------|--------|--------|--------|--------|

---

[1]    Interrogatory No. 6 and 7 pertain to information concerning reduction to practice, prior disclosures and first sale of the patented invention. MIT has also refused to respond to these interrogatories, although Harman does not yet raise MIT's refusal to respond to these Interrogatories before this Court.

| Claim Element | §112,¶ 6 Specified Function | §112,¶ 6, Corresponding Structure | Literally Infringed because Identical Structure in Accused Product | Literally Infringed because Equivalent Structure in Accused Product | Infringed under Doctrine of Equivalents | Infringement of Elements Not Written in § 112, ¶6 Form |
|---|---|---|---|---|---|---|
| | | | | | | |

*See* Ex. C, Appendix A, Table A . Harman provided MIT with a paper and electronic copy of the table to facilitate its response. *See id*. MIT refused to answer a single interrogatory, even:

- *after* nearly 2 years of negotiations during which Harman provided MIT with detailed claim charts and references showing its non-infringement, invalidity and unenforceability of the patent-in-suit;

- *after* MIT supposedly completed its pre-filing investigation and filed suit against Harman;

- *after* Harman responded on September 6, 2005 to MIT's interrogatories, including by identifying all Harman products "used, made, sold or offered for sale by Harman" in the United States and supplemented its responses on **November 2, 2005**;

- *after* Harman produced documents in response to MIT's document requests on October 11, 2005. and supplemented it production on November 4, 2005;

- *after* MIT was to required disclose its asserted claims on November 4, 2005. *See* Exs. D & E; and

- *after* MIT was required to disclose its preliminary infringement contentions and identify those products it accuses of infringement on November 4, 2005. *see id.*

- *after* Harman served its preliminary invalidity contentions; and

- *after* Harman committed to exchange its preliminary claim constructions on January 20, 2006 as ordered by the Court.

Notwithstanding the ample time that MIT has had to formulate its infringement contentions, MIT refuses to answer Harman's interrogatories. Instead, MIT responded to Harman's interrogatories

with fifteen general boilerplate objections and a non-responsive, specific objection (identical in pertinent part) for each of the five interrogatories.[2]

As to the two interrogatories directed to claim construction, MIT's objection simply lacks merit. Defendant is entitled to discover MIT's claim construction positions before responding with its preliminary invalidity contentions, before providing its preliminary claim construction positions, and certainly before the offering any technical depositions. Yet, MIT has refused to provide any discovery regarding its infringement contentions or claim construction positions, even after Harman filed its preliminary invalidity contentions and even despite Harman's willingness to exchange preliminary claim constructions on January 20, 2006, as ordered by the Court and agreed by the parties. Without MIT's compliance, Harman will be severely prejudiced in its ability to adequately defend itself. Discovery has no bearing on how MIT construes the claims of its asserted patent. And, Harman is entitled to discovery relevant to MIT's infringement contentions—in particular, Harman as the defendant is entitled to know how MIT currently construes the claims of its own patent.

MIT's refusal to provide a substantive response to *any* interrogatory directed to infringement is equally improper. MIT purports to have identified some accused products and their components in compliance with this Court's November 4 deadline; therefore MIT surely should be able to tell Harman how it believes those accused products infringe. Most importantly, MIT's attorneys have an obligation under Rule 11 and supporting case law to prepare initial infringement contentions *before* filing suit. *See Antonious v. Spalding & Evenflo Companies,*

---

[2]    MIT objects to this Interrogatory ... as premature, as ... the parties agreed in their August 1, 2005 Joint Statement filed with the Court that they will "[exchange proposed terms and claim elements for construction and preliminary claim constructions"/"provide disclosure of asserted claims and preliminary infringement contentions"]" on [January 4, 2006/November 4, 2005], and because the Court adopted that deadline during the August 4, 2005 scheduling conference. MIT further objects ... because MIT has not yet completed its factual and legal analysis with regard to claim construction, and thus contention interrogatories regarding the interpretation of each claim are premature at this stage of the litigation... *See* Ex. F.

*Inc.*, 275 F.3d 1066 (Fed. Cir. 2002) (in which the court remanded for a determination of whether the pre-filing investigation was adequate); *View Engineering, Inc. v. Robotic Vision Systems, Inc.*, 208 F.3d 981 (Fed. Cir. 2000) (in which the court upheld the trial court's imposition of Rule 11 sanctions).

When confronted with these deficiencies, MIT first claimed that it would not respond due to some unspecified deficiencies in defendant's discovery responses, then claimed that Harman's requests are premature contention interrogatories. *See* Ex. F.   To the contrary, Harman's requests for information that MIT *should have had prior to filing suit* is hardly premature.[3] Nonetheless, MIT continues to refuse to provide any information as to how it reads it claims and how those claims purportedly cover any Harman device.   None of MIT's proffered reasons justifies its refusal to provide responses with respect to accused products MIT identified before filing suit or in MIT's preliminary infringement contentions.  MIT's responses, which were due **October 6, 2005**, are already long-overdue.  MIT's delay prejudices Harman's ability to defend against MIT's infringement claims.

In short, MIT has had ample time, opportunity and discovery, in this case (including the two years of negotiations that preceded the filing of Harman's initial declaratory judgment action and MIT's complaint), and should easily be able to respond to Harman's five interrogatories. MIT's violation of this Court's order and its refusal to respond jeopardizes Harman's ability to meet its obligations under this Court's scheduling order and jeopardizes Harman's ability to prepare a fair and reasonable defense.  Accordingly, pursuant to Rule 37(c) of the Federal Rules

---

[3]   "While the plaintiff here should not be expected to make out the defendant's case, the court recognizes that the purpose of interrogatories is not only to obtain facts, but to narrow and crystallize the issues before the court." *Roberson v. Great Am. Ins. Cos. of New York*, 48 F.R.D. 404, 413-414 (N.D. Ga. 1969) (granting motion to compel, recognizing trend away from "sustaining broad use of objections based upon conclusions, contentions and opinions").

of Civil Procedure, defendant Harman International Industries, Inc. respectfully requests that this Court order MIT to fully and substantively respond to Defendant's Interrogatories Nos. 1-5 immediately.

## III.    DEFENDANT'S INTERROGATORIES ARE PROPER AND TIMELY.

### A.    Interrogatory Nos. 1 and 2 Are Essential to Harman's Preparation of its Defense Against MIT's Allegations of Infringement.

Harman's Interrogatory Nos. 1 and 2 seek, in pertinent part, MIT's interpretation of the

asserted claims:

### HARMAN'S INTERROGATORY NO. 1

State MIT's proposed construction, and all bases supporting such construction, of the following element of claim 1 of U.S. Patent No. 5,177,685 (the "Patent-In-Suit"):  "a map database functionally connected to said computing apparatus which distinguishes between physical and legal connectivity."

### MIT'S RESPONSE

MIT objects to this Interrogatory as premature, as the parties agreed in their August 1, 2005 Joint Statement filed with the Court that they will "exchange proposed terms and claim elements for construction and preliminary claim constructions" on January 4, 2006, and because the Court adopted that deadline during the August 4, 2005 scheduling conference.  MIT further objects to this Interrogatory because MIT has not yet completed its factual and legal analysis with regard to claim construction, and thus contention interrogatories regarding the interpretation of each claim are premature at this stage of the litigation.  MIT further objects to this Interrogatory because it seeks information protected by the attorney-client privilege, work product doctrine and/or other applicable privileges.

### HARMAN'S POSITION

Harman seeks, and is entitled to discover, MIT's position on claim construction before

engaging in burdensome discovery, which MIT is using as a fishing expedition to determine

which products it can accuse of infringement and how they work.  *See Butler Corp. v. General*

*Motors Acceptance Corp.*, No. Civ. A. 0030003MAP, 2002 WL 31926852, at *5 (D. Mass Dec.

27, 2002); citing *Milazzo v. Sentry Ins.*, 856 F.2d 321, 322 (1st Cir. 1988) (noting that

"[d]iscovery is not a fishing expedition.").  MIT has been asserting claims against Harman and

its customers for almost three years.  Harman is entitled to know the bases for MIT's claims,

8

including how MIT construed the claims of the '685 patent when it accused Harman and its customers of infringement, as well as how MIT intends to construe the claims of the '685 patent during this litigation.    Such interrogatories are a proper, and likely the only, means by which Harman can discover and defend against MIT's position on claim construction.

MIT's objections to providing this critical but standard patent discovery is demonstrably disingenuous because MIT should have had this information in its possession ***before* filing this lawsuit**. Harman's interrogatories are not hardly premature or otherwise objectionable. On the contrary, Defendant's interrogatories cannot be premature because they request information that MIT was required to know under Rule 11 before filing its action against Harman. *See* FED. R. CIV. P. 11(b) (requiring certain certifications before an attorney signs a pleading). The Federal Circuit has recognized the importance of Rule 11 in complex and costly patent cases:

> A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs-precisely the scenario Rule 11 contemplates. Performing a pre-filing assessment of the basis of each infringement claim is, therefore, extremely important. ***In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement.***
>
> \*\*\*
>
> Before filing [claims or] counterclaims of patent infringement, Rule 11, we think, must be interpreted to require the law firm to, ***at a bare minimum***, apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.

*View Eng'g*, 208 F.3d at 986 (emphasis added); *see also Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (requiring that the inquiry be undertaken "*before* the suit is filed, not after.") (emphasis original).    A patent infringement plaintiff has a basic obligation under Rule 11 to conduct a reasonable pre-filing investigation and prepare at least an outline of claim charts comparing the accused products to the interpreted claims before filing suit. *See Antonious v.*

*Spalding & Evenflo Companies, Inc.,* 275 F.3d 1066, 1076 (Fed. Cir. 2002) ("***at a minimum***. . . the evidence uncovered by the patent holder's investigation must be sufficient to permit a reasonable inference that all the accused products infringe. ") (emphasis added). In other words, MIT's infringement claim charts should already exist and in a much more substantive form than that which MIT filed on November 4 — a bare bones recitation of the claims, vaguely comparing them to non-probative and often unrelated product literature produced by Harman during litigation. For this reason alone, defendant's interrogatories requesting MIT's infringement positions cannot be premature.

In any event, MIT's "premature" objection is misplaced. The deadline for MIT's disclosure of its preliminary infringement contentions has passed, and MIT's response was woefully inadequate. Instead of telling Harman how MIT construed the claims of its own patent when it filed suit (or at any given time for that matter) MIT merely recited the claims verbatim. *See* Ex. G. Even worse, MIT's purported infringement contentions fail to even attempt to show whether MIT contends a particular claim reads on a Harman product literally or under the doctrine of equivalents. *Id.*

Given that the time has now passed for the Harman to serve its preliminary invalidity contentions, and for the parties to exchange preliminary claim construction positions, and technical depositions are fast approaching, Harman respectfully requests that this Court order MIT to answer Harman's Interrogatory No. 1 without further delay.

## HARMAN'S INTERROGATORY NO. 2

For each asserted claim of the Patent-In-Suit, identify each element that MIT contends is written in means-plus-function form as permitted under 35 U.S.C. § 112 ¶6 and, for each such element, identify the specified function for that element and the corresponding structure, material, or acts described in the specification as required by 35 U.S.C. § 112 ¶ 6. MIT's response to this interrogatory should appear in columns 2 and 3 of Table A in Appendix A and should include citations

10

to all evidence (by column and line number, or by figure and item number)
allegedly supporting MIT's identified function.)

## MIT'S RESPONSE

MIT objects to this Interrogatory and each of its subparts as premature, as it seeks
information about 'asserted claims," and the parties agreed in their August 1,
2005 Joint Statement filed with the Court that MIT will "provide disclosure of
asserted claims and preliminary infringement contentions' on November 4, 2005,
and because the Court adopted that deadline during the August 4, 2005 scheduling
conference. MIT further objects because MIT has not yet completed its factual
and legal analysis with regard to infringement and claim construction, and thus
contention interrogatories regarding the interpretation of each claim are premature
at this stage of the litigation. MIT further objects to this Interrogatory to the
extent that it asks that MIT provide information in a certain format.

## HARMAN'S POSITION

As discussed above concerning Harman's Interrogatory No. 1, Harman is entitled to
discover, MIT's position on claim construction before engaging in burdensome discovery, which
MIT is using as a fishing expedition to determine which products it can accuse of infringement
and how they work. *And,* Harman is entitled to know the rationale for MIT's claims of
infringement, including how MIT construed the patent claims of the '685 patent when it accused
Harman and its customers of infringement, as well as how MIT intends to construe the claims of
the '685 patent during this litigation. Such interrogatories are a proper, and likely the only,
means by which Harman can discover and defend against MIT's position on claim construction.

MIT's objections to providing this critical but standard patent discovery is demonstrably
disingenuous because MIT should have had this information in its possession *before* **filing suit**.
Defendant's interrogatories therefore cannot be premature because they request information that
MIT was required to know under Rule 11 before filing the instant action. *See* FED. R. CIV. P.
11(b) (requiring certain certifications before an attorney signs a pleading).

As discussed above, MIT's "premature" objection is misplaced. The deadline for MIT's
disclosure of its preliminary infringement contentions has passed, and MIT's response was

11

woefully inadequate. Given that the time has now passed for the Harman to serve its preliminary

invalidity contentions, and for the parties to exchange preliminary claim construction positions,

and technical depositions are fast approaching, Harman respectfully requests that this Court

order MIT to answer Harman's Interrogatory No. 2 without further delay.

**B.    Interrogatory Nos. 3 through 5 Seek Information Related To The Infringement Contentions That MIT Was Required To Serve On November 4, 2005.**

So that Harman would have some information as to the scope of MIT's infringement

claims and requested discovery concerning Harman's products, Harman sought discovery of

MIT's infringement positions through Interrogatory Nos. 3 through 5.

## HARMAN'S INTERROGATORY NO. 3

For each element identified in response to Interrogatory No. 2 above, state whether MIT contends that Harman literally infringes that element (i) because the structure identical to that identified in response to Interrogatory No. 2 above for that element is found in each accused product and, if MIT contends that identical structure exists, provide a detailed explanation of where such identical structure for that element is found in each accused product; or because (ii) a structure equivalent to that identified in response to Interrogatory No. 2 above for that element is found in each accused product and, if MIT contends that equivalent structure exists, provide a detailed explanation of where such equivalent structure for that element is found in each accused product. MIT's response to this interrogatory should appear in columns 4 of Table A in Appendix A and should include citations to all evidence allegedly supporting MIT's contention and its identified structure.

## MIT'S RESPONSE

"See Response to Interrogatory No. 2" [Response to Interrogatory No. 2 reads "MIT objects to this Interrogatory and each of its subparts as premature, as it seeks information about 'asserted claims," and the parties agreed in their August 1, 2005 Joint Statement filed with the Court that MIT will "provide disclosure of asserted claims and preliminary infringement contentions' on November 4, 2005, and because the Court adopted that deadline during the August 4, 2005 scheduling conference. MIT further objects because MIT has not yet completed its factual and legal analysis with regard to infringement and claim construction, and thus contention interrogatories regarding the interpretation of each claim are premature at this stage of the litigation. MIT further objects to this Interrogatory to the extent that it asks that MIT provide information in a certain format."

## HARMAN'S POSITION

Interrogatory No. 3 seeks, in pertinent part, identification of those claims that MIT believes Harman literally infringes. MIT objects to this interrogatory as "premature," yet Rule 33 of the Federal Rules of Civil Procedure encourages the use of interrogatories, such as defendant's Interrogatory Nos. 3 through 5, to discover a plaintiff's infringement positions. *See* FED. R. CIV. P. 33(c) ("An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact. . . ."). Such interrogatories, as is the case here, tend to narrow the issues in dispute and reveal bases for summary judgment motions or renewed settlement discussions. *See* FED. R. CIV. P. Rule 33(b), advisory committee notes to 1970 Amendment (adding Rule 33(b) - now 33(c)) ("[R]equests for opinions or contentions that call for the application of law to fact. . . can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery.") Furthermore, courts agree that the use of such interrogatories early in discovery is appropriate. *See e.g. Rickles, Inc. v. Francis Denney Corp.*, 508 F. Supp. 4, 7, fn. (D. Mass. 1981) (noting that the purpose of interrogatories is "to facilitate trial preparation, to provide facts, to narrow the issues and to reduce the chance of surprise."); *see also Thomas & Betts Corp. v. Panduit* Corp., 1996 WL 169389 at *2 (N.D. Ill. 1996) (compelling early responses to contention interrogatories in the interest of "narrowing the issues and finding out exactly what [plaintiff] actually contends").

Harman's Interrogatory No. 3 is consistent with this Court's September 4 and October 20 Scheduling Orders and serves to clarify issues and narrow the scope of necessary discovery. Had MIT disclosed its infringement positions with respect to Harman's products—including those products MIT purports to have identified in its November 4th disclosures—Harman could have determined early on whether the time is ripe to file dispositive motions (to save both Harman's

13

and the Court's resources). In addition, understanding MIT's infringement positions will enable

Harman to focus discovery on critical issues, thus conserving significant resources of the parties

and the Court and keeping this case on schedule.

Harman's Interrogatory is particularly valuable because MIT filed a "notice" pleading:

MIT's complaint states only that Harman "infringes" the patent-in-suit, nothing more. Ex. H at

2; and Ex. I. Harman is entitled to understand the full nature of MIT's claim that Harman

infringes. MIT has not, however, alleged willfulness, but inexplicably requests that Harman

provide discovery regarding issues directly related to non-existent allegations of willfulness.

MIT steadfastly has refused to give defendants *any* information regarding its basis for

infringement, and refuses to amend its complaint to make any claim of willful infringement. *See*

Johnston, Ian D. and Johnston, Robert G., *Contention Interrogatories in Federal Court*, 148

F.R.D. 441 at *5 (1993) ("[i]f a true notice pleading is filed, well tailored contention

interrogatories served early in the litigation will help the [defendant] . . . narrow the scope of

discovery and seek information relevant to the claim, thereby saving valuable time and

resources."). Thus, defendant's interrogatories related to MIT's infringement positions are not

only proper, they are necessary. Harman respectfully requests that this Court order MIT to

answer Harman's Interrogatory No. 3 without further delay.

### HARMAN'S INTERROGATORY NO. 4

> For each element identified in response to Interrogatory No. 2 above, state
> whether MIT contends that Harman infringes that element under the doctrine of
> equivalents and, if MIT contends that doctrine of equivalents infringement exists,
> provide a detailed explanation of where that element is found in each accused
> product and the bases for MIT's contention that the differences between the
> element and the accused product are insubstantial and that the element and the
> accused product perform substantially the same function in substantially the same
> way to achieve substantially the same result. MIT's response to this interrogatory
> should appear in column 6 of Table A in Appendix A and should include citations
> to all evidence allegedly supporting MIT's contentions.

14

## MIT'S RESPONSE

"See Response to Interrogatory No. 2"  [Response to Interrogatory No. 2 reads "MIT objects to this Interrogatory and each of its subparts as premature, as it seeks information about 'asserted claims,' and the parties agreed in their August 1, 2005 Joint Statement filed with the Court that MIT will "provide disclosure of asserted claims and preliminary infringement contentions' on November 4, 2005, and because the Court adopted that deadline during the August 4, 2005 scheduling conference.  MIT further objects because MIT has not yet completed its factual and legal analysis with regard to infringement and claim construction, and thus contention interrogatories regarding the interpretation of each claim are premature at this stage of the litigation.  MIT further objects to this Interrogatory to the extent that it asks that MIT provide information in a certain format."

