UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

     Plaintiff,

v.

HARMAN INTERNATIONAL
INDUSTRIES, INCORPORATED,

     Defendant.

Civil Action No.: 05-10990 DPW

## MIT'S MOTION TO COMPEL PRODUCTION OF DISCOVERY AND DEPOSITIONS

Pursuant to Rules 26, 30, 34, and 37 of the Federal Rules of Civil Procedure, and Local Rules 34.1, and 37.1, Plaintiff Massachusetts Institute of Technology ("MIT") hereby moves for an order compelling Defendant Harman International Industries, Inc. ("Harman") and its counsel to stop their obstructionist tactics, and to immediately provide to MIT discovery in a meaningful and cooperative way.

No one likes a discovery dispute, and counsel *should* be able to reach reasonable agreements. Nevertheless, *six months* after MIT served its written discovery requests, and three months since this Court instructed Harman to comply with its obligations to work with MIT to resolve discovery disputes, Harman's counsel *still* attempts at every turn block MIT's ability to discover Harman's case. Harman says its witnesses are only available one per week in Germany; cancels long-scheduled depositions on a week's notice because the witnesses are "busy," refuses to produce documents until days before the depositions are scheduled, tells MIT that witnesses MIT wants to depose know nothing relevant, only months later to flip and say they are 30(b)(6) witnesses, offers witnesses only the week before discovery closes (even though that is still two

months away), and refuses to tell MIT the source of the documents it has produced, forcing MIT

to ask witnesses to go through boxes to identify the documents the witnesses produced from their

own files.

Thus, while MIT has completed its document production, has offered dates for all of its

witnesses' depositions in a coordinated fashion to reduce Harman's travel and expense, and has

offered to identify the source of the documents it has produced, Harman's counsel seem hell-bent

on making discovery as difficult and expensive as possible for MIT.

MIT respectfully requests the Court's assistance in getting Harman's cooperation with

discovery so as not to jeopardize the April 21, 2006 fact discovery deadline.

**I.    Harman's Refusal to a) Produce Documents in a Timely Manner, b) Reveal the
Sources and Custodians of its Documents Produced, and c) Correct the
Confidentiality Designations for those Documents that Have Been Produced.**

**A.    Harman Won't Provide Dates or Any Certainty as to When Important
Documents Will Be Produced.**

MIT served its requests for production of documents on July 26, 2005.  After taking a

first extension, Harman responded on September 6, 2005, agreeing to produce responsive

documents.  (See Exs. 1 & 2.)  In the months that followed, through the end of December,

Harman produced only 6,000 pages of documents to MIT, and a CD containing German

technical documents.

Despite numerous and repeated requests, and without any explanation, Harman's counsel

claims that Harman's U.S. operations waited to send the bulk of their documents to Harman's

counsel until the week of December 19, 2006, *three months* after Harman represented it would

produce such documents.  Harman's counsel then represented that they expected to produce the

documents by December 19, 2006.  (See Ex. 3.)  Harman's counsel then took another month to

review the documents before even starting to make their production on January 17, 2006.  In

January, Harman's counsel finally produced over 80,000 pages of documents to MIT's counsel (much of which is completely irrelevant), on the eve of depositions.

*Remarkably*, Harman's production of its *U.S.* documents is *still* incomplete with depositions noticed a week away, and Harman's counsel will make no promise as to when those documents will be produced. For example, Harman has not yet produced documents collected from David Eelman, its Director of Finance for Harman Becker Automotive Systems, Inc., who Harman identified as having knowledge about Harman's navigation systems and damages in its September 6, 2005 Initial Disclosures. (See Ex. 4.) Harman has provided no explanation for why it has taken Harman *over six months* to get these documents from Mr. Eelman. Mr. Eelman's deposition has been scheduled to take place on February 14, 2006, since January 23, 2006. *Knowing* that his deposition was pending, Harman's counsel apparently is sitting on his documents (admittedly in counsel's possession), waiting for the last possible minute to produce them, so that MIT's counsel is stymied in its review. Harman's counsel refuses even to give MIT's counsel a date certain for this production. Because of this inexplicable delay, MIT's counsel is now forced to postpone the deposition.

Harman also has yet to produce documents from Mr. Naife, Harman's Senior Vice President of Sales and Marketing for North America. Harman's counsel admit that they have had these documents for over a week, yet they refuse to provide a date certain for this production. Of course, MIT has a right to this discovery prior to deposing employees who might be implicated in those documents, but Harman's counsel has offered no justification for the tardiness of this production.

Finally, Harman only just yesterday alerted MIT's counsel to the fact that it has not yet produced correspondence from its German offices based on "German Federal privacy laws."

These document productions are long overdue, and based on Harman's counsel's style -- to keep telling MIT's counsel that they will produce documents "soon," but then delay *ad infinitum*, MIT asks this Court to compel Harman to complete its document production, including the documents from Mr. Eelman, Mr. Naife, and any correspondence files from its German offices, within five days of the Court's order.

### B.    Harman Also Has An Obligation To Identify the Sources and Custodians of its Documents.

In MIT's document requests, MIT specifically asked that Harman "[p]rovide, by document Bates number range, the source of the original documents." (See Ex. 1.) Such a request is standard in a large document case, because otherwise, there is no easy way to know which documents were produced by which witness. Here, Harman has produced approximately 90,000 pages of documents, but generally with no indication of the source of those documents. Harman's counsel refuses to identify the sources and custodians of its documents. Harman's counsel produced documents *en masse,* which were collected from multiple entities, without distinguishing them. Because of this, there is no way for MIT to tell from whose files, or what location, the documents originated.

Federal Rule of Civil Procedure 34 requires parties to produce documents "as they are kept in the usual course of business or [to] organize and label them to correspond with the categories in the request." Fed. R. Civ. P. 34(b). There is no question that the documents produced to MIT were neither labeled to correspond to MIT's requests, nor produced as kept in Harman's business.

4

Harman's counsel refuses to provide this source information, despite MIT's offer to produce like information, suggesting instead that MIT should travel around the country and to Germany, to view the documents at their original locations to itself determine their origin.  This ridiculous game-playing can have no basis other than to increase the cost of litigation.

Other courts have found that productions of this nature, in which documents were "gathered from many people and transferred to [the recipient] in an unintelligible manner" "insufficient under Rule 34(b)" and have held that this type of production does not constitute production of "documents as they were kept in the ordinary course of business." Scripps Clinic and Research Foundation et al. v. Baxter Travenol Labs., Inc. et al., 1988 WL 70013, at *4 (D. Del. 1988) (attached for the Court's convenience as Ex. 5) (compelling producing party to provide an index between the documents produced and individual files, the titles of the files, and the custodial sources of each file).

MIT respectfully requests that this Court order Harman to produce such information immediately.

### C.    Harman Has An Obligation to Properly Designate the Confidentiality of its Documents.

On August 24, 2005, MIT's counsel sent Harman's counsel a draft protective order to govern discovery in this case.  (See Ex. 6.)  By December 2005, Harman and MIT had agreed on all terms in the protective order, and the parties submitted the order to the Court for its endorsement on January 13, 2006.  The Court entered the protective order on January 31, 2006.

Prior to the Court's entry of the protective order, the parties agreed to treat all documents on an attorneys' eyes only basis, until the Court entered the final order.  Because the levels of confidentiality were agreed upon months ago, MIT labeled its document productions with the

confidentiality marking that would be appropriate once the protective order was endorsed by the Court. Harman, however, chose to label every single page of Harman's approximately 90,000 page document production as "Outside Counsel's Eyes Only," with no apparent effort to determine what level of confidentiality properly attaches to each document. Indeed, even Harman's January 2006 productions of over 80,000 pages of its production, sent after the terms of the protective order were agreed upon, bear this designation.

Now that the protective order has issued, Harman's counsel has refused to give MIT a date by which they will review the documents and correctly designate them. Remarkably, Harman's counsel claim that they have done nothing during the past two months of document review to note the confidentiality level which should attach to these documents according to the protective order.

The levels of confidentiality under the protective order govern who MIT's counsel can share Harman's documents with in the preparation of the case. The Court-endorsed protective order requires that "[e]ach document or thing provided to the Receiving Party(ies) …deemed by the Disclosing Entity in good faith to be Confidential Information or Highly Confidential Information…*shall be so identified at the time of service of such discovery* by including on each page the legend 'Confidential' or 'Highly Confidential.'" (See Docket Entry No. 42, p. 3.) The two levels of confidentiality were chosen to allow the parties to share certain documents with their clients. For now, Harman's counsel is sharing documents with their client, while blocking MIT's counsel from sharing similar information with MIT. MIT respectfully requests that the Court order Harman to correctly classify documents immediately.

**II.**    **Harman's Refusal to Agree to a Reasonable and Efficient Deposition Schedule.**

Throughout the course of discovery in this case, Harman's counsel's game-playing and delay tactics in deposition scheduling have been truly remarkable. MIT will not discuss every example herein, as the local rule's page limitations prohibit such a lengthy discussion. However, it is important to note that with two months left in fact discovery, and despite trying to get depositions since October, MIT has yet to 1) take one deposition from Harman; 2) get a firm deposition schedule from Harman; or 3) get Harman to offer witnesses in a manner to reduce the amount of MIT's counsel's travel. For example, Harman is offering three witnesses in Germany, but only on three separate weeks.

