UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br><br>Defendant. | Civil Action No.: 05-10990 DPW<br><br>Magistrate Judge Judith G. Dein |

**MIT'S OPPOSITION TO HARMAN'S MOTION FOR PROTECTIVE ORDER**

MIT hereby opposes Harman's motion for protective order (Docket No. 58), where Harman seeks to avoid producing *any* relevant internal documents from the electronic files of its German employees, by hiding behind a German privacy law which has no bearing on the discovery sought. Indeed, Harman now appears to concede that in the ***eight months*** in which Harman has had MIT's discovery requests, Harman has not undertaken *any* efforts to collect relevant and responsive documents relating to technical, sales or marketing information about the accused products from the electronic correspondence files of its German employees whom Harman has identified as potential trial witnesses in this case. This is important -- it is not that MIT is seeking documents from thousands of Harman employees -- MIT is merely seeking the relevant documents from the 14 employees that *Harman* identified as having relevant knowledge. *Apparently, Harman has not even interviewed these witnesses to collect such documents.*

1

German privacy law has no application to this case. Specifically, the German Federal Data Protection Act, or Bundesdatenschutzgesetz ("BDSG"), does *not* bar discovery of Harman's German employees' electronic correspondence. MIT is entitled to discovery of the relevant and responsive documents within Harman's *identified* witnesses' electronic correspondence for at least the following reasons:

1) <u>Harman mischaracterizes the scope of MIT's discovery requests</u>: MIT is not seeking electronic correspondence from all "3,000+ employees" in Harman's German offices. MIT only requests discovery of the employees Harman identified as having discoverable information (especially those individuals Harman has identified as likely trial witnesses on its behalf);

2) <u>Harman is obligated to request responsive documents from its German employees</u>: Harman was obligated to confer with its German employees ***eight months ago*** to determine if they had any information responsive to MIT's discovery requests. No "privacy" law prevented Harman from taking at least this step before now. Indeed, any potential conflict with the BDSG would not arise unless and until any such employee refused to produce documents;

3) <u>The BDSG is inapplicable to email</u>: The email MIT seeks in its discovery requests is not "personal data" as protected under the BDSG, and has already been "collected" and "transferred" in the ordinary course of Harman's operations;

4) <u>Even if the BDSG applied, discovery of Harman's German employees' emails are exempted from the Act</u>: Section 28 contains an exception that allows for the use and transfer of the employees' "personal data," based on the interests of MIT in this litigation which outweigh Harman's German employees' – at this time not even expressed – interests in blocking discovery of relevant email correspondence; and

5) <u>Even if there is a conflict of laws, consideration of the relevant factors favors MIT</u>: The factors considered in conflict of laws situations weigh in MIT's favor. Importantly, MIT's requests seek documents which go to the heart of MIT's case (technical and financial information about the accused infringing products), and any emails containing this information should be produced.

I.  **<u>Harman Overstates the Scope of MIT's Discovery Requests.</u>**

MIT seeks discovery only from those individuals likely to possess discoverable information – not, as Harman argues, every one of Harman's 3,000 German employees. Harman has identified in its discovery responses and initial disclosures only "fourteen German

2

individuals" who may have relevant information. Harman's description of MIT's requests as a "fishing expedition through Harman's German employees' files… [and an]…unprecedented collection and review" of the electronic correspondence of all Harman's German employees is an extreme exaggeration. (Harman's Motion (Docket Entry No. 58), at 2.)

It is only the fourteen identified individuals that the Court needs to address at this stage, assuming Harman's counsel made the appropriate inquiry as it was required to do under the Federal Rules in identifying these individuals. Harman's claim that MIT has not identified the specific documents it seeks twists the facts upside down, given that Harman has not disclosed what types of documents it is withholding, and refuses to produce a log identifying those documents.

**II.     Harman Is Obligated To Request Responsive Documents
         From Its German Employees Possessing Discoverable Information.**

Before filing this motion for protective order, Harman's counsel offered, in lieu of producing the necessary documents, to simply meet with the witnesses it has identified as having discoverable information (including those it has identified as trial witnesses), and "request" that those witnesses turn over any responsive documents. Harman offered to do this minimal effort, however, only if MIT agreed that this would be the extent of Harman's efforts to collect such documents. (See Ex. A) What Harman "offered" to do, however, is significantly less than what the Rules require, and indeed, is what Harman should have done *months* ago, without the need for any agreement from MIT.

There is no reason that Harman has not made this request of its employees before now. Who knows -- the employees may all produce the necessary documents or consent to their production by Harman, and the motion would be moot. But until Harman takes even the minimal steps the Federal Rules require, MIT cannot waive its right to compel the production of

3

documents, or allow the whim of Harman's German employees to control what documents MIT in fact gets. Indeed, it is impossible to determine if any conflict of law exists here until Harman meets with its employees, and asks if they will voluntarily produce the discovery MIT seeks.

