**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-10990-DPW |
| v. | ) ) | Magistrate Judge Judith G. Dein |
| HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, | ) ) ) | **REQUEST FOR ORAL ARGUMENT** |
| Defendant. | ) ) ) ) | |

## HARMAN'S OPPOSITION TO MIT'S MOTION TO COMPEL DISCOVERY

Harman's waiver of the attorney-client privilege in support of its defense to MIT's recently-added claim for willful infringement is consistent in scope with the legal standards of this Court. MIT's over-reaching motion to compel seeks materials that are beyond the scope of Harman's waiver and properly withheld from production as protected by the attorney-client or work product privileges.

Harman unsuccessfully attempted to resolve this dispute with MIT through the meet and confer process. On March 31, 2006 at MIT's request, Harman agreed, by the end of the day on April 3, to prepare a revised privilege log with supplemental details regarding the listed communications, to undertake a confirmation that all documents within the scope of Harman's waiver had been produced, and to produce any additional documents to which MIT was entitled. Despite that agreement, MIT filed its motion to compel earlier in the day on April 3, before Harman had completed its review and amended its log. *See* MIT's Motion To Compel Discovery Over Which Harman Has Waived Privilege (Docket Entry 63) (hereinafter "Motion").

For this reason, MIT's motion is premature, violates Local Rule 37.1,[1] and should be denied. Additionally, in light of Harman's revised log, supplemental production, and agreement to continue to supplement as to documents properly within the scope of Harman's waiver, Harman has fully complied with the applicable law, and MIT's motion should also be denied.

Moreover, all known communications between Harman and its opinion counsel, Brinks Hofer, relating to the subject matters addressed in Brinks Hofer's opinion letter have already been produced to MIT. The controlling law is clear that MIT is not entitled to internal Brink Hofer work product that was never communicated to Harman because information not communicated to Harman is irrelevant to Harman's state of mind when it chose to rely on Brinks Hofer's opinion of noninfringement, invalidity and unenforceability. In addition, Brinks Hofer, as opinion counsel, can and has properly asserted its own privilege over its professional opinion work product not communicated to Harman. Harman therefore has no standing to instruct Brinks Hofer to waive its own privilege over its work product or to withdraw its motion to quash the third party subpoena filed by Brinks Hofer in the Northern District of Illinois.[2]

1.    **Harman Has Not Withheld Documents Subject To The Waiver Associated With Reliance On Advice of Counsel In Defense To Allegations Of Willfulness.**

"[W]hen a party asserts an advice of counsel defense, the result is at least some waiver of the attorney-client and work product privileges, though the scope of the waiver may be the subject of discussion." *Nitinol Med. Techs., Inc. v. AGA Med. Corp.,* 135 F. Supp. 2d 212, 217

---

[1]    More specifically, Rule 37.1(a) requires that "Before filing any discovery motion...counsel for each of the parties shall confer *in good faith to narrow the areas of disagreement to the greatest possible extent.*" Clearly, the information in the revised privilege log was designed, at MIT's request, to narrow the areas of disagreement. Further, MIT requested that Harman undertake this effort but then unilaterally, and prior to Harman's expending this effort on MIT's behalf, decided that the log "will not resolve the disputes raised herein."

[2]    As Judge Kocoras noted in the April 16, 2006 hearing on this issue in the Northern District of Illinois, "Brinks, Hofer clearly has a right to press their position here, because this is where the subpoenas arise, and I cannot take that right away from them. And I will not." See Ex. A, Hearing Transcript at p. 12.

(D. Mass. 2000) (Dein, M.J.) (citing *Saint Gobain/Norton Indus. Ceramics Corp. v. General Electric Corp.*, 884 F. Supp. 31, 35 (D. Mass. 1995)).  The scope of the waiver is generally as to documents and testimony probative of the alleged infringer's intent.  *Thorn EMI N. Am., Inc. v. Micron Tech., Inc.*, 837 F. Supp. 616, 621 (D. Del. 1993).  Generally the alleged infringer has waived the privilege as to the subject matter of the advice.  *Id.*  However, opinion work product is not probative of the accused infringer's state of mind unless communicated to the alleged infringer.  *Id.*  Furthermore, the "waiver of the attorney-client privilege as to one issue does not serve as a waiver of the privilege as to all issues."  *Nitinol*, 135 F. Supp. 2d at 217 (citing *Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 365 (D. Mass. 1995)).

Following this Court's decision in *Nitinol*, Harman has produced, and is in the process of confirming production, of "[a]ll documents constituting, evidencing or reflecting communications between [Harman] and [opinion counsel] or any other member or employee of his firm concerning or related to the [subject matter of the opinion]" and "[a]ll documents considered, reviewed, prepared or relied on by [opinion counsel] related to the factual basis of any opinion expressed to [Harman] concerning the [subject matter of the opinion] ***to the extent that the factual basis was discussed with or otherwise conveyed*** to [Harman]*"* ... and "limited to documents in existence on or before the date this litigation was commenced."  *See Nitinol*, 135 F. Supp. 2d at 219-220.  Under that same decision, MIT is also entitled to, "documents constituting, evidencing or reflecting opinions ... relating to the [subject matter of the opinion] which contradict or which are in any way inconsistent with the opinions of counsel..."  *Id.*  Based upon its on-going review, Harman is unaware of any such documents.  Accordingly, under this Court's controlling precedent, Harman has already produced, and has agreed to continue to search for and produce, all documents that are properly within the scope of its waiver of

privilege associated with its reliance on its opinion of counsel as a defense to MIT's claim for willful infringement.

2.    **Harman's Waiver Does Not Include Attorney Work Product Unless It Was Communicated To Harman.**

"Unless it can be established that the defendant knew of the factual basis for counsel's opinions, such work product should not have to be produced." *Nitinol,* 135 F. Supp. 2d at 218. Federal Rule of Civil Procedure 26(b)(3) provides that work product is discoverable only where there is "substantial need" for the work product and "undue hardship" exists in obtaining substantially equivalent materials through other means. "In ordering discovery of [work product] materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation." FED. R. CIV. P. 26(b)(3).

