UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, <br><br> Defendant. | Civil Action No.: 05-10990 DPW <br><br> Magistrate Judge Judith G. Dein |

**MIT'S OPPOSITION TO HARMAN'S
MOTION TO COMPEL CONTENTION DISCOVERY,
AND MIT'S COUNTER-MOTION TO COMPEL DISCOVERY**

Harman's Motion suggests that MIT is refusing to provide detailed technical rebuttal to Harman's invalidity contentions regarding the MIT patent. In fact, most of the discovery Harman requests in its Motion has already been provided, and as for the rest, MIT has agreed to provide the information at the appropriate time – when MIT provides its expert reports on validity. Demanding such contentions from MIT now would, in effect, force MIT to submit its expert reports during fact discovery. MIT has agreed to an earlier exchange, if Harman would agree to provide *its* non-infringement contentions at this time -- which Harman refuses to do.

Specifically, MIT has given Harman detailed preliminary claim constructions, and has given Harman a 30(b)(6) deposition as to MIT's pre-filing investigation. What remains in dispute is Harman's premature demand for MIT's legal *rebuttal* to Harman's invalidity arguments. To be clear, MIT has *agreed* to respond, but like Harman's response to MIT's infringement contentions, has said it will not do so until fact discovery has been completed (and likely simultaneously with its expert reports on this topic, which will be incorporated by reference into MIT's responses to Harman's interrogatories).

Indeed, Harman's own cited cases support MIT's position, stating:

> when there is an expert report which will touch on the very contentions at issue, the Court should normally *delay contention discovery until after the expert reports have been served*, which may then render moot any further contention discovery.

BB&T Corp. v. U.S., 233 F.R.D. 447, 450 (M.D.N.C. 2006) (granting motion for protective order barring contention discovery) (emphasis added).

Harman has articulated no compelling reason why, in this case, it needs MIT's legal rebuttal before receiving MIT's expert reports on this issue, and before providing to MIT its non-infringement rebuttal to MIT's infringement contentions. Harman bears the burden of overcoming the statutory presumption of the patent's validity at trial – it is not MIT's burden to prove validity or disprove Harman's case. Indeed, the cases Harman cites to support its case were cases in which the *defendant*, the party bearing the burden of proof on invalidity, was refusing to provide such discovery. Moreover, Harman seeks this premature contention information not only by way of interrogatory, but *also* through a 30(b)(6) deposition of MIT, with no explanation for the necessity of this duplicative request, and even though MIT has agreed to answer the questions through its expert reports.

There can be no doubt that discovery must be a two-way street – Harman seeks production from MIT, when it refuses to provide the same. To date, Harman has failed to provide any detail of its non-infringement contentions. Instead, Harman summarily states that its accused products lack essentially all of the elements of the claims, with no explanation of how those elements are absent, nor provision of any support for those positions. Certainly, if MIT is

put to its proof at this early stage of discovery of its legal rebuttal to Harman's validity issues, Harman must provide its detailed non-infringement contentions at the same time.[1]

## ARGUMENT

### I.    Harman's Demands For Contention Discovery Are Premature.

Harman's request is premature and unnecessary here, as all the information Harman seeks will be provided in MIT's experts' responses to Harman's expert reports in the coming months.  If Harman's expert contends that the MIT patent is invalid, then MIT's expert will rebut that contention.  Until then, Harman merely seeks to impose undue burden on MIT, asking MIT to provide its lawyers' rebuttal to every one of dozens of prior art references Harman contends invalidates MIT's patent.

MIT's detailed validity contentions, and any necessary response to the invalidity arguments asserted by Harman, will be addressed in MIT's experts' reports, which MIT will incorporate by reference in their entirety in response to Harman's contention interrogatories.  By its Motion, effectively, Harman asks this Court to compel MIT to complete these expert reports well before the close of fact discovery, and well-before Harman's invalidity expert reports are due (despite the fact that Harman bears the burden of proof on invalidity).

Indeed, the very cases cited by Harman in its own brief recognize that

> when there is an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery.

BB&T, 233 F.R.D. at 450.

---

[1] Interestingly, essentially all of Harman's interrogatory responses (both factual and contention in nature) lack any verification from Harman, because Harman's counsel has intimated that these responses are subject to change because *only now, after seven months* are they being reviewed by Harman.

Further, Federal Rule of Civil Procedure 33(c) clearly states discovery should be postponed in similar instances:

> [a]n interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, *but the court may order that such an interrogatory need not be answered until after designated discovery has been completed* or until a pre-trial conference or other later time.

The Advisory Committee Notes further comment that

> [s]ince interrogatories involving mixed questions of law and fact may create disputes between the parties which are best resolved after much or all of the other discovery has been completed, the court is *expressly authorized to defer an answer*.

Harman's counsel tries to mislead this Court by attempting to portray Harman as the forthcoming party in discovery in this case, when in fact the opposite is true (as has been shown in the discovery battles to date). Harman touts its detailed disclosure of its invalidity positions as if that entitles Harman to an immediate in-kind rebuttal response from MIT. What it fails to tell this Court is that Harman *had to* provide this information in accordance with the Court's scheduling order, based on the parties' negotiated deadlines for exchange of preliminary contentions on infringement (from MIT) and invalidity (from Harman).

In the parties' August 1, 2005 Joint Statement filed with the Court, they proposed that MIT would disclose asserted claims and preliminary infringement contentions on November 4, 2005, and Harman would provide preliminary invalidity contentions on December 19, 2005. (See Docket Entry No. 23.) The Court approved these deadlines in its October 10, 2005 Scheduling Order. (See Docket Entry No. 26.) The parties agreed to have Harman set forth its contentions on invalidity early in the case, and for MIT to do the same with its infringement contentions. The parties neither proposed, nor agreed to, dates for exchange of rebuttal

responses to these two sets of contentions, and indeed, Harman has never provided any detailed

rebuttal to MIT's infringement contentions.

The two cases which Harman cites for the proposition that prior art contentions should

not be deferred both deal with situations in which the party with the burden of proof (the

defendant – here, Harman) was refusing to provide contention information on *its* invalidity case,

not vice versa.  See B. Braun Med., Inc. v. Abbott Labs., 155 F.R.D. 525 (E.D. Pa. 1994); ADC

Telecomm., Inc. v. Thomas & Betts Corp., 2001 WL 1381098 (D. Minn. Oct. 18, 2001)

(attached to Harman's brief as Ex. F).

As the Court is aware, discovery is still ongoing.  In fact, in addition to the millions of

pages of discovery MIT received pursuant to the Court's April 19 Order, Harman continues to

produce even more voluminous discovery (including production of entire hard-drives of

documents which have been received from Harman's counsel over the past week).  MIT also has

yet to have the opportunity to depose Harman's 30(b)(6) witness on technical issues in this case

(as the German depositions have been pushed, yet again, due to Harman's late production of

documents and apparent inability to schedule the witnesses).

**II.     The Appropriate Tool For Providing Validity Contention Information
        Here Are The Expert Reports, Not 30(b)(6) Deposition Testimony.**

Remarkably, Harman not only seeks MIT's contentions through interrogatories, but also

seeks this same information by way of a 30(b)(6) deposition.  Of course, the information sought

by both will be given through MIT's expert reports, as noted above.

As Harman's own case law makes clear, "[u]ntil a party has first shown that the

interrogatory process cannot be used, it may not seek to use depositions for contention

discovery."  BB&T, 233 F.R.D. at 449.  Because MIT will incorporate by reference its entire

expert reports into its interrogatory responses, Harman will get the information it seeks, without the need for any 30(b)(6) deposition.

While one case Harman cited acknowledged that a court may be justified in permitting a party to pursue contention discovery through more than one discovery tool, such relief would only be appropriate when the circumstances so require (such as where credibility issues are pivotal). McCormick-Morgan, Inc. v. Teledyne Indus., Inc., 134 F.R.D. 275, 286 (N.D. Cal. 1991). As the court found there, no such circumstances are present here to justify Harman's overly burdensome and duplicative request.

In deciding whether a 30(b)(6) depositions or contention interrogatory would be more appropriate, courts must assess "which device would yield most reliably and in the most cost-effective, least burdensome manner information that is sufficiently complete to meet the needs of the parties and the court." Id. The McCormick-Morgan court found the following factors to weigh in favor of contention interrogatories: 1) reasonable likelihood that one individual would be able to provide in a deposition as to a full and complete account of all the bases for the contentions made and positions taken; and 2) ability of a non-lawyer to undertake this task. In that case, the court decided that "the most appropriate vehicle for disclosing the kind of information and argument at issue here is a sensibly crafted set of contention interrogatories" "at the end of the discovery period." Id. at 287. The same arguments favor contention interrogatories (in effect, MIT's expert reports) in this case, where the discovery sought is MIT's detailed validity position. (The McCormick-Morgan court also noted that such contention discovery is "best done after at least most other discovery has been completed." Id.)

In another similar case (also cited by Harman), a court found contention interrogatories preferable to a contention 30(b)(6) deposition based on the facts that:

(a) contention interrogatories should be a less expensive method and are a less invasive method of letting the [moving party] learn the required information, (b) claim construction is a difficult issue to summarize for one deponent, and (c) a deposition of an attorney should be avoided until other possible methods for discovery are attempted and found unsuccessful.

Exxon Research & Eng'g Co. v. U.S., 44 Fed. Cl. 597, 601 (Fed. Cl. 1999). Again, these same factors support the use of contention interrogatories here, instead of 30(b)(6) testimony.

Thus, MIT's expert reports, incorporated by reference into its interrogatory responses, will satisfy any need Harman has for MIT's legal validity analysis.

**III.    Harman Can Not Demand Contention Information From MIT, While Simultaneously Refusing To Provide Responses To MIT's Contention Interrogatories, And Failing To Verify Any Of Its Interrogatory Responses Since September 2005.**

**A.    Harman's Deficient Response to Interrogatory No. 8**

Harman has failed to provide any substantive or supported non-infringement position in its interrogatory responses to date.

In a January 25, 2006 letter to Harman's counsel, MIT's counsel raised a concern that Harman's infringement contention interrogatory responses were deficient. (See Ex. 1 attached hereto.) Specifically, MIT's Interrogatory No. 8 requests: "If Harman contends that any of the products and services identified by Interrogatory No. 1 do not infringe the claims of the '685 Patent, state the basis, including a claim chart, for such a contention." (See Ex. 2 attached hereto.) Harman's first response to this interrogatory was no response at all, but instead a cursory reference to Harman's entire document production. (See Ex. 2 attached hereto.) In November 2005, Harman "supplemented" this response by adding a 600 page Bates range that added little clarity to Harman's position. (See Ex. 3 attached hereto.)

After significant discussion and negotiation between counsel, an agreement was reached, whereby MIT would supplement certain interrogatories in exchange for a substantive

supplementation of Harman's response to Interrogatory No. 8. The parties memorialized this agreement in a Joint Motion filed with the Court, seeking entry of a scheduling order which would require Harman to provide a "substantive supplementation" of its response to Interrogatory No. 8 by February 15, 2006. This Court granted that scheduling order on February 2, 2006. (See Docket Entry No. 43, and the Court's February 2, 2006 Electronic Order granting same.)

On February 15, 2006, Harman "supplemented" only in that it added more words to its response. In effect, other than lawyer jargon, Harman stated that it does not infringe because it lacks all but one element of the sole independent claim of the '685 patent at issue, without any explanation of why such elements are lacking. (See Ex. 4 attached hereto.) On March 2, 2006, Harman "supplemented" again, this time misrepresenting entirely the state of discovery (stating that MIT had not provided its preliminary claim construction (which it had), and misstating the claims which MIT had asserted in its infringement contentions to date). (See Ex. 5 attached hereto.) MIT followed-up on these problems in a March 20, 2006 letter, and in discussions around that same time, but Harman refused to supplement or correct these problems. (See Ex. 6 attached hereto.)

On May 1, 2006, after Harman's counsel started bemoaning MIT's contention interrogatory responses, MIT brought Harman's deficient response to Interrogatory No. 8 to their attention once again, noting that contentions discovery would have to be a two-way street. MIT's counsel offered to do a mutual exchange of contention information, but Harman's counsel apparently decided instead to file the present motion instead. (See Ex. 7 attached hereto.)

*To date*, Harman has not provided MIT with a substantive non-infringement position, or any facts to support any such position, despite MIT's provision of its detailed infringement

contentions. (See Exs. 8 and 9 (to be later submitted pursuant to the Assented to Motion to File Under Seal submitted simultaneously herewith).) If this Court decides to order MIT to provide its validity contentions at this time, MIT requests that it also order Harman to simultaneously provide a truly substantive supplementation to its response to Interrogatory No. 8.

