UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-10990-DPW |
| | ) | Magistrate Judge Judith G. Dein |
| HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## HARMAN'S  ASSENTED-TO MOTION FOR LEAVE TO FILE
## REPLY IN SUPPORT OF ITS MOTION TO COMPEL

Pursuant to Local Rule 7.1(b)(3), Defendant Harman International Industries, Inc.
("Harman") respectfully seeks leave to file a brief Reply in support of its Motion to Compel
MIT's Responses to Harman's Interrogatories Nos. 9, 10 and 16 and Compliance with Harman's
30(b)(6) notice (Docket Entry 73), a copy of which is attached hereto as Exhibit A.  Harman's
proposed reply seeks to clarify existing issues and address new substantive issues raised by
Plaintiff Massachusetts Institute of Technology ("MIT") in its Opposition and Counter-Motion to
Compel in Response to Harman's Motion to Compel (Docket Entry 78).

WHEREFORE, Harman respectfully requests that this Court grant its motion for leave to
file the attached reply in support of its motion for protective order.

## LOCAL RULE 7.1(a)(2) and 37.1(a) CERTIFICATION

Counsel for Harman has conferred with counsel for MIT, who have advised that they
assent to this motion.

Dated: June 5, 2006

Respectfully submitted,

/s/ Courtney A. Clark
Robert J. Muldoon, Jr., BBO# 359480
James W. Matthews, BBO# 560560
Edward S. Cheng, BBO# 634063
Courtney A. Clark, BBO# 651381
**SHERIN AND LODGEN LLP**
101 Federal Street
Boston, MA  02110

William A. Streff Jr., P.C.
Michelle A.H. Francis
Craig D. Leavell
Ann H. Chen
**KIRKLAND & ELLIS LLP**
200 E. Randolph Dr.
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing HARMAN'S ASSENTED-TO MOTION

FOR LEAVE TO FILE REPLY IN SUPPORT OF ITS MOTION TO COMPEL was sent by

electronic-mail this 5th day of June, 2006, addressed to counsel for MIT as follows:

> Steven M Bauer, Esq.
> Jacob K. Baron, Esq.
> Kimberly A. Mottley, Esq.
> John W. Pint, Esq.
> Proskauer Rose LLP
> One International Place, 22nd Floor
> Boston, MA  02110-2600
> Email: MIT_Harman@proskauer.com
>
> *Counsel for Plaintiff MIT*
>
>
> /s/ Courtney A. Clark
> One of the Attorneys for Harman

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, A Delaware Corporation, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) |

**Case No. 05-10990 DPW**
Hon. Douglas P. Woodlock
Magistrate Judge Judith G. Dein

## HARMAN'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL MIT'S RESPONSES TO HARMAN'S INTERROGATORIES NOS. 9, 10 AND 16 AND COMPLIANCE WITH HARMAN'S RULE 30(b)(6) DEPOSITION NOTICE

MIT's assertions that it may delay its responses to Harman's Interrogatories Nos. 9, 10, and 16 and compliance with Harman's Rule 30(b)(6) deposition notice are misguided and unsupported by case law. The case law does not provide – and MIT cites no supporting cases – that responses to properly served interrogatories regarding patent validity can be deferred until expert reports have been served. As the close of fact discovery is less than two weeks away, MIT's attempt to further delay its responses to Harman's interrogatories regarding validity until expert reports prejudices Harman in the preparation of its defense and may well serve to disguise MIT's failure to conduct a proper investigation of its claims prior to filing suit, as required by the Federal Rules of Civil Procedure. Furthermore, MIT's attempt to circumvent its meet and confer obligations by using its response brief, labeled "counter-motion to compel," as a platform to raise entirely new discovery issues is improper and wastes the time and resources of both the Court and Harman.

I.    **The Appropriate Tool for Providing Validity Information In Response To Properly Served Interrogatories Is By Interrogatory Response or a 30(b)(6) Deposition And Not Expert Reports.**

As is demonstrated by MIT's failure to cite *any* case law supporting its assertion that "the appropriate tool for providing *validity* contention information here are the *expert reports,*"[1] there is simply no basis for MIT's position that its responses to properly served interrogatories regarding validity can be deferred until its expert reports have been drafted and submitted, *well beyond* the 30 days allowed by Federal Rule 33(b)(3) and *beyond* the close of fact discovery. Instead, MIT cites *BB&T Corp. v. United States*, 233 F.R.D. 447 (M.D.N.C. 2006), to support deferral of interrogatory responses until after expert reports. The court in *BB&T Corp.*, however, distinguishes its analysis by specifically pointing out that "when a case involves complicated technical issues such as may arise in patent litigation, contention interrogatories may be useful." *Id.* at 450 (dealing with taxpayer action filed against the government for denial of tax deductions). The *BB&T Corp.* court further notes that the "plaintiff fails to show why a motion to compel answers to the contention interrogatories was not first pursued." *Id.* Thus, unlike the litigation involved in *BB&T Corp.*, this *is* a case of patent litigation, and unlike the plaintiff in *BB&T Corp.*, Harman has properly filed a motion to compel responses to those interrogatories.

