# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>    Plaintiff,<br><br>    v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 05-10990-DPW
Magistrate Judge Judith G. Dein

## HARMAN'S MOTION TO COMPEL DISCOVERY OF CERTAIN DOCUMENTS IMPROPERLY IDENTIFIED AS PROTECTED ON MIT'S PRIVILEGE LOGS

To date, plaintiff Massachusetts Institute of Technology ("MIT") has produced approximately 701 documents, including numerous duplicates, while logging and withholding from production more than 760 documents as protected by privilege in its privilege logs. More than 300 of these withheld documents are apparently neither protected work product nor privileged, are responsive to Harman's document requests, and are pertinent to Harman's defense. Many of these documents were first identified to Harman days and months after the depositions for which they were relevant. MIT has not provided adequate descriptions of the documents in its privilege logs, including its most recent June 1, 2006 log, and, as such, does not meet its burden in light of Harman's specific challenges to the individual claims of privilege. As this case has now reached the end of fact discovery, and the parties remain at an impasse as to certain documents that Harman contends should be produced, Harman respectfully requests that this Court compel MIT to produce these documents, and, if necessary, compel MIT to re-produce the relevant witnesses for deposition.

## STATEMENT OF FACTS

Defendant Harman properly served document requests on MIT more than nine months ago, on September 6, 2006. *See* Ex. A, Harman's First Set of Requests for the Production of Documents and Things (Nos. 1-28). During the course of discovery in this case, MIT served several privilege logs on Harman, including its February 11, March 30, April 13, April 18, May 8, and June 1, 2006 logs, encompassing more than 800 documents. Following review of MIT's logs, Harman repeatedly raised various concerns with MIT, including those at issue in this motion.[1] These concerns include: (1) MIT's improper withholding of responsive documents under the work product doctrine; (2) MIT's improper withholding of responsive documents for which the attorney-client privilege has been waived; and (3) MIT's improper redaction of non-privileged information in responsive documents on the basis that the redacted information is "non-responsive."

The parties met and conferred on April 28, 2006 to discuss the issues raised in Harman's April 21, 2006 letter regarding specific entries in MIT's various logs. *See* Ex. D. During that conference, MIT requested that Harman cite case law to support its position regarding the work product doctrine. Harman subsequently provided such case law in its May 3, 2006 letter. *See* Ex. E. Despite such precedent, MIT, continues to assert *per se* work product protection over documents produced in the course of license negotiations, and documents which do not involve attorneys. In addition, in response to Harman's objections regarding MIT's assertion of privilege over communications involving NEC, a third party, MIT asserted during the parties' May 17,

---

[1] *See e.g.* Ex. B, 1/25/06 Edwards letter to Mottley (raising the issue of improperly withheld documents); Ex. C, 2/13/06 Edwards e-mail to Mottley (requesting a conference to discuss irregularities in MIT's log to which MIT did not respond); Ex. D, 4/21/06 Garlington letter to Mottley (specifically identifying irregularities in MIT's many privilege logs); Ex. E, 5/3/06 Garlington letter to Mottley (addressing specific concerns and, at MIT's request, citing case law to support Harman's objection to MIT's blanket claim of work product protection over documents prepared as part of license negotiations); and Ex. F, 6/11/06 Garlington letter to Mottley (addressing specific concerns with MIT's supplemental log).

2006 conference call that a common interest existed that preserved the privilege. MIT, however, failed to provide any basis for this claim. Following that conference, MIT requested that Harman "hold off" on further discussion of the issues raised in that call pending its production of a supplemental log. *See* Ex. G, 5/25/06 Mottley correspondence to Garlington. As MIT's subsequent supplemental log did not resolve the various issues, Harman requested once again that the parties meet and confer. During the subsequent June 12, 2006 conference, MIT refused to provide any additional information regarding the basis for this defense, other than the simple statement that NEC was a licensee.

In addition to these substantive objections, Harman objects to the prejudice that MIT's late identification of these documents has caused to Harman's case. Despite Harman's service of its document requests months earlier, most of the entries at issue were identified by MIT on its privilege log, *for the first time, days and/or months after* the depositions for which they were relevant. For example, MIT identified, for the first time, *at least sixty entries* relevant to its witnesses, Robert Swartz, Christopher Schmandt and Jack Turner in its February 11, 2006 log, which was served *just days after* the three witnesses' depositions on February 7-9, 2006. Even more egregious, *each and every one of the 80-plus entries* on MIT's subsequent March 30, 2006 privilege log was identified to Harman *for the first time* as a communication involving either Mr. Swartz,[2] Mr. Turner,[3] or Mr. Schmandt,[4] each of whom had been deposed nearly two months previously. Despite Harman's objection to this late identification, and although these documents

---

[2]    Entry Nos. 544, 549, 550, 551, 552, 553, 554, 555, 556, 558, 559, 562, 564, 566, 567, 568, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 589, 590, 592, 593, 594, 595, 596, 598, 599, 600, 603, 604, 605, 606, 607, 608, 609, 610, 611, 612, 613, 614, 615 and 616.

[3]    Entry Nos. 544, 551, 552, 553, 573, 576, 577, 579, 580, 581, 582, 584, 585, 617, 618, 619, 620 and 621.

[4]    Entry Nos. 549, 550, 558, 559, 562, 564, 566, 567, 568, 570, 571, 572, 575, 578, 583, 586, 587, 589, 592, 593, 594, 598, 599, 600, 603, 604, 605 and 606.

were created as early as July of 1999, MIT has provided no explanation as to why these documents were not included on a privilege log prior to the depositions in question. *See e.g.* Exs. D and H.

As fact discovery has now ended, MIT's failure to produce or log such documents prejudices Harman's defense.[5]   Harman is entitled to the immediate production of those documents and, if necessary upon review of such documents, MIT's re-production of these witnesses for deposition. For those documents where privilege is properly claimed, Harman is entitled to their identification on a privilege log sufficiently in advance of the relevant depositions to allow Harman to consider those communications in its preparation. Harman respectfully requests that this Court compel MIT to produce the documents and, if the nature of the documents so warrants, grant additional time for Harman to depose Mssrs. Schmandt, Swartz and Turner regarding these documents.

## ARGUMENT

Rule 26(b) allows "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." FED. R. CIV. P. 26(b)(1). Matters can be privileged under either the attorney-client privilege or the work product doctrine. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). Whether documents are withheld as privileged or protected by the work product doctrine, the party asserting an applicable privilege bears the burden of establishing that the privilege applies. *In re Grand Jury*

---

[5]   *See e.g.* Ex. H, Harman's April 24, 2006 letter to MIT stating that "Harman has identified at least thirty-four documents relevant to Mr. Schmandt's deposition that were neither produced nor listed on a privilege log until March 30, 2006, nearly two months after Mr. Schmandt's deposition...MIT's failure to respond to Harman's identification of deficiencies in document production and MIT's belated identification of documents pertinent to the deposition of Mr. Schmandt raise serious concerns for Harman."

*Subpoena*, 220 F.R.D. 130, 140 (D. Mass. 2004) (citing *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000).

Throughout this litigation, despite Harman's repeated requests, MIT has refused to provide information sufficient to justify its withholding of *hundreds* of documents identified on its log to which Harman has objected. *See* Ex. H, Garlington 4/24/06 letter to Mottley.  MIT's descriptions are insufficient to support its claims.  Despite MIT's promises to provide additional information,[6] MIT's May 8 and June 1, 2006 supplemental logs provide no additional substantive information regarding these entries, and certainly do not provide the information necessary to demonstrate that these documents, prepared "in the context of license negotiations," were also prepared primarily "in anticipation of litigation."[7]  Furthermore, although MIT has now stated, during the parties June 12, 2006 conference, that the basis for its claim of attorney-client privilege over those documents shared with third party NEC was a common interest between NEC, MIT and counsel, this assertion is demonstrably incorrect as described below.[8]

Harman therefore objects to MIT's assertions of privilege on numerous grounds, including: (1) MIT cannot properly assert *per se* work product protection over non-attorney documents simply because they were created as part of license negotiations; (2) MIT has waived privilege as to certain documents through the communication of these documents to NEC; and (3) MIT cannot properly redact portions of responsive documents, neither protected by work

---

[6]  See e.g. Ex. I, 5/8/06 Mottley letter to Garlington promising "an amended privilege log which reflects more fulsome descriptions of the documents logged therein."

[7]  *See* Ex. F citing specific examples of such generic descriptions, referring to specific entries within Ex. J; MIT's June 1, 2006 privilege log.

[8]  NEC was not, at the time of the earliest relevant communications, a licensee, and was never an *exclusive* licensee. *See e.g.* Exs. R and S  (to be later submitted pursuant to the assented-to motion to file under seal, submitted simultaneously herewith.)

product nor attorney client privilege, on the basis that MIT assumes the redacted information is "non-responsive."

1.    **MIT's Blanket Claim Of Work Product Protection Over Documents Prepared In The Context Of License Negotiations Is Improper.**

The burden of demonstrating that documents sought are protected by the work product doctrine falls on the party resisting discovery. *Amica Mutual Ins. Co. v. W. C. Bradley Co.*, 217 F.R.D. 79, 82 (D. Mass. 2003) (Dein, M.J.); *accord In re Lernout & Hauspie Securities Litig.*, 222 F.R.D. 29 (D. Mass. 2004); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 140 (D. Mass. 2004). MIT's assertion of work product privilege with respect to the documents in question,[9] which neither are prepared by an attorney nor demonstrably in anticipation of litigation, is improper. To qualify for work product protection, each document in question must: "1) be a document or tangible thing, 2) which was ***prepared in anticipation of litigation,*** and 3) was prepared by or for a party, or by or for its representative." *Amica,* 217 F.R.D. at 83 (emphasis added).

---

[9]    These documents, created between 1991 and 2005, are described as prepared in anticipation of litigation in the context of license negotiations and include, but are not limited to, Entry nos. 3, 17, 56, 82, 103, 105, 112, 151, 163, 165, 166, 167, 168, 169, 170, 171, 172, 173, 175, 176, 177, 178, 179, 180, 181, 182, 183, 185, 186, 187, 188, 189, 190, 191, 194, 196, 201, 204, 205, 209, 210, 211, 212, 213, 217, 220, 221, 222, 223, 224, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 237, 238, 239, 240, 241, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 274, 275, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 328, 329, 330, 331, 333, 334, 336, 337, 339, 461, 462, 463, 464, 465, 468, 470, 471, 493, 516, 517, 518, 519, 520, 521, 522, 523, 528, 529, 530, 540, 544, 549, 550, 551, 552, 553, 554, 555, 556, 558, 559, 562, 564566, 567, 568, 570, 571572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 589, 590, 592, 593, 594, 595, 596, 598, 599, 600, 603, 604, 605, 606, 607, 608, 609, 610, 611, 612, 613, 614, 615, 616, 617, 618, 619, 620, 621, 760, 761, 762, 763, 764, 765, 766, 768, 776, 777, 778, 779, 780, 781, 782, 783, 784, 785, 786, 787, 788, 789, 790, 791, 792, 793, 794, 795, 796, 797, 798, and 799.

a.    **Licensing negotiations are not *per se* in anticipation of litigation.**

Although the work product doctrine protects against disclosure of materials prepared in anticipation of litigation,[10] license negotiations are not ***per se*** in anticipation of litigation, and therefore, without further inquiry it is improper to assert a blanket of privilege over all license negotiation materials. *Minebea Co., Ltd. v. Papst*, 355 F. Supp. 2d 526, 528 (D.D.C. 2005); *see also Minebea Co., Ltd. v. Pabst*, 370 F.Supp.2d 297, 301 (D.D.C. 2005) ("… the Court has long since refused to accept … that all patent prosecutions and all licensing negotiations are 'in anticipation of negotiation.'")   More to the point, documents are not considered "prepared in anticipation of litigation" where litigation was threatened primarily to coerce the development of a licensing relationship. *Minebea Co., Ltd. v. Papst*, 229 F.R.D. 1, 4 (D.D.C. 2005).   Instead, as this Court noted in *Amica*, where activities are not conducted solely in anticipation of litigation, "a determination as to whether documents … were prepared in anticipation of litigation, as opposed to in the ordinary course of business, should be made on a case-by-case basis." *Amica*, 217 F.R.D. at 83.   This case-by-case inquiry must include addressing the nature of the documents, for work product immunity does not apply if the documents are not legal in nature. *Union Carbide Corp. v. Dow Chem. Corp.*, 619 F. Supp. 1036, 1051 (D. Del. 1985).   Thus, to support its claim, MIT must show, on a case-by-case basis, that each document generated for license negotiations was legal in nature and prepared "in anticipation of litigation."

In its privilege logs, MIT claims that the 271 documents identified herein were ***both*** generated during the course of licensing negotiations ***and*** protected by the work product doctrine as prepared in anticipation of litigation, even though these documents involve no attorneys. More specifically, MIT claims that ***each*** of these documents, created over more than a fourteen-

---

[10] *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004).

year period, were prepared in anticipation of litigation in the context of what must be assumed to be various distinct license negotiations.

To meet its burden, "[a] party seeking to assert that materials were prepared in anticipation of litigation must state with some specificity which litigation was anticipated, and what nexus exists between the anticipated litigation and the contents of the materials in question or the motivation for their creation." *In re Grand Jury Subpoena*, 220 F.R.D. at 146. Furthermore, "anticipation requires something more than a remote possibility of litigation." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 147 (D. Mass. 2004). MIT's blanket assertion that licensing negotiations are *per se* "in anticipation of litigation" is insufficient and does not meet the burden set forth in *Amica* and *Union Carbide*. In addition, MIT has not described sufficiently the nature of these documents and does not demonstrate that these documents were indeed prepared solely in anticipation for litigation.

Where litigation is not imminent, documents are deemed prepared in anticipation of litigation only where "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Grand Jury Subpoena,* 220 F.R.D. at 148 (citing *United States v. Rockwell Intl*, 897 F.2d 1255, 1266 (3rd Cir. 1990) and noting this District's fact-based sliding scale to determine "anticipation"). Where, as here, documents were created primarily to aid in license negotiations, the primary motivating purpose behind the document creation was *not* to aid in possible future litigation. MIT has not met its burden in demonstrating that its documents generated for license negotiations were created for the "primary motivating purpose" of aiding in possible future negotiation, and thus its claim of protection is unsustained. *See id.*

b.    **Even if MIT's documents are considered to have dual purposes, they were clearly created primarily to generate licensing revenue and not due to threat of litigation.**

Even if MIT had demonstrated that the documents in questions were created both to aid in license negotiations **and** for possible future litigation, which it has **not,** those documents were clearly created **primarily** in an effort to generate licensing revenue.   Applying this Court's precedent in *Amica*, these documents are not protected work product.   In *Amica*, the Court held that dual purpose documents (such as the documents currently called into question which MIT asserts were created for both licensing and litigation) are protected only where "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained **because of** the prospect of litigation." *Amica*, 217 F.R.D. at 83. (emphasis in the original); *see also Lernout & Hauspie Securities Litig.*, 222 F.R.D. 29, 36 (D. Mass. 2004) (noting that "in order to qualify for protection, it must fairly be said that the documents were created because of actual or impending litigation").

In this case, at a minimum, Robert Swartz's role as an independent contractor did not involve litigation, but the instead involved seeking opportunities for MIT to license its patents, and his compensation was tied to such licensing.   *See* Ex. K (to be later submitted pursuant to the assented-to motion to file under seal, submitted simultaneously herewith.)   Thus, documents prepared in the ordinary course of Mr. Swartz' business,[11] as a contractor responsible for generating licensing revenue, would have been created in essentially the same form irrespective of the litigation.   These documents are therefore not protected, despite MIT's contention that such documents were created to "aid in the preparation of litigation." *See Amica* at 83.

---

[11]    *See e.g.* Ex. J, Entry Nos. 241, 278, 279, 281, 282, 283, 284, 285, 286, 287, 288, 296, 298, 325, 462, 463, 464, 465, 468, 471, 493, 516, 517, 518, 519, 520, 521, 522, 523, 528, 529, 530, 550, 551, 552, 553, 558, 559, 562, 564, 566, 567, 568, 573, 574, 575, 576, 577, 578, 579, 581, 583, 585, 586, 589, 590, 595, 598, 603, 604, 608, 610, 611, 613, 614, 616, 777, 779, and 792.

c.    **Even if documents are work product, Harman is entitled to their discovery as it has demonstrated a substantial need for the materials and is unable to obtain a substantial equivalent by other means.**

Even if MIT had demonstrated that the documents were protected work product, which it has not, Rule 26 (b)(3) permits discovery of ordinary work product "upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3); *In re Grand Jury Subpoena,* 220 F.R.D. 130, 144 (D. Mass. 2004).

Here, the information Harman seeks relates to its defenses, including non-infringement, invalidity, and unenforceability as well as the assessment of damages. By way of example, Harman has requested, and MIT has not produced, documents relating to the field trials, public use, conception, and reduction to practice. The testimony and document production to date has been scant in terms of these issues and has done little to elucidate the facts surrounding these issues.[12] Harman has been unable to obtain information equivalent to these documents through any means.[13] Harman has demonstrated that it has a substantial need of these materials and cannot obtain their equivalent by any other means. Pursuant to its showing under Rule 26 (b)(3), Harman now respectfully requests that the Court compel MIT to produce the identified documents.

---

[12]    *See* Ex. O, January 11, 2006 Edwards letter to Cerveny listing specific document deficiencies in Dr. Davis' production; Ex. M, May 12, 2006, Harman letter to MIT noting deficiencies in Mr. Schmandt's production and Ex. P, NEC response to subpoena, stating that NEC Solutions America, Inc. is not in possession of documents responsive to Harman's subpoena.

[13]    For example, MIT's recent promise to search for documents regarding the formula used to calculate royalties paid to the inventors, followed by its assertion of work product protection over *every* document so identified, demonstrates that Harman cannot obtain this information elsewhere. *See* Ex. F (objecting to MIT's June 1, 2006 assertion that the only three documents that provide the "formula for royalty" are protected work product.)

2.    **MIT Waived Privilege Associated With Documents Shared With NEC, as Sponsor, and No Common Interest Exists Between MIT and NEC.**

MIT also refuses to produce documents shared with NEC, the sponsor of Davis' thesis work, claiming that these documents are the subject of attorney-client privilege. These documents include at least the following: Entry Nos. 2, 6, 7, 21, 23, 27, 29, 36, 39, 40, 41, 44, 55, 68, 84, 116, 120, 122, 124, 128, 139, 144, 214, 215, 630, 633, 644, 647, 663, and 774. NEC's involvement in the research leading up to the patent's invention, the Back Seat Driver, is highly relevant, as the research proposal between MIT and NEC provides for quarterly written progress reports, demonstrations, and discussions as well as NEC's involvement in the map database development. *See* Ex. R (to be later submitted pursuant to the assented-to motion to file under seal, submitted simultaneously herewith.) Accordingly, documentation regarding NEC's involvement is relevant, responsive, and extremely pertinent to the conception and reduction to practice of the invention. MIT continues to withhold these documents without having met its burden to establish that any privilege applies.

a.    **Attorney client privilege is waived through communication to third parties such as NEC**

Whether documents are protected by the attorney-client privilege is properly determined on a case-by-case basis. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981)). An assertion of privilege over documents should not be made lightly and should be consistent with both the relevant facts and law. *See, e.g.*, *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 239 (1998) (citing *United States v. Nixon*, 418 U.S. 683, 710 (1974) and noting "[e]xceptions to the demand for every man's evidence are not lightly created nor expansively construed."). Because the privilege reduces the amount of discoverable information during the course of a lawsuit, it must be narrowly construed. *In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir.

1996). Furthermore, once privilege is waived, such as through communication to third parties, the waiver is complete and final as to all parties and for all purposes. *MPT, Inc. v. Marathon Labels, Inc.*, No. 1:04 CV 2357, 2006 WL 314435, at *6 (N.D. Ohio Feb. 9, 2006) (courtesy copy attached as Ex. L). Moreover, when determining whether the attorney-client privilege applies as between licensors and licensees in patent cases, the law of the regional circuit applies. *In re Regents of the University of California*, 101 F.3d 1386, 1390, n.2 (Fed. Cir. 1996).

Under First Circuit precedent, MIT waived any privilege associated with the documents in question through its communication of the information therein to NEC, a third party. MIT's attempt to broaden the circle of privilege to protect third-party communications to NEC is improper. NEC is neither MIT's attorney nor client.

The attorney-client privilege protects only confidential communications between an attorney and client made for the purpose of seeking or receiving legal advice. *In re Keeper of Records*, 348 F.3d 16, 22 (1st Cir. 2003). Even where attorney-client privilege is found, such privilege is waived through disclosure to third parties. *U.S. v. Massachusetts Institute of Technology*, 129 F.3d 681, 684 (1st Cir. 1997); *In re Keeper of Records*, 348 F.3d at 22 ("When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised."); *see also In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996) (the attorney-client privilege is waived by voluntary disclosure of private communications to a third party).

Where, as here, Harman asserts specific instances of disclosure, the burden rests on MIT to show that confidentiality was maintained. *U.S. v. Massachusetts Institute of Technology*, 129 F.3d 681, 686 (1st Cir. 1997) ("Where privilege is claimed and the opponent alleges a specific

disclosure, the burden of proof is upon the claimant to show nondisclosure wherever that is material to the disposition of the claim.").

The communications sought from MIT, in which NEC was a named participant, were clearly communications to a third party and effectuated a waiver of any attorney-client privilege that existed with respect to the communications therein. Accordingly, Harman respectfully requests this Court to compel the production of these documents.

### b. The common interest doctrine does not apply where, as here, the communicants did not share a common legal interest.

MIT's only asserted basis for claiming attorney client privilege over the documents communicated to NEC consists of statements during the parties conference calls that NEC was a "licensee" of MIT, thus creating a common legal interest protected by the attorney client privilege. Regardless of MIT's assertion to the contrary, no common interest has been demonstrated to have existed between NEC and MIT. Under this Court's precedent, "[t]he common interest doctrine is typically understood to apply when two or more clients consult or retain an attorney on particular matters of common interest." *Ken's Foods, Inc. v. Ken's Steak House*, 213 F.R.D. 89, 92 (D. Mass. 2002). "The common-interest privilege is not an independent basis for privilege, rather it is an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." *Id.* The common interest doctrine preserves the privileged nature of the communications between parties possessing "*an identical legal interest*" in the subject matter of the communication. *Massachusetts Eye and Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 228 (1st Cir. 2005) ("The question is whether a party has 'an identical (or nearly identical) legal interest' with another..."); *see also Federal Deposit Ins. Corp. v. Ogden Corp.*, 202 F.3d 454, 461 (1st

Cir. 2000) ("The term 'common interest' typically entails an identical (or nearly identical) legal interest as opposed to a merely similar interest.).

Though MIT's basis for asserting a common legal interest over the communication is NEC's status as licensee, the documents that have been produced in this case clearly demonstrate that, at the time of the patent application, MIT had only an *option* for a *non-exclusive* license. Furthermore, the terms of this *non-exclusive* license were the subject of extensive negotiations between the parties in 1991, which resulted in the executed *non-exclusive* license on June 26, 1991, nearly one year after the patent application was filed. *See* Exs. Q, S and T (to be later submitted pursuant to the assented-to motion to file under seal, submitted simultaneously herewith.) As held in *Katz v. AT&T Corp.*, 191 F.R.D. 433, 438 n.4 (E.D. Pa. 2000), "it does not follow *a fortiari* that patentee has the requisite identity of interests with a potential licensee…" At best, NEC was a potential licensee prior to June of 1991, and a *non-exclusive* licensee after June of 1991. *See* Ex. S (to be later submitted pursuant to the assented-to motion to file under seal submitted simultaneously herewith.)

Furthermore, there is no evidence that NEC was involved in the patent prosecution, and even if it was, there is no evidence that its involvement rose to the level of the requisite common legal interest to preserve the privilege. The privilege log entries involve communications with NEC that occurred after the patent application, and the scant documents produced by MIT support Harman's position that NEC and MIT were not of a common legal interest. *See, e.g.,* Ex. Q, S and T (to be later submitted pursuant to the assented-to motion to file under seal submitted simultaneously herewith.) Clearly, the parties did not share a common legal interest in the patent while represented by separate counsel negotiating their rights under the non-exclusive license agreement.

The holding of the Federal Circuit in the case of *In re Regents of the University of California* is instructive. *In re Regents of the University of California*, 101 F.3d 1386 (Fed. Cir. 1996). Although a common interest was found to exist in that case, the facts therein were distinct from this case, and in fact, the holding rested on that distinction. In *Regents,* the parties had entered into an ***exclusive*** option agreement for certain license rights to ensuing United States patent rights, ***with the license becoming exclusive upon certain conditions subsequen***t. *Id.* at 1388-1389. Throughout its analysis, the Federal Circuit stressed that "UC also cites the fact that ***from the inception of the option agreement,*** Lilly's license rights had the potential to become and ultimately did become ***exclusive*** and that ***that fact gave Lilly and UC an identity of interest***." *Id.* at 1390 (emphasis added). "We conclude that the legal interest between Lilly and UC was substantially identical ***because of*** the potentially and ultimately ***exclusive*** nature of the Lilly-UC license agreement" *Regents* at 1390 (emphasis added.) "Lilly was ***more than a non-exclusive licensee*** and shared the interest that UC would obtain valid and enforceable patents." *Id.* at 1391.[14]

Unlike Lilly in *Regents*, NEC was a ***non-exclusive*** licensee and never enjoyed even the option for an exclusive license. The eventual non-exclusive license was the subject of much negotiation (*see, e.g.*, Exs. Q, S and T, to be later submitted pursuant to the assented-to motion to file under seal submitted simultaneously herewith.) With only a mere non-exclusive license, NEC did not have a substantially identical legal interest to that of MIT in the prosecution of the patent, consistent with the requirements of *Regents*. Without such a common legal interest, the any privilege was waived through the communication to NEC, and MIT's continued withholding of these documents is improper and prejudices Harman .

---

[14]    Furthermore, in that case, the attorney prosecuting the patent was representing both parties in that prosecution. *See In re Regents of the University of California*, 101 F.3d 1386, 1389 (Fed. Cir. 1996).

**3.**    **MIT's Assertion of Privilege on the Basis That Documents are Non-Responsive.**

Finally, in addition to the objections above, Harman objects to the following entries on MIT's privilege log, to the extent that they state *no basis* for any claim of privilege: Entry Nos. 98, 531, 532, 533 and 534. These entries are listed as "produced in redacted form" on the basis that the redacted portion of the document is "non-responsive." "To withhold relevant documents, a party must justify that the documents are protected under either the attorney-client privilege or work product doctrine, or both. *Conopco Inc. v. Warner-Lambert Co.*, No. Civ A 99-101(KSH), 1999 WL 156082, at *3 (D.N.J. January 24, 2000) (courtesy copy attached as Ex. N.) MIT has asserted neither the attorney-client privilege nor work product protection as to the information redacted from these documents. Harman therefore requests the immediate production of these documents or a supplemental privilege log providing sufficient detail for Harman to assess MIT's claim of privilege.

## CONCLUSION

For the reasons discussed above, Harman respectfully requests that this Court:

1.    Order the immediate production of those documents identified above for which privilege was improperly claimed; and

2.    Reserve Harman's right, based upon its review of these documents, to recall Mssrs. Swartz, Turner or Schmandt for deposition regarding the content of these communications; however

3.    If this Court feels that further inspection is necessary, Harman requests that it be allowed to select a subset of documents identified on MIT's Logs for an *in camera* review for the purpose of resolving this motion to compel.

## COMPLIANCE WITH LOCAL RULES 7.1 AND 37.1

Harman's counsel discussed the issues raised herein with MIT's counsel on numerous occasions in April, May, and June 2006, including conference calls on April 28, May 12, May 17, and June 12, 2006. During the conference call on June 12, 2006, the parties agreed that an impasse had been reached as to each of these issues. As the parties have been unable to resolve the issues, Harman is forced to respectfully request the Court's assistance.

Dated: June 16, 2006

Respectfully submitted,

/s/ Courtney A. Clark
Robert J. Muldoon, Jr., BBO# 359480
James W. Matthews, BBO# 560560
Edward S. Cheng, BBO# 634063
Courtney A. Clark, BBO# 651381
**SHERIN AND LODGEN, LLP**
101 Federal Street
Boston, MA  02110

William A. Streff Jr., P.C.
Craig D. Leavell
Michelle A.H. Francis
Ann H. Chen
**KIRKLAND & ELLIS LLP**
200 E. Randolph Dr.
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **HARMAN'S MOTION TO COMPEL DISCOVERY OF CERTAIN DOCUMENTS IMPROPERLY IDENTIFIED AS PROTECTED ON MIT'S PRIVILEGE LOGS** was delivered by electronic means this 16th day of June, 2006, to counsel for MIT as follows:

> Steven M. Bauer
> Kimberly A. Mottley
> John Pint
> Proskauer Rose LLP
> One International Place, 14th Floor
> Boston, MA 02110-2600
> sbauer@proskauer.com
> kmottley@proskauer.com
>
>
> /s/ Courtney A. Clark

# A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BOSTON DIVISION

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>      **Plaintiff,**<br><br>    v.<br><br>**HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,**<br>A Delaware Corporation,<br>      **Defendant.** | Case No: **05-10990 DPW**<br>**Hon. Douglas P. Woodlock** |

## HARMAN'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS (Nos. 1-28)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Harman International Industries, Incorporated ("Harman") requests that Massachusetts Institute of Technology ("MIT") produce, in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court, the following documents and things within thirty (30) days from receipt of this First Set Of Requests For The Production Of Documents And Things at the law offices of Kirkland & Ellis LLP, 200 East Randolph Drive, Chicago, Illinois 60601, or at such other place as the parties may agree.

### REQUESTS

1. All documents and things referring or relating to U.S. Patent No. 5,177,685 (the "Patent-In-Suit"), the application that lead to its issuance (application number 565,274), or the subject matter thereof, including without limitation all engineering notebooks, laboratory

notebooks, records, logs, and files created or maintained by, or at the direction of, Dr. James R. Davis, Mr. Christopher M. Schmandt or Dr. Sam Pasternack.

2. All documents and things upon which MIT relied, at the time MIT filed its Complaint, to support the allegations that Harman has infringed the Patent-In-Suit.

3. All documents and things upon which MIT relied, at the time MIT sent its March 24, 2003 letter to Porsche (See Ex. A to Harman's Complaint in Case No. 05 C 1481), to support the assertion that Porsche needs "to license on a non-exclusive basis the right to practice these patents."

4. All documents and things upon which MIT relied, at the time MIT sent letters to competitors or potential customers of Harman such as Garmin International, Inc., Alpine Electronics, Inc., Siemens AG, DaimlerChrysler AG, Bayerische Motoren Werke AG (BMW) and/or any other company to support the assertion that these companies need to license the Patent-In-Suit.

5. All documents and things referring or relating to Harman and/or any Harman product.

6. All documents and things referring or relating to Back Seat Driver.

7. All documents and things referring or relating to any disclosure of any portion of the subject matter of the Patent-In-Suit to any third party.

8. All documents and things referring or relating to any disclosure to, or use by, any third party of any portion of the subject matter of the Patent-In-Suit before the filing date of patent application number 565,274.

9. All documents and things concerning the first sale, first offer for sale, or first public use or display of any alleged invention of the Patent-In-Suit.

10. All documents and things referring or relating to any experimental use, field test, and/or prototype of any alleged invention of the Patent-In-Suit.

11. Documents sufficient to show each and every prototype, project, or product conceived, designed, researched, manufactured, used, sold, offered for sale, or imported into the United States allegedly within the scope of any claim of the Patent-In-Suit, including without limitation any activity of any third party in making, using, selling or offering for sale any product allegedly within the scope of any claim of the Patent-In-Suit.

12. All documents and things referring or relating to Robert Swartz and/or Web Telephony, LLC.

13. All documents and things relating to any assertion, charge, claim, or allegation of infringement of the Patent-In-Suit, including without limitation correspondence, pleadings, discovery sought or obtained, transcripts, exhibits, videotapes, expert reports, or opinion.

14. All documents and things referring or relating to MIT's decision to assert the Patent-In-Suit against Harman or any third party.

15. All documents and things evidencing, referring or relating to any communication between MIT, or anyone acting or purporting to act on MIT's behalf, and any party other than MIT, regarding the Patent-in-Suit or this litigation.

16. Documents sufficient to show the complete chain of title for, and MIT's ownership of and standing to sue under, the Patent-in-Suit.

17. All documents referring or relating to any prior art known, considered, reviewed or evaluated before or during prosecution, or after the grant of, the Patent-In-Suit.

18. All documents referring or relating to any search, investigation, study, analysis, evaluation or opinion relating to prior art, patentability, novelty, validity, enforceability,

3

ownership and/or infringement of any claim of the Patent-In-Suit and the results of any such search or investigation.

19. Documents sufficient to show MIT's document retention policies from 1987 to present.

20. All documents and things referring or relating to MIT's first knowledge of any Harman product that MIT alleges infringes the Patent-In-Suit.

21. All documents and things passing between MIT and any named inventor of the Patent-In-Suit.

22. Copies of all patents for which any named inventor of the Patent-In-Suit is named as an inventor.

23. The personnel, student and/or employment history files for each of the named inventors of the Patent-In-Suit and any MIT students and/or employees disclosed in MIT's initial disclosures, including curricula vitae.

24. All documents and things concerning any opinion concerning the validity, enforceability, or infringement by any person of the Patent-In-Suit.

25. All documents referring or relating to Charles G. Call, including without limitation all documents provided to or received from Charles C. Call.

26. All documents referring or relating to the funding or sponsorship for the Media Lab, including but not limited to the work and/or project that led to the Patent-In-Suit.

27. All thesis drafts, revisions, notes and documents referring or relating or leading up to the September 1989 thesis paper authored by James R. Davis, entitled Back Seat Driver: voice assisted automobile navigation.

4

28. Documents sufficient to show MIT's thesis submission, review, certification, acceptance and publication process(es).

29. Documents sufficient to show all incentives or rewards by MIT to inventors for issued patents.

Dated:   September 6, 2005

Robert J. Muldoon, BBO #359480
James W. Matthews, BBO #560560
Edward S. Cheng, BBO #634063
SHERIN & LODGEN LLP
101 Federal Street
Boston, MA 02110
(617) 646-2000


William A. Streff Jr. P.C.
Michelle A.H. Francis
Jamal M. Edwards
KIRKLAND & ELLIS L.L.P.
200 East Randolph Drive
Chicago, IL  60601
312.861.2000

*Attorneys for Defendant Harman, Inc.*

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2005, I caused a true and correct copy of HARMAN'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS AND THINGS (NOS. 1-28) to be served on the following counsel of record via email with a courtesy copy via U.S. Mail:

Steven M. Bauer, Esq. (sbauer@proskauer.com)
Kimberley A. Mottley, Esq. (kmottley@proskauer.com)
Proskauer Rose LLP
One International Place  14th Floor
Boston, Massachusetts  02110-2600

By: _____

Attorney for Defendant

**B**

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamal M. Edwards
To Call Writer Directly:
(312) 861-2464
jedwards@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: (312) 660-0719

January 25, 2006

**VIA E-MAIL**

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place, 14th Floor
Boston, MA 02110-2600

Re:  *MIT v. Harman Int'l Indus. Inc.,*
Case No. 05-10990 DPW

Dear Kim:

This letter responds to your January 23, 2006 letter to Craig Leavell concerning discovery.

