**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | |
| Plaintiff, | Civil Action No.: 05-10990 DPW |
| v. | Magistrate Judge Judith G. Dein |
| HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, | |
| Defendant. | |

**MIT'S OPPOSITION TO HARMAN'S
MOTION TO COMPEL DISCOVERY OF DOCUMENTS
MIT HAS IDENTIFIED AS PROTECTED ON ITS PRIVILEGE LOGS**

Harman's last minute motion, filed at the close of fact discovery, appears to be nothing more than a tactical move intended to further increase the cost of this litigation to MIT. Harman's motion raises a myriad of issues regarding over 300 documents on MIT's privilege log. Importantly, Harman does not devote any significant effort in its motion to explain how any of the materials it seeks could remotely be used to support any of its defenses. Instead, Harman seems to use this motion to try to pry into MIT's internal notes disclosing the thought processes of its attorneys and licensing officers relating to its licensing efforts of the patent in suit -- information which is both attorney-client and work-product privileged.

The documents that Harman seeks can be broken down into four categories -- three of which relate to MIT's work-product documents, and one of which relates to privileged documents which MIT  shared with a third party that had a common interest in the patent.  As set out below, MIT will respond to Harman's motion based on these categories: Category I documents that are subject to both the attorney-client privilege and work-product protection; Category II documents that were created in the course of assertion of the patent against Harman;

Category III documents created in with the course of the assertion of the patent against other third parties; and Category IV documents relating to attorney-client documents shared with NEC, which had a common interest in the matters.

In responding to Harman's motion, MIT has carefully reviewed the withheld documents, and in the interest of simplifying the issues presented, MIT is removing a  number of the documents Harman has requested in its motion from MIT's privilege log and will produce the documents now.[1]  Also, in reviewing the 300 plus documents identified in Harman's motion, MIT has determined that a few of the documents on its privilege log do not relate to the patent in suit or any of the issues in this case, and were incorrectly identified on the log.  Those entries are being removed from MIT's privilege log.[2]  MIT is serving a new privilege log on Harman to reflect these changes.

## ARGUMENT

### I.    MIT Documents Created During Its Assertion Of The Patent in Suit Are Properly Withheld as Work-Product

Harman's principal argument seems to be the naked assertion, without any factual support, that MIT's privileged documents were "created primarily to generate licensing revenue and not due to threat of litigation," and therefore, regardless of the subject discussed in the

---

[1]    MIT will produce the following documents from its privilege log: 56, 112, 165, 167, 175, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 201, 204, 210, 217, 220, 221, 222, 223, 228, 230, 234, 235, 237, 238, 260, 262, 263, 266, 267, 269, 270 271, 275, 281, 282, 283, 284, 285, 286, 287, 288, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 461, 462, 463, 464, 470, 530, 531, 532, 544, 549, 550, 551, 552, 553, 554, 555, 556, 570, 572, 573, 576, 577, 579, 580, 581, 582, 584, 585, 592, 593, 594, 599, 611, 617, 618, 763, 764, 765, 766, 768, 776, 778, 780, 781, 786, 787, 788, 789, 790, 794, 797.

[2]    The following entries have been removed from MIT's privilege log because the documents are non-responsive: 211, 213, 549, 550, 780 and 783.

document, they are not entitled to any work-product privilege. (Harman's Br. at 9). Harman, however, offers no support for its argument that these documents were not created in the context of a litigation threat, nor can it, because it previously had argued to this court that MIT's licensing representatives *expressly* threatened litigation against it during these very same license negotiations. In fact, it was on the basis of those alleged threats that Harman brought a declaratory judgment action against MIT in the Northern District of Illinois. Now flip-flopping, Harman seeks MIT's internal documents from MIT's representatives, regardless of whether they contain opinions or thoughts relating to their strategy in negotiating and enforcing their patent.

Importantly, to obtain work-product documents, Harman must convince this court that it has a "substantial need for the materials and is unable to obtain a substantial equivalent by other means." Harman's motion utterly fails to meet this standard, however. Instead, Harman weakly argues that it "needs" MIT's protected documents because they may relate "to its defenses, including non-infringement, invalidity, and unenforceability as well as the assessment of damages," and Harman provides examples of the types of documents it hopes to find, including documents relating to "field trials, public use, conception and reduction to practice." MIT's counsel has carefully reviewed the documents on the log, and none relate to any of these issues. To the extent MIT is in possession of these types of documents, they have already been produced to Harman. Essentially, Harman's motion is an exercise in futility because the protected documents Harman seeks do not contain the information that Harman claims it needs.

Moreover, at the same time Harman presses for these MIT documents, Harman has refused to produce similar documents which it has kept on its privilege log (*e.g.*, Harman entry nos. 50, 241, 242, 269 and 323 discussed below). *See* Harman's privilege log at Ex. 1.[3] Just

---

[3]    Exhibit 1 is attached in support of MIT's opposition.

because Harman's licensing representative, Mr. Hart, went to law school does not mean documents he was copied on should be treated any differently than documents created by MIT's licensing representatives, who have as much experience licensing patents as Mr. Harman. And, the law is in accord -- it is irrelevant whether the person involved was an attorney or an agent of the party -- documents discussing a parties views of the case are work-product. *See* FED.R.CIV.P. 26(b)(3); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141-42 (D. Mass. 2004).

There is a difference between documents "created primarily to generate licensing revenue" and those generated during licensing negotiations with the specter of patent litigation. MIT has not argued that all of its licensing-related documents were *per se* created in anticipation of litigation, and it has produced a number of them. MIT has simply contended that the particular licensing-related documents that MIT has withheld are privileged, because they contain the thoughts and impressions of its agents on the assertion of the MIT patent.

Nothing can be more clearly work-product privileged. This motion is merely an exercise by Harman to force MIT to respond regarding over 200 documents on its log.

**A.    Many of the Documents Harman Seeks
Are Protected By the Attorney-client Privilege (Category I)**

First, the Category I documents that Harman argues should be produced because they are not subject to "work-product" protection are, in fact, subject to attorney-client protection. To the extent Harman has not challenged MIT's attorney-client protection claims as to these documents, its argument for the Category I entries should be denied.

The following documents were designated both work-product and attorney-client privileged in MIT's log. To clarify the record for this motion, MIT has reviewed these documents and amended its log to add the following information to each entry:

- **105** (redacted handwritten notes by an attorney reflecting the attorney's mental impressions regarding the '685 patent)
- **151** (memo and handwritten notes reflecting legal advice of MIT counsel relating to the '685 patent)
- **209** (email reflecting request for information by attorney Keith Vogt in order to render legal advice)
- **328** (memo and handwritten notes reflecting legal advice of MIT counsel relating to the '685 patent)
- **239** (memo reflecting legal advice previously provided relating to prosecution of the '685 patent)
- **331** (reflects legal advice previously provided relating to the '685 patent)

The following additional documents were designated on the log as work-product privileged, and thus inadvertently failed to add that the basis of withholding included attorney-client privilege. Again, MIT has amended its privilege log by adding attorney-client designations and providing the added descriptions below, to clarify the record for this motion:

- **3** (reflecting legal advice previously provided in the context of patent prosecution)
- **17** (email with handwritten annotations reflecting legal advice previously provided)
- **103** (memo reflecting legal advice of MIT counsel relating to the '685 patent)
- **196** (email reflecting legal advice from attorney Joe Grear relating to licensing)
- **212** (reflects legal advice from attorney J. Weidemier)
- **229** (email providing information requested by attorney Vogt for the purpose of rendering legal advice)
- **232** (email reflecting legal advice relating to licensing)
- **247** (email with handwritten notes reflecting legal advice relating to licensing)
- **334** (email reflecting legal advice relating to licensing)
- **337** (handwritten notes reflecting discussions with counsel in context of litigation with Harman)
- **571, 574, 575, 578, 583, 589, 603, 604** (emails reflecting discussions with Harman and with MIT's counsel relating to licensing)
- **761** (email reflecting discussion with counsel in which legal advice was provided)
- **782** (post-suit email reflecting advice of outside counsel regarding discovery)

As can be seen by these descriptions, all these documents are attorney-client privileged on their basis of the privilege log description. There is no basis for Harman to gain access to these documents.

