IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>    Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br><br>    Defendant. | Civil Action No.: 05-10990 DPW |

**MIT'S MOTION TO COMPEL COMPLIANCE
WITH COURT'S DISCOVERY ORDERS AND FOR SANCTIONS**

On March 20, 2006, this Court ordered Defendant Harman International Industries, Inc. ("Harman") to produce "any other responsive and discoverable documents from its German locations . . . including those relating to the products recently identified in Harman's Second Supplemental Responses to MIT Interrogatory No. 1 from MIT's First Set of Interrogatories (No. 1-11)." March 20, 2006 Order (Docket Entry No. 56).

Despite this Order, Harman has continued simply to refuse to produce the most relevant documents in its possession -- the technical specifications and final written documentation regarding its accused products. Indeed, it appears that even as of today, Harman's counsel has failed to produce documents from Harman's single best repository of documents -- its technical document library. Instead, apparently believing discovery is a game, it first trickled documents to MIT for months after in a disorganized fashion, and then, weeks before fact discovery closed, dumped several millions of pages on MIT.

Yet, after MIT spent hundreds of attorneys' hours reviewing these documents, it became apparent that Harman had simply produced thousands of meaningless electronic records (such as thousands of pages of diagnostic test results), but had not produced the most relevant, easily

understood documents, the final engineering documentation. When asked, all Harman's counsel says -- and always with a smirk -- is that discovery is expensive, and everything produced was literally relevant because it related to the accused products. Indeed, most recently, Harman's counsel suggested that MIT can take Harman's 50,000-pages of computer source code (which it will only show MIT at Harman's counsel's office) and try to reverse engineer the Harman products. This is the same as suggesting that, if the issue was whether something was an elephant or a dog, MIT could figure it out by reconstructing the animal from the DNA, rather than from photographs or medical records. Harman has key, easily understood, well written technical documents which explain in English (or perhaps German) how the products work. There is no excuse for those not to have been produced, from Harman's technical documentation libraries.

This Court has recognized MIT's frustration with Harman's production. MIT would have hoped that the Court's Discovery Order would have encouraged Harman to be forthcoming. Perhaps it is Kirkland & Ellis's discovery style, or perhaps it is poor communication between inside and outside counsel. Whatever it is, unfortunately MIT now needs to seek *another* order compelling Harman to produce its final internal technical documentation sufficient to show at the functional level the operation of each of Harman's accused automobile navigation products, and then provide deposition testimony under Rule 30(b)(6) to verify that the products work according to these specifications.

Pursuant to Rules 26, 30, 34, and 37 of the Federal Rules of Civil Procedure, Local Rules 34.1, and 37.1, and the Court's March 20, April 5 and April 19, 2006 Orders (Docket Entry Nos. 56, 67 and 72), MIT seeks such an order here.

Importantly, MIT knows these documents exist. Harman is making these products for the automobile industry, which requires extensive and clear documentation for any product it acquires from outside sources. Harman does not represent that they do not exist, after a thorough and comprehensive search. Indeed, each time MIT has requested specific documents for specific products, after Harman's counsel first "questioned" whether they exist, documents were produced. Harman "may not excuse itself from compliance with Rule 34, Fed. R. Civ. P., by utilizing a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them." *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976). This is a "willful and deliberate disregard of reasonable and necessary court orders and the efficient administration of justice." *Id.*

Nor can this be considered an oversight in production. After MIT reviewed the millions of pages produced, it noted that the relevant product specifications it was identifying were all attached as "attachments" to internal e-mail. That is, MIT was only being shown some random sampling of documents if they had fortuitously been attached to someone's e-mail. There was no production from Harman's technical library of internal documentation for the accused products -- *what should have been the first source of production*. In preparing their expert reports, MIT's experts cobbled together these randomly produced specifications sufficient to reconstruct a couple of Harman's products. In its rebuttal expert report, however, Harman's expert argued that because Harman had not identified or produced the final versions of the technical documents for each accused product, MIT could not prove infringement.

So, here's the situation: 1) Harman has failed to produce its technical documentation, despite a court order to do so; 2) It took hundreds of MIT's attorneys hours to determine this, because they needed to sift through millions of irrelevant pages to learn that the documents had

not been produced; 3) Harman's Rule 30(b)(6) witness was unable to answer questions about all the accused products, although Harman promised he'd be prepared to do so; and now 4) Harman contends that MIT should lose on its infringement case because it doesn't have the documentation to show infringement. All this even though Harman's in-house counsel says that all of the products essentially work in the same manner (*see* Exhibit A (excerpted quote from deposition of Robert Hart at p. 123, l. 5 – p. 124, l. 1) (filed under seal); *see also* Exhibit B at p. 123-124 (filed under seal)).

