# Exhibit A
## (filed under seal)

# Exhibit B
## (filed under seal)

# Exhibit C

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Joanna Belle Gunderson
To Call Writer Directly:
312 469-7024
jgunderson@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: 312 660-0613

August 30, 2006

**VIA ELECTRONIC MAIL**

Jacob K. Baron
Proskauer Rose LLP
One International Place
Boston, MA 02110-2600

Re:     *MIT v. Harman Int'l Indus., Inc.*—Case No. 05-10990 DPW (D. Mass)

Dear Jake,

I write in response to your letter of August 25, 2006 to Craig Leavell. As a threshold issue, we note that Harman made its full source code available to MIT several months ago, under conditions that MIT agreed to after extensive negotiations and even a premature motion to compel, which MIT ultimately withdrew in light of the parties' agreement. Despite the fact that the source code was readily available and located just a block or two from your offices, neither MIT's attorneys nor its experts ever took the time to review that source code. After a similar negotiation and premature motion, Harman also made available product samples of each of the then-accused systems, only to have MIT decline to accept all but one such sample. In addition, despite requests for payment, MIT has yet to pay for the one sample that Harman did provide, and despite MIT's express agreement to pay for the sample as a precondition for Harman's effort to provide them. Now, more than two months after the close of fact discovery, and only after the completion of expert reports, have you requested access to the source code and samples of devices that were accused of infringement on the final day of fact discovery. Your requests for these materials at this late date violates the Court's scheduling order and the Federal Rules. Thus, Harman objects to any attempt by MIT or its experts to supplement their expert reports at this late date based on information that was available (or should have been requested, but was not) during the period for fact discovery. It is clear to us that MIT is trying to shift the burden to Harman to prove non-infringement, which is inappropriate.

Regarding your item no. 1, these gaps were not intentional and the missing items were to be produced in our production of August 1, 2006. I am unsure why you did not receive them, regardless, I have attached another copy of these documents.

Regarding item nos. 2–4, 6, and 7 in general, we will communicate your specific requests for documents to our personnel in Germany to see whether any such documents can be located,

Jacob K. Baron
August 30, 2006
Page 2

and if so, we will consider whether they are responsive to any outstanding document requests. If so, we will produce them as soon as possible.

Regarding the documents sought in your item numbers 2 and 3, we have already repeatedly inquired as to whether such document exist, and have repeatedly been told that they do not exist. Nonetheless, we will inquire as to the previous personnel we asked and also ask others whether the requested documents exist. Harman has gone above and beyond its requirements to make a good faith effort for these documents.

Regarding the documents sought in your item number 4, we do not believe that such documents exist, but will make another effort to look for such documents. It is our understanding that there is no documentation which directly corresponds to the changes made in each version of the software module. We note that the source code did include a history of changes to each file, from which the information sought could have been determined, at least in part, based on the timing of the product releases.

Regarding the documents sought in your item number 5, we disagree with your assertion that later versions of software may have been backward-compatible necessarily means that the various versions can be applied to all systems. As new features were added, it does not follow that earlier systems included such features even if the software was compatible. Regarding your statement about Mr. Jeske's knowledge, the 30(b)(6) deposition notice did not seek that particular information. Had MIT provided anything more than a very broad request, we would have been in a position to ensure that Mr. Jeske was prepared to respond to any particular topic that was noticed. MIT assumed that it could simply apply findings about one system to each and every Harman system. The individuals who MIT consciously chose not to depose, such as Mr. Hanika-Heidl, for example, have additional, particular information about Harman's software. Harman strongly suggested that MIT depose several of the Germany-based witnesses, who had been disclosed very early on in this case as having relevant knowledge. MIT declined to do so, even though MIT had not used all 10 of the depositions under the presumptive limit of the Federal Rules. We specifically informed MIT that these witnesses had additional knowledge, but MIT declined to depose them. MIT did not timely serve any interrogatory seeking this information, nor has MIT ever contended that Harman was required to produce anyone other than Mr. Jeske for any follow-up to the 30(b)(6) deposition.