## HARMAN'S POSITION

Interrogatory No. 4, in pertinent part, seeks MIT's identification of claims it believes Harman infringes under the doctrine of equivalents.  As it did in response to Harman's Interrogatory No. 3, MIT objects to this interrogatory as "premature," yet, as discussed above, Rule 33 of the Federal Rules of Civil Procedure encourages use of interrogatories, such as defendant's Interrogatory Nos. 3 through 5, to discover a plaintiff's infringement positions.  As with Harman's Interrogatory No. 3, such interrogatories tend to narrow the issues in dispute and reveal bases for summary judgment motions or renewed settlement discussions.  And, courts agree that the use of such interrogatories early in discovery is appropriate.  *See e.g. Rickles, Inc. v. Francis Denney Corp.*, 508 F.Supp. 4, 7, fn. (D. Mass 1981) (noting that the purpose of interrogatories is "to facilitate trial preparation, to provide facts, to narrow the issues and to reduce the chance of surprise."); *see also Thomas & Betts Corp. v. Panduit* Corp., 1996 WL 169389 at *2 (N.D. Ill. 1996) (compelling early responses to contention interrogatories in the interest of "narrowing the issues and finding out exactly what [plaintiff] actually contends").

As discussed *supra* regarding Harman's Interrogatory No. 3, this Interrogatory is also consistent with this Court's September 4 and October 20 Scheduling Orders and serves to clarify issues and narrow the scope.

15

Like the others, this Interrogatory is particularly valuable because MIT filed a "notice" pleading: MIT's complaint states only that Harman "infringes" the patent-in-suit, nothing more. Ex. H at 2. Harman is entitled to understand the full nature of MIT's claim that Harman infringes. Thus, defendant's interrogatories related to MIT's infringement positions are not only proper, they are necessary. Harman respectfully requests that this Court order MIT to answer Harman's Interrogatory No. 4 without further delay.

## HARMAN'S INTERROGATORY NO. 5

For each element of each asserted claim not identified in response to Interrogatory No. 2 above, provide a detailed explanation of where that element is found in each accused product and a statement as to whether that element is alleged to be present literally or under the doctrine of equivalents. For each element that is alleged to be present under the doctrine of equivalents, MIT's explanation should include the bases for MIT's contention that the differences between the claim element and the structure in the accused product are insubstantial that the element and the accused product perform substantially the same function in substantially the same way to achieve substantially the same result. MIT's response to this interrogatory should appear in column 7 of Table A in Appendix A and should include citations to all evidence allegedly supporting MIT's contentions.

## MIT'S RESPONSE

"See Response to Interrogatory No. 2" [Response to Interrogatory No. 2 reads "MIT objects to this Interrogatory and each of its subparts as premature, as it seeks information about 'asserted claims," and the parties agreed in their August 1, 2005 Joint Statement filed with the Court that MIT will "provide disclosure of asserted claims and preliminary infringement contentions' on November 4, 2005, and because the Court adopted that deadline during the August 4, 2005 scheduling conference. MIT further objects because MIT has not yet completed its factual and legal analysis with regard to infringement and claim construction, and thus contention interrogatories regarding the interpretation of each claim are premature at this stage of the litigation. MIT further objects to this Interrogatory to the extent that it asks that MIT provide information in a certain format."

## HARMAN'S POSITION

Interrogatory No. 5, seeks MIT's infringement position for any claim elements not written in means-plus-function form. As it did in response to Harman's Interrogatory No. 3, MIT objects to this interrogatory as "premature," yet, as discussed above, Rule 33 of the Federal

16

Rules of Civil Procedure encourages use of interrogatories, such as defendant's Interrogatory Nos. 3 through 5, to discover a plaintiff's infringement positions.    As with Harman's Interrogatory No. 3, such interrogatories tend to narrow the issues in dispute and reveal bases for summary judgment motions or renewed settlement discussions. And, courts agree that the use of such interrogatories early in discovery is appropriate. *See e.g. Rickles, Inc. v. Francis Denney Corp.*, 508 F. Supp. 4, 7, fn. (D. Mass 1981) (noting that the purpose of interrogatories is "to facilitate trial preparation, to provide facts, to narrow the issues and to reduce the chance of surprise."); *see also Thomas & Betts Corp. v. Panduit* Corp., 1996 WL 169389 at *2 (N.D. Ill. 1996) (compelling early responses to contention interrogatories in the interest of "narrowing the issues and finding out exactly what [plaintiff] actually contends").

As discussed *supra* regarding Harman's Interrogatory No. 3, this Interrogatory is also consistent with this Court's September 4 and October 20 Scheduling Orders and serve to clarify issues and narrow the scope.

Like the others, this Interrogatory is particularly valuable because MIT filed a "notice" pleading: MIT's complaint states only that Harman "infringes" the patent-in-suit, nothing more. Ex. H at 2; Ex. I at 2. Harman is entitled to understand the full nature of MIT's claim that Harman infringes. Thus, defendant's interrogatories related to MIT's infringement positions are not only proper, they are necessary. A response should be compelled forthwith. Harman respectfully requests that this Court order MIT to answer Harman's Interrogatory No. 5 without further delay.

## IV.    CONCLUSION

Harman's First Set of Interrogatories (Nos. 1-7) includes just a few straightforward questions, answers to which MIT was required to answer prior to filing suit its lawsuit against Harman. Far from being premature, these interrogatories are long past due. MIT does not

17

contend that Harman is not entitled to this information; rather, MIT seeks to delay the timing of these answers. With this case set for trial in less than a year, timely responses are critical, and MIT is in a position to provide them.

Without the requested discovery, Harman is in the same position it was before MIT ever disclosed its purported infringement contentions. *See e.g.*, Ex. J at 5 ("Harman does not know which claims of the patent-in-suit MIT will assert in this litigation, or the scope that MIT will ascribe to the asserted claims. Harman also does not know the precise number of Harman products that MIT will accuse of infringement, or how MIT contends that such products allegedly infringe ..."). MIT has yet to reveal its infringement contentions to Harman, thus placing Harman in the difficult position of defending against a lawsuit "in the dark." *Roberson v. Great Am. Ins. Co. of New York*, 48 F.R.D. 404, 414 (N.D. Ga. 1969) (noting "The time is past when civil trials are carried out in the dark.") (quoting *Hickman v. Taylor*, 329 U.S. 495, 500 (1947)); *see also View Eng'g*, 208 F.3d at 986 (noting that "defending against baseless claims of infringement subjects the alleged infringer to undue costs...")). Harman is still litigating "in the dark" against infringement claims that are more than two-years old now and continue to jeopardize Harman's and its customers' business.

For these reasons, the Court should grant Harman's Motion to Compel MIT's Responses

to Harman's Interrogatories Nos. 1-5 and order MIT to provide detailed infringement and claim

construction positions immediately.

DATED this 24 day of January 2006.

Respectfully submitted,

_____/s/  Courtney A. Clark_____
Robert J. Muldoon, Jr., BBO# 359480
James W. Matthews, BBO# 560560
Edward S. Cheng, BBO# 634063
Courtney A. Clark, BBO# 651381
**SHERIN AND LODGEN, LLP**
101 Federal Street
Boston, MA 02110

William A. Streff Jr., P.C.
Michelle A. H. Francis
Craig D. Leavell
Jamal M. Edwards
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

*Attorneys for Defendant*

19

# Exhibit A

 Jamal
Edwards/Chicago/Kirkland-Ell
is
12/08/2005 02:24 PM

To "Cerveny, David" <dcerveny@proskauer.com>

cc Harman-mit@kirkland.com, "MIT_Harman"
<MIT_Harman@proskauer.com>

Subject RE: MIT v. Harman - Discovery

Dave:

I am pleased we were able to make additional progress on discovery issues.  To confirm, we addressed the following:

I. Document Production

    I advised you that Harman will be producing additional responsive documents from our Farmington Hills location the week of December 19.  Assuming we receive the documents next week as expected, we should be able to produce them to MIT by Monday December 19.  I expect most of the documents will be produced on DVD.  I expect these documents to include the following:  customer specifications and correspondence, design plans and marketing/sales proposals and presentations, RFQs, quotes, end-user complaints and OEM customer complaints, and any additional documents that may be found after a reasonable search based on Harman's understanding of MIT's claims and requests.

    I expect our product samples to be ready by December 19.   We also have some additional paper documents that will be produced at that time, which were also collected from our Farmington Hills office.

    You confirmed that MIT believes it has produced all responsive, non-privileged documents in its possession, custody or control, including documents from Mr. Swartz's, Mr. Call's and Dr. Davis' files.  We will continue reviewing the documents received to date and will respond in writing regarding any deficiencies we notice.

II. Claim Construction/Contentions

    We agreed we would confirm with our clients that the parties will agree to extend until January 20,

1

2006, the previously agreed January 4, 2006 deadline for exchange of proposed claim elements for construction and preliminary claim construction. This will allow both parties time to prepare and present their preliminary claim construction positions to each other so that the parties may determine where an agreement might be reached and to narrow the issues for construction by the Court. You stated that MIT's pleading will contain substantive responses to Harman's Interrogatories Nos. 1-5. The parties will meet and confer on or around February 3, 2005, to discuss claim construction positions and room for agreement.

III. MIT's Supplemental Interrogatory Responses

You stated that you were nearly finished preparing MIT's supplemental responses to Harman's interrogatories Nos. 6-7, and that we could expect to receive them next week. You agreed to report back with a definitive date tomorrow.

IV. Depositions

We agreed that we would plan our first round of depositions for the week of January 9. Harman proposes that Mr. Swartz' deposition occur on Monday, Jan 9, and that the depositions of Harman's two witnesses occur on Jan 11 and 12. All three depositions will occur at Kirkland's Chicago office. You agreed to confirm Mr. Swartz' availability on January 9, 2006.

You also stated that you would check with Dr. Davis to confirm his availability for the Week of January 23. You stated that MIT would prefer his deposition to occur in Boston. Please confirm his availability as soon as possible.

We also agreed to work toward developing a tentative deposition schedule for all outstanding fact depositions by January 6. This will allow us time to discuss during our first round of depositions the week of January 9.

We agreed that further depositions, including Harman's 30(b)(6) will not occur until after February 3, 2006, thus allowing time for the parties to receive and confer about each others propose claim constructions, infringement contentions and invalidity positions. Harman will make every effort to present its 30(b)(6) designees soon thereafter, and we will work diligently to present dates in February that will work for both parties. We should confer again about potential dates when we discuss our tentative deposition schedule on January 6, and during our first round of depositions.

V. Amendment of Pleadings

We discussed a stipulated amendment of the complaint whereby MIT will amend only to allege willful infringement and infringement by import. You stated that MIT would agree to a very narrow amendment whereby MIT will limit its amendment to parroting the language of the statute regarding willful infringement and infringement by import into the United States. I told you that Harman was not inclined to agree to a shortened answer period, but that we will consider stipulating to answering only in response to MIT's narrow amendments, and that the amendment will not toll or delay the currently agreed schedule. We both agreed to confer again with our clients on this point and to confirm our agreement by e-mail afterwards.

As discussed, we both recognize that the proposals and agreements made during our call are subject to final approval by our clients and respective superiors. Nonetheless, it appears that we have made significant progress and I look forward to continued progress in the future.

Thanks for your cooperation,

Jamal.

**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**

200 East Randolph Drive ♦ 53rd Floor |Chicago, IL 60601 | 312.861.2464 Direct | 312.861.2200 FAX

www.kirkland.com/jedwards

---

"Cerveny, David" <dcerveny@proskauer.com>

12/07/2005 04:31 PM

To "Jamal Edwards" <jedwards@kirkland.com>
Harman-mit@kirkland.com, "MIT_Harman"
cc <MIT_Harman@proskauer.com>
Subject RE: MIT v. Harman - Discovery

---

Jamal,

Your response is a step in the right direction, but we need to ensure that outstanding discovery issues are resolved in a timely and reasonable manner. We are available tomorrow at noon est/11 cst to discuss all open discovery issues. During that meeting and as part of any broader resolution, we expect Harman to commit to a definitive schedule for the completion of outstanding discovery, including document production dates, the scheduling of initial depositions, and a deadline for finalizing all remaining dates for the other noticed depositions.

Dave

---

**From:** Jamal Edwards [mailto:jedwards@kirkland.com]
**Sent:** Wednesday, December 07, 2005 3:24 PM
**To:** Cerveny, David
**Cc:** Harman-mit@kirkland.com; MIT_Harman
**Subject:** Re: MIT v. Harman - Discovery

Dave

Please let me know if my response yesterday does not address your concerns; and, if so, please confirm that you'll be available to discuss tomorrow at 11:00a CST.

Thanks,

Jamal.

3

**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**

200 East Randolph Drive ♦ 53rd Floor |Chicago, IL 60601 | 312.861.2464 **Direct** | 312.861.2200 **FAX**

www.kirkland.com/jedwards

"Cerveny, David" <dcerveny@proskauer.com>

12/05/2005 07:24 PM

To "Jamal Edwards" <jedwards@kirkland.com>

cc "MIT_Harman" <MIT_Harman@proskauer.com>,
Harman-mlt@kirkland.com

Subject MIT v. Harman - Discovery

Jamal,

It has now been more than two weeks since we agreed to a resolution of many of the outstanding discovery disputes, but, since then, Harman has not taken any action to follow through with those agreements. Last Tuesday, November 29, 2005, you indicated that Harman would be serving its amended initial disclosures today, that you would have deposition dates for Harman's 30(b)(6) deposition, and that you would have deposition dates for the two initial individual depositions that we had tentatively scheduled for the week of December 19, 2005 (which is now less than two weeks away). As you did not contact me today as I requested in my email of this morning to discuss the status of discovery, I presume that Harman does not have those dates and will not be serving its revised initial disclosures today.

Once again, we are in a position where we can no longer wait for Harman to comply with its discovery obligations, which it has continually failed to do for months on end. Thus, unless the parties reach a definitive agreement - no later than 5:00 p.m. e.s.t. on Wednesday, December 7, 2005 - regarding the scheduling of the noticed depositions, the scheduling of the remaining document production, the production of documents related to willfulness, and the other issues that the parties addressed two weeks ago, as outlined in my summary letter dated November 23, 2005, MIT plans to file a motion to compel.

We remain open to resolving these issues by agreement, but the issues must be finally resolved or we will seek an order from the Court directing that they be resolved.

David J. Cerveny
Proskauer Rose LLP
One International Place
Boston, Massachusetts  02110-2600
Tel:  617-526-9621
Fax: 617-526-9899
dcerveny@proskauer.com

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify

4

the sender immediately by replying to this message and destroy all copies of this message and any attachments. Thank you.

-------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

*******************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee.  It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful.  If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*******************************************************

-------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

# Exhibit B

**From:** Jamal Edwards
**Sent:** 12/20/2005 10:01 AM
**To:** dcerveny@proskauer.com; mit_harman@proskauer.com
**Cc:** Harman-MIT
**Subject:** Fw: MIT v. Harman - Discovery

Dave:

Thanks for the well wishes. Unfortunately, there seems to be some confusion. I thought we had already resolved the outstanding issues, as confirmed in my Dec. 8th e-mail below. I can nonetheless further confirm that I received yesterday documents from Harman's Farmington Hill's facility, which we will be producing to MIT as soon as our review is complete. I expect to be able to produce them by the end of this week. I can also further confirm that the product samples are in transit at this very moment and should be in my office this week. As soon as the arrive, we will notify you and make them available or make arrangements for you (or a vendor) to pick them up or have them shipped.

As for depositions, I thought we previously agreed on a schedule, and to discuss further scheduling initially on Jan 6, and further while we were all here in Chicago the week of Jan 9, for Mr. Swartz's and Harman's two depositions. The only outstanding issues I am aware of regarding depositions, is MIT's confirmation of Dr. Davis' availability the week of Jan 23 (see below).

As for amending pleadings, I am still waiting to hear whether your client will agree to the proposal we already discussed (see below).

And, as for other discovery issues, we are still waiting on MIT' supplemental responses to Harman's interrogatories nos 6-7. I thought we resolved the issues concerning MIT's responses to Harman's interrogatories nos. 1-5 (concerning claim construction and contentions) based upon the stipulated schedule revisions discussed below. It appears that our supplemental initial disclosures and interrogatory response to MIT's interrogatory No. 1 was not served last week in my absence. I'll try to get those served today.

Let me know what else we need to discuss. I am available today at 2:30p CST.

Regards,

Jamal.
**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**
200 East Randolph Drive ♦ 53rd Floor |Chicago, IL 60601 | 312.861.2464 Direct | 312.861.2200 FAX
www.kirkland.com/jedwards

—— Forwarded by Jamal Edwards/Chicago/Kirkland-Ellis on 12/20/2005 09:34 AM ——



Jamal
Edwards/Chicago/Kirkland-Ell
is

12/08/2005 02:24 PM

**To** "Cerveny, David" <dcerveny@proskauer.com>

**cc** Harman-mit@kirkland.com, "MIT_Harman"

1



<MIT_Harman@proskauer.com>
Subject    RE: MIT v. Harman - Discovery🖼

Dave:

I am pleased we were able to make additional progress on discovery issues.  To confirm, we addressed the following:

I. Document Production

        I advised you that Harman will be producing additional responsive documents from our Farmington Hills location the week of December 19.  Assuming we receive the documents next week as expected, we should be able to produce them to MIT by Monday December 19.  I expect most of the documents will be produced on DVD.  I expect these documents to include the following:  customer specifications and correspondence, design plans and marketing/sales proposals and presentations, RFQs, quotes, end-user complaints and OEM customer complaints, and any additional documents that may be found after a reasonable search based on Harman's understanding of MIT's claims and requests.

        I expect our product samples to be ready by December 19.   We also have some additional paper documents that will be produced at that time, which were also collected from our Farmington Hills office.

        You confirmed that MIT believes it has produced all responsive, non-privileged documents in its possession, custody or control, including documents from Mr. Swartz's, Mr. Call's and Dr. Davis' files.  We will continue reviewing the documents received to date and will respond in writing regarding any deficiencies we notice.

II. Claim Construction/Contentions

        We agreed we would confirm with our clients that the parties will agree to extend until January 20, 2006, the previously agreed January 4, 2006 deadline for exchange of proposed claim elements for construction and preliminary claim construction.  This will allow both parties time to prepare and present their preliminary claim construction positions to each other so that the parties may determine where an agreement might be reached and to narrow the issues for construction by the Court.  You stated that MIT's pleading will contain substantive responses to Harman's interrogatories Nos. 1-5.  The parties will meet and confer on or around February 3, 2005, to discuss claim construction positions and room for agreement.

III. MIT's Supplemental Interrogatory Responses

        You stated that you were nearly finished preparing MIT's supplemental responses to Harman's interrogatories Nos. 6-7, and that we could expect to receive them next week.  You agreed to report back with a definitive date tomorrow.

IV. Depositions

        We agreed that we would plan our first round of depositions for the week of January 9.  Harman proposes that Mr. Swartz' deposition occur on Monday, Jan 9, and that the depositions of Harman's two witnesses occur on Jan 11 and 12.  All three depositions will occur at Kirkland's Chicago office.  You agreed to confirm Mr. Swartz' availability on January 9, 2006.

        You also stated that you would check with Dr. Davis to confirm his availability for the Week of January 23.  You stated that MIT would prefer his deposition to occur in Boston.  Please confirm his availability as soon as possible.

2

We also agreed to work toward developing a tentative deposition schedule for all outstanding fact depositions by January 6. This will allow us time to discuss during our first round of depositions the week of January 9.