Just one of many examples of Harman's counsel's attempt to hide important witnesses and delay depositions is the way in which it handled the deposition of Robert Hart, Harman's Chief Intellectual Property Counsel.

At the very start of discovery in this case, on August 24, 2005, MIT's counsel asked for deposition availability for Mr. Hart, during the weeks of October 3 and 10, 2005. (See Ex. 6.) During the conversations that ensued, Harman's counsel stated that it would not discuss deposition scheduling unless deposition notices were first served. Harman's counsel then stated on multiple occasions that he had discussed with Mr. Hart his knowledge relevant to the litigation, and the information was such that Mr. Hart did not have discoverable information to form the basis of a deposition in the case. MIT's counsel, to its detriment, relied on Harman's counsel's assertions, and the fact that Mr. Hart was not listed on Harman's initial disclosures as support for those statements, in deciding not to pursue Mr. Hart for deposition at that time.

***Remarkably, now, months later,*** Harman's counsel have not only identified Mr. Hart as having discoverable information (without formally updating their initial disclosures, which are

deficient as is discussed below), but have stated that he will serve as a 30(b)(6) witness as to multiple categories of the 30(b)(6) notice. *Moreover*, Harman's counsel claim that Mr. Hart has only two dates of availability for the remainder of fact discovery – one, on the holiday April 17, in California (which would require counsel to travel on Easter Sunday), and the other on the day before the close of fact discovery, April 20, in Las Vegas. Notably, Mr. Hart is sitting in on the depositions of MIT's witnesses.

Most recently, Harman has called off Mr. Giffin's deposition, scheduled for February 15, at the last minute (citing "urgent business issues" that had come up). Harman's counsel also has made Mr. Eelman's February 14 deposition an impossibility, by refusing to produce his documents in a timely manner, as discussed above. (They are still not produced, with the deposition less than a week away.)

Harman's counsel's tactics seem to include attempting at every turn to run up the bill for MIT, an academic institution whose resources are dwarfed by that of Harman. These tactics include offering witnesses' depositions so far apart from each other that it would require three trips to Chicago to depose four witnesses (the weeks of February 14, 21, and April 3), three trips to Germany to depose four witnesses (the weeks of March 13, 20, and 27), and an additional trip to either California or Las Vegas to depose another witness who has no trouble attending all the depositions in Boston as a spectator.

Indeed, with respect to the witnesses in Germany, Harman's counsel even refuses to work with MIT's counsel to minimize travel time and expense by scheduling multiple depositions to take place on the same day, either with different attorneys taking and defending each, or back-to-back on the same day, without demanding that MIT limit its total deposition time for a day to 8 hours, regardless of the number of witnesses deposed.

Certainly, all the witnesses involved in this suit are busy people – including each of the five MIT witnesses who have already complied with their obligations. However, compliance with discovery obligations is not something to be done at a party's pleasure – Harman must take seriously these obligations, and counsel must work together to complete discovery in the most efficient and reasonable manner they can. Notably, Harman is no innocent bystander, dragged into litigation – it filed suit first, in Chicago, fully cognizant of the costs and burdens of litigation.

MIT respectfully requests that this Court order Harman: 1) to produce for deposition in Chicago Mr. Eelman, Mr. Giffin, Mr. Rodamski, and Mr. Naife during the week of March 6, 2006; 2) to produce for deposition in Germany Dr. Wietzke, Mr. Brandes, Mr. Jeske, and Mr. Hanika-Heidel, as individuals and in their capacities as 30(b)(6) witnesses for Harman, during the week of March 13, 2006; and 3) to produce Mr. Hart for deposition on another date in the month of March, for his deposition as an individual and 30(b)(6) witness on Harman's behalf.

III.    **Harman's Refusal to Supplement its Written Discovery Responses.**

A final example of Harman's counsel's discovery games at their worst is Harman's refusal to produce to MIT any discovery relating to willful infringement. Until very recently, Harman claimed willful infringement was "not in the case," despite the facts that:

1)      MIT's Complaint sought "all relief available under the patent laws of the United States," which include enhanced damages for willful infringement;

2)      MIT's counsel stated in writing, on numerous occasions, that willful infringement was part of MIT's allegations (thus, clearing up any concern about MIT's notice pleading); and

3)    MIT's Answer to Harman's Counterclaim specifically alleged that "the '685 patent is valid, enforceable, and has been and/or is being *willfully infringed by Harman*."  (See Docket Entry No. 32.)

Remarkably, this was not enough for Harman's counsel.  Rather, they insisted that MIT "amend" its complaint to more explicitly plead willful infringement before they would provide discovery on the issue.  Because it was easier to do that than file a motion to compel, MIT did amend its complaint, and it was only after that that Harman produced its willful infringement documents.  (MIT notes that Harman now, incredibly, asks that these documents be returned until some later date -- but it does not say why MIT should have to wait longer to get the documents, when they have already been produced.)

Indicative of the hide-the-ball strategy Harman's counsel has employed throughout discovery in this case, despite producing the documents, Harman's counsel still refuses to tell MIT when they will update their initial disclosures to identify knowledgeable witnesses as to this issue.  The game-playing has got to stop.  With the close of fact discovery two months away, the exchange of documents and information must be complete so that MIT can meaningfully depose Harman's fact witnesses and move forward with this case.

(Notably, Harman's counsel have stated that they will be producing no additional documents relevant to willful infringement, saying additional documents would be entered on a privilege log.)

Thus, MIT respectfully requests that the Court order Harman to supplement its initial disclosures with the information it *concedes* it has withheld in this case, based on MIT's claims of willful infringement.

\*            \*            \*

Other discovery issues remain outstanding which MIT's counsel is still trying to resolve with Harman's counsel, and which MIT may ask the Court to address at a later date. MIT raises these particular issues with the Court now as they most directly impact MIT's ability to move forward with discovery in this case at this time.

### REQUEST FOR RELIEF

WHEREFORE, MIT respectfully requests that this Court issue an order:

(1)    Requiring Harman to complete its document production within five days of this Court's order;

(2)    Requiring Harman to identify, by Bates number range, the source location, source file, and custodian of the documents it has produced, immediately;

(3)    Order Harman to produce replacement copies of its documents, labeled with the confidentiality designations as set forth in the Court ordered protective order, immediately;

(4)    Order Harman to produce to produce for deposition in Chicago Mr. Eelman, Mr. Giffin, Mr. Rodamski, and Mr. Naife during the week of March 6, 2006; 2) to produce for deposition in Germany Dr. Wietzke, Mr. Brandes, Mr. Jeske, and Mr. Hanika-Heidel, as individuals and in their capacities as 30(b)(6) witnesses for Harman, during the week of March 13, 2006; and 3) to produce Mr. Hart for deposition on another date in the month of March, for his deposition as an individual and 30(b)(6) witness on Harman's behalf;

(5)    Order Harman to supplement its initial disclosures immediately, based on MIT's Amended Complaint; and

(6)    Order such other and further relief as the Court deems equitable and/or appropriate.

**Compliance with Local Rules 7.1 and 37.1**

MIT's counsel and Harman's counsel discussed the matters raised therein in

conversations in January 2006, through February 6, 2006, attempting to resolve these disputes.

As the disputes remain unresolved, MIT now seeks the Court's assistance.

Respectfully Submitted,

Massachusetts Institute of Technology,
By its Attorneys,

/s/ Steven M. Bauer
Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
John W. Pint (BBO# 660548)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone:  617-526-9600
Fax:    617-526-9899

February 7, 2006

**CERTIFICATE OF SERVICE**

I certify that on February 7, 2006, I caused a copy of the forgoing document to be served upon counsel of record for Harman International Industries by electronic means using the Court's ECF system.

/s/ Steven M. Bauer
Steven M. Bauer

12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )  Civil Action No. 05-10990 DPW |

### MIT'S FIRST REQUEST FOR THE
### PRODUCTION OF DOCUMENTS AND THINGS (1-26)

Plaintiff Massachusetts Institute of Technology ("MIT"), pursuant to Rule 34 of the

Federal Rules of Civil Procedure, hereby requests that Defendant Harman International

Industries, Inc. ("Harman") produce for inspection and copying the documents and tangible

things identified below.  Such documents and things shall be produced within thirty (30) days of

service of these requests at the office of PROSKAUER ROSE LLP, One International Place, 22nd

Floor, Boston, MA 02110 or at another mutually convenient location.

These requests are to be deemed continuing and any information secured subsequent to

service of such documents and things must be furnished with supplemental responses upon

receipt of such information in accordance with Federal Rule of Civil Procedure 26(e).

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this request for documents and things is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. For purposes of these document requests, the following definitions, regardless of whether the defined word is capitalized, shall apply:

A.     "MIT" means the Massachusetts Institute of Technology, including its servants, agents, representatives, employees, principals, attorneys, and all other persons, forms or corporations acting with it or on its behalf.