### III.    The BDSG Is Inapplicable to Business Related Electronic Correspondence.

The BDSG is inapplicable to this case. Notably, Harman offers no evidence on the German law, or how it controls here. MIT's German counsel, however, has reviewed this issue, and concluded that the BDSG does not apply to the electronic correspondence MIT seeks, as set forth in the declaration attached hereto as Ex. B. The BDSG does not apply to business related email, as such business related emails are not "personal data." MIT's counsel has reviewed the case law concerning the BDSG, and has found that not a single case applies the BDSG to emails. (See Ex. B, ¶ 4.) Presumably, Harman's counsel likewise have not found any such case, or else they would have cited it in support of Harman's Motion.

"Personal data" under the BDSG means "any information concerning the personal or material circumstances of an identified or identifiable individual…" (Ex. C to Harman's Motion, BDSG § 3(1).) Examples of "personal data" revealed in the case law include: contractual obligations, diseases, fingerprints, and X-rays. Examples of "material circumstances" include: real estate or vehicle ownership, income level, debts, and bank account numbers. ***Business-related emails*** are not personal data or material circumstances of an employee and are not subject to the BDSG. (See Ex. B, ¶ 6.)

As discussed in MIT's Reply to its Motion to Compel, (Docket Entry No. 53), the cases Harman relies on to suggest that the BDSG applies are inapposite. Harman's cited cases illustrate the highly personal nature of the protected information under the BDSG, which is not the type of information sought by MIT's discovery requests. Employee performance evaluations

and a corporate telephone book containing employees' direct work numbers and private home numbers are not the equivalent of ***business-related*** emails. In re Baycol Prods. Litig., MDL No. 1432 (MJD/JGL), 2003 WL 220223449, at *6 (D. Minn. March 21, 2003) (employee performance evaluations); Volkwagen, A.G. v. Valdez, 909 S.W.2d 900 (Tex. 1995) (corporate telephone book).

## IV. Even if the BDSG Applies, the Exception in Section 28(3) Permits Collection and Production of Documents Pursuant To MIT's Discovery Requests.

Even if the information sought were "personal data" as covered by the BDSG, MIT is entitled to Harman's German employees' correspondence pursuant to Section 28(3), which allows for the "[t]ransfer or use for another purpose…in so far as it is *necessary to protect the justified interests of a third party*." (See Ex. C to Harman's Motion, at §28(3)(emphasis added).) Here, MIT's justified interests in soliciting discovery about Harman's products, and gathering such information from Harman's German entity's employees' business-related emails, place MIT's requests within Section 28(3).

Harman's claim that this exception applies only to the "'transfer or use' of employee data that has *already been collected*" is unfounded. First, the data ***has*** already been collected – it is existing email that sits within each Harman German employee's email account. The fact that Harman does not have a formal policy to collect its employees' electronic correspondence is irrelevant. Second, the "transfer or use" language of the BDSG applies equally to the transfer of data from Harman's German employees to Harman's counsel as it does to transfer of data from Harman to third parties, such as MIT.

Further, the burden on Harman to gain consent from its employees is minimal. It would be sufficient, for purposes of the BDSG, to write one letter to all of its employees with written confirmation attached, since the purpose of the collection is identical to all of them.

5

**V.      The Conflict of Laws Considerations Weigh In Favor of MIT.**

Even if a conflict of laws existed, the factors of the Restatement (Third) of Foreign Relations Law § 442, which Harman itself has cited, entitle MIT to discovery from Harman's German employees' email. The factors to be considered are:

(a)     the importance to the investigation or litigation of the documents or other information requested;

(b)     the degree of specificity of the request;

(c)     whether the information originated in the United States;

(d)     the availability of alternative means of securing the information; and

(e)     the extent to which noncompliance with the request would undermine important interests of the United States, or compliance would undermine important interests of the state where the information is located.

These factors clearly weigh in MIT's favor. The email MIT seeks is likely to contain important information to MIT's claims of infringement (information about technical operation and financial information about the accused products). Further, MIT's requests are specific, as set forth in detail in its discovery requests. Finally, MIT has no alternative means to access the broad array of discoverable information that might fall within those documents. Harman's claim that MIT will be able to access this information through depositions of its German employees puts the chicken before the egg, as only with such documents in hand can MIT's counsel meaningfully depose these individuals about these topics. Indeed, it is likely that some of these documents are to and from U.S. employees, and are in English. Given that a large percentage of Harman's German production has been in German, these documents may singularly help to move the case forward. The e-mail may also include PowerPoint presentations and other material produced to third parties, describing how the systems operate.

Given that Harman apparently has made no effort to collect any documents from its German employees, an order to compel the immediate production is most appropriate.

## CONCLUSION

Harman's German employees' email is not protected by the BDSG. But more importantly, Harman should have already undertaken steps to assess whether its employees will even object to such production, before raising this issue as a defense to production.

MIT requests that this Court deny Harman's Motion for Protective Order, and order Harman to comply with MIT's discovery requests, and to produce all such responsive documents within the schedule already agreed to by the parties – 5 business days prior to the German depositions.