Here, MIT cannot show any need for the documents it seeks. Only documents and information actually communicated to an accused infringer are relevant to the accused infringer's state of mind, and thus relevant to a claim of willful infringement. *Thorn,* 837 F. Supp. at 621; *accord Nitinol,* 135 F. Supp. 2d at 218-219 (noting that "[t]he inquiry should focus on what [AGA] knew…"). In the present case, Harman has already produced documents and information communicated by or to Harman prior to the filing of suit and relevant to the scope of the opinion. In doing so, Harman has properly limited the scope of its production under the waiver to documents and information actually communicated to, or known by, Harman. *See Thorn,* 837 F. Supp. at 622 ("Counsel's mental impressions, conclusions, opinions or legal theories are not probative of that state of mind unless they have been communicated to that client."); *see also The Thermos Co. v. Starbucks Corp. and Pac. Mkt., Inc.,* No. 96 C 3833, 1998 WL 781120, at *4 (N.D. Ill. Nov. 3, 1998) ("Because Defendants' state of mind is the relevant issue, we think

- 4 -

Plaintiffs are entitled only to work product communicated to Defendants."); *accord Micron*, 159 F.R.D. at 362 (D. Mass. 1995) (Collings, M.J.) (citing *Thorn* at 622).

MIT cites to *Mushroom Associates v. Monterey Mushroom, Inc.*, a decision arising from the Northern District of California, to support its assertion that Harman's reliance on advice of counsel in defense of MIT's allegations of willfulness leads to a broad waiver as to *all* work product, regardless of whether it was communicated to Harman. *See* Motion at 3 (citing *Mushroom Assoc. v. Monterey Mushroom, Inc.*, 24 USPQ2d 1767 (N.D. Cal. 1992)). *Mushroom Associates* is not controlling here, however, and its reasoning has been much-criticized. *See eg. K.W. Muth Co. v. Bing-Lear Mfg. Group, L.L.C.*, 219 F.R.D. 554, 569 (E.D. Mich. 2003) (noting that "the *Mushroom Associates* case is based upon faulty analysis, under which the attorney's state of mind, and not that of the client, becomes paramount"); *accord Micron,* 159 F.R.D. at 363-365 (following *Thorn* and finding *Mushroom Associates* unpersuasive when a written opinion letter is involved). Thus, "unlike the subject matter scope of a waiver for attorney client privilege, production of work product contained in an opinion letter does not necessarily waive all work product protections on documents concerned with the same subject matter, including the underlying research documents and prior drafts not shared with the client." *K.W. Muth Co.*, 219 F.R.D. at 566-67 (applying the analysis of *Fleet Nat'l Bank v. Tonneson & Co.*, 150 F.R.D. 10, 16 (D. Mass. 1993), stating that "[t]he substantive content of work product, particularly so-called opinion work product … is almost certainly of no legitimate use to an opponent" when dealing with the scope of work product waiver based on inadvertent production to the scope of waiver under an advice of counsel defense).

In its Motion, MIT cites this Court's decision in *Nitinol* to support its contention that ***"any court would require"*** the production of attorney work product not communicated to the

client.[3]  *See* Motion at 2-3.  MIT, however, misrepresents the reasoning and holding of *Nitinol*.

In *Nitinol*, this Court followed *Thorn* and *Micron Technologies* (discussed above) and noted that,

"unless it can be established that the defendant *knew* of the factual basis for counsel's opinions,

such work product should not have to be produced." *Nitinol*, 135 F. Supp. 2d at 218 (emphasis

added).  This Court further emphasized that, "the inquiry should focus on what [the client] *knew*

about the nature and extent of analysis performed by the firm and what [the client] *knew* and had

concluded about the credibility, value and reasonableness of the opinion." *Nitinol*, 135 F. Supp.

2d at 219 (emphasis added).  This is therefore the standard that governs the scope of Harman's

waiver, and Harman has already agreed to comply with this standard as set forth by this Court in

*Nitinol*.  Accordingly, there is no legal basis under this Court's precedent for MIT to insist on a

further broad waiver that encompasses attorney work product not communicated to Harman.

**3.    MIT Mischaracterizes Harman's Production Of Documents Properly Within The Scope Of Harman's Waiver In An Improper Attempt To Broaden The Scope Of Waiver.**

As previously discussed, Harman has already produced, and has agreed to continue to

produce, communications to or by Harman prior to the date that litigation commenced

concerning the subject matter of Brinks Hofer's opinion of noninfringement, invalidity, and

unenforceability.  MIT, however, is now seeking to use those very same documents to assert an

improper broader subject matter waiver.  *See* Motion at 8.   MIT's arguments are misplaced

---

[3]    MIT also cites to *Novartis Pharmaceuticals Corp. v. Eon Labs Manufacturing, Inc.*, 206 F.R.D. 396 (D. Del 2002).  However, a subsequent District of Delaware case declines to follow *Novartis*, noting that *Novartis* "rejected the premise that the analysis for this discovery issue should focus only on the accused infringer's state of mind" and further noting that, "while I have the greatest respect for my colleagues in this district, my duty now is to apply the law as fairly and logically as I understand it.  On that basis, I adopt the approach taken in *Thorn* and hold that a waiver of the attorney-client privilege does not, in and of itself, constitute a waiver of the protections afforded by the work product doctrine." *Chimie v. PPG Indus., Inc.*, 218 F.R.D. 416, 419-420 (D. Del. 2003).

because the documents previously produced by Harman are within the proper scope of its waiver and do not open the door to any broader waiver.

Brinks Hofer's opinion addresses various topics, including the invalidity, non-infringement and unenforceability of the MIT patent at issue in this case. In connection with its opinion work for Harman, Brinks Hofer attended several meetings with MIT designed to make sure that Harman and Brinks Hofer understood the allegations being made by MIT. Those meetings addressed some of the same issues presented in Brinks Hofer's opinion letter to Harman. In addition, in order for Brinks Hofer to understand the operation of the accused Harman system, communications necessarily took place between Harman and Brinks Hofer regarding the features and operation of such systems. Communications between Harman and Brinks Hofer regarding these subjects have already been produced to MIT because, under this Court's decision in *Nitinol*, such communications should be produced in light of Harman's reliance on Brinks Hofer's opinion letter as a defense to willful infringement. Contrary to MIT's assertion, the production of these communications (including communications between Brinks Hofer and Harman regarding the operation of Harman's navigation products (MIT's third listed subject matter being asserted as a broader waiver scope)) are within the scope of Harman's waiver because they relate to the opinion letter (particularly non-infringement) and do not mean that Harman has opened the door to any broader waiver. Also contrary to MIT's assertion, Harman has not produced documents relating to "litigation strategy," except to the extent that they were not privileged, or because they were communications that occurred between Harman and Brinks Hofer and touched on issues of non-infringement, invalidity or unenforceability.[4]