### B.    Harman's Failure To Verify Interrogatory Responses

By emails on April 26, 2006, and May 9, 2006, MIT's counsel requested verification pages for the **_six_** sets of supplemental interrogatory responses Harman has served since its initial responses in September of 2005 (dated November 2, 2005, December 21, 2005, February 15, 2006, March 2, 2006, March 3, 2006, and March 22, 2006). (See Ex. 10 attached hereto.)

Having received no response to these requests despite weeks having gone by, MIT's counsel raised this issue with Harman again by phone on May 12, 2006. During that conversation, Harman's counsel stated that the responses were "under review" by Harman's Chief Intellectual Property Counsel Robert Hart (who, incidentally, has attended most of the depositions in this case, and is Harman's 30(b)(6) designee on willfulness issues). Harman's counsel would not provide a date by which MIT could expect to receive the verification pages, stating that Mr. Hart intended to review them in detail, consult with others at Harman if necessary, and supplement / modify the responses as necessary for him to verify them. Hearing this, MIT's counsel expressed disbelief that Harman's counsel had served responses which the client had not yet seen or verified over the course of the past **_seven months_**.

Harman's delay put MIT in a precarious situation, as Mr. Hart's deposition was scheduled for May 17, 2006 – the following week. MIT proceeded with Mr. Hart's deposition on May 17, 2006, and again inquired as to when MIT could expect to receive those verification pages that same day. In response, Harman's counsel claimed that Mr. Hart had been "busy"

assisting Kirkland with other aspects of the case.  (See Ex. 11 attached hereto.)  Now, an entire

month has passed since MIT raised this issue, and yet MIT has not received any of the missing

verifications.

There is no excuse for a seven month delay between service of interrogatory responses

and their verification.  Federal Rule of Civil Procedure 33(b)(2) requires that interrogatory

responses "be signed by the person making them, and the objections signed by the attorney

making them."  While no specific deadline is set forth in the Rule, certainly a seven month delay

is inappropriate.  MIT requests that this Court order Harman to provide verification pages for the

six sets of interrogatory responses within five (5) days of this Court's order, and to permit MIT

leave to re-depose Mr. Hart, or any other Harman witness, implicated by any changes to

Harman's interrogatories made during the course of this tardy verification exercise.

## IV.    Harman's Demands For 30(b)(6) Testimony Concerning<br>MIT's Pre-filing Investigation, And Claim Construction Contentions, Are Moot.

### A.    MIT Provided A 30(b)(6) Witness As To MIT's Pre-filing Investigation.

In Topic 5 of Harman's 30(b)(6) notice, Harman seeks deposition testimony concerning

MIT's pre-filing investigation.  MIT properly objected to this request "as it seeks information

protected by the attorney-client privilege and work product doctrines."  (See Ex. 12 attached

hereto.)  After receiving Harman's motion to compel which more narrowly describes the subject

matter sought by the deposition as the "facts" concerning the steps taken, and not the substance

of any discussions or communications, MIT allowed its 30(b)(6) witness to testify as to this topic

at his deposition, including the when, who, and what concerning the steps of MIT's pre-filing

investigation, but without divulging any attorney-client confidences or work product.  (See Ex.

13 attached hereto.)  Thus, MIT has mooted this portion of Harman's motion.

**B.     Harman Has All It Is Entitled To From MIT At This Stage Of Discovery Concerning Claim Construction.**

Harman seeks MIT's claim construction pursuant to Topic 1 of its 30(b)(6) notice.  MIT objected to Topic 1 "as seeking legal conclusion testimony on which fact depositions are inappropriate" and further stated that "MIT will brief its positions on claim construction when requested by the Court."  (See id.)  At the time Harman sent its 30(b)(6) notice, MIT had already provided initial preliminary claim construction contentions to Harman on February 15, 2006.  More recently, MIT provided detailed supplementation of those positions on May 17, 2006.  (See Exs. 14 and 15 attached hereto.)

In fact, it is MIT who has attempted to come to the table to start negotiations with Harman to narrow the scope of any potential disputes between the parties on claim construction issues, but Harman's counsel has refused, demanding again and again more information before the parties can have a live discussion on the matter.  (See Exs. 16 - 19 attached hereto.)  Harman has all it is entitled to at this point concerning MIT's claim construction positions.

**V.     Harman's Request For Costs And Sanctions Are Ill-Founded.**

Throughout the course of discovery to date, MIT has acted in good faith and fulfilled its discovery obligations.  To the extent that disputes have arisen, MIT has always met and conferred with Harman in attempts to resolve concerns, and to identify issues which remain in dispute so that those issues can be brought to the Court's attention.  The fact that Harman, a party who has disregarded not only its discovery obligations, but direct orders from this Court enforcing those obligations, over the past several months, hereby seeks costs and sanctions for *MIT's* discovery practices is certainly the pot calling the kettle black, and is barely worthy of note herein.  Clearly, here, where MIT has well-founded bases for its positions grounded in

Harman's own case law, and has shown a pattern of cooperation (and not Harman-style discovery obstruction), sanctions and costs are inappropriate.

## **REQUEST FOR RELIEF**

WHEREFORE, MIT respectfully requests that this Court issue an order:

(1)     Denying Harman's requests for a 30(b)(6) witness on MIT's claim construction (Topic 1) and MIT's pre-filing investigation (Topic 5), as moot;

(2)     Denying Harman's requests for MIT's detailed rebuttal validity contentions until after MIT's experts have issued their reports on validity, which MIT will incorporate by reference into its interrogatory responses (as MIT's contentions will be fully set forth therein), OR, if the Court does grant Harman such discovery at this stage of the litigation, limit that discovery to contention interrogatories (and not 30(b)(6) testimony), and require Harman to immediately comply with its obligations to provide substantive supplementation of its response to Interrogatory No. 8 in response to MIT's detailed infringement contentions;

(3)     Requiring Harman to provide verification pages for the six sets of interrogatory responses within five (5) days of this Court's order, and granting MIT leave to re-depose Mr. Hart, or any other Harman witness implicated by any changes to Harman's interrogatories made during the course of this tardy verification exercise;

(4)     Denying Harman's requests for costs and sanctions; and

(5)     Order such other and further relief as the Court deems equitable and/or appropriate.

## Compliance with Local Rules 7.1 and 37.1

MIT's counsel discussed the matters raised herein with Harman's counsel in numerous conversations over the course of the past several months (as detailed herein), attempting to resolve these disputes. As the disputes remain unresolved, MIT now seeks the Court's assistance.

Respectfully Submitted,

Massachusetts Institute of Technology,
By its Attorneys,

/s/ Steven M. Bauer
Steven M. Bauer (BBO# 542531)
Jacob K. Baron (BBO# 652568)
Kimberly A. Mottley (BBO# 651190)
John W. Pint (BBO# 660548)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone:  617-526-9600
Fax:     617-526-9899

May 26, 2006

## CERTIFICATE OF SERVICE

I certify that on May 26, 2006, I caused a copy of the forgoing document to be served upon counsel of record for Harman International Industries by electronic means using the Court's ECF system.

/s/ Steven M. Bauer
Steven M. Bauer

One International Place
22nd Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

**Kimberly A. Mottley**
Direct Dial: 617-526-9616
Email: kmottley@proskauer.com

January 25, 2006

*Via Electronic Mail*

Jamal M. Edwards, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601

    Re:    <u>MIT v. Harman International Industries, Inc.</u>, No. 05-10990 DPW (D. Mass.)

Dear Jamal:

I write to follow up on a few outstanding discovery items, and regarding the motion to compel Harman filed last night.

Harman's motion misrepresents to the Court that MIT "refuses to amend its complaint to make any claim of willful infringement," with similar misrepresentations throughout the brief.  We don't understand how you could say that when you know that we filed a joint motion to amend the pleadings in this case on January 13, 2006.  We expect you to either withdraw the motion or correct your misstatements to the Court immediately.

As to the substance of your motion seeking claim construction and infringement contentions, we note that you did not mention to the Court that Harman's interrogatory responses fail to provide similar information from Harman.  MIT's Interrogatory No. 8 states, "If Harman contends that any of the products and services identified by Interrogatory 1 do not infringe the claims of the '685 Patent, state the basis, including a claim chart, for such a contention."  Harman's response states that the request is premature, overly broad and unduly burdensome, and then refers to approximately 600 pages of your document production containing publications and product information.  This is, as you know, an inappropriate use of Rule 33(d).  It is unfortunate that you have chosen to file a motion when Harman engages in the same conduct it complains of.  Unless we can reach agreement on a *mutually* satisfactory substantive supplementation, to protect our client's rights and to be sure the Court is aware of your games-playing we will move to compel answers from Harman of the same detail you have asked to compel from MIT.

**PROSKAUER ROSE LLP**

Jamal M. Edwards, Esq.
January 25, 2006
Page 2

Moreover, we note that you *still* have not produced Harman's email, which you told us to expect "very soon" on January 17. It's been another week, with depositions starting in a few short weeks, and yet we still don't have these documents from you, nor will you commit to a date for that production. Similarly, you have yet to confirm whether Dr. Wietzke has produced any documents, which were due for production on November 28, 2006. If you cannot confirm that these documents have been produced, and continue to refuse to tell us when they will be produced, we will include this issue in a motion to compel.

In light of your misrepresentations to the Court on the issue of willfulness, we need you to confirm that your document production and privilege log now incorporate all documents related to willfulness as well.

Finally, we are still awaiting the following information requested in my January 23 letter: 1) whether you will agree to produce the source code in written form; 2) the source of the documents already produced, by Bates number range, and location of the originals; 3) whether you'll agree to produce the electronically available financial documents in electronic form; and 4) deposition availability for the remaining depositions.

\*          \*          \*

Discovery closes soon. We can no longer wait for you to find time to respond -- only to then be put off over and over. We need an immediate telephone call to discuss these and, quite frankly, if you tell us you cannot have these documents in-hand by January 27, 2006, along with the corresponding supplementation of Harman's privilege log, (or we have not reached a mutual agreement for a future date for that production), we will move to compel.

Please let me know whether you are available for a call today at 5 p.m. EST to discuss these matters, or if not, when today or tomorrow you will be available.


Sincerely,

*Kimberly A. Mottley*

Kimberly A. Mottley

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MASSACHUSETTS INSTITUTE OF TECHNOLOGY,**<br><br>**Plaintiff,**<br><br>v.<br><br>**HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Case No(s).: 05-10990 DPW**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## HARMAN'S RESPONSES TO MIT'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant Harman International Industries Inc. ("Harman") submits the following responses and objections to plaintiff Massachusetts Institute of Technology' s ("MIT's") First Set of Interrogatories (Nos. 1-11) [counted with subparts as Nos. 1-17]:

## GENERAL OBJECTIONS

Harman incorporates its General Objections to MIT's First Set Of Requests For The Production Of Documents And Things (1-26) as if fully set forth herein.

## SPECIFIC OBJECTIONS AND RESPONSES

### Interrogatory No. 1

Identify each automobile navigation system product or service used, made, sold or offered for sale by Harman.

### Response to Interrogatory No. 1:

Harman objects to this Interrogatory as overly broad, unduly burdensome, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[E]ach automobile navigation system product or service used, made, sold or offered for sale by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. MIT is not permitted "to conduct 'fishing expeditions' in hopes of finding products that might be infringing. . . ." *Moore U.S.A., Inc., v. Standard Register Co.*, 229 F.3d 1091, 1116 (Fed. Cir. 2000). Harman further objects to this Interrogatory as overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence insofar as it fails to specify a time period. *See* 37 U.S.C. § 286. Subject to its asserted objections, Harman responds that it made, sold and/or offered for sale its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

### Interrogatory No. 2

For each product or service identified in Interrogatory No. 1, identify all persons in charge of performing the following activities, and identify the persons most knowledgeable about each named activity: manufacturing; sales; profits; research and development; patent activities; marketing; production; advertising; licensing; and regulatory submissions. For each such individual identified, identify the time period and nature of involvement in each activity.

### Response to Interrogatory No. 2 [counted with subparts as Nos. 2 and 3]:

Harman further objects to this Interrogatory as containing multiple subparts in violation of Rule 33(a) of the Federal Rules of Civil Procedure and considers this two separate

Interrogatories. Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein. Harman further objects to Interrogatory No. 2 [counted with subparts as Nos. 2 and 3] as overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence insofar as it fails to specify a time period. Subject to its asserted objections, Harman states that the persons knowledgeable about the activities disclosed in this Interrogatory include at least those disclosed in Harman's Initial Disclosures Pursuant to Rule 26(a)(1), which Harman incorporates herein by reference.