Because MIT cites case law identifying contention interrogatories as the appropriate tool for discovery in this case, MIT's argument actually supports Harman's motion to compel responses to its interrogatories. Harman properly served Interrogatory Nos. 9, 10 and 16 on MIT on March 22, 2006. In accordance with Federal Rule of Civil Procedure 33(b)(3), MIT's responses to these Interrogatories were due within 30 days.[2] Now, more than ten weeks after the

---

[1]    MIT's Opposition at 5 (emphasis added) (Docket Entry 78).

[2]    Fed. R. Civ. P. 33(b)(3) provides that "[t]he party upon whom the interrogatories have been served shall serve a copy of the answers, and objections if any, within 30 days after the service of the interrogatories. A shorter or

2

interrogatories were served and nearly two months after its responses were due, MIT's reliance

on its "incorporat[ion] by reference" of expert reports that *do not yet exist*, clearly fails to meet

its obligation under Rule 33.  *See* MIT's Opposition at 3 ("all the information Harman seeks will

be provided in MIT's experts' responses to Harman's expert reports *in the coming months*.")

(emphasis added) (Docket Entry 78).  Harman is entitled, at this late date, to know MIT's

preliminary position regarding validity -- especially in light of Harman's *prima facie* evidence of

invalidity – sufficiently in advance of its expert report to allow Harman to obtain discovery

regarding the relevant facts.  To the extent that MIT refuses to provide such discovery by way of

interrogatory responses, 30(b)(6) deposition testimony should be compelled.  MIT's refusal to

provide even its preliminary positions prejudices Harman's defense.

Deferral of such discovery is inappropriate where, as here, "[t]he prior art interrogatories

will serve to clarify the issues and narrow the scope of the dispute."  *B. Braun Med'l Inc. v.*

*Abbott Labs.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994).  MIT attempts to distinguish *B. Braun* as

inapposite because, in that case, the party refusing to provide interrogatory responses carried the

burden of proof regarding its invalidity case.  Regardless of that distinction, *B. Braun* is still

applicable and relevant here, as it held that the moving party must show a need for contention

interrogatories in filing a motion to compel responses.  As the *B. Braun* court stated in its

analysis:

> The ***party serving contention interrogatories bears the burden*** of proving how an
> earlier response ... "will contribute meaningfully to clarifying the issues in the
> case, narrowing the scope of the dispute, or setting up early settlement
> discussions, or that such answers are likely to expose a substantial basis for a
> motion under Rule 11 or Rule 56.

---

longer time may be directed by the court or, in the absence of such an order, agreed to in writing by the parties
subject to Rule 29."

*B. Braun*, 155 F.R.D. at 527 (internal citations omitted); *see also ADC Telecomm., Inc. v. Thomas & Betts Corp.*, No. 98CV2055, 2001 WL 1381098, at *4, n. 4 (D. Minn. Oct. 18, 2001) (noting that "[d]efendants have not offered any evidence or argument at all to suggest that the … testimony of Plaintiff's experts had some effect on the scope of applicable prior art.") (attached as Exhibit F to Harman's Motion to Compel). Thus, because Harman's interrogatories serve to clarify the issues regarding the validity of the patent, narrow the scope of the dispute, and may demonstrate a substantial basis for a Rule 11 motion, Harman has shown that deferral is inappropriate and prejudices Harman in its defense based on its invalidity positions.

Furthermore, while MIT argues for the deferral of its responses to Harman's invalidity interrogatories, it has served its own contention interrogatories requesting Harman's rebuttal position regarding non-infringement and alleges that Harman's responses to MIT's non-infringement interrogatories are "deficient." *See* Opposition at 7. MIT bears the burden of proving its infringement case, just as Harman bears the burden of proving its invalidity case. Though arguing that Harman's contention interrogatories are "premature," MIT first served its own contention interrogatories seeking Harman's rebuttal position early on in this litigation, on July 26, 2005, ***over ten months ago***.[3] *See* MIT's First Set of Interrogatories (Nos. 1-11) at 8 (Interrogatory No. 8) (attached herein as Exhibit A). Not only did MIT's Interrogatory No. 8 seek Harman's non-infringement contentions, but MIT also requested a claim chart detailing those non-infringement contentions. *See id.* As MIT notes in its Opposition, Harman has duly supplemented its responses to MIT's Interrogatory No. 8 on three separate occasions. *See* Opposition at 7-8. By serving such rebuttal interrogatories on Harman and now seeking to

---

[3]    Specifically, MIT's Interrogatory No. 8, first served on Harman on July 26, 2005, states: "If Harman contends that any of its products and services identified in Interrogatory No. 1 do not infringe the '685 patent, state the basis, including a claim chart, for such a contention." *See* Exhibit A.