## I.    Product Samples

Based on your e-mail message yesterday, we understand that MIT will be withdrawing its motion compel as it relates to product samples. We continue to believe that MIT's motion to compel is unwarranted. As a courtesy, and in the spirit of cooperation, Harman went to great lengths to provide MIT with operable samples from which it would be able to determine the structure, function and operation of the Accused Products. MIT's belated withdrawal of its motion concerning product samples only further demonstrates MIT's ignorance of Harman's good faith efforts to cooperate and to provide MIT the discovery to which it is entitled. As your inspection yesterday revealed, the product samples we initially provided are not "substantially altered"—we never told you they were. On the contrary, as we've told you time and again, the product samples we provided were merely supplemented with a power supply, harness, speakers and display box so that they would function outside of a vehicle. Likewise, we told you that the samples MIT requested—products "as commercially sold by Harman"—will not function unless installed in a vehicle. We have nonetheless made available for inspection samples "as commercially sold by Harman" from which I am sure you will see we are correct. MIT could have avoided raising this issue before the Court had you inspected the products we produced, as we invited you to, *before* filing MIT's motion to compel.

We hope MIT will carefully consider its meet and confer obligations in the future, prior to filing wasteful motions to compel.

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
January 25, 2006
Page 2

## II.    Source Code

We still do not understand why MIT insists on having *carte blanche*, unsupervised access to Harman's most confidential and proprietary information.  As you know, providing outsiders with unsupervised access to an electronic version of Harman's source code presents significant security concerns and may Harman's entire business at risk.  An abuse of such access, even if unlikely, will cause Harman severe and immediate irreparable harm.  Yet, MIT speciously, and without support, insists on putting Harman in such an untenable position.

As a compromise, we first offered to provide you with complete paper copies of Harman's source code for review by MIT's outside counsel and designated expert, as provided by the protective order.  David Cerveny told me that was not acceptable.  Thus, your allegations that we refused to produce paper copies are absolutely false.  Nonetheless, we have also offered to provide an electronic copy of the source code at out local counsel's office—a mere four blocks away from your office—without placing any unreasonable restrictions upon MIT's access.  We merely request that MIT's access to Harman's most confidential and proprietary information be supervised and limited to regular business hours.  We have committed in good faith to allow MIT as much access as it needs at our local counsel's office.  MIT's insistence on having unfettered access to Harman's most confidential and proprietary information is inexplicable, and you've continually refused to cite even one case explaining why.

If MIT has changed its position and now wants paper copies of Harman's source code, we are happy to oblige; just let us know.

## III.    Depositions

My understanding is that Craig Leavell has provided you with dates for the depositions of Harman's non-technical witnesses, and has also offered dates for Mr. Radamski, who is a technical witness.  Also, you appear to be confused about the background of certain Harman witnesses.  Mr. Jeske is a technical witness employed in a managerial capacity at Harman's primary research and development facility in Germany.  Mr. Naife and Harman's Rule 30(b)(6) designee for topic 3 both have technical and non-technical information.  And, we continue to maintain that we Harman cannot fairly offer its technical witnesses until after MIT has provided its claim construction positions and responses to Harman's interrogatories nos. 1-5 (concerning infringement contentions and claim construction).  Likewise, Harman cannot provide a full and complete corporate response to any of MIT's Rule 30(b)(6) topics until after it receives MIT's claim construction and infringement contentions, which were requested in September by Harman's First Set of Interrogatories.

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
January 25, 2006
Page 3

Furthermore, our prior agreement concerning Rule 30(b)(6) designees requires each party to identify its designees 7 days prior to the deposition date. Harman's Rule 30(B)(6) deposition concerning topic 2 is more than 7 days away. We therefore decline MIT's request to vary the terms of our prior agreement and will disclose the identities of each designee pursuant to our agreement. MIT's acceptance of the proffered date for that deposition can not be conditioned upon Harman disclosing the identity of the witness.

We do not represent Mr. Rauterberg at this time.

## IV.    Claim Construction

We are surprised that MIT, as the plaintiff and patentee, is now urging Harman to disclose its claim construction positions *concerning MIT's own patent*, when MIT refuses to do the same. For nearly three years, MIT has refused to tell Harman, among other things: (1) how MIT construes its own patent; and (2) why MIT believe Harman infringes. Even after the court-ordered deadline has passed, and after Harman agreed to *exchange* claim construction positions with MIT, MIT still refuses. As the defendant, we currently have significantly less information about MIT's patent. We are thus puzzled by your odd and unusual request that Harman, the defendant, disclose its claim construction positions to MIT first. Instead, we continue to believe that MIT should either disclose its contentions by responding to Harman's interrogatories nos. 1-5 (which were due more than three months ago) or by exchanging claim construction positions, as ordered by the Court. Unless MIT is now willing cooperate, we will leave this matter for the Court to resolve.

## V.    Scope of Rule 30(b)(6) Topics

We do not understand why MIT is rushing Harman to concede that willfulness is at issue in this case when the Court has not even granted leave to amend. As soon as the Court allows our amended pleadings we will supplement in due course, as required by Rule 26.

Your attempts to expand the scope of Topic 2 are improper. Topic 2 does not involve Harman's invalidity claims. Topic 2 reads:

> 2.    Harman's first knowledge of the '685 patent, any prior art related thereto, and any opinion, assessment, or inquiry rendered for, or by, Harman regarding the validity, enforceability, and/or scope of any of the claims of the '685 patent.

Thus, Topic 2 is limited to "prior art" and "any *opinion, assessment, or inquiry …* regarding the validity…of the '685 patent." Topic 2 does not request any discovery concerning Harman's invalidity claims.

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
January 25, 2006
Page 4

## VI.    Document Production

We expect to be making a supplemental production available tomorrow, which will include additional e-mail correspondence, which we just finished reviewing. We will contact you when the production is available for pick up.

As a courtesy, we are happy to provide the sales spreadsheet in e-mail form. To be clear, Harman's financial records are not stored in Excel format in the ordinary course of business. Harman, like most other major companies, uses an SAP or other accounting system to store all of its financial information company-wide. Pursuant to your request, we requested a report concerning the relevant business units and products at issue. The report was provided in excel format for convenience and printing purposes. In the ordinary course of business, these reports would otherwise be provided in paper format, as printed directly from the system.

We have asked Professor Wietzke to search for and produce documents in response to MIT's subpoena. As we've told you before, Professor Wietzke is not a Harman employee and thus has very little relevant documentation.

We cannot identify the source of Harman's documents by bates range. MIT never requested that the documents be produced in such a manner. As we have produced documents, we have told you where they were coming from (i.e., Germany, Michigan, etc.) and they are responsive to MIT's document requests. That is the extent of our obligation. Indeed, MIT has not provided any more detail than that to Harman.

Thank you for raising the privilege log issue. We have recently reviewed MIT's privilege log and we have serious concerns about many of its entries. Before we supplement, we would like to discuss the many entries on MIT's log which appear to be improperly withheld. This will help Harman determine whether it has any further issues with MIT's production and will help to avoid unnecessary disputes when the parties next supplement their logs. We will write separately to outline our concerns with MIT's voluminous privilege log.

## KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
January 25, 2006
Page 5


I trust this letter addresses and resolves your concerns. If you have further concerns or questions, please let us know.


Very truly yours,

Jamal M. Edwards

cc: Robert J. Muldoon, Esq.

**C**



Jamal
Edwards/Chicago/Kirkland-Ell
is

02/13/2006 12:14 PM

To    "Kimberly A. Mottley" <kmottley@proskauer.com>, "Jamal
      Edwards" <jedwards@kirkland.com>

cc    Harman-MIT@kirkland.com, "MIT_Harman"
      <MIT_Harman@proskauer.com>

bcc

Subject    Re: MIT/Harman - Privilege Log

Kim:

That was the agreement we reached when we agreed to exchange updated privilege
logs.  Nonetheless, we are currently reviewing our log for additional
documents to produce.  We hope to be able to identify those documents
soon--well in advance of Mr. Hart's deposition.  If you have concerns about
specific documents, please write us and let us know.  We will gladly consider
your requests.

We are thus not aware of any reason that a discussion on this topic is
necessary at this time.  We should talk soon, however, to discuss MIT's
privilege log.  Will you be available to discuss your log on Friday, or
sometime next week.

Regards,

Jamal.


    ----- Original Message -----
    From: "Mottley, Kimberly" [kmottley@proskauer.com]
    Sent: 02/13/2006 10:56 AM
    To: Jamal Edwards
    Cc: Harman-MIT@kirkland.com; MIT_Harman" <MIT_Harman@proskauer.com>
    Subject: RE: MIT/Harman - Privilege Log


Jamal - I don't recall any such agreement, nor is one reflected in our correspondence confirming the
agreements reached during our January 30, 2006 conversation.  If you can not discuss this today, I
suggest a call no later than Wednesday morning to discuss this issue.  Does 10:00 a.m. EST on
Wednesday work for you?


Kimberly A. Mottley| PROSKAUER ROSE LLP
One International Place | Boston, MA 02110-2600
v: 617.526.9616 | f: 617.526.9899
kmottley@proskauer.com | www.proskauer.com


**From:** Jamal Edwards [mailto:jedwards@kirkland.com]
**Sent:** Monday, February 13, 2006 10:58 AM

# D

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

Colleen Garlington
To Call Writer Directly:
312 469-7019
cgarlington@kirkland.com

200 East Randolph Drive
Chicago, Illinois 60601

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: 312 846-9181

April 21, 2006

VIA ELECTRONIC MAIL

Kimberly Mottley, Esquire
Proskauer Rose LLP
One International Place
22nd Floor
Boston, MA 02110

     Re:    MIT v. Harman International Industries, Inc., No. 05-10990 DPW (D. Mass.)

Dear Kim:

    Based upon our review of MIT's privilege logs, including those served on February 11, March 30, April 13 and April 18, 2006, Harman notes numerous deficiencies, including entries incorrectly logged as redactions, redactions not identified on the log, entries for which attorney-client privilege or the attorney work product doctrine appear to be improperly claimed, and entries for redactions whose descriptions do not match the subsequently produced redacted documents. While we reserve the right to challenge additional entries, we call your attention to the following concerns regarding the entries identified below in order to facilitate your review and correction of MIT's log.

## 1.    Documents Not Protected by the Attorney Client Privilege

    (a)    Not A Communication By Or To An Attorney

    Harman notes that the following entries are apparently not communications by or to attorneys, and yet MIT asserts privilege over them as attorney-client communications:

    3, 5, 15, 17, 19, 22, 24, 25, 32, 33, 37, 38, 40, 42, 44, 45, 46, 47, 49, 51, 52, 56, 62, 63, 72, 80, 82, 83, 84, 85, 91, 96, 103, 105, 112, 150, 151, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 237, 238, 239, 240, 241, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267,

## KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
April 21, 2006
Page 2

268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283,
284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, 299,
300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315,
316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 328, 329, 330, 331, 333,
334, 336, 337, 338, 339, 343, 409, 411, 461, 462, 463, 464, 465, 468, 469, 470,
471, 493, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 527, 528, 529, 530,
539, and 540.

These documents are neither authored by, nor addressed to, an attorney, and thus we do
not understand the basis for MIT's claim of attorney-client privilege. The law on privilege in
this District is well-settled. The privilege applies only: (1) where legal advice of any kind is
sought (2) from a professional legal adviser in his capacity as such, (3) the communications
relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance
permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the
protection may be waived. *Cavallero v. United States*, 153 F.Supp.2d 52, 57 (2001) (citing
*United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681 (1st Cir. 1997)).

MIT's assertion of the privilege is thus improper with respect to these non-attorney
communications. Harman requests their immediate production.

(b)    Privilege Was Waived by Disclosure to Opposing Parties or Third Parties

We further note that many of MIT's privilege log entries include correspondence between
persons not identified in MIT's initial disclosures or any other discovery or communications
between the parties to date. Accordingly, for each entry, please confirm that all of the authors
and recipients of the documents are directors, officers, employees or attorneys of MIT and that
none of the "authors," "recipients" or "other recipients" are third parties or opposing parties. As
you know, disclosure of privileged information to opponents or other third parties results in
waiver of the privilege. *See Massachusetts Inst. of Tech.*, 129 F.3d at 685.

Accordingly, please confirm that MIT will immediately remove from its log at least the
following entries: 364-366 and 368-69, which are communications authored or received by
Meredith Addy, who, as you know, was counsel to Harman in connection with MIT's claims of
infringement prior to the initial of this litigation.

## 2.    Documents Not Protected By Attorney Work Product

MIT's assertion of the work product privilege with respect to documents that were not
prepared by an attorney in anticipation of litigation is improper. As you know, the work product

# KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
April 21, 2006
Page 3

doctrine protects only work done by an attorney or his or her agent for a client in anticipation of litigation. *U.S. v. Nobles*, 422 U.S. 225, 238-39 (1975) (work product protects only work done by attorney or for attorney in anticipation of litigation); *Sprague v. Director, Office of Workers' Compensation*, 688 F.2d 862, 869-70 (1st Cir. 1982) (providing qualified immunity only to documents prepared by an attorney or attorney's agent) (citing *Nobles, supra*).

Harman notes that at least the following documents do not appear to be covered by the work product doctrine because the documents were not prepared by or for an attorney:

> 56, 62, 82, 93, 95, 103, 105, 163, 174, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 205, 209, 229, 230, 232, 233, 242, 280, 290, 291, 292, 293, 294, 295, 296, 298, 309, 310, 311, 312, 324, 326, 328, 329, 331, 336, 337, 343, 409, 411, 461, 468, 471, 493, 516, 517, 518, 519, 520, 521, 522, 523, 524, 527, 528, 529, 530, 539, and 540.

Among these documents are: (1) documents prepared by Jack Turner, a non-lawyer; (2) documents prepared by or received by Meredith Addy, Harman's lawyer; (3) documents prepared by Robert Swartz; and (4) other documents that appear to be prepared by non-lawyers for Jack Turner or other non-lawyers.

Harman also requests their immediate production.

## 3.    MIT's 2/11/06 Privilege Log

In addition to the general objections above, Harman objects to the following entries on MIT's privilege log, to the extent that they state no basis for any claim of privilege:

Harman objects to Entry Nos. 98, 531, 532, 533 and 534, listed as "produced in redacted form" on the basis that the redacted portion of the document is "non-responsive." The unredacted portions of these documents are clearly relevant to the '685 patent and include PTO receipts, correspondence relating to the '685 patent, and records regarding agreements and sponsors relating to the Back Seat Driver. Furthermore, Entry No. 536 fails to provide any information upon which Harman may assess MIT's claim that the document is appropriately withheld on the basis that it is "non-responsive." Harman therefore requests the immediate production of these documents or a supplemental privilege log providing sufficient detail for Harman to assess MIT's claim of privilege.

Harman also notes that at least 60 entries relevant to Mr. Swartz, Mr. Schmandt or Mr. Turner were included, for the first time, on the February 11, 2006 log produced just days

## KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
April 21, 2006
Page 4

following their depositions on February 7-9, 2006. These documents should have been produced or addressed in a privilege log provided to Harman sufficiently in advance of the depositions to allow Harman to consider those communications in its preparation.

Finally, Harman notes that several redactions have not been included on any of MIT's privilege logs. By way of example, Harman cites MIT 01391-01397, apparently information regarding Robert Swartz, and MIT 04359-04376, apparently correspondence between the inventors and MIT media lab staff. Please review your production to ensure that all redactions have been properly addressed on your log. Harman further requests the production of these documents in unredacted form, as no basis for privilege has been asserted, and none is readily apparent.

## 4.    MIT's 3/30/06 Supplemental Privilege Log

Harman objects to *each and every entry* on MIT's 3/30/06 supplemental privilege log as not timely. These documents include correspondence from July, 1999 through March, 2005, and no explanation has been provided to Harman as to why these documents, including documents from more than six years prior to the depositions of the persons involved, were not produced or logged prior to the depositions of the communicants. More specifically, *every entry* on this log is a communication involving either Mr. Swartz, Mr. Turner or Mr. Schmandt, each of whom was deposed nearly two months prior to MIT's production of this log.

Furthermore, the vast majority of the documents listed are apparently not privileged as they are not communications by or to attorneys. Harman requests their immediate production.

(a)    Documents Relevant to the Deposition of Robert Swartz

Entry Nos. 541, 542, 543, 545, 546, 547, 548, 557, 560, 561, 563, and 565 include communications involving Mr. Swartz for which privilege should have been claimed and a privilege log produced to Harman prior to his deposition. Furthermore, Entry Nos. 544, 549, 550, 551, 552, 553, 554, 555, 556, 558, 559, 562, 564, 566, 567, 568, 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 601, 602, 603, 604, 605, 606, 607, 608, 609, 610, 611, 612, 613, 614, 615 and 616 are communications involving Mr. Swartz which appear to have been improperly withheld as they are not communications to or by attorneys or attorney work product. Harman requests their immediate production.

# KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
April 21, 2006
Page 5

     (b)     Documents Relevant to the Deposition of Jack Turner

     Entry Nos. 543 is a communication involving Mr. Turner. Again, Harman notes that privilege should have been claimed and a privilege log produced to Harman prior to Mr. Turner's deposition. Furthermore, Entry Nos. 544, 551, 552, 553, 573, 576, 577, 579, 580, 581, 582, 584, 585, 617, 618, 619, 620 and 621 are also communications involving Mr. Turner which appear to have been improperly withheld as they are not communications to or by attorneys or attorney work product. Harman requests their immediate production.

     (c)     Documents Relevant to the Deposition of Christopher Schmandt

     Entry Nos. 545, 546, 560, 561, 563 and 565 are communications involving Mr. Schmandt. Once again, Harman notes that privilege should have been claimed and a privilege log produced to Harman, prior to Mr. Schmandt's deposition. Furthermore, Entry Nos. 549, 550, 558, 559, 562, 564, 566, 567, 568, 569, 570, 571, 572, 575, 578, 583, 586, 587, 588, 589, 591, 592, 593, 594, 597, 598, 599, 600, 601, 602, 603, 604, 605 and 606 are communications involving Mr. Schmandt which appear to have been improperly withheld as they are not communications to or by attorneys or attorney work product. Harman requests their immediate production.

     In light of the above, Harman requests the immediate production of those documents identified above for which privilege was improperly claimed. Harman further objects to MIT's failure to produce these documents, or a privilege log for these documents, prior to the depositions of MIT's key witnesses. Harman reserves the right, based upon its review of these documents, to call Mr. Swartz, Mr. Turner or Mr. Schmandt for deposition regarding the content of these communications.

**5.     MIT's April 13, 2006 Supplemental Privilege Log And April 14, 2006 Production On Behalf of Sam Pasternack.**

     As previously noted in Mr. Leavell's letter dated April 19, 2006, Harman has identified several deficiencies in the production of documents and associated privilege log on behalf of Dr. Sam Pasternack. As you are aware, Harman is preparing a full list of irregularities for discussion between the parties prior to the deposition of Dr. Pasternack; however, we note herein several additional deficiencies for discussion.

     First, Entry Nos. 622, 631, 632, 637, 638, 639, 640, 641, 645, 646, 651, 652, 653, 654, 655, 656, 657, 659, 660 and 662 fail to identify any attorney who was involved in the communications or work product claimed therein. This information is clearly relevant to

## KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
April 21, 2006
Page 6

Harman's deposition of Dr. Pasternack. Similarly, Harman continues its objection to both the privilege log and the Pasternack production to the extent that it does not contain documents, such as attorney billing records, that were withheld based upon on MIT's subsequent assertion that they are irrelevant (*see* K. Mottley April 19, 2006 letter to C. Garlington, stating that MIT neither produced nor logged Dr. Pasternack's billing records because "we can not see how these are relevant to any issue or defense in this litigation, but should you disagree, consider them withheld as privileged").

6.    **MIT's Failure to Produce A Privilege Log on Behalf of Choate, Hall & Stewart, LLP**

Harman also objects to MIT's failure to produce a separate log for Choate, Hall & Stewart, LLP as it is clear from entries within MIT's February 11, 2006 privilege log that attorneys other than Dr. Pasternack worked on matters involving the patent in issue. *See e.g.* Entry Nos. 68, 71, 100-101, and 120.

7.    **MIT's April 18, 2006 Supplemental Privilege Log And April 19, 2006 Production On Behalf Of Charles Call**

The supplemental privilege log produced by MIT on behalf of Mr. Charles Call is clearly inaccurate and deficient. Harman notes, by way of example, that *every single redaction on the log is wholly inaccurate* when compared to the redacted documents subsequently produced (less than 24 hours prior to the now postponed deposition). These inaccuracies are described in further detail below:

Entry No. 664 is listed as an attorney-client communication and work product regarding license negotiations, produced in redacted form at MIT 6441-6447. MIT 6441 is the last page of a published patent and contains no redactions. MIT 6442-6447 includes the first pages of a published article and contains no redactions.

Similar inaccuracies in MIT's log entries and deficiencies in the accompanying production were noted *for every redaction listed on the log*. For example, Entry No. 665 is listed as attorney-client communications, work product, and as produced in redacted form at MIT 6448. MIT 6448, however, is an unredacted page of a published article. Entry No. 666 is listed as attorney-client communications, work product and as produced in redacted form at MIT 6449. MIT 6449, however, is similarly an unredacted page of a published article. Similar inaccuracies are present for Entry No. 667 (listed as attorney-client communications, work product and as produced in redacted form at MIT 6450-51. MIT 6450-51, however, encompasses unredacted pages of a published article), Entry No. 668 (listed as attorney-client communications, work

# KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
April 21, 2006
Page 7

product and as produced in redacted form at MIT 6452-6454. MIT 6452-54, however, encompasses pages of a published article and a published patent), Entry No. 669 (listed as attorney-client communications, work product and as produced in redacted form at MIT 6455-6467. MIT 6455-67, however, encompasses unredacted pages of a published patent), and Entry No. 670 (listed as attorney-client communications, work product and as produced in redacted form at MIT 6468-6471. MIT 6468-71 are unredacted pages of a published patent). Finally, Entry No. 672 fails to identify any attorney as either the author or recipient of the handwritten notes.

The production by MIT in response to Mr. Call's subpoena encompassed only 32 documents and included the following redacted documents that were not listed on the log: MIT 06541, MIT 06542, MIT 06543-06547, MIT 06548, MIT 06549, MIT 06550-06551, MIT 06552, MIT 06554, MIT 06555-06567, MIT 06568, MIT 06570-06571. Furthermore, responsive documents, including Mr. Call's billing records, were not produced.

In light of these inaccuracies, MIT's production of documents less than 24 hours prior to the scheduled deposition, and Harman's concerns over MIT's prior practice of producing privilege logs covering documents relevant to depositions days and weeks following those depositions without further explanation, Harman was forced to reschedule the pending depositions of Mr. Call and Mr. Pasternack following resolution of the issues raised in our previous correspondence and herein. Although Harman intends to meet with MIT to resolve this issue, we note that MIT's counsel has not returned our two separate phone calls on April 19, 2006, nor responded to our letter of the same date requesting that the parties confer in this regard.

If you have questions or would like to discuss the foregoing, please contact me directly.

Very truly yours,

Colleen M. Garlington

CG

# E

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Colleen Garlington
To Call Writer Directly:
312 469-7019
cgarlington@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: 312 846-9181

May 3, 2006

<u>VIA ELECTRONIC MAIL</u>

Kimberly Mottley, Esquire
Proskauer Rose LLP
One International Place
22nd Floor
Boston, MA 02110

Re:   *MIT v. Harman International Industries, Inc.*, No. 05-10990 DPW (D. Mass.)

Dear Kim:

As per our April 28, 2006 agreement, Harman has reviewed your response to our April 21 letter identifying deficiencies in MIT's privilege logs, including those served on February 11, March 30, April 13 and April 18, 2006, for documents produced on behalf of MIT, Charles Call, Sam Pasternack and Choate, Hall & Stewart LLP. Based upon MIT's letter and the parties' discussion, we understand that MIT has agreed to review the documents over which it currently claims privilege or work product protection, produce those documents improperly withheld, and provide corrected supplemental privilege logs on May 8, 2006. To facilitate your review and correction of MIT's log, we call your attention to the following concerns:

*First,* MIT's claim of attorney-client privilege over documents shared with NEC, a third party, is improper. Such entries include at least Entry Nos. 2, 6, 23, 36, 41, 55, 68, 116, 120, 122, 124, 128, 139, 144, 630, 633, 647, and 663. Harman requests the immediate production of all documents for which attorney client privilege has been waived through communications with third parties, including all documents shared with NEC, its counsel and/or its employees. Furthermore, Harman notes that entries 40, 214, and 215 are listed by MIT in its response as both "covered by the attorney-client privilege" and "not protected by the attorney-client privilege [but] protected by the work product doctrine." These entries are communications involving no attorneys that were generated by third party NEC. MIT's claim of privilege over these documents is improper and Harman requests their immediate production.

*Second,* we note that MIT agreed during the parties' April 28, 2006 conference call to provide adequate descriptions for those entries for which attorney-client privilege is claimed, in order to allow Harman to assess MIT's claim of privilege. This agreement includes, for those

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
May 3, 2006
Page 2

entries where no attorney was involved, providing the name of the attorney whose advice is reflected therein.

*Third*, we note that MIT has agreed to produce certain documents either in their entirety or in redacted form. To the extent that you did not identify those documents as documents over which you were maintaining privilege or work product protection, Harman understands that they will be produced in their entirety.

*Fourth*, Harman requested the production, in unredacted form, of MIT 01391-01397 and MIT 04359-04376, as upon our review of the unredacted portion, there appears no readily discernable basis for asserting the privilege. No explanation was provided in MIT's response letter as to the basis for asserting privilege. To the extent that MIT, in its forthcoming supplemental log, claims privilege or work product protection, please provide sufficient description to allow Harman to assess your claim.

*Fifth*, as to documents identified by MIT as previously produced, MIT agreed during the parties' teleconference to identify such documents by bates number or, if MIT is unable to do so, to provide copies of those documents such that Harman can identify them in MIT's production.

*Sixth*, the parties agreed to identify persons listed on their logs as either employees, contractors, agents or attorneys. If MIT will agree, Harman will commit to completing this exchange on May 8, 2006 concurrent with the supplementation of the parties' privilege logs.

*Finally*, as to your claim that work product protection is properly claimed by MIT over hundreds of documents, not involving attorneys, and beginning at least as early as 1991 on the basis that those documents were "prepared in anticipation of litigation," Harman objects to this claim and requests that MIT provide sufficient evidence to demonstrate that each of these documents were prepared "in anticipation of litigation." MIT, as the party claiming the work product privilege, bears the burden of establishing that the documents claimed to be protected from discovery as work product were prepared in anticipation of litigation. *In re Lernout & Hauspie Secs. Litig.*, 222 F.R.D. 29, 36 (D. Mass. 2004). Dual purpose documents are only protected if, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because of* the prospect of litigation. *Amica Mutual Ins. Co. v. W.C. Bradley Co.*, 217 F.R.D. 79, 83 (D. Mass. 2003) (Dein, M.J.) (emphasis in the original).

At least as to documents involving Mr. Swartz, Harman can see no basis for MIT's claim of work product protection. Mr. Swartz is not an attorney. Mr. Swartz is not an employee of MIT. Mr. Swartz is a contractor, whose employment contract clearly demonstrates that his task

## KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
May 3, 2006
Page 3

was to generate licensing revenue.  To the extent that communications involving Mr. Swartz were generated for the purpose of generating licensing revenue, they would have been generated whether or not litigation ensued, and were not created *because of* the prospect of litigation.  *See Amica*, 217 F.R.D. at 83.  Harman requests the immediate production of all such documents.

We look forward to receiving MIT's supplemental production and privilege log on May 8, 2006.

Very truly yours,

Colleen M. Garlington

CG

**F**

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Colleen Garlington
To Call Writer Directly:
312 469-7019
cgarlington@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: 312 846-9181

June 11, 2006

VIA ELECTRONIC MAIL

Kimberly Mottley, Esquire
Proskauer Rose LLP
One International Place
22nd Floor
Boston, MA 02110

Re:   *MIT v. Harman International Industries, Inc.*, No. 05-10990 DPW (D. Mass.)

Dear Kim:

I write to follow up on my April 21 and May 3, 2006 letters, our April 28, May 12 and May 17, 2006 conference calls, MIT's May 24, 2006 correspondence promising additional information, and its May 25, 2006 correspondence asking Harman to "hold off" on the issues raised on May 17 pending MIT's supplemental log and production. Harman has now reviewed MIT's supplemental log and production and finds that MIT failed to address or cure many of the issues raised in our correspondence and conference calls. I address herein certain deficiencies that remain despite MIT's assurances that it would provide sufficient descriptions for Harman to assess MIT's claim of privilege:

*First,* MIT continues to withhold certain documents on the basis of attorney-client privilege without providing sufficient information to support its claims. During the parties' conference on April 28, 2006 MIT agreed to identify the attorneys whose advice was sought or provided in the May 8, 2006 supplemental log. MIT failed to do so. When Harman raised this issue in the parties' subsequent phone conference on May 17, 2006, MIT stated that it would provide this information only if Harman questioned specific entries. Although this burden shifting is improper, in the interest of resolution, Harman began its review of MIT's more than 100 page privilege log to identify such entries. However, on May 25, 2005, MIT requested that Harman "hold off" further discussions, pending MIT's supplemental log. Harman has now reviewed MIT's June 1, 2006 supplemental log (which also fails to provide the information promised on April 28, 2006) and therefore requests that MIT identify the attorney whose advice was sought or provided for each entry below, in accordance with the parties' May 17th agreement: Entry Nos. 5, 15, 19, 22, 24, 25, 33, 37, 38, 40, 42, 44, 45, 46, 47, 49, 51, 52, 62, 63, 71, 72, 83, 84, 85, 91, 94, 96, 105, 150, 151, 164, 192, 193, 195, 197, 198, 199, 200, 202, 206, 207, 208, 209, 214, 215, 216, 225, 236, 239, 290, 343, 362, 469, 524, 525, 527.

London       Los Angeles       Munich       New York       San Francisco       Washington, D.C.

# KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
June 11, 2006
Page 2

Furthermore, entries which name neither the communicants, recipients nor any attorneys clearly do not provide adequate information to support a claim of privilege. *See, e.g.* Entry Nos. 42, 94, 98, 236, 362 and 539.

***Second,*** during the conference call on April 28, 2006, the parties agreed that each side would identify the persons on their respective logs as attorneys, contractors, agents or employees. As per our agreement, Harman reviewed ***each*** of its own entries, verified ***each*** person's standing, and so identified ***each person*** on its log produced May 8, 2006.

In its May 8, 2006 letter, MIT merely provided a list of attorneys, identified Robert Swartz as an independent contractor, listed NEC personnel, and then stated that "the remainder of the individuals on MIT's logs were MIT employees..." This assertion was demonstrably incorrect, as pointed out by Harman during the May 17, 2006 call, and verified in your letter of June 1, 2006 (in which you confirmed that contrary to MIT's original assertions, the following were not MIT employees: Jeff Helgesen, Fuqua, Rodney Hoffman, Jussi Karlgren, Hidehiro Matsumoto, Barry Arons, Sucharita Gopal, hovy@venera.isi.edu, chin@ceta.cis.hawaii.edu, Walter Ronmac, and Muriel Bolt.)

Because MIT has still not specifically identified the remaining personnel, pursuant to MIT's May 17, 2006 agreement, please confirm that the following individuals were employees of MIT at the time that they authored or received the documents on MIT's log:

| | | |
|---|---|---|
| Bruce Bullock | Denise Vaillancourt | Ryan Chin |
| Denise Lynch | Lauren (no last name) | Henry Lieberman |
| Rick Cahaly | Bsd/bsd.mail | Rosalind Picard |
| Robert Fadel | dbk | Tom Sadtler |
| Nia Lewis | Magdelen Christian | Felice Gardner |
| Dana Lang | Carl Accardo | Tamara Hearn |
| Peggy McNally | Lita Nelson | Jacqueline Karaaslanian |
| Adele Santos | Carolyn Beaty | Lisa Sanchetta |
| Patti Maes | Harry Stevens | Lynne Lenker |
| Donna Baranski-Walker | Ann Chinchilla | David Martin |
| Nikki Borman | Alla Skorokhod | Penny Blaisdell |
| Dorene Sorensen | Deborah Widener | Robert Greene |
| Andy Lippman | Barry Vercoe | John Preston |
| Irene Abrams | Deb K. Roy | Lita Nelson |
| Michelle O'Shea | Tod Machover | Alice Gast |
| Jarmila Hrbek | Cynthia Wilkes | Rebecca Prendergast |

# KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
June 11, 2006
Page 3

| | | |
|---|---|---|
| George Prendergast | Neil Gershenfeld | Harry Stevens |
| Susan Browne | Dan Dardani | Ben Pelleiko |
| Robert Bloomberg | Robert McClure | Joe Paradiso |
| Sandy Pentland | Geoff Wilson | Lauren Gallant |
| David Lawrence Hall | William Hagen | |
| Aaron Bobick | Liz Yonda | |

*Third,* in our April 28, 2006 conference call, MIT agreed to address the many entries in its log for which no date was provided. MIT now claims to have done so, and confirms that it cannot provide dates, or even estimated timeframes, for entries, including but not limited to, the following: Entry no. 51, 94, 105, 222, 225, 331, 337, 362, 462, 463, 464, 465, 468, 492, 493, 516, 517, 518, 519, 520, 521, 522, 523, 524, 527, 528, 529, 530, 535, 536, 537, 538, 539, and 540. Without any information regarding the timeframe of these communications, with no attorneys identified as communicants, and with only broad descriptions of the nature of the communications, MIT has not met its burden to provide sufficient information for Harman to assess its claim of privilege.

*Fourth,* throughout its log, there are entries in which MIT provides only generic descriptions for documents that do *not* involve attorneys, are described as regarding licensing, and provide no further information for Harman to assess MIT's claim that these documents were "prepared in anticipation of litigation." Examples of such generic descriptions include, but are not limited to:

- "[document] prepared in anticipation of litigation re: license negotiations" (*See e.g.* 3, 103, 163, 165, 166, 167, 168, 169, 170, 171, 172, 173, 175, 196, 201, 205, 223, 224, 226, 227, 233, 325, 471, 516, 523, 620, and 621.

- "[document] prepared in anticipation of litigation in the context of license negotiations" (*See e.g.* 17, 176, 177, 178, 179, 180, 181, 182, 183, 185, 186, 187, 188, 189, 190, 194, 211, 212, 213, 217, 220, 221, 222, 229, 230, 231, 232, 234, 235, 237, 240, 243, 244, 245, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270. 271, 272, 273, 274, 275, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 328, 330, 331, 333, 334, 336, 339, 461, 462, 463, 464, 465, 468, 470, 493, 517, 518, 519, 520, 522, 528, 529, 530, 544, 549, 550, 551, 552, 553, 554, 556, 558, 559, 562, 564, 566, 567, 568, 570, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 589, 590, 592, 593, 594, 595, 596, 598, 599, 600, 603, 604, 605, 606, 607, 608, 609, 610,

# KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
June 11, 2006
Page 4

611, 612, 613, 614, 615, 616, 617, 618, 619, 760, 761, 762, 763, 764, 765, 766, 768, 776, 777, 778, 779, 780, 781, 782, 783, 784, 785, 786, 787, 788, 789, 790, 791, 792, 793, 794, 795, 796, 797, 798, and 799.