**B.    Documents Written by MIT's Licensing Officers and Agents Discussing The Merits of MIT's Negotiating Positions and Patent Are Protected Work Product, As They Were Created in The Context of Anticipated Litigation**

Harman also attempts to get MIT's internal documents that reflect the "impressions, observations and opinions" of MIT's representatives during the course of their patent assertion efforts. Clearly, the "impressions, observations and opinions" of MIT's representatives made in the course of assertion of their patent and their pre-suit licensing negotiations, were made with an "eye toward litigation." *See American Optical Corp. v. Medtronic*, 56 F.R.D. 426, 430-31 (D. Mass. 1972).

This Court has held that "protection for opinion work product should be nearly absolute." *In re Grand Jury Subpoena*, 220 F.R.D. at 145 (internal quotation marks and citations omitted). Judge Young has noted that "[t]he burden of establishing that an exception to the applicable privilege applies rests with the party seeking discovery of the allegedly privileged materials or information." *In re Grand Jury Subpoena*, 220 F.R.D. at 140-41.

Harman's argument seems to be that because MIT's work-product documents were created by non-lawyers (*see* Harman's Br. at 6), some lesser standard should apply. But, Federal Rule of Civil Procedure 26(b)(3) states that work-product protection is accorded to the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." FED.R.CIV.P. 26(b)(3) (emphasis added); *see also In re Grand Jury Subpoena*, 220 F.R.D. at 141-42. MIT's licensing representatives, including Robert Swartz and Jack Turner, were intrinsically involved in legal, strategic and tactical decisions and regularly consult with counsel. Documents created by MIT's licensing representatives with an "eye toward litigation" are entitled to protection under the work-product doctrine. *Id.*; *see American Optical*, 56 F.R.D. at 431.

1.      **Documents Created In the Context of**
        **Patent Assertion Against Harman (Category II)**

- **Post-suit:** 336
- **Pre-suit but anticipating litigation with Harman:** 465, 493, 516, 528, 558, 559, 562, 564, 566, 567, 568, 568, 605, 762

MIT's documents created in the course of its assertion of the patent against Harman are classic work-product.  For example, entry no. 336 is an email created after the lawsuit was filed in the Northern District of Illinois and involves an MIT licensing representative, Jack Turner, acting as a litigation manager.  Entry No. 465 is a document by Robert Swartz containing his impressions relating to patent infringement.  Entry nos. 566 and 567 are emails between Robert Swartz and Chris Schmandt (one of the '685 inventors) revealing their impressions from meetings with Harman.  All of these meetings and notes were created in the context of the enforcement of the MIT patent.

2.      **Documents Created In The Context**
        **Of Licensing/Assertion of Patent  With Third Parties (Category III)**

Harman has also sought a number of internal MIT documents created with respect to the assertion of the patent against third parties.  The fact that these documents relate to third-party enforcement efforts, or that the litigation threatened in these circumstances was not the present litigation against Harman, is irrelevant.. This Court has held that "work product protection [should] be extended in subsequent litigation, even if it is 'unrelated'… ." *In re Grand Jury Subpoena*, 220 F.R.D. at 150.

All that is required for work-product to attach is that the writer of the document "have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable. … It does not matter whether the anticipated litigation ever occurs." *In re Grand Jury Subpoena*, 220 F.R.D. at 147 (internal quotation marks and citations omitted).

Indeed, the documents Harman seeks have nothing to do with any issue present in this case --

they do not bear on conception or reduction to practice of the inventions of the '685 patent,

validity or enforceability of the '685 patent, nor infringement.  They relate to MIT's views as to

the strategy and compromises that should be made in licensing and litigating its patents.  The

documents are not probative of any issue in this case, because only what was ultimately offered

to third parties in the licensing context (which MIT has already produced) could be relevant, at

all, to the issue of royalty.

    The documents at issue here include:

- Documents related to licensing to Zexel:  168, 169, 170, 227, 231, 243-258, 259, 261, 265, 268, 272, 273, 274, 330, 540
- Documents related to Motorola:  163, 329, 583, 586, 587, 590, 595, 596, 598, 600, 760, 784
- Documents related to Go There:  82,172, 173, 619, 620, 621
- Documents relating to various other third parties: 166, 171 (Bosch), 226, 270 (Bosch), 176-181, 205, 224 (Secnav, Hughes/GM), 233, 240 (Chatham group), 241 (Garmin), 608, 609, 610, 779 (Garmin and others), 277 (Hertz/Ford), 264 (Hertz/Ford), 339 (Hertz/Ford), 278 (Garmin), 279 (Garmin), 606 (Garmin), 607 (Garmin), 280, 333, 334, 468, 471, 517-523, 529, 612-616, 777

    With respect to Zexel, these documents all relate to MIT's interest in licensing its patent

to Zexel, and thus relate to licensing and enforcement strategies in that regard.  As examples of

privileged documents relating to licensing with Zexel, entry nos. 168, 169 and 170 are emails

involving MIT licensing representatives discussing their licensing strategy, the potential for

litigation, and patent infringement against Zexel.

    With respect to Motorola, these documents all relate to MIT's interest in licensing its

patent to Motorola, and thus relate to licensing and enforcement strategies in that regard.  As

examples of privileged documents relating to licensing with Motorola, entry nos. 586 and 587

are emails between Robert Swartz and Chris Schmandt regarding licensing strategy and possible infringement allegations.

With respect to Go There, these documents all relate to MIT's interest in licensing its patent to Go There. Entry No. 82, for example, is an email from Jack Turner relating to licensing strategy and reflecting legal advice previously provided. Entry nos. 172 and 173 also relate to license strategy and reflect legal advice previously provided.

And, finally, with respect to the other third parties, these entries relate to licensing negotiations with various parties who were believed by MIT to be infringing (or likely to infringe) the '685 patent. For example, entry nos. 333 and 334 discuss patent infringement by auto makers and future licensing and litigation strategy.

### C.    Harman Can Not Argue That Its Similar Internal Licensing Documents Can Be Withheld, While MIT's Must Be Produced

In its biggest flip-flop, Harman demands these documents from MIT, while withholding dozens of the same types of documents it seeks by its motion. So, while Harman argues that MIT is withholding documents relating to MIT's licensing efforts, Harman is withholding its own documents relating to Harman's licensing contacts. And, the documents Harman has withheld do not just relate licensing negotiations with MIT, they relate to licensing negotiations with a number of parties, including MIT.