It would be one thing if Harman was contending that its products don't infringe, and suggesting that MIT was on a fishing expedition. It is wholly different here, where all the evidence points to infringement, and Harman argues that because it has not produced documents for all its products, MIT cannot prove at trial that they all work the same, even though Harman's in-house lawyer believes they do.

MIT asks the Court to order the following:

(1) Require Harman, *again*, to immediately produce product specifications for each of Harman's accused products for which documents have not yet been produced;

(2) Require Harman to immediately supplement in a meaningful way the documents cross-referenced in Harman's August 1, 2006 production;

(3) Require Harman to immediately supplement technical documents for the NTG4 automobile navigation systems or otherwise resolve that the documents already produced represent the NTG4 automobile navigation products for sale in the U.S.;

(4) Require Harman's counsel to submit a report to the Court stating the efforts that Harman's counsel has taken to date to meet Harman's document production obligations (including attorney name, date, and Harman contact);

(5) Require Harman to produce a Rule 30(b)(6) witness in Boston to answer questions its prior Rule 30(b)(6) witness could not answer and questions about Harman's recently-produced documents;

(6) Require Harman to offer for sale at cost a sample of the accused systems, including the new NTG4 automobile navigation system; and

(7) Award MIT its costs for the time spent reviewing the millions of pages dumped on MIT after April 21, 2006.

## I. Harman Has Failed to Produce Documents Sufficient to Show How Harman's Accused Products Operate

### A. Harman's Production and Documentation of Previously-Sold Automobile Navigation Products Has Been Defective So Far

In the most recent discussions on this on-going discovery dispute, Harman's counsel said he would again go back to Harman to get specific documents MIT identifies. That is simply unacceptable. MIT should not be tasked with identifying these documents by document number, or version number, or some other detail known only to Harman. Harman should have produced these documents in response to the Court's order. Harman's latest correspondence regarding its document production now states that "[f]act discovery is closed and expert discovery is nearing closure," the implication being that if Harman has not produced documents MIT needs, too bad for MIT (*see* Exhibit C at 4, 8/30/06 ltr Gunderson to Baron).

Harman has no right to pat itself on the back for hiding from MIT the fact that documents were withheld until after the close of fact discovery. A party who reasonably relies to its detriment on representations of the opposing party that documents would be produced is not barred by the discovery cut-off from seeking the relevant documents. *M2 Software, Inc. v. M2 Communications, LLC*, 217 F.R.D. 499, 500 (C.D. Cal. 2002). Moreover, where "a party has

contributed to a plaintiff's confusion or has caused delays in discovery, it can hardly be heard to complain about continued discovery." *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 342 (N.D. Ill. 2005). Harman was ordered to produce these documents, represented that it would comply, produced millions of pages of documents, and MIT reasonably believed that Harman would comply with the Court Order regarding production of relevant documents before the close of fact discovery.[1] It is a violation of discovery for Harman to have not produced the most relevant documents, and to have buried that fact.

After sifting through these millions of pages, MIT realized that Harman still had not produced documentation to show how Harman's products operate. Attached to many of the emails were some of the most relevant documents Harman had produced relating to its products. There were product specifications, schematics and block diagrams relating to some, but not all, of Harman's accused products. The troubling part is that these documents certainly existed outside Harman's employee's email files. Clearly, Harman had not produced its documents as kept in the ordinary course of business.

MIT again requested that Harman produce or identify technical documents, so that MIT could verify how Harman's accused products operate. MIT sent a letter on July 13, 2006 outlining the specific types of documents MIT was requesting (*see* Exhibit D at 1-2, 7/13/06 ltr Baron to Leavell). Rather than try to find out why the documents had not been produced, Harman responded that MIT's letter "assume[d] the existence of documents." (*see* Exhibit E at 1, 7/13/06 email Leavell to Baron). But, there was no idle speculation here -- MIT followed up