Regarding your item number 6, this is the first time that MIT has specifically requested that we attempt to locate this information. If it exists and can be located, we will produce it as soon as possible.

Regarding your item no. 8, any notes will be brought to Mr. French's deposition. However, Harman would like to point out that both Mr. Molzen and Mr. Hanika-Heidl were previously identified by Harman to MIT as individuals with knowledge relevant to this case for

Jacob K. Baron
August 30, 2006
Page 3

many, many months. Regardless, MIT specifically and consciously decided not to depose either of these two witnesses, and expressly withdrew its notice of deposition with respect to Mr. Hanika-Heidl, even though we had prepared him to be deposed and had scheduled a deposition. We believe it is improper for MIT to now start conducting fact discovery of these two witnesses, more than two months after the close of fact discovery.

Regarding you item no. 9, this website was not intentionally removed. We can specifically state that its removal was not done at the request of counsel (outside or in-house), and its removal had nothing to do with this case, but was instead done in the normal course of business by the Harman Consumer Group. We too were surprised to see that it was no longer accessible. Harman's in-house counsel ordered the website restored and the site was reactivated on August 29 at its original URL (www.trafficpro2.com).

Regarding your item no. 10, MIT declined our offer for MIT to purchase all but one of the earlier samples. Harman specifically made these samples for MIT at the beginning of the discovery period. MIT never requested any further samples during the fact discovery period, which is now closed. We believe the proper time for MIT to request samples of these products was during fact discovery. Furthermore, per my letter to Ms. Mottley of August 25, 2006, Harman has not yet received payment for the one sample which MIT did purchase several months ago.

Regarding your item no. 11, it was our understanding that MIT was not accusing the NTG4 of infringement. This was further evidenced by the reports of MIT's experts, which do not identify the NTG4 as an accused device. We already provided the most recent documents that were available during the period for fact discovery. Nevertheless, none of MIT's experts bothered to review those materials in connection with their infringement analyses.

Regarding your item no. 12, after MIT's motion to compel filed on January 18, 2006, the parties agreed to a procedure by which the source code would be made available to MIT during the fact discovery period. The source code was available for many months, through the close of fact discovery. What is interesting to us is that after demanding access and even filing a premature motion to compel to gain access to the source code, MIT made no effort to review the source code, or even inquire about doing so during the fact discovery time period after we produced the source code. Fact discovery is now closed, and the source code is no longer at Sherin & Lodgen. Harman objects to any access to the source code by MIT's experts on the basis that it is untimely, should have been done before, and does not provide a legitimate basis for MIT to supplement any of its expert reports. To the extent that counsel for MIT wishes to review the source code under the understanding that it will not be shared with MIT's experts, we are willing to consider granting you such access.

Jacob K. Baron
August 30, 2006
Page 4

Regarding MIT's statement that refers to supplementing Mr. Belgard's report, since MIT had the opportunity to review Harman's source code and failed to make use of it during the appropriate time period, Harman specifically objects to MIT submitting any supplemental expert reports dealing with source code. Furthermore, it appears that even when an expert, specifically Dr. Grosz, expressed a need to see the source code or product samples, MIT did not provide that expert with access to either the source code or the product samples. All of MIT's experts, including Mr. Belgard, had ample opportunity to view the source code and to request sample devices during the fact discovery period. There is no legitimate basis for Mr. Belgard, or any of MIT's experts for that matter, to provide an untimely supplemental report to address information that could have, and should have been reviewed during the fact discovery period and addressed in opening expert reports—especially if their failure to do so was a result of MIT not providing access to or not making their experts aware of access to the source code and product samples.

Furthermore, many of the items that MIT is now requesting are things that likewise could have, and should have been addressed during fact discovery. For instance, had MIT reviewed the source code or even performed some simple follow up to Mr. Jeske's deposition, the need for many of these now untimely requests for production may have been realized. Fact discovery is now closed and expert discovery is nearing closure. MIT has had ample time to investigate these matters and to the extent that MIT intends to re-open fact discovery and attempt to submit untimely expert reports, Harman objects.