We agreed that further depositions, including Harman's 30(b)(6) will not occur until after February 3, 2006, thus allowing time for the parties to receive and confer about each others propose claim constructions, infringement contentions and invalidity positions. Harman will make every effort to present its 30(b)(6) designees soon thereafter, and we will work diligently to present dates in February that will work for both parties. We should confer again about potential dates when we discuss our tentative deposition schedule on January 6, and during our first round of depositions.

V. Amendment of Pleadings

We discussed a stipulated amendment of the complaint whereby MIT will amend only to allege willful infringement and infringement by import. You stated that MIT would agree to a very narrow amendment whereby MIT will limit its amendment to parroting the language of the statute regarding willful infringement and infringement by import into the United States. I told you that Harman was not inclined to agree to a shortened answer period, but that we would consider stipulating to answering only in response to MIT's narrow amendments, and that the amendment will not toll or delay the currently agreed schedule. We both agreed to confer again with our clients on this point and to confirm our agreement by e-mail afterwards.

As discussed, we both recognize that the proposals and agreements made during our call are subject to final approval by our clients and respective superiors. Nonetheless, it appears that we have made significant progress and I look forward to continued progress in the future.

Thanks for your cooperation,

Jamal.

**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**
200 East Randolph Drive ♦ 53rd Floor |Chicago, IL 60601 | 312.861.2464 Direct | 312.861.2200 FAX
www.kirkland.com/jedwards

"Cerveny, David" <dcerveny@proskauer.com>



| | | | |
|---|---|---|---|
| "Cerveny, David" <dcerveny@proskauer.com> | To | "Jamal Edwards" <jedwards@kirkland.com> | |
| 12/07/2005 04:31 PM | cc | Harman-mit@kirkland.com, "MIT_Harman" <MIT_Harman@proskauer.com> | |
| | Subject | RE: MIT v. Harman - Discovery | |

Jamal,

Your response is a step in the right direction, but we need to ensure that outstanding discovery issues are resolved in a timely and reasonable manner. We are available tomorrow at noon est/11 cst to discuss all open discovery issues. During that meeting and as part of any broader resolution, we expect Harman to commit to a definitive schedule for the completion of outstanding discovery, including document production dates, the scheduling of initial depositions, and a deadline for finalizing all remaining dates for the other noticed depositions.

3

Dave

**From:** Jamal Edwards [mailto:jedwards@kirkland.com]
**Sent:** Wednesday, December 07, 2005 3:24 PM
**To:** Cerveny, David
**Cc:** Harman-mit@kirkland.com; MIT_Harman
**Subject:** Re: MIT v. Harman - Discovery

Dave

Please let me know if my response yesterday does not address your concerns; and, if so, please confirm that you'll be available to discuss tomorrow at 11:00a CST.

Thanks,

Jamal.

**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**

200 East Randolph Drive ♦ 53rd Floor | Chicago, IL 60601 | 312.861.2464 Direct | 312.861.2200 FAX

www.kirkland.com/jedwards

"Cerveny, David" <dcerveny@proskauer.com>

12/05/2005 07:24 PM

To "Jamal Edwards" <jedwards@kirkland.com>

"MIT_Harman" <MIT_Harman@proskauer.com>,
cc Harman-mit@kirkland.com

Subject MIT v. Harman - Discovery

Jamal,
It has now been more than two weeks since we agreed to a resolution of many of the outstanding discovery disputes, but, since then, Harman has not taken any action to follow through with those agreements. Last Tuesday, November 29, 2005, you indicated that Harman would be serving its amended initial disclosures today, that you would have deposition dates for Harman's 30(b)(6) deposition, and that you would have deposition dates for the two initial individual depositions that we had tentatively scheduled for the week of December 19, 2005 (which is now less than two weeks away). As you did not contact me today as I requested in my email of this morning to discuss the status of discovery, I presume that Harman does not have those dates and will not be serving its revised initial disclosures today.

Once again, we are in a position where we can no longer wait for Harman to comply with its discovery

obligations, which it has continually failed to do for months on end. Thus, unless the parties reach a definitive agreement - no later than 5:00 p.m. e.s.t. on Wednesday, December 7, 2005 – regarding the scheduling of the noticed depositions, the scheduling of the remaining document production, the production of documents related to willfulness, and the other issues that the parties addressed two weeks ago, as outlined in my summary letter dated November 23, 2005, MIT plans to file a motion to compel.

We remain open to resolving these issues by agreement, but the issues must be finally resolved or we will seek an order from the Court directing that they be resolved.

David J. Cerveny
Proskauer Rose LLP
One International Place
Boston, Massachusetts 02110-2600
Tel:  617-526-9621
Fax: 617-526-9899
dcerveny@proskauer.com

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify the sender immediately by replying to this message and destroy all copies of this message and any attachments. Thank you.

------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

```
*******************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee.  It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful.  If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*******************************************************
```

------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

6

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

        Plaintiff,

   v.

HARMAN INTERNATIONAL INDUSTRIES,
INCORPORATED,
A Delaware Corporation,
        Defendant.

Case No: 05-10990 DPW
Hon. Douglas P. Woodlock

## HARMAN'S FIRST SET OF INTERROGATORIES (Nos. 1-7)

      Harman International Industries, Incorporated ("Harman") hereby requests that Massachusetts Institute of Technology ("MIT") answer each of the following Interrogatories separately, fully, in writing and under oath, within thirty days of service hereof, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

## INTERROGATORIES

     1. State MIT's proposed construction, and all bases supporting such construction, of the following element of claim 1 of U.S. Patent No. 5,177,685 (the "Patent-In-Suit"): "a map database functionally connected to said computing apparatus which distinguishes between physical and legal connectivity."

     2. For each asserted claim of the Patent-in-Suit, identify each element that MIT contends is written in means-plus-function form as permitted under 35 U.S.C. § 112 ¶6 and, for each such element, identify the specified function for that element and the corresponding structure, material, or acts described in the specification as required by 35 U.S.C. § 112 ¶6.

MIT's response to this interrogatory should appear in columns 2 and 3 of Table A in Appendix A and should include citations to all evidence (by column and line number, or by figure and item number) allegedly supporting MIT's identified function.

3. For each element identified in response to Interrogatory No. 2 above, state whether MIT contends that Harman literally infringes that element (i) because the structure identical to that identified in response to Interrogatory No. 2 above for that element is found in each accused product and, if MIT contends that identical structure exists, provide a detailed explanation of where such identical structure for that element is found in each accused product; or because (ii) a structure equivalent to that identified in response to Interrogatory No. 2 above for that element is found in each accused product and, if MIT contends that equivalent structure exists, provide a detailed explanation of where such equivalent structure for that element is found in each accused product. MIT's response to this interrogatory should appear in columns 4 of Table A in Appendix A and should include citations to all evidence allegedly supporting MIT's contention and its identified structure.

4. For each element identified in response to Interrogatory No. 2 above, state whether MIT contends that Harman infringes that element under the doctrine of equivalents and, if MIT contends that doctrine of equivalents infringement exists, provide a detailed explanation of where that element is found in each accused product and the bases for MIT's contention that the differences between the element and the accused product are insubstantial and that the element and the accused product perform substantially the same function in substantially the same way to achieve substantially the same result. MIT's response to this interrogatory should appear in column 6 of Table A in Appendix A and should include citations to all evidence allegedly supporting MIT's contentions.

2

5.  For each element of each asserted claim not identified in response to Interrogatory No. 2 above, provide a detailed explanation of where that element is found in each accused product and a statement as to whether that element is alleged to be present literally or under the doctrine of equivalents.  For each element that is alleged to be present under the doctrine of equivalents, MIT's explanation should include the bases for MIT's contention that the differences between the claim element and the structure in the accused product are insubstantial that the element and the accused product perform substantially the same function in substantially the same way to achieve substantially the same result. MIT's response to this interrogatory should appear in column 7 of Table A in Appendix A and should include citations to all evidence allegedly supporting MIT's contentions.

6.  For each asserted claim of the Patent-In-Suit, state when a prototype that embodied each alleged invention of the patents in suit was first made and when and to whom such prototype was first disclosed; explain in detail the circumstances surrounding the prototype (including without limitation its making and disclosure); and identify all persons with knowledge of these events.

7.  Identify each "working prototype of the Back Seat Driver" (*see, e.g.,* col. 3, lns. 4-5), including without limitation the date(s) upon which each such prototype was created, "implemented," (*see, e.g.,* col. 3, ln. 5) demonstrated, displayed, shown, tested, and/or reduced to practice and each person involved in any such act, and describe how the "map database for the Back Seat Driver in [each] working prototype" (*see, e.g.,* col. 4, lns. 13-15) represented "physical connectivity" and "legal connectivity" as those terms are used in the Patent-In-Suit (*see, e.g.,* col. 4, ln. 61 - col. 5, ln. 14).

3

## APPENDIX A

### TABLE A

| Column 1 Claim Element | Col. 2 § 112,¶ 6 Specified Function | Col. 3 § 112,¶ 6 Corresponding Structure | Col. 4 Literally Infringed because Identical Structure in Accused Product | Col. 5 Literally Infringed because Equivalent Structure in Accused Product | Col. 6 Infringed under Doctrine of Equivalents | Col. 7 Infringement of Elements Not Written in § 112,¶[6 Form |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |

## DEFINITIONS AND INSTRUCTIONS

The definitions and instructions set forth in Appendix A of Harman's First Set of

Document Requests to MIT are incorporated by reference.

Dated:  September 6, 2005                    Respectfully submitted,


                                             /s/ Jamal M. Edwards /s/

                                             Robert J. Muldoon, Jr., BBO# 359480
                                             James W. Matthews, BBO# 560560
                                             Edward S. Cheng, BBO# 634063
                                             Courtney A. Clark, BBO# 651381
                                             **SHERIN AND LODGEN, LLP**
                                             101 Federal Street
                                             Boston, MA 02110

                                             William A. Streff Jr., P.C.
                                             Michelle A. H. Francis
                                             Jamal M. Edwards
                                             **KIRKLAND & ELLIS LLP**
                                             200 East Randolph Drive
                                             Chicago, IL 60601
                                             (312) 861-2000 (phone)
                                             (312) 861-2200 (fax)

                                             *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2005, I caused a true and correct copy of HARMAN'S FIRST SET OF INTERROGATORIES (NOS. 1-7) to be served on the following counsel of record via email with a courtesy copy via U.S. Mail:

Steven M. Bauer, Esq. (sbauer@proskauer.com)
Kimberley A. Mottley, Esq. (kmottley@proskauer.com)
Proskauer Rose LLP
One International Place  14th Floor
Boston, Massachusetts  02110-2600

By: _____

Attorney for Defendant

# Exhibit D

MIT V HARMAN INTERNATIONAL

```
 1                  UNITED STATES DISTRICT COURT
 2                  DISTRICT OF MASSACHUSETTS
 3     * * * * * * * * * * * * * * *
                                   *
 4    MASSACHUSETTS INSTITUTE OF    *
           TECHNOLOGY               *
 5                   Plaintiff      *
                                   *
 6         VERSUS                   *    CA-05-10990-DPW
                                   *
 7    HARMAN INTERNATIONAL          *
          INDUSTRIES, INC.          *
 8                 Defendant        *
                                   *
 9     * * * * * * * * * * * * * * *
10          BEFORE THE HONORABLE DOUGLAS P. WOODLOCK
11              UNITED STATES DISTRICT COURT JUDGE
12                         HEARING
13                    AUGUST 4, 2005
14    APPEARANCES:
15         STEVEN M. BAUER, ESQ. AND KIMBERLY ANN MOTTLEY,
           Proskauer, Rose, LLP, One International Place,
16         22nd Floor, Boston, Massachusetts 02110, on
           behalf of the Plaintiff
17
           ROBERT J. MULDOON, JR., ESQ., Sherin & Lodgen,
18         LLP, 101 Federal Street, Boston, Massachusetts
           02110-2105, on behalf of the Defendant
19
           WILLIAM A. STREFF, JR. AND MICHELLE A.H. FRANCIS,
20         Kirkland & Ellis, 200 East Randolph Drive,
           Chicago, Illinois 60601, on behalf of the
21         Defendant
22
23                          Courtroom No.  1 - 3rd Floor
                            1 Courthouse Way
24                          Boston, Massachusetts 02210
                            3:05 P.M. - 3:25 P.M.
25
```

MIT V HARMAN INTERNATIONAL>

```
Page 2
  1
  2
  3
  4
  5
  6
  7
  8
  9
 10
 11
 12
 13
 14
 15
 16
 17
 18
 19
 20
 21         Pamela R. Owens - Official Court Reporter
          John Joseph Moakley District Courthouse
 22            1 Courthouse Way - Suite 3200
               Boston, Massachusetts  02210
 23
 24    Method of Reporting:  Computer-Aided Transcription
 25
```

AUGUST 4, 2005>

MIT V HARMAN INTERNATIONAL>

Page 3

1          CA-05-10990-DPW

2              AUGUST 4, 2005

3          THE CLERK: Could counsel please identify

4      themselves?

5          MR. BAUER: Good afternoon, Your Honor,

6      Steven Bauer from Proskauer, Rose. And with me is

7      Kim Mottley from my office.

8              MR. MULDOON: Good afternoon, Your Honor.

9      If it please the Court, Robert Muldoon from Sperin &

10     Lodgen. I present to Your Honor Michelle Francis and

11     William Streff from Kirkland & Ellis whom you granted

12     leave pro hac vice.

13         THE COURT: Is there any more up-to-date

14     information than the motion?

15         MR. BAUER: If you're talking about what's

16     happening in Chicago, Your Honor, we have not heard from

17     the Chicago court yet.

18         THE COURT: When was it argued?

19         MR. BAUER: It was not argued. It's been

20     submitted. And the way they work in Chicago, the court

21     just issued an order upon receipt of the original motion

22     setting a schedule and saying we will decide on the

23     papers.

24         THE COURT: But --

25         MR. BAUER: And I understand that's normal

Page 4

1      Chicago procedure.

2          THE COURT: And was a date given on when it

3      was going to be resolved?

4          MR. BAUER: No. But our best guess -- and Mr.

5      Streff is from Chicago and I'll defer. Actually, I'll

6      let him speak what his best guess is from Chicago.

7      Well, I'll tell you my local counsel says he hopes to

8      see a decision in the next month or two.

9          MR. STREFF: Given lines and recent movies

10     about that's the way we do it in Chicago, I'm going to

11     tread carefully here, Judge.

12         THE COURT: I worked as a newspaper reporter

13     in Chicago several years back.

14         MR. STREFF: Then you really know the

15     situation, Judge. And I will start the case off well

16     by agreeing with co-counsel that there are no set fixed

17     dates. We may do it a little bit backwards in Chicago.

18     Before you can file a motion, you must talk to the other

19     side obviously. But then you appear in court to set a

20     schedule for the briefing to talk about the schedule and

21     the Judge will then say whether or not he'd like to have

22     a hearing or oral argument. In this case, Judge

23     Holderman said he had seen enough of us and suggested he

24     would get back to us in due course.

25             THE COURT: Let me understand when MIT was

3 (Pages 3 to 4)

AUGUST 4, 2005>

MIT V HARMAN INTERNATIONAL>

Page 5

1  served in that case.

2  MR. STREFF: Happy to discuss that, Your

3  Honor. Specifically, there was a meeting on the east

4  coast this time, not Chicago or California. In the

5  context of that meeting, understanding that it was a

6  final meeting, understanding from our perspective that

7  three more of our customers had been mentioned at the

8  January 19th meeting, so on March 23rd of 2003, the

9  letter went to Porsche of which Your Honor has a copy

10  alleging infringement with claim charts. At the January

11  19th meeting, they mention Mercedes-Benz, BMW, and Audi.

12  So the meeting occurred March 14th here. At the end of

13  that meeting, Mr. Hart, who is the Chief Intellectual

14  Property counsel at Harman, placed a phone call back to

15  Chicago instructing us to make the filing after the

16  meeting ended. In that case, the time – there was –

17  THE COURT: No, no. And when was service?

18  MR. STREFF: That's a question I don't know

19  the answer to.

20  MS. FRANCIS: I can answer that, Your Honor.

21  Service was effected after the suit was filed, that same

22  day for the certificate of service. There was an error

23  on the original certificate of service. That was

24  brought to our attention when MIT filed their motion to

25  dismiss in Illinois. We inquired and asked the process

Page 6

1  server why is the timing inconsistent with the actions

2  that had taken place that day. The conversations back

3  and forth with us and the process server resulted in us

4  realizing that there had been a error on the process

5  server's part in merely transcribing the time on an

6  affidavit of service that he filed with us which

7  resulted in a corrected affidavit of service being

8  filed.

9  THE COURT: So, service was actually

10  effectuated on March 14th?

11  MS. FRANCIS: Yes.

12  THE COURT: And this lawsuit was filed –

13  MR. BAUER: Two months later, Your Honor. MIT

14  at that point had not retained outside counsel. It was

15  not – the one issue that I will take is when they say

16  it was a final meeting. We have an affidavit in the

17  record from Mr. Turner, who is here, who was the

18  Assistant Director of the Technology Licensing Office.

19  At the end of that meeting, Harman represented to us –

20  he shook hands and agreed to continue to negotiate.

21  There was no final meeting. MIT thought they were in

22  the middle of negotiations.

23  THE COURT: Well, but let me understand what

24  happened after March 14th.

25  MR. BAUER: So –

4 (Pages 5 to 6)

AUGUST 4, 2005>

MIT V HARMAN INTERNATIONAL>

1    THE COURT: No, just a moment. You filed this

2    suit here?

3    MR. BAUER: I believe —

4    MS. FRANCIS: 5-12.

5    MR. BAUER: May 12th. MIT had no counsel at

6    that time.

7    MR. STREFF: Your Honor, if I might —

8    THE COURT: Are they unfamiliar with the

9    process of retaining counsel for litigation?

10    MR. BAUER: No. After they got served, they

11    began the process of retaining counsel.

12    THE COURT: Well, they were served on March

13    14th.

14    MR. BAUER: Right.

15    THE COURT: Okay. So, for a period of time

16    they didn't have counsel. But as of May 12, they did.

17    MR. BAUER: They had retained us and we filed

18    this complaint.

19    THE COURT: Right. Now, what happened in the

20    two months to make this case go from premature to ripe?

21    MR. BAUER: At the time —

22    THE COURT: Well, as I understand the

23    objection in Chicago with respect to declaratory

24    judgment, it was this case was not yet ripe as a

25    declaratory matter. Okay. But then you filed a lawsuit

1    on May 12th. What transpired during that time period

2    that transformed the dispute, hand shake to one side

3    notwithstanding.

4    MR. BAUER: Sure. So, at the time of the

5    complaint, when it was filed and all the issues on

6    subject matter jurisdiction, was there an apprehension

7    on that day when they filed it? There wasn't. They had

8    shaken hands. They were in the middle of negotiations

9    and there was an agreement. And the quote, I believe,

10    was "we'll get back to you in a couple of weeks on these

11    settlement discussions, these license discussions."

12    There was no apprehension of a suit. They have been

13    talking for two years. Nothing different had taken

14    place at that meeting to lead Harman to believe that

15    there was an imminent lawsuit, something that was about

16    to happen.

17    But, Your Honor, the issue in Chicago in that

18    motion there —

19    THE COURT: Well, but will you get to my

20    question?

21    MR. BAUER: I'm sorry. I thought it was what

22    took place. They filed the lawsuit.

23    THE COURT: So the filing of the lawsuit with

24    an inadequate apprehension created a grounds for

25    bringing their lawsuit?