B.     "Harman" means Harman International Industries, Inc., including its servants, agents, representatives, employees, principals, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, successors-in-interest, and all other persons, forms or corporations acting with it or on its behalf.

C.     "'685 Patent" means U.S. Patent No. 5,177,685.

D.     The term "prior art" encompasses, by way of example and without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102-03.

E.     "Automobile navigation system product[s] or service[s]" refers to any product or service, or portion or component thereof which provides or is designed to provide real-time spoken driving instructions. The term includes, but is not limited to, products or services, or portions or components thereof capable of being installed by an automobile manufacturer or independently of an automobile manufacturer. The term includes, but is not limited to, Harman's TrafficPro® brand of automobile navigation system, its TrafficPro II™ brand of automobile navigation system, its RB3 and RB4 brands of automobile navigation system, and

equipment or components made, used, or sold by Harman for use in the Porsche®
Communication Management System.

F.    "All" means "any and all."

G.    Any word written in the singular shall be construed as plural and vice versa.

H.    "Concerning" means referring to, relating to, describing, evidencing, or
constituting.

I.    As used herein, the term "Document[s]" shall be synonymous in meaning and
equal in scope to the usage of the term in Fed. R. Civ. P. 34(a).  Electronic correspondence is
also included within the meaning of this term.  A draft or non-identical copy is a separate
document within the meaning of this term.

J.    As used herein, the term "or" means "and/or."

K.    As used herein, the term "Communication[s]" means all letters, memoranda, notes
and messages, whether printed, typed or handwritten, including but not limited to all electronic
modes of correspondence such as electronic mail and faxes, and including documents reflecting
conversations and meetings.

L.    "Person" means any natural person or juridical person including any corporation,
partnership, sole proprietorship, agency, or business association of any type or character.

M.    As used herein, the term "Identify" means:

a)    with respect to persons, give, to the extent known, the person's full name,
present or last known address, and when referring to a natural person, the present or last known
place of employment, his/her title and position with that employer; and

b)        with respect to documents, give, to the extent known, the: (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

<u>INSTRUCTIONS</u>

A.        When a claim of privilege is asserted in the objection to any request or any subpart thereof, and any document is not provided on the basis of that assertion, identify in the objection the nature of the privilege that is being claimed with respect to each such document.  If the privilege is being asserted in the connection with a claim or defense governed by state law, indicate the particular privilege rule that is being invoked.

B.        When an objection is made to any request, or subpart thereof, state with specificity all grounds for the objection.

C.        With respect to each document which is withheld from production for any reason, provide a statement setting forth:

(i)        the name and title of the author(s);

(ii)       the name and title of the person(s) to whom the document was addressed;

(iii)      the name and title of the person(s) to whom copies of the document were sent;

(iv)      the date on which the document was written or otherwise produced and the date on which it was mailed, sent or delivered to its addressees;

(v)       the number of pages contained in the document;

(vi)      a brief description of the nature and subject matter;

(vii)     the grounds upon which it is being withheld; and

(viii)    the paragraph number to which the document is otherwise responsive.

D.      When a document contains both privileged and non-privileged material, the non-privileged material should be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, specifically indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and person performing the redaction or alteration.  Any notice of redaction must be clearly visible on the redacted document.

E.      If production of any requested document is objected to on the grounds that production is unduly burdensome, set forth the burden or expense of the proposed discovery and why Harman contends that the burden or expense outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues, as set forth in Fed. R. Civ. P. 26(b)(2).

F.      If requested documents are maintained in a file, the file folder is included in the request for production of those documents.

G.      For all documents produced by Harman in this litigation,

   1.      Provide, by document Bates number range, the source of the original documents;

   2.      Provide a log of all documents withheld on grounds of privilege; and

   3.      Describe the company's document retention policies and efforts to preserve e-mail and other electronic documents responsive to MIT's discovery requests.

<u>DOCUMENT REQUESTS</u>

<u>REQUEST NO. 1:</u>

All documents and things concerning the scope, validity, infringement, or enforceability of the '685 Patent.

<u>RESPONSE TO REQUEST NO. 1:</u>


<u>REQUEST NO. 2:</u>

All documents and things concerning any search, investigation, review, opinion, study, analysis, event or reference concerning, without limitation, the scope, validity, infringement or enforceability of the '685 Patent, including but not limited to, opinions, summaries, notes, memoranda, or the equivalent prepared by Harman or any of its representatives.

<u>RESPONSE TO REQUEST NO. 2:</u>


<u>REQUEST NO. 3:</u>

All documents ever considered, evaluated, or possessed by Harman regarding the scope, novelty, patentability, validity, or enforceability of the subject matter disclosed and claimed in the '685 Patent.

<u>RESPONSE TO REQUEST NO. 3:</u>

REQUEST NO. 4:

All documents and things tending to support or refute any argument by Harman that the
'685 Patent is invalid, void, and/or unenforceable under the patent laws of the United States,
Title 35 of the United States Code.

RESPONSE TO REQUEST NO. 4:


REQUEST NO. 5:

All prior art patents and publications that Harman considers pertinent to the subject matter of the
'685 Patent.

RESPONSE TO REQUEST NO. 5:


REQUEST NO. 6:

All documents and things concerning Harman's first awareness of the '685 Patent.

RESPONSE TO REQUEST NO. 6:


REQUEST NO. 7:

All documents and things concerning any of Harman's efforts, after Harman became aware of
the '685 Patent, to modify any automobile navigation system products or services used,
manufactured, or sold by Harman.

RESPONSE TO REQUEST NO. 7:

REQUEST NO. 8:

All documents and things concerning the design, development, manufacture, marketing, sale or offer for sale of any automobile navigation system products or services used, manufactured or sold by Harman, including but not limited to: all laboratory notebooks, test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental versions of such products.

RESPONSE TO REQUEST NO. 8:


REQUEST NO. 9:

If Harman contends that its automobile navigation system products and services do not infringe the '685 Patent, all documents and things that support or refute such a contention.

RESPONSE TO REQUEST NO. 9:


REQUEST NO. 10:

All documents concerning comparisons of any automobile navigation system product or service manufactured or sold by Harman, and any of the claims of the '685 Patent.

RESPONSE TO REQUEST NO. 10:

REQUEST NO. 11:

All documents concerning any plans, commitments, projections or reports relating to Harman's future production capacity for any automobile navigation system products or services.

RESPONSE TO REQUEST NO. 11:


REQUEST NO. 12:

All documents concerning the promotion, advertisement, demonstration, marketing and sale of any automobile navigation system products or services used, manufactured or sold by Harman, including, but not limited to: all advertising, press releases, product announcements, bulletins, solicitations, articles, speech or lecture texts, sales presentations, PowerPoint presentations, product brochures, memoranda, and catalogs.

RESPONSE TO REQUEST NO. 12:


REQUEST NO. 13:

All documents concerning any communication with, or relating to, any agent, dealer, wholesaler, distributor, customer, or potential customer of any automobile navigation system products or services, in the United States, or any other person, concerning transfers or projected transfers of such products in the United States, including without limitation, costs and sales, and anticipated or actual sales.

RESPONSE TO REQUEST NO. 13:

REQUEST NO. 14:

All documents sufficient to identify all prospective, existing and past customers of any

automobile navigation system products or services, including documents concerning the

dissemination of promotional materials for such products including, but not limited to: mailing

lists, tear sheets, and periodicals in which promotional materials have appeared.

RESPONSE TO REQUEST NO. 14


REQUEST NO. 15:

All documents comprising pricing, price quotes, price lists, price announcements, actual prices,

or projected prices, paid by, or expected to be paid by, customers for any automobile navigation

system products or services.

RESPONSE TO REQUEST NO. 15:


REQUEST NO: 16:

All documents concerning communications, whether to or from suppliers or customers or any

other persons, that relate to MIT or the subject matter of the '685 Patent.

RESPONSE TO REQUEST NO. 16:


REQUEST NO. 17:

All documents concerning any policy, guideline or agreement of Harman with respect to patent

procurement, patent licensing and royalty rates.

RESPONSE TO REQUEST NO. 17:

<u>REQUEST NO. 18:</u>

All documents concerning any communication by or to persons other than MIT asserting patent infringement by Harman.

<u>RESPONSE TO REQUEST NO. 18:</u>


<u>REQUEST NO. 19:</u>

All documents passing between Harman and any person who Harman expects to offer testimony of at trial in this action, including, without limitation, any expert witness.

<u>RESPONSE TO REQUEST NO. 19:</u>


<u>REQUEST NO. 20:</u>

All documents and things reviewed, considered or relied upon by any experts retained by Harman in connection with this matter or that are a basis for each opinion to be reached by such experts.

<u>RESPONSE TO REQUEST NO. 20:</u>


<u>REQUEST NO. 21:</u>

All documents and things, including but not limited to, reports, studies, books, articles or publications prepared by each expert retained by Harman in this matter concerning the subject matter about which such expert is expected to testify.

<u>RESPONSE TO REQUEST NO. 21:</u>

REQUEST NO. 22:

A sample of each automobile navigation system product or service, used, manufactured or sold by Harman.