Respectfully Submitted,

Massachusetts Institute of Technology,
By its Attorneys,

/s/ Steven M. Bauer
Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
John W. Pint (BBO# 660548)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone:  617-526-9600
Fax:    617-526-9899

March 29, 2006

## CERTIFICATE OF SERVICE

I certify that on March 29, 2006, I caused a copy of the forgoing document to be served upon counsel of record for Harman International Industries by electronic means using the Court's ECF system.

/s/ Steven M. Bauer
Steven M. Bauer

### Mottley, Kimberly

**From:** Ann Chen [achen@kirkland.com]
**Sent:** Monday, March 20, 2006 7:31 PM
**To:** Mottley, Kimberly
**Cc:** MIT_Harman; Harman-MIT@kirkland.com
**Subject:** MIT v. Harman - Germany correspondence

Kim,

As discussed earlier today, Harman intends to work with MIT to identify a procedure for obtaining discovery sought by MIT from Harman's Germany employees without violating the BDSG.

In an effort to resolve this issue without court involvement and in the spirit of cooperation, we propose the following:

Harman will meet with the Germany employees identified in Harman's Initial Disclosures and Craig Leavell's email to you on March 17, 2006. Harman will request that the employees review their files and voluntarily produce relevant and responsive non-personal correspondence. As such, Harman must inform these employees of the nature of the proceedings, the parties to whom documents will likely be transferred, and the purposes for which the documents will be used. As you know, Harman cannot collect or review an employee's correspondence unless it has the informed consent of the employee. To the extent that an employee refuses to produce any such documents, the BDSG prohibits Harman from producing those documents without the employee's permission.

As I understand, MIT would also like Harman to agree that this proposal applies to the employees' own files. I will let you know about this issue after we have conferred with Harman.

Sincerely,
Ann


Ann H. Chen
Kirkland & Ellis, LLP
200 E. Randolph Drive
Chicago, IL 60601
Tel: (312) 861-6352
Fax: (312) 665-9059
email: achen@kirkland.com

*************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,

```
including all attachments.
***********************************************************
```

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

    Plaintiff,

v.

HARMAN INTERNATIONAL
INDUSTRIES, INCORPORATED,

    Defendant.

Civil Action No.: 05-10990 DPW

Magistrate Judge Judith G. Dein

### DECLARATION OF REINHARDT SCHUSTER IN SUPPORT OF MIT'S OPPOSITION TO HARMAN'S MOTION FOR PROTECTIVE ORDER

I, Reinhardt Schuster, state:

1. I am a partner in the law firm of Bardehle Pagenberg Dost Altenburg Geissler in Munich, Germany, and serve as advisor to Proskauer Rose LLP, counsel for plaintiff Massachusetts Institute of Technology ("MIT"), in the above-captioned litigation. I have read both parties' briefs on this issue and am familiar with the relevant facts thereto.

2. I have read the German Federal Data Protection Act, or Bundesdatenschutzgesetz ("BDSG") and the relevant sections thereof, and have researched the German cases applicable thereto.

3. The BDSG defines "personal data" protected by the Act as "any information concerning the personal or material circumstances of an identified or identifiable individual." *Bundesdatenschutzgesetz,* BGB1, I, 2954 (2003) (FRG) (BDSG).

1

4.    I have reviewed the German cases describing what types of "personal data" are protected under the BDSG. None of those cases discuss emails as "personal data" protected by the BDSG. Examples of "personal data" that are cited in the case law include contractual obligations, diseases (Schaffland/Wiltfang, § 3 BDSG, margin number 12), photographs (VG Hamburg, DuD 1981, 57), fingerprints (VG Wiesbaden in "EDV-Recht", 345/51), and X-rays (LG Göttingen, NJW 1979, 601).

5.    I have also reviewed the German cases describing what is meant by "material circumstances" protected under the BDSG. Again, none of those cases discuss emails as "material circumstances." Examples of "material circumstances" include real estate (BVerfG, DVBl. 1990, 1041) or vehicle ownership, income level, debts, and bank account numbers (Schaffland/Wiltfang, § 3 BDSG, margin number 12).

6.    It is my opinion that the BDSG is inapplicable to the business related emails MIT seeks access to in this case.

7.    Business related emails are not "personal data" as protected by the BDSG. They are simply business records in electronic form. Such emails do not contain information of a private nature, sufficient to warrant protection under the BDSG.

8.    Even if the BDSG applied, it is my opinion that Harman would be permitted to disclose to MIT the emails pursuant to the exception in Section 28, Paragraph 3, No. 1, which allows for transfer or use of personal data to protect the justified interests of a third party.

I declare under the penalty of perjury that the foregoing is true and accurate and that this Declaration was executed on March 29, 2006.

*Reinhardt Schuster*
Reinhardt Schuster
Partner
Bardehle Pagenberg Dost Altenburg Geissler