---

[4]    Such documents include communications between Harman, Brinks Hofer, and Kirkland & Ellis, LLP. To the extent that such communications relate to the issues of non-infringement, invalidity, or unenforceability, and were communicated to Harman prior to the filing of litigation between MIT and Harman, such documents are properly within the scope of Harman's waiver. The production of such documents to MIT does not open the

**4.    To The Extent That Any Inadvertent Production Still Exists, *Amgen* Weighs In Harman's Favor.**

MIT's Motion, which argues that Harman inadvertently produced 100 privileged documents, is a mischaracterization of the facts and attempts to take advantage of a timing error that arose only because of Harman's cooperation with MIT to allow MIT to belatedly file an Amended Complaint to allege willfulness. MIT's original Complaint made no allegation of willfulness, and yet MIT sought discovery on issues of willfulness. For several months, the parties debated whether the issue of willful infringement was properly a part of this case. Then, in late December 2005, Harman told MIT that, in order to resolve this issue without burdening the Court, Harman would not oppose a motion by MIT to amend its Complaint to allege willful infringement after the deadline to amend pleadings. In anticipation of MIT's amended complaint, Harman began electronically gathering documents relevant to the issue of willfulness.

On January 18, 2006, Harman produced 92 privileged documents relating to its reliance on Brinks Hofer's opinion of non-infringement, invalidity, and unenforceability. This production was "inadvertent" in the sense that it was made prematurely, since MIT's claim for willful infringement had not yet been formally added to this case. Although the parties had agreed that MIT would be permitted to file an Amended Complaint alleging willful infringement, MIT did not do so until February 2, 2006. Due to an electronic production error, the documents that had been electronically collected for review and potential production in anticipation of MIT's Amended Complaint were produced to MIT before a final review could be made. In addition to the 92 documents that were produced "prematurely," but which were properly within the scope of Harman's later (but anticipated) waiver of privilege in reliance on the Brinks Hofer

---

door to any post-litigation privileged communications between Harman and its litigation counsel, nor does it entitled MIT to production of any non-communicated Brinks Hofer work product or any work product of Harman's litigation counsel.

opinion letter, nine documents that required further review were also produced, as noted in Harman's March 2, 2006 letter to MIT. *See* Ex. B, A. Chen letter dated March 2, 2006. The production of these nine documents, totaling 11 pages did not effect a waiver of privilege under the totality of the circumstances test set forth by this Court in *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 291 (D. Mass. 2000).

In *Amgen*, Chief Judge Young articulated and followed the "middle" test to determine whether an inadvertent production of privileged communications constitutes a waiver. *Amgen*, 190 F.R.D. at 292. More specifically, Chief Judge Young noted that a court should consider the totality of the circumstances, including: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice." *Id.* at 292. Here, the documents were produced due to an electronic production error despite a regular practice of attorney review and electronic tagging of privileged documents.[5] Furthermore, the production was limited to nine documents, totaling eleven pages, out of a greater than 54,000-page production. Thus, the facts in this case are distinct from those of *Amgen*, in which more that 200 documents, totaling 3821 pages were inadvertently produced and in which Chief Judge Young found that "gross negligence" was involved. *See Amgen*, 190 F.R.D. at 293 (noting that "… such a substantial release of privileged information as occurred here (approximately 200 documents comprising 3821 pages) suggests that little can be done to reverse the damage").

---

[5] *See* Ex. C, J. Edwards letter dated 2/8/2006, in which Mr. Edwards noted that "Kirkland & Ellis, LLP took reasonable and appropriate precautionary measures to prevent inadvertent production, including electronically marking documents in a manner that was intended to segregate these documents for further review."

MIT's attempt to mischaracterize the premature production of 92 privileged documents as a broad waiver of additional materials unrelated to those documents and unrelated to Harman's reliance on its opinion of counsel is misplaced under the facts and the law. Harman's waiver of those 92 documents, although a few weeks earlier than planned, was still within the scope of its current waiver, and does not open the door to materials other than those to which MIT is properly entitled under this Court's decision in *Nitinol*.

5. **MIT Is Not Entitled To Work Product That Was Never Communicated To Harman, And Harman Lacks Standing To Require Such Production From Its Counsel.**

Despite MIT's assertion to the contrary, there is nothing "troubling" about Harman's opinion counsel asserting privilege over attorney work product not communicated to Harman, nor has Harman "refuse[d] to permit its opinion counsel, Brinks Hofer, to fulfill its obligations in response to subpoenas served on it.[6] MIT asserts in its Motion that "the work product does not belong to Brinks Hofer -- it belongs to Harman." Motion at 11.[7] The work product doctrine, however, may be asserted by either the client or the attorney. *In re Special September 1978 Grand Jury*, 640 F.2d 49, 62 (7th Cir. 1980); *accord In re Grand Jury Subpoena*, 220 F.R.D. 130, 145 (D. Mass. 2004).

---

[6]  Brinks Hofer has independently filed its own motion for a protective order seeking the protection of the Northern District of Illinois in response to the subpoena issued by MIT in this case, seeking, among other things Ms. Addy's work product not communicated to Harman. *See* Ex. D, Brinks Motion.

[7]  MIT cites to *Spivey v. Zant*, 683 F.2d 881, 885 (5th Cir. 1982) and *Martin v. Valley Nat'l Bank of Ariz.*, 140 F.R.D. 291, 320 (S.D.N.Y. 1991) in support of its argument. These cases, however, are distinct from the case at hand. In *Spivey*, the work product sought did not include mental impressions; rather, "counsel [seeking work product] offered to take [the attorney's] papers ... after his mental impressions or legal theories had been excised" and "nothing in the record indicates that any of the subpoenaed documents contain mental impressions or opinions." *See Spivey*, 683 F.2d at 885. The court in *Martin* specifically noted that an attorney may invoke work-product doctrine in situations where the interests of counsel and client do not conflict, and drew a distinction where, as in that case, an attorney sought to invoke the rule against the client or against the client's wishes. *See Martin*, 140 F.R.D. at 320 (citing *In re Sealed Case*, 676 F.2d 793, 809 n. 56 (D.C. Cir. 1982) ("To the extent that the interests [of attorneys and clients] do not conflict, attorneys should be entitled to claim privilege, even if their clients have relinquished their claims")).