**Interrogatory No. 3**

For each product or service identified in Interrogatory No. 1:

    a)    separately identify all customers, purchasers, consumers, original equipment manufacturers and/or distributors; and

    b)    state the price per unit, lease terms, annual and monthly sales revenue, sales volume, net and gross profits, including the method for calculating each of the foregoing.

**Response to Interrogatory No. 3 [counted with subparts as Nos. 4 and 5]:**

Harman further objects to this Interrogatory No. 3 as containing multiple subparts in violation of Rule 33(a) of the Federal Rules of Civil Procedure and considers this two separate Interrogatories. Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein. Harman further objects to Interrogatory No. 3 [counted with subparts as Nos. 4 and 5] as overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence insofar as it fails to specify a time period and seeks highly proprietary information for Harman's "customers, purchaser, consumers, original equipment manufacturers and/or distributors" who are not relevant to any claim or defense in this case. Subject to its asserted objections, Harman refers MIT, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has made available for inspection.

**Interrogatory No. 4**

For each product or service identified in Interrogatory No. 1, state the manufacturing cost per unit, separately identifying fixed and variable costs and the methodology for calculating the foregoing.

**Response to Interrogatory No. 4 [counted with subparts as No. 6]:**

Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein. Harman further objects to Interrogatory No. 4 [counted with subparts as No. 6] as overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence insofar as it fails to specify a time period. Subject to its asserted objections, Harman refers MIT, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has made available for inspection.

**Interrogatory No. 5**

If Harman contends that the '685 Patent is invalid, state the basis for such a contention, and identify all prior art Harman contends supports that contention.

**Response to Interrogatory No. 5 [counted with subparts as No. 7]:**

Harman objects to Interrogatory No. 5 [counted with subparts as No. 7] as premature, overly broad and unduly burdensome because MIT has not identified any asserted claim from the 58 claims of the patent-in-suit. Subject to its asserted objections, Harman refers MIT, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has made available for inspection.

**Interrogatory No. 6**

State the basis for Harman's contention, if any, that any of the claims of the '685 Patent are invalid either alone or in combination with other references, based on

    a)    Streeter et al., "How to Tell People Where to Go: Comparing Navigational Aids, *"Int'l. J Man-Machine Studies*, Vol. 22, 549-62 (1985);

    b)    U.S. Patent No. 4,758,959;

    c)    U.S. Patent No. 4,878,170;

d)    the Geographic Data files Standard, Release 1.0 (1988); or

e)    Harris et al., "Digital Map Dependent Functions of Automatic Vehicle Location Systems," *IEEE Position and Location Symposium*, pp. 79-87,1988.

**Response to Interrogatory No. 6 [counted with subparts as No. 8]:**

Harman objects to Interrogatory No. 6 [counted with subparts as No. 8] as premature, overly broad and unduly burdensome because MIT has not identified any asserted claim from the 58 claims of the patent-in-suit.  Subject to its asserted objections, Harman refers MIT, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has made available for inspections.

**Interrogatory No. 7**

State the basis for Harman's contention, if any, that the '685 Patent is unenforceable under the doctrine of inequitable conduct, including any contention of inequitable conduct for non disclosure of Streeter et al., "How to Tell People Where to Go: Comparing Navigational Aids," *Int'l. 1. Man-Machine Studies*, Vol. 22, 549-62 (1985), or the work described in U.S. Patent No. 4,758,959 to the Patent office.

**Response to Interrogatory No. 7 [counted with subparts as No. 9]:**

Harman objects to Interrogatory No. 7 [counted with subparts as No. 9] as premature, overly broad and unduly burdensome because MIT has not identified any asserted claim from the 58 claims of the patent-in-suit.  Subject to its asserted objections, Harman refers MIT, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has made available for inspections.

**Interrogatory No. 8:**

If Harman contends that any of the products and services identified by Interrogatory 1 do not infringe the claims of the '685 Patent, state the basis, including a claim chart, for such a contention.

**Response to Interrogatory No. 8 [counted with subparts as No. 10]:**

Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein.

Harman objects to Interrogatory No. 8 [counted with subparts as No. 10] as premature, overly

broad and unduly burdensome because MIT has not identified any asserted claim from the 58

claims of the patent-in-suit.  Subject to its asserted objections, Harman refers MIT, pursuant to

Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has

made available for inspections.

**Interrogatory No. 9**

State whether Harman has ever solicited or received, directly or indirectly, from any source, or
prepared on its own any opinion, search, report or advice, written or oral, concerning the
infringement, noninfringement, validity or enforceability of the '685 Patent, and identify all
documents and prior art constituting, concerning, or identified by the opinion, search, report or
advice, and all persons who prepared, presented or assisted in the preparation of such opinion,
search, report or advice. If such opinion, search, report or advice was solicited but never
received, identify all persons who made the inquiry or investigation.

**Response to Interrogatory No. 9 [counted with subparts as No. 11]:**

Harman objects to Interrogatory No. 9 as not likely to lead to the discovery of admissible

evidence and seeking information protected by the attorney-client privilege, work product

privilege, and/or other applicable privileges.

**Interrogatory No. 10**

With respect to these Interrogatories, identify:

a)      all persons who provided any response to any of these Interrogatories, specifying
the response provided by each such person;

b)      all persons who provided any information in connection with the responses to any
of these Interrogatories or MIT's First Request for the Production of Documents
and Things ("Document Requests"), specifying the information provided by each
such person;

c)      all persons interviewed for the purpose of answering these Interrogatories or the
Document Requests;

d)      all persons whose files were reviewed for the purposes of gathering or identifying
documents responsive to these Interrogatories or the Document Requests, and
identify the physical location and title by file and file drawer of every file
searched for any information on which Harman bases its responses to these
Interrogatories and Document Requests, or any part thereof, to any of the
foregoing Interrogatories; and

e)      all documents and things responsive to these Interrogatories or the Document
Requests which have been destroyed during the pendency of this litigation or the
twelve months prior to the initiation of this litigation, and describe the subject
matter of each such document and thing, and state the reason for its destruction.

**Response to Interrogatory No. 10 [counted with subparts as Nos. 12, 13, 14, 15, and 16]:**

Harman objects to Interrogatory No. 10 as containing multiple subparts in violation of

Rule 33(a) of the Federal Rules of Civil Procedure and considers each subpart its own

Interrogatory for a total of five separate Interrogatories. Harman further objects to this

Interrogatory and each of its subparts as seeking information protected by the attorney-client

privilege, work product privilege, and/or other applicable privileges.  Subject to its asserted

objections, Harman responds as follows:

**Subpart (a) [counted as Interrogatory No. 12]:**

Apart from counsel, Guido Jeske, Stefan Hanika-Heidl, Axel Brandes, Harald Wellman,

Harrald Lussen, Jens Molzen provided factual information in response to these Interrogatories.

**Subpart (b) [counted as Interrogatory No. 13]:**

Apart from counsel, Guido Jeske, Stefan Hanika-Heidl, Axel Brandes, Harald Wellman,

Harrald Lussen, Jens Molzen provided factual information in response to these Interrogatories.

**Subpart (c) [counted as Interrogatory No. 14]:**

Apart from counsel, Guido Jeske, Stefan Hanika-Heidl, Axel Brandes, Harald Wellman,

Harrald Lussen, Jens Molzen provided factual information in response to these Interrogatories.

**Subpart (d) [counted as Interrogatory No. 15]:**

Harman objects to this Interrogatory as unduly burdensome.

**Subpart (e) [counted as Interrogatory No. 16]:**

Harman objects to this Interrogatory to the extent it seeks information and documents in

existence before Harman had any duty to preserve.  Harman further objects to this Interrogatory

as premature, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to its asserted objections, Harman states that it is not aware of any such documents at this time.

**Interrogatory No. 11:**

Identify each Person Harman may call to testify at trial as a fact or expert witness, and for each such witness, provide:

    a)    the name, address, occupation and employer of the witness;

    b)    the subject matter on which each witness is expected to testify;

    c)    that witness's basis for testifying;

    d)    the substance of the facts and any expert opinions to which each such witness is expected to testify;

    e)    a summary of the grounds for each such expert opinion;

    f)    each expert report prepared by such witness, and identify all documents and things reviewed, considered or relied upon by any expert retained by Harman in this matter in respect to the expert's opinions related to this litigation.

**Response to Interrogatory No. 11 [counted with subparts as No. 17]:**

Harman objects to Interrogatory No. 11 [counted with subparts as No. 17] as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order.  Harman further objects to this Interrogatory as seeking information protected by the attorney-client privilege, work product privilege, and/or other applicable privileges.

Dated:  September 6, 2005                    Respectfully submitted,


                                            /s/ Jamal M. Edwards /s/
                                            Robert J. Muldoon, Jr., BBO# 359480
                                            James W. Matthews, BBO# 560560
                                            Edward S. Cheng, BBO# 634063
                                            Courtney A. Clark, BBO# 651381
                                            **SHERIN AND LODGEN, LLP**
                                            101 Federal Street
                                            Boston, MA 02110


                                            William A. Streff Jr., P.C.
                                            Michelle A. H. Francis
                                            Jamal M. Edwards
                                            **KIRKLAND & ELLIS LLP**
                                            200 East Randolph Drive
                                            Chicago, IL  60601
                                            (312) 861-2000 (phone)
                                            (312) 861-2200 (fax)


                                            *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2005, I caused a true and correct copy

of HARMAN'S RESPONSES TO MIT'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

to be served on the following counsel of record via email with a courtesy copy via U.S. Mail:


Steven M. Bauer, Esq. (sbauer@proskauer.com)
Kimberley A. Mottley, Esq. (kmottley@proskauer.com)
Proskauer Rose LLP
One International Place  14th Floor
Boston, Massachusetts  02110-2600



By: _____
Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **MASSACHUSETTS INSTITUTE OF TECHNOLOGY,** | ) ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| **v.** | ) ) | **Case No(s).: 05-10990 DPW** |
| **HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,** | ) ) ) | |
| **Defendant.** | ) ) ) ) | |

## HARMAN'S FIRST SET OF SUPPLEMENTAL RESPONSES TO MIT'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant Harman International Industries Inc. ("Harman") submits the following supplemental responses and objections to Interrogatory Nos. 2-8 plaintiff Massachusetts Institute of Technology' s ("MIT's") First Set of Interrogatories (Nos. 1-11) [counted with subparts as Nos. 1-17]. These responses supersede and replace any earlier served responses.

### GENERAL OBJECTIONS

Harman incorporates its General Objections to MIT's First Set Of Requests For The Production Of Documents And Things (1-26) as if fully set forth herein.

<u>SPECIFIC OBJECTIONS AND RESPONSES</u>

<u>Interrogatory No. 2</u>

For each product or service identified in Interrogatory No. 1, identify all persons in charge of performing the following activities, and identify the persons most knowledgeable about each named activity: manufacturing; sales; profits; research and development; patent activities; marketing; production; advertising; licensing; and regulatory submissions. For each such individual identified, identify the time period and nature of involvement in each activity.

<u>Response to Interrogatory No. 2 [counted with subparts as Nos. 2 and 3]:</u>

Harman further objects to this Interrogatory as containing multiple subparts in violation of Rule 33(a) of the Federal Rules of Civil Procedure and considers this two separate Interrogatories. Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein. Harman further objects to Interrogatory No. 2 [counted with subparts as Nos. 2 and 3] as overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence insofar as it fails to specify a time period. Subject to its asserted objections, Harman states that the persons knowledgeable about the activities disclosed in this Interrogatory include at least :

| INDIVIDUAL | SUBJECT | LOCATION |
|---|---|---|
| Dr. Joachim Wietzke<br>Professor | Navigation System Creation | Beim Wasserturm 6a<br>Karlsruhe 76228<br>Germany |
| Ronne Reimann<br><br>Peter Will | Navigation System Creation, Development, Testing, & Operation | Unknown Address in Germany |
| Karl Rauterberg<br>Director, Telematics & Navigation<br><br>Stefan Hanika-Heidl<br>Manager, Digital Map<br><br>Harald Lussen<br>Digital Map | Navigation System Database Structure & Operation | innovative systems Gmbh<br>Navigation-Multimedia<br>Wendenstrsse 130, 20537<br>Hamburg, Germany |
| Axel Brandes | Navigation System Software | innovative systems GmbH |

| | | |
|---|---|---|
| Manager, Software Development<br><br>Harald Wellmann<br>Manager, Software Development | | Navigation-Multimedia<br>Wendenstrsse 130, 20537<br>Hamburg, Germany |
| Guido Jeske<br>Manager, Product Management | Harman Navigation System Customers<br><br>Harman Navigation System Products<br><br>Harman Navigation System Vendors, Suppliers, & Distributors | innovative systems GmbH<br>navigation-multimedia<br>Wendenstrasse 130, 20537<br>Hamburg, Germany |
| Matt Munn<br>Senior Vice President Sales & Marketing Worldwide<br><br>Tom Butler<br>Account Manager, North America | Harman Navigation Systems, U.S. Sales and Marketing | Harman Becker Automotive Systems, Inc.<br>39001 West 12 Mile Road<br>Farmington Hills, MI 48331 |
| David Eelman<br>Director, Finance and Controlling | Harman Navigation Systems, U.S. Financials | Harman Becker Automotive Systems, Inc.<br>1201 South Ohio Street<br>Martinsville, IN 46151 |
| Chet Simon<br>Senior Vice President Finance<br><br>Mike Giffin<br>President, Mobile Audio | Harman Consumer Group U.S. U.S. Navigation System Sales | Harman Consumer Group<br>250 Crossways Parkway<br>Woodbury, NY 11797 |
| Jens Molzen<br>Manager, Navigation (Electronic Systems Integration)<br><br>Michael Ruf<br>Vice President Engineering Europe<br><br>Marek Neumann<br>Director Program Management Europe | Harman Navigation Systems Structure, Function and Operation | Harman Becker Automotive Systems GmbH<br>Becker-Göring-Str. 16<br>76307 Karlsbad, Germany |

Interrogatory No. 3

For each product or service identified in Interrogatory No. 1:

    a)    separately identify all customers, purchasers, consumers, original equipment manufacturers and/or distributors; and

    b)    state the price per unit, lease terms, annual and monthly sales revenue, sales volume, net and gross profits, including the method for calculating each of the foregoing.