4

compel, even after three supplemental responses, a "truly substantive supplementation to [Harman's] response to Interrogatory No. 8," MIT should not simultaneously be heard to argue that MIT can defer its own responses regarding its rebuttal position on invalidity until expert reports are due. Such a result would clearly be unfair and prejudicial to Harman's defense. As MIT is well aware, discovery is a two-way street.

Finally, even if deferral of contention interrogatories were appropriate, MIT has cited no case law in support of its position that deferral far beyond the close of fact discovery is appropriate. Where contention interrogatories are deferred, they should not be deferred long after the close of discovery. *See ADC Telecomm.*, 2001 WL 1381098, at *4 (discussing *B. Braun*) (attached as Exhibit F to Harman's Motion to Compel); *see also Thomas & Betts Corp. v. Panduit Corp.*, No. 93 C 4017, 1996 WL 169389, at *2 (N. D. Ill. Apr. 9, 1996) (noting that contention interrogatories are generally deferred until discovery is near an end, but further noting that generalizations about proper timing of contention interrogatories cannot substitute for specific analysis of their propriety on a case by case basis) (attached herein as Exhibit B). The parties have mutually agreed that discovery will close on June 16, 2006. Thus, where, as here, the close of fact discovery is less than two weeks away, even if deferral were appropriate, which it is not, MIT's responses should not be deferred beyond the close of fact discovery.

MIT's responses to Harman's properly served interrogatories are long overdue. MIT's continued refusal to provide substantive answers is improper and prejudices Harman in its ability to respond to MIT's allegations. MIT cites no case law that finds it proper to defer interrogatory responses regarding patent validity until expert reports. Moreover, MIT's refusal to provide its preliminary basis for asserting its patent in light of Harman's *prima facie* evidence of invalidity calls into question its good faith basis for asserting the patent. Harman therefore respectfully

requests this Court's assistance in compelling MIT's immediate substantive responses to Interrogatories 9, 10 and 16, or order compliance with Harman's 30(b)(6) deposition notice.

**II.    MIT's Arguments Regarding the Deficiencies of Harman's Interrogatories are Newly Raised Issues and Provide No Guidance to the Court in Ruling on Harman's Motion to Compel.**

MIT attempts to distract this Court from Harman's properly filed Motion to Compel interrogatory responses by raising new discovery disputes and asserting that Harman's interrogatory responses are somehow deficient. This argument is irrelevant to the issues raised by Harman in its Motion to Compel and fails to justify a denial of the relief sought in that motion. If MIT seeks an order requiring Harman to provide additional interrogatory responses, then MIT should have requested a discovery conference to resolve its dispute with Harman directly, as required by Local Rule 37.1, and filed its own motion to compel only if a successful resolution could not be reached with Harman. Despite MIT's assertion that "MIT's counsel discussed the matters raised herein with Harman's counsel in numerous conversations over the course of the past several months" and that "the disputes remain unresolved," MIT has once again failed to meet its obligations under Rule 37.1. Counsel for Harman indicated as recently as May 15, 2006 that Harman was willing to provide additional supplementation to its rebuttal non-infringement positions, if MIT would supplement its infringement positions in detail allowing Harman to perform the detailed assessment requested by MIT. *See* May 15, 2006 C. Leavell email to J. Baron (attached herein as Exhibit C). Instead, MIT seeks to distract this Court from Harman's pending motion to compel by raising two new issues. Nonetheless, Harman addresses each of these issues below.

First, Harman respectfully disagrees with MIT's assertion that Harman's response to MIT's Interrogatory No. 8 is "deficient." As MIT points out in its response, Harman has supplemented its initial September 6, 2005 response to MIT's Interrogatory No. 8 on three

separate occasions: November 2, 2005; February 15, 2006; and March 2, 2006. Each supplemental response was both complete and responsive, in light of the discovery that existed as of the date Harman served those responses. As MIT's Interrogatory No. 8 seeks information relating to Harman's non-infringement position, each of Harman's preliminary responses was necessarily limited as Harman did not have MIT's positions on claim construction until May 17, 2006, *after* Harman filed this instant Motion to Compel, when MIT, for the first time, submitted a substantive position on claim construction,. *See* May 17, 2006 J. Baron email to C. Leavell (attached as Exhibit 18 to MIT's Opposition).

Moreover, Harman's March 2, 2006 supplemental response to MIT's Interrogatory No. 8 was clearly substantive, referring to Harman's counsel's opinion regarding non-infringement and invalidity, and promising to supplement its response once again upon MIT's provision of discovery refuting Harman's *prima facie* evidence of non-infringement and invalidity. *See* Harman's Supplemental Response to MIT's Interrogatories 5, 8, and 9 (attached as Exhibit 5 to MIT's Opposition). Accordingly, MIT's attempt to cast Harman's response to Interrogatory No. 8 as "deficient" is unwarranted here. Furthermore, Harman has attempted to elicit additional information regarding MIT's position on infringement through an agreement that Harman would timely supplement thereafter. *See* May 15, 2006 C. Leavell email to J. Baron (Exhibit C).