As per our May 17, 2006 conference call and in light of your failure to supplement such descriptions following that call, we understand that we have reached an impasse on this issue.

*Fifth*, MIT's May 8, 2006 log stated that Entry No. 98 had been removed from the log and would be produced in its entirety. However, MIT in its June 1, 2006 supplemental log, subsequently claimed that information redacted from this document is protected by attorney-client communication. Entry No. 98 was neither a communication by or to an attorney and MIT failed to specifically identify the communicants (the document is listed as authored by "MIT TLO (Michelle)" and addressed to "MIT TLO.") As with the numerous entries identified above, MIT has failed to meet its burden to provide sufficient information for Harman to assess MIT's claim of privilege.

*Sixth*, MIT's May 8, 2006 and June 1, 2006 supplementation, combining MIT's logs with the logs of third parties and thus refusing to identify the source of these documents is improper. Harman issued separate subpoenas to the various third parties in this case, and Harman is entitled to know which documents were produced by third parties and responsive to which subpoenas.

*Seventh,* in response to paragraph 2 of your June 1, 2006 letter, Harman cannot understand how *every* document in MIT's possession which describes how the inventors of the '685 patent share in the royalty proceeds (including a document prepared in 1999 (see Entry No. 803)) were prepared "in anticipation of litigation."

*Eighth,* Mr. Schmandt pointed Harman to his tax documents as the source of valuation for his GoThere stock during his deposition. If it is now his position that he never valued this stock in those documents, then Harman is entitled to any other documents in which Mr. Schmandt did value the stock. To the extent that your statement that "Mr. Schmandt has confirmed that he has no tax documents which relate to the GoThere stock" means that Mr. Schmandt no longer possesses such documents, but that such documents once existed, please specifically state so, or state that Mr. Schmandt never possessed such documents and never accounted for the value he received for this stock in statements to the IRS.

*Ninth,* we renew our objection to MIT's redaction of information from otherwise responsive documents on the basis that the redacted information is "non-responsive." These

# KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
June 11, 2006
Page 5

entries include at least the following:  Entry Nos. 738, 739, 740, 747, 749, 752, 756, 759, 800 and 802.

*Finally,* MIT confirmed during our May 17, 2006 conference that it would not produce the documents for which privilege has been waived through communications with third parties, including NEC.  Although MIT claimed *for the first time* during the parties May 17 conference call that some common interest applied to such documents, it has never presented any basis for this defense in writing, nor has it pointed to any specific documents supporting such claim.

MIT further confirmed that it would not produce those documents for which it is claiming work product protection on the basis that the documents were prepared during license negotiations, despite the fact that the documents in question were neither authored by nor received by attorneys, and without any further support of its claim that such license negotiations were "in anticipation of litigation."

MIT then asked Harman to "hold off" on further actions regarding the issues raised in our call, pending MIT's supplementation.  As your supplementation did not change your position on either of these issues, we understand that the parties have reached an impasse on these issues and will seek the assistance of the Court.

As per my June 7, 2006 correspondence, we look forward to discussing these issues during our upcoming conference.

Sincerely,

Colleen M. Garlington

CG

# G



"Mottley, Kimberly"
<kmottley@proskauer.com>
05/25/2006 02:12 PM

To   Harman-MIT@kirkland.com

cc   "MIT_Harman" <MIT_Harman@proskauer.com>

bcc

Subject   MIT/Harman - Privilege/Docs Issues

Colleen - Following up on the issues you raised during our May 17 call, we
will be supplementing our privilege log, which should be ready to send to you
by the end of the day on Tuesday, May 30.  I think it makes sense to hold off
discussing the issues until you see the log, so we have a frame of reference
for our discussion.

I'm out of the office on Wednesday, May 31, but am available all day (except
around the lunch hour) on Thursday, June 1.  Please pick a time that works
best for you, so I can hold it in my schedule, and hopefully we can close the
loop on all the issues, then.

Regards,

Kim

Kimberly A. Mottley| PROSKAUER ROSE LLP
One International Place | Boston, MA 02110-2600
V: 617.526.9616 | F: 617.526.9899
kmottley@proskauer.com | www.proskauer.com <
http://www.proskauer.com/index.html>

-------------------------------------------------------------------------------

This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

===============================================================================

# H

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Colleen Garlington
To Call Writer Directly:
312 469-7019
cgarlington@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: 312 846-9181

April 24, 2006

<u>VIA ELECTRONIC MAIL</u>

Kimberly Mottley, Esquire
Proskauer Rose LLP
One International Place
22nd Floor
Boston, MA 02110

     Re:    MIT v. Harman International Industries, Inc., No. 05-10990 DPW (D. Mass.)

Dear Kim:

I write to follow-up on my letter of April 12, 2006 regarding deficiencies in MIT's production of documents prior to the deposition of Christopher Schmandt. I also write regarding my letter of April 21, 2006 requesting production of documents that were apparently improperly withheld prior to key depositions, including Mr. Schmandt's.

As you know, based upon Mr. Schmandt's deposition, Harman identified fourteen categories of documents that were not produced. Harman requested MIT's response by April 17, 2006. To date, MIT has not responded.

Furthermore, as indicated in my letter of April 21, 2006, Harman has identified at least thirty-four documents relevant to Mr. Schmandt's deposition that were neither produced nor listed on a privilege log until March 30, 2006, nearly two months after Mr. Schmandt's deposition. These documents relate to communications in which, based upon your privilege log, no attorney was involved and for which there is apparently no basis for privilege. Harman requests the immediate production of these documents as well as any documents relating to the fourteen categories identified in my April 12, 2006 letter.

MIT's failure to respond to Harman's identification of deficiencies in document production and MIT's belated identification of documents pertinent to the deposition of Mr. Schmandt raise serious concerns for Harman. Harman does not understand how MIT can simply ignore these concerns. We look forward to hearing from you by the close of business on April 25, 2006.

London       Los Angeles       Munich       New York       San Francisco       Washington, D.C.

KIRKLAND & ELLIS LLP

Kimberly Mottley, Esquire
April 24, 2006
Page 2

Very truly yours,

Colleen M. Garlington

CG

**I**

# PROSKAUER ROSE LLP

One International Place
22ⁿᵈ Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

**Kimberly A. Mottley**
Direct Dial: 617-526-9616
Email: kmottley@proskauer.com

May 8, 2006

*Via Electronic Mail*

Colleen Garlington, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601

      Re:    <u>MIT v. Harman International Industries, Inc.</u>, No. 05-10990 DPW (D. Mass.)

Dear Colleen:

In reference to our April 28, 2006 phone call, MIT has undertaken a full review of its privilege logs.

1.      Upon further review, MIT is providing Harman with a supplemental production.  The documents previously logged at the following entries are produced herewith, bearing the Bates numbers noted below:

      7 (MIT 6572-6577); 8 (MIT 6578-6579); 10 (MIT 6580-6583); 11 (MIT 6584-6587); 21 (MIT 6588); 27 (MIT 6589-6595); 29 (MIT 6596-6599); 34 (MIT 6600-6601); 39 (MIT 6602); 112 (MIT 6603-6610); 204 (MIT 6611); 329 (MIT 6612-6647); 364 (MIT 6648-6649); 365 (MIT 6650-6651); 366 (MIT 6652-6653); 368 (MIT 6654-6655); 369 (MIT 6656-6657); 373 (MIT 6658); 467 (MIT 6659-6660); 591 (MIT 6661-6663); 597 (MIT 6664-6665); 601 (MIT 6666); and 602 (MIT 6667).

2.      MIT has unredacted and reproduced the documents previously logged as entries 533 (MIT 6668-6700) and 534 (MIT 6701-6734).  MIT previously produced the following documents from its privilege logs, logged as entry numbers: 93 (MIT 05574); 95 (MIT 05575); 242 (MIT 05585); and 338 (MIT 05586-05587).

3.      MIT will send later tonight, via email, an amended privilege log which reflects more fulsome descriptions of the documents logged therein.

**PROSKAUER ROSE LLP**

Colleen Garlington, Esq.
May 8, 2006
Page 2

4.    The following individuals were attorneys working on MIT's behalf (or employees or agents of those attorneys) at the time they either authored or received the documents on MIT's privilege log: Steven Bauer, Esq.; Charles Call, Esq.; Choate, Hall & Stewart LLP; Mark DiVincenzo, Esq.; Judy Filamond; Steven Frank, Esq.; Diane Gaylor; Joseph Grear, Esq.; mmstadlaw@aol.com; Kimberly A. Mottley, Esq.; Richelle Nessralla, Esq.; Samuel Pasternack, Esq.; John Pint, Esq.; Jennifer Ramsay; Karin Rivard, Esq.; Keith Vogt, Esq.; Jean B. Weidemier, Esq; William J. Hagen; David Laurence Hall; Peter Murphy; and Keith.

Robert Swartz was an independent contractor working on MIT's behalf at the time he either authored or received the documents on MIT's privilege log.

MIT understands the following individuals to have been NEC employees at the time they either authored or received the documents on MIT's privilege log: H. Hoshino; Taro Hoshino; Gerry Kenney; Brian Ogonowsky, Esq.; Philip Rittmueller; Guy Shoup, Esq.; and Masao Takahashi.

It is MIT's understanding that the remainder of the individuals on MIT's logs were MIT employees at the time they either authored or received the documents on MIT's privilege log.

\*            \*            \*

Please let us know if you have any further questions about the documents enclosed herewith.

Sincerely,

Kimberly A. Mottley

Enclosures

**J**

MASSACHUSETTS INSTITUTE OF TECHNOLOGY v. HARMAN INTERNATIONAL INDUSTRIES, INC.

United States District Court, District of Massachusetts

Civil Action No. 05-10990 DPW

June 1, 2006

## PRIVILEGE LOG OF PLAINTIFF MASSACHUSETTS INSTITUTE OF TECHNOLOGY

Please Note: This is a log identifying all documents withheld from the document productions to date in the above-captioned litigation. We expressly incorporate herein and continue to maintain all assertions of the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege.

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 1. | 02/25/92 | John J. Hynes | B. Jean Weidemier, Esq. | | Attorney-client communication reflecting request for legal advice re: patent prosecution | AC | 1 |
| 2. | 10/02/91 | B. Jean Weidemier, Esq. | Sam Pasternack, Esq. | Penny Blaisdell; Diane Gaylor; Robert Greene; John Hynes; John Preston; Philip Rittmueller | Attorney-client communication reflecting provision of legal advice in the course of prosecution of US Patent 5,177,685 | AC | 1 |
| 3. | 08/23/91 | Nicholas Negroponte | John Preston | John Hynes; Robert Greene | Letter and memorandum internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 5 |
| 4. | 07/15/91 | B. Jean Weidemier, Esq. | John Hynes | Irene Abrams | Memorandum reflecting provision of legal advice re: license agreement and negotiations | AC/WP | 1 |
| 5. | 07/26 | Secretary for Irene Abrams | Irene Abrams | | MIT internal communication reflecting request for legal advice in the course of patent prosecution | AC | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 1 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 6. | 07/10/91 | Philip Rittmueller | B. Jean Weidemier, Esq. | Gerry Kenney, Esq.; Guy Shoup, Esq. | Document containing confidential communication reflecting request for legal advice with privileged handwritten notations regarding foreign patent application rights | AC | 2 |
| 7. | 05/24/91 | B. Jean Weidemier, Esq. | Philip Rittmueller | John Hynes; Robert Greene | Document with handwritten notations containing confidential communication reflecting legal advice in response to request for legal advice prepared in the course of prosecution of US Patent 5,177,685; produced in redacted form as Bates nos. MIT 06572-06577 | AC/WP | 2 |
| 8. | 03/27/91 | B. Jean Weidemier, Esq. | | | Document with handwritten notations reflecting response to request for legal advice regarding license negotiations prepared in anticipation of litigation; produced in redacted form as Bates nos. MIT 06578-06579 | AC/WP | 2 |
| 9. | 02/11/91 | B. Jean Weidemier, Esq. | | | Memo to file re: patent prosecution and license agreement terms reflecting attorney strategy in response to request for legal advice | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 10. | 11/28/90 | B. Jean Weidemier, Esq. | | | Attorney privileged handwritten notations and attorney working draft reflecting legal advice concerning license negotiations prepared in anticipation of litigation; produced in redacted form as Bates nos. MIT 06580-06583 | WP | 4 |
| 11. | | | | | Produced in its entirety as Bates no. MIT 06584-05687 | | |
| 12. | | | | | Produced in its entirety as Bates no. MIT 05557 | | |
| 13. | | | | | Produced in its entirety as Bates no. MIT 05558 | | |
| 14. | | | | | Produced in its entirety as Bates no. MIT 05559-05559A | | |
| 15. | 07/29/92 | Secretary for John Hynes | John Hynes | | Internal MIT memorandum reflecting substance of communication with MIT's counsel | AC | 1 |
| 16. | 03/18/05 | Karin Rivard, Esq. | Jack Turner; Robert Swartz; Tom Sadtler; Walter Bender | Lita Nelsen; Alice P. Gast | Emails and communications re: Harman lawsuit against MIT reflecting provision of legal advice and attorney strategy in anticipation of litigation (remainder of documents previously logged as Entry No. 16 now logged as Entry Nos. 760-765). | AC/WP | 3 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 3 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 17. | 08/06/91 | John Hynes | Robert Greene | | Email internal to MIT personnel and handwritten document prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 18. | 04/27/92 | Sam Pasternack, Esq. | John Hynes | | Attorney-client communication re: office action response reflecting provision of legal advice and attorney strategy | AC/WP | 10 |
| 19. | 09/03/91 | John T. Preston | Nicholas Negroponte | | Internal MIT memorandum reflecting substance of communication with MIT's counsel regarding patent prosecution | AC | 1 |
| 20. | 08/30/91 | B. Jean Weidemier, Esq. | John Hynes | | Internal MIT memorandum reflecting provision of legal advice re: patent prosecution, communications with outside counsel and attorney strategy | AC/WP | 2 |
| 21. | 05/24/91 | B. Jean Weidemier, Esq. | Philip Rittmueller | John Hynes; Robert Greene | Attorney-client communications reflecting legal advice in the course of prosecution of US Patent 5,177,685; produced in redacted form as Bates no. MIT 06588 | AC | 1 |
| 22. | 09/10/91 | Robert Greene | John Hynes | Penny Blaisdell; Rebecca Prendergast | Correspondence reflecting substance of communication with MIT's counsel regarding patent prosecution | AC | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 23. | 10/02/91 | B. Jean Weidemier, Esq. | Sam Pasternack, Esq. | Penny Blaisdell; Diane Gaylor; Robert Greene; John Hynes; John Preston; Philip Rittmueller | Attorney-client communication reflecting provision of legal advice in the course of prosecution of US Patent 5,177,685 | AC | 1 |
| 24. | 03/02/92 | John Hynes | Nicholas Negroponte | John Hynes; Rebecca Prendergast; Susan A. Browne; Penny Blaisdell; Robert Greene | Internal MIT email reflecting substance of communication with MIT's counsel regarding patent prosecution | AC | 2 |
| 25. | 11/27/ | Secretary to John Preston | John Preston | | Internal MIT memorandum/handwritten notations reflecting communication with MIT's counsel regarding patent prosecution and attaching attorney-client correspondence regarding same | AC | 4 |
| 26. | 08/28/89 | B. Jean Weidemier, Esq. | Robert Greene | | Internal MIT attorney-client communication reflecting provision of legal advice concerning patent prosecution | AC/WP | 1 |
| 27. | 11/28/90 | B. Jean Weidemier, Esq. | H. Hoshino | Philip Rittmueller; John Hynes | Communications with attorney; handwritten notations reflecting provision of legal advice regarding license negotiations prepared in anticipation of litigation; Produced in redacted form as Bates nos. MIT 06589-06595 | AC/WP | 7 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 5 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 28. | 11/30/90 | John Hynes | B. Jean Weidemier, Esq. | | Handwritten notations re: attorney-client communications concerning patent prosecution and license negotiations and reflecting request for legal advice | AC/WP | 1 |
| 29. | 11/28/90 | B. Jean Weidemier, Esq. | H. Hoshino | Philip Rittmueller; John Hynes | Communications with attorney; handwritten notations reflecting provision of legal advice regarding license negotiations prepared in anticipation of litigation; Produced in redacted form as Bates nos. MIT 06596-06599 | AC/WP | 4 |
| 30. | 02/06/91 | John Hynes | B. Jean Weidemier, Esq. | | Internal MIT email reflecting request for legal advice re: patent prosecution and license negotiations | AC/WP | 1 |
| 31. | 02/06/91 | John Hynes | B. Jean Weidemier, Esq. | | Internal MIT communications reflecting request for legal advice re: patent prosecution | AC | 2 |
| 32. | 02/11/91 | John Hynes | | | Handwritten notes of conversation with counsel re: license agreement terms and patent prosecution reflecting request for and provision of legal advice in anticipation of litigation | WP | 4 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 33. | 08/06/91 | Robert Greene | John Hymes | Nicholas Negroponte; Robert Greene | Internal MIT e-mail containing a confidential communication referring to legal advice previously provided regarding patent prosecution | AC | 3 |
| 34. | | | | | Produced in its entirety as Bates nos. MIT 06600–06601 | | |
| 35. | | | | | Removed from the log as duplicative of Entry No. 39. | | |
| 36. | 07/10/91 | Philip Rittmueller | B. Jean Weidemier, Esq. | Gerry Kearney, Esq.; Guy Shoup, Esq. | Attorney client communications reflecting request for legal advice with privileged handwritten notations regarding foreign patent application rights | AC | 2 |
| 37. | 07/05/89 | James R. Davis; Christopher M. Schmandt | | | Documentation concerning patent prosecution prepared at the direction of MIT's counsel | AC | 14 |
| 38. | 03/04/92 | Rebecca Prendergast | Irene Abrams | Rebecca Prendergast | MIT internal communications regarding documentation prepared at the direction of and reflecting communication with MIT's counsel concerning patent prosecution | AC | 6 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 7 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 39. | 05/24/91 | B. Jean Weidemier, Esq. | Philip Rittmueller | John Hynes; Robert Greene | Attorney-client communications reflecting provision of legal advice in the course of prosecution of US Patent 5,177,685. Produced in redacted form as Bates No. MIT 06602. | AC | 1 |
| 40. | 08/16/91 | Philip Rittmueller | Nicholas Negroponte; Robert Greene | | Memorandum with handwritten notations reflecting communication with MIT's counsel regarding patent prosecution | AC | 3 |
| 41. | 10/02/91 | B. Jean Weidemier, Esq. | Sam Pasternack, Esq. | Penny Blaisdell; Diane Gaylor; Robert Greene; John Hynes; John Preston; Philip Rittmueller | Attorney-client communications reflecting provision of legal advice regarding patent prosecution | AC | 2 |
| 42. | 04/23/92 | MIT Personnel | | | Handwritten notes re: conversations with counsel reflecting legal advice regarding patent prosecution | AC | 1 |
| 43. | 02/25/91 | B. Jean Weidemier, Esq. | Sam Pasternack, Esq. | | Attorney-client correspondence reflecting provision of legal advice regarding patent prosecution | AC | 1 |
| 44. | 02/20/92 | John Hynes | Philip Rittmueller | | Correspondence reflecting legal advice previously given by MIT's counsel re: patent prosecution | AC | 1 |

Page 8 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 45. | 03/24/92 | Secretary to John Hynes | John Hynes | | Communication with MIT's counsel and attaching memorandum to in-house counsel reflecting provision of legal advice concerning patent prosecution | AC | 2 |
| 46. | 03/02/92 | John Hynes | Nicholas Negroponte | John Hynes; Rebecca Prendergast; Susan Browne; Penny Blaisdell; Robert Greene | Handwritten notation and internal MIT e-mail reflecting communication with MIT's counsel re: patent prosecution | AC | 4 |
| 47. | 04/21/ | Secretary for Nicholas Negroponte | Nicholas Negroponte | | Handwritten notations reflecting provision of legal advice previously give by counsel re: patent prosecution | AC | 3 |
| 48. | 02/06/91 | John Hynes | B. Jean Weicemier, Esq. | jbs@media-lab.media.mit.edu | Internal MIT communications and handwritten notations reflecting request for legal advice re: patent prosecution | AC | 3 |
| 49. | 06/28/91 | Susan Browne | John Hynes | | Internal MIT memorandum reflecting communication with MIT's counsel re: patent prosecution | AC | |
| 50. | 12/16/94 | Steven J. Frank, Esq. | Robert Greene | | Attorney-client communication reflecting provision of legal advice re: license negotiations prepared in anticipation of litigation | AC/WP | 5 |

Page 9 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 51. | | John J. Hynes | | | Handwritten notations reflecting legal advice provided by MIT's counsel re: patent prosecution | AC | 2 |
| 52. | 06/24/96 | Bob Bloomberg | Jack Turner; Nikki J. Borman | lynn@media; lauren; jamesb@media | Internal MIT communications re: documents prepared at the direction of counsel concerning patent prosecution | AC | 2 |
| 53. | 02/20/92 | John Hynes | B. Jean Weidemier, Esq. | | Attorney-client communications and handwritten notations reflecting provision of legal advice and communications with MIT's outside counsel re: patent prosecution | AC | 7 |
| 54. | 02/10/92 | Diane Gaylor | B. Jean Weidemier, Esq. | Nikki Borman; John Hynes | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 12 |
| 55. | 07/08/92 | Sam Pasternack, Esq. | B. Jean Weidemier, Esq. | Philip Rittmueller; Brian D. Ogonowsky, Esq. | Attorney client communications reflecting provision of legal advice regarding patent prosecution | AC | 2 |
| 56. | 10/08/94 | Nicholas Negroponte | Robert Greene | | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 10 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 57. | 12/09/94 | Robert Greene | Steven J. Frank, Esq. | | Attorney-client correspondence requesting legal advice concerning licensing in anticipation of litigation | AC | 2 |
| 58. | 03/30/05 | Karin Rivard, Esq. | | | Attorney handwritten notes re: Harman lawsuit against MIT and communications with outside counsel reflecting provision of legal advice and attorney strategy in anticipation of litigation | AC/WP | 14 |
| 59. | 3/24/03 | Karin Rivard, Esq. | | | Attorney handwritten notations on 3/24/03 letter from Robert Swartz to Wendelin Wiedeking re: offer to license '685 patent reflecting provision of legal advice, attorney strategy in anticipation of litigation | AC/WP | 2 |
| 60. | 03/23/05 | Karin Rivard, Esq. | | | Handwritten notes re: Harman lawsuit against MIT reflecting provision of legal advice and attorney strategy in anticipation of litigation | AC/WP | 4 |
| 61. | 03/25/05 | Karin Rivard, Esq. | Magdalen Christian | | Internal MIT communications re: Harman lawsuit against MIT reflecting provision of legal advice and attorney strategy in anticipation of litigation | AC/WP | 5 |

Page 11 of 125

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 62. | 03/18/05 | Tom Sadtler | Robert Fadel | | MIT internal communication reflecting privileged communications with MIT counsel concerning the current lawsuit against MIT reflecting provision of legal advice and attorney strategy | AC/WP | 4 |
| 63. | 09/05/91 | Secretary for Irene Abrams | Irene Abrams | | Handwritten notation reflecting legal advice previously given by counsel re: prosecution | AC | 1 |
| 64. | 09/05/91 | Irene Abrams | B. Jean Weidemier, Esq. | | Handwritten notation reflecting request for legal advice re: patent prosecution | AC | 1 |
| 65. | 08/28/91 | Irene Abrams | B. Jean Weidemier, Esq. | | Handwritten notation reflecting request for legal advice re: patent prosecution | AC | 1 |
| 66. | 07/15/91 | B. Jean Weidemier, Esq. | John Hynes | Irene Abrams | Internal MIT memorandum reflecting provision of legal advice and strategy re: license agreement | AC/WP | 5 |
| 67. | 05/10/91 | Sam Pasternack, Esq. | John T. Preston | Nikki Borman; John Hynes | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 1 |
| 68. | 06/10/91 | B. Jean Weidemier, Esq. | Diane Gaylor | John Preston; Philip Rittmueller | Attorney client communications reflecting provision of legal advice in the course of patent prosecution | AC | 1 |

AC = Attorney–Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 12 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 69. | 02/25/91 | B. Jean Weidemier, Esq. | Sam Pasternack, Esq. | Nikki Dorman, John Hynes | Attorney client correspondence reflecting provision of legal advice re: patent prosecution | AC | 1 |
| 70. | 12/03/90 | B. Jean Weidemier, Esq. | | | Attorney handwritten notations reflecting provision of legal advice and communications with MIT counsel re: patent prosecution | AC | 1 |
| 71. | 08/21/90 | Dorene M. Sorensen | Diane Gaylor | | Attorney-client correspondence reflecting request for legal advice re: patent prosecution | AC | 3 |
| 72. | 05/24/90 | Jim Davis | John Preston | Christopher M. Schmandt, Robert Greene | Internal MIT communication concerning request for legal advice from MIT's counsel re: patent prosecution | AC | 1 |
| 73. | 09/22/89 | B. Jean Weidemier, Esq. | | | Attorney handwritten notations reflecting provision of legal advice re: patent prosecution | AC/WP | 1 |
| 74. | 06/13/90 | John T. Preston | Sam Pasternack, Esq. | | Attorney-client correspondence requesting legal advice re: patent prosecution | AC | 1 |
| 75. | 08/28/89 | B. Jean Weidemier, Esq. | Robert Greene | | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 1 |
| 76. | 07/31/89 | B. Jean Weidemier, Esq. | | | Attorney handwritten notations reflecting provision of legal advice re: patent prosecution | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 13 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 77. | 07/12/89 | B. Jean Weidemier, Esq. | | | Attorney handwritten notations containing a confidential communication reflecting provision of legal advice re: patent prosecution | AC/WP | 1 |
| 78. | 01/22/92 | B. Jean Weidemier, Esq. | | | Handwritten notations containing a confidential communication reflecting communications with outside counsel requesting legal advice re: patent prosecution | AC/WP | 1 |
| 79. | 02/10/92 | Diane Gaylor | B. Jean Weidemier, Esq. | Nikki Borman; John Hynes | Attorney-client correspondence and handwritten notations reflecting provision of legal advice re: patent prosecution | AC/WP | 3 |
| 80. | 06/16/92 | Donna Baranski-Walker | Carl Accardo | | Communications re: confidentiality agreements, patent license agreements, and patent prosecution reflecting request for legal advice; Email draft document prepared in anticipation of litigation (remainder of documents previously logged as Entry No. 80 now logged as Entry Nos. 766-775). | WP | 3 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 14 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 81. | 09/24/96 | David Geist | Sam Pasternack, Esq. | | Attorney-client communications reflecting provision of legal advice re: license agreement negotiations | AC/WP | 1 |
| 82. | 07/26/99 | Jack Turner | Bruce Bullock | Carolyn Beaty | Email re: patent license agreement and agreement strategy reflecting provision of legal advice in anticipation of litigation; Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 83. | 07/13/92 | Donna Baranski-Walker | James R. Davis | John Hynes | Internal MIT communications reflecting communication with MIT counsel re: patent prosecution | AC | 1 |
| 84. | 07/13/92 | Donna Baranski-Walker | Taro Hoshino | John Hynes | Correspondence reflecting substance of a communication with counsel reflecting provision of legal advice concerning patent prosecution | AC | 1 |
| 85. | 07/13/92 | Donna Baranski-Walker | Christopher M. Schmandt | John Hynes | Internal MIT communications reflecting communication with MIT counsel re: patent prosecution | AC | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 15 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 86. | 03/24/05 | Robert Swartz | Jack Turner; Karin Rivard, Esq.; Walter Bender | | Internal MIT communications re: current litigation with Harman reflecting provision of legal advice and attorney strategy in anticipation of litigation | AC/WP | 2 |
| 87. | 11/22/96 | Sam Pasternack, Esq. | David Geist | | Attorney-client correspondence reflecting provision of legal advice during prosecution | AC | 1 |
| 88. | 09/09/96 | Sam Pasternack, Esq. | David Geist | | Attorney-client correspondence and handwritten notations reflecting provision of legal advice pertaining to license negotiations in anticipation of litigation | AC/WP | 3 |
| 89. | 06/27/96 | David Geist | Sam Pasternack, Esq. | Jack Turner | Attorney-client correspondence requesting legal advice pertaining to license negotiations in anticipation of litigation | AC/WP | 1 |
| 90. | 03/07/96 | Sam Pasternack, Esq. | Jack Turner | | Attorney-client correspondence and handwritten notation re: issued patent reflecting provision of legal advice and attorney strategy pertaining to license negotiations in anticipation of litigation | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 91. | 06/21/96 | Michelle O'Shea | Jarmila Hrbek | | Internal MIT communications regarding documentation prepared at the request for MIT counsel concerning patent prosecution | AC | 1 |
| 92. | 03/24/05 | Robert Swartz | Jack Turner; Karni Rivard, Esq.; Walter Bender | | Internal MIT communications concerning current Harman litigation reflecting provision of legal advice and attorney strategy in anticipation of litigation | AC/WP | 2 |
| 93. | | | | | Produced in its entirety as Bates Nos. MIT 05574 | | |
| 94. | | MIT Personnel / Counsel | | | Draft abstract of patent application reflecting attorney questions to inventor | AC/WP | 1 |
| 95. | | | | | Produced in its entirety as Bates Nos. MIT 05575 | | |
| 96. | 07/05/89 | James R. Davis; Christopher M. Schmandt | | | Documentation concerning patent prosecution prepared at the direction of MIT's counsel | AC | 7 |
| 97. | 10/25/90 | Diane C. Gaylor | John T. Preston | | Attorney-client correspondence providing legal advice re: patent prosecution | AC | 4 |

Page 17 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 98. | 05/02/00 | MIT TLO (Michelle) | MIT TLO | | Internal MIT TLO document reflecting legal advice given during patent prosecution / maintenance Produced in redacted form as Bates No. MIT 06836-06843. | AC | 1 |
| 99. | 04/12/96 | David Geist | Sam Pasternack, Esq. | | Attorney-client correspondence re: issued patent requesting legal advice in anticipation of litigation | AC | 14 |
| 100. | 08/02/90 | Diane Gaylor | James R. Davis | | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 1 |
| 101. | 07/25/90 | Diane Gaylor | James R. Davis | | Attorney-client correspondence and handwritten notation providing legal advice regarding patent prosecution | AC | 41 |
| 102. | 06/27/96 | David Geist | Sam Pasternack, Esq. | | Letter containing a confidential communication requesting legal advice concerning license negotiations in anticipation of litigation | AC/WP | 3 |
| 103. | 05/06/96 | Jack Turner; David Geist | Robert Bloomberg | Nicholas Negroponte; Christopher Schmandt; Sandy Pentland; Pattie Maes; Andy Lippman; Robert Greene | Memorandum internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 3 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 104. | 04/05/96 | David Geist | Sam Pasternack, Esq. | | Letter containing a confidential communication reflecting request of legal advice re: license negotiations in anticipation of litigation | AC/WP | 3 |
| 105. | | Jack Turner | | | Handwritten notation reflecting communication with MIT counsel concerning license negotiations prepared in anticipation of litigation; Produced in redacted form as Bates Nos. MIT 02110 – MIT 02111 | AC/WP | 1 |
| 106. | 03/07/96 | Sam Pasternack, Esq. | Jack Turner | | Letter containing a confidential communication reflecting provision of legal advice and attorney strategy re: licensing in anticipation of litigation | AC/WP | 4 |
| 107. | 03/05/96 | David Geist | Sam Pasternack, Esq. | | Letter containing a confidential communication requesting legal advice re: license negotiations prepared in anticipation of litigation | AC/WP | 3 |
| 108. | 08/16/90 | Diane Gaylor | John Preston | | Letter containing a confidential communication reflecting provision of legal advice re: patent prosecution | AC | 54 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 109. | 06/21/91 | Jim Davis | Sam Pasternack, Esq. | | Letter containing a confidential communication re; patent prosecution reflecting request for legal advice | AC | 1 |
| 110. | 06/27/90 | William J. Hagen | Diane Gaylor | | Letter containing a confidential communication responding to previous communication from counsel re: patent prosecution | AC | 3 |
| 111. | 06/13/90 | John T. Preston | Sam Pasternack, Esq. | | Letter containing a confidential communication requesting legal advice re: patent prosecution | AC | 7 |
| 112. | 10/04/88 | MIT TLO | George F. Prendergast | | Handwritten annotations containing a confidential communication prepared in the course of licensing negotiations; produced in redacted form as Bates nos. MIT 06603-06610 | WP | 1 |
| 113. | 08/13/96 | Sam Pasternack, Esq. | David Geist | | Attorney-client correspondence providing legal advice and reflecting attorney strategy re: license negotiations prepared in anticipation of litigation | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 20 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 114. | 07/26/92 | David Laurence Hall | Choate, Hall & Stewart | | Attorney-client correspondence re: patent prosecution reflecting response to previous communication from counsel | AC | 1 |
| 115. | 07/27/92 | | David Laurence Hall | | MIT internally prepared document prepared at the direction of counsel re: prosecution | WP | 2 |
| 116. | 05/05/92 | Diane Gaylor | Philip Rittmueller | | Attorney-client communications reflecting provision of legal advice regarding patent prosecution | AC | 1 |
| 117. | 05/04/92 | Peter Murphy | Diane Gaylor | | Handwritten notation prepared in response to privileged communication from counsel re: patent prosecution | AC | 2 |
| 118. | 04/27/92 | Diane Gaylor | Keith, American Legal Services | | Correspondence and handwritten notation reflecting provision of legal advice re: patent prosecution | AC | 4 |
| 119. | | Diane Gaylor | Judy N. Fiamond | | Attorney-client correspondence and handwritten notation reflecting provision of legal advice prepared in the course of patent prosecution | AC | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 120. | 04/27/92 | Brian D. Ogonowsky, Esq. | Diane Gaylor | Philip Rittmueller | Attorney-client communications reflecting provision of legal advice concerning patent prosecution | AC | 2 |
| 121. | 04/27/92 | Sam Pasternack, Esq. | John Hynes | | Attorney-client correspondence re: patent prosecution providing legal advice and attorney strategy | AC | 11 |
| 122. | 04/27/92 | Diane Gaylor | Brian D. Ogonowsky, Esq. | | Attorney-client communications reflecting provision of legal advice concerning patent prosecution | AC | 2 |
| 123. | 04/22/92 | Secretary for Sam Pasternack, Esq. | Sam Pasternack, Esq. | | Choate Internal handwritten message reflecting provision of legal advice re: patent prosecution | WP | 1 |
| 124. | 06/10/91 | B. Jean Weidemier, Esq. | Diane Gaylor | John Preston; Philip Rittmueller | Attorney-client communications reflecting provision of legal advice concerning patent prosecution | AC | 1 |
| 125. | 03/20/92 | MIT Personnel | Sam Pasternack, Esq. | | Handwritten notation reflecting request for legal advice from Sam Pasternack, Esq. re: patent prosecution | AC | 1 |
| 126. | 03/04/92 | Irene Abrams | Diane Gaylor | | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 127. | 02/10/92 | Diane Gaylor | B. Jean Weidemier, Esq. | Nikki Borman; John Hynes | Attorney-client correspondence and handwritten notations reflecting the provision of legal advice re: patent prosecution | AC | 11 |
| 128. | 07/23/91 | Diane Gaylor | Brian D. Ogonowsky, Esq. | | Attorney-client communications reflecting provision of legal advice concerning patent prosecution | AC | 1 |
| 129. | 08/01/91 | Irene Abrams | Sam Pasternack, Esq. | | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 1 |
| 130. | 06/14/91 | Diane Gaylor | | | Memorandum reflecting provision of legal advice re: patent prosecution concerning communication with MIT's counsel | AC | 1 |
| 131. | 07/08/91 | Diane Gaylor | John T. Preston | | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 1 |
| 132. | 05/10/91 | Sam Pasternack, Esq. | John T. Preston | Nikki Borman; John Hynes | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 1 |
| 133. | 11/14/90 | Sam Pasternack, Esq. | John T. Preston | | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 23 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 134. | 10/30/90 | John T. Preston | Diane Gaylor | | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 1 |
| 135. | 10/25/90 | Diane Gaylor | John T. Preston | | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 1 |
| 136. | 08/23/90 | MIT Personnel | Diane Gaylor | | Memorandum containing a confidential communication reflecting request for legal advice re: patent prosecution | AC | 3 |
| 137. | 08/21/90 | Dorene M. Sorenson | Diane Gaylor | | Attorney-client correspondence reflecting response to previous communication from MIT counsel re: patent prosecution | AC | 1 |
| 138. | 08/16/90 | Diane Gaylor | James R. Davis | | Attorney-client correspondence reflecting provision of legal advice re: patent prosecution | AC | 6 |
| 139. | 10/02/91 | B. Jean Weidemier, Esq. | Sam Pasternack, Esq. | Penny Blaisdell; Diane Gaylor; Robert Greene; John Hynes; John Preston; Philip Rittmueller | Attorney-client communications reflecting provision of legal advice concerning patent prosecution | AC | 1 |
| 140. | 02/25/91 | B. Jean Weidemier, Esq. | Sam Pasternack, Esq. | Nikki Borman; John Hynes | Attorney-client communication re: reporting instructions reflecting provision of legal advice concerning patent prosecution | AC | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 24 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 141. | 09/24/95 | David Geist | Sam Pasternack, Esq. | | Attorney-client communication reflecting provision of legal advice re: license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 142. | 11/22/96 | Sam Pasternack, Esq. | David Geist | | Attorney-client communication reflecting provision of legal advice re: license negotiations prepared in anticipation of litigation | AC/WP | 13 |
| 143. | 03/15/93 | Sam Pasternack, Esq. | Jarmila Hrbek | | Attorney-client correspondence reflecting provision of legal advice regarding patent prosecution | AC | 2 |
| 144. | 07/08/92 | Sam Pasternack, Esq. | B. Jean Weidemier, Esq. | Philip Rittmueller; Brian D. Ogonowsky, Esq. | Attorney-client communications reflecting provision of legal advice concerning patent prosecution | AC | 2 |
| 145. | 08/09/90 &ongoing | Sam Pasternack, Esq. | | | Checklist re: pending patent application reflecting provision of legal advice | AC | 1 |
| 146. | 11/22/96 | Sam Pasternack, Esq. | David Geist | | Attorney-client communication reflecting provision of legal advice re: license negotiations prepared in anticipation of litigation | AC/WP | 4 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 25 of 125