- **Documents Reflecting License Negotiations With MIT** (Harman Entry Nos. 24, 31, 33, 34, 45, 50, 53, 61, 63, 64, 196, 197, 291-297, 302-305) (*see* Ex. 1)

- **Documents Reflecting License Negotiations With Navtech** (Harman Entry Nos. 241, 242, 246, 315, 316, 318, 319, 321) (*see* Ex. 1)

- **Documents Reflecting License Negotiations with Zeevi** (Harman Entry Nos. 269-289, 306) (*see* Ex. 1)

- **Documents Reflecting Other License Negotiations** (Harman Entry Nos. 323-330) (*see* Ex. 1)

Apparently, Harman contends that if its licensing agent is an attorney, all the documents become privileged -- even if they are of the same type of licensing documents as MIT. For example, Harman entry No. 50 claims attorney-client and attorney work product privilege for correspondence relating to "preparation for meetings with MIT." Harman entry Nos. 241 and 242 claim attorney-client privilege on emails "regarding NavTech licensing." Harman entry No. 269 claims attorney-client privilege on an email "regarding the Zeevi patent." Harman eventually purchased a license to practice the invention claimed in the Zeevi patent. Harman entry No. 323 claims attorney-client and attorney work-product protection on an email (and attachment) regarding a "license agreement and draft license agreement."

Rule 26(b)(3) does not treat lawyers differently from other party representatives for purposes of establishing work-product protection. *See In re Grand Jury Subpoena*, 220 F.R.D. at 141-42. If Harman's in-house licensing agents, Hart and Peracchio, happen to be lawyers, it doesn't mean that their business related documents suddenly obtain some higher level of protection. Certainly, they should not be treated any differently from Swartz and Turner, for purposes of assessing work-product protection.[4]

## II. MIT And NEC Shared A Community Of Interest During Prosecution Of The '685 Patent, As Their Legal Interests Were Identical (Category IV)

Harman also seeks a number of documents that it argues that MIT "waived" privilege on when it shared them with NEC -- a third party which had a common interest in the '685 patent. NEC was a licensee of the '685 patent, a directed sponsor the Back Seat Driver research and a sponsor of the MIT Media Lab. For these documents, which Harman never challenges are

---

[4]     If the Court decides that documents created by MIT's licensing representatives were created primarily for business purposes, as Harman has argued, MIT should be given the opportunity to review Harman's similar documents to determine whether Harman's in-house counsels were acting as business representatives or legal representatives.

privileged on their face because NEC shared a common interest with MIT relating to the '685

patent, there was no waiver. *See In re Regents of the Univ. of California*, 101 F.3d 1386, 1389

(Fed. Cir. 1996). Harman does not seem to dispute that the attorney-client privilege applies to

the documents it demands relating to NEC. Instead, Harman questions whether the privilege

that did attach was waived through sharing of the documents with NEC. Because NEC and MIT

had identical legal interests in the context in which these documents were drafted (prosecution of

the '685 patent), a community of interest protects the privilege from waiver here.

The Federal Circuit precedent is clear:

> When the same attorney represents the interests of two or more entities on the
> same matter, those represented are viewed as joint clients for purposes of
> privilege. … [T]he joint client doctrine typically has been applied to overcome
> what would otherwise have constituted a waiver of confidentiality because a
> communication had been shared between two clients.

*Regents*, 101 F.3d at 1389 (upholding community of interest doctrine for communications

between optionee/licensee's attorney and university). In *Regents*, the Federal Circuit noted the

applicability of this issue in connection with patent rights, citing *Baxter Travenol Labs, Inc. v.*

*Abbott Labs.*, which stated:

> A community of legal interests may arise between parties jointly developing
> patents; they have a common legal interest in developing the patents to obtain
> greatest protection and in exploiting the patents.

1987 WL 12919, *1 (N.D. Ill. June 19, 1987); *see Regents*, 101 F.3d at 1389.

In *Regents*, as is true here, the court found persuasive that the licensee was more than a

typical non-exclusive licensee, and

> shared an interest that [the academic institution] would obtain valid and
> enforceable patents. [The academic institution] is a university seeking valid and
> enforceable patents to support royalty income. [The licensee] is an industrial
> enterprise seeking valid and enforceable patents to support commercial activity.
> Valid and enforceable patents on the UC inventions are in the interest of both
> parties.

*Regents*, 101 F.3d at 1390.[5]  Similarly, NEC was not a normal non-exclusive licensee, as Harman has portrayed it.

Harman attempts to distinguish the facts in *Regents* by focusing on the difference between an exclusive and a non-exclusive license.  But, the real question is whether the parties had an identity of legal interests.  *MPT, Inc. v. Marathon Labels, Inc.*, cited by Harman, is in fact directly on point in MIT's favor.  2006 WL 314435, at *6 (N.D. Ohio Feb. 9, 2006)(upholding finding of community of interest to patent holder and assignee) (attached as Ex. L to Harman's Motion).  In *MPT*, the court discussed the application of the community of interest doctrine to patent holders and licensees, in the context of documents created during patent prosecution.  The court noted that "the Federal Circuit [has] found that a patent purchaser and a licensee or inventor have a common interest in successfully prosecuting patent applications."  *Id.* at *7.

Here, NEC was not just a licensee but also a sponsor of both the Back Seat Driver project and the MIT Media Lab.  A purpose of NEC's sponsorship was to support the development of a useful and valuable technology and protect NEC's investment with a patent.

While the Court noted in *MPT* that there "must be more to the relationship than a bare nonexclusive license," here, as in *MPT*, there is more -- the "relationship between [MIT and NEC] reaches far beyond that of a typical nonexclusive licensee."  *Id.  Here, NEC was not only a licensee of the '685 patent, it was the directed sponsor of the research underlying the Back Seat Driver invention and the '685 patent and NEC was a sponsor of the MIT Media Lab*.  The research sponsorship agreement entitled it to a  license on inventions that resulted from that research, including the inventions taught by the '685 patent.  As a research sponsor, NEC

---

[5]    There, as here, the licensee agreed to pay foreign patent costs.  *Id.* at 1389; Ex. R to Harman's Motion, filed under seal.

supplied the inventors with funding and equipment to carry out experiments. In return, NEC received reports on the progress of the research and the right to a license should any patents issue. Because NEC had the right to a license, NEC had an interest in ensuring that a valuable and enforceable patent issue. Clearly, here, MIT and NEC "had an identical legal interest in successfully prosecuting the patents." *Id.*

Harman claims that the information it seeks is highly relevant because it may bear on NEC's collaboration (including progress reports and demonstrations) with MIT during the Back Seat Driver research, and conception and reduction to practice of those inventions. MIT's counsel has reviewed the documents, and none of these documents reflect or concern such collaboration, nor do any of these documents relate to conception or reduction to practice of the '685 patent.