---

[1] When Harman filed for a protective order citing to a German privacy law and arguing that it could not produce its employees' emails, Harman specifically stated that it was "not withholding any documents from its German offices." *See* Docket Entry No. 58 at 2. Harman represented to the Court that the only documents not produced were emails of Harman employees. *Id.* When the court ordered Harman to produce the emails, starting on April 21, 2006, Harman began dumping millions of pages of documents on MIT.[1] *See* Docket Entry No. 72.

with a letter specifying certain types of documents not found in Harman's production despite the Court's Order (*see* Exhibit F at 1, 7/26/06 ltr Baron to Leavell). On August 1, 2006, Harman finally produced a first set of these documents for some, but not all, of the accused products.[2] A few weeks later, it produced yet additional documents. But, importantly, the documents on their face indicate that some of the most relevant documents still have not been produced. Some of the documents included cross-references to other, relevant technical documents that appear to be essential to understand how key aspects of Harman's systems operate (*see, e.g.,* Exhibit G, filed under seal).

On August 30, 2006, counsel for Harman responded that, before completing a search for these documents, they would rely on some unidentified person to say that some of these technical documents for some of its products do not exist (*see* Exhibit B at 2). For example, Harman asserts that the technical documents MIT has requested for Audi and Mercedes, believed to be two of Harman's highest-volume customers, do not exist. How can that be? Does Harman suggest it has no final technical documents describing the operation of products it is selling to Audi and Mercedes? Or is it saying that the documents for other products apply to these? It won't tell MIT, and MIT didn't have the documents to ask Harman's Rule 30(b)(6) witness these questions. And what about the documents referred to by other Harman technical documents. Has Harmon destroyed them? It would have been impossible for Harman to build or deliver automobile navigation systems or write the software controlling those systems without specifications. Because the documents were only produced after the close of fact discovery, MIT could not pursue this line of questioning before.

---

[2] The documents produced on August 1, 2006 relate to Harman's Becker Online Pro, Cascade TrafficPro, Ferrari TrafficPro, Mercedes W211, Ferrari Online Pro, Porsche Online Pro, Porsche PCM 2, Porsche PCM 2.1, products, which were identified by Harman on April 17, 2006. However, technical documents about at least the DVD Navimodule for Audi, W220 and W221 for Mercedes were not produced on August 1, 2006, even though these products were identified as accused products.

### B. Harman Has Failed to Provide Documents Linking Harman's General Technical Documents to Specific Harman Products

Harman's experts opine that MIT cannot prove infringement because the documentation produced by Harman is incomplete. Harman's experts state that MIT has not shown that the versions of product specifications relied upon by MIT's experts are the current versions. However, despite MIT's repeated requests, Harman has never produced documentation to show which versions of these documents apply to Harman's products.

MIT also tried to get this information by deposition.[3] Unfortunately, Harman's Rule 30(b)(6) witness was not prepared. For example, when MIT asked Harman's witness which versions of Harman's map database applied to particular products, Harman's witness could not answer (see Exhibit I (excerpted quote from deposition of Guido Jeske at p. 151, l. 20 – p. 152, l. 15) (filed under seal); *see also* Exhibit J at p. 151-152 (filed under seal)).

And, when MIT asked Harman's witness which versions of Harman's route finder applied to particular products, Harman's witness could not answer (*see* Exhibit K (excerpted quote from deposition of Guido Jeske at p. 234, l. 12 – p. 235, l. 9) (filed under seal); *see also* Exhibit J at p. 234-235 (filed under seal); Exhibit J at p. 162, l. 21 – p. 163, l. 24; p. 194, ll. 13-24; and p. 202, l. 11- p. 203, l. 23) (filed under seal)).

The reports of Harman's experts assert that MIT has failed to show a link between documents and products, even though the documents purport to be representative of Harman's automobile navigation systems. All MIT is requesting is documentation sufficient to rebut that assertion.

---

[3] Harman had objected to MIT's Rule 30(b)(6) deposition notice as being too broad. In hopes of simplifying the issues for both sides, MIT provided a more narrow list of documents and topics so that Harman's witness could be better prepared (*see* Exhibit H, 5/31/06 ltr Baron to Leavell).

### C. Harman Has Failed To Supplement Its Production Relating to Harman's NTG4 Family of Automobile Navigation Products

In March, MIT advised Harman that MIT believed one of Harman's new products, the NTG4 family of automobile navigation products, would, when introduced, infringe the '685 patent (*see* Exhibit L, 3/17/06 ltr Pint to Leavell). Some of the NTG4 automobile navigation products (namely the product code-named RER) were scheduled to be shipped in September 2006, and therefore, final versions or even the latest versions of documents should now be available.