Best Regards,

Joanna Belle Gunderson

Attachments (2)

# Exhibit D

ONE INTERNATIONAL PLACE
BOSTON, MA 02110-2600
TELEPHONE 617.526.9600
FAX 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

**Jacob K. Baron**
Direct Dial No.: 617/526-9886
jbaron@proskauer.com

July 13, 2006

**VIA ELECTRONIC MAIL**

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

   Re: <u>MIT v. Harman International Industries, Inc., No. 05-10990 DPW (D. Mass.)</u>

Dear Craig:

   In our review Harman's document production and in reviewing materials for the reports of MIT's experts, it has become clear that Harman has not produced certain categories of documents relevant to its accused automobile navigation products.[1]

   To date, Harman has not produced, for example, product specifications, circuit diagrams or product manuals for all of Harman's accused products. While Harman's document production does include some of these materials for some of Harman's accused products, the majority of these materials remain missing. Specific types of information MIT has been seeking since the start of document production include the following (with examples):

1. **Product Requirement Specifications** that include schematics, block diagrams and circuit board layouts. For example, HAR051069-051114 is a specification for the Traffic Pro II 7200; HAR72920-67 is a specification for the Crossfire Radio (6811 and based on the Traffic Pro 7200 document); HAR078676-97 for Rb3; HAR043754-75 for Rb3; HAR55802-975 for Harley Davidson Radio.

---

[1] MIT has accused the following Harman products of patent infringement:

  Traffic Pro aftermarket; Traffic Pro for Porsche; Traffic Pro (DTM) (aka Traffic Pro II) for Ford; Traffic Pro for Land Rover and Aston Martin; Online-Pro for Porsche GT; Infotainment (Online-Pro) for Ferrari; Rb4 for Chrysler, Crossfire Radio for Chrysler; Harley Davidson Radio for Harley Davidson; DVD Navimodule for Audi; PCM 2 and PCM 2.1 for Porsche; W211 (Navimodule 6059, Navimodule 7042), W220, W221 for Mercedes; Cascade for Ferrari (collectively, "Harman's accused products").

PROSKAUER ROSE LLP

Craig D. Leavell, Esq.
July 13, 2006
Page 2

2. **Block Diagrams** showing navigation components.  For example, HAR078377; HAR078378; HAR037550.

3. **Theory of Operation** documents.  For example, HAR037495-524 for Rb3; HAR037525-541 for Rb3.

4. **Navigation Specifications**.  For example, HAR041275-319.

5. **HMI or MMI Behavior Specifications**.  For example, HAR073243-304.

6. **Hardware Description**.  For example, HAR387995-388010.

Documents equivalent to the examples provided under each category should have been produced for each of Harman's accused products.  If no equivalent document exists for a particular product, please identify which products function according to a specification that was provided.  Essentially, MIT is requesting that Harman provide the necessary information to build each of Harman's accused products.  If Harman believes that it has produced product specifications applicable to each of its accused products please provide the production numbers for those documents.

Please be prepared to discuss this issue at the teleconference scheduled for later this afternoon.

Very truly yours,

Joke

Jacob K. Baron

JKB/avm

# Exhibit E

**From:**      MIT_Harman

**Sent:**      Thursday, July 13, 2006 2:33 PM

**To:**        Bauer, Steven; Mottley, Kimberly; Pint, John; Thaler, Matthew; Cirba, Sara; Boutin, Anne; Baron, Jacob K.

**Subject:**   FW: MIT v. Harman

**Attachments:** 2006.07.13 ltr baron to leavell re harmans production.pdf

---------

**From:**   Craig Leavell[SMTP:CLEAVELL@KIRKLAND.COM]

**Sent:** Thursday, July 13, 2006 2:33:43 PM

**To:**   Baron, Jacob K.

**Cc:**      Harman-MIT@kirkland.com; MIT_Harman

**Subject:**     Re: MIT v. Harman

**Auto forwarded by a Rule**

Jacob,

Thanks for your letter.  Your email assumes the existence of documents that we have not located despite a reasonable effort to do so.  We will follow-up your request with the relevant Harman people, who are located in Germany, where it is now after business hours.  As a result, we will not be in a position to discuss the issues raised in your letter during this afternoon's call.