AUGUST 4, 2005>

MIT V HARMAN INTERNATIONAL>

Page 9

1    MR. BAUER: Well, no. At that point,
2    settlement discussions had entered. MIT would not have
3    brought a lawsuit so long as settlement discussions were
4    going on. That's what all the cases talk about that we
5    cite here in Illinois.
6    THE COURT: But for two months.
7    MR. BAUER: For two months. MIT contacted
8    Harman. Once they received the complaint, they asked
9    for a first month extension so that they could figure
10    out what was going on. It was in this process that they
11    retained us in that month. We talked to Harman once we
12    were retained. At the end of that, when the answer was
13    first coming due, we contacted Harman and said we had
14    just been retained. So that's why the rules give you 20
15    days to answer. We had just been retained.
16    THE COURT: No. I give you 20 days to answer
17    and then an active indulgence on the part of the other
18    side to do additional --
19    MR. BAUER: Well, that's right. But you have
20    20 days to answer so they can go out and retain counsel.
21    In those 20 days, MIT retained us for this matter.
22    I hadn't been consulted on this matter at all. My
23    understanding is --
24    THE COURT: Am I to understand that nothing
25    happened here between March 14th and May 12th in

Page 10

1    the lawsuit? Nothing happened that changed the
2    apprehensions other than the filing of a lawsuit on
3    March 14th?
4    MR. BAUER: The filing of the lawsuit and the
5    settlement discussions. And then MIT retained us in the
6    next three weeks. We got an extension from Harman to
7    learn the case and to respond in Chicago. And as part
8    of that response, this complaint was filed.
9    THE COURT: Well, I guess I'm having a little
10    difficulty understanding why this case shouldn't be in
11    Chicago under these circumstances, but I don't want to
12    pretermit what Judge Holderman was thinking about here.
13    I'm disinclined to jump into it.
14    MR. BAUER: Well, Chicago has nothing to do
15    with this case, nothing. There's no witnesses. Harman
16    is not in Chicago. What they have, Your Honor, it's a
17    motion to dismiss this action. All right. It's not a
18    motion to transfer or anything else, a motion to
19    dismiss. So this Court has subject matter jurisdiction.
20    THE COURT: I understand all of that.
21    MR. BAUER: Personal subject matter.
22    THE COURT: So the question for me is, you
23    know, whether or not I permit two different cases to be
24    going on at the same time -- two of the same cases to be
25    going on at the same time. Because presumably you

AUGUST 4, 2005>

MIT V HARMAN INTERNATIONAL>

Page 11

1  arrange your claims and your answer and have done so in

2  Chicago.  It is essentially duplicative litigation,

3  right?

4       MR. BAUER:  We haven't answered yet in

5  Chicago, Your Honor.

6       THE COURT:  But it will be duplicative?

7       MR. BAUER:  It will be if that happens.

8       THE COURT:  So I guess what I'm asking is

9  apart from looking for advantage by having me jump in

10  ahead of Judge Holderman, what do you want me to do

11  about this?  I don't think I'm going to act on your

12  motion to dismiss because it seems to me to be

13  presumptuous on my part, although I would have to

14  say that it looks to me, balancing all of the

15  considerations, including where MIT keeps its person who

16  handles this kind of matter for the institution, that

17  Chicago is the place for this to be litigated,

18  especially in light of the first filed dimension to it.

19  What do you want me to do?

20       MR. STREFF:  Your Honor, you're doing exactly

21  what we would want you to do, and that is to await Judge

22  Holderman's ruling.  We believe that we should be in

23  Chicago.  We believe that MIT was even considering being

24  in Chicago since in two of the meetings with Mr.

25  Schwartz, he mentioned not one, but two of the leading

Page 12

1  plaintiff's patent lawyers in Chicago as potentially

2  chomping at the bit to start the case there.  That

3  having been said, our proposal to you -- and counsel has

4  discussed a schedule and we think it's a good schedule,

5  especially looking at some of your prior schedules.  And

6  to the extent that a ruling comes --

7       THE COURT:  I'll tell you here the schedule I

8  actually impose.

9       MR. STREFF:  We were listening earlier, Your

10  Honor, and realized that you're going to come back.

11  That having been said, the good news here is the parties

12  did spend two years of analysis, letter writing, claim

13  presentations.  There are claim construction issues

14  right now that would be dispositive of this case.  And

15  the parties have already grilled down on this.  So we're

16  way far ahead of your normal patent suit.  That having

17  being said, the schedule, as we have proposed it, would

18  basically say within 30 days of a ruling, we get running

19  on it and we already know the depositions we're going to

20  take.

21       THE COURT:  Why would you wait that long?  At

22  least as I understand it, you know you've got a piece of

23  litigation here.  You don't know where it's going to be

24  litigated.  You anticipate that you'll hear Judge

25  Holderman in a relatively short time period.  But

7 (Pages 11 to 12)

AUGUST 4, 2005>

MIT V HARMAN INTERNATIONAL>

Page 13

1 whether it's here or there doesn't make very much

2 difference for purposes of discovery. And I guess,

3 except that it's August, what do you want 30 days for?

4　　　MR. STREFF: Your Honor, the issue presented

5 is simply one of our initial disclosures require

6 coordination with Europe, Michigan, California, and

7 translation of documents as well. To the extent we are

8 going to go be able to provide more detailed information

9 — and the August aspect does raise the issue of not

10 vacations, I would say, but business in the Far East, at

11 least in my case to review them. And that would be our

12 only reason.

13　　　THE COURT: Okay. Well, here's where I think

14 I am, but I'll just hear what you have to say. I would

15 establish at least the beginnings of a discovery

16 schedule. I'm trying to find my copy here.

17　　　Without facing the questions or the source of

18 contention between you over particularly when the

19 Markman hearing is going to be held, that tends in my

20 experience to be idiosyncratic with the Judge involved.

21 But I don't have to have this — I won't say language,

22 but now you're engaged in some fashion and you've got to

23 get going, but to say this: That if Judge Holderman

24 does not dismiss the declaratory judgment action, I

25 don't see any reason why this case shouldn't go to

Page 14

1 Chicago. If he does dismiss the declaratory judgment

2 action, we've got a lawsuit here that is going to go

3 forward. And that seems to me to be the way to deal

4 with it. And I don't know enough about his case and the

5 particulars of that case, although I've tried to flesh

6 it out a bit and certainly do not want to be understood

7 to be advising him on how he resolves his motion.

8　　　But I'm prepared to keep this motion under

9 advisement until the resolution of his motion. And

10 that's likely to resolve it for me when he does.

11　　　So, what we're talking about here, I think, is

12 taking you through January 4th, 2006, which is when you

13 exchange your proposed terms and claim elements,

14 including on your claim constructions. Now you seem to

15 go a bit farther on your schedule and together on your

16 schedule except for the Markman hearing. I guess I can

17 take you to July 14th, but the reasons for the Markman

18 hearing are disputed. As I understood it, it was people

19 — it would narrow how you figure out what you want to

20 do. I have really no formal view about that. I suspect

21 that it will be resolved -- that is, the schedule or

22 where this case is going to be handled and resolved

23 before January 4th. If I end up with the case, then

24 I'll ask you back to talk about this in greater depth.

25 I want to get you going on the schedule. And of course,

8 (Pages 13 to 14)

AUGUST 4, 2005>

MIT V HARMAN INTERNATIONAL>

Page 15

1  this goes without saying, without prejudice to whatever

2  Judge Holderman might choose to do to change the

3  schedule.

4       But I'm going to take you through your initial

5  disclosures as of September 4th. I don't know why there

6  would be any amendment to the pleadings.

7       MR. BAUER: I would expect. These are all

8  just filling in the forms,

9       THE COURT: Just a moment.

10      MR. BAUER: I don't expect to add any parties.

11      THE COURT: And the cross disclosures as

12  indicated -- that is, disclosure of asserted claims

13  by MIT and preliminary infringement contentions by

14  November 4th; Harman's preliminary invalidity

15  contentions by December 19; and exchange proposed terms

16  and claim elements for construction and preliminary

17  claim constructions -- and I'm reading from a schedule I

18  have, Michelle -- January 4th. So that will take you --

19  at least get you going on your trip to the Far East,

20  right?

21      MR. STREFF: Thank you, Your Honor.

22      THE COURT: Okay. Anything else we need to

23  take up?

24      MR. BAUER: So, Your Honor, I'll just explain

25  the Markman issue. I fully agree with you. The reason

Page 16

1  we have that one dispute -- and we did work hard to get

2  this calendar. They wanted to try this in 2007. And,

3  so, every court has a different standard schedule.

4       THE COURT: That will be the retrial of this

5  case, 2007.

6       MR. BAUER: That was the original. So we

7  actually have negotiated quite a bit here. But the

8  Markman is premature. We just didn't want to --

9  thought it was presumptuous to say today we needed a

10  date. Let's see what the claim construction issues are

11  and if they are dispositive.

12      THE COURT: Well, we'll see. I've done it

13  about every different way and never satisfactorily as

14  far as I can see. So, if it can stay here, we'll give

15  you a date. There can be another effort.

16      MR. BAUER: And Your Honor, just to correct

17  what might be a misapprehension, in Chicago, it's a

18  motion to dismiss. But I think it's largely a motion to

19  transfer to here because Chicago has the contacts. So,

20  you know, --

21      THE COURT: Except when you decide to have

22  your meetings and where you keep your fellow.

23      MR. BAUER: Your Honor, if I can just address

24  that, it's not where we keep the fellow. He's an

25  independent person who lives in Chicago. He works out

9 (Pages 15 to 16)

AUGUST 4, 2005>

MIT V HARMAN INTERNATIONAL>

Page 17

1  of MIT. He has an office at MIT. He just happens to

2  be —

3         THE COURT: He's virtually at MIT, but

4  actually in Chicago.

5         MR. BAUER: He has a home there, not an

6  office. There's no MIT office there. He has his home

7  there. That's all. And that doesn't suddenly — the

8  fact that he makes some phone calls from his home and

9  met with them in Chicago doesn't —

10        THE COURT: I'm hoping Judge Holderman — he's

11 going to decide where this case is going to be.

12        MR. BAUER: Thank you, Your Honor.

13        MR. STREFF: Thank you, Your Honor.

14        RECESSED AT 3:25 P.M.

15

16        C E R T I F I C A T E

17        I, PAMELA R. OWENS, Official Court Reporter,

18 U. S. District Court, do hereby certify that the

19 foregoing is a true and correct transcription of the

20 proceedings taken down by me in machine shorthand and

21 transcribed by same.

22

23

24

25

10 (Page 17)

AUGUST 4, 2005>

MIT V HARMAN INTERNATIONAL>

Page 18

**A**

able 13:8
act 11:11
action 10:17 13:24 14:2
actions 6:1
active 9:17
add 15:10
additional 9:18
address 16:23
advantage 11:9
advisement 14:9
advising 14:7
affidavit 6:6,7,16
afternoon 3:5,8
agree 15:25
agreed 6:20
agreeing 4:16
agreement 8:9
ahead 11:10 12:16
alleging 5:10
amendment 15:6
analysis 12:12
ANN 1:15
answer 5:19,20 9:12,15
  9:16,20 11:1
answered 11:4
anticipate 12:24
apart 11:9
appear 4:19
APPEARANCES 1:14
apprehension 8:6,12
  8:24
apprehensions 10:2
argued 3:18,19
argument 4:22
arrange 11:1
asked 5:25 9:8
asking 11:8
aspect 13:9
asserted 15:12
Assistant 6:18
attention 5:24
Audi 5:11
August 1:13 3:2 13:3,9
await 11:21
A.H 1:19

**B**

back 4:13,24 5:14 6:2
  8:10 12:10 14:24
backwards 4:17
balancing 11:14
basically 12:18
Bauer 1:15 3:5,6,15,19
  3:25 4:4 6:13,25 7:3
  7:5,10,14,17,21 8:4
  8:21 9:1,7,19 10:4,14
  10:21 11:4,7 15:7,10

15:24 16:6,16,23 17:5
  17:12
began 7:11
beginnings 13:15
behalf 1:16,18,20
believe 7:3 8:9,14 11:22
  11:23
best 4:4,6
bit 4:17 12:2 14:6,15
  16:7
BMW 5:11
Boston 1:16,18,24 2:22
briefing 4:20
bringing 8:25
brought 5:24 9:3
business 13:10

**C**

C 17:16,16
caes 10:10
calendar 16:2
California 5:4 13:6
call 5:14
calls 17:8
carefully 4:11
case 4:15,22 5:1,16
  7:20,24 10:7,15 12:2
  12:14 13:11,25 14:4,5
  14:22,23 16:5 17:11
cases 9:4 10:23,24
CA-05-10990-DPW
  1:6 3:1
certainly 14:6
certificate 5:22,23
certify 17:18
change 15:2
changed 10:1
charts 5:10
Chicago 1:20 3:16,17
  3:20 4:1,5,6,10,13,17
  5:4,15 7:23 8:17 10:7
  10:11,14,16 11:2,5,17
  11:23,24 12:1 14:1
  16:17,19,25 17:4,9
Chief 5:13
chomping 12:2
choose 15:2
circumstances 10:11
cite 9:5
claim 5:10 12:12,13
  14:13,14 15:16,17
  16:10
claims 11:1 15:12
CLERK 3:3
coast 5:4
come 12:10
comes 12:6
coming 9:13

complaint 7:18 8:5 9:8
  10:8
Computer-Aided 2:24
considerations 11:15
considering 11:23
construction 12:13
  15:16 16:10
constructions 14:14
  15:17
consulted 9:22
contacted 9:7,13
contacts 16:19
contention 13:18
contentions 15:13,15
context 5:5
continue 6:20
conversations 6:2
coordination 13:6
copy 5:9 13:16
correct 16:16 17:19
corrected 6:7
counsel 3:3 4:7 5:14
  6:14 7:5,9,11,16 9:20
  12:3
couple 8:10
course 4:24 14:25
court 1:1,11 2:21 3:9
  3:13,17,18,20,24 4:2
  4:12,19,25 5:17 6:9
  6:12,23 7:1,8,12,15
  7:19,22 8:19,23 9:6
  9:16,24 10:9,19,20,22
  11:6,8 12:7,21 13:13
  13:9,11,22 16:3,4,12
  16:21 17:3,10,17,18
Courthouse 1:23 2:21
  2:22
Courtroom 1:23
co-counsel 4:16
created 8:24
cross 15:11
customers 5:7

**D**

date 4:2 16:10,15
dates 4:17
day 5:22 6:2 8:7
days 9:15,16,20,21
  12:18 13:3
deal 14:3
December 15:15
decide 3:22 16:21
  17:11
decision 4:8
declaratory 7:23,25
  13:24 14:1
Defendant 1:8,18,21
defer 4:5

depositions 12:19
depth 14:24
detailed 13:8
difference 13:2
different 8:13 10:23
  16:3,13
difficulty 10:10
dimension 11:18
Director 6:18
disclosure 15:12
disclosures 13:5 15:5
  15:11
discovery 13:2,15
disease 5:2
discussed 12:4
discussions 8:11,11 9:2
  9:3 10:5
disinclined 10:13
dismiss 5:25 10:17,19
  11:12 13:24 14:1
  16:18
dispositive 12:14 16:11
dispute 8:2 16:1
disputed 14:18
District 1:1,2,11 2:21
  17:18
documents 13:7
doing 11:20
DOUGLAS 1:10
Drive 1:20
due 4:24 9:13
duplicative 11:2,6

**E**

E 17:16,16
earlier 12:9
east 1:20 5:3 13:10
  15:19
effected 5:21
effectuated 6:10
effort 16:15
elements 14:13 15:16
Ellis 1:20 3:11
ended 5:16
engaged 13:22
entered 9:7
error 5:22 6:4
especially 11:18 12:5
ESQ 1:15,17
essentially 11:2
establish 13:15
Europe 13:6
exactly 11:20
exchange 14:13 15:15
expect 15:7,10
experience 13:20
explain 15:24
extension 9:9 10:6

extent 12:6 13:7

**F**

F 17:16
facing 13:17
fact 17:8
far 12:16 13:10 15:19
  16:14
farther 14:15
fashion 13:22
Federal 1:18
fellow 16:22,24
figure 9:9 14:19
file 4:18
filed 5:21,24 6:6,8,12
  7:1,17,25 8:5,7,22
  10:8 11:18
filing 5:15 8:23 10:2,4
filling 15:8
final 5:6 6:16,21
find 13:16
first 9:9,13 11:18
fixed 4:16
flesh 14:5
Floor 1:16,23
foregoing 17:19
formal 14:20
forms 15:8
forth 6:3
forward 14:3
Francis 1:19 3:10 5:20
  6:11 7:4
fully 15:25

**G**

give 9:14,16 16:14
given 4:2,9
go 7:20 9:20 13:8,25
  14:2,15
goes 15:1
going 4:3,10 9:4,10
  10:24,25 11:11 12:10
  12:19,23 13:8,19,23
  14:2,22,25 15:4,19
  17:11,11
good 3:5,8 12:4,11
granted 3:11
greater 14:24
grilled 12:15
grounds 8:24
guess 4:4,6 10:9 11:8
  13:2 14:16

**H**

hac 3:12
hand 8:2
handled 14:22
handles 11:16

MIT V HARMAN INTERNATIONAL>

Page 19

hands 6:20 8:8
happen 8:16
happened 6:24 7:19
  9:25 10:1
happening 3:16
happens 11:7 17:1
Happy 5:2
hard 16:1
Harman 1:7 5:14 6:19
  8:14 9:8,11,13 10:6
  10:15
Harman's 15:14
Hart 5:13
hear 12:24 13:14
heard 3:16
hearing 1:12 4:22
  13:19 14:16,18
held 13:19
Holderman 4:23 10:12
  11:10 12:25 13:23
  15:2 17:10
Holderman's 11:22
home 17:5,6,8
Honor 3:5,8,10,16 5:3
  5:9,20 6:13 7:7 8:17
  10:16 11:5,20 12:10
  13:4 15:21,24 16:16
  16:23 17:12,13
HONORABLE 1:10
hopes 4:7
hoping 17:10

identify 3:3
idiosyncratic 13:20
Illinois 1:20 5:25 9:5
imminent 8:15
impose 12:8
inadequate 8:24
including 11:15 14:14
inconsistent 6:1
independent 16:25
indicated 15:12
indulgence 9:17
INDUSTRIES 1:7
information 3:14 13:8
infringement 5:10
  15:13
initial 13:5 15:4
inquired 5:25
INSTITUTE 1:4
institution 11:16
instructing 5:15
Intellectual 5:13
International 1:7,15
invalidity 15:14
involved 13:20
issue 6:15 8:17 13:4,9

15:25
issued 3:21
issues 8:5 12:13 16:10

J
J 1:17
January 5:8,10 14:12
  14:23 15:18
John 2:21
Joseph 2:21
JR 1:17,19
Judge 1:11 4:11,15,21
  4:22 10:12 11:10,21
  12:24 13:20,23 15:2
  17:10
judgment 7:24 13:24
  14:1
July 14:17
jump 10:13 11:9
jurisdiction 8:6 10:19

K
keep 14:8 16:22,24
keeps 11:15
Kim 3:7
KIMBERLY 1:15
kind 11:16
Kirkland 1:20 3:11
know 4:14 5:18 10:23
  12:19,22,23 14:4 15:5
  16:20