RESPONSE TO REQUEST NO. 22:

REQUEST NO. 23:

All documents and things Harman may use or intend to rely upon at trial.

RESPONSE TO REQUEST NO. 23:

REQUEST NO. 24:

All documents and things identified, relied upon, or referred to in response to MIT's First Set of Interrogatories.

RESPONSE TO REQUEST NO. 24:

REQUEST NO. 25:

Documents sufficient to reflect Harman's document retention policies or practices over the past two (2) years.

RESPONSE TO REQUEST NO. 25:

REQUEST NO. 26:

Copies of organizational charts sufficient to show Harman's organizational structures and

corporate management over the past two (2) years.

RESPONSE TO REQUEST NO. 26:


                                        MASSACHUSETTS INSTITUTE OF
                                        TECHNOLOGY,

                                        By its Counsel,


                                        *Kimberly A. Mottley*
                                        Steven M. Bauer (BBO #542531)
                                        Kimberly A. Mottley (BBO #651190)
                                        PROSKAUER ROSE LLP
                                        One International Place
                                        Boston, MA  02110
                                        Tel: (617) 526-9600
                                        Fax: (617) 526-9899

Dated:  July 26, 2005


**Certificate of Service**

        I hereby certify that on July 26, 2005, a true and correct copy of the foregoing document
was served upon opposing counsel by hand.

                                        *Kimberly A. Mottley*
                                        Kimberly A. Mottley

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No(s).: 05-10990 DPW<br>)<br>)<br>)<br>)<br>)<br>) |

## HARMAN'S RESPONSES TO MIT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS (1-26)

Defendant Harman International Industries, Incorporated ("Harman") responds to plaintiff Massachusetts Institute of Technology's ("MIT") First Request For The Production Of Documents And Things (1-26) with the answers and objections set forth below. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Harman reserves the right to supplement these responses and its production of documents to the extent it learns of additional responsive information and/or documents.

## GENERAL OBJECTIONS

Harman incorporates the following General Objections into its response to each Request for Production. Each of Harman's responses is made without waiver of or prejudice to these general objections.

1.      Harman objects to MIT's First Request For Production Of Documents And Things to the extent it seeks information and/or documents protected by the attorney–client

privilege, the attorney work product doctrine, or Rule 26(b)(3) of the Federal Rules of Civil Procedure. Any information or documents withheld on these grounds will be identified on a separate privilege schedule. With respect to any privileged or work product documents that were created or that came into being after the initiation of this lawsuit, Harman objects to listing any such documents on a privilege schedule because to do so would be unduly burdensome, would chill Harman in its communications with its attorneys about the subject matter of this litigation, and would abrogate Harman's work product privilege in this matter. For example, if Harman had to schedule documents that were created or that came into being after the initiation of this lawsuit, before Harman could communicate in writing with its attorneys about the subject matter of this litigation, Harman would be forced to make a choice between (a) confining its communications with its attorneys to oral communications, or (b) running the risk of abrogating its attorney work product privilege by having to provide plaintiffs with a log of each written communication it has with its attorneys.

2.     Harman objects to MIT's First Request For Production Of Documents And Things to the extent it seeks information and/or documents constituting trade secrets or other confidential research, development, or commercial information, including without limitation internal marketing, financial, strategic and customer information, within the meaning of Fed. R. Civ. P. 26(c). *See Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 578-89 (N.D. Ga. 1989) ("Courts have consistently held that marketing information is confidential commercial information and have afforded it some protection from discovery.") (citing *American Standard v. Pfizer, Inc.*, 828 F.2d 734 (Fed. Cir. 1987)). The parties are negotiating an agreed protective order. Once the Court enters the agreed protective order, the balance of the responsive, non–privileged documents will be produced.

3.     Harman objects to MIT's First Request For Production Of Documents And Things to the extent it purports to impose upon Harman duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure or the local rules of this Court.

4.     Harman objects to MIT's First Request For Production Of Documents And Things to the extent it seeks to limit the documents or information that Harman may rely upon at trial in this matter. Harman's fact investigation, discovery and trial preparations are continuing, and Harman reserves the right to provide additional information and supplement its production of documents in response to these requests.

5.     Harman will make its document production available to MIT for inspection and copying at MIT's expense at the offices of Kirkland & Ellis nearest the site where the documents can be found.

6.     Harman objects to MIT's definition of "Harman" to the extent it includes in the term "subsidiaries" and any officers, directors, agents, servants, employees, etc. of those companies which are not related to this action. Harman will respond only on behalf of the entities disclosed in Harman's initial disclosures.

7.     Harman objects to MIT's definition of "automobile navigation system product[s] or service[s]" overly broad, unduly burdensome, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny. As defined, "automobile navigation system product[s] or service[s]" includes products or services that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. MIT is not permitted "to conduct 'fishing expeditions' in hopes of finding

products that might be infringing. . . ." *Moore U.S.A., Inc., v. Standard Register Co.*, 229 F.3d 1091, 1116 (Fed. Cir. 2000).

8.    Harman objects to these requests to the extent that they seek information already known to MIT, or available to MIT from documents in its own files or from public sources, or that Harman provided to MIT during the parties' 2 years of negotiations.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST NO. 1:

All documents and things concerning the scope, validity, infringement, or enforceability of the '685 Patent.

### RESPONSE TO REQUEST NO. 1:

Harman objects to Request No. 1 insofar as it purports to suggest that the '685 patent is something other than invalid, not infringed, and unenforceable as detailed in Harman's numerous presentations and correspondence throughout the parties' 2 years of negotiations, each of which is incorporated by reference.  Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

### REQUEST NO. 2:

All documents and things concerning any search, investigation, review, opinion, study, analysis, event or reference concerning, without limitation, the scope, validity, infringement or enforceability of the '685 Patent, including but not limited to, opinions, summaries, notes, memoranda, or the equivalent prepared by Harman or any of its representatives.

### RESPONSE TO REQUEST NO. 2:

Harman objects to Request No. 2 insofar as it purports to suggest that the '685 patent is something other than invalid, not infringed, and unenforceable as detailed in Harman's numerous presentations and correspondence throughout the parties' 2 years of negotiations, each of which

4

is incorporated by reference.  Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 3:**

All documents ever considered, evaluated, or possessed by Harman regarding the scope, novelty, patentability, validity, or enforceability of the subject matter disclosed and claimed in the '685 Patent.

**RESPONSE TO REQUEST NO. 3:**

Harman objects to Request No. 3 insofar as it purports to suggest that the '685 patent is something other than invalid, not infringed, and unenforceable as detailed in Harman's numerous presentations and correspondence throughout the parties' 2 years of negotiations, each of which is incorporated by reference.  Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 4:**

All documents and things tending to support or refute any argument by Harman that the '685 Patent is invalid, void, and/or unenforceable under the patent laws of the United States, Title 35 of the United States Code.

**RESPONSE TO REQUEST NO. 4:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 5:**

All prior art patents and publications that Harman considers pertinent to the subject matter of the '685 Patent.

**RESPONSE TO REQUEST NO. 5:**

Harman objects to Request No. 5 as vague and ambiguous as to the phrase "pertinent to the subject matter of the '685 Patent." Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents that establish the invalidity, unenforceability and/or non-infringement of the patent-in-suit.

**REQUEST NO. 6:**

All documents and things concerning Harman's first awareness of the '685 Patent.

**RESPONSE TO REQUEST NO. 6:**

Harman objects to Request No. 6 as not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 7:**

All documents and things concerning any of Harman's efforts, after Harman became aware of the '685 Patent, to modify any automobile navigation system products or services used, manufactured, or sold by Harman.

**RESPONSE TO REQUEST NO. 7:**

Harman objects to Request No. 7 as not reasonably calculated to lead to the discovery of admissible evidence. Harman further objects to this Request as overly broad, unduly burdensome, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Harman further objects to this Request as impermissible under Rule 407 of the

Federal Rules of Evidence to the extent it seeks documents related to any subsequent remedial measures Harman may or may not have taken.

**REQUEST NO. 8:**

All documents and things concerning the design, development, manufacture, marketing, sale or offer for sale of any automobile navigation system products or services used, manufactured or sold by Harman, including but not limited to: all laboratory notebooks, test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental versions of such products.

**RESPONSE TO REQUEST NO. 8:**

Harman objects to Request No. 8 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

**REQUEST NO. 9:**

If Harman contends that its automobile navigation system products and services do not infringe the '685 Patent, all documents and things that support or refute such a contention.

**RESPONSE TO REQUEST NO. 9:**

Harman objects to Request No. 9 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations

under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny. "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

**REQUEST NO. 10:**

All documents concerning comparisons of any automobile navigation system product or service manufactured or sold by Harman, and any of the claims of the '685 Patent.

**RESPONSE TO REQUEST NO. 10:**

Harman objects to Request No. 10 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence because MIT has not identified any asserted claim from the 58 claims of the patent-in-suit and because this Request is counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system product or service manufactured or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

**REQUEST NO. 11:**

All documents concerning any plans, commitments, projections or reports relating to Harman's future production capacity for any automobile navigation system products or services.