Even when the client waives work product immunity, the attorney can seek the protection

of opinion work product:

> Unlike the attorney-client privilege, which belongs only to the client, the
> protections of Rule 26(b)(3), Fed. R. Civ. P. may be claimed by either the client
> or the attorney. The fact that the client waives the privilege does not mean that
> protection is lost; the attorney may contest disclosure even in the face of a client's
> waiver. The reason for this rule is that the attorney-client privilege and the work-
> product doctrine have somewhat different purposes. As was explained in the case
> of *In re Special September 1978 Grand Jury* "[t]he purpose of the attorney-client
> privilege is to encourage clients to make full disclosure to their attorneys" so that
> any legal advice given is based on full disclosure of the relevant facts.
> Confidentiality is key to effectuating that purpose. The work product doctrine, on
> the other hand, functions not merely and (perhaps) not mainly to assist the client
> in obtaining complete legal advice but in addition to establish a protected area in
> which the lawyer can prepare his case free from adversarial scrutiny.

*Catino v. Travelers Ins. Co. Inc.*, 136 F.R.D. 534, 539 (D. Mass. 1991) (Collings, M.J.)

(internal citations omitted.) Thus, "given that it seeks in part to protect attorneys' interest in their

own intellectual product," an attorney can invoke the work product doctrine. *In re Grand Jury

Subpoena*, 220 F.R.D. 130, 145 (D. Mass. 2004).

Here, neither Brinks Hofer nor Harman has waived privilege as to work product not

communicated to Harman. Furthermore, as is clearly demonstrated above, Brinks Hofer may

assert, and has properly asserted, its own privilege. Therefore, Harman respectfully requests this

Court deny MIT's Motion requesting that the Court order Harman to "instruct its opinion counsel

... to submit to MIT's requests for discovery" and to "instruct Brinks Hofer to withdraw its

motion to quash the subpoena." *See* Motion at 11-12. As required under the Federal Rules, MIT

served a third-party subpoena on Brinks Hofer issued by the Northern District of Illinois,

seeking, *inter alia*, Brinks Hofer work product that was never communicated to Harman. Brinks

Hofer properly filed a motion for a protective order in the Northern District of Illinois, and the

Court is in the process of resolving this motion. Like this Court, the Northern District of Illinois

has rejected the reasoning of *Mushroom Associates* in favor of *Thorn* and *Micron Technologies*.

Accordingly, Harman expects the decision by the Northern District of Illinois to be generally consistent with this Court's ruling in *Nitinol.*

**6.     No Legal Basis Exists To Preclude Trial Testimony By Opinion Counsel.**

Harman reserves the right to have its opinion counsel testify at trial, but acknowledges that testimony will be subject to the boundaries of Harman's waiver, and does not intend to introduce testimony that goes beyond the scope of that waiver. Harman has already made such a representation to MIT during the meet and confer process.

There is no support for MIT's all-or-nothing approach to trial testimony by opinion counsel. Trial counsel, opinion counsel, and this Court are all capable of limiting the trial testimony of Harman's opinion counsel to a proper scope in light of this Court's precedent. *See Nitinol,* 135 F. Supp. 2d at 218. Harman's opinion counsel can and should be permitted to testify within the scope of Harman's waiver.

**7.     Proper Scope of Harman's Waiver and Production**

In accordance with this Court's precedent, including *Nitinol,* the proper scope of Harman's waiver should be limited to the following:

- Documents constituting, evidencing or reflecting communications between Harman and its opinion counsel (including any member or employee of Brinks Hofer or Hennigan, Bennett & Dorman) concerning or related to the issues of infringement, non-infringement, validity, invalidity, enforceability, or unenforceability of U.S. Patent No. 5,177,685, and which were in existence on or before the date litigation was commenced.[8]

---

[8]   Harman is not aware of any post-litigation documents of this type, as neither Brinks Hofer nor Hennigan, Bennet & Dorman have been substantively involved in this litigation. Harman also notes that a small number of pre-litigation communications that fall within this category and that also involved Harman's litigation counsel, Kirkland & Ellis, LLP exist, and Harman will agree that these are within the scope, so long as MIT agrees that this does not open the door to any post-litigation communications or work product of Kirkland & Ellis, LLP. Harman also notes that this includes communication between its in-house personnel that constitute, evidence, or reflect communications between outside opinion counsel and in-house attorneys, such as memos prepared by Robert Hart to other in-house attorneys or business personnel.

As to the specific documents identified in MIT's Motion to Compel, based upon Harman's review of these documents, documents 17, 35, 36, 37, 38, 39, 46, 47, 49, 51, 56, 57, 58, 60, 180, 188, 194 and 205 from

- Documents considered, reviewed, prepared or relied on by opinion counsel (including any member or employee of Brinks Hofer or Hennigan, Bennett & Dorman), which were discussed with or otherwise conveyed to Harman on or before the date litigation was commenced, and which relate to the issues of infringement, non-infringement, validity, invalidity, enforceability, or unenforceability of U.S. Patent No. 5,177,685.[9]

- Documents constituting, evidencing or reflecting communications between Harman and its opinion counsel (including any member or employee of Brinks Hofer or Hennigan, Bennett & Dorman) concerning or related to the issues of infringement, non-infringement, validity, invalidity, enforceability, or unenforceability of U.S. Patent No. 5,177,685, and which contradict or which are in any way inconsistent with the opinions of counsel, regardless of when they existed.[10]

- Documents considered, reviewed, prepared or relied on by opinion counsel (including any member or employee of Brinks Hofer or Hennigan, Bennett & Dorman), which were discussed with or otherwise conveyed to Harman, which relate to the issues of infringement, non-infringement, validity, invalidity, enforceability, or unenforceability of U.S. Patent No. 5,177,685, and which contradict or which are in any way inconsistent with the opinions of counsel, regardless of when they existed.[11]

In an effort to resolve this issue, Harman had already begun (and continues) to conform its privilege log and production to this scope of waiver, based on this Court's decision in *Nitinol*, when MIT prematurely filed this Motion without completing the meet and confer process. Harman remains prepared and willing to do so, but in light of MIT's repeated practice of overreaching, through which MIT claims that each production further broadens the scope of

---

Harman's privilege log likely fall into this category under this Court's holding in *Nitinol*. Harman is willing to produce these documents as within the scope of the waiver, provided MIT agrees, or this Court determines, that such production may not be used by MIT to attempt to further broaden the scope of the waiver.