Response to Interrogatory No. 3 [counted with subparts as Nos. 4 and 5]:

Harman further objects to this Interrogatory No. 3 as containing multiple subparts in violation of Rule 33(a) of the Federal Rules of Civil Procedure and considers this two separate Interrogatories. Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein. Harman further objects to Interrogatory No. 3 [counted with subparts as Nos. 4 and 5] as overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence insofar as it fails to specify a time period and seeks highly proprietary information for Harman's "customers, purchaser, consumers, original equipment manufacturers and/or distributors" who are not relevant to any claim or defense in this case. Subject to its asserted objections, Harman refers MIT, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has made available for inspection, including without limitation documents bates numbered as follows:

Subpart a) HAR 000001 - HAR 004251 and HAR CD 1 - 437.

Subpart b) HAR 001665-001699; HAR 004309- **004333**

Interrogatory No. 4

For each product or service identified in Interrogatory No. 1, state the manufacturing cost per unit, separately identifying fixed and variable costs and the methodology for calculating the foregoing.

<u>Response to Interrogatory No. 4 [counted with subparts as No. 6]:</u>

Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein.
Harman further objects to Interrogatory No. 4 [counted with subparts as No. 6] as overly broad,
unduly burdensome and not likely to lead to the discovery of admissible evidence insofar as it
fails to specify a time period. Subject to its asserted objections, Harman refers MIT, pursuant to
Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has
made available for inspection, including without limitation documents bates numbered: HAR
001665-001699.

<u>Interrogatory No. 5</u>

If Harman contends that the '685 Patent is invalid, state the basis for such a contention, and
identify all prior art Harman contends supports that contention.

<u>Response to Interrogatory No. 5 [counted with subparts as No. 7]:</u>

Harman objects to Interrogatory No. 5 [counted with subparts as No. 7] as premature,
overly broad and unduly burdensome because MIT has not identified any asserted claim from the
58 claims of the patent-in-suit. Subject to its asserted objections, Harman refers MIT, pursuant
to Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has
made available for inspection without limitation documents bates numbered: HAR 000168-HAR
000759.

<u>Interrogatory No. 6</u>

State the basis for Harman's contention, if any, that any of the claims of the '685 Patent are
invalid either alone or in combination with other references, based on

   a)    Streeter et al., "How to Tell People Where to Go: Comparing Navigational Aids,
         "Int'l. J Man-Machine Studies, Vol. 22, 549-62 (1985);

   b)    U.S. Patent No. 4,758,959;

   c)    U.S. Patent No. 4,878,170;

   d)    the Geographic Data files Standard, Release 1.0 (1988); or

e)    Harris et al., "Digital Map Dependent Functions of Automatic Vehicle Location Systems," *IEEE Position and Location Symposium*, pp. 79-87,1988.

Response to Interrogatory No. 6 [counted with subparts as No. 8]:

Harman objects to Interrogatory No. 6 [counted with subparts as No. 8] as premature, overly broad and unduly burdensome because MIT has not identified any asserted claim from the 58 claims of the patent-in-suit.  Subject to its asserted objections, Harman refers MIT, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has made available for inspection, including without limitation documents bates numbered: HAR 000168-HAR 000759.

Interrogatory No. 7

State the basis for Harman's contention, if any, that the '685 Patent is unenforceable under the doctrine of inequitable conduct, including any contention of inequitable conduct for non disclosure of Streeter et al., "How to Tell People Where to Go: Comparing Navigational Aids," *Int'l. 1. Man-Machine Studies*, Vol. 22, 549-62 (1985), or the work described in U.S. Patent No. 4,758,959 to the Patent office.

Response to Interrogatory No. 7 [counted with subparts as No. 9]:

Harman objects to Interrogatory No. 7 [counted with subparts as No. 9] as premature, overly broad and unduly burdensome because MIT has not identified any asserted claim from the 58 claims of the patent-in-suit.  Subject to its asserted objections, Harman refers MIT, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has made available for inspection, including without limitation documents bates numbered: HAR 000168-HAR 000759.

Interrogatory No. 8:

If Harman contends that any of the products and services identified by Interrogatory 1 do not infringe the claims of the '685 Patent, state the basis, including a claim chart, for such a contention.

<u>Response to Interrogatory No. 8 [counted with subparts as No. 10]</u>:

Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein.

Harman objects to Interrogatory No. 8 [counted with subparts as No. 10] as premature, overly

broad and unduly burdensome because MIT has not identified any asserted claim from the 58

claims of the patent-in-suit. Subject to its asserted objections, Harman refers MIT, pursuant to

Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has

made available for inspection, including without limitation documents bates numbered: HAR

000168-HAR 000759.

Dated:  November 2, 2005

Respectfully submitted,

Robert J. Muldoon, Jr., BBO# 359480
James W. Matthews, BBO# 560560
Edward S. Cheng, BBO# 634063
Courtney A. Clark, BBO# 651381
**SHERIN AND LODGEN, LLP**
101 Federal Street
Boston, MA 02110

William A. Streff Jr., P.C.
Michelle A. H. Francis
Jamal M. Edwards
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

Attorneys for Defendant

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 05-10990-DPW |

## HARMAN'S SECOND SUPPLEMENTAL RESPONSE TO MIT'S INTERROGATORY NO. 8

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Court's February 2, 2006 Order granting the parties' Joint Motion to Suspend Motions to Compel and For Entry of Scheduling Order, defendant Harman International Industries Inc. ("Harman") submits the following response and objections to plaintiff Massachusetts Institute of Technology's ("MIT") Interrogatory No. 8.

## GENERAL OBJECTIONS

Harman incorporates its General Objections to MIT's First Set of Requests For the Production of Documents and Things (1-26) as if fully set forth herein.

## Interrogatory No. 8

If Harman contends that any of the products and services identified by Interrogatory 1 do not infringe the claims of the '685 Patent, state the basis, including a claim chart, for such a contention.

**Response to Interrogatory No. 8 [counted with subparts as No. 10]**

Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein. Harman objects to Interrogatory No. 8 [counted with subparts as No. 10] as premature, overly broad and unduly burdensome because MIT has not identified any asserted claim from the 58 claims of the patent-in-suit. Subject to its asserted objections, Harman refers MIT, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has made available for inspection.

**Supplemental Response to Interrogatory No. 8 [counted with subparts as No. 10]**

Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein. Harman objects to Interrogatory No. 8 [counted with subparts as No. 10] as premature, overly broad and unduly burdensome because MIT has not identified any asserted claim from the 58 claims of the patent-in-suit. Subject to its asserted objections, Harman refers MIT, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, to documents and things that Harman has made available for inspection, including without limitation documents bates numbered: HAR 00168-HAR 000759.

**Second Supplemental Response to Interrogatory No. 8 [counted with subparts as No. 10]**

Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein. Harman objects to Interrogatory No. 8 [counted with subparts as No. 10] as premature, overly broad and unduly burdensome because MIT has not yet provided its preliminary claim construction as to any single claim of the '685 Patent. Harman also objects to this interrogatory as premature because responsive information is the subject of ongoing discovery and investigation, and will be the subject of expert analysis and testimony. Further, the Court has not provided its construction of disputed terms of the asserted claims. Accordingly, Harman

2

reserves the right to supplement its responses to this interrogatory under Federal Rules of Civil Procedure 26(e) after sufficient time for fact and expert discovery and as necessary upon the discovery of additional facts.  Moreover, Harman has provided documents pursuant to Rule 33(d) in response to this interrogatory.

MIT has identified the following claims as claims that it has asserted in this case, and accordingly, Harman limits its response to this interrogatory to these claims:  Claims 1, 7, 10, 11, 13, 19, 20, 23, 27, 28, 35, 37, 40, 48, 49, 53 and 54.  Subject to and without waiving its general and specific objections, Harman states as follows:

None of the Harman systems have at least the following limitations of claim 1:

- driver input means functionally connected to said computing apparatus for entering data into said computing apparatus, said data including a desired destination,

- a map database functionally connected to said computing apparatus which distinguishes between physical and legal connectivity,

- position sensing apparatus installed in the automobile and functionally connected to said computing apparatus for providing said computing apparatus data for determining the automobile's current position,

- a location system functionally connected to said computing apparatus for accepting data from said position sensing apparatus, for consulting said map database, and for determining the automobile's current position relative to the map database,

- a route-finder functionally connected to said computing apparatus, for accepting the desired destination from said driver input means and the current position from said location system, for consulting said map database, and for computing a route to the destination,

- a discourse generator functionally connected to said computing apparatus for accepting the current position from said location system and the route from said route finder, for consulting said map database, and for composing discourse including instructions and other messages for directing the driver to the destination from the current position

- a speech generator functionally connected to said discourse generator for generating speech from said discourse provided by said discourse generator, and

- voice apparatus functionally connected to said speech generator for communicating said speech provided by said speech generator to said driver.

Because none of the Harman systems infringe claim 1, no dependent claim is infringed, either. In addition, none of the Harman devices have the additional limitations recited in each of at least the following asserted dependent claims: 7, 10, 11, 13, 20, 23, 27, 40, 48, 49, 53, and 54.

Since each asserted claim is invalid, and it is legally impossible to infringe an invalid claim, none of the asserted claims are infringed for this additional reason, as well.

Furthermore, MIT has the burden of proof on infringement and has not demonstrated a prima facie case that any limitation of any asserted claim is present in any accused Harman device. In the event that MIT's supplementation provides any such analysis, Harman will supplement this response as quickly as practicable once receiving such analysis.

Dated: February 15, 2006                   Respectfully submitted,

                                           /s/ Craig D. Leavell /s/
                                           Robert J. Muldoon, Jr., BBO# 359480
                                           James W. Matthews, BBO# 560560
                                           Edward S. Cheng, BBO# 634063
                                           Courtney A. Clark, BBO# 651381
                                           **SHERIN AND LODGEN, LLP**
                                           101 Federal Street
                                           Boston, MA 02110

                                           William A. Streff Jr., P.C.
                                           Craig D. Leavell
                                           Michelle A.H. Francis
                                           **KIRKLAND & ELLIS LLP**
                                           200 E. Randolph Dr.
                                           Chicago, IL 60601
                                           (312) 861-2000 (phone)
                                           (312) 861-2200 (fax)

                                           *Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br><br>Defendant. | Civil Action No. 05-10990-DPW |

## HARMAN'S SUPPLEMENTAL RESPONSE TO MIT'S INTERROGATORY NOS. 5, 8, and 9 FROM MIT'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, defendant Harman International Industries Inc. ("Harman") submits the following supplemental responses and objections to plaintiff Massachusetts Institute of Technology's ("MIT") Interrogatory Nos. 5, 8, and 9.

## GENERAL OBJECTIONS

Harman incorporates its General Objections to MIT's First Set of Requests For the Production of Documents and Things (1-26) as if fully set forth herein.

## Interrogatory No. 5

If Harman contends that the '685 Patent is invalid, state the basis for such a contention, and identify all prior art Harman contends supports that contention.