Second, Harman will provide verification of its interrogatory responses prior to the parties' mutually agreed-to the deadline of June 16, 2005 for the close of fact discovery. Harman notes, however, that MIT should have attempted to satisfy its obligations under Local Rule 37.1[4]

---

[4]    Local Rule 37.1(a) provides that: "Before filing any discovery motion, including any motion for sanctions or for a protective order, counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange for the conference. Conferences may be conducted over the telephone. Failure of opposing counsel to respond to a request for a discovery conference within seven (7) days of the request shall be grounds for sanction, which may include automatic allowance of the motion."

to exhaust the meet and confer process with Harman to resolve this dispute, rather than raise this issue in its response to Harman's motion to compel on *Harman's* interrogatories and discovery requests. Although Local Rule 37.1 grants opposing counsel seven (7) days to respond to a request for a discovery conference and fourteen (14) calendar days to attend such a discovery conference,[5] MIT extended neither courtesy to Harman's counsel prior to filing its "counter-motion to compel" despite its certification that it "discussed the matters raised herein with Harman's counsel in numerous conversations." *See* Opposition at 13. MIT's certification under Local Rules 7.1 and 37.1 lacks the specificity required by those rules precisely because MIT had not requested a specific discovery conference with Harman regarding the issues raised in its counter-motion to compel. It is thus improper for MIT to raise that issue and seek affirmative relief in its opposition in order to bypass its obligations to meet and confer with Harman under Local Rule 37.1. MIT's requests for relief should therefore be denied.

## III.    Conclusion

For the foregoing reasons, Harman respectfully requests that this Court grant Harman's Motion to Compel MIT's Responses to Harman's Interrogatories Nos. 1, 9-16 and order MIT to comply with Harman's 30(b)(6) notice (Docket Entry 73).

Dated:  June 5, 2006                              Respectfully submitted,

                                                  /s/ Courtney A. Clark
                                                  Robert J. Muldoon, Jr., BBO# 359480
                                                  James W. Matthews, BBO# 560560
                                                  Edward S. Cheng, BBO# 634063
                                                  Courtney A. Clark, BBO# 651381
                                                  **SHERIN AND LODGEN LLP**

---

5    Local Rule 37.1(b) provides that "[i]f (i) opposing counsel has failed to respond to a request for a discovery conference within the seven day period set forth in subdivision (a), (ii) opposing counsel has failed to attend a discovery conference within fourteen (14) calendar days of the request, or (iii) if disputed issues are no resolved at the discovery conference, a dissatisfied party may file a motion and supporting memorandum..."

101 Federal Street
Boston, MA 02110

William A. Streff Jr., P.C.
Michelle A. H. Francis
Craig D. Leavell
Ann H. Chen
Colleen M. Garlington
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

*Attorneys for Defendant*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 05-10990 DPW |
| v. | ) ) | |
| HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, | ) ) ) | |
| Defendant. | ) ) | |

## MIT'S FIRST SET OF INTERROGATORIES (NOS. 1-11)

Plaintiff Massachusetts Institute of Technology ("MIT"), pursuant to Rule 33 of the Federal Rules of Civil Procedure, hereby requests that Defendant Harman International Industries, Inc. ("Harman") provide answers to the following Interrogatories fully, in writing, and under oath, and that the answers be served within thirty (30) days of the date of service of this request at the offices of PROSKAUER ROSE LLP, One International Place, 22nd Floor, Boston, MA 02110 or at another mutually convenient location.

These Interrogatories are to be deemed continuing and any information secured subsequent to service of Harman's answers hereto must be furnished to MIT upon receipt of such information in supplemental answers in accordance with Federal Rule of Civil Procedure 26(e).

<u>DEFINITIONS</u>

Notwithstanding any definition set forth below, each word, term, or phrase used in this set of Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. For purposes of these Interrogatories, the following definitions, regardless of whether the defined word is capitalized, shall apply:

A.     "MIT" means the Massachusetts Institute of Technology, including its servants, agents, representatives, employees, principals, attorneys, and all other persons, forms or corporations acting with it or on its behalf.

B.     "Harman" means Harman International Industries, Inc., including its servants, agents, representatives, employees, principals, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, successors-in-interest, and all other persons, forms or corporations acting with it or on its behalf.

C.     "'685 Patent" means U.S. Patent No. 5,177,685.

D.     The term "prior art" encompasses, by way of example and without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102-03.

E.     "Automobile navigation system product[s] or service[s]" refers to any product or service, or portion or component thereof, which provides or is designed to provide real-time spoken driving instructions. The term includes, but is not limited to, products or services, or portions or components thereof capable of being installed by an automobile manufacturer or independently of an automobile manufacturer. The term includes, but is not limited to, Harman's TrafficPro® brand of automobile navigation system, its TrafficPro II™ brand of automobile navigation system, its RB3 and RB4 brands of automobile navigation system, and

equipment or components made, used, or sold by Harman for use in the Porsche®

Communication Management System.