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 147. | 09/09/96 | Sam Pasternack, Esq. | | | Draft correspondence containing a confidential communication with handwritten notes re: license negotiations prepared in anticipation of litigation | WP | 2 |
| 148. | 06/27/96 | David Geist | Sam Pasternack, Esq. | Jack Turner | Letter containing a confidential communication reflecting request for legal advice re: license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 149. | 05/07/96 | Sam Pasternack, Esq. | Jack Turner | | Letter with hand written notes re: issued patent and license reflecting provision of legal advice prepared in anticipation of litigation attaching correspondence to S. Kobayashi with privileged handwritten notations, produced in redacted form as MIT 01934-1935 | AC/WP | 2 |
| 150. | 06/21/96 | Michelle O'Shea | Jarmila Hrbek | | Internal MIT communications reflecting documentation prepared at the direction of counsel concerning patent prosecution | AC | 5 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 151. | 05/06/96 | Jack Turner; David Geist | Robert Bloomberg | Nicholas Negroponte; Christopher Schmandt; Sandy Pentland; Pattie Maes; Andy Lippman; Robert Greene | Memorandum internal to MIT personnel, handwritten notation prepared in anticipation of litigation re: license negotiations | AC/WP | 4 |
| 152. | 03/24/05 | Robert Swartz | Jack Turner; Karin Rivard, Esq.; Walter Bender | | Internal MIT Email re: Harman litigation reflecting provision of legal advice and attorney strategy in anticipation of litigation | AC/WP | 2 |
| 153. | 05/04/05 | Robert Swartz | Steven Bauer, Esq. | | Email re: Harman litigation reflecting provision of legal advice in anticipation of litigation | AC/WP | 1 |
| 154. | 05/04/05 | Robert Swartz | Steven Bauer, Esq. | | Email reflecting request for legal advice, attaching previously produced correspondence between Harman/Harman's counsel and MIT | AC/WP | 23 |
| 155. | 05/04/05 | Robert Swartz | Steven Bauer, Esq. | | Emails and handwritten notation re: Harman litigation reflecting provision of legal advice in anticipation of litigation | AC/WP | 1 |
| 156. | 05/06/05 | Proskauer Rose LLP | | | Claim analysis reflecting provision of legal advice and attorney strategy in anticipation of litigation | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 27 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 157. | 05/11/05 | Proskauer Rose LLP | | | Claim analysis reflecting provision of legal advice and attorney strategy in anticipation of litigation | AC/WP | 10 |
| 158. | 05/05/05 | John Pim, Esq. | | | Notes on website print-out reflecting provision of legal advice and attorney strategy in anticipation of litigation Produced in redacted form as Bates Nos. MIT 02118 – MIT 02123 | AC/WP | 5 |
| 159. | 05/05/05 | John Pim, Esq. | | | Notes on website print-out reflecting provision of legal advice and attorney strategy in anticipation of litigation Produced in redacted form as Bates Nos. MIT 02124 – MIT 02126 | AC/WP | 2 |
| 160. | 05/05/05 | John Pim, Esq. | | | Notes on website print-out reflecting provision of legal advice and attorney strategy in anticipation of litigation Produced in redacted form as Bates Nos. MIT 02127 – 2129 | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 28 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 161. | 05/05/05 | John Pim, Esq. | | | Notes on website print-out reflecting provision of legal advice and attorney strategy in anticipation of litigation Produced in redacted form as Bates Nos. MIT 02130 – MIT 02132 | AC/WP | 1 |
| 162. | 05/05/05 | John Pim, Esq. | | | Notes on website print-out reflecting provision of legal advice and attorney strategy in anticipation of litigation Produced in redacted form as Bates Nos. MIT 02133 – MIT 02141 | AC/WP | 4 |
| 163. | 12/17/03 | Jack Turner | Walter R. Bender | | Email reflecting request for legal advice prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 164. | 03/04/96 | David Geist | Denise Lynch | Jack Turner | MIT internal communications reflecting communications with MIT attorney requesting legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 165. | 05/31/96 | Jack Turner | David Geist | | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |

Page 29 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|-----------|------|--------|------------|------------------|-------------|----------------|-------|
| 166. | 07/31/95 | Jack Turner | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 2 |
| 167. | 05/31/96 | Robert Bloomberg | Jack Turner | lynn@media.mit.edu; Andy Lippman; Robert Greene; Sandy Pentland; Pattie Maes; David Geist; Christopher M. Schmandt | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 168. | 01/28/97 | Jack Turner | David Geist | | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 2 |
| 169. | 01/28/97 | Bob Bloomberg | David Geist | Jack Turner Liz Yonda | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 170. | 01/28/97 | David Geist | Bob Bloomberg | Jack Turner | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 171. | 04/11/97 | David Geist | Denise Lynch | Jack Turner | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 18 |
| 172. | 07/26/99 | Jack Turner | Bruce Bullock | TLO File Carolyn Beaty | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 173. | 07/26/99 | Bruce Bullock | Jack Turner | TLO File Carolyn Beaty | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 30 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 174. | | | | | Removed from Privilege Log | | |
| 175. | 04/04/00 | Rick Cahaly | Jack Turner | Denise M. Vaillancourt | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 176. | 10/25/00 | TLODBA | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 177. | 02/26/01 | Jack Turner | Rick Cahaly | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 178. | 11/27/00 | TLODBA | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 179. | 12/28/00 | TLODBA | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 180. | 01/25/01 | TLODBA | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 181. | 02/26/05 | TLODBA | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 31 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 182. | 12/17/03 | Jack Turner | Teresa Kratman | Neil A. Gershenfeld | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 183. | 02/25/04 | Jack Turner | Dan Dardani | Ann Marie Flaherty | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 184. | | | | | Removed from Privilege Log | | |
| 185. | 04/14/04 | Jack Turner | Robert Fadel | Ann Marie Flaherty | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 4 |
| 186. | 12/17/03 | Teresa Kratman | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 187. | 02/24/04 | Robert D. Fadel | Jack Turner | Deb Cohen | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 188. | 02/25/04 | Dan Dardani | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 32 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 189. | 11/16/01 | Teresa Kratman | Jack Turner | Neil A. Gershenfeld | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 190. | 04/21/04 | Deb Cohen | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 191. | 04/14/04 | Robert D. Fadel | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 4 |
| 192. | 08/13/04 | Jack Turner | Robert Swartz; Robert D. Fadel | | Internal MIT communications reflecting request for legal advice from MIT counsel re: patent prosecution | AC | 1 |
| 193. | 08/20/04 | Jack Turner | Robert Swartz; Robert D. Fadel | Dan O'Brien | Internal MIT communications reflecting request for legal advice from MIT counsel re: patent prosecution | AC | 1 |
| 194. | 04/21/04 | Deb Cohen | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 195. | 09/27/04 | Jack Turner | Dan O'Brien | Denise M. Vaillancourt | Email requesting information for the purpose of rendering legal advice in the course of prosecution of patent | AC | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 33 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 196. | 10/19/04 | Jack Turner | Robert Swartz | TLO File | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 2 |
| 197. | 08/13/04 | Robert Swartz | Jack Turner | | Internal MIT communications reflecting request for legal advice from MIT counsel re: patent prosecution | AC | 1 |
| 198. | 08/20/04 | Robert Swartz | Jack Turner | Robert Swartz; Robert D. Fadel; Dan O'Brien | Internal MIT communications reflecting request for legal advice from MIT counsel re: patent prosecution | AC | 2 |
| 199. | 08/24/04 | Robert D. Fadel | Jack Turner | Dan O'Brien; Robert Swartz | Email containing a confidential communication reflecting legal advice previously provided re: patent prosecution | AC | 2 |
| 200. | 09/27/04 | Dan O'Brien | Jack Turner | | Email requesting information for the purpose of rendering legal advice in the course of prosecution of patent | AC | 3 |
| 201. | 01/21/05 | Geoff Wilson | Jack Turner | Robert D. Fadel | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |

Page 34 of 125

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 202. | 03/18/05 | Jack Turner | Tom Sadtler | Jack Turner | Internal MIT emails re: incorporating communications with MIT inside and outside counsel regarding Harman's lawsuit against MIT prepared in anticipation of litigation | AC/WP | 4 |
| 203. | 03/18/05 | Karin Rivard, Esq. | Jack Turner; Robert Swartz; Tom Sadtler; Walter Bender | Lita Nelsen; Alice P. Gast | Emails re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in anticipation of litigation | AC/WP | 3 |
| 204. | 02/15/95 | David Geist | Robert Greene | | MIT internal handwritten communications drafted in the course of license negotiations prepared in anticipation of litigation; produced in redacted form as Bates no. MIT 06611 | WP | 1 |
| 205. | 02/02/95 | Robert Greene | Jack Turner | John J. Hynes; Christopher M. Schmandt; Robert Greene | Memorandum and Email and document prepared in anticipation of litigation re: license negotiations | WP | 5 |
| 206. | 06/28/91 | Susan Browne | John J. Hynes | | Internal MIT memorandum reflecting communications with counsel regarding patent prosecution | AC | 2 |
| 207. | 06/28/91 | Susan Browne | John J. Hynes | | Internal MIT memorandum reflecting communications with counsel regarding patent prosecution | AC | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 35 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 208. | 04/26/91 | Robert Greene | John J. Hynes | Robert Greene | Email re: prototype reflecting request for legal advice | AC | 1 |
| 209. | 09/22/03 | Robert Swartz | Teresa Kratman | | Internal MIT email regarding communications with counsel reflecting provision of legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 210. | 10/01/91 | Nicholas Negroponte | Penny Blaisdell; Robert Greene | | Email internal to MIT personnel reflecting request for legal advice in the context of license negotiations prepared in anticipation of litigation | WP | 1 |
| 211. | 09/10/91 | Nicholas Negroponte | John J. Hynes | p@hq.media.mit.edu; w@hq.media.mit.edu; Robert Greene | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 212. | 09/30/91 | Robert Greene | Penny Blaisdell | Nicholas Negroponte; Robert Greene | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 213. | 08/23/91 | Nicholas Negroponte | John Preston | John J. Hynes; Robert Greene | Memorandum internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 214. | 08/16/91 | Philip Rittmueller | Nicholas Negroponte; Robert Greene | | Memorandum reflecting communication with MIT's counsel regarding patent prosecution | AC | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|-----------|------|--------|------------|------------------|-------------|----------------|-------|
| 215. | 08/16/91 | Philip Rittmueller | Nicholas Negroponte; Robert Greene | | Memorandum with handwritten notations reflecting communication with MIT's counsel regarding patent prosecution | AC | 2 |
| 216. | 05/24/90 | Jim Davis | John Preston | Christopher M. Schmandt; Robert Greene | Internal MIT email reflecting request for legal advice from counsel regarding patent prosecution | AC | 1 |
| 217. | 11/27/90 | Robert Greene | Nicholas Negroponte | Christopher M. Schmandt; gd@media-lab.media.mit.edu; John J. Hynes; James R. Davis; Harry Stevens | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 218. | | | | | Produced in its entirety as Bates No. MIT 05583 | | |
| 219. | | | | | Produced in its entirety as Bates No. MIT 05584 | | |
| 220. | 02/16/94 | John J. Hynes | Robert Greene; lynn@media.mit.edu | jho@media.mit.edu | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |
| 221. | 02/16/94 | John J. Hynes | Robert Greene; lynn@media.mit.edu | jho@media.mit.edu | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 37 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 222. | | Nicholas Negroponte | Robert Greene; John J. Hynes | | Document internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations; Produced in redacted form as Bates No. MIT 02112. | WP | 1 |
| 223. | 01/05/94 | John J. Hynes | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 224. | 12/08/93 | Jack Turner | John J. Hynes | | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 225. | | MIT Personnel | John J. Hynes | | Handwritten notation reflecting request to obtain legal advice from outside counsel re: patent prosecution | AC | 2 |
| 226. | 02/15/95 | David Geist | Aaron Bobick | | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 227. | 01/28/97 | Robert Bloomberg | David Geist | Jack Turner; Liz Yonda | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 2 |
| 228. | 02/16/95 | David Geist | Robert Greene; John J. Hynes | | Document internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |

Page 38 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 229. | 09/23/03 | Teresa Kratman | Robert Swartz | | Document internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |
| 230. | 01/21/99 | Jack Turner | Liz Yonda | ILO file | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 231. | 01/28/97 | David Geist | Robert Bloomberg | Jack Turner; David Geist | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 232. | 12/23/94 | Nicholas Negroponte | John J. Hynes; Jack Turner; Nicholas Negroponte; Robert Greene | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 4 |
| 233. | 12/23/94 | Jack Turner | Nicholas Negroponte; Robert Greene; John J. Hynes | | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 234. | 10/11/94 | Christopher Gant | Andy Lippman | valerie@media.mit.edu; celia@media.mit.edu; Robert Greene | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 235. | 10/08/94 | Nicholas Negroponte | Robert Greene | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 39 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 236. | 12/03/92 | MIT Personnel/Counsel | | | Handwritten notations re: issued patent reflecting request to obtain legal advice and attorney strategy re: patent prosecution | AC | 1 |
| 237. | 01/05/94 | John J. Hynes | Jack Turner | jho@media.mit.edu | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 238. | 02/16/95 | David Geist | Robert Greene; John J. Hynes | | Document internal to MIT personnel containing information related to a confidential communication in the context of license negotiations | WP | 2 |
| 239. | 04/12/95 | David Geist | | | Memorandum containing a confidential communication reflecting legal advice previously provided re: license negotiations | AC/WP | 1 |
| 240. | 07/31/95 | Jack Turner | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |

Page 40 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 241. | 05/19/03 | Robert Swartz | Walter Bender; Christopher M. Schmandt; Christopher M. Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations (remainder of documents previously logged as Entry No. 241 now logged as Entry Nos. 776-781). | WP | 2 |
| 242. | 05/12/04 | Jack Turner | | | File and notes re: patent prosecution reflecting work product in anticipation of litigation; Produced as Bates No. MIT 05585 | WP | 1 |
| 243. | 05/31/96 | Jack Turner | Robert Bloomberg | lynn@media.mit.edu; Robert Greene; Sandy Pentland; Pattie Maes; David Geist; Christopher M. Schmandt | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 244. | 05/31/96 | Robert Bloomberg | Jack Turner | lynn@media.mit.edu; Robert Greene; Sandy Pentland; Pattie Maes; David Geist; Christopher M. Schmandt | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 245. | 05/30/96 | Nicholas Negroponte | Robert Bloomberg | Jack Turner; David Geist; Christopher M. Schmandt | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED. | PAGES |
|---|---|---|---|---|---|---|---|
| 246. | 05/30/96 | Robert Bloomberg | Nicholas Negroponte | David Geist; Jack Turner; Christopher M. Schrandt | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 247. | 05/18/96 | Nicholas Negroponte | Robert Bloomberg | David Geist; Robert Greene | Email internal to MIT personnel with handwritten notations prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 248. | 05/16/96 | Robert Bloomberg | Nicholas Negroponte | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 249. | 05/16/96 | Robert Bloomberg | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 250. | 05/16/96 | Jack Turner | Robert Bloomberg | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 251. | 05/16/96 | Nicholas Negroponte | Robert Bloomberg | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 252. | 05/12/95 | Robert Bloomberg | Robert Greene | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 42 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 253. | 05/12/96 | Robert Greene | Robert Bloomberg | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 254. | 05/10/96 | Robert Bloomberg | Robert Greene | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 255. | 05/10/96 | Robert Greene | Robert Bloomberg; Nicholas Negroponte; Robert Greene; Christopher M. Schmandt; Pattie Maes; Andy Lippman; Sandy Pentland | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 256. | 05/10/95 | Robert Bloomberg | Nicholas Negroponte | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 257. | 05/10/96 | Robert Bloomberg | Nicholas Negroponte | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 258. | 05/09/95 | Robert Bloomberg | Nicholas Negroponte; Robert Greene; Christopher M. Schmandt; Sandy Pentland; Pattie Maes; Andy Lippman | lynn@media | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

Page 43 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 259. | 05/02/95 | Robert Greene | Nicholas Negroponte | Robert Greene; Christopher M. Schmandt; John Hymes | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 260. | 05/01/95 | Jack Turner | David Geist | Robert Greene; amos@mit.edu | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 261. | 04/10/95 | David Geist | Robert Greene | John Hymes; Christopher M. Schmandt | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 4 |
| 262. | 04/14/95 | Deb Cohen | Joe Paradiso | Robert Greene; Deb Cohen; Dana Lang | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 263. | 04/13/95 | Peggy McNally | Deb Cohen; Robert Greene; groucho@media.mit.edu; bru@media.mit.edu; s@bq; v@bq; a@bq | Peggy McNally; Dana Lang; Rebecca Prendergast; youngn@media.mit.edu | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 5 |
| 264. | 08/16/95 | Robert Greene | Nicholas Negroponte | Robert Greene | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |
| 265. | 05/02/95 | Robert Greene | Nicholas Negroponte | Robert Greene; Christopher M. Schmandt; John Hymes | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

Page 44 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 266. | 11/14/02 | Elizabeth Yonda | Jack Turner | Walter Bender | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 267. | 03/11/04 | Jack Turner | Robert Swartz | Ann M. Chinchilla | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 268. | 04/11/97 | David Geist | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 269. | 02/19/04 | Jack Turner | Robert Swartz | Ann Marie Flaherty; Neil Gershenfeld; Walter Bender | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 270. | 04/10/97 | David Geist | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 271. | 05/20/97 | David Geist | Robert Bloomberg; Jack Turner | Pattie Maes | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 272. | 05/30/96 | Robert Bloomberg | Nicholas Negroponte | David Geist; Jack Turner; Christopher M. Schmandt | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 273. | 05/20/96 | David Geist | Jack Turner | David Geist; Robert Greene | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 274. | 05/20/96 | Robert Bloomberg | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 275. | 12/04/95 | Robert Greene | Jack Turner; Robert Bloomberg; | Robert Greene | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 276. | | | | | Removed from Privilege Log | | |
| 277. | 08/16/95 | Robert Greene | David Geist | Jack Turner; John Hymes | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 278. | 11/13/02 | Robert Swartz | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 279. | 11/13/02 | Robert Swartz | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

Page 46 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 280. | 11/13/02 | Jack Turner | Walter Bender | Jack Turner | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 281. | 02/19/04 | Robert Swartz | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 282. | 03/30/04 | Robert Swartz | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 283. | 03/11/04 | Robert Swartz | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 284. | 03/30/04 | Robert Swartz | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 285. | 05/12/04 | Robert Swartz | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 286. | 07/09/04 | Robert Swartz | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 47 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 287. | 07/09/04 | Robert Swartz | Jack Turner | Jack Turner | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 288. | 07/09/04 | Robert Swartz | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 289. | | | | | Removed from Privilege Log | | |
| 290. | 03/11/05 | Geoff Wilson | Robert Swartz | Walter Bender | Internal MIT communications reflecting request for legal advice from counsel concerning continued prosecution of patent | AC | 2 |
| 291. | 03/11/05 | Geoff Wilson | Robert Fadel | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 292. | 03/11/05 | Robert Fadel | Tom Sadtler; Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 293. | 03/11/05 | Robert Fadel | Geoff Wilson | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |

Page 48 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 294. | 03/11/05 | Robert Fadel | Geoff Wilson | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 295. | 03/31/04 | Robert Fadel | Walter Bender | Deb Cohen | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 296. | 03/08/05 | Robert Swartz | Robert Fadel | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 297. | 04/14/04 | Robert Fadel | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 298. | 03/02/05 | Robert Swartz | Robert Fadel | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 299. | 04/12/04 | Deb Cohen | Robert Fadel | Walter Bender | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 300. | 02/24/04 | Robert Fadel | Jack Turner | Deb Cohen | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 49 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 301. | 02/24/04 | Deb Cohen | Robert Fadel | Walter Bender; Felice Gardner | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |
| 302. | 04/14/04 | Robert Fadel | Deb Cohen | Walter Bender | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 4 |
| 303. | 04/14/04 | Jack Turner | Robert Fadel | Ann Marie Flaherty | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |
| 304. | 02/11/04 | Robert Fadel | Deb Cohen | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |
| 305. | 04/20/04 | Deb Cohen | Walter Bender | Robert Fadel; Felice Gardner | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 306. | 02/24/04 | Walter Bender | Nicholas Negroponte | Robert Fadel | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |
| 307. | 02/24/04 | Robert Fadel | Walter Bender | Deb Cohen | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |

Page 50 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 308. | 01/07/04 | Deb Cohen | Walter Bender | Robert Fadel | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |
| 309. | 03/11/05 | Geoff Wilson | Robert Fadel | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 310. | 03/11/05 | Robert Fadel | Tom Sadtler; Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 311. | 03/11/05 | Robert Fadel | Geoff Wilson | | Email providing information for the purpose of obtaining legal advice in the course of license negotiations prepared in anticipation of litigation | WP | 2 |
| 312. | 03/11/05 | Geoff Wilson | Robert Swartz | Robert Fadel | Email providing information for the purpose of obtaining legal advice in the course of license negotiations prepared in anticipation of litigation | WP | 2 |
| 313. | 02/24/04 | Robert Fadel | Jack Turner | Deb Cohen | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 51 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 314. | 03/11/05 | Robert Fadel | Geoff Wilson | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 315. | 08/24/04 | Robert Fadel | Jack Turner | Dan O'Brien; Robert Swartz | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 316. | 04/20/04 | Deb Cohen | Walter Bender | Robert Fadel; Felice Gardner | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 317. | 02/24/04 | Walter Bender | Nicholas Negroponte | Robert Fadel | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |
| 318. | 02/24/04 | Robert Fadel | Walter Bender | Deb Cohen | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 319. | 04/12/04 | Deb Cohen | Robert Fadel | Walter Bender | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 320. | 02/24/04 | Deb Cohen | Robert Fadel | Walter Bender; Felice Gardner | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |

Page 52 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 321. | 04/14/04 | Robert Fadel | Jack Turner | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 322. | 04/14/04 | Deb Cohen | Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 4 |
| 323. | 04/14/04 | Jack Turner | Robert Fadel | Ann Marie Flaherty | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |
| 324. | 01/21/05 | Geoff Wilson | Jack Turner | Robert Fadel | Emails re: licensing negotiations reflecting request for legal advice in anticipation of litigation (remainder of documents previously logged as Entry No. 324 now logged as Entry Nos. 786-799). | WP | 1 |
| 325. | 12/15/03 | Robert Swartz | Walter Bender | Christopher M. Schmandt; Teresa Kratman; Deb Cohen | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 53 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 326. | 12/15/03 | Teresa Kratman | Robert Swartz | Deb Cohen; Christopher M. Schmandt; Walter Bender | Emails re: licensing issued patent reflecting request for legal advice in anticipation of litigation; Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 327. | | | | | Removed from Privilege Log | | |
| 328. | 05/06/96 | Jack Turner; David Geist | Robert Bloomberg | | Memorandum internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 5 |
| 329. | 12/17/03 | Jack Turner | Walter Bender | | Communication internal to MIT drafted in the course of license negotiations prepared in anticipation of litigation; produced in redacted form as Bates nos. MIT 06612-06647 (remainder of documents previously logged as Entry No. 329 now logged as Entry Nos. 782-785). | WP | 1 |
| 330. | 05/02/95 | Robert Greene | Nicholas Negroponte | | Email, letter and document internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 4 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 54 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 331. | | David Geist | | | Document internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | AC/WP | |
| 332. | 08/17/05 | Robert Swartz | John Pint, Esq. | | Email re: claim chart analysis reflecting request for legal advice in the course of current litigation | AC/WP | 7 |
| 333. | 12/23/94 | John Hynes | Nicholas Negroponte | John Hynes; Jack Turner; Robert Greene | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 334. | 12/23/94 | Robert Greene | Nicholas Negroponte | John Hynes; Jack Turner | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 335. | | Jack Turner | Karin Rivard, Esq. | | Handwritten notation re: Harman reflecting provision of legal advice in anticipation of current litigation | AC/WP | 1 |
| 336. | 03/31/05 | Walter Bender | Jack Turner | | Email internal to MIT personnel with handwritten notations prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

Page 55 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 337. | | Jack Turner | | | Handwritten notes containing confidential information reflecting provision of legal advice re: strategizing for license negotiations | WP | 2 |
| 338. | | | | | Produced as Bates nos. MIT 05586-05587 | | |
| 339. | 08/21/95 | Robert Greene | David Geist | Jack Turner; John Hynes; Robert Greene | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 340. | 05/04/05 | Robert Swartz | Steven Bauer, Esq. | | Email reflecting request for legal advice, attaching previously produced correspondence between Harman/Harman's counsel and MIT | AC/WP | 17 |
| 341. | 04/04/05 | Charlie Call, Esq. | Jack Turner | | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |
| 342. | 04/04/05 | Christopher M. Schmandt | Sam Pasternack, Esq.; Jack Turner | | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |

Page 56 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 343. | 04/05/05 | Christopher M. Schmandt | Jack Turner | | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in anticipation of litigation; Email internal to MIT personnel prepared in the course of current litigation in the context of license negotiations | AC/WP | 1 |
| 344. | 04/04/05 | Sam Pasternack, Esq. | Jack Turner; Christopher M. Schmandt | | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 2 |
| 345. | 04/05/05 | Charlie Call, Esq. | Jack Turner; Christopher M. Schmandt; Sam Pasternack, Esq. | Ann Marie Flaherty; Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |
| 346. | 04/05/05 | Sam Pasternack, Esq. | Jack Turner; Christopher M. Schmandt | Ann Marie Flaherty; Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 2 |
| 347. | 04/12/05 | Christopher M. Schmandt | Jack Turner | Sam Pasternack, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |

Page 57 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 348. | 04/12/05 | Sam Pasternack, Esq. | Christopher Schmandt; Jack Turner | | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 2 |
| 349. | 04/12/05 | Sam Pasternack, Esq. | Christopher M. Schmandt; Jack Turner | | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 2 |
| 350. | 04/12/05 | Christopher M. Schmandt | Sam Pasternack, Esq.; Jack Turner | | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |
| 351. | 05/04/05 | Christopher M. Schmandt | Steven Bauer, Esq. | Jack Turner; Robert Swartz | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |
| 352. | 05/04/05 | Steven Bauer, Esq. | Christopher M. Schmandt | Jack Turner; Robert Swartz | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |
| 353. | 05/04/05 | Christopher M. Schmandt | Steven Bauer, Esq. | Jack Turner; Robert Swartz | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 58 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 354. | 05/03/05 | Robert Swartz | Jack Turner | Steven Bauer, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 2 |
| 355. | 05/04/05 | Steven Bauer, Esq. | Christopher M. Schmandt | Jack Turner; Robert Swartz | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 2 |
| 356. | 05/04/05 | Christopher M. Schmandt | Steven Bauer, Esq. | Jack Turner; Robert Swartz | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |
| 357. | 05/04/05 | Robert Swartz | Steven Bauer, Esq. | Christopher M. Schmandt; Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |
| 358. | 05/04/05 | Steven Bauer, Esq. | Christopher M. Schmandt; Robert Swartz; | Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |
| 359. | 05/04/05 | Christopher M. Schmandt | Steven Bauer, Esq.; Robert Swartz | Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 360. | 05/04/05 | Karin Rivard, Esq. | Christopher M. Schmandt | Steven Bauer, Esq.; Robert Swartz; Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |
| 361. | 05/04/05 | Robert Swartz | Christopher M. Schmandt | Steven Bauer, Esq.; Karin Rivard, Esq.; Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice and attorney strategy in the course of current litigation | AC/WP | 1 |
| 362. | | MIT Personnel/Counsel | | | Handwritten notations re: Harman's lawsuit against MIT reflecting request for legal advice in the current litigation | AC/WP | 1 |
| 363. | 07/25/03 | Steve Brown | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in anticipation of litigation | AC/WP | 2 |
| 364. | | | | | Produced in its entirety as Bates nos. MIT 06648-06649 | | |
| 365. | | | | | Produced in its entirety as Bates nos. MIT 06650-06651 | | |
| 366. | | | | | Produced in its entirety as Bates nos. MIT 06652-06653 | | |
| 367. | 08/13/03 | Steve Brown | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in anticipation of litigation | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 368. | | | | | Produced in its entirety as Bates nos. MIT 06654-06655 | | |
| 369. | | | | | Produced in its entirety as Bates nos. MIT 06656-06657 | | |
| 370. | 03/17/05 | Steven Bauer, Esq. | Karin Rivard, Esq.; Ben Palleiko | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 371. | 03/17/05 | Ben Palleiko | Steven Bauer, Esq. | Karin Rivard, Esq.; Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 372. | 03/17/05 | Steven Bauer, Esq. | Ben Palleiko | Karin Rivard, Esq.; Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 373. | | | | | Produced in its entirety as Bates no. MIT 06658 | | |
| 374. | 03/17/05 | Mark DiVincenzo, Esq. | Karin Rivard, Esq. | Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 375. | 03/17/05 | Karin Rivard | Mark DiVincenzo, Esq. | Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |

Page 61 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 376. | 03/18/05 | Jack Turner | Karin Rivard, Esq. | Lita Nelson; Robert Swartz; Tom Sadler; Walter Bender | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 377. | 03/18/05 | Karin Rivard, Esq. | Tom Sadler | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 4 |
| 378. | 03/18/05 | Karin Rivard, Esq. | Jack Turner; Robert Swartz; Tom Sadler | Lita Nelson; Alice Gast | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 379. | 03/21/05 | Jack Turner | Robert Swartz | Karin Rivard, Esq.; Ann Marie Flaherty; Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 1 |
| 380. | 03/22/05 | Ann Marie Flaherty | Robert Swartz | Karin Rivard, Esq.; Ann Marie Flaherty; Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 381. | 03/22/05 | Robert Swartz | Ann Marie Flaherty | Karin Rivard, Esq.; Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 382. | 03/22/05 | Ann Marie Flaherty | Robert Swartz | Karin Rivard, Esq.; Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 383. | 03/24/05 | Robert Swartz | Jack Turner; Karin Rivard, Esq.; Walter Bender | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 384. | 03/25/05 | Karin Rivard, Esq. | Magdalen Christian | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 385. | 03/28/05 | Jack Turner | Alice Gast | Lita Nelson; Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 386. | 03/28/05 | Robert Swartz | Walter Bender; Karin Rivard, Esq.; Jack Turner | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 1 |
| 387. | 03/29/05 | Karin Rivard, Esq. | Mark DiVincenzo, Esq. | Alice Gast; Jack Turner; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 1 |
| 388. | 03/29/05 | Mark DiVincenzo, Esq. | Karin Rivard, Esq. | Alice Gast; Jack Turner; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 389. | 03/26/05 | Alice Gast | Mark DiVincenzo, Esq.; Karin Rivard, Esq. | Jack Turner; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 390. | 03/29/05 | Mark DiVincenzo, Esq. | Alice Gast; Karin Rivard, Esq. | Jack Turner; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 391. | 03/29/05 | Karin Rivard, Esq. | Alice Gast | Mark DiVincenzo, Esq.; Jack Turner; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 392. | 03/29/05 | Mark DiVincenzo, Esq. | Karin Rivard, Esq.; Alice Gast | Jack Turner; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 393. | 03/29/05 | Karin Rivard, Esq. | Mark DiVincenzo, Esq. | Alice Gast; Jack Turner; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 4 |
| 394. | 03/29/05 | Mark DiVincenzo, Esq. | Karin Rivard, Esq. | Richelle Nessralla, Esq.; Alice Gast; Jack Turner; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 4 |
| 395. | 03/29/05 | Karin Rivard, Esq. | Mark DiVincenzo, Esq. | Richelle Nessralla, Esq.; Alice Gast; Jack Turner; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 4 |
| 396. | 03/29/05 | Alice Gast | Mark DiVincenzo, Esq.; Karin Rivard, Esq. | Jack Turner; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 5 |