Entry Nos. 2, 6, 23, 36, 40, 41, 44, 55, 84, 116, 120, 122, 128, 139, 144, 214, 215, 630, 633, 647, 663, and 774 were created after NEC and MIT had executed their license agreement, and pertain purely to prosecution of the '685 patent -- an issue in which NEC and MIT shared identical legal interests in having a valid patent issue from the prosecution work of Choate, Hall & Stewart.[6]

While Entry Nos. 7, 21, 27, 29, 39, 68, 124, and 644 were created prior to execution of this agreement, it was known at the time those documents were created that a license agreement would issue as NEC was a Media Lab Sponsor -- indeed, the directed sponsor of the Back Seat Driver research that led to the '685 patent's filing. In fact, the 1988 Sponsorship Agreement for the Back Seat Driver research explicitly states that,

---

[6]    Entry Nos. 116, 120, 122, 128 and 630 are correspondence between NEC and Choate, Hall & Stewart, patent prosecution counsel, relating to prosecution of the '685 patent. The fact that NEC had independent contact with prosecution counsel shows that NEC had a common legal interest with MIT.

[i]n the event that a patent application on such an invention, or any invention which is conceived or reduced to practice during the Sponsor's period of membership in the Media laboratory's Research Consortium, is filed by the Institute, the Sponsor (subject to third party rights, if any, in such invention) shall be entitled to the following:

　　　　1.　　a non-exclusive, worldwide, non-commercial, non-transferable, royalty-free license for internal research purposes, only; and

　　　　2.　　a non-exclusive, non-transferable (without the right to sublicense), royalty-free license, in the United States and/or any foreign country elected by the Sponsor (subject to (C) below) to make, have made, use, lease and sell products embodying or produced through the use of such invention…

(*See* Ex. R, filed under seal in support of Harman's Motion.)

Thus, those documents (which also pertain solely to prosecution of the '685 patent) were properly withheld as within the community of interest.

Additional detail with respect to certain of these entries may assist the Court in its determination:

- Entry No. 7 was withheld not only on attorney-client privilege grounds, but also work product grounds. The last page of Entry No. 7 is a memo to file by MIT attorney Jean Weidemier -- a page that was never shared with anyone at NEC. Thus, even if the Court deems the redaction on the first page of MIT 06572-06577 to be waived, the final page of the entry should remain privileged because it was not communicated to NEC and it contains the mental impressions of an MIT attorney relating the application of the '685 patent.

- Similarly, the redactions logged as Entry No. 27 are handwritten notations of attorney Weidemier and a draft license agreement and draft correspondence, neither of which were communicated to NEC. While the cover letter (which MIT produced) was a communication to NEC, there is no reason to believe that the documents attached thereto were so communicated. Thus, MIT appropriately withheld those documents as attorney-client privileged and attorney work product. The same is true of Entry No. 29 -- MIT withheld it on attorney-client and work product bases, as the redacted information is attorney Weidemier's handwritten notations and draft of a license agreement, neither of which were shared with NEC. Similarly, the second page of Entry No. 663 is a communication from attorney Weidemier to Choate, with no copy to anyone at NEC. Thus, that communication was not shared with NEC.

### III.    MIT Is Producing the Non-responsive Information Harman Seeks

Harman objects to five privilege log entries because Harman says that these entries were logged as non-responsive -- entry nos. 98, 531, 532, 533 and 534. Entry No. 98 was logged as attorney-client privileged, not non-responsive. It is a document reflecting legal advice relating to patent prosecution produced in redacted form at MIT06836-43. Entry nos. 533 and 534 were produced in their entirety on May 8, 2006, well before Harman's motion, as MIT06668-6700 and MIT06701-34, respectively. Entry nos. 531 and 532 were produced in redacted form. The redactions contain information discussing patents unrelated to the patent in suit and unrelated to the subject matter of the patent in suit. However, in the interest of moving things forward MIT is producing these entries in their entirety.

### IV.    Harman's Secondary Arguments

Finally, Harman raises some secondary arguments relating to the timing of MIT's document production and Harman's supposed need for secondary depositions. Harman argues that MIT improperly produced documents after depositions. Harman argues that the documents should have been produced before the depositions and that the documents would have aided in Harman's deposition preparation. Tellingly, however, Harman does not provide one concrete example of any prejudice Harman suffered because of the timing of MIT's production. To the limited extent MIT did produce documents after depositions, it was because those documents were identified during the deposition. This is perfectly normal in complex litigation.

In any case, this argument is misplaced considering Harman's April and May document dump containing millions of pages interspersed with Harman's most relevant documents.

### A. Harman Has Only Itself To Blame For This Late Discovery Motion, Apparently Raised At the Eleventh Hour As Another Delay Tactic

MIT produced its first privilege log (containing the first 460 entries) on October 24, 2005. Although Harman tries to fabricate a record of prior complaints, the first time Harman provided any substantive issue about MIT's privilege log was by letter on April 21, 2006.

Both MIT's assertion of work product protection over the documents created in anticipation of litigation during licensing negotiations, and its assertion of attorney-client privilege over communications involving NEC during patent prosecution efforts, were known to Harman well before April, as shown in MIT's October 2005 log, its February 11, 2006 log, and its March 30, 2006 log. It was Harman's decision to wait until the very day fact discovery closed to throw this motion together and get it on file.

### B. Harman's Claims That More Depositions May Be Necessary Are Premature, And Unfairly Unilateral

Harman requests the right to re-depose three of MIT's witnesses if Harman, in its own discretion, decides they are necessary after receiving whatever documents this Court may order based on Harman's motion. The reason for MIT's supplementation of its privilege log after the depositions of Messrs. Swartz, Turner and Schmandt is that MIT was following up on Harman's requests for further documents from MIT. It is typical in complex litigation that, during depositions, the parties discover that additional documents should be produced, as was the case with the documents produced after these three depositions. What is not typical is document obfuscation of the magnitude shown by Harman to date, as manifested by the late production of ***millions*** of pages of documents only at the end of fact discovery (including those most relevant to the case), and hiding of documents that must have been known by Harman's own in-house

counsel to be responsive to MIT's requests, and directly relevant to MIT's claim of willful infringement.

Harman's complaints of post-deposition production are certainly the pot calling the kettle black. For example, Michael Radomski was deposed on February 22, 2006. _**Five weeks later**_, on March 28, 2006, Harman produced _**15,645 pages**_ of documents from Mr. Radomski's files.

The same is true with David Eelman's deposition. _**Six weeks**_ after his February 14, 2006 deposition, on March 28, 2006, Harman produced an additional 46 pages from Mr. Eelman's files; on March 30, 2006, Harman produced another 194 pages from Mr. Eelman's files; and on April 20, 2005, Harman produced more documents from the files of individuals who work for Mr. Eelman.

Finally, although smallest in number, the documents which Harman's own in-house counsel who is managing this case for Harman are perhaps the most disturbing. Mr. Hart was deposed on May 17, 2006, both individually and as a witness on Harman's behalf pursuant to Fed. R. Civ. P. 30(b)(6) as to "Harman's first knowledge of the '685 patent, any prior art related thereto, and any opinion, assessment, or inquiry rendered for, or by, Harman regarding the validity, enforceability, and/or scope of any of the claims of the '685 patent." Despite repeated requests for the documents during and following that deposition, Harman waited until June 12, 2006, to produce an additional 132 pages from Mr. Hart's files, including the engagement letter with Harman's opinion counsel, and drafts of the opinion letter that Harman hopes to rely upon in defense of MIT's claims of willful infringement. Clearly, these documents would have been useful during Mr. Hart's deposition, and he as Harman's Chief Intellectual Property Counsel, no stranger to litigation, would have understood the importance of producing these drafts, versions, and documents relevant to the opinion letter prior to his deposition.