Harman has repeatedly stated that the NTG4 products are "future product[s]…still under development and for which the design has yet to be finalized" (*see* Exhibit M at 1, Claim Chart for NTG4 product attached to Harman's Supplemental Response to MIT's First Set of Interrogatories (Nos. 1-11), served June 16, 2006). Based on that representation, MIT was waiting until it received final documentation before submitting an expert report regarding infringement by the NTG4 automobile navigation systems of the patent in suit or a representation from Harman that the documents already received were final versions. Despite Harman's knowledge that MIT intended to include the NTG4 in this case, however, it has refused to provide any current or supplemental documentation regarding that product, or to make a sample available to MIT. MIT has not yet received final versions of these documents, which it is entitled to under the rules of supplementation, sufficient to demonstrate how the products operate in an automobile.

MIT relied on Harman's representation that the NTG4 was not complete, MIT needs final versions of the documents. MIT also is entitled to a sample of the accused NTG4 automobile navigation products to investigate the output and operation of these systems.

**II.     Harman's Failure To Provide Deposition Testimony
        On Documents Produced After The Close Of Fact Discovery Has Prejudiced MIT**

Harman produced highly relevant technical documents on August 1, 2006, more than six weeks after the deposition of Harman's Rule 30(b)(6) technical witness. MIT needs to be able to question Harman's Rule 30(b)(6) technical witness or witnesses on the newly-produced documents. MIT originally agreed to a deposition of Harman's 30(b)(6) technical witness by videolink to save costs for both sides. However, Harman's witness was not prepared for the questions asked by counsel for MIT about documents that MIT identified to Harman before the deposition. Harman is now using this ill-preparedness as a defense to infringement of the accused products. MIT is requesting further deposition testimony, in Boston, as soon as possible. MIT is entitled to know which versions of software are used with which of the accused products.

**REQUEST FOR RELIEF**

WHEREFORE, MIT respectfully requests that this Court issue an order:

(1)     Requiring Harman to immediately produce product specifications for each of Harman's accused products for which documents have not yet been produced;

(2)     Requiring Harman to immediately supplement in a meaningful way the documents cross-referenced in Harman's August 1, 2006 production;

(3)     Requiring Harman to immediately supplement technical documents for the NTG4 automobile navigation systems or otherwise resolving that the documents already produced represent the NTG4 automobile navigation products for sale in the U.S.;

(4)     Requiring Harman's counsel to submit a report to the Court stating the efforts that Harman's counsel has taken to date to meet Harman's document production obligations (including attorney name, date, and Harman contact);

(5)     Requiring Harman to produce Mr. Jeske or additional 30(b)(6) witnesses in Boston to answer questions Mr. Jeske could not answer and questions about Harman's recently-produced documents;

(6)     Requiring Harman to offer for sale at cost samples of the accused systems, including the NTG4 automobile navigation systems;

(7)     Award costs for the time spent reviewing the millions of pages dumped on MIT after April 21, 2006;

(8)     Ordering such other and further relief as the Court deems equitable and appropriate.

### Compliance with Local Rules 7.1 and 37.1

MIT's counsel discussed the matters raised herein with Harman's counsel in numerous conversations, and through various correspondence in May through August of 2006, most recently on September 1, 2006, attempting to resolve these disputes. As the disputes remain unresolved, MIT now seeks the Court's assistance.

September 5, 2006                                    Respectfully Submitted,

                                                     Massachusetts Institute of Technology,
                                                     By its Attorneys,

                                                     <u>/s/ Steven M. Bauer</u>
                                                     Steven M. Bauer (BBO# 542531)
                                                     Jacob K. Baron (BBO# 652568)
                                                     Kimberly A. Mottley (BBO# 651190)
                                                     John W. Pint (BBO# 660548)
                                                     PROSKAUER ROSE LLP
                                                     One International Place
                                                     Boston, Massachusetts 02110-2600
                                                     Phone:  617-526-9600
                                                     Fax:    617-526-9899

## **<u>CERTIFICATE OF SERVICE</u>**

    I certify that on September 5, 2006, I caused a copy of the forgoing document to be served upon counsel of record for Harman International Industries by electronic means using the Court's ECF system.

                                                       <u>/s/ Steven M. Bauer</u>
                                                         Steven M. Bauer