Craig

"Baron, Jacob K." <jbaron@proskauer.com>                    To Harman-MIT@kirkland.com

07/13/2006 01:09 PM                                          cc "MIT_Harman" <MIT_Harman@proskauer.com>
                                                            Subject MIT v. Harman

Counsel,

Please see attached correspondence.

Regards,

Jake
<<2006.07.13 ltr baron to leavell re harmans production.pdf>>

Jacob K. Baron | PROSKAUER ROSE LLP
One International Place | Boston, MA 02110-2600
v: 617.526.9886 | F: 617.526.9899
jbaron@proskauer.com | www.proskauer.com

---------------------------------------------------------------------------

This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

===========================================================================


************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
************************************************************

# Exhibit F

# PROSKAUER ROSE LLP

ONE INTERNATIONAL PLACE
BOSTON, MA  02110-2600
TELEPHONE 617.526.9600
FAX 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

**Jacob K. Baron**
Direct Dial No.:  617/526-9886
jbaron@proskauer.com

July 26, 2006

**VIA ELECTRONIC MAIL**

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois  60601

Re:  <u>MIT v. Harman International Industries, Inc., No. 05-10990 DPW (D. Mass.)</u>

Dear Craig:

It appears that Harman is in contempt of the Court's March 20, 2006 order requiring Harman to produce all discoverable and responsive documents.  We need to discuss this issue immediately.  Although your email response to my July 13 letter stated that you would "follow-up," two weeks have passed, you have not yet done so, and we need resolution of this issue *immediately* .

So that there is no ambiguity here, let me be as specific as I can.  We are not seeking another dump from Harman of another million pages of documents -- we merely want the following specific documents, all of which the court order to have been produced by now:

1.     Product Requirement Specifications for all of Harman's accused products akin to that produced for the Crossfire Radio at HAR 072920-67;

2.     Block Diagrams for the accused products akin to HAR78377;

3.     Theory of Operation documents.  We have these materials for the RB3 at HAR37495-524 but we do not have similar documents for Harman's other accused products;

4.     Navigation Specifications.  Again, we have these for the RB3 at HAR41275-319 but not  for Harman's other accused products.;

5.     HMI or MMI Behavior Specifications akin to HAR73243; and

6.     Hardware Descriptions akin to HAR387995-388010.

**PROSKAUER ROSE LLP**

Craig D. Leavell, Esq.
July 26, 2006
Page 2

What is most important, and will be the major point in any motion for sanctions we file, is that of the technical documents that Harman has produced, most were not produced in response to our document requests, but were buried in millions of pages of documents as attachments to emails from Harman's German employees. That is, as far as we can tell, Harman produced few, if any, engineering documents *as* engineering documents, and conducted little, if any, searching for, identifying and producing of the relevant technical documents. The only reason we have what we have was because some e-mail contained technical documents as attachments. It seems that if a technical document was not circulated internally at Harman by means of e-mail, however, it was not likely produced.

Magistrate Judge Dein invited MIT to seek expenses as sanctions if it turned out that Harman's five million documents were a flagrant data dump. It now appears to us that not only was the production a wild goose chase done in bad faith solely to increase the cost of this litigation to MIT, but that Harman acted in contempt of the court order requiring production of all relevant discoverable German documents. Surely, product specifications are maintained somewhere other than in an employee's email files. The Court's March 20, 2006 order and the fact that Harman has neither searched for nor produced product specifications and other materials as outlined (by example) in my July 13 letter for each of Harman's accused products, we believe, is now the basis for a sanctions motion.