L
language 13:21
largely 16:18
lawsuit 6:12 7:25 8:15
  8:22,23,25 9:3 10:1,2
  10:4 14:2
lawyers 12:1
lead 8:14
leading 11:25
learn 10:7
leave 3:12
letter 5:9 12:12
Let's 10:5
license 8:11
Licensing 6:18
light 11:18
lines 4:9
listening 12:9
litigated 11:17 12:24
litigation 7:9 11:21
  12:23
little 4:17 10:9
lives 16:25
LLP 1:15,18
local 4:7
Lodgen 1:17 3:10

long 9:3 12:21
looking 11:9 12:5
looks 11:14

M
M 1:15
machine 17:20
March 5:8,12 6:10,24
  7:12 9:25 10:3
Markman 13:19 14:16
  14:17 15:25 16:8
Massachusetts 1:2,4,16
  1:18,24 2:22
matter 7:25 8:6 9:21,22
  10:19,21 11:16
meeting 5:3,5,6,8,11,12
  5:13,16 6:16,19,21
  8:14
meetings 11:24 16:22
mention 5:11
mentioned 5:7 11:25
Mercedes-Benz 5:11
merely 6:5
met 17:9
Method 2:24
Michelle 1:19 3:10
  15:18
Michigan 13:6
middle 6:22 8:8
misapprehension
  16:17
MIT 4:25 5:24 6:13,21
  7:5 9:2,7,21 10:5
  11:15,23 15:13 17:1,1
  17:3,6
Moakley 2:21
moment 7:1 15:9
month 4:8 9:9,11
months 6:13 7:20 9:6,7
motion 3:14,21 4:18
  5:24 8:10 17:9,17,18,18
  11:12 14:7,8,9 16:18
  16:18
Mottley 1:15 3:7
movies 4:9
Muldoon 1:17 3:8,9

N
narrow 14:19
need 15:22
needed 16:9
negotiate 6:20
negotiated 16:7
negotiations 6:22 8:8
never 16:13
news 12:11
newspaper 4:12
normal 3:25 12:16

notwithstanding 8:3
November 15:14

O
objection 7:23
obviously 4:19
occurred 5:12
office 3:7 6:18 17:1,6,6
Official 2:21 17:17
Okay 7:15,25 13:13
  15:22
once 9:8,11
oral 4:22
order 3:21
original 3:21 5:23 16:6
outside 6:14
Owens 2:21 17:17

P
P 1:10
Pamela 2:21 17:17
papers 3:23
part 6:5 9:17 10:7
  11:13
particularly 13:18
particulars 14:5
parties 12:11,15 15:10
patent 12:1,16
people 14:18
period 7:15 8:1 12:25
permit 10:23
person 11:15 16:25
Personal 10:21
perspective 5:6
phone 5:14 17:8
piece 12:22
place 1:15 6:2 8:14,22
  11:17
placed 5:14
Plaintiff 1:5,16
plaintiff's 12:1
pleadings 15:6
please 3:3,9
point 6:14 9:1
Porsche 5:9
potentially 12:1
prejudice 15:1
preliminary 15:13,14
  15:16
premature 7:20 16:8
prepared 14:8
present 3:10
presentations 12:13
presented 13:4
presumably 10:25
presumptuous 11:13
  16:9
pretermit 10:12

prior 12:5
pro 3:12
procedure 4:1
proceedings 17:20
process 5:25 6:3,4 7:9
  7:11 9:10
Property 5:14
proposal 12:3
proposed 12:17 14:13
  15:15
Proskauer 1:15 3:6
provide 13:8
purposes 13:2
P.M 1:24,24 17:14

Q
question 5:18 8:20
  10:22
questions 13:17
quite 16:7
quote 8:9

R
R 2:21 17:16,17
raise 13:9
Randolph 1:20
reading 15:17
realized 12:10
realizing 6:4
really 4:14 14:20
reason 13:12,25 15:25
reasons 14:17
receipt 3:21
received 9:8
RECESSED 17:14
record 6:17
relatively 12:25
reporter 2:21 4:12
  17:17
Reporting 2:24
represented 6:19
require 13:5
resolution 14:9
resolve 14:10
resolved 4:3 14:21,22
resolves 14:7
respect 7:23
respond 10:7
response 10:8
resulted 6:3,7
retain 9:20
retained 6:14 7:17 9:11
  9:12,14,15,21 10:5
retaining 7:9,11
retrial 16:4
review 13:11
right 7:14,19 9:19
  10:17 11:3 12:14

AUGUST 4, 2005>

MIT V HARMAN INTERNATIONAL>

Page 20

| | | | | |
|---|---|---|---|---|
| 15:20 | suddenly 17:7 | UNITED 1:1,11 | 23rd 5:8 | |
| ripe 7:20,24 | suggested 4:23 | up-to-date 3:13 | | |
| Robert 1:17 3:9 | suit 5:21 7:2 8:12 12:16 | | **3** | |
| Rose 1:15 3:6 | Suite 2:22 | **V** | 3rd 1:23 | |
| rules 9:14 | Sure 8:4 | vacations 13:10 | 3:05 1:24 | |
| ruling 11:22 12:6,18 | suspect 14:20 | VERSUS 1:6 | 3:25 1:24 17:14 | |
| running 12:18 | | vice 3:12 | 30 12:18 13:3 | |
| | **T** | view 14:20 | 3200 2:22 | |
| **S** | T 17:16,16 | virtually 17:3 | | |
| S 17:18 | take 6:15 12:20 14:17 | | **4** | |
| satisfactorily 16:13 | 15:4,18,23 | **W** | 4 1:13 3:2 | |
| saying 3:22 15:1 | taken 6:2 8:13 17:20 | wait 12:21 | 4th 14:12,23 15:5,14,18 | |
| says 4:7 | talk 4:18,20 9:4 14:24 | want 10:11 11:10,19,21 | | |
| schedule 3:22 4:20,20 | talked 9:11 | 13:3 14:6,19,25 16:8 | **5** | |
| 12:4,4,7,17 13:16 | talking 3:15 8:13 14:11 | wanted 16:2 | 5-12 7:4 | |
| 14:15,16,21,25 15:3 | Technology 1:4 6:18 | wasn't 8:7 | | |
| 15:17 16:3 | tell 4:7 12:7 | way 1:23 2:22 3:20 | **6** | |
| schedules 12:5 | tends 13:19 | 4:10 12:16 14:3 | 60601 1:20 | |
| Schwartz 11:25 | terms 14:13 15:15 | 16:13 | | |
| see 4:8 13:25 16:10,12 | Thank 15:21 17:12,13 | weeks 8:10 10:6 | | |
| 16:14 | think 11:11 12:4 13:13 | went 5:9 | | |
| seen 4:23 | 14:11 16:18 | we'll 8:10 16:12,14 | | |
| September 15:5 | thinking 10:12 | we're 12:15,19 14:11 | | |
| served 5:1 7:10,12 | thought 6:21 8:21 16:9 | we've 14:2 | | |
| server 6:1,3 | three 5:7 10:6 | William 1:19 3:11 | | |
| server's 6:5 | time 5:4,16 6:5 7:6,15 | witnesses 10:15 | | |
| service 5:17,21,22,23 | 7:21 8:1,4 10:24,25 | WOODLOCK 1:10 | | |
| 6:6,7,9 | 12:25 | work 3:20 16:1 | | |
| set 4:16,19 | timing 6:1 | worked 4:12 | | |
| setting 3:22 | today 16:9 | works 16:25 | | |
| settlement 8:11 9:2,3 | transcribed 17:21 | writing 12:12 | | |
| 10:5 | transcribing 6:5 | | | |
| shake 8:2 | transcription 2:24 | **Y** | | |
| shaken 8:8 | 17:19 | years 4:13 8:13 12:12 | | |
| Sterin 1:17 3:9 | transfer 10:18 16:19 | | | |
| shook 6:20 | transformed 8:2 | **0** | | |
| short 12:25 | translation 13:7 | 02110 1:16 | | |
| shorthand 17:20 | transpired 8:1 | 02110-2105 1:18 | | |
| side 4:19 8:2 9:18 | tread 4:11 | 02210 1:24 2:22 | | |
| simply 13:5 | tried 14:5 | | | |
| situation 4:15 | trip 15:19 | **1** | | |
| sorry 8:21 | true 17:19 | 1 1:23,23 2:22 | | |
| source 13:17 | try 16:2 | 101 1:18 | | |
| speak 4:6 | trying 13:16 | 12 7:16 | | |
| Specifically 5:3 | Turner 6:17 | 12th 7:5 8:1 9:25 | | |
| spend 12:12 | two 4:8 6:13 7:20 8:13 | 14th 5:12 6:10,24 7:13 | | |
| standard 16:3 | 9:6,7 10:23,24 11:24 | 9:25 10:3 14:17 | | |
| start 4:15 12:2 | 11:25 12:12 | 19 15:15 | | |
| STATES 1:1,11 | | 19th 5:8,11 | | |
| stay 16:14 | **U** | | | |
| Steven 1:15 3:6 | U 17:18 | **2** | | |
| Street 1:18 | understand 3:25 4:25 | 20 9:14,16,20,21 | | |
| Streff 1:19 3:11 4:5,9 | 6:23 7:22 9:24 10:20 | 200 1:20 | | |
| 4:14 5:2,18 7:7 11:20 | 12:22 | 2003 5:8 | | |
| 12:9 13:4 15:21 | understanding 5:5,6 | 2005 1:13 3:2 | | |
| 17:13 | 9:23 10:10 | 2006 14:12 | | |
| subject 8:6 10:19,21 | understood 14:6,18 | 2007 16:2,5 | | |
| submitted 3:20 | unfamiliar 7:8 | 22nd 1:16 | | |

AUGUST 4, 2005>

# Exhibit E

1                UNITED STATES DISTRICT COURT

2                 DISTRICT OF MASSACHUSETTS

3   * * * * * * * * * * * * * *
                         *
4   MASSACHUSETTS INSTITUTE OF  *
     TECHNOLOGY              *
5           Plaintiff     *
                         *
6       VERSUS            *   CA-05-10990-DPW
                         *
7   HARMAN INTERNATIONAL       *
     INDUSTRIES, INC.       *
8          Defendant     *
                         *
9   * * * * * * * * * * * * * *

10       BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

11       UNITED STATES DISTRICT COURT JUDGE

12              STATUS CONFERENCE

13              OCTOBER 20, 2005

14   APPEARANCES:

15      STEVEN M. BAUER, ESQ., Proskauer, Rose, LLP,
       One International Place, 14th Floor, Boston,
16      Massachusetts 02110, on behalf of the Plaintiff

17      MICHELLE A.H. FRANCIS, ESQ., Kirkland & Ellis,
       200 East Randolph Drive, Chicago, Illinois 60601,
18      on behalf of the Defendant

19      COURTNEY AMBER CLARK, ESQ., Sherin and Lodgen, LLP,
       101 Federal Street, Boston, Massachusetts 02110,
20      on behalf of the Defendant

21                 Courtroom No. 1 - 3rd Floor
                    1 Courthouse Way
22                  Boston, Massachusetts 02210
                    2:35 P.M. - 2:50 P.M.
23

         Pamela R. Owens - Official Court Reporter
24      John Joseph Moakley District Courthouse
         1 Courthouse Way - Suite 3200
25         Boston, Massachusetts 02210

2

```
 1                    CA-05-10990-DPW

 2                    OCTOBER 20, 2005

 3          THE COURT:  Well, I just wanted to have you in

 4     to be sure we weren't missing anything in this case.

 5              I will be dismissing the Harman Motion to

 6     Dismiss.  I'm denying it unless there's something new

 7     that I haven't heard already.

 8              The question of the further guidelines, is

 9     there something new that I should know about the Markman

10     hearing?

11          MR. BAUER:  No, Your Honor.  And what we've

12     submitted is the exact same schedule we had submitted --

13          THE COURT:  Right.

14          MR. BAUER:  -- back then with the only dispute

15     being should the Markman hearing be before the experts

16     get involved or after the experts get involved.  And

17     that's really the only issue.

18          THE COURT:  What are you doing about claim

19     identification and that sort of thing?

20          MR. BAUER:  We're going to supply on November

21     4th our first identification.  It's in the order --

22          THE COURT:  Right.

23          MR. BAUER:  -- a preliminary identification of

24     claims.  They then have, I think, five weeks after that

25     to respond and a preliminary validity analysis.  And
```

3

1  then, as we have laid out here, we got into some expert

2  discovery.  The proposal was March 17th to identify

3  experts and start them in the process.

4          MS. FRANCIS:  Your Honor, in the order that

5  you entered previously, it refers to schedule adjustment

6  on January 8th whereby the parties are required to

7  provide an identification of the terms that they feel

8  are being disputed --

9          THE COURT:  Right.

10          MS. FRANCIS:  -- and proposed construction for

11  the claims.  And Harman's proposal to date consistent

12  with what was done before is that we have Markman

13  briefing and, if necessary, a hearing at some point

14  shortly after that identification is made whereas I

15  believe MIT's position is they would like to wait until

16  the close of fact discovery --

17          THE COURT:  Well, I understand that.

18          MS. FRANCIS:  -- and do it.  And that's where

19  we left things.

20          THE COURT:  Yes.  Where we left things are

21  where things remain.  That's the parties' positions on

22  all of that.

23          MS. FRANCIS:  Yes.

24          THE COURT:  Well, I will adopt this joint

25  deadline.  And I'm not going to put any time in for a

4

1    Markman hearing.  And if after the kind of claim

2    identification discussion Harman wants to continue to

3    press forth, they can make a motion for it, that it's

4    going to be helpful in some fashion.  But it's got to be

5    done in a context that permits me to determine whether

6    or not it's helpful.  If they're just kind of scattered

7    on identification of claim problems, I may get myself

8    involved in it saying "are there really these claim

9    problems."  But my own view is it's probably, in a

10   case like this, generally better to do it later rather

11   than earlier so that you can sort through it if you're

12   sorting through it in an orderly sort of way.  If you're

13   not, then I guess I should get involved in some fashion.

14           So, the short of it is wait and see.  But I'm

15   going to adopt your joint proposed deadline through the

16   close of expert discovery and establish August 25th, as

17   you have asked, for the dispositive motions.  Whether or

18   not there are going to be Daubert motions or not, I

19   don't know.  I suspect you don't either.  And then we'll

20   see about witness lists and exhibit lists and that sort

21   of thing at that point.

22           So, the schedule now is going to take you

23   through August 25th.  It doesn't have a Markman hearing

24   in there.  I will look at it in a particular context.

25           MS. FRANCIS:  Thank you, Your Honor.

5

1           MR. BAUER:  Your Honor, you also have ordered

2      a scheduling hearing in January.  I'm not sure whether

3      that comes off.  That was from the last one before we

4      knew how quickly --

5           THE COURT:  Right.

6           MR. BAUER:  -- Chicago would rule.

7           THE COURT:  I think I'm going to -- unless you

8      would like to see me to usher in the new year, I think

9      we'll just carve that out for now.  You've got your

10      schedule.  You know what you want to do.

11           MR. BAUER:  Thank you, Your Honor.

12           MS. FRANCIS:  The only thing I would ask, Your

13      Honor, is perhaps we might want to reserve a date in

14      January or at least the concept of January in the event

15      that Harman does, after the beginning of January, need

16      to file a motion regarding claim construction.

17           THE COURT:  If you do, I'll look at it and

18      I'll set it down for a hearing.  So, I don't see a

19      reason to have a further scheduling or status conference

20      in January.

21           Now, I've have got this letters rogatory

22      request which is hot off the presses.  But what's going

23      on?

24           MR. BAUER:  Your Honor, we didn't get this

25      until noon today.  We've been in a lot of discovery

6

1    dialogue over the last two weeks.  We were supposed to

2    have another one at 11 o'clock this morning.  They never

3    called us at 11 o'clock to discuss it.  We have told

4    them that we're happy to accept service if there's an

5    agreement that they will accept service of their

6    witnesses that are out of the U.S., that we needed to

7    put together a framework to make sure that jurisdictional

8    issues are preserved.  Quite frankly, their answer was

9    they weren't going to talk to us.  When they called

10   about this, we said "send us the motion, we'll look at

11   it."  They said "we're not going to do it."  This was

12   their opportunity to dump on us.

13           We don't have any objection in general to

14   accepting service of witnesses.  We don't have any

15   objection in general to letters rogatory.  We just think

16   that there should be -- counsel should be negotiating

17   with us to make sure everything we agree to is going to

18   work out for both of us.

19           THE COURT:  Well, that sounds nice.  But what

20   does it mean here?

21           MR. BAUER:  I'm sorry?

22           THE COURT:  What does it mean here?

23           MR. BAUER:  Your Honor, they have a witness --

24           THE COURT:  Let's just start --

25           MR. BAUER:  With this motion?

7

1              THE COURT:  Right.

2              MR. BAUER:  I just received it, Your Honor.

3              THE COURT:  No, no.  What does it mean as to

4    Mr. Davis?  What's going on?

5              MR. BAUER:  Oh, with Mr. Davis.  Mr. Davis is

6    an independent party.  He is not at MIT.  He's been

7    gone.

8              THE COURT:  Do you represent him?

9              MR. BAUER:  We're representing him for this

10   litigation.  Yes, Your Honor.

11             THE COURT:  Okay.  And his view is come and

12   get me?

13             MR. BAUER:  No, absolutely not, Your Honor.

14   He's in Canada.  The concern is if we accept the

15   subpoena here, that that will waive some sort of

16   jurisdictional issues for trial or something else; that

17   he's not in the state at all; and, so, there's an

18   issue.  We have no problem making him available for

19   a deposition.  We're not hiding him, but he's an

20   independent person.  I have no control over him.  And if

21   something changes between now and trial, I think good

22   advice to him is that there should be an agreement that

23   if we accept the subpoena now, it doesn't waive any

24   jurisdictional issues later for a trial subpoena.  He's

25   not an MIT employee.  He's not affiliated with MIT.

8

1          THE COURT:  How many more Mr. Davis's or Dr.

2     Davis's are there out there?

3          MR. BAUER:  I believe this is the only one,

4     Your Honor.

5          THE COURT:  What about for Harman?

6          MR. BAUER:  Well, they have one witness who is

7     in the same framework as far as we know in Germany.

8     He's listed on their initial disclosure.  And that's

9     exactly what triggered this.  We said "If you'll accept

10    the subpoena for him, we're done."

11         THE COURT:  Okay.  What is the story with --

12         MS. FRANCIS:  Actually, that was not the

13    dialogue that was had at all.

14         THE COURT:  Well, I don't want to -- I'd like

15    to change the form of the dialogue.  Now I want to just

16    talk about --

17         MS. FRANCIS:  Understood.

18         THE COURT:  -- they say they are trying to

19    style a sauce for both geese and gander.

20         MS. FRANCIS:  I don't object to that in

21    principle, Your Honor.  I don't have a client in Germany

22    other than the defendant that I represent in this case

23    right now.  I'm not --

24         THE COURT:  Well, so, they said there's

25    someone in Germany.  He has a name or she has a name?

9

1            MR. BAUER:  Yes.  I can get that for Your

2      Honor.  Whitsky.  He's listed on their automatic -- auto

3      disclosure role.  Wakeen Whitsky.

4            THE COURT:  So, who's the --

5            MR. BAUER:  He's listed as the creator of the

6      accused product.

7            MS. FRANCIS:  My understanding is --

8            MR. BAUER:  And they told us we can't contact

9      him because -- they've instructed us not to contact him.