**RESPONSE TO REQUEST NO. 11:**

Harman objects to Request No. 11 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "any plans, commitments, projections or reports." Harman further objects to this Request as counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman.

**REQUEST NO. 12:**

All documents concerning the promotion, advertisement, demonstration, marketing and sale of any automobile navigation system products or services used, manufactured or sold by Harman, including, but not limited to: all advertising, press releases, product announcements, bulletins, solicitations, articles, speech or lecture texts, sales presentations, PowerPoint presentations, product brochures, memoranda, and catalogs.

**RESPONSE TO REQUEST NO. 12:**

Harman objects to Request No. 12 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections,

9

Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

## REQUEST NO. 13:

All documents concerning any communication with, or relating to, any agent, dealer, wholesaler, distributor, customer, or potential customer of any automobile navigation system products or services, in the United States, or any other person, concerning transfers or projected transfers of such products in the United States, including without limitation, costs and sales, and anticipated or actual sales.

## RESPONSE TO REQUEST NO. 13:

Harman objects to Request No. 13 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "transfers or projected transfers" and fails to specify a time period. Harman further objects to this request as counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement.

## REQUEST NO. 14:

All documents sufficient to identify all prospective, existing and past customers of any automobile navigation system products or services, including documents concerning the dissemination of promotional materials for such products including, but not limited to: mailing lists, tear sheets, and periodicals in which promotional materials have appeared.

## RESPONSE TO REQUEST NO. 14:

Harman objects to Request No. 14 as not reasonably calculated to lead to the discovery of admissible evidence as Harman's "all prospective, existing and past customers" are not relevant

to any claim or defense.   Harman further objects to this Request as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny:  "[A]ny automobile navigation system products or services includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman.

## REQUEST NO. 15:

All documents comprising pricing, price quotes, price lists, price announcements, actual prices, or projected prices, paid by, or expected to be paid by, customers for any automobile navigation system products or services.

## RESPONSE TO REQUEST NO. 15:

Harman objects to Request No. 15 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny:   "[A]ny automobile navigation system products or services" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman.

## REQUEST NO: 16:

All documents concerning communications, whether to or from suppliers or customers or any other persons, that relate to MIT or the subject matter of the '685 Patent.

**RESPONSE TO REQUEST NO. 16:**

Harman objects to Request No. 16 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks documents unrelated to the patent-in-suit and/or without specifying a time frame. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents concerning communications that relate to the '685 Patent.

**REQUEST NO. 17:**

All documents concerning any policy, guideline or agreement of Harman with respect to patent procurement, patent licensing and royalty rates.

**RESPONSE TO REQUEST NO. 17:**

Harman objects to Request No. 17 as overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence insofar as it seeks all "patent procurement, patent licensing and royalty rates."

**REQUEST NO. 18:**

All documents concerning any communication by or to persons other than MIT asserting patent infringement by Harman.

**RESPONSE TO REQUEST NO. 18:**

Harman objects to Request No. 18 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. Harman further objects to this Request to the extent it seeks evidence that would not be admissible under Federal Rule of Evidence 404.

**REQUEST NO. 19:**

All documents passing between Harman and any person who Harman expects to offer testimony of at trial in this action, including, without limitation, any expert witness.

12

**RESPONSE TO REQUEST NO. 19:**

Harman objects to Request No. 19 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order.  *See* August 4, 2005 Hearing Tr. at 13-15.

**REQUEST NO. 20:**

All documents and things reviewed, considered or relied upon by any experts retained by Harman in connection with this matter or that are a basis for each opinion to be reached by such experts.

**RESPONSE TO REQUEST NO. 20:**

Harman objects to Request No. 20 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order.  *See* August 4, 2005 Hearing Tr. at 13-15.  Harman further objects to this Request to the extent it seeks privileged documents and things regarding a non-testifying expert.  *See* Fed. R. Civ. P. 26(b)(3) and (4); *Edward Lowe Industries, Inc. v. Oil-Dri Corporation of America*, 1995 WL 399712, *2-3 (N.D. Ill. 1995) (tests done on allegedly infringing products protected as reports of non-testifying expert under Rule 26(b)(4)(B)); *Oueen's University at Kingston v. Kinedyne Corp.*, 161 F.R.D. 443, (D. Kan. 1995) (expert report regarding opposing party's patent protected under Rule 26(b)(4)(B)); *Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994) (documents prepared by non-testifying accounting expert constituted privileged work product under Rule 26(b)(3)).

**REQUEST NO. 21:**

All documents and things, including but not limited to, reports, studies, books, articles or publications prepared by each expert retained by Harman in this matter concerning the subject matter about which such expert is expected to testify.

**RESPONSE TO REQUEST NO. 21:**

Harman objects to Request No. 21 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order. *See* August 4, 2005 Hearing Tr. at 13-15. Harman further objects to this Request to the extent it seeks privileged documents and things regarding a non-testifying expert. *See* Fed. R. Civ. P. 26(b)(3) and (4); *Edward Lowe Industries, Inc. v. Oil-Dri Corporation of America*, 1995 WL 399712, *2-3 (N.D. Ill. 1995) (tests done on allegedly infringing products protected as reports of non-testifying expert under Rule 26(b)(4)(B)); *Oueen's University at Kingston v. Kinedyne Corp.*, 161 F.R.D. 443, (D. Kan. 1995) (expert report regarding opposing party's patent protected under Rule 26(b)(4)(B)); *Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994) (documents prepared by non-testifying accounting expert constituted privileged work product under Rule 26(b)(3)). Harman further objects to this Request to the extent it calls for documents and things that MIT can ascertain through materials already in MIT's custody or control or materials that are as readily available to MIT as Harman, or materials created by MIT.

**REQUEST NO. 22:**

A sample of each automobile navigation system product or service, used, manufactured or sold by Harman.

**RESPONSE TO REQUEST NO. 22:**

Harman objects to Request No. 22 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny:  "[E]ach automobile navigation system product or service, [sic] used, manufactured or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman.  Subject to its asserted objections, Harman will produce existing, responsive, non-privileged representative samples of its United States TrafficPro®, Rb3/Rb4® and M.O.A.R. products.

**REQUEST NO. 23:**

All documents and things Harman may use or intend to rely upon at trial.

**RESPONSE TO REQUEST NO. 23:**

Harman objects to Request No. 23 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order.  *See* August 4, 2005 Hearing Tr. at 13-15.  Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 24:**

All documents and things identified, relied upon, or referred to in response to MIT's First Set of Interrogatories.

**RESPONSE TO REQUEST NO. 24:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 25:**

Documents sufficient to reflect Harman's document retention policies or practices over the past two (2) years.

**RESPONSE TO REQUEST NO. 25:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 26:**

Copies of organizational charts sufficient to show Harman's organizational structures and corporate management over the past two (2) years.

**RESPONSE TO REQUEST NO. 26:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

Dated:  September 6, 2005               Respectfully submitted,


/s/ Jamal M. Edwards /s/
Robert J. Muldoon, Jr., BBO# 359480
James W. Matthews, BBO# 560560
Edward S. Cheng, BBO# 634063
Courtney A. Clark, BBO# 651381
**SHERIN AND LODGEN, LLP**
101 Federal Street
Boston, MA 02110

William A. Streff Jr., P.C.
Michelle A. H. Francis
Jamal M. Edwards
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2005, I caused a true and correct copy of HARMAN'S RESPONSES TO MIT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS (1-26) to be served on the following counsel of record via email with a courtesy copy via U.S. Mail:


Steven M. Bauer, Esq. (sbauer@proskauer.com)
Kimberley A. Mottley, Esq. (kmottley@proskauer.com)
Proskauer Rose LLP
One International Place  14th Floor
Boston, Massachusetts  02110-2600




By: _____
Attorney for Defendant

**Mottley, Kimberly**

| | |
|---|---|
| **From:** | Jamal Edwards [jedwards@kirkland.com] |
| **Sent:** | Thursday, December 08, 2005 3:25 PM |
| **To:** | Cerveny, David |
| **Cc:** | Harman-mit@kirkland.com; MIT_Harman |
| **Subject:** | RE: MIT v. Harman - Discovery |

Dave:

I am pleased we were able to make additional progress on discovery issues.  To confirm, we addressed the following:

I. Document Production

I advised you that Harman will be producing additional responsive documents from our Farmington Hills location the week of December 19.  Assuming we receive the documents next week as expected, we should be able to produce them to MIT by Monday December 19.  I expect most of the documents will be produced on DVD. I expect these documents to include the following:  customer specifications and correspondence, design plans and marketing/sales proposals and presentations, RFQs, quotes, end-user complaints and OEM customer complaints, and any additional documents that may be found after a reasonable search based on Harman's understanding of MIT's claims and requests.

I expect our product samples to be ready by December 19.   We also have some additional paper documents that will be produced at that time, which were also collected from our Farmington Hills office.

You confirmed that MIT believes it has produced all responsive, non-privileged documents in its possession, custody or control, including documents from Mr. Swartz's, Mr. Call's and Dr. Davis' files.  We will continue reviewing the documents received to date and will respond in writing regarding any deficiencies we notice.