Documents 31, 34, 42-45, 50, 53, 61-67, 195-197, 199, 200, 236, 241 and 242 from Harman's privilege log are not within the scope of the waiver under this Court's reasoning in *Nitinol*, as they do not relate to the subject matter of the opinion. Furthermore, document nos. 61-67 are also outside of the scope of the waiver as they were created after litigation commenced and do not contradict the opinion.

[9]  Harman is not aware of any post-litigation documents of this type, as neither Brinks Hofer nor Hennigan, Bennet & Dorman have been substantively involved in this litigation.

[10]  Harman is not aware of any such documents.

[11]  Harman is not aware of any such documents.

Harman's waiver, Harman requests this Court's guidance as to the proper scope of Harman's production in light of its waiver.

For the reasons discussed above, Harman respectfully requests that this Court:

1.      In accordance with this Court's decision in *Nitinol*, confirm that Harman's production in light of its waiver should be limited to the four categories of documents set forth above;

2.      Deny MIT's motion requesting this Court order Harman to instruct Brinks Hofer to relinquish its independent privilege over its work product not communicated to Harman;

3.      Deny MIT's motion requesting this Court order Harman to instruct Brinks Hofer to withdraw its motion to quash the subpoena currently pending in the Northern District of Illinois.

## REQUEST FOR ORAL ARGUMENT

Furthermore, pursuant to Local Rule 7.1, Harman respectfully requests an oral argument in conjunction with MIT's Motion to Compel Discovery Over Which Harman Has Waived Privilege (Docket Entry 63).

Dated: April 17, 2006

                        Respectfully submitted,

                        /s/ Craig D. Leavell
                        Robert J. Muldoon, Jr., BBO# 359480
                        James W. Matthews, BBO# 560560
                        Edward S. Cheng, BBO# 634063
                        Courtney A. Clark, BBO# 651381
                        **SHERIN AND LODGEN, LLP**
                        101 Federal Street
                        Boston, MA  02110

                        William A. Streff Jr., P.C.
                        Craig D. Leavell
                        Michelle A.H. Francis
                        Ann H. Chen
                        **KIRKLAND & ELLIS LLP**
                        200 E. Randolph Dr.
                        Chicago, IL  60601
                        (312) 861-2000 (phone)
                        (312) 861-2200 (fax)

                        *Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing **HARMAN'S OPPOSITION TO MIT'S MOTION TO COMPEL DISCOVERY** was delivered by electronic means this 17th day of April, 2006, to counsel for MIT as follows:

> Steven M. Bauer
> Kimberly A. Mottley
> John Pint
> Proskauer Rose LLP
> One International Place, 14th Floor
> Boston, MA 02110-2600
> sbauer@proskauer.com
> kmottley@proskauer.com
>
>
> /s/ Colleen M. Garlington

# EXHIBIT A



1

1      IN THE UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF ILLINOIS
2              EASTERN DIVISION

3

MASSACHUSETTS INSTITUTE OF        )   Docket No. 06 C 1728
4  TECHNOLOGY,                    )
                                  )
5                   Plaintiff,    )
                                  )
6           vs.                   )
                                  )
7  HARMAN INTERNATIONAL INDUSTRIES, )
   INCORPORATED,                  )   Chicago, Illinois
8                                 )   April 6, 2006
                    Defendant.    )   9:30 o'clock a.m.
9

10          TRANSCRIPT OF PROCEEDINGS - MOTION
          BEFORE THE HONORABLE CHARLES P. KOCORAS
11

12  APPEARANCES:

13

    For the Plaintiff:        MESSRS. ROTHSCHILD, BARRY & MYERS, P.C.
14                            BY:  MS. ROBIN K. POWERS
                              55 W. Monroe Street, Suite 3900
15                            Chicago, Illinois  60603

16  For the Defendant:        MESSRS. KIRKLAND & ELLIS
                              BY:  MR. CRAIG D. LEAVELL
17                            200 E. Randolph Drive, Suite 6100
                              Chicago, Illinois  60601
18
    For the Movants:          MESSRS. BRINKS, HOFER, GILSON & LIONE
19                            BY:  MR. MARK H. REMUS
                              455 N. Cityfront Plaza Dr., Suite 3600
20                            Chicago, Illinois  60611

21  Court Reporter:           MS. JOENE HANHARDT
                              Official Court Reporter
22                            219 S. Dearborn Street, Suite 2524-A
                              Chicago, Illinois  60604
23                            (312) 435-6874
            * * * * * * * * * * * * * * * * * * * *
24              PROCEEDINGS RECORDED BY
                MECHANICAL STENOGRAPHY
25          TRANSCRIPT PRODUCED BY COMPUTER

1    matters before the judge in Boston -- or the two judges in

2    Boston?  Is that your position?

3         MR. REMUS:  That is correct.

4         And I think we are overlooking a major obstacle here;

5    and, that is, the jurisdictional issue -- that this Court has

6    jurisdiction over the subpoena, not the District of

7    Massachusetts.

8         THE COURT:  There is no question about that.  But I

9    think it is really a question -- if you want to talk

10   jurisdiction -- that there is probably concurrent jurisdiction

11   in the two courts.

12        They have the main litigation.  They may not, because

13   of the geographical limitations on subpoenas, have direct

14   jurisdiction over the subpoenas, since Brinks, Hofer is here

15   and they got served out of this court.

16        And I think the rule of geography might well apply;

17   but, in an indirect way, which is probably as daunting as a

18   direct way.  They have some power and authority over, really,

19   the same issues.

20        So, I think, for all practice purposes, you have a

21   dual jurisdiction situation here.  This one clearly has

22   jurisdiction; and, because the subpoena is issued here, Brinks,

23   Hofer is located here, and they have a right to come to this

24   court and seek relief from the command of the subpoena.  So,

25   there is no question there is jurisdiction vested here.

12

1       So, I think the best way to do that, I do presently --

2  and I may be wrong about this -- but I do not see this issue as

3  being unduly complicated or as broad-based, as that suggested

4  is currently residing with the magistrate judge hearing the

5  discovery matters in the underlying case.

6       The other reality is, whatever you were going to tell

7  the judges in Massachusetts by way of why you are entitled to

8  this material, and whatever Brinks, Hofer might say if they

9  were in that court by way of why you are not entitled to it, is

10 going to be the same material, whatever cases one finds in

11 support of whatever the position is.