## Supplemental Response to Interrogatory No. 5 [counted with subparts as No. 7]

MIT has asserted the following claims: 1, 7, 10, 11, 13, 19, 20, 23, 27, 28, 35, 37, 40, 48, 49, 53 and 54. Accordingly, Harman limits its response to this interrogatory to those asserted

claims. Harman objects to this interrogatory as premature because responsive information is the subject of ongoing discovery and investigation, and will be the subject of expert analysis and testimony. Further, the Court has not provided its construction of disputed terms of the asserted claims. Accordingly, Harman reserves the right to supplement its responses to this interrogatory under Rule 26(e) of the Federal Rules of Civil Procedure after sufficient time for fact and expert discovery and as necessary upon the discovery of additional facts.

Subject to its asserted objections, Harman refers MIT to (i) Harman's Preliminary Invalidity Contentions; (ii) its Supplemental Response to Interrogatory No. 9 [counted with subparts as No. 11]; and (iii) documents Harman has provided pursuant to Rule 33(d) of the Federal Rules of Civil Procedure in response to this interrogatory, including without limitation documents bates numbered:  HAR 000192-HAR 000229, HAR 006160-HAR 006166, HAR 090436-HAR 090524, and HAR 000272-HAR 000742.

**Interrogatory No. 8**

If Harman contends that any of the products and services identified by Interrogatory 1 do not infringe the claims of the '685 Patent, state the basis, including a claim chart, for such a contention.

**Third Supplemental Response to Interrogatory No. 8 [counted with subparts as No. 10]**

Harman incorporates its objections to Interrogatory No. 1 as if fully set forth herein. Harman objects to Interrogatory No. 8 [counted with subparts as No. 10] as premature, overly broad and unduly burdensome because MIT has not yet provided its preliminary claim construction as to any single claim of the '685 Patent. Harman also objects to this interrogatory as premature because responsive information is the subject of ongoing discovery and investigation, and will be the subject of expert analysis and testimony. Further, the Court has not provided its construction of disputed terms of the asserted claims. Accordingly, Harman reserves the right to supplement its responses to this interrogatory under Federal Rules of Civil

2

Procedure 26(e) after sufficient time for fact and expert discovery and as necessary upon the discovery of additional facts. Moreover, Harman has provided documents pursuant to Rule 33(d) in response to this interrogatory.

MIT has asserted the following claims: 1, 7, 10, 11, 13, 19, 20, 23, 27, 28, 35, 37, 40, 48, 49, 53 and 54. Accordingly, Harman limits its response to this interrogatory to those claims. Subject to and without waiving its general and specific objections, Harman states as follows:

None of the Harman systems have at least the following limitations of claim 1:

- driver input means functionally connected to said computing apparatus for entering data into said computing apparatus, said data including a desired destination,

- a map database functionally connected to said computing apparatus which distinguishes between physical and legal connectivity,

- position sensing apparatus installed in the automobile and functionally connected to said computing apparatus for providing said computing apparatus data for determining the automobile's current position,

- a location system functionally connected to said computing apparatus for accepting data from said position sensing apparatus, for consulting said map database, and for determining the automobile's current position relative to the map database,

- a route-finder functionally connected to said computing apparatus, for accepting the desired destination from said driver input means and the current position from said location system, for consulting said map database, and for computing a route to the destination,

- a discourse generator functionally connected to said computing apparatus for accepting the current position from said location system and the route from said route finder, for consulting said map database, and for composing discourse including instructions and other messages for directing the driver to the destination from the current position

- a speech generator functionally connected to said discourse generator for generating speech from said discourse provided by said discourse generator, and

- voice apparatus functionally connected to said speech generator for communicating said speech provided by said speech generator to said driver.

Because none of the Harman systems infringe claim 1, no dependent claim is infringed, either.  In addition, none of the Harman devices have the additional limitations recited in each of at least the following asserted dependent claims: 7, 10, 11, 13, 20, 23, 27, 40, 48, 49, 53, and 54.

Since each asserted claim is invalid, and it is legally impossible to infringe an invalid claim, none of the asserted claims are infringed for this additional reason, as well.

Furthermore, MIT has the burden of proof on infringement and has not demonstrated a prima facie case that any limitation of any asserted claim is present in any accused Harman device.  In the event that MIT's supplementation provides any such analysis, Harman will supplement this response as quickly as practicable once receiving such analysis.

Harman also refers MIT to its supplemental response to Interrogatory No. 9 [counted with subparts as No. 11].

**Interrogatory No. 9**

State whether Harman has ever solicited or received, directly or indirectly, from any source, or prepared on its own any opinion, search, report or advice, written or oral, concerning the infringement, noninfringement, validity or enforceability of the '685 Patent, and identify all documents and prior art constituting, concerning, or identified by the opinion, search, report or advice, and all persons who prepared, presented or assisted in the preparation of such opinion, search, report or advice.  If such opinion, search, report or advice was solicited but never received, identify all persons who made the inquiry or investigation.

**Supplemental Response to Interrogatory No. 9 [counted with subparts as No. 11]**

Harman objects to Interrogatory No. 9 [counted with subparts as No. 11] as not likely to lead to the discovery of admissible evidence and seeking information protected by the attorney-client privilege, work product privilege, and/or other applicable privileges.  Subject to its asserted objections, Harman states that it solicited, received, and has relied on the opinion of counsel, including all exhibits and things cited therein, provided by Meredith Martin Addy, Esq. and Brinks Hofer Gilson & Lione, which Harman has made available for inspection at bates

number HAR 089895- HAR 089954.  Harman also refers MIT, pursuant to Rule 33(d) of the

Federal Rules of Civil Procedure, to documents and things that Harman has made available for

inspection, including without limitation documents bates numbered:

```
HAR 006016-HAR 006020
HAR 006036-HAR 006037
HAR 006067
HAR 006083-HAR 006098
HAR 006131
HAR 006134-HAR 006137
HAR 006146-HAR 006149
HAR 006151-HAR 006152
HAR 006192-HAR 006196
HAR 006287
HAR 006290-HAR 006291
HAR 006307
HAR 006311
HAR 006313-HAR 006314
HAR 006330
HAR 006337
HAR 006340
HAR 006344
HAR 006346
HAR 006349
HAR 006351
HAR 006356-HAR 006357
HAR 006397-HAR 006399
HAR 006465
HAR 006504-HAR 006505
HAR 006515-HAR 006518
HAR 006632
HAR 006635
HAR 006640
HAR 006650
HAR 006651-HAR 006666
HAR 006675-HAR 006681
HAR 006687-HAR 006697
HAR 006699
HAR 006703-HAR 006704
HAR 006706
HAR 006711
HAR 006716-HAR 006719
HAR 006721-HAR 006724
HAR 006731-HAR 006735
```

HAR 006742
HAR 006750-HAR 006758
HAR 006759-HAR 006762
HAR 006764-HAR 006766
HAR 006769
HAR 006774-HAR 006776
HAR 006778
HAR 006783-HAR 006784
HAR 006812
HAR 006839
HAR 006866-HAR 006868
HAR 006879-HAR 006880
HAR 006906-HAR 006907
HAR 006928
HAR 006941
HAR 006984
HAR 007005
HAR 007009-HAR 007015
HAR 007021-HAR 007022
HAR 007028-HAR 007030
HAR 007041
HAR 007042-HAR 007048
HAR 007050-HAR 007051
HAR 007112
HAR 007117-HAR 007119
HAR 007130
HAR 007134-HAR 007136
HAR 007147-HAR 007148
HAR 007154
HAR 007164
HAR 007167
HAR 007170
HAR 007178
HAR 007368
HAR 007519
HAR 007629
HAR 007708
HAR 007783
HAR 007874
HAR 007917
HAR 007968
HAR 008078
HAR 008157
HAR 008232-HAR 008323
HAR 008366
HAR 008417

HAR 008607
HAR 008758-HAR 008760
HAR 008768-HAR 008772
HAR 008785
HAR 008795
HAR 008805
HAR 093130-HAR 093202
HAR 093203-HAR 093224

Dated: March 2, 2006                    Respectfully submitted,


/s/ Michelle A.H. Francis /s/
Robert J. Muldoon, Jr., BBO# 359480
James W. Matthews, BBO# 560560
Edward S. Cheng, BBO# 634063
Courtney A. Clark, BBO# 651381
**SHERIN AND LODGEN, LLP**
101 Federal Street
Boston, MA  02110

William A. Streff Jr., P.C.
Craig D. Leavell
Michelle A.H. Francis
**KIRKLAND & ELLIS LLP**
200 E. Randolph Dr.
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing HARMAN'S SUPPLEMENTAL

RESPONSE TO MIT'S INTERROGATORY NOS. 5, 8, AND 9 was sent by electronic-mail this

2nd day of March, 2006, address to counsel for MIT as follows:

> Steven M Bauer
> Kimberly A. Mottley
> Proskauer Rose LLP
> One International Place, 14th Floor
> Boston, MA  02110-2600
> Email:  sbauer@proskauer.com
>             kmottley@proskauer.com
>
> *Counsel for Plaintiff MIT*

_____
One of the Attorneys for Harman

One International Place
22nd Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

**Kimberly A. Mottley**
Direct Dial: 617-526-9616
Email: kmottley@proskauer.com

March 20, 2006

*Via Electronic Mail*

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Re:    MIT v. Harman International Industries, Inc., No. 05-10990 DPW (D. Mass.)

Dear Craig:

Per your request during our March 16 conversation, below is a list of outstanding discovery issues which I would like to discuss with you and/or Ann Chen tomorrow, March 21:

1.    Status of Harman's gathering and production of the documents requested by my February 27 letter (re: Eelman documents) and John Pint's March 9 letter (re: Radomski documents);

2.    Status of stipulation concerning Harman's customers, sent you by email on March 13;

3.    Status of draft amendment to protective order, per my March 9 email to Ann Chen;

4.    Status of resolving the issues with respect to Harman's 2 recent CDs, and deposition exhibits, as detailed in my March 16 email;

5.    Issues raised by my March 17 letter concerning depositions, and your responsive email later that day;

6.    Issues raised by my March 18 letter concerning Harman's correspondence with its customers;

7.    Status of Harman's document collection and production concerning NTG4, as per our amendment to Interrogatory No. 5 by John Pint's March 17 letter;

8.    Status of Harman's correction of its misstatements made in the Supplemental Responses served on March 2, 2006;

PROSKAUER ROSE LLP

Craig D. Leavell, Esq.
March 20, 2006
Page 2


9.      Status of Harman's production of the 166 documents listed on Harman's privilege log, as discussed in my February 13, 2006 letter to Jamal Edwards;

10.     Status of Harman's production in electronic form of the PowerPoint presentations marked during the depositions of Harman's witnesses;

11.     Status of Harman's production of the document categories discussed in Section II of my February 10, 2006 letter to Jamal Edwards (including patent applications, future production capacity documents, and Zeevi litigation documents), and supplementation of Harman's response to Interrogatory No. 9 as discussed in Section III of that letter;

12.     Status of your confirmation that each of the witnesses listed by Harman in any of its initial disclosures or interrogatory responses had searched their files for responsive documents, including their email files, and sent any responsive documents found to counsel or the central server files for production (as you agreed during our February 23 conversation, as memorialized in my February 27 letter); and

13.     Status of production of documents from Dr. Wietzke.

                        *           *           *

        Please let me know whether you will be available to discuss these issues at 2:00 EST on Tuesday.

                        Sincerely,

                        Kimberly A. Mottley

                        Kimberly A. Mottley

One International Place
22nd Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

Kimberly A. Mottley
Direct Dial: 617-526-9616
Email: kmottley@proskauer.com

May 1, 2006

***Via Electronic Mail***

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601

Re:    MIT v. Harman International Industries, Inc., No. 05-10990 DPW (D. Mass.)

Dear Craig:

I write to follow up on our April 28 discussion concerning contentions, and your request that we supplement Harman's Interrogatory No. 11 with a specific claim limitation by claim limitation response concerning field trials.  Before you rush off and file a motion concerning contentions, we have some ideas for how we might resolve these issues which we'd like to discuss with you, as described below.

With respect to contentions, your assertion that MIT has refused to provide detailed validity positions rings a bit hollow, in light of Harman's failure to provide detailed non-infringement contentions in response to MIT's Interrogatory No. 8 (despite the detailed and supported infringement contentions MIT has provided to date).

This isn't the first time we've asked for a substantive supplementation of this interrogatory.  In fact, pursuant to the parties' agreement, the Court ordered Harman to provide substantive supplementations to this interrogatory on February 15, 2006.  (See February 2, 2006 Electronic Order on Docket No. 43.)  However, on February 15, Harman provided an insubstantial response, which merely stated that Harman's systems lacked essentially every element of claim 1 of the '685 patent, with no detailed basis for that contention whatsoever.