     F.     "All" means "any and all."

     G.     Any word written in the singular shall be construed as plural and vice versa.

     H.     "Concerning" means referring to, relating to, describing, evidencing, or

constituting.

     I.     As used herein, the term "Document[s]" shall be synonymous in meaning and

equal in scope to the usage of the term in Fed. R. Civ. P. 34(a). Electronic correspondence is

also included within the meaning of this term. A draft or non-identical copy is a separate

document within the meaning of this term.

     J.     As used herein, the term "or" means "and/or."

     K.     As used herein, the term "Communication[s]" means all letters, memoranda, notes

and messages, whether printed, typed or handwritten, including but not limited to all electronic

modes of correspondence such as electronic mail and faxes, and including documents reflecting

conversations and meetings.

     L.     "Person" means any natural person or juridical person including any corporation,

partnership, sole proprietorship, agency, or business association of any type or character.

     M.     As used herein, the term "Identify" means:

     a)     with respect to persons, give, to the extent known, the person's full name,

present or last known address, and when referring to a natural person, the present or last known

place of employment, his/her title and position with that employer; and

b)      with respect to documents, give, to the extent known, the: (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

N.      As used herein, the term "state the basis" means, when referring to a particular claim, assertion, allegation, or contention,

a)      identify each and every document (and, where pertinent, the section, article, or subpart thereof) which forms any part of the party's source of information regarding the alleged facts or legal conclusions referred to by the interrogatory;

b)      identify each and every communication which forms any part of the party's source of information regarding the alleged facts or legal conclusions referred to by the interrogatory;

c)      state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

d)      state separately any other fact which forms the basis of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory.

## INSTRUCTIONS

A.     If Harman objects to any Interrogatory or any subpart thereof, state all grounds for the objection with specificity and answer the Interrogatory to the extent that it is not objectionable.

B.     When a claim of privilege is asserted in objection to any Interrogatory, or any subpart thereof, please identify in the objection the nature of the privilege that is being claimed with respect to each part or subpart. If the privilege is being asserted in the connection with a claim or defense governed by state law, indicate the particular privilege rule that is being invoked.

C.     If all of the information furnished in answer to all or part of any Interrogatory is not within the personal knowledge of Harman, please identify each person to whom all or any part of the information furnished is a matter of personal knowledge, and identify each person who communicated to MIT any part of the information furnished.

D.     In the case of any document to be identified in answer to any Interrogatory or part thereof, Harman may, if it chooses, in lieu of identifying such document, attach a true and correct copy of the document, identifying the particular Interrogatory part or subpart in response to which it is submitted.

E.     When an Interrogatory contains more than one part or subpart, identify the answer (or the documents produced in lieu thereof), by part or subpart.

## INTERROGATORIES

Interrogatory No. 1:

Identify each automobile navigation system product or service used, made, sold or offered for sale by Harman.

Response to Interrogatory No. 1:


Interrogatory No. 2:

For each product or service identified in Interrogatory No. 1, identify all persons in charge of performing the following activities, and identify the persons most knowledgeable about each named activity:  manufacturing; sales; profits; research and development; patent activities; marketing; production; advertising; licensing; and regulatory submissions.  For each such individual identified, identify the time period and nature of involvement in each activity.

Response to Interrogatory No. 2:


Interrogatory No. 3:

For each product or service identified in Interrogatory No. 1:

     a)     separately identify all customers, purchasers, consumers, original equipment manufacturers and/or distributors; and

     b)     state the price per unit, lease terms, annual and monthly sales revenue, sales volume, net and gross profits, including the method for calculating each of the foregoing.

Response to Interrogatory No. 3:

<u>Interrogatory No. 4:</u>

For each product or service identified in Interrogatory No. 1, state the manufacturing cost per

unit, separately identifying fixed and variable costs and the methodology for calculating the

foregoing.

<u>Response to Interrogatory No. 4:</u>


<u>Interrogatory No. 5:</u>

If Harman contends that the '685 Patent is invalid, state the basis for such a contention, and

identify all prior art Harman contends supports that contention.

<u>Response to Interrogatory No. 5:</u>


<u>Interrogatory No. 6:</u>

State the basis for Harman's contention, if any, that any of the claims of the '685 Patent are

invalid either alone or in combination with other references, based on

     a)      Streeter *et al.*, "How to Tell People Where to Go: Comparing Navigational Aids,"

*Int'l. J. Man-Machine Studies*, Vol. 22, 549-62 (1985);

     b)      U.S. Patent No. 4,758,959;

     c)      U.S. Patent No. 4,878,170;

     d)      the Geographic Data files Standard, Release 1.0 (1988); or

     e)      Harris *et al.*, "Digital Map Dependent Functions of Automatic Vehicle Location

Systems," *IEEE Position and Location Symposium*, pp. 79-87, 1988.