Page 64 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 397. | 03/30/05 | Alice Gast | Karin Rivard, Esq. | Jack Turner; Lita Nelsen; Alice Gast | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 398. | 03/31/05 | Lita Nelsen | Alice Gast | Karin Rivard, Esq.; Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 399. | 03/31/05 | Jack Turner | Alice Gast | Karin Rivard, Esq.; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 400. | 03/31/05 | Jack Turner | Walter Bender | Lita Nelsen; Alice Gast; Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 401. | 03/31/05 | Richelle Nessaralla, Esq. | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 1 |
| 402. | 03/31/05 | Karin Rivard, Esq. | Lita Nelsen; Jack Turner; Alice Gast | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 2 |
| 403. | 03/31/05 | Alice Gast | Jack Turner | Karin Rivard, Esq.; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 65 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 404. | 04/05/05 | Jack Turner | Christopher M. Schmandt; Sam Pasternack, Esq.; Charlie Call, Esq. | Ann Marie Flaherty; Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 1 |
| 405. | 04/05/05 | Charlie Call, Esq. | Jack Turner; Christopher M. Schmandt; Sam Pasternack, Esq. | Ann Marie Flaherty; Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 1 |
| 406. | 04/05/05 | Sam Pasternack, Esq. | Jack Turner; Christopher M. Schmandt; Charlie Call, Esq. | Ann Marie Flaherty; Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 2 |
| 407. | 04/08/05 | Robert Swartz | Karin Rivard, Esq. | | Email internal to MIT personnel re: Harman litigation against MIT prepared in the course of current litigation reflecting request for legal advice | AC/WP | 1 |
| 408. | 04/08/05 | Robert Swartz | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 1 |
| 409. | 04/08/05 | Alice Gast | Walter Bender | Adele Santos; Robert A. Brown; Jack Turner; Lita Nelsen; Alice Gast | Email internal to MIT personnel re: Harman's lawsuit against MIT prepared in the course of current litigation in the context of license negotiations | WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 66 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 410. | 04/08/95 | Lita Nelsen | Jack Turner; Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 411. | 04/08/05 | Lita Nelsen | Alice Gast | Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 412. | 04/20/05 | Jack Turner | Mark DiVincenzo, Esq. | Karin Rivard, Esq.; Alice Gast; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 413. | 04/20/05 | Mark DiVincenzo, Esq. | Jack Turner | Karin Rivard, Esq.; Alice Gast; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 3 |
| 414. | 04/21/05 | Jack Turner | Mark DiVincenzo, Esq. | Karin Rivard, Esq.; Alice Gast; Lita Nelsen | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 415. | 04/25/05 | Mark DiVincenzo, Esq. | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 3 |
| 416. | 04/25/05 | Richelle Nessralla, Esq. | Karin Rivard, Esq. | Mark DiVincenzo, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 2 |

Page 67 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 417. | 04/26/05 | Jack Turner | Karin Rivard, Esq. | Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 1 |
| 418. | 04/26/05 | Karin Rivard, Esq. | Steven M. Bauer, Esq. | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 419. | 04/26/05 | Karin Rivard, Esq. | Richelle Nessralla, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 2 |
| 420. | 04/26/05 | Karin Rivard, Esq. | Jack Turner | | Email re: Harman's lawsuit against MIT provision of legal advice in the course of current litigation | AC/WP | 2 |
| 421. | 04/26/05 | Richelle Nessralla, Esq. | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 2 |
| 422. | 04/26/05 | Richelle Nessralla, Esq. | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 2 |
| 423. | 04/26/05 | Richelle Nessralla, Esq. | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 68 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 424. | 04/26/05 | Steven M. Bauer, Esq. | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 2 |
| 425. | 04/26/05 | Steven M. Bauer, Esq. | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 3 |
| 426. | 04/27/05 | Jack Turner | Steven M. Bauer, Esq. | Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 427. | 04/27/05 | Steven M. Bauer, Esq. | Jack Turner | Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of for legal advice in the course of current litigation | AC/WP | 4 |
| 428. | 04/27/05 | Steven M. Bauer, Esq. | Jack Turner | Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 4 |
| 429. | 04/29/05 | Steven M. Bauer, Esq. | Jack Turner; Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 430. | 04/29/05 | Karin Rivard, Esq. | Jack Turner | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 69 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 431. | 04/29/05 | Karin Rivard, Esq. | Magdalen Christian | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 1 |
| 432. | 04/29/05 | Jack Turner | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 433. | 04/29/05 | Karin Rivard, Esq. | Steven M. Bauer, Esq.; Mark DiVincenzo, Esq. | Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 1 |
| 434. | 04/29/05 | Steven M. Bauer, Esq. | Karin Rivard, Esq.; Mark DiVincenzo, Esq. | Jack Turner | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 2 |
| 435. | 04/29/05 | Mark DiVincenzo, Esq. | Steven M. Bauer, Esq.; Karin Rivard, Esq. | Jack Turner | Email re: Harman's lawsuit against MIT reflecting provision legal advice and strategy in the course of current litigation | AC/WP | 2 |
| 436. | 04/29/05 | Karin Rivard, Esq. | Mark DiVincenzo, Esq. | Steven M. Bauer, Esq.; Jack Turner | Email re: Harman's lawsuit against MIT reflecting request for legal advice and strategy in the course of current litigation | AC/WP | 3 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 437. | 04/29/05 | Mark DiVincenzo, Esq. | Karin Rivard, Esq. | Steven M. Bauer, Esq.; Jack Turner | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 3 |
| 438. | 04/29/05 | Karin Rivard, Esq. | Mark DiVincenzo, Esq. | Steven M. Bauer, Esq.; Jack Turner | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 3 |
| 439. | 05/03/05 | Jack Turner | Steven M. Bauer, Esq. | Christopher M. Schmandt; Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 1 |
| 440. | 05/04/05 | Steven M. Bauer, Esq. | Christopher M. Schmandt; Robert Swartz | Jack Turner Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 2 |
| 441. | 05/10/05 | Steven M. Bauer, Esq. | Jack Turner; Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 2 |
| 442. | 05/11/05 | Karin Rivard, Esq. | Steven M. Bauer, Esq. | Jack Turner | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 2 |

Page 71 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 443. | 05/11/05 | Jack Turner | Kimberly A. Mottley, Esq. | Steven M. Bauer, Esq.; Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 2 |
| 444. | 05/11/05 | Jack Turner | Kimberly A. Mottley, Esq. | Steven M. Bauer, Esq.; Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 2 |
| 445. | 05/11/05 | Kimberly A. Mottley, Esq. | Jack Turner | Steven M. Bauer, Esq.; Karin Rivard, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 2 |
| 446. | 05/12/05 | Karin Rivard, Esq. | Kimberly A. Mottley, Esq. | Jack Turner; Steven M. Bauer, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice and strategy in the course of current litigation | AC/WP | 3 |
| 447. | 05/12/05 | Kimberly A. Mottley, Esq. | Karin Rivard, Esq. | Jack Turner; Steven M. Bauer, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 3 |
| 448. | 05/12/05 | Karin Rivard, Esq. | Kimberly A. Mottley, Esq. | Jack Turner; Steven M. Bauer, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 3 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 72 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 449. | 05/12/05 | Karin Rivard, Esq. | Mark DiVincenzo, Esq. | | Email re: Harman's lawsuit against MIT reflecting request for legal advice and strategy in the course of current litigation | AC/WP | 4 |
| 450. | 05/12/05 | Karin Rivard, Esq. | Kimberly A. Mottley, Esq. | Jack Turner; Steven M. Bauer, Esq.; Mark DiVincenzo, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice and strategy in the course of current litigation | AC/WP | 1 |
| 451. | 05/12/05 | Kimberly A. Mottley, Esq. | Karin Rivard, Esq.; Jack Turner; Mark DiVincenzo, Esq. | Steven M. Bauer, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 2 |
| 452. | 05/12/05 | Karin Rivard, Esq. | Kimberly A. Mottley, Esq. | Jack Turner; Mark DiVincenzo, Esq.; Steven M. Bauer, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 3 |
| 453. | 05/12/05 | Karin Rivard, Esq. | Kimberly A. Mottley, Esq. | Jack Turner; Mark DiVincenzo, Esq.; Steven M. Bauer, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice and strategy in the course of current litigation | AC/WP | 2 |
| 454. | 05/12/05 | Karin Rivard, Esq. | Mark DiVincenzo, Esq. | | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 1 |

Page 73 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 455. | 05/12/05 | Jack Turner | Karin Rivard, Esq.; Kimberly A. Mottley, Esq. | Mark DiVincenzo, Esq.; Steven M. Bauer, Esq. | Email re: Harman's lawsuit against MIT reflecting request for legal advice in the course of current litigation | AC/WP | 3 |
| 456. | 05/12/05 | Kimberly A. Mottley, Esq. | Jack Turner; Karin Rivard, Esq. | Mark DiVincenzo, Esq.; Steven M. Bauer, Esq. | Email re: Harman's lawsuit against MIT reflecting provision of legal advice and strategy in the course of current litigation | AC/WP | 4 |
| 457. | 05/12/05 | Kimberly A. Mottley, Esq. | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 3 |
| 458. | 05/12/05 | Karin Rivard, Esq. | Richelle Nessralla, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 1 |
| 459. | 05/12/05 | Karin Rivard, Esq. | Kimberly A. Mottley, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 1 |
| 460. | 05/12/05 | Kimberly A. Mottley, Esq. | Karin Rivard, Esq. | | Email re: Harman's lawsuit against MIT reflecting provision of legal advice in the course of current litigation | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 461. | 12/11/95 | Robert Greene | Nicholas Negroponte | Neil Gershenfeld; Joe Paradiso; Robert Bloomberg; Lauren Gallant; Jack Turner; Robert Greene | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 462. | | Robert Swartz | | | Document internal to MIT personnel prepared in anticipation of litigation prepared in the context of license negotiations | WP | 15 |
| 463. | | Robert Swartz | | | Document with handwritten notations prepared in anticipation of litigation in the context of license negotiations | WP | 23 |
| 464. | | Robert Swartz | | | Document with handwritten notations prepared in anticipation of litigation in the context of license negotiations | WP | 25 |
| 465. | | Robert Swartz | | | Handwritten document prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 466. | | Charles Call, Esq. | | | Chart reflecting legal advice and strategy in anticipation of litigation | AC/WP | 2 |
| 467. | | | | | Produced in its entirety as Bates nos. MIT 06659-06660 | | |
| 468. | | Robert Swartz | Bruce Bullock | | Document internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 469. | 2/14/92 | Irene Abrams | John Hynes | | Internal MIT memorandum reflecting communication with MIT counsel re: patent prosecution | AC | 1 |
| 470. | 5/18/92 | Alla Skorokhod | Carl Accardo | Donna Baranski-Walker | Letter internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 471. | 11/14/01 | Robert Swartz | | | Document internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 11 |
| 472. | 10/5/04 | Charles Call, Esq. | Robert Swartz | | Email requesting information for purpose of rendering legal advice re: license negotiations in anticipation of litigation | AC/WP | 1 |
| 473. | 10/5/04 | Charles Call, Esq. | Robert Swartz | | Email requesting information for rendering legal advice re: license negotiations in anticipation of litigation | AC/WP | 1 |
| 474. | 10/5/04 | Charles Call, Esq. | Robert Swartz | | Email requesting information for rendering legal advice re: license negotiations in anticipation of litigation | AC/WP | 7 |
| 475. | 10/5/04 | Charles Call, Esq. | Robert Swartz | | Email reflecting legal advice re: license negotiations in anticipation of litigation | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 476. | 10/6/04 | Charles Call, Esq. | Robert Swartz | Christopher M. Schmandt | Email reflecting legal advice re: license negotiations in anticipation of litigation | AC/WP | 1 |
| 477. | 10/6/04 | Charles Call, Esq. | Robert Swartz | Christopher M. Schmandt | Email reflecting legal advice re: license negotiations in anticipation of litigation | AC/WP | 1 |
| 478. | 10/6/04 | Charles Call, Esq. | Christopher M. Schmandt | Robert Swartz | Email requesting information for purpose of rendering legal advice in anticipation of litigation | AC/WP | 1 |
| 479. | 10/16/04 | Charles Call, Esq. | Robert Swartz; Christopher M. Schmandt | | Email rendering legal advice in context of license negotiations in anticipation of litigation | AC/WP | 19 |
| 480. | 10/19/04 | Charles Call, Esq. | Christopher M. Schmandt; Robert Swartz | | Email requesting information for purpose of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 481. | 10/19/04 | Charles Call, Esq. | Christopher M. Schmandt | Robert Swartz | Email rendering legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 482. | 10/21/04 | Charles Call, Esq. | Robert Swartz | Christopher M. Schmandt | Email rendering legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 77 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 483. | 10/28/04 | Charles Call, Esq. | Robert Swartz | | Email rendering legal advice in context of licensing negotiations in anticipation of litigation Produced in redacted form as Bates No. MIT 04851 | AC/WP | 1 |
| 484. | 11/5/04 | Charles Call, Esq. | Robert M. McClure | Robert Swartz | Email rendering legal advice in context of licensing negotiations in anticipaton of litigation | AC/WP | 1 |
| 485. | 11/11/04 | Charles Call, Esq. | Robert M. McClure | Robert Swartz | Email rendering legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 486. | | Charles Call, Esq. | | | Draft letter reflecting legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 13 |
| 487. | 11/15/04 | Charles Call, Esq. | Robert Swartz | | Email requesting information for purpose of rendering legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 2 |
| 488. | | Charles Call, Esq. | | | Draft letter reflecting legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 25 |
| 489. | 11/5/04 | Charles Call, Esq. | Robert M. McClure | Robert Swartz; Charles Call, Esq. | Email rendering legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 78 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 490. | 11/8/04 | Robert M. McClure | Charles Call, Esq., Robert Swartz | | Email referring to legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 491. | 11/12/04 | Robert M. McClure | Charles Call, Esq. | Robert Swartz | Email referring to legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 3 |
| 492. | | Charles Call, Esq. | | | Draft letter to client reflecting legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 25 |
| 493. | | Robert Swartz | | | Document reflecting strategy prepared in anticipation of litigation internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 6 |
| 494. | 10/5/04 | Robert Swartz | Charles Call, Esq. | | Email providing information for purpose of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 495. | 10/5/04 | Robert Swartz | Charles Call, Esq. | | Email reflecting request for legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |

Page 79 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 496. | 10/9/04 | Robert Swartz | Charles Call, Esq. | Christopher M. Schmandt | Email referring to request for information for purpose of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 497. | 10/9/04 | Robert Swartz | Charles Call, Esq. | | Email referring to request for information for purpose of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 498. | 10/16/04 | Robert Swartz | Charles Call, Esq. | Christopher M. Schmandt | Email referring to request for information for purpose of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 4 |
| 499. | 10/20/04 | Robert Swartz | Charles Call, Esq. | | Email referring to request for information for purpose of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 2 |
| 500. | 11/15/04 | Robert Swartz | Charles Call, Esq. | | Email referring to legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 2 |
| 501. | 11/11/04 | Robert Swartz | Charles Call, Esq. | | Email referring to legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 502. | 10/5/04 | Robert Swartz | Charles Call, Esq. | | Email responding to request for information for purposes of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 503. | 11/16/04 | Robert Swartz | Charles Call, Esq. | | Email requesting legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 504. | 10/5/04 | Robert Swartz | Charles Call, Esq. | | Email requesting legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 2 |
| 505. | 10/5/04 | Robert Swartz | Charles Call, Esq. | | Email providing information for purposes of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 506. | 10/5/04 | Robert Swartz | Charles Call, Esq. | | Email responding to request for information for purposes of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 507. | 10/6/04 | Robert Swartz | Charles Call, Esq. | | Email providing information for purposes of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |

Page 81 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 508. | 11/4/04 | Robert Swartz | Charles Call, Esq. | Robert M. McClure | Email providing information for purposes of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 509. | 11/12/04 | Robert Swartz | Charles Call, Esq. | | Email responding to legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 510. | 7/9/04 | Robert Swartz | Joseph Grear, Esq.; Keith Vogt, Esq. | | Email providing information for purposes of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 511. | 7/9/04 | Robert Swartz | Joseph Grear, Esq.; Keith Vogt, Esq. | | Email providing information for purposes of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 512. | 9/19/03 | Robert Swartz | Keith Vogt, Esq. | | Email responding to request for information for purposes of obtaining legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 513. | 1/6/04 | Robert Swartz | Keith Vogt, Esq. | | Chart requesting legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 514. | 3/2/04 | Robert Swartz | Keith Vogt, Esq. | | Email requesting legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 82 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 515. | 10/5/04 | Robert Swartz | Charles Call, Esq. | | Email requesting legal advice in context of licensing negotiations in anticipation of litigation | AC/WP | 1 |
| 516. | | Robert Swartz | | | Draft correspondence reflecting provision of legal advice prepared in anticipation of litigation re: license negotiations | WP | 3 |
| 517. | | Robert Swartz | | | Handwritten document prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 518. | | Robert Swartz | | | Handwritten document prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 519. | | Robert Swartz | | | Handwritten document prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 520. | | Robert Swartz | | | Handwritten document prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 521. | | Robert Swartz | | | Document with handwritten notations prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 522. | | Robert Swartz | | | Email internal to MIT personnel with handwritten notations prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 83 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 523. | | Robert Swartz | | | Handwritten notes reflecting provision of legal advice re: licensing negotiations prepared in anticipation of litigation | WP | 2 |
| 524. | | Robert Swartz | | | Handwritten notations providing information for the purpose obtaining legal advice in the context of license negotiations; Produced in redacted form as Bates No. MIT 04092 – MIT 04179 | AC | 6 |
| 525. | 3/24/93 | John T. Preston | Dr. James R. Davis; Christopher M. Schmandt; John Hynes | | MIT internal communications reflecting communication with MIT counsel re: patent prosecution; Produced as Bates Nos. MIT 04073 – MIT 04082 | AC | 3 |
| 526. | 3/15/93 | Sam Pasternack, Esq. | John T. Preston | | Attorney-client communication with handwritten notes reflecting provision of legal advice re: patent prosecution; Produced in redacted form as Bates No. MIT 04083 | AC | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 527. | | Robert Swartz | | | Handwritten notations providing information for the purpose obtaining legal advice, in the context of license negotiations Produced in redacted form as Bates Nos. MIT 02422 – MIT 02436 | AC | 2 |
| 528. | | Robert Swartz | | | Handwritten notes reflecting provision of legal advice in anticipation of litigation, in the context of license negotiations; Produced in redacted form as Bates Nos. MIT 02420 – MIT 02421 | WP | 2 |
| 529. | | Robert Swartz | | | Handwritten notes reflecting provision of legal advice in anticipation of litigation in the context of license negotiations; Produced in redacted form as Bates No. MIT 02419 | WP | 1 |
| 530. | | Robert Swartz | | | Handwritten notes reflecting provision of legal advice in anticipation of litigation in the context of license negotiations; Produced in redacted form as Bates Nos. MIT 02408 – MIT 02418 | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 85 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 531. | | | | | Removed from Log | | |
| 532. | | | | | Removed from Log | | |
| 533. | | | | | Formerly produced in redacted form as Bates Nos. MIT 01674 – MIT 01706; produced in its entirety as Bates nos. MIT 06668-06700 | | |
| 534. | | | | | Formerly produced in redacted form as Bates Nos. MIT 01715 - 01748; Produced in its entirety as Bates nos. MIT 06701-06734 | | |
| 535. | | Karin Rivard, Esq. | | | Attorney draft agreement containing handwritten notes; Produced in redacted form as Bates Nos. MIT 01288 – MIT 01293 | AC/WP | 3 |
| 536. | | MIT personnel | Robert Schwartz | | Document drafted at the direction of counsel containing confidential non-responsive information; Produced in redacted form as Bates nos. MIT 01391-01397 (remainder of documents previously logged as Entry No. 536 now logged as Entry Nos. 800-802). | Non-responsive | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 537. | | Jack Turner | Karin Rivard, Esq., Steven M. Bauer, Esq. | Lita Nelsen | E-mail containing non-responsive attorney-client communication sent in anticipation of litigation Produced in redacted form as Bates Nos. MIT 00141 – MIT 00144 | AC/WP/ | 1 |
| 538. | | John Pint, Esq. | | | Document with handwritten notes reflecting legal advice in anticipation of litigation Produced in redacted form as Bates Nos. MIT 02113 – MIT 02117 | AC/WP | 5 |
| 539. | | MIT Personnel | | | Handwritten notes requesting legal advice in anticipation of litigation Produced in redacted form as Bates No. MIT 01301 | WP | 1 |
| 540. | | David Geist | | | Handwritten notations providing information for the purpose of obtaining legal advice, prepared in the context of license; Produced in redacted form as Bates Nos. MIT 01168 – MIT 01169 | WP | 1 |
| 541. | 3/2/04 | Keith Vogt, Esq. | Robert Swartz | | Email reflecting legal advice regarding license negotiations prepared in anticipation of litigation Produced in redacted form as Bates No. MIT 05568 | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 87 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 542. | 2/26/05 | Robert Swartz | Thomas Sadler; Charles Call, Esq.; Christopher Schmandt; Walter Bender | | Email containing a confidential communication providing information for purpose of obtaining legal advice re: license negotiations prepared in anticipation of litigation Produced in redacted form as Bates No. MIT 05578 – MIT 05579 | AC/WP | 1 |
| 543. | 11/30/04 | John H. Turner, Jr. | Robert Swartz | Karin Rivard, Esq. | Email reflecting legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 544. | 3/30/04 | John H. Turner, Jr. | Robert Swartz | Walter Bender; Robert D. Fadel | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 545. | 2/11/04 | Keith Vogt, Esq. | Chris Schmandt | Robert Swartz; Joseph A. Grear, Esq.; mmstadlaw@aol.com | Email reflecting legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 546. | 2/11/04 | Keith Vogt, Esq. | Chris Schmandt | Joseph A. Grear, Esq.; mmstadlaw@aol.com; Robert Swartz | Email requesting information for purpose of rendering legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 547. | 2/11/04 | Keith Vogt, Esq. | Robert Swartz | | Email of attorney-client correspondence reflecting legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 88 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 548. | 9/16/03 | Keith Vogt, Esq. | Robert Swartz | Joseph A. Grear, Esq. | Email requesting information for purpose of rendering legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 549. | 3/11/05 | Chris Schmandt | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 550. | 3/11/05 | Robert Swartz | Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 551. | 3/11/05 | Robert Swartz | Thomas Sadtler; John H. Turner, Jr. | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 552. | 3/11/05 | Robert Swartz | John H. Turner, Jr. | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 553. | 3/10/05 | Robert Swartz | Thomas Sadtler; John H. Turner, Jr. | | Email internal to MIT personnel concerning license negotiations prepared in anticipation of litigation | WP | 1 |
| 554. | 3/9/05 | Tom Sadtler | David Martin; Robert Swartz; Walter R. Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 555. | 3/8/05 | David Martin | Walter Bender; Robert Swartz; Deborah Widener; Barry L. Vercoe; Deb K. Roy; Tod Machover; Cynthia J. Wilkes; Ryan Chin; Henry A. Lieberman; Rosalind W. Picard | Tom Sadtler; Felice Gardner; Tamara Hearn; Jacqueline Karaaslanian; Lisa Sanchetta; Lynne Lenker | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 556. | 3/8/05 | Tom Sadtler | David Martin | Bob Swartz; Walter R. Bender; Robert Fadel | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 557. | 2/28/05 | Tom Sadtler | Robert Swartz | Charles Call, Esq.; Walter R. Bender | Email requesting legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 558. | 1/18/05 | Robert Swartz | Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 559. | 1/18/05 | Chris Schmandt | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 560. | 11/14/04 | Chris Schmandt | Robert Swartz | Charles Call, Esq. | Email requesting legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 561. | 11/13/04 | Chris Schmandt | Robert Swartz | Charles Call, Esq. | Email containing a confidential communication responding to legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 562. | 10/19/04 | Robert Swartz | Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 563. | 10/16/04 | Chris Schmandt | Charles Call, Esq.; Robert Swartz | | Email providing information for purposes of obtaining legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 564. | 10/12/04 | Robert Swartz | Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 565. | 10/9/04 | Robert Swartz | Charles Call, Esq. | Chris Schmandt | Email responding to legal advice concerning license negotiations prepared in anticipation of litigation | AC/WP | 1 |
| 566. | 9/19/04 | Robert Swartz | Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 567. | 8/23/04 | Robert Swartz | Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 568. | 8/23/04 | Robert Swartz | Walter Bender; Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 569. | | | | | Removed from Log | | |
| 570. | 7/28/04 | Chris Schmandt | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 571. | 7/23/04 | Robert Swartz | Walter Bender; Chris Schmandt | | Email internal to MIT personnel concerning license negotiations prepared in anticipation of litigation | WP | 2 |
| 572. | 7/13/04 | Robert Swartz | Chris Schmandt | | Email internal to MIT personnel concerning license negotiations prepared in anticipation of litigation | WP | 1 |
| 573. | 7/9/04 | Robert Swartz | John H. Turner, Jr. | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 574. | 6/24/04 | Robert Swartz | Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 92 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 575. | 5/20/04 | Robert Swartz | Walter Bender; Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 576. | 3/31/04 | Robert Swartz | John H. Turner, Jr. | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 577. | 3/30/04 | Robert Swartz | John H. Turner, Jr. | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 578. | 3/26/04 | Robert Swartz | Walter Bender; Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 579. | 3/11/04 | Robert Swartz | John H. Turner, Jr. | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 580. | 3/11/04 | John H. Turner, Jr. | Robert Swartz | Ann M. Chinchilla | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 581. | 3/11/04 | Robert Swartz | John H. Turner, Jr. | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 93 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 582. | 2/19/04 | Neil Gershenfeld | John H. Turner, Jr. | Robert Swartz; Ann Marie Flaherty; Walter Bender | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 583. | 2/19/04 | Robert Swartz | Walter Bender; Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 584. | 2/19/04 | John H. Turner, Jr. | Robert Swartz | Ann Marie Flaherty; Neil A. Gershenfeld; Walter Bender | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 585. | 2/19/04 | Robert Swartz | John H. Turner, Jr. | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 586. | 2/12/04 | Robert Swartz | Chris Schmandt; Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 587. | 2/12/04 | Chris Schmandt | Robert Swartz; Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 588. | | | | | Removed from Log | | |
| 589. | 1/6/04 | Robert Swartz | Walter Bender; Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 94 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 590. | 12/21/03 | Robert Swartz | Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 591. | | | | | Produced in its entirety as Bates nos. MIT 06661-06663 | | |
| 592. | 12/15/03 | Chris Schmandt | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 593. | 12/15/03 | Chris Schmandt | Robert Swartz | Deb Cohen; Teresa Kratman; Walter Bender | Email prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 594. | 12/15/03 | Teresa Kratman | Robert Swartz | Deb Cohen; Chris Schmandt; Walter Bender | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 595. | 12/15/03 | Robert Swartz | Teresa Kratman | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 596. | 12/15/03 | Teresa Kratman | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 597. | | | | | Produced in its entirety as Bates nos. MIT 06664-06665 | | |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 598. | 12/15/03 | Robert Swartz | Walter Bender | Deb Cohen; Teresa Kratman; Chris Schmandt; | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 599. | 12/13/03 | Walter Bender | Teresa Kratman; Deb Cohen; Robert Swartz; | Chris Schmandt | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 600. | 12/13/03 | Chris Schmandt | Walter Bender | Deb Cohen; Robert Swartz; Teresa Kratman | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 601. | | | | | Produced in its entirety as Bates no. MIT 06666 | | |
| 602. | | | | | Produced in its entirety as Bates no. MIT 06667 | | |
| 603. | 8/22/03 | Robert Swartz | Walter Bender; Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 604. | 7/24/03 | Robert Swartz | Walter Bender; Chris Schmandt | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 605. | 5/7/03 | Chris Schmandt | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 606. | 2/28/03 | Chris Schmandt | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 607. | 2/28/03 | Walter Bender | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 608. | 2/11/03 | Robert Swartz | Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 609. | 2/11/03 | Walter Bender | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 610. | 2/11/03 | Robert Swartz | Walter Bender | | Email, letter draft document internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 611. | 9/17/01 | Robert Swartz | Bruce Bullock | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 612. | 9/11/01 | Bruce Bullock | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 97 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 613. | 9/10/01 | Robert Swartz | Bruce Bullock | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 614. | 9/7/01 | Robert Swartz | Bruce Bullock | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 615. | 9/7/01 | Bruce Bullock | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 616. | 9/6/01 | Robert Swartz | Bruce Bullock | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 617. | 4/4/00 | Rick Cahaly | John H. Turner, Jr. | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 618. | 12/17/99 | Andrea Barry | John H. Turner, Jr. | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 619. | 12/15/99 | John H. Turner, Jr. | tlofile@mit.edu; Andrew Barry | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 6 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 98 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 620. | 7/26/99 | Bruce Bullock | John H. Turner, Jr. | tlofile@mit.edu; Carolyn Beaty | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 621. | 7/26/99 | John H. Turner, Jr. | Bruce Bullock | tlofile@mit.edu; Carolyn Beaty | Email internal to MIT personnel prepared in anticipation of litigation re: license negotiations | WP | 1 |
| 622. | | Samuel Pasternack, Esq. | | | Handwritten notations containing a confidential communication reflecting provision of legal advice concerning patent prosecution; produced in redacted form as Bates No. MIT 05719 | AC/WP | 1 |
| 623. | 11/22/96 | Samuel Pasternack, Esq. | David Geist | | Letter containing a confidential communication reflecting provision of legal advice reflecting request for legal advice concerning license negotiations; produced in redacted form as Bates Nos. MIT 05746-5748 | AC/WP | 1 |
| 624. | 06/27/96 | David Geist | Samuel Pasternack, Esq. | | Letter containing a confidential communication reflecting request for legal advice in the context of license negotiations; produced in redacted form as Bates Nos. MIT 05749-05751 | AC/WP | 1 |
| 625. | 11/22/96 | Samuel Pasternack, Esq. | David Geist | | Letter with handwritten notations containing a confidential | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | communication reflecting request for legal advice in the context of license negotiations; produced in redacted form as Bates Nos. MIT 05746-5748 | | |
| 626. | 03/07/96 | Samuel Pasternack, Esq. | John H. Turner, Jr. | | Letter with handwritten notations containing a confidential communication reflecting provision of legal advice re: license negotiations; produced in redacted form as Bates Nos. MIT 06011-06014 | AC/WP | 1 |
| 627. | 04/05/96 | David Geist | Samuel Pasternack, Esq. | | Letter containing a confidential communication reflecting provision of legal advice in the context of license negotiations; produced in redacted form as Bates Nos. MIT 06032-06034 | AC/WP | 1 |
| 628. | 04/12/96 | David Geist | Samuel Pasternack, Esq. | | Letter providing information for the purpose of obtaining legal advice in the context of license negotiations; produced in redacted form as Bates Nos. MIT 06035-06047 | AC/WP | 1 |
| 629. | 04/27/92 | John Hynes | Samuel Pasternack, Esq. | | Letter containing a confidential communication reflecting | AC | 11 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | request for legal advice in the course of prosecution of patent | | |
| 630. | 04/27/92 | Diane Gaylor | Brian Ogonowsky, Esq. | | Letter containing a confidential communication reflecting provision of legal advice regarding patent prosecution; produced in redacted form as Bates Nos. MIT 06109-06119 | AC | 1 |
| 631. | | Samuel Pasternack, Esq. | | | Document with attorney handwritten notations containing a confidential communication reflecting provision of legal advice; produced in redacted form as Bates Nos. MIT 06123-06125 | AC | |
| 632. | | Samuel Pasternack, Esq. | | | Agreement with attorney handwritten notations regarding license negotiations prepared in anticipation of litigation; produced in redacted form as Bates Nos. MIT 06125-06130 | AC/WP | 1 |
| 633. | 07/08/92 | Samuel Pasternack, Esq. | Jean Weidemier, Esq. | Philip Rittmueller Brian Ogonowsky, Esq. | Attorney-client correspondence reflecting provision of legal advice regarding patent prosecution; produced in redacted form as Bates Nos. 06156-06157 | AC | 1 |
| 634. | | David Geist | Samuel Pasternack, Esq. | | Letter with handwritten | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | notations containing a confidential communication reflecting request for legal advice in the context of license negotiations; produced in redacted form as Bates Nos. MIT 06158-06159 | | |
| 635. | 03/05/96 | David Geist | Samuel Pasternack, Esq. | | Attorney-client communications re: license negotiations reflecting request for legal advice in the context of license negotiations; produced in redacted form as Bates Nos. MIT 06160-06162 | AC/WP | 1 |
| 636. | | Diane Gaylor | Judy Filamond | | Document with attorney handwritten notations rendering legal advice in the course of prosecution of patent | AC | 1 |
| 637. | | Samuel Pasternack, Esq. | | | Draft document containing a confidential communication reflecting provision of legal advice in the course of prosecution of patent | AC | 14 |
| 638. | | Samuel Pasternack, Esq. | | | Draft document containing a confidential communication reflecting provision of legal advice in the course of prosecution of patent | AC | 14 |
| 639. | | Samuel Pasternack, Esq. | | | Draft document with attorney handwritten | AC | 15 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 102 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | notations containing a confidential communication reflecting provision of legal advice in the course of prosecution of patent | | |
| 640. | | Samuel Pasternack, Esq. | | | Handwritten document with attorney handwritten notations containing a confidential communication re: license negotiations | WP/AC | 1 |
| 641. | | Samuel Pasternack, Esq. | | | Handwritten document with attorney handwritten notations containing a confidential communication reflecting provision of legal advice in the course of prosecution of patent | AC | 1 |
| 642. | 06/90 | James Davis | Samuel Pasternack, Esq. | | Fax with handwritten notations containing a confidential communication and reflecting a request for legal advice in the course of prosecution of patent | AC | 3 |
| 643. | 10/25/90 | Jennifer Ramsay for Diane Gaylor | John Preston | | Attorney-client communications rendering legal advice in the course of prosecution of patent | AC | 1 |
| 644. | 06/10/91 | Jean Weidemier, Esq. | Diane Gaylor | John Preston Philip Rittmueller | Attorney-client communication rendering legal advice in the course of prosecution of patent | AC | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 645. | 03/20/92 | Samuel Pasternack, Esq. | | | Attorney-client communications with attorney handwritten notations reflecting request for legal advice re: license negotiations prepared in anticipation of litigation in the course of prosecution of patent | AC/WP | 1 |
| 646. | 03/22/92 | Samuel Pasternack, Esq. | | | Attorney-client communications with attorney handwritten notations reflecting request for legal advice in the course of prosecution of patent | AC | 2 |
| 647. | 04/27/92 | Brian Ogonowsky, Esq. | Diane Gaylor | Philip Rittmueller | Attorney-client communications reflecting provision of legal advice and responding to previous attorney-client communications concerning patent prosecution | AC | 1 |
| 648. | 04/27/92 | Diane Gaylor | Keith (Last name unknown) | | Communication by agent of MIT requesting information for the purpose of rendering legal advice in the course of prosecution of patent | AC | 3 |
| 649. | 08/12/92 | Diane Gaylor | | | Document referring to a confidential communication rendering legal advice in the course of prosecution of patent | AC | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 104 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 650. | 03/07/96 | Samuel Pasternack, Esq. | John H. Turner, Jr. | | Attorney-client communications reflecting provision of legal advice re: license negotiations | AC/WP | 4 |
| 651. | | Samuel Pasternack, Esq. | | | Patent with attorney handwritten notations reflecting provision of legal advice re: time billed | AC | 22 |
| 652. | | Samuel Pasternack, Esq. | | | Draft patent claims with attorney handwritten notations in the course of prosecution of patent | AC | 8 |
| 653. | | Samuel Pasternack, Esq. | | | Draft patent claims with attorney handwritten notations in the course of prosecution of patent | AC | 53 |
| 654. | | Samuel Pasternack, Esq. | | | Draft patent claims with attorney handwritten notations in the course of prosecution of patent | AC | 53 |
| 655. | | Samuel Pasternack, Esq. | | | Draft document created in the course of providing legal advice re: patent prosecution | AC | 2 |
| 656. | | Samuel Pasternack, Esq. | | | Draft document created in the course of providing legal advice re: patent prosecution | AC/WP | 5 |
| 657. | | Samuel Pasternack, Esq. | | | Draft document with attorney handwritten notations created in the course of providing legal advice re: patent prosecution | AC/WP | |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 105 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 658. | | James Davis | Samuel Pasternack, Esq. | | Draft document providing information for the purpose of obtaining legal advice re: patent prosecution | AC/WP | |
| 659. | | Samuel Pasternack, Esq. | | | Draft document with attorney handwritten notations created in the course of providing legal advice re: patent prosecution | AC/WP | 130 |
| 660. | | Samuel Pasternack, Esq. | | | Draft document created in the course of providing legal advice re: patent prosecution | AC/WP | 3 |
| 661. | 06/21/90 | James Davis | Samuel Pasternack, Esq. | | Draft document created in the course of providing legal advice re: patent prosecution | AC/WP | 18 |
| 662. | 06/21/90 | MIT | Samuel Pasternack, Esq. | | Attorney-client communications reflecting provision of legal advice in the course of patent prosecution produced in redacted form as MIT 05654-05655 | AC | 2 |
| 663. | 10/02/91 | Jean Weidemier, Esq. | Samuel Pasternack, Esq. | Penny Blaisdell Diane Gaylor Robert Greene John Hynes John Preston Philip Rittmueller | Attorney-client communications reflection provision of legal advice concerning patent prosecution | AC | 2 |
| 664. | 10/06/04 | MIT Personnel | Charles Call, Esq. | | Attorney-client communications reflecting provision of legal advice re: license | AC/WP | 7 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | negotiations prepared in anticipation of litigation; Produced in redacted form as Bates nos. MIT 06541-06547 | | |
| 665. | 10/05/04 | Robert Swartz | Charles Call, Esq. | | Attorney-client communications reflecting provision of legal advice re: license negotiations prepared in anticipation of litigation; Produced in redacted form as Bates no. MIT 06548 | AC/WP | 1 |
| 666. | 10/28/04 | Charles Call, Esq. | Robert Swartz | | Attorney-client communications reflecting provision of legal advice re: license negotiations prepared in anticipation of litigation; Produced in redacted form as Bates no. MIT 06549 | AC/WP | 1 |
| 667. | 02/26/05 | Robert Swartz | Thomas Sadtler Charles Call, Esq. Christopher M. Schmandt Walter Bender | | Attorney-client communications reflecting provision of legal advice re: license negotiations prepared in anticipation of litigation; Produced in redacted form as Bates nos. MIT 06550-06551 | AC/WP | 2 |
| 668. | 02/28/05 | Thomas Sadtler | Robert Swartz | Charles Call, Esq. Walter Bender | Attorney-client communications reflecting provision of legal advice re: license | AC/WP | 3 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | negotiations prepared in anticipation of litigation; Produced in redacted form as Bates nos. MIT 06552-06554 | | |
| 669. | 10/06/04 | MIT Personnel | Charles Call, Esq. | | Attorney-client communications requesting legal advice in the course of license negotiations; Produced in redacted form as Bates nos. MIT 06555-06567 | AC/WP | |
| 670. | 10/13/04 | MIT Personnel | Charles Call, Esq. | | Attorney-client communications requesting legal advice in the course of license negotiations; Produced in redacted form as Bates nos. MIT 06568-06571 | AC/WP | 4 |
| 671. | 01/20/05 | MIT Personnel | Charles Call, Esq. | | Attorney-client communications requesting provision of legal advice in course of license negotiations | AC/WP | 10 |
| 672. | | Charles Call, Esq. | | | Document with attorney handwritten notations reflecting provision of legal advice in course of license negotiations | WP | 165 |
| 673. | | Charles Call, Esq. | | | Draft document reflecting request for legal advice in course of patent prosecution | AC | 4 |
| 674. | 01/21/05 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | communications requesting provision of legal advice in the context of licensing negotiations | | |
| 675. | 11/16/04 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 676. | 11/15/04 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 3 |
| 677. | 11/15/04 | Charles Call, Esq. | Robert Swartz | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 2 |
| 678. | 11/15/04 | Charles Call, Esq. | Robert Swartz | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 679. | 11/15/04 | Charles Call, Esq. | Christopher M. Schmandt Robert Swartz | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 680. | 11/14/04 | Christopher M. Schmandt | Robert Swartz | Charles Call, Esq. | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 681. | 11/13/04 | Christopher M. Schmandt | Robert Swartz | Charles Call, Esq. | Email of attorney-client communications | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | requesting provision of legal advice in the context of licensing negotiations | | |
| 682. | 11/12/04 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 683. | 11/12/04 | Robert M. McClure | Charles Call, Esq. | Robert Swartz | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 4 |
| 684. | 11/11/04 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 685. | 11/11/04 | Robert M. McClure | Charles Call, Esq. | Robert Swartz | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 686. | 11/11/04 | Charles Call, Esq. | Robert M. McClure | Robert Swartz | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 687. | 11/11/04 | Charles Call, Esq. | Robert M. McClure | Robert Swartz | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 688. | 11/08/04 | Robert M. McClure | Charles Call, Esq. Robert Swartz | | Email of attorney-client communications requesting provision of | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | legal advice in the context of licensing negotiations | | |
| 689. | 11/05/04 | Robert M. McClure | Charles Call, Esq. | Robert Swartz | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 690. | 11/05/04 | Charles Call, Esq. | Robert M. McClure Charles Call, Esq. | Robert Swartz | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 691. | 11/05/04 | Charles Call, Esq. | Robert M. McClure Charles Call, Esq. | Robert Swartz | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 2 |
| 692. | 11/05/04 | Charles Call, Esq. | Robert M. McClure | Robert Swartz | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 2 |
| 693. | 11/04/04 | Robert Swartz | Charles Call, Esq. | Robert M. McClure | Email providing information for purpose of obtaining legal advice in the context of licensing negotiations | AC/WP | |
| 694. | 10/21/04 | Charles Call, Esq. | Robert Swartz | Christopher M. Schmandt | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 2 |
| 695. | 10/20/04 | Robert Swartz | Charles Call, Esq. | | Email referring to legal advice previously provided in the context of licensing negotiations | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 111 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 696. | 10/19/04 | Christopher M. Schmandt | Charles Call, Esq. Robert Swartz | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 697. | 10/19/04 | Christopher M. Schmandt | Charles Call, Esq. | Robert Swartz | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 698. | 10/19/04 | Charles Call, Esq. | Christopher M. Schmandt Robert Swartz | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 699. | 10/19/04 | Charles Call, Esq. | Christopher M. Schmandt | Robert Swartz | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 700. | 10/18/04 | Robert Swartz | Charles Call, Esq. Christopher M. Schmandt | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 701. | 10/16/04 | Robert Swartz | Charles Call, Esq. | Christopher M. Schmandt | Email of attorney-client communications providing information for purpose of obtaining legal advice in the context of licensing negotiations | AC/WP | 3 |
| 702. | 10/16/04 | Christopher M. Schmandt | Charles Call, Esq. Robert Swartz | | Email of attorney-client communications providing information for purpose of obtaining legal advice in the context of | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | licensing negotiations | | |
| 703. | 10/16/04 | Christopher M. Schmandt | Charles Call, Esq. Robert Swartz | | Email of attorney-client communications providing information for purpose of obtaining legal advice in the context of licensing negotiations | AC/WP | 1 |
| 704. | 10/16/04 | Charles Call, Esq. | Christopher M. Schmandt Robert Swartz | | Email of attorney-client communications reflecting provision of legal advice in the context of licensing negotiations | AC/WP | 3 |
| 705. | 10/09/04 | Robert Swartz | Charles Call, Esq. | Christopher M. Schmandt | Email of attorney-client communications reflecting provision of legal advice in the context of licensing negotiations | AC/WP | 2 |
| 706. | 10/09/04 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client communications providing information for purpose of obtaining legal advice in the context of license negotiations | AC/WP | 2 |
| 707. | 10/07/04 | Christopher M. Schmandt | Charles Call, Esq. | | Email of attorney-client communications providing information for purpose of obtaining legal advice in the context of license negotiations | AC/WP | 3 |
| 708. | 10/07/04 | Charles Call, Esq. | Christopher M. Schmandt | | Email of attorney-client communications reflecting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 709. | 10/06/04 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client communications | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 113 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | providing information for purpose of obtaining legal advice in the context of license negotiations | | |
| 710. | 10/06/04 | Christopher M. Schmandt | Charles Call, Esq. Robert Swartz | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 711. | 10/06/04 | Christopher M. Schmandt | Charles Call, Esq. | | Email of attorney-client communications made in preparation of confidential communication reflecting provision of legal advice in the context of license negotiations | AC/WP | 1 |
| 712. | 10/06/04 | Christopher M. Schmandt | Charles Call, Esq. | Robert Swartz | Email of attorney-client communications reflecting request for legal advice in the context of license negotiations | AC/WP | 1 |
| 713. | 10/06/04 | Christopher M. Schmandt | Charles Call, Esq. | | Email of attorney-client communications made in preparation of confidential communication reflecting provision of legal advice in the context of license negotiations | AC/WP | 1 |
| 714. | 10/06/04 | Charles Call, Esq. | Robert Swartz | Christopher M. Schmandt | Email of attorney-client communications reflecting provision of legal advice in the context of license negotiations | AC/WP | 1 |
| 715. | 10/06/04 | Charles Call, Esq. | Christopher M. Schmandt | | Email of attorney-client | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | communications reflecting provision of legal advice in the context of license negotiations | | |
| 716. | 10/06/04 | Charles Call, Esq. | Christopher M. Schmandt | Robert Swartz | Email of attorney-client communications requesting information for purpose of rendering legal advice in the context of license negotiations | AC/WP | 1 |
| 717. | 10/06/04 | Charles Call, Esq. | Christopher M. Schmandt | | Email of attorney-client communications requesting information for purpose of rendering legal advice in the context of license negotiations | AC/WP | 1 |
| 718. | 10/05/04 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client communications providing information for purpose of obtaining legal advice in the context of licensing negotiations | AC/WP | 1 |
| 719. | 10/05/04 | Charles Call, Esq. | Robert Swartz | | Email of attorney-client communications providing information for purpose of obtaining legal advice in the context of licensing negotiations | AC/WP | 1 |
| 720. | 10/05/04 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client communications providing information for purpose of obtaining legal advice in the context of licensing negotiations | AC/WP | 1 |
| 721. | 10/05/04 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client communications | AC/WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 115 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | providing information for purpose of obtaining legal advice in the context of licensing negotiations | | |
| 722. | 10/05/04 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client communications referring to legal advice previously provided in the context of licensing negotiations | AC/WP | 2 |
| 723. | 10/05/04 | Robert Swartz | Charles Call, Esq. | | Email of attorney-client communications requesting provision of legal advice in the context of licensing negotiations | AC/WP | 2 |
| 724. | 10/05/04 | Christopher M. Schmandt | Robert Swartz | Charles Call, Esq. | Email of attorney-client communications providing information for purpose of obtaining legal advice in the context of licensing negotiations | AC/WP | 1 |
| 725. | 10/05/04 | Charles Call, Esq. | Robert Swartz | | Email of attorney-client communications requesting information for purpose of obtaining legal advice in the context of licensing negotiations | AC/WP | 1 |
| 726. | 10/05/04 | Charles Call, Esq. | Robert Swartz | | Email of attorney-client communications requesting information for purpose of rendering legal advice in the context of licensing negotiations | AC/WP | 1 |
| 727. | 10/05/04 | Charles Call, Esq. | Robert Swartz | | Email of attorney-client communications requesting information for purpose of obtaining legal | AC/WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 116 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | advice in the context of licensing negotiations | | |
| 728. | 10/05/04 | Charles Call, Esq. | Robert Swartz | | Email of attorney-client communications rendering provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 729. | | Charles Call, Esq. | | | Draft document reflecting request for legal advice in the context of licensing negotiations | WP | 6 |
| 730. | | Charles Call, Esq. | | | Draft document reflecting provision of legal advice and attorney strategy and mental impressions in the context of licensing negotiations | WP | 10 |
| 731. | | Charles Call, Esq. | | | Draft document reflecting provision of legal advice and attorney strategy and mental impressions in the context of licensing negotiations | WP | 9 |
| 732. | | Charles Call, Esq. | | | Draft document reflecting provision of legal advice and attorney strategy and mental impressions in the context of licensing negotiations | WP | 9 |
| 733. | | Charles Call, Esq. | | | Memorandum reflecting provision of legal advice in the context of licensing negotiations | AC/WP | 1 |
| 734. | | Charles Call, Esq. | | | Document with handwritten annotations Attorney working copy of | WP | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| | | | | | Davis Thesis, reflecting request for legal advice in the context of licensing negotiations | | |
| 735. | | Charles Call, Esq. | | | Document with handwritten annotations reflecting request for legal advice in the context of licensing negotiations | WP | 83 |
| 736. | 6/90-12/96 | Samuel Pasternack, Esq. | | | Document containing attorney billing records reflecting work done during prosecution and license negotiations | AC/WP | 12 |
| 737. | 12/2/88 | Hidehiro Matsumoto | Jim Davis | Christopher Schmandt | Produced in its entirety as Bates Nos, MIT 04359-04361 | | 3 |
| 738. | 1/28/89 | Jim Davis | hovy@veneta.isi.edu | Jim Davis | Email communication not related to the patent in suit<br>Produced in redacted form as Bates Nos. MIT 04361-04362 | NR | 2 |
| 739. | 2/13/1989 | Jim Davis | chin@ceta.ics.hawaii.edu | | Email communication not related to the patent in suit<br>Produced in redacted form as Bates Nos. MIT 04362-04363 | NR | 2 |
| 740. | 2/13/89 | David Chin | Jim Davis | | Email communication not related to the patent in suit<br>Produced in redacted form as Bates No. MIT 04363 | NR | 1 |