Moreover, Harman has made no case (nor will it be able to) that any of the documents it seeks by its motion would warrant additional depositions.  Indeed, any repeat depositions of MIT's witnesses would be for harassment purposes only as part of Harman's attempts to pile-on and make the litigation more expensive for MIT.

## <u>CONCLUSION</u>

For the foregoing reasons, MIT respectfully requests that Harman's Motion to Compel Discovery of Certain Documents Improperly Identified As Protected On MIT's Privilege Logs be denied.

July 7, 2006                                    Respectfully Submitted,

                                               Massachusetts Institute of Technology,
                                               By its Attorneys,

                                               /s/ Steven M. Bauer
                                               Steven M. Bauer (BBO# 542531)
                                               Jacob K. Baron (BBO# 652568)
                                               Kimberly A. Mottley (BBO# 651190)
                                               John W. Pint (BBO# 660548)
                                               PROSKAUER ROSE LLP
                                               One International Place
                                               Boston, Massachusetts 02110-2600
                                               Phone:  617-526-9600
                                               Fax:     617-526-9899

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 7, 2006, I caused a copy of the forgoing document to be served upon counsel of record for Harman International Industries by electronic means using the Court's ECF system.

  /s/ Steven M. Bauer       
Steven M. Bauer

**Harman Revised Privilege Log**
**June 16, 2006**

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-9 | unknown | M. Francis | None | None | Handwritten notes | AWP | Annotated copy of Charles Call letter containing attorney notations prepared by litigation counsel in preparation for litigation. |
| PRIV 24 | 5/17/2004 | R. Hart | M. Addy | | E-mail | AC | Correspondence between in-house and outside counsel relating request by R. Swartz for a meeting and not concerning non-infringement, invalidity or unenforceability. |
| PRIV-31 | 8/2/2004 | W. Streff | M. Addy | | E-mail | AC, AWP | Correspondence between outside counsel requesting a meeting to prepare for meetings with MIT and not concerning non-infringement, invalidity or unenforceability. |
| PRIV-32 | 8/23/2004 | J. Peracchio | M. Addy | | E-mail | AC | REDACTION:  Correspondence between in-house and outside counsel concerning an unrelated settlement with MIT, and not concerning non-infringement, invalidity or unenforceability.  Produced at HAR 278112-HAR 278117 |
| PRIV-33 | 8/23/2004 | J. Peracchio | M. Addy | R. Hart; T. Bast | E-mail | AC | REDACTION:  Correspondence between in-house and outside counsel regarding scheduling a meeting with R. Swartz, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 278143-HAR 278144 |
| PRIV-34 | 8/26/2004 | B. Nwaokai | M. Addy | | E-mail | AC | Internal correspondence between outside counsel re call from R. Swartz to schedule a meeting, and not concerning invalidity, non-infringement or unenforceability. |
| PRIV-42 | 1/10/2005 | M. Addy | R. Hart | | E-mail | AC, AWP | REDACTION:  Correspondence between in-house and outside counsel regarding non-MIT patent not in suit. Produced at HAR 198128-HAR 198129 |
| PRIV-43 | 1/10/2005 | R. Hart | M. Addy | | E-mail | AC, AWP | REDACTION:  Correspondence between in-house and outside counsel re non-MIT patent not in suit. Produced at HAR 198126-HAR 198127 |
| PRIV-44 | 1/29/2005 | R. Hart | M. Addy | | E-mail | AC, AWP | Correspondence between in-house and outside counsel regarding language for Harman internal memorandum and damages, and not concerning non-infringement, invalidity or unenforceability |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-45 | 1/31/2005 | M. Addy | R. Hart | | E-mail | AC, AWP | Correspondence between in-house and outside counsel concerning R. Swartz and not concerning non-infringement, invalidity or unenforceability |
| PRIV-50 | 2/14/2005 | R. Hart | M. Addy | C. Limperis Miranda | E-mail | AC, AWP | Correspondence between in-house and outside counsel in preparation for meetings with MIT and not concerning non-infringement, invalidity or unenforceability. |
| PRIV-53 | 2/16/2005 | J. Peracchio | R. Hart | K. Brown; E. Summers; M. Addy; T. Bast | E-mail | AC | Correspondence between in-house and outside counsel regarding scheduling a meeting with MIT and not concerning non-infringement, invalidity or unenforceability of the patent in suit |
| PRIV-59 | 3/9/2005 | M. Addy | R. Hart | M. Francis; A. Penn | E-mail | AC, AWP | Correspondence between outside and in-house counsel conveying presentation (produced separately) to outside counsel, and not concerning non-infringement, invalidity or unenforceability. |
| PRIV-61 | 3/27/2005 | R. Hart | M. Addy | R. Hart | E-mail | AC | Correspondence between in-house and outside counsel seeking to schedule time to discuss prior meeting with MIT, and not concerning non-infringement, invalidity or unenforceability. |
| PRIV-62 | 3/31/2005 | R. Hart | M. Addy | | E-mail | AC, AWP | Correspondence between in-house and outside counsel re MIT-retained outside counsel and not concerning invalidity, non-infringement or unenforceability of the patent in suit. |
| PRIV-63 | 3/31/2005 | R. Hart | M. Addy | | E-mail | AC | Correspondence between in-house and outside counsel seeking information from prior meeting with MIT and not concerning invalidity, non-infringement or unenforceability. |
| PRIV-64 | 3/31/2005 | M. Addy | R. Hart | | E-mail | AC | Correspondence between in-house and outside counsel relaying information from prior meeting with MIT and not concerning invalidity, non-infringement or unenforceability. |
| PRIV-65 | 6/30/2005 | R. Hart | M. Addy; T. Bast | | E-mail and attachments | AC, AWP | Correspondence between in-house and outside counsel regarding prior art for non-MIT patent not in suit. |
| PRIV-66 | 6/30/2005 | M. Addy | R. Hart; T. Bast | A. Penn | E-mail and attachments | AC, AWP | Correspondence between in-house and outside counsel regarding prior art concerning non-MIT patent not in suit. |
| PRIV-67 | 7/8/2005 | R. Hart | T. Bast; A. Brandes; H. Wellman | K. Rauterberg; M. Addy | E-mail | AC, AWP | Correspondence between in-house counsel, outside counsel and client re non-MIT patents not in suit and scheduling meeting to discuss MIT matter. This correspondence does not concern invalidity, non-infringement or unenforceability. |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-72 | 3/23/2004 | C. Dorenbeck | P. Amir | T. Bast | E-mail | | REDACTION: Personal correspondence not relevant or responsive to this case.  Produced at HAR 93148-HAR 93149 |
| PRIV-74 | 3/23/2004 | C. Dorenbeck | P. Amir | T. Bast | E-mail | | REDACTION: Personal correspondence not relevant or responsive to this case.  Produced at HAR 93155-HAR 93156 |
| PRIV 76 | 5/4/2004 | P. Amir | C. Dorenbeck | | E-mail | AC | Correspondence between attorney and client providing contact information and not concerning invalidity, non-infringement or unenforceability. |
| PRIV 77 | 6/1/2004 | C. Bruelle | P. Amir | | E-mail | AC, AWP | Correspondence between client and attorney seeking to schedule a phone meeting, and not concerning invalidity, non-infringement or unenforceability. |
| PRIV-195 | 2/13/2005 | R. Hart | R. Hart | | E-mail | AWP | In-house counsel annotations regarding damages prepared in anticipation of litigation and not concerning invalidity, non-infringement or unenforceability. |
| PRIV-196 | 2/14/2005 | T. Bast | R. Hart | | E-mail | AC | Correspondence between in-house counsel re scheduling MIT meeting and not concerning invalidity, non-infringement or unenforceability of the patent in suit. |
| PRIV-197 | 2/24/2005 | C. Limperis Miranda | R. Hart | | E-mail | AC | Correspondence between client and in-house counsel, not concerning invalidity, non-infringement or unenforceability, conveying information previously produced re licenses. |
| PRIV-199 | 2/28/2005 | C. Limperis Miranda | R. Hart | | E-mail | AC, AWP | Correspondence between client and counsel regarding damages and not concerning invalidity, non-infringement or unenforceability. |
| PRIV-200 | 2/24/2005 | C. Limperis Miranda | R. Hart | | E-mail | AC, AWP | Correspondence between client and counsel regarding damages and not concerning invalidity, non-infringement or unenforceability. |
| PRIV-236 | 3/12/2005 | R. Hart | W. Streff; M. Francis | | E-mail | AC | Correspondence between in-house and litigation counsel regarding Harman's organizational structure and not concerning invalidity, non-infringement or unenforceability. |
| PRIV-237 | 11/10/2003 | J. Peracchio | D. Nelson; T. Heed | S. Montealegre; T. Bal; T. Brummett; K. Suhre; M. Soldwisch; P. Roessger | E-mail | AC, AWP | Correspondence from in-house counsel rendering legal advice re language in product literature, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability of the patent in suit. |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-238 | 11/10/2003 | D. Nelson | J. Peracchio; T. Heed | S. Montealegre; T. Bal; T. Brummett; K. Suhre; M. Soldwisch; P. Roessger; I. Hall | E-mail | AC, AWP | Correspondence from in-house counsel rendering legal advice re language in product literature, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability of the patent in suit. |
| PRIV-239 | 11/11/2003 | D. Nelson | P. Roessger; J. Peracchio; T. Heed | S. Montealegre; T. Bal; T. Brummett; K. Suhre; M. Soldwisch | E-mail | AC, AWP | Correspondence from in-house counsel rendering legal advice re language in product literature, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability of the patent in suit. |
| PRIV-240 | 12/16/2003 | D. Nelson | J. Peracchio; P. Roessger | S. Montealegre; S. Heaps; M. Soldwisch; T. Heed; I. Hall; T. Bal; T. Brummett; K. Suhre | E-mail | AC, AWP | Correspondence from in-house counsel rendering legal advice re language in product literature, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability of the patent in suit. |
| PRIV-241 | 10/12/2001 | J. Peracchio | J. Childress | S. Montealegre | E-mail | AC | Correspondence from in-house counsel rendering legal advice regarding NavTech licensing, not concerning invalidity, non-infringement or unenforceability of the patent in suit. |
| PRIV-242 | 10/17/2001 | S. Montealegre | J. Peracchio | S. Ernst; M. Munn | E-mail | AC | Correspondence from in-house counsel rendering legal advice regarding NavTech licensing, not concerning invalidity, non-infringement or unenforceability of the patent in suit. |
| PRIV-243 | 4/16/2003 | J. Millington | J. Peracchio | S. Montealegre; V. Droege | E-mail | AC | Correspondence with in-house counsel seeking legal review of foreign version of product literature, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. |
| PRIV-244 | 4/17/2003 | T. Heed | S. Montealegre | J. Peracchio | E-mail | AC | Correspondence with in-house counsel seeking legal review of foreign version of product literature, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non- |