These materials are long overdue. Your July 13 email stated that my letter "assumed" the existence of these documents. We have requested a minimal amount of documentation sufficient to enable our expert to understand how each of Harman's accused products operate. We believe that Harman has documentation sufficient to build its own products. To the extent product specifications do not exist for particular accused products, it is incumbent on you to say so unambiguously. If you contend the documents were produced, you need to show us where. If you have not produced them, then we ask you do the right thing and do so now.

Absent production, identification, or representation that no such documents exist, by Friday at noon EDT (or some reasonably certain time period thereafter by mutual agreement), MIT will file a motion to seeking sanctions for Harman's discovery deficiencies, and will request both a jury instruction that all of Harman's products operate in the same manner as the documents now produced, and for MIT's fees in reviewing the document produced to date.

We would prefer to have the documents, rather than bother the court. We have met and conferred extensively on this issue and the court has recognized our frustration and ordered production. Are you available tomorrow to speak (perhaps 2:00 p.m. EDT?) or sometime Friday morning, in a last effort to see whether there's any possibility of resolving this without court intervention. Absent positive resolution, however, we will file our motion so that we can ask the court to address it at the hearing next Thursday.

**PROSKAUER ROSE LLP**

Craig D. Leavell, Esq.
July 26, 2006
Page 3

    Frankly, there is no excuse for these documents not having been produced yet.

                                 Very truly yours,

                                 Jacob K. Baron

JKB/avm

# Exhibit G
## (filed under seal)

# Exhibit H

One International Place
Boston, MA 02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

**Jacob K. Baron**
Attorney at Law

Direct Dial 617.526.9886
jbaron@proskauer.com

May 31, 2006

**Via Electronic Mail**

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

      Re:    MIT v. Harman International, Inc., No. 05-10990 DPW (D. Mass.)

Dear Craig:

      This is with regard to MIT's deposition of Harman on the technical aspects of Harman's automobile navigation products. Pursuant to our telephone conversation on Friday, May 26, 2006, MIT is providing some example topics and documents MIT plans to explore during the deposition of Harman. As requested by Harman, MIT is providing this information to aid in the preparation of Harman's witness(es). The information MIT provides below is not meant to limit the scope of MIT's deposition of Harman on the technical aspects of Harman's automobile navigation products. In addition, as we discussed on May 26, MIT and Harman have agreed to share the cost of a translator. Harman has agreed to provide MIT with the name and contact information of the translator in advance of the deposition so that MIT can verify the credentials of the translator.

      MIT plans to question Harman on at least the following topics and documents during the Rule 30(b)(6) deposition scheduled for June 7:

- Entry of driver destination information using Harman's automobile navigation systems
- Use of the Dijkstra algorithm in Harman's automobile navigation systems
- Harman's "Scout" module, "Scout 507" and "Scout 509" (see, e.g., HAR095288-HAR095398)
- Use of the A* algorithm (see, e.g., HAR311476-HAR311483)
- Harman's "Positioning and Sensoric" functional spec (see, e.g., HAR095205-HAR095238)
- Harman's current and future implementations for the "Updateable Navigation Database," as discussed at HAR302977-HAR302987

PROSKAUER ROSE LLP

Craig D. Leavell, Esq.
May 31, 2006
Page 2

- Harman's XAC database (see, e.g., HAR063054-HAR063211) and use of the XAC database by Harman's automobile navigation products.
- What do "NOTURNS" "LANEINFO" and "MANOEUVRES" in HAR202196 mean and how are they related to the xac_vtre.h and xac_vect.h files referenced therein?
- What is "noturns" in HAR199423-HAR199254?
- The storing of lane information in Harman's database, (see, e.g., Plaintiff's Deposition Exhibit Nos. 55 and 56 (marked during Montealegre's deposition))
- Harman's "Speech Driver", "Speech Engine", and "Speech Databases" (see, e.g., HAR303102-HAR303125 and HAR303373-HAR303395)
- Harman's Physical Storage Format ("PSF") specification of HAR303484-HAR303497
- Current speech implementations and those of "Next Generation Navigation" as found in HAR303516-HAR303522
- Harman's "Speech Database" (see, e.g., HAR303624-HAR303633)
- Harman's "Speech driver" and "grammar files" (see, e.g., HAR303779-HAR303817)
- Harman's "Route Guidance" and "Speech Output" as discussed in HAR304114-HAR304358 (specifically HAR304239-HAR304275)
- Harman's use of "Driving Recommendations generated from Loadable Grammars" (see, e.g., HAR305739-HAR305752)