10            MS. FRANCIS:  There has not been an

11      instruction not to contact him.  The question was raised

12      as to whether --

13            THE COURT:  Do you represent him?

14            MS. FRANCIS:  I don't at this point in time.

15      We are currently in discussions with him regarding

16      whether or not we will represent him, whether he will

17      let us represent him.  We've had some difficulty

18      reaching him.  Throughout the month of August and

19      September, he's been on vacation and out of the country

20      in his country and unreachable.  So, our relationship --

21            THE COURT:  In the United States?

22            MS. FRANCIS:  -- to him has not been defined

23      yet.

24            THE COURT:  Has he been visiting the United

25      States or what?

10

1          MS. FRANCIS:  No.  As far as I can tell, the

2    entire country of Germany leaves for about six weeks in

3    August.  I anticipate that --

4          THE COURT:  They not only have longer

5    vacations, they have longer months then if there's six

6    weeks in August.

7          MS. FRANCIS:  Technically.  I keep reminding

8    myself that I live in a better country for different

9    reasons.

10         We are hoping to represent Mr. Whitsky -- I

11   think is how you say his name.  I'm not entirely sure.

12   At this point in time, we do not.  We have never

13   suggested that they are not able to contact him.  They

14   merely asked us if we represent him and we told them

15   we'd let them know.  I believe the deadline that they

16   gave us was by the end of the day tomorrow or at the

17   close of business tomorrow as to whether we do.  I'm

18   still working on that.  I don't have an answer to that.

19         THE COURT:  Well, I guess my initial response

20   to it is if you've got to go letters rogatory, you can.

21   It's a pretty clumsy way of proceeding.  And there is a

22   nice symmetry to both of you having such a witness.  And

23   you ought to get it straightened away quickly.  Now, I

24   don't understand what this jurisdictional issue is all

25   about.  You accept service subject to reservation.

11

1          MR. BAUER:  Your Honor, the only issue -- and

2     I'm happy to accept service for the deposition.  The

3     concern is if somewhere between now and trial he becomes

4     less friendly, that us accepting service subjects him to

5     a trial subpoena served on us.  That's the only issue.

6          THE COURT:  But why can't you simply say that?

7          MR. BAUER:  Well, that's what we -- that's

8     exactly what he said.  "Let's have a diaglogue."

9     Attach the letter.

10         THE COURT:  Dialogue is other matter.

11    Dialogues are endless.  Let's get this resolved.  You

12    can have -- I'll put it this way.  You can accept

13    service for purposes of a deposition in the United

14    States without waiving the assertion that he could be

15    outside of the jurisdiction.  I don't see that's a --

16         MR. BAUER:  Your Honor, we have no objection

17    to that.

18         THE COURT:  Okay.  So there we are.

19         MS. FRANCIS:  So, do the documents as well.

20    Because we're seeking documents in response to subpoena

21    as well as depositions.

22         MR. BAUER:  We have no objection to that.  And

23    that's the letter we wrote.  We said we have no

24    objection, it's attached to the package.  We said. "let's

25    just talk about it before we" --

12

1              THE COURT:  Okay.  Well, have we talked enough
2      about it?
3              MR. BAUER:  And we have accepted it.
4              THE COURT:  Okay.  So the same goes for your
5      person.
6              MS. FRANCIS:  As soon he becomes my client.
7              THE COURT:  Yes.
8              MS. FRANCIS:  If and when he becomes my
9      client.
10             THE COURT:  As soon as he accepts the idea of
11     your representation of him -- I assume he will -- that's
12     the way to deal with it.  And I don't want to spend a
13     great deal of time.  And I don't think either side will
14     find it comfortable to be presenting me with these kinds
15     of motions.  I assume that a brief dialogue, perhaps a
16     few words, will be able to resolve a number of discovery
17     disputes.  That's what I'm counting on.  If I were you,
18     I would be counting on it, too, because the process of
19     resolving discovery disputes is not always pretty.
20     Do we understand each other?
21             MS. FRANCIS:  Yes, Your Honor.
22             MR. BAUER:  Yes, Your Honor.
23             THE COURT:  Okay.  Anything else?
24             MR. BAUER:  No, Your Honor.
25             THE COURT:  Okay.  Thank you very much.  We'll

13

1    be in recess.

2                    RECESSED AT 2:50 P.M.

3

4                    C E R T I F I C A T E

5        I, PAMELA R. OWENS, Official Court Reporter,

6    U. S. District Court, do hereby certify that the

7    foregoing is a true and correct transcription of the

8    proceedings taken down by me in machine shorthand and

9    transcribed by same.

10

11                    _Pamela R. Owens_

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, <br><br> Defendant. | Case No: 05-10990 DPW <br> Hon. Douglas P. Woodlock |

## MIT'S RESPONSE TO HARMAN'S
## FIRST SET OF INTERROGATORIES (Nos. 1-7)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff,

Massachusetts Institute of Technology ("MIT") submits the following responses and objections

to Harman International Industries, Incorporated's ("Harman's") First Set of Interrogatories

(Nos. 1-7) [counted with subparts as Nos. 1-29) (the "Interrogatories"):

### GENERAL OBJECTIONS

The following general statements and objections are incorporated into each of MIT's

responses, as set forth there in full, even if not repeated therein:

1.    MIT objects to the Interrogatories to the extent they refer to an Appendix A to

Harman's First Set of Document Requests to MIT, which does not exist.

2.    MIT objects to Harman's method of counting, but under Harman's counting method,

Harman has served twenty-nine (29) interrogatories, and thus has exceeded the twenty-five (25)

permitted by Rule 33 of the Federal Rules of Civil Procedure.  Upon mutual agreement of

counsel as to method of counting the parties' respective interrogatories, MIT will provide additional appropriate responses, if necessary.

3. MIT objects to the Interrogatories to the extent they call for disclosure of information protected by the attorney-client privilege, work-product doctrine, and/or any other privilege or immunity. In the event that any response given by MIT contains privileged or protected information, its disclosure is inadvertent and shall not constitute a waiver of any privilege or protection with respect to the divulged information or any other information.

4. MIT objects to the Interrogatories to the extent they attempt or purport to impose obligations on MIT beyond those required by the Federal Rules of Civil Procedure 26 and 33, or the Local Rules of Practice of the United States District Court for the District of Massachusetts.

5. MIT objects to the Interrogatories to the extent that they seek information already in Harman's possession, equally available to Harman, and/or publicly available.

6. MIT objects to the Interrogatories to the extent that they seek information not in the possession, custody, or control of MIT, information not owned or belonging to MIT, or information that is subject to a non-disclosure obligation pursuant to a confidentiality agreement with a third-party.

7. MIT objects to the Interrogatories to the extent that they are vague, ambiguous, and/or confusing, incomprehensible and/or unanswerable because of undefined or ill-defined terms and/or confusing syntax, or they fail to describe with reasonable particularity the information sought.

8. MIT objects to the Interrogatories to the extent that they are overly broad, unduly burdensome, oppressive, and/or designed solely to harass MIT.

9.    MIT objects to the Interrogatories to the extent that they seek information not relevant to the subject matter of the present lawsuit and/or are not reasonably calculated to lead to the discovery of admissible evidence.

10.    The information supplied in MIT's responses may not be based solely upon the knowledge of the executing parties, but may include the knowledge of MIT's agents, representatives, and attorney(s), unless privileged.

11.    MIT expressly reserves all objections as to relevance and/or admissibility of any information disclosed in its objections and/or responses.

12.    MIT's willingness to provide responses to any of the Interrogatories is not a concession that the subject matter of the particular Interrogatory is discoverable, relevant to this action, or admissible as evidence.

13.    To the extent MIT adopts any terms used by Harman in its Interrogatories, such adoption is specifically limited to the objection and responses herein, and does not constitute an admission of law or fact by MIT.

14.    The presence or absence of any general or specific objection does not mean that MIT does not object on any other grounds.

15.    MIT has responded to the Interrogatories as it interprets and understands each Interrogatory made therein. If Harman subsequently asserts an interpretation of any Interrogatory that differs from the understanding of MIT, MIT reserves the right to supplement its objections and responses.

16.    MIT incorporates its General Objections to Harman's First Set of Requests for the Production of Documents and Things (Nos. 1-29) as if fully set forth herein.

17. The responses set forth below are based on information presently known to MIT. MIT expressly reserves the right to complete its investigation and discovery of the facts and to rely, at the time of trial or in other proceedings, upon documents and evidence in addition to the information provided regardless of whether such information is newly discovered or currently in existence. MIT may, in the future, obtain or locate additional information responsive to these Interrogatories. Further, a complete response to certain Interrogatories depends in part upon information to be adduced from Harman or third parties during discovery, which is in its early stages. MIT, therefore, reserves its right, at any time, to revise, amend, correct, supplement, modify, or clarify its responses, on a timely basis, in accordance with Federal Rules of Civil Procedure 26 and 33.

## SPECIFIC OBJECTIONS AND RESPONSES

### INTERROGATORY NO. 1

State MIT's proposed construction, and all bases supporting such construction, of the following element of claim 1 of U.S. Patent No. 5,177,685 (the "Patent-In-Suit"): "a map database functionally connected to said computing apparatus which distinguishes between physical and legal connectivity."

### RESPONSE TO INTERROGATORY NO. 1

MIT objects to this Interrogatory as premature, as the parties agreed in their August 1, 2005 Joint Statement filed with the Court that they will "exchange proposed terms and claim elements for construction and preliminary claim constructions" on January 4, 2006, and because the Court adopted that deadline during the August 4, 2005 scheduling conference. MIT further objects to this Interrogatory because MIT has not yet completed its factual and legal analysis with regard to claim construction, and thus contention interrogatories regarding the interpretation

of each claim are premature at this stage of the litigation. MIT further objects to this
Interrogatory because it seeks information protected by the attorney-client privilege, work
product doctrine, and/or other applicable privileges.

**INTERROGATORY NO. 2**

For each asserted claim of the Patent-in-Suit, identify each element that MIT contends is
written in means-plus-function form as permitted under 35 U.S.C. § 112 ¶6 and, for each such
element, identify the specified function for that element and the corresponding structure,
material, or acts described in the specification as required by 35 U.S.C. § 112 ¶6. MIT's
response to this interrogatory should appear in columns 2 and 3 of Table A in Appendix A and
should include citations to all evidence (by column and line number, or by figure and item
number) allegedly supporting MIT's identified function.

**RESPONSE TO INTERROGATORY NO. 2**

MIT objects to this Interrogatory and each of its subparts as premature, as it seeks
information about "asserted claims," and the parties agreed in their August 1, 2005 Joint
Statement filed with the Court that MIT will "provide disclosure of asserted claims and
preliminary infringement contentions" on November 4, 2005, and because the Court adopted that
deadline during the August 4, 2005 scheduling conference. MIT further objects because MIT
has not yet completed its factual and legal analysis with regard to infringement and claim
construction, and thus contention interrogatories regarding the interpretation of each claim are
premature at this stage of the litigation. MIT further objects to this Interrogatory to the extent
that it asks that MIT provide information in a certain format.

<u>**INTERROGATORY NO. 3**</u>

      For each element identified in response to Interrogatory No. 2 above, state whether MIT contends that Harman literally infringes that element (i) because the structure identical to that identified in response to Interrogatory No. 2 above for that element is found in each accused product and, if MIT contends that identical structure exists, provide a detailed explanation of where such identical structure for that element is found in each accused product; or because (ii) a structure equivalent to that identified in response to Interrogatory No. 2 above for that element is found in each accused product and, if MIT contends that equivalent structure exists, provide a detailed explanation of where such equivalent structure for that element is found in each accused product. MIT's response to this interrogatory should appear in columns 4 of Table A in Appendix A and should include citations to all evidence allegedly supporting MIT's contention and its identified structure.

<u>**RESPONSE TO INTERROGATORY NO. 3**</u>

      See Response to Interrogatory No. 2.

<u>**INTERROGATORY NO. 4**</u>

      For each element identified in response to Interrogatory No. 2 above, state whether MIT contends that Harman infringes that element under the doctrine of equivalents and, if MIT contends that doctrine of equivalents infringement exists, provide a detailed explanation of where that element is found in each accused product and the bases for MIT's contention that the differences between the element and the accused product are insubstantial and that the element and the accused product perform substantially the same function in substantially the same way to

achieve substantially the same result. MIT's response to this interrogatory should appear in column 6 of Table A in Appendix A and should include citations to all evidence allegedly supporting MIT's contentions.

## RESPONSE TO INTERROGATORY NO. 4

    See Response to Interrogatory No. 2.

## INTERROGATORY NO. 5

    For each element of each asserted claim not identified in response to Interrogatory No. 2 above, provide a detailed explanation of where that element is found in each accused product and a statement as to whether that element is alleged to be present literally or under the doctrine of equivalents. For each element that is alleged to be present under the doctrine of equivalents, MIT's explanation should include the bases for MIT's contention that the differences between the claim element and the structure in the accused product are insubstantial that the element and the accused product perform substantially the same function in substantially the same way to achieve substantially the same result. MIT's response to this interrogatory should appear in column 7 of Table A in Appendix A and should include citations to all evidence allegedly supporting MIT's contentions.

## RESPONSE TO INTERROGATORY NO. 5

    See Response to Interrogatory No. 2.

## INTERROGATORY NO. 6

    For each asserted claim of the Patent-In-Suit, state when a prototype that embodied each alleged invention of the patents in suit was first made and when and to whom such prototype was

first disclosed; explain in detail the circumstances surrounding the prototype (including without

limitation its making and disclosure); and identify all persons with knowledge of these events.

**RESPONSE TO INTERROGATORY NO. 6**

      See Response to Interrogatory No. 2. MIT further objects to this Interrogatory because it

seeks information protected by the attorney-client privilege, work product doctrine, and/or other

applicable privileges. MIT further objects to this Interrogatory as validity and enforceability of

the '685 Patent are not presently at issue in this litigation.


**INTERROGATORY NO. 7**

      Identify each "working prototype of the Back Seat Driver" (*see, e.g.,* col. 3, lns. 4-5),

including without limitation the date(s) upon which each such prototype was created ,

"implemented" (*see, e.g.,* col. 3, ln. 5), demonstrated, displayed, shown, tested, and/or reduced to

practice and each person involved in any such act, and describe how the "map database for the

Back Seat Driver in [each] working prototype" (*see, e.g.,* col. 4, lns. 13-15) represented

"physical connectivity" and "legal connectivity" as those terms are used in the Patent-In-Suit

(*see, e.g.,* col. 4, ln. 61 - col. 5, ln. 14).

**RESPONSE TO INTERROGATORY NO. 7**

      MIT objects to this Interrogatory and each of its subparts as overly broad, unduly

burdensome and not reasonably calculated to lead to the discovery of admissible evidence. MIT

further objects to this Interrogatory to the extent that it seeks information protected by the

attorney-client privilege, work product doctrine, and/or other applicable privileges, such as with

respect to any legal conclusions about reduction to practice of the inventive concepts described

in U.S. Patent No. 5,177,685. MIT further objects to this Interrogatory as premature to the extent

it requests MIT to construe language of the written description of the '685 patent synonymously with language appearing in the claims of the '685 patent. The parties agreed in their August 1, 2005 Joint Statement filed with the Court that they will "exchange proposed terms and claim elements for construction and preliminary claim constructions" on January 4, 2006, and the Court adopted that deadline during the August 4, 2005 scheduling conference. MIT further objects because MIT has not yet completed its factual and legal analysis with regard to infringement and claim construction, and thus, contention interrogatories regarding the interpretation of each claim are premature at this stage of the litigation. MIT further specifically objects to this Interrogatory and each of its subparts as vague and ambiguous to extent does not define what is meant by the term "Back Seat Driver." MIT further objects to this Interrogatory as, under Harman's counting method, it exceeds Harman's limit of 25 interrogatories under Rule 33 of the Federal Rules of Civil Procedure. MIT further objects to this Interrogatory as validity and enforceability of the '685 Patent are not presently at issue in this litigation.

Dated: October 11, 2005                Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:   617-526-9899

## CERTIFICATION

I, the undersigned, have reviewed MIT's Responses to Harman's First Set of Interrogatories (Nos. 1-7). The responses set forth herein, subject to inadvertent or undiscovered errors or omissions, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, thus far discovered in the course of preparation of the responses, and currently available to MIT. Consequently, MIT reserves the right to make any changes in or additions to any of these responses if it appears at any time that errors or omissions have been made therein or that more accurate or complete information has become available. Subject to the limitations set forth herein, said responses are true to the best of my present knowledge, information and belief.

I hereby certify under penalty of perjury that the foregoing is true and correct.

Executed on this __th day of October, 2005.

_____

Jack Turner
On behalf of Massachusetts Institute of Technology

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 11, 2005, I caused a true and correct copy of

MIT's RESPONSES TO HARMAN'S FIRST SET OF INTERROGATORIES (NOS. 1-7) to be

served on the following counsel of record via email, with a courtesy copy by U.S. Mail:

Robert J. Muldoon, Jr.
**SHERIN AND LODGEN, LLP**
101 Federal Street
Boston, MA 02110

William A. Streff Jr., P.C.
Michelle A. H. Francis
Jamal M. Edwards
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

By: _Kimberly A. Mottley_
Kimberly A. Mottley

# Exhibit G

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

       Plaintiff,

v.

HARMAN INTERNATIONAL
INDUSTRIES, INCORPORATED,

       Defendant.

Civil Action No.: 05-10990 DPW

## MIT'S DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS

Pursuant to the Court's order dated October 10, 2005, Plaintiff Massachusetts Institute of Technology ("MIT"), by and through its attorneys, hereby provides its disclosure of asserted claims and preliminary infringement contentions to Defendant Harman International Industries, Incorporated ("Harman") with respect to U.S. Patent No. 5,177,685 (the "'685 patent") entitled Automobile Navigation System Using Real Time Spoken Driving Instructions.

MIT reserves the right to base its infringement contentions on additional documents not referenced in this document, and also reserves the right to assert additional contentions regarding infringement as discovery proceeds in this case.

MIT contends that Harman directly infringes the below-listed claims of the '685 patent. MIT further contends that Harman contributes to and induces infringement of those claims by selling to original equipment manufacturers that import, sell and offer for sale infringing products and associated components in the United States. MIT's preliminary infringement contentions are based on the literal infringement of the asserted claims by Harman's products and those of its customers. MIT reserves the right as discovery proceeds to assert additional

-1-

infringement contentions, including without limitation, contentions based on the doctrine of equivalents.

The document production that Harman has produced to date is incomplete, and MIT is awaiting the production of additional documents and things, including, without limitation, additional documents to be produced from Harman's facilities in Germany, documents reportedly held by a predecessor of Harman's, and working samples of Harman's products. Furthermore, many of the documents produced are in German, and Harman has not yet agreed to the terms of a protective order that will allow MIT to provide confidential materials to a translator. Therefore, based on the documents that Harman has provided, MIT is presently unable to determine whether or not many of the claims of the '685 patent are infringed. Therefore, MIT reserves the right to conduct further discovery on any such claims and later assert any such claims in this litigation, including, without limitation:

1. All claims relating to the structure, function, operation and/or contents of databases used in any of Harman's Navigation Systems, *e.g.*, Claims 2-6, 8-9, 12, 14-18, and 21;

2. All claims relating to the method used to calculate routes in any of Harman's Navigation Systems, *e.g.*, Claims 24-26 and 29-31;

3. All claims relating to the method of navigation in any of Harman's Navigation Systems, *e.g.*, Claims 32-24 and 36; and

4. All claims relating to the method of generating discourse in any of Harman's Navigation Systems, *e.g.*, 41-47, 51-52 and 56.