II. Claim Construction/Contentions

We agreed we would confirm with our clients that the parties will agree to extend until January 20, 2006, the previously agreed January 4, 2006 deadline for exchange of proposed claim elements for construction and preliminary claim construction.  This will allow both parties time to prepare and present their preliminary claim construction positions to each other so that the parties may determine where an agreement might be reached and to narrow the issues for construction by the Court.  You stated that MIT's pleading will contain substantive responses to Harman's interrogatories Nos. 1-5.  The parties will meet and confer on or around February 3, 2005, to discuss claim construction positions and room for agreement.

III. MIT's Supplemental Interrogatory Responses

You stated that you were nearly finished preparing MIT's supplemental responses to Harman's interrogatories Nos. 6-7, and that we could expect to receive them next week.  You agreed to report back with a definitive date tomorrow.

IV. Depositions

We agreed that we would plan our first round of depositions for the week of January 9.  Harman proposes that Mr. Swartz' deposition occur on Monday, Jan 9, and that the depositions of Harman's two witnesses occur on Jan 11 and 12.  All three depositions will occur at Kirkland's Chicago office.  You agreed to confirm Mr. Swartz' availability on January 9, 2006.

You also stated that you would check with Dr. Davis to confirm his availability for the Week of January 23. You stated that MIT would prefer his deposition to occur in Boston. Please confirm his availability as soon as possible.

We also agreed to work toward developing a tentative deposition schedule for all outstanding fact depositions by January 6. This will allow us time to discuss during our first round of depositions the week of January 9.

We agreed that further depositions, including Harman's 30(b)(6) will not occur until after February 3, 2006, thus allowing time for the parties to receive and confer about each others propose claim constructions, infringement contentions and invalidity positions. Harman will make every effort to present its 30(b)(6) designees soon thereafter, and we will work diligently to present dates in February that will work for both parties. We should confer again about potential dates when we discuss our tentative deposition schedule on January 6, and during our first round of depositions.

V. Amendment of Pleadings

We discussed a stipulated amendment of the complaint whereby MIT will amend only to allege willful infringement and infringement by import. You stated that MIT would agree to a very narrow amendment whereby MIT will limit its amendment to parroting the language of the statute regarding willful infringement and infringement by import into the United States. I told you that Harman was not inclined to agree to a shortened answer period, but that we would consider stipulating to answering only in response to MIT's narrow amendments, and that the amendment will not toll or delay the currently agreed schedule. We both agreed to confer again with our clients on this point and to confirm our agreement by e-mail afterwards.

As discussed, we both recognize that the proposals and agreements made during our call are subject to final approval by our clients and respective superiors. Nonetheless, it appears that we have made significant progress and I look forward to continued progress in the future.

Thanks for your cooperation,

Jamal.

**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**

200 East Randolph Drive ♦ 53rd Floor |Chicago, IL 60601 | 312.861.2464 **Direct** | 312.861.2200 **FAX**

**www.kirkland.com/jedwards**

---

| | |
|---|---|
| **"Cerveny, David" <dcerveny@proskauer.com>** | To "Jamal Edwards" <jedwards@kirkland.com> |
| | CC Harman-mit@kirkland.com, "MIT_Harman" <MIT_Harman@proskauer.com> |
| 12/07/2005 04:31 PM | Subject RE: MIT v. Harman - Discovery |

Jamal,

Your response is a step in the right direction, but we need to ensure that outstanding discovery issues are resolved in a timely and reasonable manner. We are available tomorrow at noon est/11 cst to discuss all open discovery issues. During that meeting and as part of any broader resolution, we expect Harman to commit to a

definitive schedule for the completion of outstanding discovery, including document production dates, the scheduling of initial depositions, and a deadline for finalizing all remaining dates for the other noticed depositions.

Dave

---

**From:** Jamal Edwards [mailto:jedwards@kirkland.com]
**Sent:** Wednesday, December 07, 2005 3:24 PM
**To:** Cerveny, David
**Cc:** Harman-mit@kirkland.com; MIT_Harman
**Subject:** Re: MIT v. Harman - Discovery

Dave

Please let me know if my response yesterday does not address your concerns; and, if so, please confirm that you'll be available to discuss tomorrow at 11:00a CST.

Thanks,

Jamal.

**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**

200 East Randolph Drive ♦ 53rd Floor │Chicago, IL 60601 | 312.861.2464 **Direct** │ 312.861.2200 **FAX**

**www.kirkland.com/jedwards**

"Cerveny, David" <dcerveny@proskauer.com>

12/05/2005 07:24 PM

To  "Jamal Edwards" <jedwards@kirkland.com>

cc  "MIT_Harman" <MIT_Harman@proskauer.com>, Harman-mit@kirkland.com

Subject  MIT v. Harman - Discovery

Jamal,
It has now been more than two weeks since we agreed to a resolution of many of the outstanding discovery disputes, but, since then, Harman has not taken any action to follow through with those agreements. Last Tuesday, November 29, 2005, you indicated that Harman would be serving its amended initial disclosures today, that you would have deposition dates for Harman's 30(b)(6) deposition, and that you would have deposition dates for the two initial individual depositions that we had tentatively scheduled for the week of December 19, 2005 (which is now less than two weeks away).  As you did not contact me today as I requested in my email of this morning to discuss the status of discovery, I presume that Harman does not have those dates and will not be serving its revised initial disclosures today.

Once again, we are in a position where we can no longer wait for Harman to comply with its discovery obligations, which it has continually failed to do for months on end. Thus, unless the parties reach a definitive agreement - no later than 5:00 p.m. e.s.t. on Wednesday, December 7, 2005 - regarding the scheduling of the noticed depositions, the scheduling of the remaining document production, the production of documents related to willfulness, and the other issues that the parties addressed two weeks ago, as outlined in my summary letter dated November 23, 2005, MIT plans to file a motion to compel.

We remain open to resolving these issues by agreement, but the issues must be finally resolved or we will seek an order from the Court directing that they be resolved.

David J. Cerveny
Proskauer Rose LLP
One International Place
Boston, Massachusetts  02110-2600
Tel:  617-526-9621
Fax: 617-526-9899
dcerveny@proskauer.com

This email message and any attachments are confidential and may be privileged. If you are not the intended recipient, please notify the sender immediately by replying to this message and destroy all copies of this message and any attachments. Thank you.

-----------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

====================================================================================

*********************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee.  It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful.  If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*********************************************************

-----------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

====================================================================================

*********************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee.  It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited

and may be unlawful.  If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
***********************************************************

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

## BOSTON DIVISION

| | |
|---|---|
| **MASSACHUSETTS INSTITUTE OF TECHNOLOGY,**<br><br>           **Plaintiff,**<br><br>     **v.**<br><br>**HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,**<br>A Delaware Corporation,<br>           **Defendant.** | Case No: **05-10990 DPW**<br>**Hon. Douglas P. Woodlock** |

## HARMAN'S INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1)

Pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure and the Court's Scheduling Order, defendant Harman International Industries, Incorporated ("Harman") makes the following initial disclosures to defendants based upon information reasonably available to Harman at the present time. As additional information becomes available during the course of this action, Harman may exercise its right to supplement these initial disclosures in accordance with Rule 26(e) of the Federal Rules of Civil Procedure.

## I.    IDENTIFICATION OF INDIVIDUALS

**Rule 26(a)(1)(A):**

**The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of information.**

Based on the information currently available to it, and the information that MIT has disclosed about the claims it is asserting and/or Harman products it is accusing, Harman identifies the following individuals:

| INDIVIDUAL | SUBJECT | LOCATION |
|---|---|---|
| Dr. Joachim Wietzke<br>Professor | Navigation System Creation | Beim Wasserturm 6a<br>Karlsruhe 76228<br>Germany |
| Karl Rauterberg<br>Director, Telematics &<br>Navigation<br><br>Stefan Hanika-Heidl<br>Manager, Digital Map<br><br>Harald Lussen<br>Digital Map | Navigation System Database<br>Structure & Operation | innovative systems Gmbh<br>Navigation-Multimedia<br>Wendenstrsse 130, 20537<br>Hamburg, Germany |
| Axel Brandes<br>Manager, Software<br>Development<br><br>Harald Wellmann<br>Manager, Software<br>Development | Navigation System Software | innovative systems GmbH<br>Navigation-Multimedia<br>Wendenstrsse 130, 20537<br>Hamburg, Germany |
| Guido Jeske<br>Manager, Product Management | Harman Navigation System<br>Customers<br><br>Harman Navigation System<br>Products<br><br>Harman Navigation System<br>Vendors, Suppliers, & | innovative systems GmbH<br>navigation-multimedia<br>Wendenstrsse 130, 20537<br>Hamburg, Germany |

|  | Distributors |  |
|---|---|---|
| Matt Munn<br>Senior Vice President Sales &<br>Marketing Worldwide<br><br>Tom Butler<br>Account Manager, North<br>America | Harman Navigation Systems,<br>U.S. Sales and Marketing | Harman Becker Automotive<br>Systems, Inc.<br>39001 West 12 Mile Road<br>Farmington Hills, MI 48331 |

| David Eelman<br>Director, Finance and<br>Controlling | Harman Navigation Systems,<br>U.S. Financials | Harman Becker Automotive<br>Systems, Inc.<br>1201 South Ohio Street<br>Martinsville, IN 46151 |
|---|---|---|
| Chet Simon<br>Senior Vice President Finance<br><br>Mike Giffin<br>President, Mobile Audio | Harman Consumer Group U.S.<br>U.S. Navigation System Sales | Harman Consumer Group<br>250 Crossways Parkway<br>Woodbury, NY 11797 |
| Jens Molzen<br>Manager, Navigation<br>(Electronic Systems Integration)<br><br>Michael Ruf<br>Vice President Engineering<br>Europe<br><br>Marek Neumann<br>Director Program Management<br>Europe | Harman Navigation Systems<br>Structure, Function and<br>Operation | Harman Becker Automotive<br>Systems GmbH<br>Becker-Göring-Str. 16<br>76307 Karlsbad, Germany |

Harman may identify additional individuals in its document production, its interrogatory responses, and/or in documents produced by MIT.