12      But Brinks, Hofer clearly has a right to press their

13 position here, because this is where the subpoenas arise, and I

14 cannot take that right away from them.  And I will not.

15      And, so, I am going to -- have you supplied whatever

16 materials you want to supply in support of your position, I

17 guess, for a protective order or to not quash the subpoena, but

18 at least tailor it and narrow it?

19      Have you supplied all that you intend to supply?

20      MR. REMUS:  Yes.  If MIT is considering the papers

21 they filed yesterday -- their opposition -- we would like to

22 file a brief reply.  And we can do that within a week.

23      MS. POWERS:  Your Honor, we would like to file a

24 responsive pleading.

25      And I would not say that what we filed yesterday was a

13

1    responsive pleading.  I do believe that the law on waiver is

2    quite different in different jurisdictions, and there may be

3    some different law.

4         I think there is a lot of different cases out there;

5    and, certainly under the different circuits, there have been

6    different outcomes.

7         THE COURT:  All right.

8         MS. POWERS:  And we would like an opportunity.

9         THE COURT:  Well, I am not presently persuaded that

10   there is a compelling reason to, if you will, ignore my

11   obligation in the jurisdictional place we find ourselves.

12        You may be able to convince me of that, but you have

13   not done that this morning.

14        And, so, I am going to require you -- and I will not

15   let your filings in Massachusetts stand as an answer here,

16   because I do not think it is, in a pure sense, responsive.  And

17   whether substantively it is or not, I will not assume that.

18        So, I will give you 14 days to answer this motion.

19        And I will give the movants 14 days thereafter to file

20   a reply.

21        And I will entertain the present motion unless, at

22   some point, you have a better case why I should abandon my

23   obligation and let Massachusetts take the whole bite at the

24   apple.  Okay?

25        That is how we will do business.

# EXHIBIT B

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Ann H. Chen
To Call Writer Directly:
312 861-6352
achen@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: 312 861-2200

March 2, 2006

**VIA ELECTRONIC MAIL**

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place, 14th Floor
Boston, MA  02110

Re: *MIT v. Harman International Industries, Inc.*, Case No. 05-10990 DPW

Dear Kim:

Enclosed is Harman's Supplemental Responses to MIT's Interrogatory Nos. 5, 8, and 9.

We again demand return of the following privileged documents that were inadvertently produced to you: HAR 007004, HAR 007075, HAR 073441-HAR 073443, HAR 008815, HAR 007114, HAR 007113, HAR 007109, HAR 007074, and HAR 007039. Each of these documents remains protected by the attorney-client and attorney work product privileges. Kindly return them immediately.

Sincerely,

Ann H. Chen

AHC

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

# EXHIBIT C

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamal M. Edwards
To Call Writer Directly:
(312) 861-2464
jedwards@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: (312) 660-0719

February 8, 2006

**VIA E-MAIL**

Steven M. Bauer, Esq.
Proskauer Rose LLP
One International Place, 14th Floor
Boston, MA 02110-2600

Re:     *MIT v. Harman Int'l Indus. Inc.,*
        No. 05-10990 DPW (D. Mass).

Dear Steven:

We have reviewed your February 6, 2006 letter, responding to our request that MIT return the privileged documents Harman inadvertently produced earlier than expected. We are disappointed to learn that that MIT refuses to cooperate and observe traditional rules of professional ethics. Instead, your letter only further demonstrates that MIT has filed and proceeded in this action vexatiously and with the ultimate purpose of harassing Harman.

Rather that respect the professional and courteous request of counsel (which we are ethically bound to do, according to the ABA's Model Rules, and as suggested and approved by Chief Judge Young in the very case you cite), you insist on misusing documents that are clearly privileged and about which you've been advised were inadvertently produced. Kirkland & Ellis LLP took reasonable and appropriate precautionary measures to prevent inadvertent production, including electronically marking documents in a manner that was intended to segregate these documents for further review. A technical error is responsible for this mistake, which MIT improperly seeks to exploit. This is not the result of attorney neglect or any lack of diligence on our parts. We will be happy to document and demonstrate our efforts to the Court. We are certain that our facts are distinguishable from those in the *Amgen* case you cited.

Curiously, your firm did not even comply with the procedures employed by counsel in *Amgen*. In that *Amgen*:

[C]ounsel for Amgen [unlike MIT here], sent a letter to [Hoechst's counsel, Choate, Hall & Stewart] asking whether the documents had been produced intentionally. Upon receiving the letter ... the attorney responsible for the document production, reviewed the documents identified in the letter and

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

Steven Bauer Esq.
February 8, 2006
Page 2

determined that they had been produced as a result of the paralegal's error. [Hoechst's counsel] then phoned [Amgen's counsel] and informed him that production of the documents was not intentional and he asked [Amgen's counsel] to return the documents immediately. Also on July 22, 1999, [counsel] sent a letter to [Amgen's counsel] to the same effect.

On July 23, 1999, … co-counsel for Amgen [unlike counsel for MT here], sent a letter to [Hoechst's counsel] that even though Amgen was not prepared to return the documents, Amgen's counsel would segregate the documents and refrain from reviewing them further. [Amgen's counsel] requested the production of a privilege log identifying the documents and stating the basis for the claim of privilege…[Hoechst's counsel] agreed to [Amgen's] request and on August 16, 1999, [Hoechst's counsel] provided to Amgen's counsel a comprehensive privilege log that identified each of the documents and stated the basis for the claim of privilege. Finally, by letter dated October 5, 1999, Amgen['s] counsel informed Hoechst counsel … that Amgen would not return the documents.

*Amgen*, 190 F.R.D. 287, 289 (D. Mass. 2000) (citations omitted).

When discussing the ethical propriety of *Amgen's* conduct, Chief Judge Young, "credit[ed]" Amgen for "segregating the documents and refraining from reviewing them further until this dispute is resolved." *Id.* at 290. Yet, MIT refused to even do this much. From your letter spelling out the location and alleged relevance of these documents, the record clearly shows that you inappropriately reviewed Harman's documents, contrary to the procedure approved by the Court in *Amgen*.