On March 2, 2006, Harman again supplemented this interrogatory, again without substantive non-infringement positions.  That response also misstated the status of the parties' claim construction exchange, as well as the claims of the '685 patent that MIT had asserted at that time.  Although we asked for supplementation and correction of this interrogatory during the conversations surrounding my March 20, 2006 letter, Harman still has not supplemented this interrogatory.

PROSKAUER ROSE LLP

Craig D. Leavell, Esq.
May 1, 2006
Page 2

If you are willing to provide a substantive supplementation of MIT's non-infringement interrogatory, we can discuss with you a mutual exchange. At this point, however, given your repeated failures to update when you have agreed to do so, we will need some assurance that you are prepared to provide substantive answers, rather than that you are simply pressing for information from MIT that you are not prepared to give yourself.

*          *          *

On a related note, the financial information Harman just provided to us in terms of the many European-originated products at issue in this suit is problematic in that while Harman has identified over a dozen products as at issue here, its damages documents do not break these numbers down as how they apply to each product.

One way to handle this, and to help make the upcoming discovery (including the German depositions, and Harman's supplementation of its non-infringement positions) as efficient as possible, is to come to an agreement that, for purposes of this litigation, Harman will agree that all products listed in your April 21, 2006 letter operate the same way, functionally, to the extent their operation would bear on infringement. Alternatively, perhaps phrased a different way, if we can agree that one or two products are "representative" for purposes of infringement, then we can agree that Harman does not need to break down its financials on a product-by-product basis. This would simplify the case for both of us.

If you do not agree, unfortunately, then we need, and are entitled to, detailed discovery responses differentiating each product from the next -- in both the non-infringement contention interrogatories that you owe us, and in the financial documents.

Please let us know when you are ready to discuss these matters further. We hope to be able to reach some resolution.

Sincerely,

Kimberly A. Mottley

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

      Plaintiff,

v.

HARMAN INTERNATIONAL
INDUSTRIES, INCORPORATED,

      Defendant.

Civil Action No.: 05-10990 DPW

Magistrate Judge Judith G. Dein

# EXHIBIT 8 PLACEHOLDER

# TO BE FILED UNDER SEAL AT A LATER DATE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

      Plaintiff,

v.

HARMAN INTERNATIONAL
INDUSTRIES, INCORPORATED,

      Defendant.

Civil Action No.: 05-10990 DPW

Magistrate Judge Judith G. Dein

# EXHIBIT 9 PLACEHOLDER

# TO BE FILED UNDER SEAL AT A LATER DATE

**Mottley, Kimberly**

| | |
|---|---|
| **From:** | Mottley, Kimberly |
| **Sent:** | Tuesday, May 09, 2006 9:15 AM |
| **To:** | Harman-MIT@kirkland.com |
| **Cc:** | MIT_Harman |
| **Subject:** | FW: MIT/Harman - Interrogatory Verification Pages |
| | |
| **Attachments:** | MIT Verification 1st Supp Nos. 11-15 2006-05-08.pdf; MIT Verification 2nd Supp Nos. 13-14 2006-05-08.pdf; 2006.04.24. MIT's Verification of Amended Responses to Harman's 1st Set of Rogs Nos 1-5.pdf; 2006.04.24. MIT's Verification of Responses to Harman's 2nd Set of Rogs Nos 8-20.pdf |

Craig -

Attached are verification pages for MIT's most recent interrogatory responses.

We have received no response to the email request below (sent two weeks ago).  Please advise when we will receive Harman's verification pages for its six outstanding sets of interrogatory responses.

Regards,

Kim

  

MIT Verification 1st    MIT Verification 2nd
Supp Nos....            Supp Nos....

Kimberly A. Mottley| PROSKAUER ROSE LLP
One International Place | Boston, MA 02110-2600
V: 617.526.9616 | F: 617.526.9899
kmottley@proskauer.com | www.proskauer.com

---

| | |
|---|---|
| **From:** | Mottley, Kimberly |
| **Sent:** | Wednesday, April 26, 2006 2:49 PM |
| **To:** | Harman-MIT@kirkland.com |
| **Cc:** | MIT_Harman |
| **Subject:** | MIT/Harman - Interrogatory Verification Pages |

Counsel -

Attached are Jack Turner's verification pages for MIT's past two rounds of interrogatory responses.

As of today, the only verification page we've received from Harman was in September 2005, verifying Harman's original responses to MIT's interrogatories.  Thus, we have not received verification pages for your additional / supplemental responses received on November 2, 2005, December 21, 2005, February 15, 2006, March 2, 2006, March 3, 2006, or March 22, 2006.

Please provide these to us at your earliest convenience.

Regards,

Kim




2006.04.24. MIT's    2006.04.24. MIT's
Verification...       Verification...

Kimberly A. Mottley| PROSKAUER ROSE LLP
One International Place | Boston, MA 02110-2600
V: 617.526.9616 | F: 617.526.9899
kmottley@proskauer.com | www.proskauer.com

**Mottley, Kimberly**

| | |
|---|---|
| **From:** | Craig Leavell [cleavell@kirkland.com] |
| **Sent:** | Wednesday, May 17, 2006 2:46 PM |
| **To:** | Mottley, Kimberly |
| **Cc:** | Harman-MIT@kirkland.com; MIT_Harman |
| **Subject:** | RE: MIT/Harman - Privilege Log and Sales Documents |

Kim,

We are still investigating the sales numbers.  Regarding verification of responses, we note that MIT's interrogatory responses are largely deficient, provide no detail, and in many cases MIT refuses to respond, including those interrogatories for which we recently moved to compel.  It is inappropriate for MIT to press Harman for verified interrogatory responses while refusing to provide any meaningful responses yourself.  That being said, Mr. Hart may be the person who will be verifying supplemental versions of Harman's responses.  As you know, Mr. hart is being deposed today, and has been busy preparing for that deposition and assisting us to deal with MIT's other issues, such as issues of privilege and redactions.

Craig

"Mottley, Kimberly" <kmottley@proskauer.com>

05/17/2006 01:26 PM

To "Craig Leavell" <cleavell@kirkland.com>

cc Harman-MIT@kirkland.com, "MIT_Harman" <MIT_Harman@proskauer.com>

Subject RE: MIT/Harman - Privilege Log and Sales Documents

Craig - When can we expect a response to the inquiry below?  Also, when can we expect Harman's interrogatory verification pages?

Kim

Kimberly A. Mottley| PROSKAUER ROSE LLP
One International Place | Boston, MA 02110-2600
v: 617.526.9616 | F: 617.526.9899
kmottley@proskauer.com | www.proskauer.com

**From:** Mottley, Kimberly
**Sent:** Thursday, May 11, 2006 4:21 PM
**To:** 'Craig Leavell'
**Cc:** Harman-MIT@kirkland.com; MIT_Harman
**Subject:** RE: MIT/Harman - Privilege Log and Sales Documents

Craig -

Basically, we want the total number of U.S. targeted Harman automobile navigation units sold.  In the stipulation, we addressed the imported products, and thus Harman agreed to provide the "quantity of Harman automobile navigation units imported into the United States, or alternatively, the total quantity of map database CDs licensed for Harman's U.S. targeted products (agreeing that the latter is a fair proxy for the former)."

If Harman isn't willing to state in a letter the total number of U.S. targeted products, or the total number of such imported products, and expects us instead to rely on PDX 59 and 60, we need an explanation of the rows, columns, and data therein so that we can make meaningful use of those documents.

I look forward to hearing from you.

Kim


Kimberly A. Mottley| PROSKAUER ROSE LLP
One International Place | Boston, MA 02110-2600
V: 617.526.9616 | F: 617.526.9899
kmottley@proskauer.com | www.proskauer.com

---

**From:** Craig Leavell [mailto:cleavell@kirkland.com]
**Sent:** Thursday, May 11, 2006 11:18 AM
**To:** Mottley, Kimberly
**Cc:** Harman-MIT@kirkland.com; MIT_Harman
**Subject:** Re: MIT/Harman - Privilege Log and Sales Documents


Kimberly,

In response to you letter re damages, please let me know what you are looking for and I will see if I can get it. Your letter does not specify what it is that you are seeking to know.

Craig


"Mottley, Kimberly" <kmottley@proskauer.com>


05/11/2006 10:07 AM

To  Harman-MIT@kirkland.com

cc  "MIT_Harman" <MIT_Harman@proskauer.com>

Subject  MIT/Harman - Privilege Log and Sales Documents


Craig/Colleen - Please see the attached correspondence.


5/23/2006

<<2006.05.11 Ltr Mottley to Leavell re Damages.pdf>>  <<2006.05.11 Ltr Mottley to Garlington re Privilege Log.pdf>>

Kimberly A. Mottley| PROSKAUER ROSE LLP
One International Place | Boston, MA 02110-2600
V: 617.526.9616 | F: 617.526.9899
kmottley@proskauer.com | www.proskauer.com <http://www.proskauer.com/index.html>

---------------------------------------------------------------------------

This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

===========================================================================


************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
************************************************************


-------------------------------------------------------------------------------

This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

=================================================================================


************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

# PROSKAUER ROSE LLP

One International Place
22nd Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

**Kimberly A. Mottley**
Direct Dial: 617-526-9616
Email: kmottley@proskauer.com

April 13, 2006

**_Via Electronic Mail_**

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601

Re:     MIT v. Harman International Industries, Inc., No. 05-10990 DPW (D. Mass.)

Dear Craig:

We are in receipt of Harman's March 22, 2006 Notice of Rule 30(b)(6) Deposition of MIT (the "Notice") in connection with the above-captioned lawsuit.

Pursuant to Fed. R. Civ. P. 26 and 30, MIT hereby objects to the Notice on the following grounds.  MIT's General Objections, as stated in its Responses to Harman's First Set of Requests for the Production of Documents and Things (Nos. 1-29) are incorporated herein by reference. MIT further objects on the following grounds:

1.     MIT specifically objects to Topic 1 as seeking legal conclusion testimony on which fact depositions are inappropriate.  MIT will brief its positions on claim construction when requested by the Court.

2.     MIT specifically objects to Topic 2 as it presumes facts not in evidence, is overly broad and unduly burdensome, and to the extent that it seeks information subject to the attorney client privilege and/or work product doctrines.

3.     MIT specifically objects to Topic 3 as it is overly broad and unduly burdensome, and to the extent that it seeks information subject to the attorney client privilege and/or work product doctrines.

4.     MIT specifically objects to Topic 4 as it presumes facts not in evidence, is ambiguous as to the time frame, and is overly broad and unduly burdensome.

5.     MIT specifically objects to Topic 5 as it seeks information protected by the attorney-client privilege and work product doctrines.

PROSKAUER ROSE LLP

Craig D. Leavell, Esq.
April 13, 2006
Page 2


      6.     MIT specifically objects to Topic 6 as seeking legal conclusion testimony on which fact depositions are inappropriate.  MIT may rely upon expert testimony as to the issues included within Topic 6, and Harman will get the chance to depose MIT's experts on those issues, to the extent such issues are within the scope of their expert reports.

      7.     MIT specifically objects to Topic 7 to the extent that it calls for legal conclusion testimony on which fact depositions are inappropriate.

*          *          *

      Subject to, and notwithstanding the above-listed objections, MIT is willing to produce Chris Schmandt to provide testimony on MIT's behalf as to the non-objectionable portions of Topics 2, 3, 4 and 7 on May 2, 2006, at Proskauer's Boston Office.


                Sincerely,

                Kimberly A. Mottley

**Baron, Jacob K.**

| | |
|---|---|
| **From:** | Baron, Jacob K. |
| **Sent:** | Thursday, May 18, 2006 1:09 PM |
| **To:** | Harman-MIT@kirkland.com |
| **Cc:** | MIT_Harman |
| **Subject:** | MIT/Harman -- MIT Rule 30(b)(6) deposition |

Counsel- For purposes of tomorrow's deposition, MIT will allow Mr. Schmandt to testify on its behalf as to the factual portions of Topic 5 of Harman's deposition notice (steps taken by MIT prior to filing suit).

MIT does not intend to waive any privilege or work product protections during the deposition, and will instruct Mr. Schmandt not to answer any questions that go beyond such facts to attorney work product or privileged information.

Regards,

Jacob K. Baron | **PROSKAUER ROSE LLP**
One International Place | Boston, MA 02110-2600
V: 617.526.9886 | F: 617.526.9899
jbaron@proskauer.com | www.proskauer.com

# PROSKAUER ROSE LLP

One International Place
22ⁿᵈ Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

**Kimberly A. Mottley**
Direct Dial:  617-526-9616
Email: kmottley@proskauer.com

February 15, 2006

*Via Electronic Mail*

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601

Re:    MIT v. Harman International Industries, Inc., No. 05-10990 DPW (D. Mass.)

Dear Craig:

I write pursuant to the parties' agreement to exchange preliminary claim constructions, and amended interrogatory responses, today.