<u>Response to Interrogatory No. 6:</u>

<u>Interrogatory No. 7</u>:

State the basis for Harman's contention, if any, that the '685 Patent is unenforceable under the

doctrine of inequitable conduct, including any contention of inequitable conduct for non-

disclosure of Streeter *et al.*, "How to Tell People Where to Go: Comparing Navigational Aids,"

*Int'l. J. Man-Machine Studies*, Vol. 22, 549-62 (1985), or the work described in U.S. Patent No.

4,758,959 to the Patent office.

<u>Response to Interrogatory No. 7</u>:


<u>Interrogatory No. 8</u>:

If Harman contends that any of the products and services identified by Interrogatory 1 do not

infringe the claims of the '685 Patent, state the basis, including a claim chart, for such a

contention.

<u>Response to Interrogatory No. 8</u>:


<u>Interrogatory No. 9</u>:

State whether Harman has ever solicited or received, directly or indirectly, from any source, or

prepared on its own any opinion, search, report or advice, written or oral, concerning the

infringement, noninfringement, validity or enforceability of the '685 Patent, and identify all

documents and prior art constituting, concerning, or identified by the opinion, search, report or

advice, and all persons who prepared, presented or assisted in the preparation of such opinion,

search, report or advice.  If such opinion, search, report or advice was solicited but never

received, identify all persons who made the inquiry or investigation.

<u>Response to Interrogatory No. 9</u>:

<u>Interrogatory No. 10:</u>

With respect to these Interrogatories, identify:

a)      all persons who provided any response to any of these Interrogatories, specifying the response provided by each such person;

b)      all persons who provided any information in connection with the responses to any of these Interrogatories or MIT's First Request for the Production of Documents and Things ("Document Requests"), specifying the information provided by each such person;

c)      all persons interviewed for the purpose of answering these Interrogatories or the Document Requests;

d)      all persons whose files were reviewed for the purposes of gathering or identifying documents responsive to these Interrogatories or the Document Requests, and identify the physical location and title by file and file drawer of every file searched for any information on which Harman bases its responses to these Interrogatories and Document Requests, or any part thereof, to any of the foregoing Interrogatories; and

e)      all documents and things responsive to these Interrogatories or the Document Requests which have been destroyed during the pendency of this litigation or the twelve months prior to the initiation of this litigation, and describe the subject matter of each such document and thing, and state the reason for its destruction.

<u>Response to Interrogatory No. 10:</u>

<u>Interrogatory No. 11:</u>

Identify each Person Harman may call to testify at trial as a fact or expert witness, and for each such witness, provide:

    a)      the name, address, occupation and employer of the witness;

    b)      the subject matter on which each witness is expected to testify;

    c)      that witness's basis for testifying;

    d)      the substance of the facts and any expert opinions to which each such witness is expected to testify;

    e)      a summary of the grounds for each such expert opinion;

    f)      each expert report prepared by such witness, and identify all documents and things reviewed, considered or relied upon by any expert retained by Harman in this matter in respect to the expert's opinions related to this litigation.

<u>Response to Interrogatory No. 11:</u>

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY,

By its Counsel,

Steven M. Bauer (BBO #542531)
Kimberly A. Mottley (BBO #651190)
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110
Tel: (617) 526-9600
Fax: (617) 526-9899

Dated: July 26, 2005

### Certificate of Service

I hereby certify that on July 26, 2005, a true and correct copy of the foregoing document
was served upon opposing counsel by hand.

Kimberly A. Mottley

-11-

# EXHIBIT B

Not Reported in F.Supp.                                                                      **Page  1**
Not Reported in F.Supp., 1996 WL 169389 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.)**

Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois.
**THOMAS & BETTS CORPORATION and**
**Thomas & Betts Holdings, Inc., New Jersey**
**corporations, Plaintiffs,**
v.
**PANDUIT CORP., a Delaware corporation, and**
**JEFFREY WIMMER, an individual, Defendants.**
**No. 93 C 4017.**

April 9, 1996.

*MEMORANDUM OPINION AND ORDER*
KEYS, United States Magistrate Judge.
**\*1** This matter comes before the Court on Panduit's
Motion to Compel Complete and Proper Responses
to Defendant Panduit's First Set of Interrogatories to
Plaintiffs. For the following reasons, the Court
grants in part, and denies in part Panduit's motion.

### BACKGROUND

Plaintiffs, Thomas & Betts Corporation and Thomas
& Betts Holdings, Inc. (collectively "T&B"),
brought this unfair trade practices action against
Defendants, Panduit Corporation ("Panduit") and
Jeffrey Wimmer, on July 2, 1993. T&B and Panduit
are competing manufacturers of various electrical
products. Wimmer was a Vice-President at T&B
until his termination in February of 1992. After his
termination from T&B, Wimmer became Panduit's
National Distribution Marketing Manager. T&B
claims that Wimmer misappropriated confidential
information which he and Panduit allegedly used to
unfairly compete with T&B.