Page 118 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 741. | 3/23/89 | Jim Davis | Christopher Schmandt | | Email communication not related to the patent in suit Produced in redacted form as Bates Nos. MIT 04363-04364 | NR | 2 |
| 742. | 5/17/89 | Barry Arons | Christopher Schmandt Jim Davis | | Produced in its entirety as Bates No. MIT 04365 | | 1 |
| 743. | 7/3/89 | Jim Davis | Christopher Schmandt | | Produced in its entirety as Bates Nos, MIT 04366-04367 | | 2 |
| 744. | 7/12/89 | Jim Davis | Christopher Schmandt | | Produced in its entirety as Bates Nos, MIT 04367-04368 | | 2 |
| 745. | 8/12/89 | David Chapman | Jim Davis | | Produced in its entirety as Bates Nos. MIT 04368-04369 | | 2 |
| 746. | 8/30/89 | Jim Davis | | | Produced in its entirety as Bates No. MIT 04369 | | 1 |
| 747. | 9/1/89 | Sucharita Gopal | Jim Davis | | Email communication not related to the patent in suit Produced in redacted form as Bates No. MIT 04369 | NR | 1 |
| 748. | 3/29/90 | Jim Davis | Jim Davis | | Produced in its entirety as Bates No. MIT 04370 | | 1 |
| 749. | 3/29/90 | Jim Davis | Fuqua | | Email communication not related to the patent in suit Produced in redacted form as Bates Nos. MIT 04370-04371 | NR | 2 |
| 750. | 4/26/90 | Jim Davis | Christopher Schmandt | | Produced in its entirety as Bates Nos. MIT 04371-04372 | | 2 |

AC = Attorney–Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 119 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 751. | 5/24/90 | Jim Davis | Jim Davis | | Produced in its entirety as Bates No. MIT 04372 | | 1 |
| 752. | 7/22/90 | Rodney Hoffman | | | Email communication not related to the patent in suit<br>Produced in redacted form as Bates Nos. MIT 04372-04373 | NR | 2 |
| 753. | 8/28/90 | Jim Davis | Jim Davis | Christopher Schmandt | Produced in its entirety as Bates No. MIT 04373 | | 1 |
| 754. | 8/28/90 | Jim Davis | Jim Davis | Christopher Schmandt | Produced in its entirety as Bates No. MIT 04373 | | 1 |
| 755. | 10/30/90 | Jim Davis | bsd/bsd.mail | Christopher Schmandt | Produced in its entirety as Bates No. MIT 04374 | | 1 |
| 756. | 10/30/90 | Jim Davis | Walter Ronmac Muriel Bolt dbk | | Email containing confidential communication reflecting legal advice<br>Produced in redacted form as Bates No. MIT 04374 | NR | 1 |
| 757. | 11/29/90 | cgant@media-lab.media.mit.edu | Jim Davis | cgant@media-lab.media.mit.edu | Produced in its entirety as Bates No. MIT 04374 | | 1 |
| 758. | 2/7/91 | Jussi Karlgren | Jim Davis | | Produced in its entirety as Bates Nos. MIT 04374-04375 | | 2 |
| 759. | 4/24/91 | Jeff Helgesen | | | Email communication not related to the patent in suit<br>Produced in redacted form as Bates Nos. MIT 04375-04376 | NR | 2 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 760. | 12/13/03 | Chris Schmandt | Walter Bender | deco@media.mit.edu; Robert Swartz; tkratman@media.mit.edu | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 761. | 11/18/03 | Chris Schmandt | Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 762. | 7/23/04 | Chris Schmandt | Robert Swartz | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 763. | 12/23/03 | Teresa Kratman | Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 764. | 4/20/04 | Deb Cohen | Walter Bender | Robert D. Fadel; Felice Gardner | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 765. | 1/7/04 | Deb Cohen | Walter Bender | Robert D. Fadel | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |
| 766. | 6/17/92 | Donna Baranski-Walker | Carl Accardo | | Faxed communication internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 3 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 121 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 767. | 3/4/92 | MIT Accounting Office | MIT TLO | Irene Abrams Nikki Borman Denise Vaillancourt Jean Weidemier, Esq. | Billing record reflecting request for legal advice in course of patent prosecution | A/C | 1 |
| 768. | 5/18/92 | Alla Skorokhod | Carl Accardo | Donna Baranski-Walker | Letter internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 769. | 3/4/92 | Irene Abrams | Diane Gaylor | | Faxed communication reflecting request for legal advice in course of patent prosecution | AC | 1 |
| 770. | 3/4/92 | MIT Accounting Office | MIT TLO | Irene Abrams Nikki Borman Denise Vaillancourt Jean Weidemier, Esq. | Billing record reflecting request for legal advice in course of patent prosecution | AC | 1 |
| 771. | 3/4/92 | Rebecca Prendergast | Irene Abrams | Rebecca Prendergast | Email reflecting request for legal advice in course of patent prosecution | AC | 1 |
| 772. | 2/27/92 | Irene Abrams | John Hynes | Jean Weidimier; Rebecca Pendergast | Letter reflecting request for legal advice in course of patent prosecution | AC | 1 |
| 773. | 2/25/92 | John Hynes | Jean Weidemier | | Letter reflecting request for legal advice in course of patent prosecution | AC | 1 |
| 774. | 2/20/92 | John Hynes | Philip Rittmueller | | Letter reflecting request for legal advice in course of patent prosecution | AC | 1 |
| 775. | 2/14/92 | Irene Abrams | John Hynes | | Letter reflecting request for legal advice in course of patent prosecution | AC | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 776. | 11/14/02 | Elizabeth Yonda | Jack Turner | Walter Bender | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 777. | 2/28/03 | Robert Swartz | Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 778. | 5/29/02 | Nicholas Negroponte | Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 779. | 2/11/03 | Robert Swartz | Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 780. | 11/25/02 | Chris Schmandt | Elizabeth Yonda; Walter Bender | Robert Swartz; valchin@media.mit.edu | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 4 |
| 781. | 11/26/02 | Joe Paradiso | Walter Bender | Jacobson@media.mit.edu; paradise@media.mit.edu | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 4 |
| 782. | 9/22/05 | Robert Fadel | Walter Bender | Nia Lewis Felice Gardner | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |

Page 123 of 126

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 783. | 2/23/04 | Deb Cohen | Felice Gardner | Robert D. Fadel | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 784. | 12/22/03 | Deb Cohen | Walter Bender | Teresa Kratman Joseph Robens Robert D. Fadel | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 785. | 1/28/04 | John P. Callinan | Walter Bender | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 2 |
| 786. | 1/24/05 | Jack Turner | Daniel Dardani | Geoff Wilson | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 1 |
| 787. | 1/21/05 | Geoff Wilson | Jack Turner | Robert D. Fadel | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 2 |
| 788. | 1/24/05 | Geoff Wilson | Robert D. Fadel | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 1 |
| 789. | 1/24/05 | Jack Turner | Daniel Dardani | Geoff Wilson | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 124 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 790. | 1/21/05 | Geoff Wilson | Jack Turner | Robert D. Fadel | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 2 |
| 791. | 3/11/05 | Robert D. Fadel | Geoff Wilson | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 1 |
| 792. | 3/8/05 | Robert Swartz | Robert Fadel | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 1 |
| 793. | 3/11/05 | Geoff Wilson | Robert D. Fadel | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 2 |
| 794. | 3/11/05 | Robert D. Fadel | Geoff Wilson | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 1 |
| 795. | 3/11/05 | Geoff Wilson | Robert D. Fadel | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 1 |
| 796. | 3/11/05 | Robert D. Fadel | Geoff Wilson | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 1 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

Page 125 of 126

| ENTRY NO. | DATE | AUTHOR | RECIPIENTS | OTHER RECIPIENTS | DESCRIPTION | PRIV. ASSERTED | PAGES |
|---|---|---|---|---|---|---|---|
| 797. | 3/11/05 | Geoff Wilson | Robert Swartz | Robert D. Fadel | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations | WP | 1 |
| 798. | 3/11/05 | Geoff Wilson | Robert D. Fadel | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 1 |
| 799. | 3/11/05 | Robert D. Fadel | Geoff Wilson | | Email internal to MIT personnel prepared in anticipation of litigation in the context of license negotiations. | WP | 1 |
| 800. | 10/5/00 | Robert Swartz | Bruce Bullock | | Memorandum containing non-responsive information | NR | 1 |
| 801. | 10/6/00 | Robert Swartz | Bruce Bullock | | Memorandum concerning prosecution activities and licensing in context of license negotiations in anticipation of litigation | AC/WP | 1 |
| 802. | 7/20/00 | Robert Swartz | Bruce Bullock | | Document containing non-responsive information | NR | 3 |
| 803. | 6/99 | MIT TLO | MIT | | Internal MIT document reflecting legal advice and attorney work product re: development and use of intellectual property in the context of patent prosecution and license negotiations | AC/WP | 22 |

AC = Attorney-Client Privileged
WP = Work Product Protected
NR = Non-Responsive

# L

Slip Copy                                                                                    Page   1
Slip Copy, 2006 WL 314435 (N.D.Ohio)
**(Cite as: Slip Copy)**
**H**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. Ohio, Eastern
Division.
MPT, INC. Plaintiff,
v.
MARATHON LABELS, INC., Marathon Durable
Labeling Systems LLC, and Polymeric Converting,
LLC Defendants.
No. 1:04 CV 2357.

Feb. 9, 2006.

Kyle B. Fleming, Thomas H. Shunk, David E.
Kitchen, John Edward Sullivan, Baker & Hostetler,
LLP, Cleveland, OH, for Plaintiff.
Mark E. Miller, Miller & Associates, Evansville,
IN, Bruce H. Wilson, Richard E. Gaum, Bret A.
Hrivnak, Hahn Loeser & Parks LLP, Akron, OH,
for Defendants.

*Memorandum of Opinion and Order*
GAUGHAN, J.

### INTRODUCTION

*1 This matter is before the Court upon the Motion
to Compel of Defendant Polymeric Seeking
Disclosure of Documents and Things Pursuant to
Fed.R.Civ.P. 34 and 37(a) (Doc. 91) and the
Motion of Defendant Polymeric Seeking to Compel
Disclosure Pursuant to Fed.R.Civ.P. 37(a) (Doc.
105). FN1 The Court GRANTS the motions in part
and DENIES the motions in part.

FN1. Polymeric has also filed Defendant,
Polymeric's, Motion to Compel Production of
Documents Previously Requested Under Subpoena
Duces Tecum from the Kennedy Group (Doc. 97).
That Motion has been resolved in full in a separate
Opinion and Order. That Order also addresses many
issues from the Motion to Compel of Defendant
Polymeric Seeking Disclosure of Documents and
Things Pursuant to Fed.R.Civ.P. 34 and 37(a)
(Doc. 91). The single exception is whether a patent
search report is discoverable, an issue that is
discussed in this Opinion and Order.

### BACKGROUND

Plaintiff MPT, Inc. ("MPT") accuses Polymeric
Converting LLC ("Polymeric") and other defendants
of infringing certain claims of U.S. Patent No.
5,417,790 (issued May 23, 1995) (the " '790
patent") and U.S. Patent No. RE 37,164 E (issued
May 8, 2001) (the " '164 patent"). Throughout this
litigation, MPT has refused to provide some
documents on the basis of privilege. Polymeric
challenges MPT's assertion of privilege as to many
of those documents, and seeks an Order compelling
MPT to produce documents from its privilege logs.

The patent application that ultimately resulted in the
'790 and '164 patents was filed in 1992. Prior to
filing, the law firm in charge of prosecuting the
application (the "prosecuting firm") before the
United States Patent and Trademark Office ("PTO")
hired a second law firm to perform a search report
(the "search firm"). The prosecuting firm relayed
information regarding the invention to the search
firm, which used that information to perform the
search. The search report that the search firm
submitted to the prosecuting firm listed references
that might be relevant to the invention as well as a
narrative comparing the invention to the references.
MPT has already provided Polymeric with a list of
the references but claims that the narrative is
privileged.

Numerous other documents were created and
exchanged throughout patent prosecution. Some
documents were internal within the prosecuting
firm, while others were exchanged with the client.
MPT has produced a privilege log detailing, for
each document, the originator, recipient, type of
document, and any privilege that has been claimed.
MPT has also provided the position of each
individual named in the privilege log. As will be
discussed in more detail below, Polymeric argues
that certain of these documents are not privileged,
either because the privilege asserted is unavailable
for that document or because the individual named
in the privilege log cannot claim the privilege.

While prosecution was ongoing, the rights to the
applications, and thus the patents, were transferred a
number of times. The patent application that
eventually resulted in the '790 and '164 patents was
originally assigned to the Kennedy Group, Inc.
("TKG"). TKG assigned its interest to Michael

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page  2
(Cite as: Slip Copy)

Kennedy in 1994, who thereafter assigned his
interest to MPT in 1995. All three have attempted to
assert privilege over documents related to
prosecution. Polymeric argues that any privilege that
existed has been waived by the exchange of
documents between TKG and MPT, which are
separate corporate entities. MPT counters that it
shares a common interest with TKG,FN2 allowing
the entities to communicate privileged information
without waiving the privilege.

FN2. MPT and TKG were closely related at the time
the patents were assigned and remain so today. MPT
is owned by Michael, Patrick and Todd Kennedy.
These three brothers are part owners of TKG along
with their parents. Michael Kennedy is the president
of MPT and the president and chief operating officer
of TKG. With respect to their current business
relationship, MPT has granted TKG a nonexclusive
license to make and sell products for use in the
patented method.

*2 Although TKG is not a party to this litigation, it
has been the subject of discovery sought by
defendants. MPT's law firm represents TKG in this
case and has represented TKG since 1997. MPT and
TKG have asserted privilege over communications
between their joint counsel and TKG personnel.
Polymeric believes that these communications are
not privileged. MPT again relies on its common
interest with TKG.

### STANDARD OF REVIEW

Rule 26(b) allows "discovery regarding any matter,
not privileged, that is relevant to the claim or
defense of any party...." Fed.R.Civ.P. 26(b)(1).
Matters can be privileged under either the attorney-
client privilege or the work product doctrine. *In re
Columbia/HCA Healthcare Corp. Billing Practices
Litig.,* 293 F.3d 289, 294 (6th Cir.2002). However,
the privilege may be waived. *Id .* at 307.

Because this is a patent case, it is necessary to
determine whether Sixth Circuit or Federal Circuit
law should apply. There are two critical issues for
this motion: 1) whether certain common activities
that occur during patent prosecution are protected by
the attorney-client privilege or work product
doctrine; and 2) whether the disclosure of privileged
information to a related third party during patent
prosecution or litigation waives the privilege or

remains protected under the community of interest
doctrine.

The Federal Circuit "appl[ies] regional circuit law to
procedural questions that are not themselves
substantive patent law issues so long as they do not
(1) pertain to patent law, ... (2) bear an essential
relationship to matters committed to our exclusive
control by statute, or (3) clearly implicate the
jurisprudential responsibilities of this court in a field
within its exclusive jurisdiction...." *GFI, Inc. v.
Franklin Corp.,* 265 F.3d 1268, 1272
(Fed.Cir.2001) (internal citations omitted).
Application of the privilege to documents created
during patent prosecution "is unique to patent law
because [these documents] relate[ ] to an invention
submitted for consideration for possible patent
protection; it clearly implicates substantive patent
law." *In re Spalding Sports Worldwide, Inc.,* 203
F.3d 800, 804 (Fed.Cir.2000). On the other hand,
"[b]ecause waiver by the disclosure of privileged
material does not meet any of these criteria," Sixth
Circuit law applies to waiver and community of
interest issues. *GFI,* 265 F.3d at 1272; *see also In
re Regents of the Univ. of California,* 101 F.3d
1386, 1390 & n. 2 (Fed.Cir.1996) (applying
regional circuit law to the common legal interest or
community of interest exception to waiver which is
at issue in this case). Thus, the existence of the
privilege will be determined by Federal Circuit law
while waiver and the community of interest doctrine
will be decided by Sixth Circuit law.

### DISCUSSION

The issues the Court must grapple with here are
actually quite common in patent litigation. Patents
are created by inventors working in conjunction
with patent lawyers or agents, often years before the
patents end up in litigation. Those patents are often
assigned or licensed. During litigation, patent
owners and their counsel frequently consult with
their related licensees. All of these activities create
substantial questions about the existence and waiver
of privilege. Accordingly, other courts have faced
similar issues on a number of occasions. Where the
Courts of Appeals have not spoken, these cases can
provide substantial guidance.

*3 MPT has produced two privilege logs. The first
privilege log lists documents that relate to the
prosecution and maintenance of the '790 and '164

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                              **Page   3**
**(Cite as: Slip Copy)**

patents. The second privilege log includes emails between MPT, TKG and their joint counsel related to this litigation. With respect to the litigation privilege log, the parties' only dispute is whether the community of interest doctrine allows MPT or its counsel to disclose privileged communications to a nonparty, TKG. The patent prosecution privilege log, on the other hand, creates a number of issues regarding the existence of the privilege. The first concern is whether patent prosecution documents can be protected from disclosure under the work product doctrine. MPT cites a number of cases that it claims support application of work product protection to prosecution documents, while admitting that "to some extent these cases use the phrase 'attorney-client privilege' rather than 'work product'...." The reason MPT's cases do so is because they have nothing to do with work product. For example, in *In re Regents,* the issue was whether "UC and Lilly ... share the requisite community of interest to allow UC to invoke attorney-client privilege" despite its disclosure of privileged information to Lilly. 101 F.3d at 1389.

The unpublished case cited by MPT actually counsels against allowing work product protection for patent prosecution documents. Just like all other documents, patent prosecution documents are only protected as work product if they are prepared "in anticipation of litigation." *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Fed.R.Civ.P. 26(b)(3). According to MPT's cited case, patent prosecution is only performed in anticipation of litigation "if the primary concern of the attorney is with future litigation rather than the ongoing patent application prosecution. Alternatively, the work product immunity does not apply if the primary concern is with claims raised in the ex parte patent application prosecution." *Conner Peripherals, Inc. v. W. Digital Corp.,* No. C93-20117, 1993 U.S. Dist. LEXIS 20149, *13 (N.D. Cal. June 7, 1993); *see also Burroughs Welcome Co. v. Barr Labs., Inc.,* 143 F.R.D. 611, 617 (E.D.N.C.1992); *Detection Sys., Inc. v. Pittway Corp.,* 96 F.R.D. 152, 155 (W.D.N.Y.1982). MPT has not presented any evidence that the prosecution documents were prepared with a primary concern to litigation rather than the ongoing patent prosecution. Accordingly, all documents in the prosecution privilege log that are being withheld solely as work product must be produced.FN3

FN3. MPT's email privilege log does not designate any documents as work product.

The parties also dispute whether some of the documents designated as falling under the attorney-client privilege are actually entitled to the privilege. Polymeric first challenges the search report, arguing that "[s]earching for prior art and providing a factual report that discusses the facts located in a search is not a legal function, *i.e.,* it is not the practice of law." Polymeric notes the following: 1) there was no formal attorney-client agreement with the search firm; 2) the search firm charged less than its normal hourly rate for the search; 3) the search could have been performed by a patent agent FN4 rather than a lawyer; and 4) after learning that certain documents were available to the public, an attorney for the search firm stated that he might have redacted less material from the search report.

FN4. A patent agent is a nonlawyer who is certified to participate in patent prosecution proceedings before the PTO.