| Priv. Doc. No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| | | | | | | | infringement or unenforceability. |
| PRIV-245 | 4/17/2003 | J. Peracchio | T. Heed; S. Montealegre | | E-mail | AC | Correspondence with in-house counsel seeking legal review of foreign version of product literature, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. |
| PRIV-246 | 4/25/2002 | B. Stockhause | E. Summers | M. Munn | E-mail | AC | Correspondence seeking legal advice regarding NavTech license and not concerning non-infringement, invalidity or unenforceability of the patent in suit. |
| PRIV-247 | 6/16/2003 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277863-HAR 277876 |
| PRIV-248 | 7/15/2003 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277877-HAR 277883 |
| PRIV-249 | 8/14/2003 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277884-HAR 277890 |
| PRIV-250 | 9/15/2003 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277891-HAR 277896 |
| PRIV-251 | 10/15/2003 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277897-HAR 277902 |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-252 | 11/14/2003 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277903-HAR 277908 |
| PRIV-253 | 12/17/2003 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277909-HAR 277904 |
| PRIV-254 | 1/19/2004 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277915-HAR 277926 |
| PRIV-255 | 2/17/2004 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277927-HAR 277938 |
| PRIV-256 | 3/16/2004 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277939-HAR 277951 |
| PRIV-257 | 4/15/2004 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277952-HAR 277965 |
| PRIV-258 | 5/14/2004 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277966-HAR 277980 |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-259 | 6/15/2004 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION:  Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277981-HAR 277993 |
| PRIV-260 | 7/16/2004 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION:  Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 277994-HAR 278001 |
| PRIV-261 | 8/13/2004 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION:  Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 278002-HAR 278009 |
| PRIV-262 | 9/14/2004 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION:  Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 278010-HAR 278024 |
| PRIV-263 | 10/17/2004 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION:  Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 278025-HAR 278032 |
| PRIV-264 | 11/15/2004 | E. Summers | S. Harman; B. Girod; F. Meredith; G. Stapelton | | Internal Memorandum | AC, AWP | REDACTION:  Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 278033-HAR 278052 |
| PRIV-265 | 12/15/2004 | E. Summers | S. Harman; B. Girod; F. Meredith | | Internal Memorandum | AC, AWP | REDACTION:  Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 278053-HAR 278071 |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-266 | 1/16/2005 | E. Summers | S. Harman; B. Girod; F. Meredith | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 278072-HAR 278091 |
| PRIV-267 | 2/14/2005 | E. Summers | S. Harman; B. Girod; F. Meredith | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 278092-HAR 278099 |
| PRIV-268 | 3/11/2005 | E. Summers | S. Harman; B. Girod; F. Meredith | | Internal Memorandum | AC, AWP | REDACTION: Internal memorandum by in-house counsel reflecting legal advice re outstanding legal issues, not related to MIT, unrelated to patent in suit, and not concerning invalidity, non-infringement or unenforceability. Produced at HAR 278100-HAR 278108 |
| PRIV 269 | 3/19/2003 | R. Hart | E. Summers; T. Bast | | E-mail | AC | Communication seeking legal advice regarding Zeevi patent |
| PRIV-270 | 3/20/2003 | R. Hart | W. Streff | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent and potential litigation. |
| PRIV-271 | 3/20/2003 | R. Hart | soh@ssd.com | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-272 | 3/20/2003 | R. Hart | R. Dorman | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-273 | 3/20/2003 | R. Hart | Ginacanares @quinnemmanuel .com | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-274 | 3/20/2003 | R. Hart | M. Addy | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-275 | 3/20/2003 | R. Hart | T. Heed | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-276 | 3/20/2003 | R. Hart | M. Addy | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-277 | 3/24/2003 | R. Hart | W. Streff | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-278 | 3/24/2003 | R. Hart | T. Bast | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-279 | 4/2/2003 | R. Hart | L. Resh | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-280 | 4/2/2003 | R. Hart | L. Resh | L. Hadley | E-mail | AC | Communication seeking legal advice concerning Zeevi patent and potential litigation |
| PRIV-281 | 3/26/2003 | R. Hart | J. Molzen; M. Soldwisch | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV -282 | 4/8/2003 | R.. Hart | E. Summers | | E-mail | AC, AWP | Communication seeking legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-283 | 4/13/2003 | R. Hart | E. Summers | | E-mail | AC, AWP | Communication seeking and reflecting legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-284 | 4/13/2003 | R. Hart | E. Summers | | E-mail | AC, AWP | Communication seeking and reflecting legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-285 | 4/15/2003 | R. Hart | L. Resh; R. Hart | | E-mail | AC, AWP | Communication reflecting legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-286 | 5/27/2003 | R. Hart | L. Resh | | E-mail | ACP | Communication between attorney and client reflecting legal advice regarding Zeevi patent. |
| PRIV-287 | 6/14/2004 | R. Hart | E. Summers | L. Hadley | E-mail | AC, AWP | Communication rendering and reflecting legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-288 | 6/14/2004 | R. Hart | L. Hadley | | E-mail | AC, AWP | Communication seeking and reflecting legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-289 | 6/14/2004 | R. Hart | E. Summers; L. Hadley | | E-mail | AC, AWP | Communication seeking and reflecting legal advice containing mental impressions of attorney in preparation of litigation regarding Zeevi patent. |
| PRIV-290 | 1/23/2004 | R. Hart | L. Hadley; M. Addy | | E-mail | AC | REDACTION:  Communication regarding billing and not regarding non-infringement, invalidity or unenforceability. Produced at HAR 278145 |
| PRIV-291 | 1/21/2004 | R. Hart | M. Addy; L. Hadley | A. Penn | E-mail | AC | REDACTION:  Communication seeking to schedule a meeting and not regarding non-infringement, invalidity or unenforceability. Produced at HAR 278146 |
| PRIV-292 | 1/21/2004 | R. Hart | L. Hadley | | E-mail | AC | REDACTION:  Communication seeking to schedule a meeting and not regarding non-infringement, invalidity or unenforceability. Produced at HAR 278147 |
| PRIV-293 | 6/8/2004 | M. Addy | R. Hart | | E-mail | AC | REDACTION:  Communication seeking to schedule conference and not regarding non-infringement, invalidity or unenforceability. Produced at HAR 278148-HAR 278150 |
| PRIV-294 | 8/26/2004 | M. Addy | R. Hart | | E-mail | AC | Communication seeking to schedule conference and not regarding non-infringement, invalidity or unenforceability. |
| PRIV-295 | 7/21/2004 | M. Addy | R. Hart | | E-mail | AC | Communication regarding scheduling a meeting and not regarding non-infringement, invalidity or unenforceability |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-296 | 7/8/2004 | R. Hart | M. Addy | | E-mail | AC | Communication regarding scheduling a meeting and not regarding non-infringement, invalidity or unenforceability |
| PRIV-297 | 7/8/2004 | M. Addy | R. Hart | | E-mail | AC | Communication regarding scheduling a meeting and not regarding non-infringement, invalidity or unenforceability |
| PRIV-298 | 12/30/2003 | R. Hart | L. Hadley; R. Hart | M. Addy; A. Penn | E-mail | AC | Communication regarding conflicts check and scheduling a meeting and not regarding non-infringement, invalidity or unenforceability |
| PRIV-299 | 12/29/2003 | R. Hart | L. Hadley | | E-mail | AC | Communication regarding conflicts check and scheduling a meeting and not regarding non-infringement, invalidity or unenforceability |
| PRIV-300 | 12/22/2003 | R. Hart | L. Hadley | R. Dorman | E-mail | AC | Communication regarding conflicts check and not regarding non-infringement, invalidity or unenforceability |
| PRIV-301 | 12/22/2003 | R. Hart | L. Hadley | | E-mail | AC | Communication regarding conflicts check and not regarding non-infringement, invalidity or unenforceability |
| PRIV-302 | 4/19/2004 | R. Hart | T. Bast | | E-mail | AC | Communication regarding scheduling a meeting and not regarding non-infringement, invalidity or unenforceability |
| PRIV-303 | 6/8/2004 | M. Addy | R. Hart | A. Penn | E-mail | AC | REDACTION: Communication regarding scheduling a conference and not regarding non-infringement, invalidity or unenforceability. Produced at HAR 278151-HAR 278153 |
| PRIV-304 | 8/30/2004 | M. Addy | R. Hart | | E-mail | AC | REDACTION: communication seeking to schedule a meeting and not regarding non-infringement, invalidity or unenforceability. Produced at HAR 278154-HAR 278156 |
| PRIV-305 | 8/30/2004 | M. Addy | R. Hart | J. Pioli | E-mail | AC, AWP | REDACTION: communication regarding scheduling a meeting and not regarding non-infringement, invalidity or unenforceability. Produced at HAR 278157-HAR 278159 |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-306 | 4/2/2003 | R. Hart | L. Resh | | E-mail | ACP | Communication between attorney and client seeking legal advice regarding Zeevi patent. |
| PRIV-307 | 2/23/2005 | A. Brandes | S. Hanika-Heidl; G. Jeske; K. Rauterberg; H. Wellman | | E-mail | ACP | Communication reflecting attorney client communications regarding meeting with T. Bast re potential patent litigations not addressing the subject matter of the opinion. |
| PRIV-308 | 2/22/05 | A. Brandes | T. Bast | K. Rauterberg; H. Wellman | E-mail | ACP | Communication reflecting attorney client communications regarding meeting re potential patent litigations not addressing the subject matter of the opinion. |
| PRIV-309 | 2/22/05 | T. Bast | A. Brandes; H. Wellman | K. Rauterberg | E-mail | ACP | Communication reflecting attorney client communications regarding meeting re potential patent litigations not addressing the subject matter of the opinion. |
| PRIV-310 | 2/22/05 | T. Bast | A. Brandes; H. Wellman | K. Rauterberg | E-mail | ACP | Communication reflecting attorney client communications regarding meeting re potential patent litigations not addressing the subject matter of the opinion. |
| PRIV-311 | 2/23/05 | T. Bast | A. Brandes, H. Wellman, K.Rauterberg, S. Kanika-Heidl | | E-mail | ACP | Communication reflecting attorney client communications regarding meeting re potential patent litigations not addressing the subject matter of the opinion. |
| PRIV-312 | 8/27/01 | J. Peracchio | R. Barnicaot, H. Becker, R. Guthmann, T. Harberman, M. Tyldseley, Traffic Pro USA | E. Summers | E-mail | ACP | Communication rendering legal advice re draft of Traffic Pro U.S. owners manual |
| PRIV-313 | 8/28/01 | R. Guthmann | R. Barnicoat, H. Becker, T. Harberman, M. Munn, J. Peracchio, Traffic Pro USA, M. Tyldesley | E. Summers | E-mail | ACP | Communication seeking legal advice re draft of Traffic Pro U.S. owners manual |
| PRIV-314 | 9/13/01 | J. Molzen | I. Hall | | E-mail | ACP | Communication reflecting legal advice sought from J. Peracchio re draft of Praffic Pro U.S. owners manual |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-315 | 9/5/01 | T. Harberman | M. Munn, J. Peracchio, J. Wietzke | R. Barnicaoat, R. Guthmann, A. Lehmann, J. Molzen, M. Tyldesley | E-mail | ACP | Communication seeking legal advice re draft license agreement between Harman and Navtech |
| PRIV-316 | 9/7/01 | J. Peracchio | T. Harberman, M. Munn, J. Weitzke | R. Barnicaot, R. Guthmann, A. Lehmann, J. Mozlen, M. Tyldesley | E-mail | ACP | Communication rendering legal advice re draft license agreement between Harman and Navtech |
| PRIV-317 | 4/24/01 | J. Molzen | K. Hammer | | E-mail | ACP | Communication seeking information at request of J. Peracchio in rendering legal advice re product testing |
| PRIV-318 | 4/22/05 | M. Herforth | T. Bast | J. Ohler, S. Hanika-Heidl | E-mail and attachments | ACP | Communication seeking legal advice re draft evaluation agreement with Navtech |
| PRIV-319 | 6/25/04 | S. Hanika-Heidl | T. Bast | K. Rauterberg, G. Jeske | E-mail | ACP | Communication seeking legal advice re contractual agreement with Navtech |
| PRIV-320 | 3/1/00 | R. Guthmann | E. Geiger, J. Wietzke, J. Kobinger, P. Popov, M. Munn, J. Slabig, M. Maul, K. Becker, B. Stockhause, H. Fiederling, H. Behler, G. Jeske, SW@innovative-systems.de | | Attachment | ACP | REDACTION: Communication reflecting legal advice sought re navigation systems of other manufacturers Produced at HAR 573529 |
| PRIV-321 | 10/13/03 | A. Lehmann | S. Singh, T. Slominski | V. Droege, J. Molzen, S. Montealegre | E-mail | ACP | REDACTION: Communication reflecting legal advice sought from T. Bast re license agreements with Navtech Produced at HAR 592233 |
| PRIV-322 | 10/13/03 | S. Montealegre | A. Lehmann, S. Singh, T. Slominski | V. Droege, J. Molzen | E-mail | ACP | REDACTION: Communications reflecting legal advice sought from J. Peracchio re database software Produced at HAR 592229 |