Again, as discussed above, MIT is providing this information in order to aid Harman in preparing its Rule 30(b)(6) deponent(s). This should in no way be construed as a limitation on the topics for discussion at the deposition.

Finally, I would like to note that MIT and Harman have a preliminary agreement that the deadline for completion of fact discovery will move from June 5 (per Kim Mottley's email of April 14, 2006) to June 16.

Very truly yours,

Jacob K. Baron

# Exhibit I
## (filed under seal)

# Exhibit J
## (filed under seal)

# Exhibit K
# (filed under seal)

# Exhibit L

One International Place
Boston, MA  02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

**John W. Pint**
Direct Dial 617.526.9779
jpint@proskauer.com

March 17, 2006

*Via Electronic Mail*

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Re:    <u>MIT v. Harman International Industries, Inc.</u>, No. 05-10990 DPW (D. Mass.)

Dear Craig:

  Attached is a supplemental infringement contention chart concerning the NTG4 product. Please treat this as MIT's formal supplementation to MIT's Response to Harman's Interrogatory No. 5.

  MIT specifically reserves the right to amend its disclosure and preliminary infringement contentions, including the assertion of additional claims based on the discovery of additional or different information during the course of discovery, which is presently ongoing.

     *    *    *

     Very truly yours,

     John W. Pint

Enclosure

# Exhibit M

| '685 Patent | Non-infringement of the NTG4 Device[1] |
|---|---|
| 1. An automobile navigation system which produces spoken instructions to direct a driver of an automobile to a destination in real time comprising: | The citation in MIT's claim chart to page 184 of Mr. Radomski's deposition transcript, where Mr. Radomski is not talking about HAR 026022 or the NR2 system, provides no support for a finding that this preamble is met by the NTG4 system. |
| computing apparatus for running and coordinating system processes, | The citation in MIT's claim chart to page 231 of Mr. Radomski's deposition transcript, where Mr. Radomski is not talking about spoken directions, provides no support for a finding that this preamble is met by the NTG4 system.<br><br>The citation in MIT's claim chart to the presentation at PXZ2, which is not a final specification of any NTG4 product, provides no basis to prove that the eventual design of the NTG4 product will meet this limitation. |
| driver input means functionally connected to said computing apparatus for entering data into said computing apparatus, said data including a desired destination, | The citation in MIT's claim chart to pages 231-32 of Mr. Radomski's deposition transcript, where Mr. Radomski is not talking about any computing apparatus for the NTG4, provides no support for a finding that this limitation is met by the NTG4 system. |
| a map database functionally connected to said computing apparatus which distinguishes between physical and legal connectivity, | The NTG4 device will not include this limitation. First, no NTG4 will have a keyboard or equivalent structure. Second, the NTG4 will not be allowed for inputting data into the computer that includes a desired destination. Instead, a NTG4 user will select among data that has already been pre-input into the Harman U.S. system.<br><br>As properly construed, the NTG4 database will not "distinguish[] between physical and legal connectivity." |
| position sensing apparatus installed in the automobile and functionally connected to said computing apparatus for providing said computing apparatus data for determining the automobile's current position, | GPS satellites are not "installed in the automobile" and GPS receivers are not position sensors. In addition, a gyroscope does not sense position, and no vehicle speed sensors are included in the NTG4 systems that are built and sold by Harman. |
| a location system functionally connected to said computing apparatus for consulting data from said position sensing apparatus, for consulting said map database, and for determining the automobile's current position relative to the map database, | The NTG4 will not determine any relative map position. Instead, it will be based on absolute map locations. In addition, the NTG4 will not use a map database as claimed for the reason set forth above. |
| a route-finder functionally connected to said computing apparatus, for accepting the desired destination from said driver input means and the current position from said location system, for consulting said map database, and for computing a route to the destination, | As noted above, the NTG4 will not include the required "driver input means" and "map database" recited in this limitation. In addition, the NTG4 will not compute a route to the destination. Instead, the route finder will take an iterative approach that interpolated a route from both ends - the beginning and end - until a route is chosen, as opposed to calculating a route to the desired destination. |