## Preliminary List Of Asserted Claims And
## Infringement Contentions For U.S. Pat. No. 5,177,685

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| 1. An automobile navigation system which produces spoken instructions to direct a driver of an automobile to a destination in real time comprising: | The TrafficPro[1] system is an automobile navigation system that produces spoken instructions to direct a driver of an automobile to a destination in real time. | The RB3 and RB4[2] systems are automobile navigation systems that produce spoken instructions to direct a driver of an automobile to a destination in real time.<br><br>"Full Featured Navigation - receive visual and voice prompt commands prior to next required route maneuver."<br><br>(http://www.rb4navigation.com/flashfacts.asp/#navigation) | Advanced Audio GPS Navigation System[3] is an automobile navigation system that produces spoken instructions to direct a driver of an automobile to a destination in real time. |
| computing apparatus for running and coordinating system processes, | TrafficPro includes a computing apparatus for running and coordinating system processes, for example:<br><br>TrafficPro is implemented via a computer (or microprocessor).<br><br>Intelligent software architecture allows for upgrades to the operating system and navigation content when | RB3/RB4 includes a computing apparatus for running and coordinating system processes, for example:<br><br>RB3 and RB4 are implemented via a computer (or microprocessor).<br><br>"the navigation system will instantly and automatically recalculate a new optimized route to arrive at your | Advanced Audio GPS Navigation System includes a computing apparatus for running and coordinating system processes, for example:<br><br>The Advanced Audio GPS Navigation System is implemented via a computer (or microprocessor).<br><br>The navigation software found on the Navigation CD is integrated with, or |

[1] Additional support for MIT's preliminary infringement contentions can be found, among other documents, at MIT 00948 – 01091; HAR 001459-1468; HAR 1140-001389

[2] Additional support for MIT's preliminary infringement contentions can be found, among other documents, at HAR 000760-946; HAR 001457-58; HAR 001469—70; and HAR 001471-75.

[3] Additional support for MIT's preliminary infringement contentions can be found, among other documents, at HAR 001390-1456.

-3-

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| | offered.<br><br>(http://www.trafficpro2.com//features.asp) | original destination"<br><br>Further, references to "Downloadable Memory", "Software design efficiency," and similar references implicitly demonstrate that the system uses a computing apparatus.<br><br>(http://www.rb4navigation.com/fastfacts.asp#navigation) | an extension of, the software of the Advanced Audio System receiver. (HAR 1406) |
| driver input means functionally connected to said computing apparatus for entering data into said computing apparatus, said data including a desired destination, | TrafficPro includes a driver input means functionally connected to said computing apparatus for entering data into said computing apparatus, said data including a desired destination. For example:<br><br>TrafficPro features the "left control knob" that the driver uses to input text or the "right control knob" that the driver uses to verify inputted entries (MIT 952).<br><br>The left control inputted text represents a destination (MIT 960-965)<br><br>See Figure at HAR 1148. | RB3/RB4 includes a driver input means functionally connected to said computing apparatus for entering data into said computing apparatus, said data including a desired destination. For example:<br><br>See diagram of driver interface at, e.g., HAR 001469 and explanation of operation at HAR 794-800.<br><br>"50 Destination Memory Storage Locations"<br><br>"Destination Memory Storage – save your favorite destinations in memory for easy and quick recall."<br><br>(http://www.rb4navigation.com/fastfacts.asp#navigation) | Advanced Audio GPS Navigation System includes a driver input means functionally connected to said computing apparatus for entering data into said computing apparatus, said data including a desired destination.<br><br>See diagram of driver interface as, e.g., Figure 1 of HAR 1403. |

-4-

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| a map database functionally connected to said computing apparatus which distinguishes between physical and legal connectivity, | TrafficPro includes a map database functionally connected to said computing apparatus which distinguishes between physical and legal connectivity. For example:<br><br>"The navigation CDs contain a digitized street map." (MIT 957)<br><br>"Highways, state and county roads, as well as local streets are detailed in this street map." (MIT 957)<br><br>"One-way streets, pedestrian zones, no-turn intersections and other traffic regulations are taken into account as much as possible." (MIT 957)<br><br>"One-way streets, pedestrian zones, no-turn intersections and other traffic regulations are covered where possible." (HAR 1154) | RB3/RB4 includes a map database functionally connected to said computing apparatus which distinguishes between physical and legal connectivity. For example:<br><br>"Full Navigation Capability – Includes two CD ROM discs covering routing directions for all mapped US and parts of Canada."<br><br>(http://www.rb4navigation.com/fastf acts.asp#navigation) | Advanced Audio GPS Navigation System includes a map database functionally connected to said computing apparatus which distinguishes between physical and legal connectivity. For example:<br><br>"The map data for the GPS Navigation System is downloaded from one of the Navteq compact discs (CD) supplied with the System" (HAR 1406)<br><br>"Due to changes in traffic routing or changing data, imprecise or erroneous information may, on occasion, be given. Failure to follow actual road signs and obey traffic regulations could result in death or serious injury." (HAR 1443) |
| a location system functionally connected to said computing apparatus for accepting data from said position sensing apparatus, for consulting said map database, and for determining the automobile's current position relative to the map database, | TrafficPro includes a location system functionally connected to said computing apparatus for accepting data from said position sensing apparatus, for consulting said map database, and for determining the automobile's current position relative to the map database. For example:<br><br>"TrafficPro uses a comparison of its sensor system with the data of a digital map and the help of the GPS (Global Positioning System) receiver to determine location." (MIT 957) | RB3/RB4 includes a location system functionally connected to said computing apparatus for accepting data from said position sensing apparatus, for consulting said map database, and for determining the automobile's current position relative to the map database. For example:<br><br>"Displays remaining distance, arrival time, destination and vehicle position."<br><br>(http://www.rb4navigation.com/fastf acts.asp#navigation) | Advanced Audio GPS Navigation System includes a location system functionally connected to said computing apparatus for accepting data from said position sensing apparatus, for consulting said map database, and for determining the automobile's current position relative to the map database. For example:<br><br>Sensor system is described in detail at HAR 1419-20.<br><br>"Lets you know your exact location." http://www.harley- |

-5-

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| | "The navigation system uses all of these signals to determine the current vehicle position relative to the digitized map stored on the navigation CSs." (HAR 1153) | | davidson.com/cp/moar/en/gps.asp |
| a route-finder functionally connected to said computing apparatus, for accepting the desired destination from said driver input means and the current position from said location system, for consulting said map database, and for computing a route to the destination, | TrafficPro includes a route-finder functionally connected to said computing apparatus, for accepting the desired destination from said driver input means and the current position from said location system, for consulting said map database, and for computing a route to the destination. For example:<br><br>"After entering the destination (address), the system calculates the route...if you are located on a road contained on the digital map. If you are in...another location not detailed on the map,...route guidance will begin when you reach the nearest road detailed on the digitized map." (MIT 968) | RB3/RB4 includes a route-finder functionally connected to said computing apparatus, for accepting the desired destination from said driver input means and the current position from said location system, for consulting said map database, and for computing a route to the destination. For example:<br><br>"Automatic Re-Routing – change course or miss your turn, the navigation system will instantly and automatically recalculate a new optimized route to arrive at your original destination."<br><br>"Route Optimization – Choose between shortest, quickest and fastest routes with or without highways and toll-ways."<br><br>To perform re-routing and optimization, the route finder must obtain desired destination, current position.<br><br>(http://www.rb4navigation.com/basefacts.asp#navigation) | Advanced Audio GPS Navigation System includes a route-finder functionally connected to said computing apparatus, for accepting the desired destination from said driver input means and the current position from said location system, for consulting said map database, and for computing a route to the destination. For example:<br><br>The System generates a "Turn List" as described in detail at HAR 1430.<br><br>The area, between the current location of the motorcycle and the rider's destination, on a digital road map is downloaded from compact discs to the memory of the Advanced Audio Receiver. (HAR 1402.)<br><br>"If you miss a turn or exit, GPS will automatically reroute you to your destination." http://www.harley-davidson.com/cp/moar/en/gps.asp |

-6-

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| a discourse generator functionally connected to said computing apparatus for accepting the current position from said location system and the route from said route finder, for consulting said map database, and for composing discourse including instructions and other messages for directing the driver to the destination from the current position, | TrafficPro includes a discourse generator functionally connected to said computing apparatus for accepting the current position from said location system and the route from said route finder, for consulting said map database, and for composing discourse including instructions and other messages for directing the driver to the destination from the current position. For example:<br><br>TrafficPro generates the list of instructions necessary to follow the route and prepares them for communication to the driver -- e.g., "During route guidance, the planned route list can be requested." (MIT 971)<br><br>"The announcements come in a number of stages (e.g., 'Attention, prepare to...,' and now...,') (MIT 2116) | RB3/RB4 includes a discourse generator functionally connected to said computing apparatus for accepting the current position from said location system and the route from said route finder, for consulting said map database, and for composing discourse including instructions and other messages for directing the driver to the destination from the current position. For example:<br><br>"Internal navigation system provides Turn-by-turn voice prompts allows user to keep his or her eyes on the road."<br><br>(http://www.rb4navigation.com/fastfacts.asp/#navigation) | Advanced Audio GPS Navigation System includes a discourse generator functionally connected to said computing apparatus for accepting the current position from said location system and the route from said route finder, for consulting said map database, and for composing discourse including instructions and other messages for directing the driver to the destination from the current position. For example:<br><br>The System generates a "Turn List" as described in detail at HAR 1430. |
| a speech generator functionally connected to said discourse generator for generating speech from said discourse provided by said discourse generator, and | TrafficPro includes a speech generator functionally connected to said discourse generator for generating speech from said discourse provided by said discourse generator. For example:<br><br>"You will receive navigation recommendations by voice messages..." (MIT 968).<br><br>Examples of voice responses appear at MIT 968-69. | RB3/RB4 includes a speech generator functionally connected to said discourse generator for generating speech from said discourse provided by said discourse generator. For example:<br><br>"receive visual and voice prompt commands prior to next required route maneuver."<br><br>(http://www.rb4navigation.com/fastfacts.asp/#navigation) | Advanced Audio GPS Navigation System includes a speech generator functionally connected to said discourse generator for generating speech from said discourse provided by said discourse generator. For example:<br><br>The System uses the Turn List to provide both speech and visual prompts as described in detail at HAR 1443 |

-7-

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| voice apparatus functionally connected to said speech generator for communicating said speech provided by said speech generator to said driver. | TrafficPro includes a voice apparatus functionally connected to said speech generator for communicating said speech provided by said speech generator to said driver. For example:<br><br>"16) On which loudspeakers are announcements heard?<br>On all the connected speakers." (MIT 2116). | RB3/RB4 includes a voice apparatus functionally connected to said speech generator for communicating said speech provided by said speech generator to said driver. For example:<br><br>"3-In-1 Functionality – Integrated unit assembly includes AM/FM stereo, CD player and a navigation system."<br><br>"Infinity Sound Systems (Optional) - Designed for Optimum Sound with Harman Infotainment™"<br><br>(http://www.rb4navigation.com/fastf acts.asp#navigation) | Advanced Audio GPS Navigation System includes a voice apparatus functionally connected to said speech generator for communicating said speech provided by said speech generator to said driver. For example:<br><br>The announcement is made through a headset or speakers. (HAR 1402) |
| 7. The automobile navigation system of claim 1 wherein said map database comprises a three-dimensional representation of street topology. | Based on the information provided by Harman to date, MIT currently is unable to determine whether or not the product infringes this claim, and MIT reserves the right to assert this claim with respect to this product after further discovery regarding this issue. | RB3/RB4 includes a three-dimensional representation of street topology. For example:<br><br>System provides altitude information via the GPS sensor in the form of "elevation of the vehicle relative to sea level." (HAR 810) | Advanced Audio GPS Navigation System includes a three-dimensional representation of street topology. For example:<br><br>The Advanced Audio GPS Navigation receiver decodes the signals from the four satellites and compares it to data stored in its memory to locate the motorcycle within ten ft (3M). The receiver calculates the length of time it takes to receive a signal and adds *altitude* to the positional coordinate area. Adding altitude to the latitude and longitude fix adds the third dimension to the positional coordinates (a 3-Dimensional fix). (HAR 1402) |

- 8 -

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| 10. The automobile navigation system of claim 1 wherein said map database includes landmarks such as signs, traffic lights, stop signs and buildings. | TrafficPro includes landmarks such as signs, traffic lights, stop signs and buildings. For example:<br><br>TrafficPro includes buildings such as hospitals and restaurants that are selectable from the database. (HAR 1166-67) | RB3/RB4 includes landmarks such as signs, traffic lights, stop signs and buildings. For example:<br><br>RB4 lists buildings as points of interest, including hospitals, town halls and gas stations. (HAR 798) | Based on the information provided by Harman to date, MIT currently is unable to determine whether or not the product infringes this claim, and MIT reserves the right to assert this claim with respect to this product after further discovery regarding this issue. |
| 11. The automobile navigation system of claim 1 wherein said map database includes lane information. | TrafficPro includes lane information. For example:<br><br>Provides commands to switch lanes when required: "Move into left-hand lane." (See HAR 1177)<br><br>"'Keep right' means that the street will fork and you should follow the indicated direction." (HAR 1178) | Based on the information provided by Harman to date, MIT currently is unable to determine whether or not the product infringes this claim, and MIT reserves the right to assert this claim with respect to this product after further discovery regarding this issue. | Based on the information provided by Harman to date, MIT currently is unable to determine whether or not the product infringes this claim, and MIT reserves the right to assert this claim with respect to this product after further discovery regarding this issue. |
| 13. The automobile navigation system of claim 1 wherein said map database includes expected rate of travel. | TrafficPro includes expected rate of travel. For example:<br><br>"The distance to the next directional announcement and estimated time of arrival will be shown on the right side of the display" (HAR 1154) | RB3/RB4 includes expected rate of travel. For example:<br><br>RB4 includes estimated time of arrival. (HAR 1475) | Advanced Audio GPS Navigation System includes expected rate of travel. For example:<br><br>"the LCD will display the following route information:<br>2. The estimated time of arrival at the destination." (HAR 1442) |

-9-

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| 19. The automobile navigation system of claim 1 wherein said map database includes a database of service locations. | TrafficPro includes a database of service locations. For example:<br><br>"P.O.I. – Point of interest can be accessed via menu operation. (includes Gas Stations, ATM, Hotel and much more)."<br><br>(http://www.trafficpro2.com/features.asp) | RB3/RB4 includes a database of service locations. For example:<br><br>"Points-Of-Interest (POI's) – Select between several categories to find hotels, restaurants, ATM's, gas stations, and many more."<br><br>(http://www.b4navigation.com/fastfacts.asp#navigation) | Advanced Audio GPS Navigation System includes a database of service locations. For example:<br><br>"GPS, or Global Positioning System, is a network of satellites that continually send and receive signals to your Advanced Audio System to inform you not only about where you are and how to get to where you are going, but also about the location of the nearest points of interest, gas stations, restaurants, and rest areas."<br>(http://www.harley-davidson.com/cp/mcoar/en/gps.asp) |
| 20. The automobile navigation system of claim 1 wherein said map database includes a listing of famous places by name. | TrafficPro includes a listing of famous places by name. For example:<br><br>Nationwide Points of Interest are stored, including ski resorts and amusement parks. (HAR 1165-67) | RB3/RB4 includes a listing of famous places by name. For example:<br><br>"Points-Of-Interest (POI's) – Select between several categories to find hotels, restaurants, ATM's, gas stations, and many more."<br><br>(http://www.b4navigation.com/fastfacts.asp#navigation) | Advanced Audio GPS Navigation System includes a listing of famous places by name. For example:<br><br>"GPS, or Global Positioning System, is a network of satellites that continually send and receive signals to your Advanced Audio System to inform you not only about where you are and how to get to where you are going, but also about the location of the nearest points of interest, gas stations, restaurants, and rest areas."<br>(http://www.harley-davidson.com/cp/mcoar/en/gps.asp)<br><br>Includes Points of Interest, Emergency Locations, Harley-Davidson Dealers, etc. (HAR 1436-1440) |

-10-

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| 23. The automobile navigation system of claim 1 wherein the map has minimum accuracy of 10 meters. | Based on the information provided by Harman to date, MIT currently is unable to determine whether or not the product infringes this claim, and MIT reserves the right to assert this claim with respect to this product after further discovery regarding this issue. | Based on the information provided by Harman to date, MIT currently is unable to determine whether or not the product infringes this claim, and MIT reserves the right to assert this claim with respect to this product after further discovery regarding this issue. | Advanced Audio GPS Navigation System includes a map having a minimum accuracy of 10 meters. For example: <br><br> The Advanced Audio GPS Navigation receiver decodes the signals from the four satellites and compares it to data stored in its memory to located the motorcycle within ten ft (3m). (HAR 1402) |
| 27. The automobile navigation system of claim 1 wherein said route finder is adapted to find a best route according to any one of three cost metrics: distance, speed, simplicity. | TrafficPro includes a route finder adapted to find a best route according to any one of three cost metrics: distance, speed, simplicity. For example: <br><br> Modes of route computation - User can select short/quick route, with/without highways, with/without tolls. <br><br> http://www.trafficpro2.com/features.asp <br><br> (See Also HAR 1170-71) | RB3/RB4 includes a route finder adapted to find a best route according to any one of three cost metrics: distance, speed, simplicity. For example: <br><br> "Choose between shortest, quickest and fastest routes with or without highways and toll-ways." | Advanced Audio GPS Navigation System includes a route finder adapted to find a best route according to any one of three cost metrics: distance, speed, simplicity. For example: <br><br> turn lists can be generated for either the shortest distance or for the fastest route to the destination. (HAR 1402) <br><br> In the center panel of the Method display is a list of route features that can be either avoided or included in the turn list. (HAR 1417) |

- 11 -

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| 28. The automobile navigation system of claim 1 wherein said route finder is adapted to calculate a new route if the driver or vehicle navigation system makes an error or if the route is unnavigable due to unforeseen circumstances, wherein said new route does not simply backtrack to the point of the error if a better route from the current location exists. | TrafficPro includes a route finder adapted to calculate a new route if the driver or vehicle navigation system makes an error or if the route is unnavigable due to unforeseen circumstances, wherein said new route does not simply backtrack to the point of the error if a better route from the current location exists. For example:<br><br>"The navigation unit will re-calculate the route if the current route is not followed due to road blocks, diversions, unintentionally driving in the wrong direction or failing to observe the recommendations. NEW ROUTE is displayed while the unit is recalculating the route." (HAR 1172)<br><br>"Traffic Jam is used to calculate an alternate route…" (HAR 1174) | RB3/RB4 includes a route finder adapted to calculate a new route if the driver or vehicle navigation system makes an error or if the route is unnavigable due to unforeseen circumstances, wherein said new route does not simply backtrack to the point of the error if a better route from the current location exists. For example:<br><br>RB4 performs an "Automatic Re-Route Calculation" (HAR 1745) | Advanced Audio GPS Navigation System includes a route finder adapted to calculate a new route if the driver or vehicle navigation system makes an error or if the route is unnavigable due to unforeseen circumstances, wherein said new route does not simply backtrack to the point of the error if a better route from the current location exists. For example:<br><br>"If the rider is unable to follow a navigation direction, the GPS Navigation System will automatically recompile a new route from the current motorcycle location to the original destination." (HAR 1449) |
| 35. The automobile navigation system of claim 1 wherein said position sensing apparatus comprises displacement and direction sensors installed in the automobile. | TrafficPro includes displacement and direction sensors installed in the automobile. For example:<br><br>TrafficPro includes GPS module (antenna and receiver), Map Data from the CD-ROM, Gyroscope and Speedometer signal. (MIT 02115) | RB3/RB4 includes displacement and direction sensors installed in the automobile. For example:<br><br>RB4 includes various sensors including gyroscope, GPS and wheel speed sensors. (HAR 813-14) | Advanced Audio GPS Navigation System includes displacement and direction sensors installed in the automobile. For example:<br><br>System includes various sensors including gyroscope, GPS and wheel speed sensors. (HAR 1419-20) |