## II.    PRODUCTION OF DOCUMENTS

### Rule 26(a)(1)(B)

**A copy of, or a description by category and location of all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for the impeachment.**

Harman has identified and gathered documents and things which are currently located at the offices of Kirkland & Ellis International LLP, Maximilianstrasse 11, 80539 Muenchen, Germany, and which are available for inspection and production at a mutually convenient time, subject to the

terms of a mutually agreed protective order. Such documents generally fall without limitation into the following categories:

- Hardware and software for the Harman products accused of infringing;

- Design and development documents for the map database in the Harman products accused of infringing;

- Product literature for the Harman products accused of infringing, including manuals and installation guides;

- Documents reflecting the sales volumes of Harman products accused of infringing;

- Financial documents showing U.S. sales volume, revenue, costs, gross and net profits for Harman U.S. navigation system products accused of infringing, to the extent such documents exist.

Harman does not know which claims of the patent-in-suit MIT will assert in this litigation, or the scope that MIT will ascribe to the asserted claims. Harman also does not know the precise number of Harman products that MIT will accuse of infringment, or how MIT contends that such products allegedly infringe. Harman likewise does not know what positions MIT may adopt in support of its allegations relating to validity, infringement, enforceability, willfulness, damages or any other potential relief. Therefore, Harman cannot reasonably identify at this time what additional documents may exist which relate to such positions and claims that may arise in this action. To the extent additional documents and things are hereafter identified, Harman will make those documents and things available for inspection and production at a mutually convenient time, subject to the terms of a mutually agreed protective order.

### III.  COMPUTATION OF DAMAGES

**Rule 26(a)(1)(C):**

**A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure on which such computation is based, including materials bearing on the nature and extent of injuries suffered.**

Harman seeks damages to the extent permissible under the applicable laws.  At this point, Harman has not determined the nature and extent of the injuries it has suffered and continues to suffer as a result of MIT's allegations of infringement against Harman and its customers.  At a minimum, Harman intends to seek compensatory damages for any injuries resulting from MIT's allegations of infringement and for having to defend against such claims.  Once Harman has received information and documents from MIT, Harman will supplement its disclosure in accordance with Rule 26(e) of the Federal Rules of Civil Procedure or in the form of an interrogatory response.

### IV.  INSURANCE AGREEMENTS

**Rule 26(a)(1)(D):**

**For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

None applicable.

Dated:  September 6, 2005          Respectfully submitted,


/s/ Jamal M. Edwards /s/
Robert J. Muldoon, Jr., BBO# 359480
James W. Matthews, BBO# 560560
Edward S. Cheng, BBO# 634063
Courtney A. Clark, BBO# 651381
**SHERIN AND LODGEN, LLP**
101 Federal Street
Boston, MA 02110

William A. Streff Jr., P.C.
Michelle A. H. Francis
Jamal M. Edwards
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 6, 2005, I caused a true and correct copy

of HARMAN'S INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1) to be served on the

following counsel of record via email with a courtesy copy via U.S. Mail:


Steven M. Bauer, Esq. (sbauer@proskauer.com)
Kimberley A. Mottley, Esq. (kmottley@proskauer.com)
Proskauer Rose LLP
One International Place  14th Floor
Boston, Massachusetts  02110-2600


By: _____
Attorney for Defendant

Westlaw.

Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1988 WL 70013 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
SCRIPPS CLINIC AND RESEARCH
FOUNDATION, and Rorer Group, Inc., Plaintiffs,
v.
BAXTER TRAVENOL LABORATORIES, INC.,
and Travenol Laboratories, Inc., Defendants.
**CIV.A. No. 87-140-CMW.**

June 21, 1988.

Gregory A. Inskip, Potter, Anderson & Corroon
Wilmington, Delaware. (Eugene Moroz, Esquire,
Kurt E. Richter, Esquire and William S. Feiler,
Morgan & Finnegan, New York City, of counsel), for
plaintiffs.
Allen M. Terrell, Jr., Richards, Layton & Finger
Wilmington, Del., (Granger Cook, Jr., Esquire and Dean
A. Monco, Cook, Wetzel & Egan, Ltd., Chicago, Ill.,
and Paul C. Flattery, and Robert E. Hartenberger,
Baxter Travenol Laboratories, Inc., Deerfield, Ill., of
counsel), for defendants.

OPINION

CALEB M. WRIGHT, Senior District Judge.
**\*1** This discovery dispute arises out of a patent
infringement suit brought by Scripps Clinic and
Research Foundation and Rorer Group, Inc.
("Scripps") against Baxter Travenol, Inc., and
Travenol Laboratories, Inc. ("Baxter"). The dispute
centers on alleged deficiencies in the discovery
responses of both parties during an exchange of
responses on February 6, 1988. Baxter filed a
motion under Federal Rule of Civil Procedure 37 to
compel supplemental responses to its interrogatories
and requests for documents, and to compel the
production of certain deposition transcripts and
exhibits generated in other ongoing patent
infringement suits filed by Scripps to enforce the
patent at issue. Scripps then filed a motion to
compel Baxter to index more than 45,000 documents
which Baxter had produced in response to Scripps'
document requests.

*1. Baxter's Motion to Compel Supplemental
Responses to Its Interrogatories*

Baxter moves the Court to compel Scripps to
supplement its responses to interrogatories numbers
1-2, 4-5, 11-12, 22-23, 27-29, 37-39, 46, 48-49, and
51-52. Scripps declined to offer any specific answer
to any of these interrogatories and instead stated in
each case some form of the statement, "Without
waiving any objection plaintiffs will produce
documents pursuant to Fed.R.Civ.P. 33(c) in lieu of
identification." *See, e.g.* Plaintiffs' Response to
Interr. No. 2.

In support of its answers, Scripps relies on Federal
Rule of Civil Procedure 33(c), which gives a
responding party the option of producing business
records in answer to an interrogatory. Specifically,
Rule 33(c) states:

Where the answer to an interrogatory may be derived
or ascertained from the business records of the party
... and the burden of ascertaining the answer is
substantially the same for the party serving the
interrogatory as for the party served, it is a sufficient
answer to such interrogatory to *specify the records
from which the answer may be derived or
ascertained.... A specification shall be in sufficient
detail to permit the interrogating party to locate and
to identify, as readily as can the party served, the
records* from which the answer may be obtained.

(emphasis added). Scripps' responses are
insufficient under this rule because they contain no
specification of records at all.

Scripps produced approximately 6,700 documents in
response to Baxter's requests. In the interrogatory
answers at issue, Scripps offered no specific answers
to the disputed questions; rather, it just referred to
the boxes of documents. Referring to 6,700
documents does not constitute "specify[ing] the
records," and is insufficient to allow Baxter "to locate
and to identify, as readily as can [Scripps[, the
records from which the answer may be obtained."
Fed.R.Civ.P. 33(c). Scripps clearly did not meet its
"duty to specify" the records. Fed.R.Civ.P. 33(c)
advisory committee's note. It did not even
affirmatively state that the answers to the
interrogatories could be found in the documents. As
the Advisory Committee to the Federal Rules has
noted: "respond[ing] by directing the interrogating
party to a mass of business records ... [is an] abuse of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                            Page 2
Not Reported in F.Supp., 1988 WL 70013 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

the option." *Id.* As such, Scripps' answers are clearly insufficient and must be supplemented.

In addition, the Court notes that Scripps attempted to use its ability to answer the interrogatories as a bargaining chip in its attempts to convince Baxter to index the document production that is the subject of Scripps' Motion to Compel. In correspondence between counsel, Scripps stated, "Plaintiffs are in the process of completing a list indicating which production documents are responsive to Baxter's various document requests and stand ready to exchange our list with Baxter should Baxter reconsider its position." Letter to Baxter counsel, Feb. 18, 1988. Discovery is not a game in which one party's answers are balanced against the other party's answers. There are rules that govern discovery. Rule 33(c) allows parties to opt to produce business records to aid in answering the interrogatories, not to avoid answering them. Scripps must specify the documents that contain the answers to the interrogatories irrespective of Baxter's behavior. Finally, since it appears from this correspondence that some sort of index exists, it should be produced. L.R. 4.1C.