Your attempts to exploit our mistake—one that has been made by numerous attorneys, law firms, and companies, including MIT—is extremely disturbing. In fact, in *Amgen*, Choate, Hall & Stewart, *the same firm that prosecuted the Patent-In-Suit on MIT's behalf, also inadvertently produced privileged documents* and moved the court for the return of the documents. Also, contrary to the position MIT is now taking, MIT has previously argued that its opponent—the Government, no doubt—*should not have access to the privileged documents MIT voluntarily disclosed*. *United States v. MIT*, 129 F.3d 681, 686, 688 (1st Cir. 1997). Yet again, the record shows that MIT changes its positions to suit its own self-serving objectives.

# KIRKLAND & ELLIS LLP

Steven Bauer Esq.
February 8, 2006
Page 3

MIT's decision to ignore Harman's good faith efforts to work patiently and fairly with you and your colleagues in addressing the numerous mistakes that you've made is disappointing. We are shocked that MIT is inexplicably unwilling to return the same professional courtesy where it matters most—the preservation of the attorney-client privilege, which is a hallmark of our judicial system and one of the country's oldest and most protected privileges.

As a first gesture of professional courtesy: Harman overlooked the fact that MIT failed to even mention the word "import" in its Complaint—let alone plead it. Harman even stipulated to MIT's motion to amend to add an import allegation, even though MIT failed to plead it before the court-ordered amendment deadline. While we have found no cases where a court has approved of a complaint that, like yours in this case, failed to even mention infringement by "importing," the cases are legion where courts have held that the plaintiff must allege "import" infringement to state a claim. *See, e.g., Home & Nature Inc. v. Sherman Specialty Co., Inc.*, 322 F. Supp. 2d 260, 265 (E.D.N.Y. 2004) ("A complaint for patent infringement satisfies the above requirements, as well as the limited criteria of Rule 8(a), when the plaintiff: (1) alleges ownership of the asserted patent, (2) names each individual defendant, (3) cites the patent that is allegedly infringed, (4) describes the manner in which the defendants allegedly infringe, and (5) identifies the specific sections of the patent law invoked.") (plaintiff plead "import[ing], making, using...") (citing *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000) (complaint must "describe the means by which the defendants infringe"); *see also Alsip v. Nielsen Media Research, Inc.*, 2004 WL 315269 (S.D.N.Y 2004) (finding proper complaint requires plaintiff to plead defendant infringed by "importing, making, using, selling...").

As a second gesture: Harman also overlooked the fact that MIT failed to even cite the statutory provision governing willful infringement, let alone even mention the word "willful" in its complaint. Yet, this is a clear Federal Circuit requirement. *See Phonometrics, supra,* at 794 (complaint required to "point to the specific sections of the patent law invoked"); *cf. Alsip*, 2004 WL 315269 at *3 (complaint satisfies Rule 8 because it, *inter alia*, "indicates that their claims are based on defendants' willful acts of direct and indirect infringement"). Again, Harman graciously stipulated to an amendment, where MIT's complaint was fatally deficient.

Harman has even been flexible by allowing MIT to withdraw some of the 10 depositions notices it prematurely filed, before allowing time for discovery to progress so as to allow the parties to determine the identity of the witnesses who are most knowledgeable and most likely to testify at trial. And, the foregoing is only a limited rendition of Harman's cooperativeness—there is much more.

# KIRKLAND & ELLIS LLP

Steven Bauer Esq.
February 8, 2006
Page 4

The fact that MIT is unwilling to reciprocate and extend the professional courtesy that even the ABA suggests is due, even despite Harman's continued and documented cooperativeness, only further evidences MIT's bad faith in this litigation.

Finally, your claim that Harman has somehow improperly withheld privileged documents has no merit. As we have explained before, the documents you now have were produced prematurely. We have every right to maintain and withhold privileged documents, until Harman elects to waive privilege with respect to those documents, if it so chooses. The fact that these documents do not yet appear on Harman's privilege log is irrelevant at this point because the parties agreed to exchange their amended privilege logs on Friday, February 10, 2006. The privilege log you currently have is thus not current. Our amended privilege log will contain the documents MIT refuses to return.

Nonetheless, we are willing to resolve this issue—as yet another gesture of undeserved professional courtesy—by allowing MIT to maintain these documents now, because Harman is waiving privilege concerning the documents already produced, for the limited purpose of proving our defense against MIT's recently-added, frivolous claim of willful infringement. As of the date these documents were produced (January 17, 2006), however, MIT had no justifiable need for these documents because willfulness was not then an issue in the case. We intended to further review the documents prior to producing them or lodging them on our privilege log to ensure that we had produced all responsive documents on the issue of willfulness. Your refusal to allow us to do this is baffling.

Additional documents will be forthcoming, including our opinion of counsel, for which Harman also intends to waive privilege for the limited purposes of establishing Harman's defense to MIT's recently-added claim of willful infringement.

Very truly yours,

Jamal M. Edwards

JME/slm

cc:    Robert J. Muldoon, Esq.

# KIRKLAND & ELLIS LLP

Steven Bauer Esq.
February 8, 2006
Page 5

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY<br><br>Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED<br><br>Defendant. | No. . |

## MOTION OF THIRD PARTIES BRINKS HOFER GILSON & LIONE AND MEREDITH ADDY FOR A PROTECTIVE ORDER

Brinks Hofer Gilson & Lione and Meredith Addy move pursuant to Fed. R. Civ. P. 26(c)(4) and Fed. R. Civ. P. 45(c)(3)(A) for a Protective Order limiting the scope of the subpoenas served on them by Massachusetts Institute of Technology. The reasons for this motion are set forth in the memorandum which is being filed herewith.

Dated: March 29, 2006

Respectfully submitted,

Mark H. Remus
BRINKS HOFER GILSON & LIONE
455 North Cityfront Plaza
Chicago, Illinois 60611-5599
(312) 321-4200

Attorney for Movants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY<br><br>         Plaintiff,<br><br>   v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED<br><br>         Defendant. | No. |

## MEMORANDUM IN SUPPORT OF MOTION OF THIRD PARTIES BRINKS HOFER GILSON & LIONE AND MEREDITH ADDY FOR A PROTECTIVE ORDER

This proceeding involves third party discovery that is being sought in this District for use in a patent infringement case in the District of Massachusetts. In the Massachusetts case, MIT alleges that Harman willfully infringed its patent.[1] As a defense to willful infringement, Harman asserts that it exercised due care, in part by obtaining and relying upon a legal opinion by Meredith Addy, an attorney with the law firm of Brinks Hofer Gilson & Lione.