MIT's amended responses to interrogatories 1-5 are enclosed herewith.  As you'll see, MIT's response to Interrogatory No. 5 incorporates by reference MIT's updated infringement contentions, which are attached thereto.

MIT's preliminary claim construction contentions are discussed below.  Of course, because we don't have your contentions yet, this is only a preliminary exchange for discussion purposes, and MIT reserves the right to add to or modify its positions at any time prior to the Court's issuance of its *Markman* decision, based on positions Harman takes or the evidence adduced during discovery.

PROSKAUER ROSE LLP

Craig D. Leavell, Esq.
February 15, 2006
Page 2

## Claim Construction

At this time, MIT believes that, but for the following terms for which clarification may prove useful for the jury, the remaining terms of the claims of U.S. Patent No. 5,177,685 should be given their ordinary meaning, and do not require further construction by the Court:

1.    physical connectivity: how pieces of pavement connect (support is found in Col. 2, lns. 13-14 of the patent).

2.    legal connectivity:    whether one can legally drive onto a physically connected piece of pavement (support is found in Col. 2, lns. 14-16 of the patent).

3.    discourse generator:    a functional module, in software or hardware, which composes driving instructions and other messages according to a *discourse model*, for delivery at the appropriate time and place, and based on the current position of a vehicle and its planned route, (support is found in Col. 3, lns. 35-38; Col. 13, lns. 46-47; and Col. 23, lns. 6-15 of the patent). A "discourse model" is a way to provide information needed by a conversation participant in context to enable the conversation participant to determine why an utterance was provided and what the utterance means.

*          *          *

Sincerely,

Kimberly A. Mottley

Enclosures

MIT v. Harman International Industries, Inc., 05-10990 DPW (D. Mass.)

| Claim of the '685 Patent | MIT Proposed Construction |
|---|---|
| What is claimed is:<br><br>1. An automobile navigation system which produces spoken instructions to direct a driver of an automobile to a destination in real time comprising: | Plain/ordinary:<br>An automobile navigation system that provides spoken instructions to a driver of an automobile to a destination, where the instructions are provided to the driver in real time. |
| computing apparatus for running and coordinating system processes, | Plain/ordinary:<br>A computer-processor-based system that performs computer operations to process information or data. |
| driver input means functionally connected to said computing apparatus for entering data into said computing apparatus, said data including a desired destination, | Means-plus-function<br>The function recited is entering data into the computing apparatus, the data including a desired destination.<br><br>Structures included for performing the function include a computer keyboard (or its functional equivalents); a cellular telephone keypad (or its functional equivalents); speech input (*e.g.*, using speech recognition software); predictive spelling algorithms, or equivalent structures that allow the driver to input information to the computing apparatus.<br><br>**functionally connected**: a data communication path allowing the flow of information or data between the computing apparatus and the driver input. |
| a map database functionally connected to said computing apparatus which distinguishes between physical and legal connectivity, | A map database that contains information on both physical connectivity and legal connectivity and arranged so that the computing apparatus can gain access to this information.<br><br>**physical connectivity**: how pieces of pavement connect or whether two segments touch<br><br>**legal connectivity**: whether one can legally drive onto a physically connected piece of pavement or whether it is legal to travel from one segment to another. |
| position sensing apparatus installed in the automobile and functionally connected to said computing apparatus for providing said computing apparatus data for determining the automobile's current position, | A system within the automobile capable of determining the automobile's current position and providing data about the current position to the computing apparatus. |
| a location system functionally connected to said computing apparatus for accepting data from said position sensing apparatus, for consulting said map database, and for determining the automobile's current position relative to the map database, | A system capable of receiving data about the automobile's current position, comparing the current position to the data in the map database, and determining the automobile's current position. |

May 17, 2006

| Claim of the '685 Patent | MIT Proposed Construction |
|---|---|
| a route-finder functionally connected to said computing apparatus, for accepting the desired destination from said driver input means and the current position from said location system, for consulting said map database, and for computing a route to the destination, | **route finder**: A system capable of determining a route to the destination, based on the information provided by the driver. |
| a discourse generator functionally connected to said computing apparatus for accepting the current position from said location system and the route from said route finder, for consulting said map database, and for composing discourse including instructions and other messages for directing the driver to the destination from the current position, | **discourse generator**: A module, in software or hardware, which composes driving instructions and other messages according to a discourse model, for delivery at the appropriate time and place, and based on the current position of a vehicle and its planned route.<br><br>**discourse model**: a way to provide information needed by a conversation participant in context to enable the conversation participant to determine why an utterance was provided and what the utterance means. |
| a speech generator functionally connected to said discourse generator for generating speech from said discourse provided by said discourse generator, and | A system capable of receiving output from the discourse generator and converting the output into an electronic signal which will generate speech in the voice apparatus. |
| voice apparatus functionally connected to said speech generator for communicating said speech provided by said speech generator to said driver. | A system capable of receiving the electronic signal from the speech generator and for voicing the speech to the driver. |
| 2. The automobile navigation system of claim 1 wherein said **map database comprises a set of straight line segments and a set of nodes, each endpoint of each segment being a pointer to a node representing the coordinates of the endpoint and the set of other segments which are physically and legally connected to that endpoint**. | A map database that includes vectors and nodes, where vectors are associated with roads and nodes are associated with intersections of vectors. Information about whether actions are permissible at a particular intersection is associated with the node. |
| 7. The automobile navigation system of claim 1 wherein said **map database comprises a three-dimensional representation of street topology**. | Plain/ordinary:<br>A map database that is capable of providing three-dimensional topology. |
| 8. The automobile navigation system of claim 1 wherein said **map database includes measures of street quality**. | A map database which includes a characteristic indicative of speed of travel, number of lanes, surface roughness, traffic, or other characteristics used by the route-finder to determine an optimal route based on the objective of the driver. |
| 9. The automobile navigation system of claim 1 wherein said **map database distinguishes divided streets**. | A map database which includes a characteristic indicative of whether a portion of pavement is divided from another portion of pavement. A portion of pavement is divided from another portion of pavement when a U-turn is not physically or legally possible on a particular portion of pavement. |

May 17, 2006                    -2-

| Claim of the '685 Patent | MIT Proposed Construction |
|---|---|
| 10. The automobile navigation system of claim 1 wherein said **map database includes landmarks such as signs, traffic lights, stop signs and buildings**. | Plain/ordinary:<br>A map database which includes landmarks. |
| 11. The automobile navigation system of claim 1 wherein said **map database includes lane information**. | Plain/ordinary:<br>A map database which includes lanes.<br><br>A lane is a physical or legal demarcation providing for a single line of vehicular traffic. |
| 12. The automobile navigation system of claim 1 wherein said **map database includes speed limits**. | Plain/ordinary:<br>A map database which includes a characteristic indicative of the speed limit. |
| 13. The automobile navigation system of claim 1 wherein said **map database includes expected rate of travel**. | Plain/ordinary:<br>A map database which includes a characteristic indicative of the expected rate of travel. |
| 14. The automobile navigation system of claim 1 wherein said **map database includes time-dependent legal connectivity**. | Plain/ordinary:<br>A map database which includes a characteristic indicative of non-permanent legal connectivity. |
| 15. The automobile navigation system of claim 1 wherein said **map database includes turn difficulty**. | Plain/ordinary:<br>A map database which includes a characteristic indicative of the complexity of an intersection. |
| 19. The automobile navigation system of claim 1 wherein said **map database includes a database of service locations**. | Plain/ordinary:<br>A map database which includes information regarding locations of places where services are available to the driver. |
| 20. The automobile navigation system of claim 1 wherein said **map database includes a listing of famous places by name**. | Plain/ordinary:<br>A map database which includes information regarding locations and names of well-known or widely-known places. |
| 21. The automobile navigation system of claim 1 further comprising **means for updating said map database**. | Means-plus-function<br><br>The function recited is to update the map database. Inherent in the specification, and also the claim, is the concept of replacing a particular version or iteration of the map data in the navigation system with a newer, more accurate version of the map data. |
| 27. The automobile navigation system of claim 1 wherein said **route finder is adapted to find a best route according to any one of three cost metrics: distance, speed, simplicity**. | The route-finder is capable of finding a route to the desired destination based on any of three cost metrics including distance of the route, estimated travel time or fastest estimated speed of travel, or simplicity. The route-finder is capable of using any of the three metrics based on the objective or preference of the driver. |

May 17, 2006                              -3-

| Claim of the '685 Patent | MIT Proposed Construction |
|---|---|
| 28. The automobile navigation system of claim 1 wherein said **route finder is adapted to calculate a new route if the driver or vehicle navigation system makes an error or if the route is unnavigable due to unforeseen circumstances, wherein said new route does not simply backtrack to the point of the error if a better route from the current location exists**. | The route-finder is capable of planning a new route if the driver or the vehicle navigation system makes an error or if the route is unnavigable due to unforeseen circumstances, while the car is traveling. The new route is calculated based on the current position of the automobile. |
| 29. The automobile navigation system of claim 1 wherein said **route finder is adapted to calculate a new route while the automobile is in motion, wherein said new route will begin from the location of the automobile at the time the calculation of the new route is completed**. | The route-finder is capable of planning a new route while the car is traveling. The new route is calculated based on the estimated position of the automobile after the estimated time for calculating the route has elapsed, rather than from the current position of the vehicle at the time when route calculation was begun. |
| 32. The automobile navigation system of claim 1 wherein said **location system is a position-keeping (dead-reckoning) system**. | Plain/ordinary: The location system involves dead-reckoning. |
| 33. The automobile navigation system of claim 1 wherein said **location system is a hybrid of position-keeping and position-finding systems**. | Plain/ordinary: The location system involves both position-keeping systems such as dead reckoning and positioning-finding systems such as GPS or radio beacons. |
| 34. The automobile navigation system of claim 1 wherein said **location system employs map matching**. | Plain/ordinary: The location system compares current position of the automobile to data in the map database to determine the position of the automobile on the map. |
| 35. The automobile navigation system of claim 1 wherein said **position sensing apparatus comprises displacement and direction sensors installed in the automobile**. | **displacement sensor**: A system that measures or processes distance data directly or that measures or processes velocity data or acceleration data and integrates over time to determine distance.<br><br>**direction sensor**: A system that measures or processes direction data, including, but not limited to data obtained from a compass, a steering wheel sensor, a differential odometer, or a gyroscope. |
| 37. The automobile navigation system of claim 1 wherein said **position sensing apparatus measures direction with a magnetic compass**. | Plain/ordinary: The position sensor can use data from or data provided to a compass.<br><br>A compass is an instrument that determines geographic direction. |

| Claim of the '685 Patent | MIT Proposed Construction |
|---|---|
| 40. The automobile navigation system of claim 1 wherein said **position sensing apparatus measures direction with a gyroscope**. | Plain/ordinary:<br>The position sensor can use data from or data provided to a gyroscope to determine either distance or direction.<br><br>A gyroscope is an instrument that measures orientation. |
| 41. The automobile navigation system of claim 1 wherein said **discourse generator is based on an object-oriented programming methodology**. | The discourse generator is programmed in an object-oriented computer language, and the objects are used to provide discourse output to the speech generator. |
| 42. The automobile navigation system of claim 1 wherein **each intersection in a route is classified into one type in a taxonomy of intersection types, and the disclosure generated in relation to each said intersection depends on its type**. | Intersections along the route that is determined by the route-finder are categorized according to the desired action of the driver relative to the particular intersection. The output of the discourse generator (including non-output) is based on the type of intersection. |
| 43. The automobile navigation system of claim 42 wherein said **taxonomy of intersection types includes continue, forced-turn, U-turn, enter, exit, onto-rotary, stay-on-rotary, exit-rotary, fork, turn, and stop**. | Plain/ordinary:<br>Types of intersections include any one of continue, forced-turn, U-turn, enter, exit, onto-rotary, stay-on-rotary, exit-rotary, fork, turn, or stop. |
| 44. The automobile navigation system of claim 42 wherein said **discourse generated further depends on a description function for each intersection type which generates a description given the length and tense of the desired description and the position along the route from which an instruction is to be given**. | Plain/ordinary:<br>One or more discourse functions are associated with intersection types. Each discourse function determines the type of discourse that is to be provided to the speech generator based on the type of intersection that is being approached, the length and language tense of the description, and the driver's position along the route relative to the intersection. |
| 45. The automobile navigation system of claim 1 wherein said **discourse generated comprises a long description of an act given substantially before the act is to be performed and a short description given at the time the act is to be performed**. | The discourse generator is capable of providing two or more outputs regarding the same intersection. The outputs are provided to the driver at different times in the form of instructions. The first instruction provides the driver with the action to next be taken in context. The second instruction is provided after the first instruction in a manner that identifies that the first instruction had been given. |
| 46. The automobile navigation system of claim 45 wherein said long descriptions includes **cues**. | Plain/ordinary:<br>A cue is a signal that is used to prompt the driver as to the next action to be taken. |
| 47. The automobile navigation system of claim 46 wherein said cue is a **landmark**. | Plain/ordinary:<br>A landmark is something visible to the driver that identifies the action to be taken by the driver. |