The matter immediately before this Court involves
yet another discovery dispute between T&B and
Panduit. Panduit seeks more complete responses to
all of the questions posed in its First Set of
Interrogatories.

### DISCUSSION

Of course, no motion in this case would be complete
without a rehashing of the same old arguments:
Panduit decries T&B's attempt to "reverse engineer"
its claim of damages while T&B protests that it has
not yet received the documents (from Panduit)
necessary to properly move forward in the discovery
process. Specifically at issue here are T&B's

answers to Panduit's First Set of Interrogatories.
T&B made quite a few objections to the
interrogatories, including the fact that many are
contention interrogatories. T&B also objects to a
number of interrogatories on the grounds that they
require production of privileged information and/or
are irrelevant.

Notwithstanding T&B's objections, the purpose of
discovery is to uncover exactly the type of
information sought by Panduit. Panduit needs
T&B's answers in order to properly defend itself
against the lawsuit that *T&B brought.* Further, the
information Panduit seeks is the kind contemplated
and authorized by the Federal Rules of Civil
Procedure, which allow discovery of any non-
privileged matter that is relevant to the subject
matter of the action. FN1 8 WRIGHT, MILLER &
KANE,      FEDERAL      PRACTICE      AND
PROCEDURE, CIVIL 2d §2007 at 95 (1994). The
term "relevant" is much more liberally construed
during the discovery stage, under the Federal Rules
of Civil Procedure, than at trial, where the Federal
Rules of Evidence govern. *Id.* §2008 at 99-100.
Thus, despite T&B's protestations to the contrary,
the Court finds that the information Panduit seeks is
relevant and reasonably bears upon the issues in this
case.

T&B has also made vague claims of privilege:
"Plaintiffs object to each interrogatory to the extent
that it seeks privileged or confidential information
protected by, for example, the attorney-client or
work product privilege." (Panduit's Motion to
Compel Complete and Proper Responses to
Defendant Panduit's First Set of Interrogatories to
Plaintiffs at Ex. A, p.4.) Such nonspecific
objections are inappropriate. If any privilege exists,
it should be clearly articulated and the reason for its
invocation given in such a manner that the Court can
properly assess its applicability.

**\*2** In determining whether to raise future objections
on the ground of privilege, T&B should note that
courts commonly look unfavorably upon anything
that significantly restricts the broad scope of
discovery. *Allendale,* 152 F.R.D. at 135. Because
the attorney-client privilege and work-product
doctrine obscure the search for the truth, both are
confined to their narrowest possible limits to
minimize the impact upon the discovery process.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    **Page    2**
**(Cite as: Not Reported in F.Supp.)**

*White,* 950 F.2d at 430 (the scope of the privilege is narrow, because it is in 'derogation of the search for truth'); *Radiant Burners, Inc. v. American Gas Ass'n,* 320 F.2d 314, 319, 323 (7th Cir. 1963); *Allendale,* 152 F.R.D. at 135. As to claims of attorney work-product protection, the work-product doctrine is distinct from the attorney-client privilege and must, therefore, be analyzed separately. *United States v. Nobles,* 422 U.S. 225, 238, n.11 (1975) (citing *Hickman v. Taylor,* 329 U.S. 495 (1947)); *see also Radiant Burners,* 320 F.2d. at 323. Further, the party seeking to invoke either attorney-client privilege or work-product protection bears the burden of establishing all of that privilege's elements. *White,* 950 F.2d at 430; *Allendale,* 152 F.R.D. at 137. Moreover, the claim of privilege cannot be a blanket claim; it must be established on a document-by-document basis. *White,* 950 F.2d at 430.FN2

Finally, T&B objects that most of Panduit's interrogatories are premature contention interrogatories. "[T]he phrase 'contention interrogatory' is used imprecisely to refer to many different kinds of questions." *In re Convergent Technologies Sec. Litig.,* 108 F.R.D. 328, 332 (N.D. Cal. 1985). Some people classify as contention interrogatories questions asking the opposing party to indicate what it contends or whether it makes some specified contention. *Id.* Other people classify as contention interrogatories questions asking an opposing party to: state all facts or evidence upon which it bases some specific contention; take a position and apply law and facts in defense of that position; or explain the theory behind some specified contention. *Id; see also Fischer and Porter Co. v. Tolson,* 143 F.R.D. 93, 95-96 (E.D. Pa. 1992).

Basically, contention interrogatories require the answering party to commit to a position and give factual specifics supporting its claims. The general policy is to defer contention interrogatories until discovery is near an end. However, courts have the discretion to allow use of contention interrogatories before discovery is complete. *Rusty Jones, Inc. v. Beatrice Co.,* No. 89 C 7381, 1990 U.S. Dist. LEXIS 12116, at *4 (N.D. Ill. Sept. 11, 1990); *In re Arlington Heights Funds Consol. Pretrial,* No. 89 C 701, 1989 U.S. Dist. LEXIS 8177, at *1 (N.D. Ill. July 7, 1989) (generalizations about proper timing of contention interrogatories cannot

substitute for specific analysis of their propriety on a case by case basis).