**\*4** MPT responds with a number of cases which have found aspects of patent prosecution to be protected by the attorney-client privilege. *See In re Regents,* 101 F.3d at 1391 (holding that "[c]onsultation with counsel during patent prosecution" is protected by the attorney-client privilege); *Conner Peripherals,* 1993 U.S. Dist. LEXIS 20149, at *14 (applying the attorney-client privilege to documents that reflect "efforts to obtain the strongest permissible patent protection for the invention"). The Federal Circuit has clearly rejected the idea that patent practitioners act as "mere conduits" of technical information. *In re Spalding,* 203 F.3d at 806 & n. 3. In *In re Spalding,* the Federal Circuit found that an invention record was protected by the attorney-client privilege "because it requested legal advice concerning the patentability of the invention and served as an aid in completing the patent application." *Id.* at 805. There is no dispute that the redacted material of the search report at issue here contains the same type of information. A representative for the search firm testified that the search report includes the features of the invention (relayed from the prosecuting firm and originating with the client) and a comparison of those features with the cited references. Moreover, a brief review of cases decided by other courts includes a number of instances where a patent search

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

report was protected by the attorney-client privilege. *E.g.,* Burroughs, 143 F.R.D. at 616; *In re Application of Minebea Co.,* 143 F.R.D. 494, 502-03 (S.D.N.Y.1992).

The fact that the applicant's patent attorney might employ a patent agent for certain aspects of prosecution is irrelevant. The Supreme Court has held that patent agents engage in the practice of law, *Sperry v. Florida,* 373 U.S. 379, 383, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963), and that attorneys may employ nonattorneys to assist them without waiving the privilege. *U.S. v. Nobles,* 422 U.S. 225, 238-39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) . Drawing from these principles, courts have found that the attorney-client privilege attaches to communications with patent agents. *E.g., Stryker Corp. v. Intermedics Orthopedics, Inc.,* 145 F.R.D. 298, 304 (E.D.N.Y.1992); *Dow Chem. Co. v. Atlantic Richfield Co.,* No. 83-cv-3763, 1985 WL 71991, *133 (E.D.Mich. April 23, 1985). The lack of a formal attorney-client agreement is similarly irrelevant. *See In re Spalding,* 203 F.3d at 806 ("[I]t is not necessary to expressly request confidential legal assistance when that request is implied.").

Polymeric's final argument is that the attorney who redacted the information from the search report has stated that he might have redacted less information had he known that certain documents were disclosed to the PTO. First, Polymeric provides no authority that a nonparty attorney's legal opinion as to what information is privileged is somehow binding on this Court. More importantly, the premise for Polymeric's argument-that the eventual submission of some of the underlying information to the PTO negates the privilege-is incorrect. The Federal Circuit has rejected that reasoning, instead adopting a line of authority that holds as follows:
*5 The fact that much of the technical information in one form or another finds its way into the patent application, to be made public when the patent issues, should not preclude the assertion of the privilege over the communication in which that information was disclosed to the attorney. If an attorney-client communication could be discovered if it contained information known to others, then it would be the rare communication that would be protected and, in turn, it would be the rare client who would freely communicate to an attorney.

*In re Spalding,* 203 F.3d at 806 (quoting *Knogo*

*Corp. v. United States,* 213 USPQ 936, 940, 1980 WL 39083 (Ct.Cl. Trial Div.1980)).

Accordingly, the search report is covered by the attorney-client privilege. Polymeric's request to review the redacted portions *in camera* is also denied. Once the privilege applies, "it is [not] necessary to dissect the document to separately evaluate each of its components. It is enough that the overall tenor of the document indicates that it is a request for legal advice or services." *In re Spalding,* 203 F.3d at 806.

Polymeric also challenges patent prosecution communications between the client and nonlawyers. MPT correctly points out that these nonlawyers are all agents of lawyers whose services were utilized for patent prosecution. As was discussed above, communications do not lose their privileged status simply because they pass through the hands of a nonlawyer. *Nobles,* 422 U.S. at 238-39; *see also In re OM Group Sec. Litig.,* 226 F.R.D. 579, 589 (N.D.Ohio 2005) ("Documents created by an accountant at the attorney's request to assist the attorney in providing legal advice to the client are protected by the attorney-client privilege."). Similarly, lawyers may employ third parties to aid in the patent prosecution process. *See, e.g., Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.,* 707 F.Supp. 1429, 1444 (finding that a nonattorney advisor's communications were privileged). Similar to the search report, the privilege is not destroyed by the fact that attorney-client information passes between the client, an attorney, and third parties employed by the attorney.

Having established that the attorney-client privilege applies, the next issue is whether the privilege has been waived. The Court will first address a side issue. Polymeric argues that TKG and Michael Kennedy were unable to assign their privilege when they assigned the patents. Whether or not this is true, MPT is not attempting to assert TKG or Michael Kennedy's privilege. Rather, each entity or person has claimed the attorney-client privilege for their own communications and period of ownership. The real issue is whether the free exchange of these communications between MPT, TKG and Michael Kennedy has waived an otherwise proper assertion of attorney-client privilege.

Polymeric makes two main contentions as to waiver.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                          Page  5
(Cite as: Slip Copy)

First, TKG and Michael Kennedy, the prior owners of the patents or the applications that resulted in the patents, allegedly waived their right to assert the attorney-client privilege for prosecution documents dated before September 18, 1995, when they disclosed those communications to MPT as part of the patent assignment. Second, during this litigation MPT and its lawyers have disclosed attorney-client communications to TKG. This disclosure to a nonparty allegedly has waived the privilege.

*6 The general rule holds that the attorney-client privilege is waived by the disclosure of privileged communications to a third party. *United States v. Dakota,* 197 F.3d 821, 825 (6th Cir.1999). Once the privilege is waived, waiver is complete and final as to all parties and for all purposes. *In re Columbia,* 293 F.3d at 294, 307. In other words, the Sixth Circuit has rejected the idea that a party can disclose privileged communications to one adversary while maintaining the privilege as to other adversaries. *Id.* at 302.

An exception to these general waiver principles is the community of interest or common interest doctrine. *Reed v. Baxter,* 134 F.3d 351, 357 (6th Cir.1998). "The 'common interest' arrangement permits the disclosure of a privileged communication without waiving the privilege, provided the parties have 'an identical legal interest with respect to the subject matter of the communication.'" *Libbey Glass, Inc. v. Oneida, Ltd.,* 197 F.R.D. 342, 347 (N.D.Ohio 1999) (quoting *Duplan Corp. v. Deering Milliken,* 397 F.Supp. 1146, 1164 (D.S.C.1974)).FN5

FN5. The *Duplan* case cited by the *Libbey Glass* court is one of a long line of cases in sister courts that have explicitly addressed the common interest doctrine in the patent context. Considering that Sixth Circuit precedent is rather scant and does not diverge from the law of other Circuits, these cases can be instructive to the extent other courts have addressed similar factual circumstances.

Courts generally require that the entities asserting the community of interest doctrine have an identical legal interest as opposed to a solely commercial interest. *In re Regents,* 101 F.3d at 1390. Polymeric focuses on this requirement, noting that TKG (a nonexclusive licensee) and Michael Kennedy (a shareholder in MPT and TKG) do not have a right

to sue under the patents. *See, e.g., Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1553 (Fed.Cir.1995) (holding that a nonexclusive licensee does not have the right to sue for patent infringement); *Lans v. Digital Equip. Corp.,* 252 F.3d 1320, 1324-25, 1328 (Fed.Cir.2001) (holding that a sole shareholder cannot sue for infringement of a patent owned by the company). Polymeric concludes that TKG and Michael Kennedy therefore lack the necessary "identical legal interest" to invoke the community of interest doctrine.

Although Polymeric's argument has a certain surface appeal, courts have not drawn the line between an identical legal interest and a solely commercial interest where Polymeric suggests. Courts within the Sixth Circuit have recognized principles that run counter to Polymeric's suggestion that the identical legal interest must be a right to sue under the patent. First, entities can have a common legal interest even if it is unlikely that they will ever be parties to the same litigation. *Travelers Cas. & Sur. Co. v. Excess Ins. Co. Ltd.,* 197 F.R.D. 601, 607 (S.D.Ohio 2000). In the context of related companies, "disclosure of legal advice to a parent or affiliated corporation does not work a waiver of the confidentiality of the document, because of the complete community of interest between parent and subsidiary." *The Glidden Co. v. Jandernoa,* 173 F.R.D. 459, 473 (W.D.Mich.1997) (citing *Crabb v. KFC Nat'l Mgmt.,* No. 91-5474, 1992 U.S.App. LEXIS 38268, *2 (6th Cir. Jan. 6, 1992)). Finally, in one case the key factor in finding a common interest was a clear indication that the parties exchanging the information intended the communications to remain confidential as to others. *Libby Glass,* 197 F.R.D. at 348. All three of these principles would seem to apply to the MPT-TKG-Michael Kennedy relationship.

*7 Indeed, parties can have common legal interests outside of the litigation context altogether. Numerous courts, including the Federal Circuit, have found that a patent purchaser and a licensee or inventor have a common interest in successfully prosecuting patent applications. *In re Regents,* 101 F.3d at 1390-91; *Constar Int'l, Inc. v. Continental Pet Techs., Inc.,* No. 99-234-JJF, 2003 U.S. Dist. LEXIS 21132, *5-6 (D.Del. Nov. 19, 2003); *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories,* No. 84 C 5103, 1987 U.S. Dist. LEXIS 10300, *3-4 (N.D. Ill. June 19, 1987). Licensees and patent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: Slip Copy)

Page  6

owners have also been found to have a common legal interest in litigation. *Smithkline Beecham Corp. v. Apotex Corp.,* 193 F.R.D. 530, 539 (N.D.Ill.2000); *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.,* No. 95 C 0673, 1996 U.S. Dist. LEXIS 19274, *5, 17-18 (N.D.Ill.Dec. 9, 1996); *13-14. However, adversarial aspects of the relationship such as license negotiations are not protected.FN6 *Heidelberg,* 1996 U.S. Dist. LEXIS 19274 at *5.

FN6. The Court notes that it appears from deposition testimony submitted with previous motions that defendants were allowed to explore this aspect of the relationship between TKG and MPT. Under a more lenient application of the common interest doctrine applied in some jurisdictions, even disclosures made during adversarial license negotiations are protected from waiver. *E.g., Britesmile, Inc. v. Discus Dental Inc.,* No. C 02-3220, 2004 U.S. Dist. LEXIS 20023, *9 (N.D.Cal. Aug. 10, 2004); *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 115 F.R.D. 308, 311 (N.D.Cal.1987).

There must be more to the relationship than a bare nonexclusive license. *Katz v. AT & T Corp.,* 191 F.R.D. 433, 437 & n. 4 (E.D.Pa.2000). In *In re Regents,* the district court had rejected the common interest doctrine because the license was nonexclusive. 101 F.3d at 1390. However, the Federal Circuit noted that the license "had the potential to become" exclusive. *Id.* In this sense, the licensee was "more than a non-exclusive licensee, and shared the interest that UC would obtain valid and enforceable patents." *Id.* Just because this would also create a financial benefit for the parties did not destroy the character of their common legal interests. *Id.*

Similarly, the license at issue here is much more than a bare nonexclusive license. First, the Sixth Circuit, whose law governs these issues, has held that affiliated entities are entitled to invoke the community of interest doctrine. *Crabb,* 1992 U.S.App. LEXIS 38268, at *8; *see also Jandernoa,* 173 F.R.D. at 473. Second, at the behest of Polymeric the Court has already recognized not only that MPT and TKG are closely affiliated but that the relationship between the two reaches far beyond that of a typical nonexclusive licensee. The Court granted Polymeric's motion to compel damage documents, based in large part on Polymeric's

argument and evidence that MPT and TKG do not have an arms-length licensing relationship, and that the interest of the two entities in this litigation is nearly identical. Third, although TKG's license is nominally classified as nonexclusive, the Court has not seen any evidence that TKG does not enjoy the lion's share of the benefits of the patent as a result of its relationship with MPT. In sum, although this license may fall below the threshold that would allow TKG or Michael Kennedy to sue on their own behalf, the relationship far exceeds the solely financial interests of a mere nonexclusive licensee. At the time of the patent assignment, all three had an identical legal interest in successfully prosecuting the patents. In litigation, all three have an identical legal interest in the enforcement and validity of the patents. Accordingly, the community of interest doctrine applies to TKG, MPT and Michael Kennedy.

*8 In light of the Court's conclusion that all prosecution documents withheld on work product grounds must be produced, there are some points that need clarification. MPT has pointed out that item 31 from the '119 application and items 51 and 52 of the '790 patent were originally labeled as work product but contain some attorney-client communications. Those documents are to be produced with the attorney-client communications redacted. MPT has also represented that communications with a draftsperson should have been labeled as work product. Accordingly, those documents must be produced.

Finally, Polymeric asks the Court to review all of the remaining documents *in camera.* However, other than the very limited instances of mislabeling discussed above, Polymeric has not provided the Court with any reason to doubt the veracity of MPT's claims of attorney-client privilege. The Court will not review the attorney-client documents *in camera.*

## CONCLUSION

The Court GRANTS Polymeric's motions in part and DENIES Polymeric's motions in part. The Court ORDERS MPT to produce the following documents:
'119 Application: 1, 9, 19, 20, 31 (redacted), 33, 52, 53, 55.
'858 Patent: 1, 4, 6, 13, 22, 37, 38, 43, 59, 65.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
**(Cite as: Slip Copy)**

'164 Reissue: 1, 12, 40, 41, 44, 57.
'790 Patent: 1, 4, 13, 21, 22, 23, 26, 35, 51 (redacted), 52 (redacted), 54.

IT IS SO ORDERED.

N.D.Ohio,2006.
MPT, Inc. v. Marathon Labels, Inc.
Slip Copy, 2006 WL 314435 (N.D.Ohio)

Briefs and Other Related Documents (Back to top)

. 2006 WL 1476801 (Trial Motion, Memorandum and Affidavit) Plaintiff Mpt, Inc.'s Brief in Support of Motion for Summary Judgment Dismissing Counts III, IV and V of Defendant Marathon Labels, Inc.'s Cross-Claim (Apr. 17, 2006)
. 2006 WL 1206108 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum in Support of their Motion for Reconsideration (Mar. 20, 2006) Original Image of this Document (PDF)
. 2006 WL 1206107 (Trial Motion, Memorandum and Affidavit) Plaintiff MPT, Inc.'s Reply Brief Opposing Defendant Polymeric's Motion for Reconsideration of Claim Construction Order (Mar. 8, 2006) Original Image of this Document (PDF)
. 2005 WL 2888800 (Trial Motion, Memorandum and Affidavit) Defendants' Reply to MPT's Brief in Opposition to Defendants' Motion for Reconsideration (Sep. 23, 2005)
. 2005 WL 2888798 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply to the Amended Counterclaims of Marathon Labels (Sep. 12, 2005)
. 2005 WL 2888799 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply to the Amended Counterclaims of Polymeric Converting (Sep. 12, 2005)
. 2005 WL 2759570 (Trial Motion, Memorandum and Affidavit) Defendants' Motion for Reconsideration of A Limited Issue and Memorandum in Support Thereof (Sep. 8, 2005)
. 2005 WL 2759568 (Trial Pleading) Marathon Lables, Inc.'s Amended Answfr to Mpt's First Amended Complaint and Counterclaims (Aug. 30, 2005)
. 2005 WL 2759566 (Trial Pleading) Amended Answer, Affirmative Defenses and Counterclaims of Defendant Polymeric Converting LLC (Jury Demand Endorsed Hereon) (Aug. 29, 2005)
. 2005 WL 3818336 (Trial Motion, Memorandum and Affidavit) Plaintiff's Opposition to Defendant Polymeric's Motion To Compel Dated 12/21/2005

Regarding Privileged Documents (Aug. 16, 2005)
. 2005 WL 2362907 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Further Support of their Motion to Compel Answers to Deposition Questions (Aug. 10, 2005)
. 2005 WL 2362905 (Trial Motion, Memorandum and Affidavit) Brief in Opposition to Defendants' Motion to Compel Deposition Questions (Aug. 4, 2005)
. 2005 WL 2362601 (Trial Motion, Memorandum and Affidavit) Reply Brief in Further Support of Motion to Compel Discovery (Jul. 29, 2005)
. 2005 WL 2362600 (Trial Motion, Memorandum and Affidavit) Brief in Opposition to Defendants' Motion to Compel (Jul. 18, 2005)
. 2004 WL 3124291 (Trial Pleading) Complaint for Patent Infringement (Nov. 29, 2004)
. 1:04cv02357 (Docket) (Nov. 29, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# M

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Colleen Garlington
To Call Writer Directly:
312 469-7019
cgarlington@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: 312 846-9181

May 12, 2006

**VIA E-MAIL**

John Pint, Esquire
Proskauer Rose LLP
One International Place
22nd Floor
Boston, MA 02110

Re:    MIT v. Harman International Industries, Inc., No. 05-10990 DPW (D. Mass.)

Dear John:

I write in response to your April 27, 2006 letter addressing the deficiencies that remain in MIT's production.  Harman responds to certain points raised in your letter below:

- GoThere documents:    Although MIT has produced certain documents relating to GoThere, Harman specifically requested documents relating to *Mr. Schmandt's efforts* in developing and pitching the automobile navigation system to GoThere.  Mr. Schmandt testified in his deposition as to his efforts to commercialize the invention of the '685 patent in this respect.  Harman is entitled to *all documents* concerning Mr. Schmandt's efforts in this regard.  *See* Schmandt Deposition at 32.  Please verify that *all* documents relating to *Mr. Schmandt's efforts* in this regard have been produced.

- Conference Proceedings:  Although MIT attempts to unilaterally limit the production of these documents to "conferences or lectures he attended prior to the filing of the patent application, which were related to speech-based navigation," Harman did not limit its requests to "speech-based navigation."   Please produce all records relating to any conferences or lectures attended by Mr. Schmandt which addressed *or included* presentations related to *navigation systems,* whether or not those navigations systems were "speech-based."

- Mr. Schmandt's Patents and Patent Applications:  To the extent that Mr. Schmandt has filed patent applications which have not been published, Harman requests their production.

London        Los Angeles        Munich        New York        San Francisco        Washington, D.C.

# KIRKLAND & ELLIS LLP

John Pint, Esquire
May 12, 2006
Page 2

- "Regular Quarterly Meetings", "Correspondence Between Mssrs. Rittmueller, Schmandt, and Davis" and "NEC Confidentiality Obligations":  As you know, in correspondence on April 21 and May 3, 2006 Harman objected to entries on MIT's privilege log that constitute correspondence with third parties, including NEC.  Such correspondence is clearly not privileged and is also relevant to Harman's defense.  Despite this, MIT has consistently refused to reply substantively to Harman's concerns regarding MIT's continued assertion of privilege in light of this waiver.  Harman again requests that MIT produce these documents.  Furthermore, we note that these documents are particularly relevant to the 30(b)(6) deposition that is scheduled to take place next week, and that failure to produce these documents will prejudice Harman.

- "Display of Direction Assistance at Boston Computer Museum"  You stated that "MIT has already produced or logged its documents related to any such display."  Please provide bates ranges for any such documents as well as MIT's assurance that it has produced *all* documents associated with this display.

- "Mr. Schmandt's Income Tax Statements":  Mr. Schmandt's valuation of his shares of GoThere is highly relevant to Harman's defense in this case, as is Mr. Schmandt's income.  Harman is sensitive to Mr. Schmandt's privacy concerns, and notes that Harman only requested these documents after Mr. Schmandt referred Harman's counsel to his tax returns when asked questions regarding his valuation of the GoThere shares.  *See* Schmandt Deposition at 138.  To the extent that Mr. Schmandt will be prepared to fully answer questions regarding his income and his valuation of GoThere stock, Harman will withdraw this request.

The documents and/or testimony described above are properly within the scope of Harman's discovery requests and are clearly relevant to Harman's defense.  We therefore renew our request that MIT promptly produce all such responsive documents, identify the Bates numbers if those documents have already been produced, or specifically state that no such documents exist within its custody or control.

We look forward to hearing from you by the close of business on May 15, 2006.

## KIRKLAND & ELLIS LLP

John Pint, Esquire
May 12, 2006
Page 3

Sincerely,

Colleen Garlington

CG

# N

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 1565082 (D.N.J.)
**(Cite as: 1999 WL 1565082 (D.N.J.))**
н

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. New Jersey.
**CONOPCO, INC.** d/b/a Unipath Diagnostic Co.
v.
**WARNER**-LAMBERT CO.
No. Civ.A. 99-101(KSH).

Jan. 24, 2000.

INTRODUCTION

HEDGES, Magistrate J.

**\*1** This matter comes to me on plaintiff's motion to compel discovery. I have considered the papers in support of and in opposition to the motions. There was no oral argument. Rule 78.

BACKGROUND

Conopco, Inc., d/b/a Unipath Diagnostics Company ("Unipath"), commenced this action on January 8, 1999, alleging willful patent infringement by defendant Warner Lambert Company ("Warner-Lambert") and seeking damages and an injunction. Unipath contends that Warner-Lambert committed and continues to commit willful acts of infringement of its patents by making, using, selling and/or offering for sale e.p.t.(R) pregnancy tests and other products employing the subject matter, all without authority or license from Unipath. Unipath also contends that third-party Applied Biotech, Inc. ("ABI") has either manufactured and/or supplied the product to Warner-Lambert since 1993. The allegedly infringed patents are:

1. United States Letters Patent No. 5,622,871 entitled "Capillary Immunoassay and Device Therefore Comprising Mobilizable Particulate Labeled Reagents", issued to Keith May, et al. on April 22, 1997 and assigned to Unipath;
2. United States Letters Patent No. 5,602,040 entitled "Assays", issued to Keith May, et al. on February 11, 1997 and assigned to Unipath;
3. United States Letter Patent No. 5,656,503 entitled "TEST DEVICE FOR DETECTING ANALYTES IN BIOLOGICAL SAMPLES", issued to Keith may, et al. on August 12, 1997 and

assigned to Unipath.

Warner-Lambert denies infringement, alleges that the patents are invalid and that Unipath did not properly mark its products. Warner-Lambert seeks declaratory judgment for non-infringement and invalidity of the patents.

On June 17, 1999, the Court entered a scheduling order setting forth discovery deadlines. On June 25, 1999. Unipath served Warner-Lambert and ABI (collectively "defendants") with document requests relating to the alleged infringement. On August 12, 1999, the Court ordered that document production be limited to the issue of patent infringement and that inspection of such documents be completed by September 17, 1999.

Unipath contends that it produced twelve boxes of documents which included laboratory research notebooks, development reports and other records relating to the research, development, and testing of its patented product. Unipath claims that defendants produced only about one-and-one-half boxes and permitted a limited inspection of approximately 32 double-sized boxes of documents at ABI's San Diego, California site on September 26, 1999. Unipath admits that some documents were responsive to a few of its requests. However, Unipath claims that no documents were provided regarding the research, development, and testing of the e.p.t.(R) product or the purpose and function of the sugar used in the e.p.t.(R) product, the patent claim element in issue here. Unipath also claims that defendants produced only the most recent manufacturing specifications for the e .p.t.(R) product which show how the product is currently made, but do not reveal the function of sugar or other components in the operation of the device.

**\*2** Defendants also refused to produce documentation dated prior to February 11, 1997 (the earliest issue date for the patents-in-suit), documents concerning their knowledge of the patents-in-suit and foreign counterparts, and comparative product testing. [FN1] Unipath argues that tests, notebook entries, monthly reports, and memoranda may be highly probative of whether the e.p.t.(R)) products use sugar to facilitate the mobility of the labeled reagents. Unipath contends that these documents are relevant and should be admissible and, at the very

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

least, are likely to lead to the discovery of admissible evidence of patent infringement. Unipath also argues that the February 11, 1997 cut-off date is self-imposed by Warner-Lambert.

> FN1. Unipath received a 201-page document production from Warner-Lambert at the time its brief was prepared.

Unsuccessful at attempts to resolve this discovery dispute with defendants, Unipath has moved to compel Warner-Lambert to produce documents responsive to Unipath's Document Request Nos. 7, 8, 20, 21, 26, 31, 32, 34, 35, 43 and 51 and to compel ABI to produce documents responsive to Unipath's Document Request Nos. 6, 7, 19, 20, 25, 30, 31, 33, 34, and 42. [FN2] Unipath also objects to Warner-Lambert's General Objection 6 and ABI's General Objection 7, regarding the February 11, 1997 cut-off date for discovery.

> FN2. The second motion is submitted by Warner-Lambert and is addressed by the Court in a separate Ruling.

Defendants oppose Unipath's motion. They contend that they have produced all documents relevant to patent infringement and that what has been produced is sufficient to determine whether there is infringement. Warner-Lambert claims that it produced over 11,000 documents (six boxes) of initial disclosures and other requested documents, as well as eight boxes of documents produced for inspection. ABI claims that it produced over 3,000 documents (two boxes) prior to the inspection, about 26 double-sized banker's boxes of documents at the inspection, and since then, about 3,800 more documents. The 26 ABI boxes allegedly contain detailed information on the structure, operation, and manufacture of each lot of the e.p.t.(R) product from 1997 to the present including the materials and chemicals used, amounts and timing of when each chemical is added. Defendants contend that the documents describe how much sugar is used, when it is added and where it is located, as well as design changes made to parts, chemical, or assembly procedures. Also provided were quality control documents showing the operation and performance of the product, manufacturing safety data sheets, incoming specification sheets showing the contents, purity, etc. for all outside raw materials used in the product, all FDA submissions for the product, and all documents for all dates showing comparisons made between the e.p.t.(R) product and other third parties' test products. Product samples were also produced.

Warner-Lambert also claims that its e.p.t.(R) product does not infringe any claims of the patent because the sugar, admittedly used in its test product, does not perform the function of facilitating mobility of the labeled reagent. Rather, Warner-Lambert argues that the sugar stabilizes the labeled reagents, and the amount of sugar, not its function, is at issue. Warner-Lambert also contends that the function of sugar is not the only claim at issue. Furthermore, defendants claim that the documents that Unipath seeks related to research, development, and testing documents and to defendants' knowledge of the patents-in-suit, have nothing to do with patent infringement, but relate only to the damages issue of willful infringement on which the Court deferred discovery. Defendants also contend that evidence of copying is only potentially relevant to interchangeability, which is not at issue in this case.

## DISCUSSION

**\*3** The Federal Rules of Civil Procedure and Evidence should be applied no differently in patent cases than in other types of actions. *SRI Int'l v. Matsushita Elec. Corp. of America,* 775 F.2d 1107, 1116 (Fed.Cir.1985). The scope of discovery under the federal rules is very broad. Under Rule 26. "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Relevant matter includes any matter related to or that reasonably could lead to other matter that is related to any issue that is or may be in the action. *Hickman v. Taylor,* 329 U.S. 495, 506, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Discovery of matter not "reasonably calculated to lead to the discovery of admissible evidence" is not within its scope of Rule 26(b)(1).

A party seeking discovery must show a relationship between the information sought and the claimed invention. *American Standard Inc. v. Pfizer, Inc.,* 828 F.2d 734, 741 (Fed.Cir.1987). Discovery should be denied where proof of relevance or need is not established. 828 F.2d at 743. "Need is enhanced when information is uniquely available from the party from whom it is sought." 828 F.2d at 743. To

Not Reported in F.Supp.2d
(Cite as: 1999 WL 1565082, *3 (D.N.J.))

withhold relevant documents, a party must justify that the documents are protected under either the attorney-client privilege or work product doctrine or both. *Willemijn Houdstermaatschaapij BV v. Apollo Computer,* 707 F.Supp. 1429, 1442 (D.Del.1989) ( "*WHBV*" ).

Documents containing trade secret information are subject to the protective order issued by the Court. However, "a protective order is not a substitute for establishing relevance or need. Its purpose [ ] is to prevent harm by limiting disclosure of relevant and necessary information." *Micro Motion, Inc. v. Kane Steel Co., Inc. .,* 894 F.2d 1318, 1325 (Fed.Cir.1990).

## PATENT LAW GENERALLY

"Patent infringement occurs when a device that is literally covered by the claims or is equivalent to the claimed subject matter, is made, used, or sold, without the authorization of the patent holder, during the term of the patent." *Stairmaster Sports/ Med. Prod., Inc. v. Groupe Procycle, Inc.,* 25 F.Supp.2d 270, 278 (D.Del.1998). Infringement may occur either literally or under the doctrine of equivalents. *W.R. Grace & Co.-Conn. v. Intercat, Inc.,* 7 F.Supp.2d 425, 434 (D.Del.1997), *aff'd,* 155 F.3d 572 (Fed.Cir.1998); *see Graver Tank & Mfg. Co., Inc. v. Linde Air Prod. Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, (1950). Infringement in both instances is a question of fact. *Stairmaster,* 25 F.Supp.2d at 278.

A two-step analysis is followed to determine if there is infringement. Patent claims must first be construed to determine their scope and, second, the construed claims must be compared to the accused device or product. 25 F.Supp.2d at 278. "Infringement, literal or by equivalence, is determined by comparing the accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit." *Stairmaster,* 25 F.Supp.2d at 278 (*quoting S.R.I. Int'l,* 775 F.2d at 1118, 1121) (claims are "construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, not in light of the accused device."); *see Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995) (*in banc* ), *aff'd,* 517 U.S. 370, 116

S.Ct. 1384, 134 L.Ed.2d 577 (1996). [FN3] This procedure applies to both types of infringement. *Stairmaster,* 25 F.Supp.2d at 278. Generally, "nothing can be held to be an infringement which does not fall within the terms the patentee has himself chosen to express his invention." *McClain v. Ortmayer,* 141 U.S. 419, 425, 12 S.Ct. 76, 35 L.Ed. 800 (1891).

> FN3. "[W]hen intrinsic evidence is unambiguous, it is improper for the court to rely on extrinsic evidence to contradict meaning of the claims." *Georgia-Pacific Corp. v. United States Gypsum Co.,* 195 F.3d 1322, 1332 (Fed.Cir.1999).

**\*4** "To establish literal infringement, a plaintiff must demonstrate by a preponderance of the evidence that every limitation in the claim is literally met by the accused device." *Stairmaster,* 25 F.Supp.2d at 278. This rule is modified somewhat when the terminology within the claim meets the criteria set forth in 35 U.S.C. § 112, ¶ 6 for means-plus-function terminology. *Stairmaster,* 25 F.Supp.2d at 278; *see Pennwalt Corp. v. Durand-Wayland, Inc.,* 833 F.2d 931, 933-34 (Fed.Cir.1987), *cert. denied,* 485 U.S. 961, 108 S.Ct. 1226, 99 L.Ed.2d 426 (1988). In this type of action, "a claim containing a functional limitation written in means-for form is literally infringed when the accused device performs the function stated in the claim, by measure of structure, material, or acts described in the specification or equivalents thereof." *Stairmaster,* 25 F.Supp.2d at 278 (*quoting Multiform Dessiccants, Inc. v. Medzam, Ltd.,* 133 F.3d 1473, 1479 (Fed.Cir.1998)). "In turn, to determine structural equivalency under § 112, ¶ 6, the 'sole question,' which is a factual one, is 'whether the single means in the accused device which performs the function stated in the claim is the same as or an equivalent of the corresponding structure described in the patentee's specification as performing that function." ' *Stairmaster,* 25 F.Supp.2d at 278 (*quoting D.M.I., Inc. v. Deere & Co.,* 755 F.2d 1570, 1575 (Fed.Cir.1985)). However, a device may fall within the literal words of a claim, but may be so far changed in principle from the patented article that it performs the same or similar function but in a different way and defeats a claim of infringement. *Graver Tank,* 339 U.S. at 608-09.

The second type of infringement, the doctrine of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

equivalents, was set forth first in 1854 in *Winans v. Denmead.* 56 U.S. 330, 15 How. 330, 14 L.Ed. 717 (1853); *see Warner Jenkinson Co., Inc. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 26 n. 3, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). The modern contours of the doctrine were provided in *Graver Tank.* 339 U.S. at 607-08. "Under this doctrine, an accused device 'that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." ' *Stairmaster,* 25 F.Supp.2d at 283 (*quoting Warner-Jenkinson,* 520 U.S. at 21).

The theory raises a question of fact in that "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape." *Graver Tank,* 339 U.S. at 608 ( *quoting Union Paper-Bag Machine Co. v. Murphy,* 97 U.S. 120, 125, 24 L.Ed. 935 (1877)). [FN4] "[T]o permit imitation of a patented invention which does not copy every literal detail would ... encourage ... the unscrupulous copier to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of the law." *Graver Tank,* 339 U.S. at 607.

> FN4. The doctrine may be used against a patentee in an action for infringement "where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim." *Graver Tank,* 339 U.S. at 608-09.

*5 This doctrine is "applied to mechanical or chemical equivalents in compositions or devices." *Graver Tank,* 339 U.S. at 609. It is applied, not to the invention as a whole, but to each element of a claim individually. *Stairmaster,* 25 F.Supp.2d at 283. The trier of fact will apply the properly construed claim to determine if the "accused device, element by element, is equivalent to that which has been patented." *Stairmaster,* 25 F.Supp.2d at 283.

"Equivalence" is determined by "either focusing on whether the accused device performs substantially the same function in the same way to achieve

substantially the same result (the so-called "function/way/result" test) ... or by considering whether there are "insubstantial differences" between the patent claim term and the accused device." 25 F.Supp.2d at 283. Although this "function-way-result" test can be utilized to determine whether two devices are equivalent, it is merely one of several relevant inquiries. Also to be considered under the doctrine of equivalents are "1) whether persons skilled in the art knew that the item was interchangeable with the item in the patent in suit; 2) if there is substantial evidence that defendant copied the patent in suit, 3) if there is evidence of independent development by defendant and 4) if defendant designed around the patent." *Glaxo Wellcome, Inc. v. Pharmadyne Corp.,* 32 F.Supp.2d 265, 284 (D.Md.1998).

A significant factor to be considered in determining equivalency is the "interchangeableness" between the elements in the accused device and claimed elements in the patented invention. *Stairmaster,* 25 F.Supp.2d at 284. "Copying suggests that the differences between the claimed and accused products or processes ... are insubstantial.' Evidence that the accused product was 'designed around' a patent claim weighs against a finding of infringement under the doctrine of equivalence and support the inference that the developer designed substantial changes into the new product to avoid infringement." *Queen's Univ. at Kingston v. Knedyne Corp.,* 910 F.Supp. 527, 533 (D.Kan.1995); *see California Medical Prods., Inc. v. Tecnol Medical Prods., Inc.,* 921 F.Supp. 1219, 1244 (D.Del.1995).

Alternatively, independent development shows that the accused infringer did not have knowledge of the invention when the product was developed. *Hilton Davis Chem. Co. v. Warner-Jenkinson,* 62 F.3d 1512, 1519 (Fed.Cir.1995) *reversed on other grounds,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). "Unlike copying or designing around ... independent development itself provides no information about the substantiality of the differences." *Hilton Davis,* 62 F.3d at 1519. However, an independently developed product that is within the patent claims still infringes. 62 F.3d at 1519. In effect, anyone who makes only insubstantial change to a patent is liable for infringement. 62 F.3d at 1519.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 1999 WL 1565082, *5 (D.N.J.))