| Priv. Doc No. | Date | Author | Recipient | CC | Description | Privilege Asserted | Comments |
|---|---|---|---|---|---|---|---|
| PRIV-323 | 5/19/05 | J. Molzen | J. Peracchio | | E-mail and Attachment | ACP, AWP | REDACTION: Communication seeking legal advice re license agreement and draft license agreement Produced at 654879, 654881-654882 |
| PRIV-324 | 5/22/05 | T. Bast | J. Ohler, J. Peracchio | J. Molzen | E-mail | ACP | REDACTION: Communication rendering legal advice re license agreement Produced at HAR 654764-HAR 654765 |
| PRIV-325 | 5/29/05 | J. Peracchio | T. Bast, J. Ohler | J. Molzen | E-mail and Attachment | ACP, AWP | REDACTION: Communication rendering legal advice re license agreement and draft license agreement Produced at HAR 654870-654871, 654873-654876 |
| PRIV-326 | 5/19/05 | J. Molzen | J. Peracchio | | E-mail | ACP | REDACTION: Communication seeking legal advice re license agreement Produced at HAR 654860 |
| PRIV-327 | 5/19/05 | J. Peracchio | J. Molzen | T. Bast | E-mail | ACP | REDACTION: Communication rendering legal advice re license agreement Produced at HAR 65854-654855 |
| PRIV-328 | 5/19/05 | J. Molzen | J. Peracchio | | E-mail | ACP | REDACTION: Communication seeking legal advice re license agreement Produced at HAR 654849-654850 |
| PRIV-329 | 5/20/05 | J. Peracchio | J. Molzen | T. Bast, J. Ohler | E-mail and Attachment | ACP, AWP | REDACTION: Communication rendering legal advice re license agreement and draft license agreement Produced at HAR 654792-654794, HAR 654798-654801 |
| PRIV-330 | 5/22/05 | J. Peracchio | T. Bast, J. Ohler | J. Molzen | E-mail | ACP | REDACTION: Communication rendering legal advice re license agreement Produced at HAR 654755-654758 |