1    The NTG4 device is a future product that is still under development and for which the design has yet to be finalized. There have been no sales, offers to sell, or importation of the NTG4 device. At most, prototypes for which designed have not been finalized have been made and used by Harman. This chart is based on Harman's current knowledge of the design as it exists today, but that design is potentially subject to change.

| | |
|---|---|
| a discourse generator for functionally connected to said computing apparatus for accepting the current position from said location system and the route from said route finder, for consulting said map database, and for composing discourse including instructions and other messages for directing the driver to the destination from the current position. | The NTG4 will not "compose discourse including instructions and other messages for directing the driver to the destination." First, it is unclear how MIT construes the term "discourse," but to the extent MIT requires something more for "discourse" other than the plain and ordinary meaning of "Verbal expression in speech or writing," then the NTG4 will not meet such requirements. Second, MIT has cited no evidence that any "other information for directing the driver to the destination" will be presented by the NTG4 system. |
| a speech generator functionally connected to said discourse generator for generating speech from said discourse provided by said discourse generator, and | MIT has not identified any speech generator in its claim chart with respect to the NTG4, but merely cites to passages that indicate that audio may be outputted by the system. |
| voice apparatus functionally connected to said speech generator for communicating said speech provided by said speech generator to said driver. | As sold by Harman, the NTG4 system did not include any voice apparatus/speakers. The NTG4 could be completely operational without being connected to speakers, and Harman has no knowledge as to which users may or may not connect a NTG4 system to other third-party speaker systems. |
| 2. The automobile navigation system of claim 1 wherein said map database comprises a set of straight line segments and a set of nodes, each endpoint of each segment being a pointer to a node representing the coordinates of the endpoint and the set of other segments which are physically and legally connected to that endpoint. | This claim is not infringed because claim 1 is not infringed for the reasons stated above. In addition, nothing in MIT's infringement chart indicates the particular database arrangement is present in any NTG4 device. |
| 8. The automobile navigation system of claim 1 wherein said map database includes measures of street quality. | This claim is not infringed because claim 1 is not infringed for the reasons stated above. In addition, the quality of the street is unimportant to (and not included in) the NTG4 map, which instead relies on a relative rating of street functionality, in which even streets with relatively high functionality can be of poor street quality. The classes of roads in Harman's map database (cited in MIT's claim chart) are not based on street quality. |
| 7. The automobile navigation system of claim 1 wherein said map database comprises a three-dimensional representation of street topology. | This claim is not infringed because claim 1 is not infringed for the reasons stated above. The third dimension/a three-dimensional representation of street topology. The NTG4 map does not include three-dimensional representation of street topology. The number included for some particular locations is only used to represent which roads are above others by use of a relative indicator (-1, 0, 1 or 2, for example), but this is not a third coordinate, and is not a three-dimensional representation of street topology. |
| 9. The automobile navigation system of claim 1 wherein said map database distinguishes divided streets. | This claim is not infringed because claim 1 is not infringed for the reasons stated above. |
| 11. The automobile navigation system of claim 1 wherein said map database includes lane information. | This claim is not infringed because claim 1 is not infringed for the reasons stated above. |
| 12. The automobile navigation system of claim 1 wherein said map database includes speed limits. | This claim is not infringed because claim 1 is not infringed for the reasons stated above. In addition, the NTG4 database that will be used in the U.S. does not include speed limits. |
| 13. The automobile navigation system of claim 1 wherein said map database includes expected rate of travel. | **MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device.** |
| 19. The automobile navigation system of claim 1 wherein said map database includes a database of service locations. | **MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device.** |
| 21. The automobile navigation system of claim 1 further comprising means for updating said map database. | **MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device.** |