-12-

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| 37. The automobile navigation system of claim 1 wherein said position sensing apparatus measures direction with a magnetic compass. | TrafficPro measures direction with a magnetic compass. For example:<br><br>If you leave the digital road network, the system provides a compass arrow that "always indicates the direction towards the destination." (MIT 2115-16) | Based on the information provided by Harman to date, MIT currently is unable to determine whether or not the product infringes this claim, and MIT reserves the right to assert this claim with respect to this product after further discovery regarding this issue. | Advanced Audio GPS Navigation System measures direction with a magnetic compass. For example:<br><br>With the GPS Navigation System, the displays may include a compass arrow and direction icon. (HAR 1413) |
| 40. The automobile navigation system of claim 1 wherein said position sensing apparatus measures direction with a gyroscope. | TrafficPro measures direction with a gyroscope. For example:<br><br>"A built-in gyro sensor measures the vehicle rate of change of the steering angle." (HAR 1153) | RB3/RB4 measures direction with a gyroscope. For example:<br><br>RB4 includes various sensors including a gyroscope. (HAR 814) | Advanced Audio GPS Navigation System measures direction with a gyroscope. For example:<br><br>"The gyroscope sensor data registers the rotation of the GPS Navigation System from one turn to the next." (HAR 1420) |
| 48. The automobile navigation system of claim 1 wherein said driver input means includes means for said driver to demand immediate instructions, or clarification or repetition of instructions already provided. | TrafficPro includes a means for said driver to demand immediate instructions, or clarification or repetition of instructions already provided. For example:<br><br>Info-Key – Displays remaining distance, arrival time, destination and vehicle position.<br><br>(http://www.trafficpro2.com/features.asp)<br><br>"You can hear the last driving recommendation by pressing the left knob []." (HAR 1176) | RB3/RB4 includes a means for said driver to demand immediate instructions, or clarification or repetition of instructions already provided. For example:<br><br>Includes a "RPT" function key that allows the user to "repeat voice instructions at any time." (HAR 1470) | Advanced Audio GPS Navigation System includes a means for said driver to demand immediate instructions, or clarification or repetition of instructions already provided.<br><br>Includes a "Repeat Announcement" feature initiated by pressing the "◄/AUDIO/►" key or the "OK" key. (HAR 1449) |

-13-

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| 49. The automobile navigation system of claim 1 wherein said driver input means includes means for said driver to indicate to said automobile navigation system that a given instruction provided by said system is impossible to complete for some reason and that a new route must be calculated. | TrafficPro includes a means for said driver to indicate to said automobile navigation system that a given instruction provided by said system is impossible to complete for some reason and that a new route must be calculated. For example:<br><br>"The navigation unit will re-calculate the route if the current route is not followed due to road blocks, diversions, unintentionally driving in the wrong direction or failing to observe the recommendations." (HAR 1172)<br><br>Traffic jam is used to calculate an alternate route when the traffic conditions on the selected route are not favorable for driving (e.g. traffic jam or road block)." (HAR 1174) | RB3/RB4 includes a means for said driver to indicate to said automobile navigation system that a given instruction provided by said system is impossible to complete for some reason and that a new route must be calculated. For example:<br><br>System provides a "Detour multifunction button" that allows a driver to calculate an alternate route when the traffic conditions on the selected route are not favorable for driving (e.g. traffic jam or road block)." (HAR 804) | Advanced Audio GPS Navigation System includes a means for said driver to indicate to said automobile navigation system that a given instruction provided by said system is impossible to complete for some reason and that a new route must be calculated. For example:<br><br>Provides a Detour feature that allows the system to calculate a new sub-route in response to user input. (HAR 1446) |
| 53. The automobile navigation system of claim 1 wherein said automobile navigation system informs a driver if an error has been made as detected by the location system. | TrafficPro informs a driver if an error has been made as detected by the location system. For example:<br><br>"The navigation unit will re-calculate the route if the current route is not followed due to road blocks, diversions, unintentionally driving in the wrong direction or failing to observe the recommendations. NEW ROUTE is displayed while the unit is recalculating the route." (HAR 1172) | RB3/RB4 informs a driver if an error has been made as detected by the location system. For example:<br><br>RB4 performs an "Automatic Re-Route Calculation" which provides at least visual information regarding the recalculation. | Advanced Audio GPS Navigation System informs a driver if an error has been made as detected by the location system. For example:<br><br>Automatic rerouting if you miss a turn or exit.<br><br>http://www.harley-davidson.com/gp/moar/en/gps.asp |

- 14 -

| Claim | TrafficPro/TrafficPro II | RB3/RB4 | Advanced Audio GPS Navigation System |
|---|---|---|---|
| 54. The automobile navigation system of claim 1 wherein said discourse generator is responsive to a user-model stored in said computing apparatus to customize discourse to the requirements and preferences of said driver. | TrafficPro includes a discourse generator responsive to a user-model stored in said computing apparatus to customize discourse to the requirements and preferences of said driver. For example:<br><br>Language Selectable- Voice Prompts can be delivered in 3 languages.<br><br>GAL.— Can be selected to vary output volume based on vehicle speed. | RB3/RB4 includes a discourse generator responsive to a user-model stored in said computing apparatus to customize discourse to the requirements and preferences of said driver. For example:<br><br>System includes a set of user-selectable languages, and the system stores the language selected by the driver. (HAR 813) | Advanced Audio GPS Navigation System includes a discourse generator responsive to a user-model stored in said computing apparatus to customize discourse to the requirements and preferences of said driver. For example:<br><br>System allows selection and storage of language preference. (HAR 1416) and units of measurement preference (HAR 1418). |

- 15 -

MIT specifically reserves the right to amend its disclosure and preliminary infringement contentions, including the assertion of additional claims based on the discovery of additional or different information during the course of discovery, which is presently in its early stages and is incomplete.

Respectfully Submitted,

Massachusetts Institute of Technology
By its Attorneys,

Steven M. Bauer (BBO# 542531)
David J. Cerveny (BBO# 638307)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899

November 4, 2005

**CERTIFICATE OF SERVICE**

I certify that on November 4, 2005, I caused a copy of the forgoing document to be served upon counsel of record for Harman International Industries by electronic means by delivery a copy via electronic mail and by sending a copy by First Class Mail.

# Exhibit H

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RECEIPT #_____
AMOUNT $_250. 00_____
SUMMONS ISSUED_____
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK_____
DATE 5-11-05_____

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

      Plaintiff,

v.

HARMAN INTERNATIONAL
INDUSTRIES, INCORPORATED,

      Defendant.

Civil Action No.:

# 05-10990 DPW

## COMPLAINT

Plaintiff Massachusetts Institute of Technology ("MIT"), by its attorneys Proskauer Rose

LLP, brings this action for patent infringement against Harman International Industries, Inc.

("Harman").

### Parties

1.     Plaintiff MIT is an educational and research institution organized under the

corporate laws of the Commonwealth of Massachusetts with a principal place of administration

in Cambridge, Massachusetts.

2.     On information and belief, Defendant Harman is a Delaware corporation with

corporate headquarters at 1101 Pennsylvania Avenue, N.W., Suite 1010, Washington, D.C.

20004, and a principal place of business at 8500 Balboa Blvd., Northridge, CA 91329.

3.     On information and belief, at least two of Harman's subsidiaries and/or divisions

are located within this district.

**Jurisdiction and Venue**

4.      This case arises under the patent laws of the United States, 35 U.S.C. § 1 et seq.

This court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §1331 and

1338.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), and 1400.

**COUNT I**
**Harman's Infringement of U.S. Patent No. 5,177,685**

6.      MIT realleges, and incorporates by reference, the allegations contained in

paragraphs 1 to 5 above.

7.      MIT is the owner of all right, title and interest in and to U.S. Patent No.

5,177,685, entitled "Automobile Navigation System Using Real Time Spoken Driving

Instructions," which issued on January 5, 1993 (the "'685 patent").

8.      On information and belief, Harman manufactures, uses, offers to sell, and sells

products, including but not limited to the Harman/Kardon TrafficPro product, which infringe,

contribute to the infringement of, or induce the infringement of one or more of the claims of the

'685 patent.

9.      MIT has been, and is being, irreparably harmed, and has incurred, and will

continue to incur, damages as a result of Harman's infringement of the '685 patent.

## REQUEST FOR RELIEF

WHEREFORE, MIT prays for judgment against Harman as follows:

(a)    declaring that Harman has infringed the '685 patent;

(b)    awarding MIT all relief available under the patent laws of the United States, including but not limited to monetary damages;

(c)    awarding MIT its costs and reasonable attorney's fees in respect thereto in accordance with 35 U.S.C. §§ 284-85; and

(d)    granting MIT such other relief as the Court deems just and equitable.


## DEMAND FOR JURY TRIAL

MIT demands a trial by jury on all issues so triable.

Respectfully Submitted,

Massachusetts Institute of Technology

By its Attorneys,

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone:  617-526-9600
Fax:     617-526-9899

May 12, 2005

# Exhibit I

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

       Plaintiff,

v.

HARMAN INTERNATIONAL
INDUSTRIES, INCORPORATED,

       Defendant.

Case No: 05-10990 DPW

Hon. Douglas P. Woodlock

## AMENDED COMPLAINT

Plaintiff Massachusetts Institute of Technology ("MIT"), by its attorneys Proskauer Rose

LLP, brings this action for patent infringement against Harman International Industries, Inc.

("Harman").

### Parties

1.    Plaintiff MIT is an educational and research institution organized under the

corporate laws of the Commonwealth of Massachusetts with a principal place of administration

in Cambridge, Massachusetts.

2.    On information and belief, Defendant Harman is a Delaware corporation with

corporate headquarters at 1101 Pennsylvania Avenue, N.W., Suite 1010, Washington, D.C.

20004, and a principal place of business at 8500 Balboa Blvd., Northridge, CA 91329.

3.    On information and belief, at least two of Harman's subsidiaries and/or divisions

are located within this district.

## Jurisdiction and Venue

4.      This case arises under the patent laws of the United States, 35 U.S.C. § 1 et seq. This court has subject matter jurisdiction over this Complaint pursuant to 28 U.S.C. §1331 and 1338.

5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), and 1400.

## COUNT I
### Harman's Infringement of U.S. Patent No. 5,177,685

6.      MIT realleges, and incorporates by reference, the allegations contained in paragraphs 1 to 5 above.

7.      MIT is the owner of all right, title and interest in and to U.S. Patent No. 5,177,685, entitled "Automobile Navigation System Using Real Time Spoken Driving Instructions," which issued on January 5, 1993 (the "'685 patent").

8.      On information and belief, Harman makes, uses, offers to sell, and sells within the United States, and/or imports into the United States, products that infringe the '685 patent, including but not limited to the TrafficPro, Traffic Pro II, RB3, RB4, Advanced Audio GPS Navigation System, and M.O.A.R. products ("Accused Products"). The Accused Products infringe, contribute to the infringement of, or induce the infringement of one or more of the claims of the '685 patent. On information and belief, this infringing activity has been, and continues to be done, with knowledge of the '685 patent, and is willful conduct which would result in enhanced damages under 35 U.S.C. § 284.

9.      MIT has been, and is being, irreparably harmed, and has incurred, and will continue to incur, damages as a result of Harman's willful infringement of the '685 patent.

## REQUEST FOR RELIEF

WHEREFORE, MIT prays for judgment against Harman as follows:

(a)      Declaring that Harman has infringed the '685 patent;

(b)      Awarding MIT all relief available under the patent laws of the United States, including but not limited to monetary damages;

(c)      Awarding MIT its costs and reasonable attorney's fees in respect thereto in accordance with 35 U.S.C. §§ 284-85; and

(d)      Granting MIT such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

MIT demands a trial by jury on all issues so triable.

                                Respectfully Submitted,

                                Massachusetts Institute of Technology

                                By its Attorneys,


                                /s/ Steven M. Bauer
                                Steven M. Bauer (BBO# 542531)
                                Kimberly A. Mottley (BBO# 651190)
                                PROSKAUER ROSE LLP
                                One International Place
                                Boston, Massachusetts 02110-2600
                                Phone:  617-526-9600
                                Fax:     617-526-9899

January 13, 2006

# Exhibit J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**BOSTON DIVISION**

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

                Plaintiff,

      v.

HARMAN INTERNATIONAL INDUSTRIES,
INCORPORATED,
A Delaware Corporation,
                Defendant.

Case No: **05-10990 DPW**
Hon. Douglas P. Woodlock

## HARMAN'S INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1)

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and the Court's Scheduling Order, defendant Harman International Industries, Incorporated ("Harman") makes the following initial disclosures to defendants based upon information reasonably available to Harman at the present time. As additional information becomes available during the course of this action, Harman may exercise its right to supplement these initial disclosures in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## I.    IDENTIFICATION OF INDIVIDUALS

**Rule 26(a)(1)(A):**

**The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of information.**

Based on the information currently available to it, and the information that MIT has disclosed about the claims it is asserting and/or Harman products it is accusing, Harman identifies the following individuals:

| INDIVIDUAL | SUBJECT | LOCATION |
|---|---|---|
| Dr. Joachim Wietzke<br>Professor | Navigation System Creation | Beim Wasserturm 6a<br>Karlsruhe 76228<br>Germany |
| Karl Rauterberg<br>Director, Telematics &<br>Navigation<br><br>Stefan Hanika-Heidl<br>Manager, Digital Map<br><br>Harald Lussen<br>Digital Map | Navigation System Database<br>Structure & Operation | innovative systems Gmbh<br>Navigation-Multimedia<br>Wendenstrsse 130, 20537<br>Hamburg, Germany |
| Axel Brandes<br>Manager, Software<br>Development<br><br>Harald Wellmann<br>Manager, Software<br>Development | Navigation System Software | innovative systems GmbH<br>Navigation-Multimedia<br>Wendenstrsse 130, 20537<br>Hamburg, Germany |
| Guido Jeske<br>Manager, Product Management | Harman Navigation System<br>Customers<br><br>Harman Navigation System<br>Products<br><br>Harman Navigation System<br>Vendors, Suppliers, & | innovative systems GmbH<br>navigation-multimedia<br>Wendenstrsse 130, 20537<br>Hamburg, Germany |

| | Distributors | |
|---|---|---|
| Matt Munn<br>Senior Vice President Sales &<br>Marketing Worldwide<br><br>Tom Butler<br>Account Manager, North<br>America | Harman Navigation Systems,<br>U.S. Sales and Marketing | Harman Becker Automotive<br>Systems, Inc.<br>39001 West 12 Mile Road<br>Farmington Hills, MI 48331 |

3

| David Eelman<br>Director, Finance and<br>Controlling | Harman Navigation Systems,<br>U.S. Financials | Harman Becker Automotive<br>Systems, Inc.<br>1201 South Ohio Street<br>Martinsville, IN 46151 |
|---|---|---|
| Chet Simon<br>Senior Vice President Finance<br><br>Mike Giffin<br>President, Mobile Audio | Harman Consumer Group U.S.<br>U.S. Navigation System Sales | Harman Consumer Group<br>250 Crossways Parkway<br>Woodbury, NY 11797 |
| Jens Molzen<br>Manager, Navigation<br>(Electronic Systems Integration)<br><br>Michael Ruf<br>Vice President Engineering<br>Europe<br><br>Marek Neumann<br>Director Program Management<br>Europe | Harman Navigation Systems<br>Structure, Function and<br>Operation | Harman Becker Automotive<br>Systems GmbH<br>Becker-Göring-Str. 16<br>76307 Karlsbad, Germany |

Harman may identify additional individuals in its document production, its interrogatory responses, and/or in documents produced by MIT.

## II.    PRODUCTION OF DOCUMENTS

### Rule 26(a)(1)(B)

**A copy of, or a description by category and location of all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for the impeachment.**

Harman has identified and gathered documents and things which are currently located at the offices of Kirkland & Ellis International LLP, Maximilianstrasse 11, 80539 Muenchen, Germany, and which are available for inspection and production at a mutually convenient time, subject to the

4

terms of a mutually agreed protective order. Such documents generally fall without limitation into the following categories:

- Hardware and software for the Harman products accused of infringing;

- Design and development documents for the map database in the Harman products accused of infringing;

- Product literature for the Harman products accused of infringing, including manuals and installation guides;

- Documents reflecting the sales volumes of Harman products accused of infringing;

- Financial documents showing U.S. sales volume, revenue, costs, gross and net profits for Harman U.S. navigation system products accused of infringing, to the extent such documents exist.

Harman does not know which claims of the patent-in-suit MIT will assert in this litigation, or the scope that MIT will ascribe to the asserted claims. Harman also does not know the precise number of Harman products that MIT will accuse of infringement, or how MIT contends that such products allegedly infringe. Harman likewise does not know what positions MIT may adopt in support of its allegations relating to validity, infringement, enforceability, willfulness, damages or any other potential relief. Therefore, Harman cannot reasonably identify at this time what additional documents may exist which relate to such positions and claims that may arise in this action. To the extent additional documents and things are hereafter identified, Harman will make those documents and things available for inspection and production at a mutually convenient time, subject to the terms of a mutually agreed protective order.

5

### III.   COMPUTATION OF DAMAGES

**Rule 26(a)(1)(C):**

**A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered.**

Harman seeks damages to the extent permissible under the applicable laws.  At this point, Harman has not determined the nature and extent of the injuries it has suffered and continues to suffer as a result of MIT's allegations of infringement against Harman and its customers.  At a minimum, Harman intends to seek compensatory damages for any injuries resulting from MIT's allegations of infringement and for having to defend against such claims.  Once Harman has received information and documents from MIT, Harman will supplement its disclosure in accordance with Rule 26(e) of the Federal Rules of Civil Procedure or in the form of an interrogatory response.

### IV.   INSURANCE AGREEMENTS

**Rule 26(a)(1)(D):**

**For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

None applicable.

6

Dated:  September 6, 2005                    Respectfully submitted,


                                             /s/ Jamal M. Edwards /s/
                                             Robert J. Muldoon, Jr., BBO# 359480
                                             James W. Matthews, BBO# 560560
                                             Edward S. Cheng, BBO# 634063
                                             Courtney A. Clark, BBO# 651381
                                             **SHERIN AND LODGEN, LLP**
                                             101 Federal Street
                                             Boston, MA 02110

                                             William A. Streff Jr., P.C.
                                             Michelle A. H. Francis
                                             Jamal M. Edwards
                                             **KIRKLAND & ELLIS LLP**
                                             200 East Randolph Drive
                                             Chicago, IL  60601
                                             (312) 861-2000 (phone)
                                             (312) 861-2200 (fax)

                                             *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2005, I caused a true and correct copy

of HARMAN'S INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1) to be served on the

following counsel of record via email with a courtesy copy via U.S. Mail:


Steven M. Bauer, Esq. (sbauer@proskauer.com)
Kimberley A. Mottley, Esq. (kmottley@proskauer.com)
Proskauer Rose LLP
One International Place  14th Floor
Boston, Massachusetts  02110-2600


By: _____
Attorney for Defendant