**\*2** Baxter also moves the Court to compel Scripps to answer interrogatories 51 and 52, in which Baxter seeks the names of everyone who was consulted in order to answer the interrogatories, as well as everyone who had control or custody of any documents produced in response to the interrogatories. Scripps objects to these interrogatories as being unduly broad and burdensome, and as seeking irrelevant information. The Court will grant Baxter's motion to compel responses to these interrogatories. Rule 26(b) specifies as discoverable subject matter "the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Baxter's requests fall squarely within the scope of this Rule and must be answered by Scripps.

Baxter also moves the Court to compel responses to interrogatories numbers 3(c), 3(d), 8-10, 16-18(b), 20, 25-26, and 42-44. Scripps objected to these interrogatories on various grounds, including their being unduly broad and burdensome and not calculated to lead to admissible evidence. Because the parties did not address these issues in their briefs, however, the Court is without sufficient knowledge to rule on the propriety of the interrogatories. Consequently, the Court will deny Baxter's motion

without prejudice with respect to those interrogatories.

## II. *Baxter's Motion to Compel Supplemental Responses to Its Document Requests*

Baxter seeks to compel Scripps to supplement its answers to document request numbers 1, 4, 7, 14, 17-18, 20-21, 23, 37-38, 45, 47-49, 51, 54-55, 58, 60, and 64-66. The only grounds addressed in the briefs was that Scripps "artificially" limited many of its responses to documents produced on or before December 14, 1981, the date of application of the original patent.

Rule 26(b) limits the scope of document discovery to documents that are relevant to a claim or defense or that appear "reasonably calculated to lead to the discovery of admissible evidence." Scripps limited its responses to document requests numbers 4, 7, 14, 38, 45, 48-49, 54, and 60 to documents generated before December 14, 1981, claiming that documents created after that date are irrelevant. Scripps also limited its response to request number 20 to documents created prior to October 22, 1985, the date of application for the reissue patent. These limitations are improper because Baxter has asserted many defenses concerning the validity of the patent, including inequitable conduct, that may be influenced by events which occurred after the date of application. Therefore, Scripps' responses to these requests are insufficient and must be supplemented. Baxter also objected to Scripps' limiting its responses to requests numbers 21 and 23 to documents created before October 14, 1981. Baxter limited its requests to that time frame, however, and thus Scripps correctly limited its response.

Baxter also moves the Court to compel further responses to document requests numbers 1, 17-18, 37, 47, 51, 55, 58, and 64-66. Request number 1 covers the documents necessary to answer Baxter's interrogatories. Because the procedures for producing documents under Rule 33(c) and Rule 34 are the same under Local Rule 4.1C, all documents will be produced under the interrogatories in the same fashion as they would be under the document request, thus making this document request not necessary. Because the parties did not specifically address the remaining disputed requests in their briefs, the Court is without sufficient knowledge to rule on their propriety, and will consequently deny Baxter's motion without prejudice with respect to those requests.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                          Page 3
Not Reported in F.Supp., 1988 WL 70013 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

III. *Baxter's Motion to Compel the Production of Deposition Transcripts and Exhibits From Other Suits*

**\*3** In 1983, Scripps filed several other patent infringement suits in the Northern District of California against Genentech, Inc., Chiron Corp., and Miles Laboratories, Inc. Baxter seeks to obtain the transcripts of and exhibits produced during the deposition of certain Scripps employees and other witnesses. Scripps objects to the production of these documents on several grounds, all of which are insufficient.

Scripps first alleges that because Baxter refused to cooperate in coordinating discovery with the other defendants it should not be permitted to now obtain the fruits of such discovery. Baxter correctly points out that the instant suit was filed more than three years after the California suits, and consequently has a much different procedural posture than the other suits. Furthermore, pretrial rulings in the other suits altered the scope of discovery in those actions. These different circumstances indicate that Baxter did not engage in bad faith by refusing to coordinate its discovery and that its action should not influence the requested production.

Scripps next argues that if Baxter is permitted to discover the transcripts and exhibits, it should not be permitted to redepose the same witnesses because Rule 26 prohibits cumulative, duplicative, and burdensome depositions. Baxter has a right to take the depositions itself in order to develop its case properly. Possessing prior transcripts may actually enable Baxter to shorten the depositions by addressing only more important areas. Thus, because the depositions will be taken by a new party, Rule 26 does not prevent their being taken.

Scripps further argues that many documents fall under protective orders entered in the other actions. This would be a serious problem had not Baxter agreed to limit its discovery to depositions of certain Scripps' witnesses, such as Dr. Zimmerman, the inventor of the patented process. Thus, Baxter will not be exposed to any confidential information concerning the defendants in the other suits.

Scripps' final point concerns the time and effort expended by counsel for Scripps and the other defendants in taking the depositions. The Court agrees that Baxter should not be a "free rider,"

benefiting from the past work done by the other parties. Therefore, the Court will grant Baxter's motion to compel but will order that Baxter shall pay for the transcripts and exhibits at a rate greater than that for the normal production of documents. The Court will be available for consultation if the parties cannot work out an agreement.

IV. *Scripps' Motion to Compel Baxter to Index its Responses*

Baxter produced more than 45,000 documents in response to Scripps' document requests. The documents originated in two facilities and were gathered from several departments. Affidavit of Michael J. Griffith. All responsive non-privileged documents were produced, with the exception of marketing and research documents pertaining to plasma-derived Factor VIII:C and recombinant DNA-produced Factor VIII:C. Baxter claims to have produced the documents " as they are kept in the usual course of business." Fed.R.Civ.P. 34(b).

**\*4** Scripps seeks to compel Baxter to index the documents. It claims that although the documents were arranged in bundles within each of the 15 boxes, most of the bundles contained no designation as to the origin of the file, the name of the file, or whether the bundle contained documents from multiple files. It also alleges that the subject matter of documents in any one bundle was often varied. As such, Scripps contends that the files were not presented in a way that would allow it to make a reasonable use of them, and that they were not produced as actually kept in the ordinary course of business. Scripps requests the Court to order Baxter to provide an index between the documents and individual files, the title of each file, and the custodial source of each file.

Rule 34(b) gives Baxter the option of either producing documents as they are ordinarily kept or of organizing and labeling them to correspond to the request. It is obvious that Baxter did not organize the documents to correspond to the individual requests. Baxter also failed, however, to produce the documents as they were kept in the ordinary course of business. The documents were gathered from many people and transferred to Scripps in an unintelligible manner. This is insufficient under Rule 34(b), which has the same requirements of organization in producing documents as does Rule 33(c). Fed.R.Civ.P. 34(b) advisory committee's note; L.R. 4.1C. Therefore, Scripps' motion is granted.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 4
Not Reported in F.Supp., 1988 WL 70013 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**


An Order will issue in accordance with this Opinion.

D.Del.,1988.
Scripps Clinic and Research Foundation v. Baxter
Travenol Laboratories, Inc.
Not Reported in F.Supp., 1988 WL 70013 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:87cv00140 (Docket) (Mar. 20, 1987)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Mottley, Kimberly**

| | |
|---|---|
| **From:** | Mottley, Kimberly |
| **Sent:** | Wednesday, August 24, 2005 4:07 PM |
| **To:** | 'Jamal Edwards' |
| **Subject:** | MIT/Harman |

**Attachments:**     Proposed Protective Order(v1).DOC

Hi Jamal -

I write to follow-up on next steps for discovery in this case.

First, can you please confirm that we will receive Harman's initial disclosures on Tuesday, September 6?  (The scheduling order calls for them on Sunday, the 4th, but that is during the holiday weekend.)

Also, I understand from your July 28, 2005 email that Harman may consider MIT's discovery requests served as of August 2, 2005, rather than on July 26, 2005 (the date they were served on your local counsel).  While we disagree with this calculation, and think Harman's discovery responses are actually due tomorrow, we would be willing to grant an extension to allow Harman to provide responses to MIT's requests through September 1, 2005 (30 days from August 2, 2005) if you need one.  Please confirm that we will receive responses by that date.

With the document production upcoming, we should discuss mode of production for this case.  In this high-tech world, I've found it helpful and cost-effective to use electronic document exchange, rather than paper document productions.  Can you please let me know whether your client will be willing to handle document discovery this way?  This would mean we'd exchange CDs with the TIFF image files of each page produced, and an upload file (showing where each TIFF page file is connected to the next to form documents).

We also should start discussing the protective order needed in this case.  Attached is a draft agreement to get us started on these discussions.

Finally, in order to start planning dates on our calendars for depositions, please let me know when Robert Hart and John Peracchio would be available for depositions the weeks of October 3 and October 10.

Please let me know when you are available to discuss these issues.  I am generally available through the end of the week.

Thanks.

Kim

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place - 22nd Floor
Boston, MA 02210
Tel.  617-526-9616
Fax. 617-526-9899
kmottley@proskauer.com



Proposed
Protective Order(v1)..