MIT now seeks massive third-party discovery from Brinks Hofer and Ms. Addy, including documents, mental impressions and legal theories that were never communicated to Harman (copies of MIT's subpoenas are attached hereto at Tab 1). Uncommunicated documents, mental impressions and legal theories are not relevant to any issue in this case and unjustifiably compromise the confidentiality of attorney work product.

---

[1] The underlying action is Case No. 05-10990-DPW (D. Mass.),

## I.    BACKGROUND

MIT alleges that Harman willfully infringed its U.S. Patent No. 5,177,685 ("the '685 patent"). Harman maintains that, if it infringed the '685 patent, such infringement was not willful because Harman sought and relied upon the advice of its outside patent counsel, Meredith Addy. Harman has produced, and intends to rely upon, a legal opinion written by Ms. Addy that the accused Harman product does not infringe MIT's patent-in-suit. Brinks Hofer has already produced, through Harman, all communications between Harman and Brinks Hofer that relate to Ms. Addy's opinion and the alleged infringement of the '685 patent.

On March 9, 2006, MIT served two subpoenas from this Court on Brinks Hofer and Ms. Addy. The subpoena on Brinks Hofer commands the production of several categories of documents and the subpoena on Ms. Addy commands her to appear for deposition (Tab 1).

Harman waived the attorney client privilege by relying on and producing the written opinion of Ms. Addy. Brinks Hofer and MIT disagree, however, over the scope of that waiver. Brinks Hofer contends that discovery should be limited to information that was actually communicated to Harman (Tab 2). MIT, on the other hand, contends that it is entitled to every document in Brinks Hofer's files and every thought in Ms. Addy's head that relates to the '685 patent, regardless of whether such information was provided to Harman (Tab 3). Specifically, MIT demands discovery of all "mental impressions, thought processes, legal theories, and internal documents, to the extent that they were considered, reviewed, prepared, or relied upon by that attorney in rendering an opinion, or related to the factual basis of the opinion, *regardless of whether such information or documents were*

2

*communicated to Harman or its trial counsel.*" (*Id.*) (emphasis added).  The parties attempted

to resolve this matter without court intervention, but were not successful.

## II.    ARGUMENT

Infringement is not willful if a party reasonably and in good faith relies upon a legal

opinion that the patent is not infringed.  *Ortho Pharm. Corp., v. Smith*, 959 F.2d 936, 944

(Fed. Cir. 1992).  In deciding whether a party reasonably and in good faith relied upon a

legal opinion, the focus is on the party's state of mind, not the state of mind of its attorney.

*Liqui-Box Corp, v. Reid Valve Co.*, 16 USPQ2d 1074, 1075, 1989 WL 1172733 (W.D. Penn.

1989) ("[g]ood faith reliance by a party on counsel's opinion is a question of the party's state

of mind, not the state of mind of counsel.").

Because the sole factual focus is on the state of mind of Harman, what the Brinks

Hofer lawyers thought and considered – to the extent not communicated to Harman – is

simply irrelevant.  As the court put it in *Thorn EMI North America, Inc. v. Micron Tech.,*

*Inc.*, 837 F. Supp. 616, 622 (D. Del. 1993):

> The facts of consequence to the determination of a claim of willful
> infringement relate to the infringer's state of mind.  Counsel's mental
> impressions, conclusions, opinions or legal theories are not probative of that
> state of mind unless they have been communicated to that client.

*See also Steelcase Inc. v. Haworth, Inc.*, 954 F. Supp. 1195, 1199 (W.D. Mich. 1997) ("The

waiver does not extend to attorney work product or documents upon which the attorney

relied, unless they were somehow disclosed to Haworth").

For this reason, this Court has repeatedly found that the limits sought by Brinks Hofer

are necessary and appropriate.  For example, in *Solomon v. Kimberly Clark Corp.*, 1999 WL

89570 (N.D. Ill. Feb. 12, 1999) (Tab 4), this Court limited discovery of Brinks Hofer and

3

Ms. Addy to communications between Ms. Addy and Kimberly-Clark relating to the issue of whether the accused Kimberly-Clark products infringed the patent-in-suit. *Id.* at \*5 This Court also held that "the mental impressions and thought process developed by BHG&L counsel while preparing the opinion letter for Kimberly-Clark" were not discoverable *"unless those impressions and opinions were communicated to Kimberly-Clark." Id.* (emphasis added). Similarly, in *Thermos Co. v. Starbucks Corp.*, 1998 WL 781120, \*4 (N.D. Ill. Nov. 3, 1998) (Tab 5) this Court held that "[b]ecause Defendants' state of mind is the relevant issue, we think Plaintiffs are entitled only to work product communicated to Defendants . . . work product not communicated to the company is irrelevant to the company's state of mind." *See also Micron Separations, Inc. v. Pall Corp.*, 159 F.R.D. 361, 363 (D. Mass. 1995) ("Counsel's mental impressions, conclusions, opinions or legal theories are not probative of a [client's] state of mind unless they have been communicated to that client.").

This Court should apply the same rules it applied in *Kimberly-Clark* and *Thermos* to this case. MIT should not be allowed to discover any documents, mental impressions, thought processes, or legal theories that were not communicated to Harman. The following rules should be imposed on any discovery between MIT and Brinks Hofer and/or Ms. Addy:

1. MIT is entitled to discover all communications between Harman and Ms. Addy (and any other Brinks Hofer attorney) relating to the issue of whether Harman infringed U.S. Pat. No. 5,177,685, including whether that patent is invalid or unenforceable.

2. MIT is not entitled to discover any mental impressions, thought processes, legal theories or documents relating to U.S. Pat. No. 5,177,685 that were not communicated to Harman.

4

## III.   CONCLUSION

MIT should not be permitted to freely probe the thought processes and files of Harman's counsel.  On the contrary, discovery of Brinks Hofer and Ms. Addy should be limited to communications between counsel and Harman – the only matters bearing on Harman's reasonable reliance on the advice of Ms. Addy.


Dated:  March 29, 2006                              Respectfully submitted,


                                                    Mark H. Remus
                                                    BRINKS HOFER GILSON & LIONE
                                                    455 North Cityfront Plaza
                                                    Chicago, Illinois 60611-5599
                                                    (312) 321-4200

                                                    Attorney for Movants,
                                                    BRINKS HOFER GILSON & LIONE and
                                                    MEREDITH ADDY