| Claim of the '685 Patent | MIT Proposed Construction |
|---|---|
| 48. The automobile navigation system of claim 1 wherein said driver input means includes **means for said driver to demand immediate instructions, or clarification or repetition of instructions already provided**. | Means-plus-function. The driver input allows the driver to (a) demand immediate instructions, (b) demand clarification of instructions already provided, or (c) demand repetition of instructions already provided, or any combination thereof. |
| 49. The automobile navigation system of claim 1 wherein said driver input means includes **means for said driver to indicate to said automobile navigation system that a given instruction provided by said system is impossible to complete for some reason and that a new route must be calculated**. | Means-plus-function<br><br>Function: to allow the driver to indicate that a given instruction is impossible to complete or to request that a new route be calculated.<br><br>The driver input allows the driver of the automobile to provide data to the system that a particular action can no longer be taken or that a new route is preferred. |
| 50. The automobile navigation system of claim 1 wherein said **driver input means comprises a voice recognition system to allow at least some driver input to be spoken**. | Means-plus function<br>The driver input allows the driver to provide data or information to the system via the driver's voice. The voice-recognition system accepts the driver's spoken output as an input and converts the output into commands for the computing apparatus that are used by the system to respond to the input. |
| 52. The automobile navigation system of claim 1 wherein said **automobile navigation system warns drivers of dangers inferred from knowledge of the road network**. | Plain/ordinary:<br>Warnings are provided to the driver based on dangers that are determined from knowledge of the road network. |
| 53. The automobile navigation system of claim 1 wherein said **automobile navigation system informs a driver if an error has been made as detected by the location system**. | Plain/ordinary:<br>A message is provided to the driver to alert the driver that an error has been made. |
| 54. The automobile navigation system of claim 1 wherein said **discourse generator is responsive to a user-model stored in said computing apparatus to customize discourse to the requirements and preferences of said driver**. | The discourse generator responds to requirements and preferences of the driver by customizing the discourse generated according to a user-model that is stored in the computing apparatus and accessible to the discourse generator. |
| 55. The automobile navigation system of claim 1 wherein said speech generator is a **speech synthesizer**. | A speech synthesizer is a system that generates acoustic speech signals that communicate an intended message by assembling language elements or phonemes under digital control. |
| 56. The automobile navigation system of claim 1 wherein said speech generator uses **digitized speech**. | Digitized speech involves generating acoustic speech signals that communicate an intended message in digitized or binary form for transmission to the driver. |

May 17, 2006                           -6-

One International Place
22nd Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

**Kimberly A. Mottley**
Direct Dial: 617-526-9616
Email: kmottley@proskauer.com

April 27, 2006

*Via Electronic Mail*

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Re:    MIT v. Harman International Industries, Inc., No. 05-10990 DPW (D. Mass.)

Dear Craig:

I write in response to your April 24 and 25 letters concerning MIT's 30(b)(6) deposition and recent interrogatory responses, and in response to Ms. Garlington's April 26 letter concerning the depositions of Mr. Call and Dr. Pasternack. This letter is meant briefly to address the issues raised therein, although I am happy to discuss these issues further with you on tomorrow's 2:00 p.m. call.

Harman has requested from MIT contention 30(b)(6) deposition testimony (Topics 1 and 6, and 7 to the extent that it calls for legal conclusions as to claim limitations), and contention interrogatory responses (9, 10, 12, 16, and 11 to the extent that it calls for legal conclusions as to claim limitations and invalidity contentions). Contentions are not appropriate topics for fact discovery. As MIT stated in its objections to Harman's requests, MIT will provide its validity and damages contentions through its expert reports and the depositions of its experts.

However, having exchanged our preliminary claim constructions, we think it makes sense to start discussions about where we might be able to reach agreement, and to narrow and clearly identify any disputes that we may not be able to resolve. Please let us know when you are available next week to start these discussions.

Also, enclosed herewith are supplemental responses to Interrogatories 11-15.

PROSKAUER ROSE LLP

Craig D. Leavell, Esq.
April 25, 2006
Page 2

\*　　　　\*　　　　\*

Finally, we will agree to reschedule the depositions of Mr. Call to May 11, Dr. Pasternack to May 12, and MIT's 30(b)(6) deponent to May 19, in Proskauer's Boston office, as a courtesy to Harman.

Sincerely,

Kimberly A. Mottley

Enclosure

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Craig D. Leavell
To Call Writer Directly:
312 861-2105
cleavell@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: 312 861-2200

April 28, 2006

**Via Electronic Mail**

Kimberly A. Mottley
Associate
Proskauer Rose LLP
One International Place, 14th Floor
Boston, Massachusetts 02110-2600

Re:    MIT v. Harman International Industries, Inc., No. 05-10990 DPW

Dear Kimberly:

I write in response to your April 27 letter, in which you agree "that it makes sense to start discussions about where we might be able to reach agreement, and to narrow and clearly identify and disputes that we may not be able to resolve" regarding claim construction issues. In preparation for discussions next week, please provide us with written positions on the following issues.

Does MIT dispute any of the following constructions? If so, please provide MIT's proposed constructions for these same phrases.

Claim 1

**driver input means:** This limitation is written in the "means-plus-function" format of Section 112, ¶ 6. The function recited in the claim is "entering data into said computing apparatus, said data including a desired destination." The structures disclosed in the specification for performing this function are (1) a computer keyboard or (2) a cellular telephone keypad. Accordingly, this limitation should be construed as follows: A computer keyboard, a cellular telephone keypad, or equivalent structure, which allows a user to enter data into the navigation system computer, including the desired destination.

**functionally connected:** connected in a way that facilitates transmission of information; this need not be a physical connection, but may instead include connection via wireless transmission

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

KIRKLAND & ELLIS LLP

Kimberly A. Mottley
April 28, 2006
Page 2

**a map database . . . which distinguishes between physical and legal connectivity:** a data base containing map information that includes separate but equal databases for representing each of physical and legal connectivity, thereby causing the route finder to consider only legal paths; this excludes a map database in which legal connectivity is represented as a link attribute.

**physical connectivity:** "Physical connectivity" means "how pieces of pavement connect and whether two segments touch."

**legal connectivity:** "Legal connectivity" means "whether one can legally drive onto a physically connected piece of pavement and whether it is legal to travel from one segment to another."

**discourse:** The term "discourse" is defined in the claim language itself to mean "instructions and other messages." To the extent the term "discourse" needs further construction, the term should be given its plain and ordinary English dictionary meaning of "verbal expression."

**speech generator:** a text-to-speech speech synthesizer or similar device that receives input in the form of generated discourse (text) and creates speech based thereon.

Claim 7

**three-dimensional representation of street topology:** locations in the data base are stored as three-dimensional coordinates so that the topology (*e.g.*, slope) of the streets are represented. This limitation requires the three-dimensional representation be part of the map database, and does not cover the use of a GPS or other satellite system for determining altitudinal information.

Claim 21

**means for updating said map database:** This limitation is written in the "means-plus-function" format of Section 112, ¶ 6. The function recited in the claim is "updating *said* map database" (*i.e.*, the same map database recited in claim 1). The only structure disclosed in the specification for performing this function is a radio broadcast that continually updates the database. Accordingly, this limitation should be construed as follows: A radio broadcast, or its equivalent, which updates the database on a continuous basis. This limitation does not cover the complete replacement of one database by a

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley
April 28, 2006
Page 3

second, different database, such as, for example by a replacing or entirely erasing and then rewriting a CDROM, DVD, or memory.

Claim 23

This claim requires that the map database itself has a minimum accuracy of 10 meters. This claim does not cover systems in which the entire system (in which location accuracy is augmented by GPS or in some other way) achieves such an accuracy despite a map that itself lacks such accuracy.

Claim 35

**displacement sensor:** a device that senses the distance that a vehicle has traveled.

**direction sensor:** a device that senses the direction in which the vehicle is heading.

Claim 54

**discourse generator is responsive to**: the text of the instructions that are composed by the discourse generator is a function of

**user-model stored in the computing apparatus**:  knowledge stored within the computing apparatus that is specific to a particular driver/user including one or more of the requirements or preferences identified at Column 21, lines 22-59.

Claim 52

This claim requires that the warning be the result of dangers *inferred* from the road network, in other words, the computer determines road hazards by reasoning about road conditions rather than having them built into the map database.  This claim does not cover a system that merely gives warnings about hazardous conditions that are encoded explicitly into the database, as opposed to inferred from the road network.

With respect to Claim 10, how does MIT construe "landmarks such as signs, traffic lights, stop signs and buildings"?  Does MIT contend that this phrase requires signs, traffic lights, stop signs and buildings?  Does MIT contend that this requires at least one sign, one traffic light, one stop sign or one building?  Does MIT contend that this only requires any type of landmarks, even if not any of the landmarks recited in the claim language?

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley
April 28, 2006
Page 4


With respect to Claim 27, how does MIT construe the phrase "route finder is adapted to find a best route according to any one of three cost metrics: distance, speed, simplicity"? Does MIT contend that this requires the route finder to be adapted to find a best route according to each of distance, speed, and simplicity, or does MIT contend that a route finder that is adapted to find a best route according to one or two (but not all three) of these criteria would satisfy this claim?

With respect to Claim 44, what does MIT believe this claim means?

With respect to Claim 48, how does MIT construe the phrase "for said driver to demand immediate instructions, or clarification or repetition of instructions already provided"? Does MIT contend that this requires all three of each of these, or does MIT contend this requires only one of the three?

Very truly yours,

Craig D. Leavell

CDL/db

**Baron, Jacob K.**

| | |
|---|---|
| **From:** | Baron, Jacob K. |
| **Sent:** | Wednesday, May 17, 2006 5:28 PM |
| **To:** | Harman-MIT@kirkland.com |
| **Cc:** | MIT_Harman |
| **Subject:** | MIT/Harman -- MIT's Proposed Claim Construction |
| **Attachments:** | MITs proposed claim construction.pdf |

Craig,

Per our discussion, attached is MIT's proposed claim construction. This proposed claim construction is being provided in the interest of finding compromise between the parties on claim construction issues. MIT reserves the right to make appropriate changes to its proposed claim construction in response to compromises reached with Harman or information learned in the course of the discovery process.

Regards,

Jake



MITs proposed
claim constructi...

Jacob K. Baron | **PROSKAUER ROSE LLP**
One International Place | Boston, MA 02110-2600
V: 617.526.9886 | F: 617.526.9899
jbaron@proskauer.com | www.proskauer.com

## Baron, Jacob K.

| | |
|---|---|
| **From:** | Craig Leavell [cleavell@kirkland.com] |
| **Sent:** | Wednesday, May 17, 2006 6:20 PM |
| **To:** | Baron, Jacob K. |
| **Cc:** | Harman-MIT@kirkland.com; MIT_Harman |
| **Subject:** | Re: MIT/Harman -- MIT's Proposed Claim Construction |
| **Attachments:** | MITs proposed claim construction.pdf |

Jake,

Your chart fails to cite any evidence for any of MIT's positions.  When can we expect a chart that sets forth any support for MIT's proposed constructions?  Until we receive that, we will be unable to assess whether there is any reason to reconsider any of the issues in light of any such evidence.  In addition, Kim Mottley and you both agreed to provide a point-by-point response to my earlier letter regarding claim constructions.  When can we expect that response?

Craig

**"Baron, Jacob K." <jbaron@proskauer.com>**

05/17/2006 04:27 PM

To Harman-MIT@kirkland.com

cc "MIT_Harman" <MIT_Harman@proskauer.com>

Subject MIT/Harman -- MIT's Proposed Claim Construction

Craig,

Per our discussion, attached is MIT's proposed claim construction.  This proposed claim construction is being provided in the interest of finding compromise between the parties on claim construction issues.  MIT reserves the right to make appropriate changes to its proposed claim construction in response to compromises reached with Harman or information learned in the course of the discovery process.

Regards,

Jake

<<MITs proposed claim construction.pdf>>

Jacob K. Baron | **PROSKAUER ROSE LLP**
One International Place | Boston, MA 02110-2600
v: 617.526.9886 | F: 617.526.9899
jbaron@proskauer.com | www.proskauer.com

--------------------------------------------------------------------------------

This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

================================================================================


************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
************************************************************