Although discovery in this case has not yet closed, there is no apparent end in sight. The discovery process has been stalled by ongoing disputes and constant bickering for two years. Had the parties comported themselves properly, discovery here would be, at the very least, significantly completed. In light of both parties' purposeful delay of discovery in this case, the Court finds that contention interrogatories are timely.FN3 In fact, the Court is quite interested in narrowing the issues and finding out exactly *what* T&B actually contends. Thus, T&B must answer any contention interrogatories at issue here with whatever information is currently available. Because no ending date for discovery has been set at this time, the Court notes that T&B may augment its responses as it deems appropriate.

*CONCLUSION*

**\*3** The Court finds that Panduit is entitled to more complete responses to its First Set of Interrogatories. The Court expects that T&B's responses to Panduit's First Set of Interrogatories will be made no later than April 17, 1996.FN4 Of course, after receiving Panduit's concurrent production of documents, T&B can, and should, supplement any responses so requiring.

Panduit's request for attorney's fees and expenses incurred in bringing this motion to compel are denied. T&B did not entirely fail to answer the interrogatories, and the Court has decided to give T&B one last free shot. Although the Court finds that sanctions are not appropriate in this particular situation, *both* sides are now on notice that, unless the parties start seriously responding to discovery requests, *sua sponte* fees, costs, and sanctions will issue all around.

IT IS THEREFORE ORDERED that Panduit's Motion to Compel Complete and Proper Responses to Defendant Panduit's First Set of Interrogatories to Plaintiffs be, and the same hereby is, GRANTED in part, and DENIED in part, consistent with this Opinion.

FN1.  The scope of discovery should be broad in order to aid the search for the truth. *See Hickman v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                      **Page    3**
**(Cite as: Not Reported in F.Supp.)**

*Taylor,* 329 U.S. 495, 500-501 (1964); *Cf. United States v. White,* 950 F.2d 426, 430 (7th Cir. 1991); *Allendale Mut. Ins. Co. v. Bull Data Sys. Inc.,* 152 F.R.D. 132, 135 (N.D. Ill. 1993).

FN2.  For further discussion of the attorney-client privilege and work-product doctrine, see this Court's opinion in *Ziemack v. Centel Corp.,* No. 92 C 3551, 1995 WL 314526 (N.D. Ill. May 19, 1995). Additionally, the Court notes that any non-privileged "confidential" information is covered by the protective order specifically limiting access to the attorneys of record and their authorized employees.

FN3.  The Court declines to decide, at this time, whether Interrogatories No. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 16, and 18 are contention interrogatories.

FN4.  The Court is issuing contemporaneously herewith two other opinions: another motion to compel and a motion for sanctions for failure to comply with discovery requests.
N.D.Ill.,1996.
Thomas & Betts Corp. v. Panduit Corp.
Not Reported in F.Supp., 1996 WL 169389 (N.D.Ill.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Craig
Leavell/Chicago/Kirkland-Ellis

05/15/2006 05:36 PM

To  "Baron, Jacob K." <jbaron@proskauer.com>

cc  Harman-Mit@kirkland.com, "MIT_Harman"
<MIT_Harman@proskauer.com>

bcc

Subject  Re: MIT/Harman -- Scheduling

Jake,

With respect to claim construction positions, we provided MIT with a detailed chart several weeks ago with
our then-current positions, and then followed-that up with a detailed letter in early May seeking to clarify
and streamline the issues, in response to Ms. Mottley's agreement to begin substantive discussions
regarding claim construction.  Last week, you confirmed that you would provide a detailed response to my
letter, and that you were trying to do so by last Friday, May 12.  We still have not received anything from
MIT.  Please provide a detailed response immediately, as both you and Ms. Mottley have previously
agreed to do.

Craig

Craig Leavell
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601
Phone:  312-861-2105
Fax:  312-861-2200
cleavell@kirkland.com

"Baron, Jacob K." <jbaron@proskauer.com>

05/12/2006 05:19 PM

To  Harman-Mit@kirkland.com

cc  "MIT_Harman" <MIT_Harman@proskauer.com>

Subject  MIT/Harman -- Scheduling

Craig,

Please see attached correspondence.

Regards,

Jake

<<2006.05.12 ltr Baron to Leavell re scheduling.pdf>>
Jacob K. Baron | PROSKAUER ROSE LLP
One International Place | Boston, MA 02110-2600
V: 617.526.9886 | F: 617.526.9899
jbaron@proskauer.com | www.proskauer.com

-------------------------------------------------------------------
--------------

This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

==================================================================

============ 2006.05.12 ltr Baron to Leavell re scheduling.pdf