Page  5

ARBITRARY CUT-OFF DATE

*6 Warner-Lambert contends in its General Objection No. 6, and ABI in its General Objection No. 7, that all materials dated prior to February 11, 1997, the date of issuance of the first patent-in-suit, are not relevant to the issue of infringement because "until the patent is issued, there is no property right in it." *Marsh v. Nichols, Shepherd & Co.,* 128 U.S. 605, 612, 9 S.Ct. 168, 32 L.Ed. 538 (1888). Alternatively, Unipath argues that it is entitled to discovery of these documents "if there is any possibility that the information sought may be relevant to the subject matter of the action." *Ares-Serono, Inc. v. Organon Int'l B.V.,* 121 F.R.D. 215, 219 (D.Mass.1993).

The Court concludes, however, that pre-issuance (pre-February 11, 1997) information may be relevant or may lead to the discovery of information relevant to infringement and should be produced. *See, e.g., Warner-Jenkinson,* 520 U.S. at 37 (under the doctrine of equivalents, "whether an accused element is equivalent to a claimed element, the proper time for evaluating equivalency ... is at the time of infringement, not at the time the patent was issued.") Such documents may also be relevant to the issues surrounding the function and operation of the devices or lead to information that is. Thus, discovery documents should be produced for the time period prior to February 11, 1997.

SPECIFIC DOCUMENT REQUESTS

Unipath moves to compel Warner-Lambert to provide complete answers to Document Request Nos. 7, 8, 20, 21, 26, 31, 32, 34, 35, 43 and 51 dated September 10, 1999. Unipath also moves to compel ABI to provide complete answers to Document Request Nos. 6, 7, 19, 20, 25, 30, 31, 33, 34, and 42 propounded on the same date. Unipath's requests of ABI mirror those to Warner-Lambert, except for Warner-Lambert No. 51, so the Court will address these together.

*REQUEST NO. 7 (ABI NO. 6): ALL DOCUMENTS CONCERNING THE STRUCTURE AND OPERATION OF ALL WARNER-LAMBERT TEST PRODUCTS, INCLUDING, BUT NOT LIMITED TO, PRODUCT DRAWINGS, MANUALS, AND DOCUMENTS DESCRIBING THE SUPPRESSION OR BLOCKING OF POTENTIAL BINDING SITES,* *RELEASE OR DISPERSION OF LABELED ANTIBODIES, IMMUNOASSAY REACTIONS, CHEMICAL REACTIONS, ANTIBODY REACTIONS, ANALYTE REACTIONS, MOBILITY OF LABELED ANTIBODIES, IMMOBILIZATION OF ANTIBODIES AND DETECTION OF A TEST RESULT.*

Defendants claim that they provided these documents to Unipath and that pre-February 1997 documents are not relevant to infringement. Unipath argues that the production is incomplete, in part, because the pre-1997 documents were not provided, but also because the documents provided thus far did not provide information regarding the function of defendants' product.

First, as ordered above, defendants will produce all responsive, non-privileged pre-February 11, 1997 documents, as well as any 1999 or subsequent documents that were withheld due to production reasons. Second, Unipath's request for documents on the "operation" of defendants' products, in the Court's view, includes the function of the product. The plain meaning of "operate" is "to perform a function ... to produce an appropriate effect". WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY, 827 (1986). Such documents may be relevant or lead to the production of relevant documents and will be produced as they relate to the e.p.t.(R) products, infringement, and in particular, the function of sugar.

*7 *REQUEST NO. 8: ALL DOCUMENTS CONCERNING THE DESIGN, DEVELOPMENT AND TESTING OF ANY VERSION OF ALL WARNER-LAMBERT TEST PRODUCTS, INCLUDING, BUT NOT LIMITED TO ALL LABORATORY AND/OR DEVELOPMENT NOTEBOOKS, SPECIFICATIONS, MEMORANDA, REPORTS, ENGINEERING DRAWINGS, MEETING NOTES OR MINUTES, PRESENTATIONS, APPROVALS, TRIALS, TESTS AND STUDIES.*

Defendants agreed to produce documents relating to design (i.e., structure), but refused to produce documents related to development and testing. Defendants contend that Unipath does not need such records. Defendants argue that only the final product is relevant to infringement and that testing and development are not.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 1999 WL 1565082, *7 (D.N.J.))

Defendants further claim that they withdrew similar requests documents because such documents are not relevant to patent infringement. Instead Warner-Lambert contends that its requests focused on the development of the subject matter of the patents-in-suit which is relevant to what the inventors believed their invention was, not the development of Unipath's commercial products, which is irrelevant to infringement. *Spectrum Int'l Inc. v. Serilite Corp.,* 164 F.3d 1372, 1381 (Fed.Cir.1998) ("court may not predicate an infringement determination on a comparison of an accused product with a patentee's commercial embodiment of his claimed invention").

Alternatively, Unipath contends that research and development records are substantial evidence of patent infringement. *W.R. Grace,* 7 F.Supp.2d at 443- 44. Unipath also argues that the patent claim element at issue in this action concerns the function of a sugar that is used in the e.p.t. (R) pregnancy test devices. Unipath argues that the documents being withheld by defendants are the very research, development, and testing documents that will disclose the function of the sugar used in Warner-Lambert's products. Unipath argues that these documents are relevant to patent infringement and will be admissible, and at the very least, will likely lead to the discovery of admissible evidence of patent infringement.

Unipath also contends that Warner-Lambert's current product is the result of research, development, and testing that occurred prior to the issuance of Unipath's patents, but with full knowledge of Unipath's foreign patent specifications and presumed U.S. filings. Unipath's specifications of the patents-in-suit were made public nearly ten years before they issued in the United States. Trinity Biotech U.S.A. Corp. is the United States subsidiary of an Irish company that acquired rights to and is now a party to the supply and development agreement under which ABI manufactures and develops the accused infringing product for Warner-Lambert. Discovery from Trinity shows that ABI monitored Unipath's U.K. priority filings and that ABI considered the pending issuance of Unipath's United States patents to be material to its Supply and Development Agreement with Warner-Lambert. Also, for this reason, Unipath argues that records pre-1997 are relevant to the action of infringement.

*8 Defendants argue that any subjective belief regarding the function of the sugar in the e.p.t.(R) product is not relevant to Unipath's claims; rather the amount of the sugar used and whether it is "effective to reduce interaction" are relevant to infringement. Defendants argue that discovery provided to Unipath disclosed the exact amount of sugar used in the e.p.t.(R) product and that no development and testing documents are necessary.

The Court acknowledges that defendants claim that they provided all relevant documents from 1997 onwards relating to the "design of all parts of the e.p.t.(R))) products of Warner-Lambert". Again, the Court orders defendants to produce any responsive pre-1997 documents. The Court also finds that research and development records of the defendants may be relevant to infringement or the function of sugar or lead to the discovery of such documents. *See, e.g., Smithkline Beecham Corp. v. Apotex Corp.,* 1999 WL 311697, 2 (N.D.Ill. May 13, 1999) (holding that laboratory notebooks maintained by defendant's technicians and chemists and documents related to the development, manufacture, and regulatory approval of an accused product are reasonably related to the discovery of admissible evidence); *Afros S.P.A. v. Krauss-Maffei,* 671 F.Supp. 1402, 1439 (D.Del.1987), *aff'd,* 848 F.2d 1244 (Fed.Cir.1988) (research and development and engineering documents may be probative of infringement, are crucial to both sides, and subject to discovery); *Union Carbide Corp. v. Dow Chemical Co.,* 619 F.Supp. 1036, 1051 (D.Del.1985) (litigant may not hide research, experiments, and tests pertinent to a patent application behind the work product doctrine); *Kurtzon v. Sterling Industries,* 227 F.Supp. 393, 394 (E.D.Pa.1964) (defendant must produce engineering drawings and data having to do with the manufacture and development of the alleged infringing article if defendant shall rely on any of its products or activities as prior art to invalidate the plaintiff's patent); *Graver Tank,* 339 U.S. at 611 (noting absence of evidence on the record showing that the accused patent device was developed by way of independent research or experiments). Defendants shall provide all relevant, non-privileged documents related to development and testing to Unipath.

*REQUEST NO. 20 (ABI NO. 19): ALL DOCUMENTS CONCERNING ANY COMPARISON, INCLUDING DIFFERENCES OR*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
**(Cite as: 1999 WL 1565082, \*8 (D.N.J.))**

*SIMILARITIES IN THE SUPPRESSION OR BLOCKING OF POTENTIAL BINDING SITES, THE RELEASE OR DISPERSION OF LABELED ANTIBODIES WHEN CONTACTED BY A LIQUID SAMPLE, FLOW RATES OF LABELED ANTIBODIES, IMMUNOASSAY REACTIONS, CHEMICAL REACTIONS, ANTIBODY REACTIONS, ANALYTE REACTIONS, MOBILITY OF LABELED ANTIBODIES, IMMOBILIZATION OF ANTIBODIES AND DETECTION OF A TEST RESULT, BETWEEN ANY WARNER-LAMBERT TEST PRODUCT AND: A) ANY UNIPATH TEST PRODUCTS; OR B) ANY THIRD-PARTY TEST PRODUCT.*

Defendants contend that these were produced. Unipath contends that this document request is at issue in that such records were not produced prior to February 11, 1997. Defendants will now produce such records.

**\*9** *NO. 21: ALL DOCUMENTS CONCERNING ANY DIFFERENCES OR SIMILARITIES IN STRUCTURE OR OPERATION BETWEEN ANY WARNER-LAMBERT TEST PRODUCT AND" A) ANY UNIPATH PRODUCT; OR B) ANY THIRD-PARTY TEST PRODUCT.*

Defendants contend that these were produced. Unipath contends that this document request is at issue in that such records were not produced prior to February 11, 1997. As with Document Request No. 20, defendants will produce responsive, non-privileged documents prior to February 11, 1997.

*NO. 26 (ABI NO. 25): ALL COMMUNICATIONS BETWEEN OR AMONG WARNER-LAMBERT, SYBRON, ABI AND/OR TRINITY REGARDING ANY OR ALL WARNER-LAMBERT TEST PRODUCTS.*

Defendants object to this document request as overbroad, unduly burdensome, not relevant, expensive, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request as not relevant and not reasonably calculated to lead to the discovery of admissible evidence on the issue of infringement. ABI further objects to this document request as unreasonably cumulative, duplicative, and obtainable Warner-Lambert.

The Court agrees that this request to provide all

documents between all of these entities regarding Warner-Lambert products is overbroad. However, the parties will produce all responsive, non-privileged information related to the infringement of Unipath's patent-in-suit by e.p.t.(R) or other accused products, in particular, documents related to the functionality/process/operation of the accused products.

*No. 31 (ABI No. 30): All reports, memoranda, notes, minutes, proposals, projections, marketing requests, authorizations or presentations concerning all Warner-Lambert test products, the patents-in-suit, Unipath's test products and/or third-party test products. (Excluding "projections, marketing requests, authorizations or presentations.").*

Defendants object to this request as seeking documents protected from discovery under the attorney-client privilege or work-product immunity. Defendants also object to this request as overbroad, unduly burdensome, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the request as vague, ambiguous, overbroad, and unduly burdensome to the extent it requests all such materials "concerning" all Warner-Lambert test products, the patents-in-suit, Unipath's test products and/or third-party test products. Defendants further object to this request as overbroad and unduly burdensome and expensive to the extent it seeks "all" such materials.

The Court concludes that certain documents falling under this request should be produced. Like advertising material, marketing information would not be in Unipath's possession and may contain "evidence as to the nature and operation of the defendant's article ." *Kurtzon v. Sterling Indus., Inc.,* 227 F.Supp. 393 (E.D.Pa.1964). Defendants' primary objection to this request is that it would violate the attorney-client privilege and work product protection. The Court addresses these separately.

ATTORNEY-CLIENT PRIVILEGE

**\*10** Determination of whether the privilege or doctrine apply should be reviewed on a case-by-case basis. *Applied Telematics, Inc. v. Sprint Communications Co.,* 1996 WL 539595, 3 (E.D.Pa. Sept.18, 1996). The attorney-client privilege applies

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

if:

1) the asserted holder of the privilege is or sought to become a client;

2) the person to whom the communication was made a) is a member of the bar of a court, or his or her subordinate, and b) in connection with this communication is acting as a lawyer;

3) the communication relates to a fact of which the attorney was informed a) by his client b) without the presence of strangers c) for the purpose of securing primarily either i) an opinion of law or ii) legal services or iii) assistance in some legal proceedings, and d) not for the purpose of committing a crime or a tort; and

4) the privilege has been a) claimed and b) not waived by the client

1996 WL 539595 at 2 (*quoting Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.,* 32 F.3d 851, 862 (3d Cir.1994)). Only communications between the attorney and the client are privileged. *Applied Telematics,* 1996 WL 539595 at 2. Underlying facts are not privileged, nor are the circumstances surrounding the relationship of the attorney and client. *Applied Telematics,* 1996 WL 539595 at 2 (reviewed documents for privilege and work product); *Allegheny Ludlum Corp. v. Nippon Steel Corp.,* 1991 WL 61144 (E.D.Pa. Apr.15, 1991) (reviewed plaintiff's documents for applicability of attorney-client privilege); *Knogo Corp. v. United States,* 213 U.S.P.Q. 936, 940 (U.S.Ct.Cl.1980) (privilege does not apply to technical information as long as it is sought by other discovery techniques outside of the attorney-client privilege). In patent suits, generally, the privilege should apply to documents that are 'fundamentally legal opinions and analyses." *Hogan v. Zletz (In re Natta* ), 410 F.2d 187, 193 (3d Cir.1969). Although many courts have held that patent attorneys are mere scriveners or conduits for the inventor to the patent office, this is not the view of our court of appeals. *Applied Telematics,* 1996 WL 539595 at 3.

The privilege "does not protect technical information such as the results of research, tests, and experiments communicated to the attorney, not calling for a legal opinion or interpretation, but meant primarily for aid in completing a patent application." *Hercules Inc. v. Exxon Corp.,* 434 F.Supp. 148 (D.Del.1977). For example, a client cannot claim the privilege if he is questioned as to how an invention works, but can if asked to recall what he told his attorney about how it works.

*Knogo,* 213 U.S.P.Q. at 940. The privilege applies to the communication, but not the information contained within. *Knogo,* 213 U.S.P.Q. at 940.

If Warner-Lambert and ABI have difficulty in identifying and providing Unipath with non-privileged, responsive documents, the Court may perform an in camera review of any questionable documents.

WORK PRODUCT

**\*11** The work product doctrine was summarized by the Supreme Court in *Hickman v. Taylor* as a "general policy against invading the privacy of an attorney's course of preparation." 329 U.S. 495, 512, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ("[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney"). "The essential problem whenever work product is invoked is to prevent the use of the discovery machinery to hinder the orderly and proper administration of justice by impairing the effectiveness of a lawyer's preparation of his client's case and at the same time not to defeat the purposes of discovery by allowing suppression of relevant facts." *E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Co.,* 24 F.R.D. 416, 420-21 (D.Del.1959).

Under the doctrine, no universal protection against the disclosure of facts are provided merely because they were discovered by or came to the attention of one's lawyer while preparing for litigation. 24 F.R.D. at 420. A party cannot refuse to answer interrogatories simply because the information is within the knowledge of its attorney. 24 F.R.D. at 420. "Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Hickman,* 329 U.S. at 511:

Broadly speaking, the rule is nothing more than an extension of the requirement for a showing of good cause for the production of documents to information of all kinds developed by a lawyer in preparing his case for trial, with the addition ... that in such cases, the courts are ... put to the very difficult task of finding very good cause as distinguished from good cause. The essential problem whenever work product is invoked is to prevent the use of the discovery machinery to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

hinder the orderly and proper administration of justice by impairing the effectiveness of a lawyer's preparation of his client's case and at the same time not to defeat the purposes of discovery by allowing suppression of relevant facts.

*Du Pont,* 24 F.R.D. at 420-21. "The test to be applied is whether, in light of the nature of the documents and the factual situation in this particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Hercules,* 434 F.Supp. at 151. For patent proceedings, work product immunity has been given to:

preliminary drafts of legal documents, license agreements and/or assignments, *Jack Winter, Inc. v. Keratron Co.,* [54 F.R.D. 44 (N.D.Cal.1971) ]; opinion letters and background memoranda with respect to the scope and validity of patents and patent applications, *Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.,* [62 F.R.D. 454 (N.D.Ill.1974), *aff'd,* 534 F.2d 330 (7th Cir.1976) ]; *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* [47 F.R.D. 334 (S.D.N.Y.1969) ]; attorney's analysis or assessments of a party's position with respect to other parties in an ongoing interference, *In re Natta,* 410 F.2d 187 (3d Cir.), [*cert denied,* 396 U.S. 836, 90 S.Ct. 95, 24 L.Ed.2d 87 (1969) ], and intra-office file notes and memoranda containing summaries of conferences, legal research and comments on technical information, prepared by outside patent counsel or patent department attorneys in connection with an interference. *Natta v. Zletz,* 418 F.2d 633 (7th Cir.1969).

*12 *Union Carbide,,* 619 F.Supp. at 1050-51 ( *quoting Hercules, Inc.,* 434 F.Supp. at 151). Work product may also protect documents prepared in anticipation of proceedings before the Board of Patent Interferences. *Union Carbide,* 619 F.Supp. at 1051. However, purely factual recitation of technical data and research experiments conducted by a patentee's employees, not created in preparation for or anticipation of litigation, are not attorney work product, even if prepared by or forwarded to counsel. 619 F.Supp. at 1051. A litigant may not hide research, experiments, and tests pertinent to a patent application behind the work product doctrine. 619 F.Supp. at 1051.

*NO. 32 (ABI NO. 31): ALL DOCUMENTS CONCERNING ANY DECISION TO MARKET,*

*LAUNCH, INTRODUCE OR SELL ANY OR ALL WARNER-LAMBERT TEST PRODUCTS, INCLUDING, BUT NOT LIMITED TO, ANY COMMERCIAL AND/OR TECHNICAL BENEFITS AND/OR IMPROVEMENTS WHICH CONTRIBUTED TO SUCH DECISIONS.*

Defendants object to this request as vague, ambiguous, overbroad and unduly burdensome because it requests all documents "concerning" any decision to market, launch, introduce or sell any or all Warner-Lambert test products. Defendants also object to this request as overbroad and unduly burdensome and expensive to the extent it seeks "all" such documents. Defendants further object to this request as not relevant and not reasonably calculated to lead to the discovery of admissible evidence and because it is premature in that it seeks materials unrelated to issues of alleged infringement. ABI objects to this request as duplicative and obtainable from Warner-Lambert.

The Court concludes that this request is overbroad in that it requests information regarding all Warner-Lambert products. Defendants shall produce all non-privileged documents that relate only to the accused products, infringement, and the function/process/ operation of the products.

*NO. 34 (ABI NO. 33): WITH RESPECT TO THE PATENTS-IN-SUIT, ALL DOCUMENTS AND THINGS CONCERNING:*
*1. WARNER-LAMBERT' first knowledge thereof and/or of the invention(s) claimed and/or described therein;*
*2. WARNER-LAMBERT's first knowledge of any of the applications or patents in the chain from which the patents-IN-SUIT ISSUED OR CLAIMED PRIORITY;*
*3. WARNER-LAMBERT's first knowledge of any foreign equivalents to the patents-IN-SUIT, AND/ OR ANY OF THE APPLICATIONS OR PATENTS IN THE CHAIN FROM WHICH SUCH FOREIGN EQUIVALENT ISSUED AND/OR CLAIMED PRIORITY; AND*
*4. ANY ATTEMPTS BY WARNER-LAMBERT TO "DESIGN AROUND" THE PATENTS-IN-SUIT, ANY OF THEIR FOREIGN EQUIVALENTS, AND/ OR ANY OF THE APPLICATIONS OR PATENTS IN THE CHAIN FROM WHICH THE PATENTS-IN-SUIT OR ANY OF THEIR FOREIGN EQUIVALENTS ISSUED OR CLAIMED*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 1999 WL 1565082, *12 (D.N.J.))

*PRIORITY.*

Defendants object to this request as vague, ambiguous, overbroad and unduly burdensome to the extent it requests all documents and things "concerning" such subject matters. Defendants also object to this request as overbroad and unduly burdensome and expensive to the extent it seeks "all" such documents. Defendants also object to this request as not relevant and not reasonably calculated to lead to the discovery of admissible evidence on the issue of infringement. Further, ABI objects to this request as unduly burdensome, unreasonably cumulative, duplicative and obtainable from Warner-Lambert.

**\*13** "Copying" is evidence of willful infringement. *Princeton Biochemical, Inc. v. Beckman Indus.,* 180 F.R.D. 254, 258 (D.N.J.1997). When an attempt to copy has occurred, the Court may infer that the copier, usually one of skill in the art, made a copy with insubstantial changes. *Graver Tank,* 339 U.S. at 612. Intent is not an element of infringement.. *Warner Jenkinson Co.,* 520 U.S. at 35-36. Neither the literal infringement or the doctrine of equivalents requires it. 520 U.S. at 35-36. Motive may affect damages, but not liability. *Hilton Davis,* 62 F.3d at 1519.

Although "copying", as well as "designing around", include intent, they bear on obviousness, and the evidence of same is admissible when reviewing the validity of the patent as evidence of nonobviousness. *See, e.g., W.R. Grace & Co.-- Conn. v. Intercat,* Inc., 7 F.Supp.2d 425, 464, 475 (D.Del.1997). "A patent may be found invalid for obviousness in accordance with 35 U. S.C. § 103. *W.R. Grace,* 7 F.Supp.2d at 455-56.

Moreover, under the doctrine of equivalents, the "inquiry requires proof of insubstantial differences which may be informed by other factors such as evidence of copying, designing around or evidence that persons reasonably skilled in the art would have known of the interchangeability elements." *Boehringer Ingelheim Animal Health, Inc. v. Schering-Plough Corp.,* 6 F.Supp.2d 324, 329 (1998). The Court should evaluate factors such as copying and designing around if helpful. 6 F.Supp.2d at 331. [FN5]

FN5. Designing around" may be relevant to the

"operability, criticality or scope of the process patent claims," but permitting such discovery creates the possibility of the need to protect one's research activities from improper use by the opposition. *Bristol-Meyers Squibb Co., v. Rhone-Poulenc Rorer, Inc.,* 1996 WL 529046. 2 (S.D.N.Y. Sept. 18, 1996).

The Court finds that the issues pertaining to the knowledge of when defendants became aware of the patents-in-suit are relevant to the issue of infringement. However, they generally shall not be produced because they are primarily important to the determination of willful infringement, not liability. *Afros,* 671 F.Supp. at 1439. However, if such documents contain factual information related to the function of the device as may have been discovered during scientific study during the development of the accused products, they shall be produced.

Furthermore, defendants have not set forth in detail their defenses to infringement. To the extent that defendants shall rely on the defense of invalidity due to obviousness, defendants will produce documents related to "copying" and "designing around" in that these are related to the validity of the patents-in-suit. If defendants do not produce such information, they will not be permitted to introduce it as evidence later. Unfortunately, there may be overlap in the production of evidence when a patent case is bifurcated between liability and willfulness/ damages. *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.,* 45 U.S.P.Q.2d 1757, 1761 (1997); *see Avia Group, Int'l v. Nike, Inc.,* 22 U .S.P.Q.2d 1475, 1478 (D.Or.1991) (because willfulness is not relevant to the issue of liability, a request to stay all discovery related to willfulness until after a determination of liability is reasonable).

**\*14** *NO. 35 (ABI NO. 34): WITH RESPECT TO THE PATENTS-IN-SUIT, ALL DOCUMENTS AND THINGS CONCERNING:*
*1. SYBRON'S, ABI'S, AND/OR TRINITY'S FIRST KNOWLEDGE THEREOF OR OF THE INVENTION(S) CLAIMED AND/OR DESCRIBED THEREIN;*
*2. SYBRON'S, ABI'S, AND/OR TRINITY'S FIRST KNOWLEDGE OF ANY OF THE APPLICATIONS OR PATENTS IN THE CHAIN FROM WHICH THE PATENTS-IN-SUIT ISSUED OR CLAIMED PRIORITY;*
*3. SYBRON'S, ABI'S, AND/OR TRINITY'S FIRST*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 1999 WL 1565082, *14 (D.N.J.))

*KNOWLEDGE OF ANY FOREIGN EQUIVALENTS TO THE PATENTS-IN-SUIT, OR ANY OF THE APPLICATIONS OR PATENTS IN THE CHAIN FROM WHICH SUCH FOREIGN EQUIVALENT ISSUED OR CLAIMED PRIORITY; AND*

*4. ~ANY ATTEMPTS BY SYBRON, ABI, AND/OR TRINITY TO "DESIGN AROUND" THE PATENTS-IN-SUIT, ANY OF THEIR FOREIGN EQUIVALENTS, OR ANY OF THE APPLICATIONS OR PATENTS IN THE CLAIM FROM WHICH THE PATENTS-IN-SUIT OR ANY OF THEIR FOREIGN EQUIVALENTS ISSUED OR CLAIMED PRIORITY.*

See the Court's response to Document Request No. 34.

*NO. 43 (ABI NO. 42): ALL DOCUMENTS CONCERNING ANY COMPARATIVE TEST OR INVESTIGATION CONDUCTED BY OR ON BEHALF OF WARNER-LAMBERT, SYBRON, ABI, AND/OR TRINITY TO DETERMINE WHETHER OR NOT ANY WARNER-LAMBERT TEST PRODUCT IS COVERED BY ANY CLAIM OF THE PATENTS-IN-SUIT.*

On September 30, 1999, the Court ordered Warner-Lambert and ABI/Sybron to produce all comparative testing of Warner-Lambert's test products with Unipath's and/or other third parties' test products. Defendants argue that such comparisons are not relevant to the issue of patent infringement and that it would be reversible error to compare the accused device to Unipath's commercial product or other entities' products. *Zenith Labs., Inc. v. Bristol-Meyers Squibb Co.,* 19 F.3d 1418, 1423 (Fed.Cir.1994), *cert. denied, Bristol-Meyers Squibb Co. v. Zenith Labs.,* 513 U.S. 995, 115 S.Ct. 500, 130 L.Ed.2d 409 (1994) ("it is error for a court to compare in its infringement analysis the accused product or process with the patentee's commercial embodiment or other version of the product or process; the only proper comparison is with the claims of the patent"). Alternatively, Unipath argues that this information should be provided, in part, because it supplied Warner-Lambert with comparative product testing information.

Based on the foregoing, the Court will clarify its Order. *See Brooktree Corp. v. Advanced Micro Devices,* 977 F.2d 1555, 1577 (Fed.Cir.1993) (" [d]etermining patent infringement requires

examination of the patent claims and a comparison of those claims to the alleged infringing product, not a comparison of the accused product and the patentee's product). Although a court, during claim construction, may not rely on extrinsic evidence to determine the meaning of a disputed term in the patent when it is clear from intrinsic evidence, the court may rely on such evidence when attempting to understand the underlying technology. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1584-85 (Fed.Cir.1996); *see Markman,* 52 F.3d at 980-81 (extrinsic evidence may be used to understand the patent, but cannot vary or contradict the claim). Based on the foregoing, the Court concludes that such documentation may be relevant, but may not be used by the Court in its analysis of the claims as noted above. However, such information may provide Unipath with relevant information or lead to the discovery of admissible evidence. To that extent, defendants will provide documents relating to comparative testing.

*\*15 NO. 51: ALL DOCUMENTS AND THINGS THAT WERE RELIED UPON, REFERRED TO, OR OTHERWISE CONSIDERED IN PREPARING WARNER-LAMBERT'S RESPONSES TO ANY OF PLAINTIFF UNIPATH'S FIRST SET OF INTERROGATORIES TO DEFENDANT WARNER-LAMBERT.*

Warner-Lambert objects to this request as overbroad and unduly burdensome and expensive to the extent it seeks "all" such documents. Warner-Lambert also objects to this request as vague, ambiguous, overbroad and unduly burdensome to the extent it requests all documents and things "considered" in preparing Warner-Lambert's responses to interrogatories.

The Court concludes such information may be relevant or could lead to the discovery of admissible evidence, so defendants are required to produce any non-privileged documents.

*PRODUCTION OF ABI'S DOCUMENTS IN SAN DIEGO*

On September 26, 1999, Unipath representatives traveled to San Diego to inspect ABI documents, which allegedly included 32 double-sized banker's boxes of documents related to the product master file and design change records. Defendants contend

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 1999 WL 1565082, *15 (D.N.J.))

that this provided full discovery on "every e.p.t.(R) product of Warner-Lambert since 1997." David Lerner, Letter of Sept. 22, 1999. Because these boxes were in the form of those "in the regular course of business" and allegedly included non-e.p.t.(R) documents, a paralegal representing ABI acted as gatekeeper. To view a document, Unipath was required to look at a copy of ABI's bill of materials listing of components parts and assembly steps for the e.p . t.(R) product and incoming specification identification sheets for raw materials. From these documents, Unipath was required to give the paralegal the part or procedure numbers and then the paralegal would retrieve any related documents from the commingled documents. Despite the protective order, defendants only offered 1997 through 1998 documents. Defendants used February 11, 1997 as a cut-off date based on the issue date of the patents-in-suit and barred 1999 documents because their use would affect operations.

By way of their document products, defendants advised the Court that Unipath would "know everything about [defendants'] product which they can use to compare it to the claims and address the issue of patent infringement. There is nothing else to be known nor to be produced, Your Honor ..." (Proceedings of Sept. 23, 1999, at 4). Moreover, defendants claimed that they would "make documents available to the plaintiff that will tell them exactly how much sugar is in there and what the sugar does. That's what we've done." (Proceedings of Sept. 23, 1999, at 6).

Alternatively, Unipath contends that this procedure did not enable it to conduct a proper document review. Unipath argues that the search was impeded by the fact that only one paralegal at the onset was assisting in preparing the documents for their review. Furthermore, Unipath contends that because of the gatekeeping procedure, it did not have complete access to the documents. Although defendants claim that all documents requested were provided within the boxes monitored by the paralegal, Unipath claims that its representatives could not find them.

*16 The Court concludes that the gatekeeper procedure was creative but not effective. Therefore, the documents must be produced in an alternate manner that will offer Unipath a fair opportunity to review all produced documents. Unipath shall not be subjected to the mere chance that some luck will enable it to correctly select a part off an item list that corresponds to all documents that it needs, with the chance that if it errs, it misses relevant documents. With such a procedure, defendants may claim that they "provided" all requested documents to Unipath for its review. Such a tactic is not fair, and the Court will not allow it. Defendants will make arrangement with Unipath for its review of these documents to take place no later than March 1, 2000. Furthermore, defendants will include pre-February 11, 1997 documents as well as responsive 1999 documents.

All parties must respond with information responsive to the requests no later than 30 days from the date hereof. If not, and documentation later appears that was responsive to the request, the parties will not be permitted to use it at trial. The Court also reminds the parties that Rule 26(e) sets forth that they have a duty to supplement the information they provide if they later learn that the response needs correction or if the Court so orders. The new discovery cut-off date is March 31, 2000. I will conduct a status conference at 11:00 a.m. on April 12, 2000.

CONCLUSION

Based on the foregoing, Unipath's motion to compel is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

Not Reported in F.Supp.2d, 1999 WL 1565082 (D.N.J.)

Motions, Pleadings and Filings (Back to top)

. 1999 WL 34013223  (Trial Pleading) Plaintiff's Reply to Counterclaim (Mar. 11, 1999)Original Image of this Document (PDF)

. 1999 WL 34013224  (Trial Pleading) Third-Party Complaint (Mar. 4, 1999)Original Image of this Document (PDF)

. 1999 WL 34013222  (Trial Pleading) Answer and Counterclaim (Feb. 18, 1999)Original Image of this Document (PDF)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
**(Cite as: 1999 WL 1565082, \*16 (D.N.J.))**

. 1999 WL 34013225 (Trial Pleading) Complaint
(Jan. 8, 1999)Original Image of this Document
(PDF)

. 2:99CV00101 (Docket) (Jan. 8, 1999)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# O

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamal M. Edwards
To Call Writer Directly:
(312) 861-2464
jedwards@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: (312) 660-0719

January 11, 2006

**VIA E-MAIL**

David J. Cerveny, Esq.
Proskauer Rose LLP
One International Place, 14th Floor
Boston, MA 02110-2600

       Re:   *MIT v. Harman Int'l Indus. Inc.*,
              No. 05-10990-DPW

Dear Dave:

This letter responds to your letter received earlier today regarding Dr. Davis' production. We do not understand your letter. We did not allege that Dr. Davis completely failed to produced documents as required by the subpoena. Instead, we have listed for your review and response, several types of documents that we expected to find in Dr. Davis' production, but have not found therein.

Your letter today, states that "if [we] have specific concerns regarding Dr. Davis' production" MIT will address them. Yet, MIT did not address any of the "specific concerns" outlined in my letter. Thus, we again ask that with respect to each of the deficiencies noted below, you confirm the following:

(1) Whether you asked Dr. Davis to search for the specified types of documents;

(2) Whether the search yielded any documents;

(3) Whether MIT or Dr. Davis is withholding any that were found; and

(4) If Dr. Davis has no such documents, or could not find them; to state when and why they were no longer exist.

London          Los Angeles          Munich          New York          San Francisco          Washington, D.C.

# KIRKLAND & ELLIS LLP

David Cerveny , Esq.
January 11, 2006
Page 2

We again raise the following "specific concerns" regarding categories and types of documents which appear to be missing from Dr. Davis' production.

- inventor notebooks

- lab notebooks

- experimentation and testing notes

- experimentation and testing logs

- prototypes, including a working prototype and evidence of reduction to practice

- demonstration materials and promotional materials

- confidentiality agreements for third-party experimentation and demonstrations

- pages, images, drafts and notes used to create and present Dr. Davis website, including drafts, revisions and modifications

- conference presentation notes from professional conferences and presentations

- thesis notes, drafts, revisions

- communications between Dr. Davis and MIT

- communications between Dr. Davis and his thesis advisor

- communications between Dr. Davis and Mr. Schmandt

- communications between Dr. Davis and the Media Lab

- Dr. Davis' employment agreement or compensation agreement with MIT and/or the Media Lab

- Documents showing any compensation paid or to be paid to Dr. Davis by MIT and/or the Media Lab.

# KIRKLAND & ELLIS LLP

David Cerveny , Esq.
January 11, 2006
Page 3


We reserve the right to note additional deficiencies.  We look forward to your timely response so as to avoid any need for Harman to seek the Court's assistance on this issue.

Very truly yours,

Jamal M. Edwards

JME/slm

cc:    Robert J. Muldoon, Esq.

# P

# NEC

NEC Solutions (America), Inc.
Legal Division
1250 N. Arlington Heights Road, Suite 500
Itasca, IL 60143-1248
Tel 630.467.5250
Fax 630.467.5230

*Via Facsimile*

Ms. Courtney A. Clark                                    May 5, 2006
Sherin and Lodgen LLP
101 Federal Street
Boston, MA 02110

Re:    Subpoena- MIT vs. Harman International

Dear Ms. Clark:

NEC Solutions America, Inc. has finished its search for documents in regards to the subpoena your client issued on April 12, 2006.

After a diligent search, NEC Solutions America, Inc. has determined that they are not in possession of any documents responsive to the subpoena.

If you have any questions, please do not hesitate to give me a call.

Sincerely,

NEC Solutions (America), Inc.,
Dylan Dunavan
Counsel