**Counsel:**

| | |
|---|---|
| R. Hart | Harman in-house counsel |
| E. Summers | Harman in-house counsel |
| J. Peracchio | Harman in-house counsel |
| T. Bast | Harman in-house counsel |
| C. Limperis Miranda | Contracts Manager/contract counsel |
| W. Streff | Kirkland & Ellis, LLP |
| M. Francis | Kirkland & Ellis, LLP |

| | |
|---|---|
| L. Resh | Kirkland & Ellis, LLP |
| M. Addy | Brinks Hofer Gilson & Lione |
| B. Nwaokai | Brinks Hofer Gilson & Lione (Administrative Secretary) |
| A. Penn | Brinks Hofer Gilson & Lione |
| J. Pioli | Brinks Hofer Gilson & Lione |
| L. Hadley | Hennigan, Bennett & Dorman, LLP |
| R. Dorman | Hennigan, Bennett & Dorman, LLP |
| Ginacanares@quinnemmanuel.com | Quinn Emanuel Urquhart Oliver & Hedges, LLP |
| soh@ssd.com | Squire Sanders |

**Harman Employees, Directors, Managers:**

| | | |
|---|---|---|
| K. Brown | T. Bal | D. Nelson |
| A. Brandes | T. Brummett | R. Barnicoat |
| H. Wellmann | K. Suhre | H. Becker |
| K. Rauterberg | I. Hall | T. Harberman |
| C. Dorenbeck | S. Heaps | M. Tyldesley |
| C. Bruelle-Drews | S. Harman | Traffic Pro USA |
| M. Soldwisch | J. Childress | J. Molzen |
| P. Roessger | S. Ernst | I. Hall |
| S. Monteleagre | V. Droege | |
| M. Munn | B. Girod | |
| T. Heed | F. Meredith | |
| G. Stapelton | | |
| A. Lehmann | | |
| S. Singh | | |
| T. Slominski | | |
| J. Kobinger | | |
| P. Popov, | | |
| J. Slabig | | |
| M. Maul | | |
| K. Becker | | |
| B. Stockhause | | |
| H. Fiederling | | |
| H. Behler | | |