| | |
|---|---|
| 23. The automobile navigation system of claim 1 wherein the map has minimum accuracy of 10 meters. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 24. The automobile navigation system of claim 1 wherein said route finder is based on a best-first search algorithm. | MIT has not come forward with any evidence that purports to show infringement of this claim by any TrafficPro device. |
| 27. The automobile navigation system of claim 1 wherein said route finder is adapted to find a best route according to any one of three cost metrics: distance, speed, simplicity. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 28. The automobile navigation system of claim 1 wherein said route finder is adapted to calculate a new route if the driver or vehicle navigation system makes an error or if the route is unnavigable due to unforeseen circumstances, wherein said new route does not simply backtrack to the point of the error if a better route from the current location exists. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 29. The automobile navigation system of claim 1 wherein said route finder is adapted to calculate a new route while the automobile is in motion, wherein said new route will begin from the location of the automobile at the time the calculation of the new route is completed. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 32. The automobile navigation system of claim 1 wherein said location system is a position-keeping (dead-reckoning) system. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 34. The automobile navigation system of claim 1 wherein said location system employs map matching. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 35. The automobile navigation system of claim 1 wherein said position sensing apparatus comprises displacement and direction sensors installed in the automobile. | This claim is not infringed because claim 1 is not infringed for the reasons stated above. In addition, as sold by Harman, none of the NTG4 systems will include displacement or direction sensors. |
| 36. The automobile navigation system of claim 1 wherein said position sensing apparatus measures displacement with an odometer. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 40. The automobile navigation system of claim 1 wherein said position sensing apparatus measures direction with a gyroscope. | The citation in MIT's claim chart to page 184 of Mr. Radomski's deposition transcript provides no support for a finding that this limitation is met by the NTG4 system. The citation to HAR 026022 similarly provides no support for a finding that this preamble is met by the NTG4 system. |
| 41. The automobile navigation system of claim 1 wherein said discourse generator is based on an object-oriented programming methodology. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 42. The automobile navigation system of claim 1 wherein each intersection in a route is classified into one type in a taxonomy of intersection types, and the disclosure generated in relation to each said intersection depends on its type. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |

| | |
|---|---|
| 43. The automobile navigation system of claim 42 wherein said taxonomy of intersection types includes continue, forced-turn, U-turn, enter, exit, onto-rotary, stay-on-rotary, exit-rotary, fork, turn, and stop. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 44. The automobile navigation system of claim 42 wherein said discourse generated further depends on a description function for each intersection type which generates a description given the length and tense of the desired description and the position along the route from which an instruction is to be given. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 45. The automobile navigation system of claim 1 wherein said discourse generated comprises a long description of an act given substantially before the act is to be performed and a short description given at the time the act is to be performed. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 46. The automobile navigation system of claim 45 wherein said long descriptions includes cues. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 48. The automobile navigation system of claim 1 wherein said driver input means includes means for said driver to demand immediate instructions, or clarification or repetition of instructions already provided. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 49. The automobile navigation system of claim 1 wherein said driver input means includes means for said driver to indicate to said automobile navigation system that a given instruction provided by said system is impossible to complete for some reason and that a new route must be calculated. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 54. The automobile navigation system of claim 1 wherein said discourse generator is responsive to a user-model stored in said computing apparatus to customize discourse to the requirements and preferences of said driver. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |
| 56. The automobile navigation system of claim 1 wherein said speech generator uses digitized speech. | MIT has not come forward with any evidence that purports to show infringement of this claim by any NTG4 device. |