## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **MASSACHUSETTS INSTITUTE OF TECHNOLOGY** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | Civil Action No. 05-10990-DPW |
| **HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,** | ) ) ) | **ORAL ARGUMENT REQUESTED** |
| **Defendant.** | ) ) ) | |

## HARMAN'S OPPOSITION TO MIT'S MOTION TO COMPEL

Nearly all of the documents and product samples MIT seeks have already been produced. Yet, through a series of demonstrable misrepresentations, MIT's motion suggests otherwise. Harman has been reasonable and diligent in responding to MIT's vague and broad document requests, which MIT inexplicably refused to clarify. MIT's unsupported claims that Harman has been deficient or less than diligent are simply false. MIT claims that the documents, source code and product samples it seeks are critical to proving its case. MIT's claims are, however, contradicted by MIT's own actions. MIT *failed* to review documents already in its possession; *failed* to walk a **mere four blocks** to inspect the source code it now seeks, which was made available to MIT **more than 8 months ago**; and *failed* to inspect and examine three of the four product samples Harman made available **more than 8 months ago**. Now MIT once again asks this Court to order Harman to produce the very things that MIT has had access to for months. MIT's motion is a veiled pretext for reopening discovery so that MIT can fix its expert reports which suffer from the same lack of effort that has prompted many of the discovery disputes to date.

Nearly all of the documents MIT now seeks are cumulative of Harman's current production. Still, Harman has again offered to make these documents available to MIT for inspection in Germany and Michigan. In the ordinary course of business, Harman's technical documents are stored in a decentralized fashion involving multiple databases according to the project and involving databases storing hundreds of gigabytes of data. MIT again inexplicably refused Harman's offer during a meet and confer just prior to Harman filing this Response. At bottom, MIT's motion is yet another attempt to improperly shift the burden to Harman to prove MIT's case, thereby minimizing the effort MIT must put into its case. Nonetheless, in the interest of finally resolving the few remaining discovery issues, Harman addresses each of the issues raised by MIT, in turn below.

MIT's request for relief, if granted, would impose an undue burden on Harman, particularly despite Harman's diligence and MIT's repeated failure take advantage of the discovery Harman has already made available. As discussed more fully in this Response, MIT's request **(1)** for further product specifications; **(2)** that Harman supplement its August 1 production with additional technical documents and **(3)** Harman supplement its production with final technical documents concerning the NTG4 product (a new product that has not even entered production yet) will all likely yield no additional, non-cumulative documents. Likewise, because MIT had access to the information and things it seeks during fact discovery, but failed to make use of it, MIT's request for: **(4)** an additional Rule 30(b)(6) deposition ; **(5)** a detailed report to the Court concerning Harman's discovery efforts to date and **(6)** for additional product samples, even though Harman has made samples available to MIT since January, should be denied. Finally, MIT's request number **(7)** for an award of costs for performing standard discovery tasks, such as reviewing the documents Harman produced at MIT's request, should be denied because

it is unjustly disproportionate remedy that would inappropriately shift MIT's financial burden for the discovery it seeks onto Harman.

## I.  HARMAN HAS PRODUCED RESPONSIVE NON-PRIVILEGED TECHNICAL DOCUMENTATION IN RESPONSE TO MIT'S DOCUMENT REQUESTS AND THIS COURT'S ORDER.

Harman has produced sufficient non-cumulative, responsive technical documentation and product specifications concerning the Accused Products.[1] Harman undertook reasonable and diligent efforts to produce them to MIT. Instead of dumping huge databases upon MIT *en masse*, Harman instead took the laboring oar and asked each of the Harman key employees responsible for the various Accused Products to collect and produce relevant, non-cumulative navigation-related documents; particularly, those that demonstrate the structure, function and operation of each of the Accused Products. The result was—as MIT put it—"millions" of documents that required "hundreds of attorney hours" to review. MIT Motion at 3 (Docket Entry No. 103). MIT's unsupported and untenable claims that Harman did not produce technical documentation are, therefore, just plain false and contradicted by MIT's own statements. MIT's complete disregard for the extra efforts Harman undertook to minimize, rather than maximize, the burden on MIT is very disappointing.

To be sure, the record shows that Harman has already produced the technical documents MIT belatedly seeks, including product specifications and technical engineering diagrams, and the source code. And Harman's latest efforts and trips to Germany—the most recent trip occurred last week—have confirmed that the overwhelming majority of the remaining documents stored in Harman's various project libraries are either non-responsive or cumulative

---

[1]  It appears that many of the documents MIT seeks are also publicly available on Harman/Becker's website at www.becker.de, and thus easily within MIT's reach. Harman did not produce website pages because, MIT did not agree to pay for discovery that was publicly available. Contrary to its unsupported claim of necessity, MIT apparently never bothered to look for these documents.

of Harman's current production. Harman is willing to allow MIT to inspect the hundreds of gigabytes of data in Harman's project databases and libraries to confirm this, just as Harman originally offered when discovery began. Again, **MIT refuses to make any efforts to inspect these documents, which would quickly resolve this issue.**. *See* Ex. A. MIT's motion should therefore be denied.

### A. Harman Has Already Produced Technical Documentation, Including Product Specifications, Final Engineering Diagrams, and Other Responsive Documents From Its Technical Document Sources.

Had MIT actually reviewed the documents Harman produced, MIT would know that Harman's production was replete with product specifications and technical and engineering documents for *all of the Accused Products*, to the extent they exist.[2] MIT's own motion shows that MIT's pattern and practice has been to complain first and review later, if at all. This motion is no different.

*First*, MIT complains that Harman produced "millions" of documents, which required "hundreds" of hours to review. Yet, through a series of misrepresentations in its motion, MIT later suggests that little or no responsive technical documents were ever produced, and that Harman is deliberately hiding relevant documents. MIT's contradictory statements are demonstrably false. For example, MIT misrepresents that "[a]fter MIT reviewed the millions of pages produced, it noted that the relevant product specifications it was identifying were *all* attached as 'attachments' to internal e-mail. That is, MIT was only being shown some random sampling of documents if they had fortuitously been attached to someone's e-mail."[3] This is simply not the case, as is demonstrated by the many earlier produced documents (not attached to

---

[2]    Included amongst Harman's production to date are product manuals, operation guides, installation guides, software specifications, product specifications, diagnostic documents, engineering diagrams, speech files, database designs, theory of operation documents, behavior specifications, block diagrams, hardware descriptions, and revision histories for the software and map databases. *See infra* at Sections IA-D.

[3]    *See* MIT Motion at 3 (Docket Entry No. 103), emphasis added.

e-mails) relied upon by MIT's own expert Richard Belgard, in his infringement report.[4]  *See* Exhibit B, Filed Under Seal.  Furthermore, the fact that the documents were "attached as e-mails" does not obviate the fact that the documents were produced, regardless of where they came from.[5]

*Next*, MIT tells the Court that, "[i]n preparing their expert reports, MIT's experts cobbled together these randomly produced specifications sufficient to reconstruct a couple of Harman's products."  This thinly-veiled cry of prejudice is also contradicted by MIT's own actions.  Indeed, MIT did not even request any additional documents *until after the close of expert discovery,* five days after opening expert reports were exchanged.  Regardless, MIT's expert Mr. Belgard admits that he was instructed by MIT's counsel to consider only a small subset of the Accused Products, specifically: Rb3 (which is not even sold or capable of use in the U.S., and should thus be excluded) Rb4, Traffic Pro and Crossfire.  Ex. C.  He also admits that he did not

---

[4]    For example, MIT's expert relies upon the following documents in his analysis of three of Harman's products: **Produced on October 12, 2005:  Traffic Pro II** User Guide, **Advanced Audio** GPS Navigation System - **Harley Davidson** Owner's Manual.  **Produced on January 9, 2006:**  Traffic Pro Field Reference Guide, Traffic Pro CD/Radio/GPS Navigation System **Produced on January 18, 2006: RB3** Theory of Operations, **RB3** Block Diagram, **RB3** Blocks, Rev. D2, **RB3** Navigation Specification, Requirements Specification - "Navigation for 6802 Chrysler **RB-3**", Navigation User Manual for Head Unit RB3 Version Summer C, **RB-3** Quick Reference Guide, Understanding **RB4** Navigation, **RB4** Behavior Specification, **RB4** Executive Program Review, 2004 DR **RB4** Navigation Radio Update, RB4 HMI v. 2.37, User Manual for **RB4** Version 1.0, Product Requirements Specification 7200 **Traffic Pro II** Radio, Compact Disc and Navigation System Version 1.3, Product Requirements Specification 7200 **Traffic Pro II** Radio, Compact Disc and Navigation System Version 1.4, NSD #1717 **Harley-Davidson** MY 2006 Infotainment System Navigation Specification, **Harley Davidson** Infotainment System Specification for MY 2006 and 2007.  **Produced on January 30, 2006: RB3** Program Review, Product Specification GPS Antenna WISI AG13 **C For Chrysler** RB3 Navigation, Block Diagram **Chrysler RB3** 6802-8 MB Flash/16 MB RAM, Block Diagram **Chrysler RB3** Mainboard B-Sample, **RB4** Navigation Radio Repair Manual.  **Produced on February 17, 2006:**  Feature Comparison Chart between **Harley Davidson** TBT Navigation Radio, **Traffic Pro, Traffic Pro II, DCX RB3/RB4**,  MIT's expert also cites to the following technical documents: Produced on January 18, 2006:  Analysis Component **Scout**, Chart of **Speech Commands and Intersection Types, Positioning and Sensoric Functional Description.**

[5]    MIT's blank citation to *Kozlowski, PPA v. Sears Roebuck and Company* is most telling.  MIT is correctly states that a party may not excuse itself from its discovery obligations by utilizing a system of record-keeping which conceals rather than discloses relevant records,  73 F.R.D. 73 (D. Mass. 1976), yet *MIT omits a key distinguishing fact*: in *Kozlowski*, the defendant, unlike Harman here, produced absolutely *no* documents responsive to the document request.  *Id.* at 75 (noting that "[n]evertheless, information of similar complaints has not been produced by the defendant").  Even MIT cannot credibly argue that Harman has not *substantially responded to MIT's document requests*.  Harman is not deliberately trying to conceal any discoverable material, through its record-keeping systems or otherwise.

even attempt to look for *any* documents relating to any other Harman products accused in this case. *See* Exhibit C, Filed Under Seal. Most importantly, Mr. Belgard says that *even had he been given more documents* **he simply would not have had the time** to perform any analysis with respect to those documents. *See* Ex. C.

Finally, MIT misrepresents that "[d]espite this Order, Harman has continued simply to refuse to produce the most relevant documents in its possession—the technical specifications and final written documentation regarding its accused products" and "[i]ndeed it appears that even as of today, Harman's counsel has failed to produce documents from Harman's single best repository of documents—its technical document library." However, even a cursory review of Harman's production demonstrates that it has not refused to produce technical specifications. *See infra* at IA-ID. Instead, Harman has made significant efforts to collect these documents from the various intercontinental sources within Harman, as the documents are ordinarily maintained by the different project teams. Furthermore, as Harman has repeatedly stated, there is no single, centralized "technical document library," contrary to MIT's assumptions and misrepresentations; but, rather, Harman has disparate collections of documents managed at the project, not corporate level. MIT's repeated refusal to accept this fact makes it no less true. *See* Section IV.

The list of MIT's misrepresentations and inconsistencies would alone exceed the page limit set by this Court's rules, if Harman were to note them all in this Response. However, the record is clear that MIT hindered its own discovery efforts by failing to properly and timely identify its claims and by failing to examine the many documents and things Harman produced in a timely fashion, including the very technical documentation, source code and product samples that have been conveniently within MIT's reach *for months*.

Harman's production to date, demonstrates that Harman has met its discovery obligations by producing thousands—or even "millions"—of documents relevant to the analysis of each of the Accused Products; contrary to MIT's next misrepresentation that Harman's position is that "if Harman has not produced documents MIT needs, too bad for MIT." MIT Motion at 5. And, as required by the Federal Rules, Harman continually supplemented its discovery as the case evolved. *See infra* at IA-ID.

### B. MIT's Request for Additional Documents Errantly Assumes Such Documents Exists or Have Not Already Been Produced.

As discussed above, Harman has produced ample technical specifications for each of the Accused Products, to the extent they exist. Yet, MIT erroneously assumes that Harman has a centralized "technical document library;" and that Harman has not produced documents from that alleged library. Additionally, MIT contends that because Harman does not keep the same types of documents for each of its products, it somehow is not in compliance with the Court's order. MIT's theoretical assumptions are unsupported and factually inaccurate. Like most international conglomerates, Harman's business has not always gone according to theory and textbooks. Financial and time constraints have often caused Harman to reduce or eliminate what some might otherwise consider standard procedures and documentation for particular products, as was the case with the Mercedes products (which Harman took over from a competitor)[6] and for many of the Porsche products,[7] which were behind schedule going into production.

---

[6]    In 2002, Harman took over the development of the navigation product for the E Class Mercedes platform from Bosch. Due to the delays in launching the platform by the failures of Bosch, Mercedes had it's own engineers working side by side with Harman engineers to timely complete the project. Thus, many alleged specification documents simply do not exist because there was no need to generate the documents because of the physically close working relationships of the two companies. MIT would have learned these facts had they taken up Harman's invitation to depose Germany witnesses disclosed by Harman in its Initial Disclosures.

[7]    The PCM 2 and prior products, were delayed 15 months going into production.

Still, MIT quizzes the Court, asking whether "Harman suggest[s] it has no final technical documents describing the operation of products it is selling to Audi and Mercedes?" Motion at 7. The answer, however, is right under MIT's nose because Harman already produced many technical documents relating to the Audi[8] and Mercedes[9] accused products on April 20, 2006.

Ultimately, the record shows that where non-cumulative documents in fact exist, Harman searched for and produced them. MIT has not shown otherwise. Instead, MIT's motion rests upon mere assumptions and unsupported claims that specific documents are required by automotive suppliers. Had MIT elected to depose Harman's German account executives, MIT would know that its assumptions concerning the automotive industry are false. Nonetheless, Harman is not responsible for MIT's false assumptions, lack of effort and repeated failure to appropriately manage its discovery obligations. Given the context, it is clear that MIT's discovery complaints are mere pretexts to disguise MIT's own discovery failures and inadequacies.

### C. MIT Will Not Be Prejudiced If Its Motion Is Denied Because Harman's Expert Did Not Argue That "Because Harman Had Not Identified Or Produced The Final Versions Of The Technical Documents For Each Accused Product, MIT Could Not Prove Infringement."

---

[8]  Harman's has produced system requirement specifications, various revisions of Navigation Operating Specifications, including Navigation Function Diagrams, MMI (Manual Machine Interface) Operating Specifications USA, various revisions of the USA Navigation Operating Specifications, U.S. Navigation Database Expansion Functional Requirements, Software Specifications for Map Display, System SOP Diagrams for A6 and A8, Report on Field test of Audi system in U.S., Software complexity diagram, and MMI specifications. Harman also produced documents identifying differences between relevant aspects of Harman's Audi systems, as well as documentation highlighting relevant differences between the HMI (Human Machine Interface) of the Mercedes W211 and Audi A8 systems.

[9]  Harman has produced documents relating to the accused Mercedes products including the Lastenheft Navigation Mid Class BR211, Pflichtenheft [Specification] Navigation BR211 Midline, Pflichtenheft [Specification] Navigations-Modul (6059) High Class BR211, Preliminary Specification for the MMI Series 211 Highline Nagivation, Specification for the MMI Series 211 ECE Highline Navigation, Preliminary Specification for the MMI, Series 211 USA Highline (Deltas to ECE Nagivation), and the Navigation Destination Entry flow chart for MMI Specification for Series 211 ECE Highline, Bedienungsanleitung der Navigation for Headunit DCW211 Mid Muster C- E6, Applikationslastenheft Navigation High Class BR211

Even MIT's claims of prejudice are misleading. To support its claim, MIT misrepresents the opinion of Harman's rebuttal expert, Robert French, who properly examined the deposition testimony and documents cited by MIT's experts and expressed his opinion that the documents cited did not prove infringement—because they don't.[10] The documents MIT selected simply do not apply to the particular products addressed in MIT's expert reports and thus fail to establish any basis for infringement. It is not Harman's fault that MIT relied upon the wrong documents, especially where MIT claims that "all evidence [it has] points to infringement." MIT Motion at 4. The facts speak for themselves, Harman is not playing games.

The flaws in MIT's expert reports are the result of MIT's own deliberate choices. MIT knowingly instructed its expert to "assume that Harman other accused products are simply variants of, and operate in the same manner as, one or more of the products" he analyzed, rather than to determine that issue from the ample evidence. *See* Exhibit E, Filed Under Seal. Yet, it is clear even from the deposition testimony cited by MIT's experts, as well as the documents Harman produced, and Harman's interrogatory responses that Harman's products, while similar, are also significantly different in several respects. Harman also told MIT this prior to the time for expert reports.[11] Aside from ignoring Harman's testimony, it appears MIT has not even

---

[10] For example, MIT's expert Mr. Belgard's opinions rely upon documents that apply only to specific products, because MIT deliberately chose to assume that all Harman products function the same. To the contrary, Harman told MIT that its assumption was incorrect. Harman's 30(b)(6) witness, Mr. Jeske, testified that the there are hundreds of versions of the route finding module and that Harman's products each use a different version of that module. *See* Exhibit D Filed Under Seal [Jeske deposition testimony at 89, lines 3-7]. Similarly, Mr. Jeske testified that the basic content of the database described in one version of the XAC database documentation would match about 80% of the content of the map databases supplied by Harman in a given product. *See* Exhibit D Filed Under Seal [Jeske deposition testimony at 151, line 20 - page 152, line 15]. Many documents produced also demonstrate differences in the systems including documents identifying differences between certain aspects of Harman's Audi systems, differences between the HMI of the Mercedes W211 and Audi A8 systems, and differences between the North American Navigation release updates for Crossfire, Rb4, Harley Davidson, Online Pro, Porsche PCM2 and 2.1, Traffic Pro, Audi D3/C6, W211 and W221. Harman has explained this to MIT on several occasions. *See, e.g.,* Harman's Supplemental Responses to MIT's First Set Of Interrogatories.

[11] Harman's 30(b)(6) witness testified that "XAC is a term for the kind of database, but they are not the same, so we have individual. For every system we have a different XAC, due to mostly request of the customer, but all

reviewed the more than 18 different versions of the XAC (map) database Harman produced.

Yet, nearly all of these documents were produced at the start of discovery.

### D. MIT's Own Conduct Contributed To The Evolving Nature Of Harman's Document Production.

Most of the obstacles that MIT has faced, which have allegedly prevented MIT from obtaining the discovery MIT claims it so desperately needs, are MIT's own doing. For example, MIT delayed accusing Harman's imported products for several months, and did not specify which products they were accusing until nearly the end of fact discovery on June 16, 2006, despite Harman's early encouragements and offers of compromise to allow MIT to do so. *See* Ex. F.[12]. MIT's refusal to clarify made it very difficult for Harman to gauge the practical scope of its discovery obligations. Ultimately, MIT's own overly broad and vague discovery requests, which MIT repeatedly refused to clarify until very recently, unnecessarily limited Harman's ability to produce the documents MIT apparently wanted. *See, e.g.,* Ex. G and Ex. H.

Because, MIT refused to cooperate until July 13, 2006, Harman was left with no other choice than to produce the non-cumulative documents that it reasonably understood were relevant and responsive to MIT's requests. *See* Section IV. Still, every time MIT provided clarification or more specified requests, Harman went out of its way to locate additional documents in response to MIT's specific requests—even when those requests came after the close of fact discovery. The discovery rules do not require Harman to read MIT's mind.

---

the systems have something which is called, in a general term, XAC." *See* Ex. D Jeske deposition at page 90, lines 16-21. MIT did not, until after the close of fact discovery, follow up with Harman to request information as to which version applies to each of the accused products.

[12] 9/20/05 Mottley Letter to Edwards (recognizing imports are not accused, but agreeing to indefinitely "reserve further discussion about necessary supplementation"; 10/3/05 Edwards Letter to Mottley at II.A; 10/10/05 Edwards E-Mail to Mottley, noting MIT refuses to amend to add imports, despite Harman's offer to agree to amendment.

Specificity is clearly necessary for large international companies like Harman.[13]  Without more

guidance it is impossible, absent a total document dump, to locate and produce the specific items

that MIT contends it needs.  Harman should not be penalized for MIT's failures and delays.

### E. MIT Should Not Be Allowed To Supplement Its Expert Reports Based Upon Information It Could Have Already Addressed.

Even though MIT has not expressly asked, it is clear that MIT desires to supplement its

expert reports.  Given MIT's repeated failure to use even the discovery that has been available to

it for months, and MIT's persistent reliance upon vague and overly broad discovery requests,

MIT should not be allowed to supplement its expert reports.  If the court allows MIT to

supplement its expert's reports, MIT should be limited to addressing only new opinions based

upon newly discovered evidence.  *See* Fed. R. Civ. Pro. 26(e)(1).

If MIT is allowed to supplement based upon any newly produced technical documents,

MIT must show that those documents changed the experts opinions in some manner.  Bolstering

of the opinions already in the reports, without more, is not a proper basis for supplementation.

*See id.*  Neither is the inclusion of new opinions based upon information that MIT could have

reviewed and included in its opening or rebuttal reports, such as the source code which was

available to MIT for more than 8 months.  *See id.*  Likewise, MIT should not be allowed to

supplement based upon documents previously in MIT's possession which it failed to either (1)

review in a timely manner or (2) give to its experts in time to be considered in their report.

Again, Harman should not be penalized for MIT's failures and delays.[14]

---

[13]  *See e.g.*, *Texas Capital Corp. v. Fleet Capital Corp.*, 2004 WL 1472778, *1 (E.D. Pa. June 14, 2004) (attached) (denying motion to compel because requests were overly broad); *Tottenham v. Trans World Gaming Corp.*, 2002 WL 1967023 (S.D.N.Y. 2002) (denying motion to compel because discovery requests constituted a "fishing expedition" to identify additional instances of violations); *Surles v. Air France*, 2001 WL 815522, *4. (S.D.N.Y. July 19, 2001) (denying motion to compel because: "Discovery requests cannot be based on pure speculation or conjecture").

[14]  *See* Fed. R. Civ. Pro. 26(e)(1) (A party is under a duty to supplement at appropriate intervals its disclosures . . . ***if the party learns*** that in some material respect the information disclosed is incomplete or incorrect ***and*** if the

## II. MIT'S MOTION TO COMPEL SUPPLEMENTAL DOCUMENTS TO HARMAN'S AUGUST 1, 2006 PRODUCTION IS VAGUE AND WOULD PRODUCE CUMULATIVE OR IRRELEVANT DOCUMENTS

Because MIT failed to even review the documents, source code and samples MIT has had for months, MIT's request to "[r]equire Harman to immediately supplement in a meaningful way the documents cross-referenced in Harman's August 1 production," should be denied. *See* MIT Motion at 4. Even if Harman agreed, MIT again fails to explain what additional supplementation is needed—despite Harman's requests for clarification. Harman is therefore left again to guess what MIT is looking for from MIT's recent correspondence. But even the things MIT specifically requests, have nearly all been produced.

In MIT's August 25, 2006 letter, MIT complains only that "Harman still has not produced or identified the relevant technical documents requested for the following products: DVD Navimodule for Audi, W220 and W221 for Mercedes" and asks "where are the MU_DST, MU_POI, ME_NAV and ME_WID documents referenced?" *See* Ex. I. *First*, as discussed above, MIT has produced volumes of technical documents for the Audi and Mercedes products. *Second,* the cited documents—which were merely mentioned in documents Harman produced—are cumulative of the documents in which their names were found. *Third*, as it did with the source code and product samples, MIT has apparently failed to even review the technical documents Harman produced. If it had, it would have known that later versions of at least two—indeed, the most relevant—of the four cross-referenced in the document MIT cites in its letter (namely "ME_NAV" and "MU_DST") have been previously produced. *See* Exhibit I.

---

additional or corrective information ***has not otherwise been made known*** to the other parties during the discovery process or in writing); *see also Carter v. The Finely Hosp.*, No. 01 C 50468, 2003 WL 22232844, at *2 (N.D. Ill. Sept. 22, 2003) ("It is disingenuous to argue that their duty to supplement under Rule 26(3)(1) can be used as a vehicle to disclose entirely new expert opinions after the deadline established by the court.") (attached).

*Next*, MIT's motion misrepresents that "[o]n August 1, 2006, Harman finally produced a first set of these" technical specifications. *See* MIT Motion at 7. But many of those 28 documents produced on August 1 were merely updated versions of specifications previously produced—this was not a "first" production.[15]

As shown above, even MIT's specific complaints are unsupported in view of Harman's production to date. Harman has searched for and produced sufficient responsive technical documents, to the extent they exist. To allow MIT to confirm this, Harman is willing to make each of Harman's project databases and libraries available to MIT in the respective locations in Germany and Michigan. These databases are simply too large to produce in their entirety in a cost efficient manner, which is critical because MIT has yet to pay its share of discovery costs for prior discovery, as agreed. Again, Harman expects MIT to find cumulative, not new documents.

## III.    HARMAN HAS PRODUCED EXISTING RESPONSIVE DOCUMENTS CONCERNING THE DEVELOPMENTAL PRODUCT "NTG4"

Erroneous assumptions have again lead MIT to raise yet another unnecessary discovery issue concerning a product that Harman has yet to take to market in Europe, let alone in the U.S. (which usually comes last). Nevertheless, Harman has produced hundreds of relevant technical documents relating to the NTG4.[16] Still, MIT complains that "[s]ome of the NTG4 automobile navigation products…were scheduled to be shipped in September, 2006, and

---

[15] For example, versions of the Featureliste headunits 7949 - Cascade Traffic Pro und weitere Derivate, Featureliste Lastenheft Cascade Traffic Pro Familie, Pflichtenheft PORSCHE Headunit Multimediasystem PCM 2.1, Specification for the MMI Series 211 USA Highline Navigation, and TFS 7.1 Hardware PCM 2.1 E1 had already been produced.

[16]    For example, MIT's expert cites to the following produced documents: March 28, 2006: Specification Chrysler NTG4 Text-to-Speech; NTG4 Remote Turn by Turn Requirements. Harman's production prior to the close of fact discovery also included such technical documents as the NTG4 Chrysler Infotainment System Model Year 2007 Software Requirements Specification for Navigation, NTG4 Navigation Menu Flow Diagram, Specification for the HMI Chrysler NTG4 Speech, Chrysler NTG4 Navigation Speech HMI SW-Specification.

therefore final versions or even the latest versions of documents should now be available." *See* Motion at 9. However, production of the NTG4 has been delayed and does not even start in Europe until late Fall 2006. Harman has built prototypes of various versions and changes—but nothing final. Thus, at this time, there are no finalized technical documents for the U.S. NTG4 products. Had MIT made full and appropriate use of the discovery vehicles available to it—such as interrogatories and depositions—MIT would know this.

## IV.    HARMAN HAS BEEN DILIGENT IN ITS DOCUMENT COLLECTION EFFORTS.

As shown above, MIT's request for an order requiring Harman to submit a report to the Court concerning its discovery efforts incorrectly suggests that Harman has been less than diligent in its discovery efforts, and is therefore unsupported and unjustified.

As the Court is aware, Harman is a large, decentralized and complex enterprise comprising many international subsidiaries employing more than 11,000 employees, managed by a small U.S. parent company (approximately 73 employees). The list of relevant Harman entities spans three continents, including the United States, Europe, and Asia, and four U.S. states. At issue in this navigation systems case are the following Harman subsidiaries: Harman Becker Automotive Systems (Michigan), Inc. in Farmington Hills, MI; Harman Becker Automotive Systems, Inc. in Martinsville, IN, HBAS Manufacturing, Inc. with several locations in the U.S., Harman International Industries, Incorporated's Northridge, CA offices and Harman Consumer Group, Inc. in Woodbury, NY, Harman innovative systems GmbH in Hamburg, Germany, and Harman Becker Automotive Systems GmbH in Karlsbad Germany. All of these companies are separate and distinct legal entities, cooperating to varying degree as appropriate, under common ownership.

Ultimately, much of the delay and confusion concerning Harman's production arises from MIT's broad and vague document requests.[17]    The other factor is the size and decentralized nature of Harman's business, which Harman has repeated explained to MIT. These two factors make it quite difficult to decipher and respond to many of MIT's broad requests, particularly since MIT is not satisfied when Harman produces precisely the types of documents MIT requested.

Rather than travel to Germany to inspect and select the documents it wants, MIT has been sending Harman on fishing expeditions across the globe,[18] only to later complain that specific—yet, previously unidentified—documents were not produced.   This is particularly unfair given that MIT flatly rejected Harman's initial offer to either allow MIT to inspect all of Harman's navigation-related documents at the Harman locations where they are stored in the ordinary course of business, or at centralized U.S. and German locations to make the effort more convenient. *See* Ex. J and Ex F. Strangely, ***MIT refused to visit any Harman site <u>even once</u>***, in the U.S. or abroad, to inspect and collect the specific documents that it claims it so desperately needs.  MIT cannot now credibly complain about deficiencies that were fully within its power to prevent.

If it pleases the court, Harman is willing to summarize its significant discovery efforts in a declaration of counsel, which shall be filed with the Court soon.

---

[17]  Such as MIT's Request No. 8, seeking "All documents and things concerning the design, development, manufacture, marketing, sale or offer for sale of any automobile navigation system products or services used, manufactured or sold by Harman, including but not limited to: all laboratory notebooks, test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental versions of such products." Harman specifically objected to this request as "overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence ... " *See* Exhibit G.

[18]  As the Court surely knows, Harman's repeated trips and efforts were quite expensive--the average trip to Germany costs over $10,000 in expenses alone.

## V. MIT HAS WAIVED ITS RIGHT TO AMEND OR SUPPLEMENT HARMAN'S 30(B)(6) TESTIMONY.

MIT's request for additional deposition time with Harman's 30(b)(6) witness is yet another example of MIT's attempts to abuse the discovery rules and to impermissibly shift its discovery burden on to Harman. To the extent Harman's witness was unprepared (which Harman disputes), this resulted directly from MIT's failure to specify the topics it intended to cover with the witness. *See* Ex. K. More importantly, MIT's counsel failed to follow-up with Harman's witness during the deposition, even though Harman's witness committed on the record to finding the necessary answers during the breaks, and in fact did so. Surprisingly, MIT's counsel did not revisit *any* of the questions MIT now claims are so dire and so critical that MIT wants to re-open fact discovery (which closed in June) and require another Harman (German) employee to sit for an additional 30(b)(6) deposition. MIT's own failure to follow up using the many less drastic and expensive options available to it is telling.[19] MIT's failure to follow up led Harman to believe that MIT waived those issues or no longer required the information.[20]

Harman is not required to "virtually rewrite portions of a deposition" in response to MIT's "invoking the benefits of Rule 30(e)." *Rios v. Welch*, 856 F. Supp. 1499, 1502 (D. Kan. 1994). Such a result would be even more unjust here, where MIT has failed to take even the simplest steps toward correcting its failure to ask proper follow-up questions, such as serving additional interrogatories or noticing additional depositions. Instead, MIT's failure to resolve

---

[19]  MIT withdrew several fact deposition notices, and withdrew its efforts to compel additional 30(b)(6) deposition on these open topics. MIT could also have noticed fact depositions of the witnesses whom Harman's 30(b)(6) witness indicated might be more knowledgeable than he was concerning the particular subjects at issue; or, MIT could have served additional interrogatories. None of these options would have required leave of court, since MIT had not yet exhausted its presumptive limits.

[20]  Surprisingly, in a feverish effort to correct its own mistakes, MIT inexplicably wrote Harman, claiming that *Harman has waived* its rights concerning the answers to questions MIT failed to ask because Harman did not re-write its 30(b)(6) deposition transcript after the deposition ended. *See* Ex. L. MIT, however, completely ignores that fact that it failed to follow-up on the questions--suggesting waiver by MIT, not Harman. [Deposition of Guido Jeske at 249, 255.]

these issues during the allotted discovery period—after more than four months have passed—results in a waiver of those issues for MIT. *See* Thibeault v. Square D Co., 960 F.2d 239, 242 (1st Cir. 1992) ("A litigant who has not actively pursued discovery cannot be heard to complain that too little discovery was had").

## VI.    MIT HAS WAIVED ITS RIGHT TO FURTHER PRODUCT SAMPLES.

MIT had access to Harman product samples for months, from January until the close of fact discovery in June.[21] Now, after previously refusing all of the samples except one—which it took but has yet to pay for despite its agreement to promptly pay—MIT *now* seeks samples of certain accused products, and an additional sample for the "new NTG4 automobile navigation system." MIT's surprising, untimely, and inconsistent request is prejudicial and should be denied.

Harman is understandably very reluctant to again put forth the time, effort, and expense of creating more product samples. *First*, MIT rejected all but one of the product samples Harman initially offered to MIT, and has yet to pay for the sample it took. *Second,* neither MIT's counsel nor its experts ever bothered to inspect or examine the remaining product samples previously offered that were manufactured at significant expense to Harman. *Third*, MIT waited until nearly the end of fact discovery to formally accuse the imported products, and did not during fact discovery request product samples for these products.

Now, after previously refusing three of the four previous samples Harman made just for MIT, MIT *now* seeks samples of every accused product, and an additional sample for the "new

---

[21] The court should note that Harman's products only work when placed in an operating car. The sample products offered to MIT during fact discovery were custom made products that take two to three months to order specialized equipment to get the head units operating. To make each sample costs Harman several thousand dollars. When the samples are made, they do not completely replicate the functionality in the car because Harman's head units receive operating data from the vehicle. The customized samples are unable to receive this data. Previously, Harman made customized product samples for the TrafficPro, RB3, Rb4, and Harley-Davidson Accused Products. Harman will produce these four customized products to MIT if this court compels MIT to pay Harman for its costs in creating these units.

NTG4 automobile navigation system." The time for MIT to have made this request was during fact discovery, not now. MIT's request is prejudicial, will take several months to complete if granted, will cost over $30,000, and should therefore be denied.

## VII.   MIT IS NOT ENTITLED TO COSTS FOR TASKS INHERENT TO DISCOVERY.

MIT's request for an award of its costs in conducting standard patent discovery is yet another example of MIT's attempts to shift its litigation and discovery burdens—including the financial burden—onto Harman. As this court well knows, document review is a necessary part of patent litigation. Yet, MIT contends that it is entitled to reimbursement for cost incurred in reviewing documents Harman produced in this case in response to MIT's broad requests. However, the so-called "document dump" that MIT refers to was in direct response MIT's motion to compel. Even putting aside MIT's active role in creating the problems about which it belatedly complains, it would be manifestly unjust to compensate MIT for standard discovery efforts.

Ultimately, MIT gained significant benefits from its document review process, including the location of documents it used in its expert reports, and additional knowledge about the Accused Products. Harman should hardly be obliged to subsidize MIT's discovery in this case; such a remedy would be unjustly disproportionate to MIT's claimed harm.

## VIII.   FACT DISCOVERY IS CLOSED.

MIT did not even complain about Harman's production until ***nearly three months after the close of fact discovery***--when the time for filing discovery motions had passed. Harman nevertheless supplemented its production even though many of the documents requested were cumulative. Due to a prior extension, fact discovery closed on June 16, 2006. As discussed above, MIT has failed to make use of the discovery currently available. This Court need not

extend fact discovery again, particularly considering the many opportunities MIT had to address its concerns prior to the close of the already extended fact discovery period.

In addition to the facts demonstrating MIT's contributory efforts to this conundrum, the *M2*[22] *and Sulfuric Acid*[23] cases MIT cites are also unavailing. And, even if Harman were to search for additional documents in response to MIT's motion, the broad and inflammatory claims in MIT's motion and letters provide little direction for Harman to respond. *See* MIT Motion at 1, 3, 5. Consequently, Harman should not be forced to waste additional time and resources merely to refute MIT's unsupported allegations.

## CONCLUSION

Contrary to MIT's self-serving summary of the "situation," MIT itself is responsible for the fact that "MIT should lose on its infringement case because it doesn't have the documentation to show infringement." *See* MIT Motion at 4. MIT—not Harman—bears the burden of proving that Harman's products infringe—an allegation that Harman denies. Clearly if "all the evidence points to infringement" as MIT states, MIT's motion is unnecessary and MIT should move on toward the merits of the case.

For the reasons discussed above, MIT's should be denied.

---

[22] *M2* is distinguishable from this matter because unlike the *M2* plaintiff, who produced ***no documents***, Harman has produced responsive, non-privileged documents and has made no representations following that production that the production was incomplete or that supplemental documents were necessary. *See M2 Software, Inc. v. M2 Communications, LLC*, 217 F.R.D. 449 (C.D. Cal. 2003).

[23] *In re Sulfuric Acid Antitrust Litigation* is distinguishable because Harman was neither aware of the alleged misunderstanding MIT was under, nor did Harman contribute to it. *See* 231 F.R.D. 331, 342 (N.D. Ill. 2005). To the contrary, Harman has made efforts to reduce misunderstandings, confusion and delay. Because MIT "elected to :proceed in the face of known risk" MIT cannot now "complain that they have been harmed." *Id.* at 340 (denying the plaintiff's motion to compel outstanding documents as untimely and citing *Arrington v. Merrill Lynch*, 651 F.2d 615 (9th Cir. 1981) ("plaintiffs cannot recover that part of their loss caused by their own failure, once they had reason to know of the wrongdoing, to take reasonable steps to avoid further harm.))

## **REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule 7.1, Harman respectfully requests an oral argument in conjunction with MIT's Motion to Compel.

Date:   September 19, 2006                Respectfully submitted,


                                          /s/ Courtney A. Clark

                                          Robert J. Muldoon, Jr., BBO# 359480
                                          James W. Matthews, BBO# 560560
                                          Edward S. Cheng, BBO# 634063
                                          Courtney A. Clark, BBO# 651381
                                          **SHERIN AND LODGEN, LLP**
                                          101 Federal Street
                                          Boston, MA  02110

                                          William A. Streff Jr., P.C.
                                          Craig D. Leavell
                                          Michelle A.H. Francis
                                          Jamal M. Edwards
                                          Colleen M Garlington
                                          Joanna Belle Gunderson
                                          **KIRKLAND & ELLIS LLP**
                                          200 E. Randolph Dr.
                                          Chicago, IL  60601
                                          (312) 861-2000 (phone)
                                          (312) 861-2200 (fax)

                                          *Attorneys for Defendant*
                                          ***Harman International Industries,***
                                          ***Incorporated***

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a copy of the foregoing **HARMAN'S OPPOSITION TO MIT'S MOTION TO COMPEL DISCOVERY** was delivered by electronic means this 19th day of September, 2006, to counsel for MIT as follows:

> Steven M. Bauer
> Jacob Baron
> Kimberly A. Mottley
> John Pint
> Proskauer Rose LLP
> One International Place, 14th Floor
> Boston, MA 02110-2600
> sbauer@proskauer.com
> kmottley@proskauer.com


> /s/ Courtney A. Clark

# EXHIBIT A



**"Baron, Jacob K."**
**<jbaron@proskauer.com>**
09/19/2006 12:00 PM

To "MIT_Harman" <MIT_Harman@proskauer.com>,
Harman-MIT@kirkland.com

cc

bcc

Subject RE: MIT v. Harman/Meet and Confer Earlier Today

Jamal,

Thank you for your email.

With regard to the schedule, if Harman is willing to locate and produce the materials we have outlined below, MIT is willing to agree to a 2 week extension on the summary judgment motion schedule.

As we discussed during our telephone call yesterday, MIT has concerns about the completeness of Harman's document production. It seems as if Harman has not gone through the documents it has produced in or to verify that its production is complete. Instead, Harman is shifting the burden on MIT to review the documents and search for holes in the production. MIT's concerns are not based on our guesses as to what should be in Harman's production. Each time we receive new documents from Harman, those documents refer to additional relevant documents that have not been produced. For example, most recently, by letter on July 13 and July 26, MIT provided specific examples of the types of documents MIT has been seeking. On August 1, Harman produced documents that included new and relevant information regarding a number of Harman's accused products. This information was not available to MIT before August 1 -- before opening expert reports were served. On August 25, I wrote again pointing to a number of documents that were missing from Harman's production (see numbered paragraph 3). In the document produced at HAR279681-HAR279729, there is a reference to at least four other documents we believe are relevant. These documents have the "token" designation MU_DST, MU_POI, ME_NAV and ME_WID (see HAR279688). With regard to ME_NAV, there are numerous references (e.g., HAR279721-24; HAR279726-27) to this document, yet we have not found the document itself in Harman's production. If Harman believes that MIT is wrong and that Harman has produced this document, please point to where in Harman's production the document may be located. Also references to MU_POI were found in a document produced at HAR279830-985 (e.g., HAR279875-77). An additional example of missing documentation is a specification relating to Porsche PCM 2 Cayenne (HAR280720-HAR280767). The first page indicates that it is a 104 page document (Seite 1 von 104) but only the first 48 pages were produced. Please produce these documents.

MIT is still seeking documentation that shows which version of Harman's software and which version of Harman's documentation goes with each of the accused products as shipped. MIT asked for this information during the Rule 30(b)(6) deposition of Harman and Mr. Jeske did not have the information. We have since learned that Mr. Jeske found the answers to these questions during the breaks but did not volunteer the information. At this point, it appears Harman's answers to these questions are not accurate and the time for amending the deposition transcript has passed. Please provide documentation or the information sought so that this issue can be resolved.

MIT will not go to Michigan or Germany to review Harman's documents. If Harman will represent to the court that it has produced all of its documents relevant to the accused products, we don't see how MIT reviewing the documents is going to change anything.

We remain willing to discuss how to resolve our differences. If Harman produces the documents MIT has requested and those documents do not lead to additional documents, MIT may be able to withdraw its motion before the hearing.

2

Jake

--------------------------------------------
**From:** Jamal Edwards[SMTP:JEDWARDS@KIRKLAND.COM]
**Sent:** Monday, September 18, 2006 10:36:00 PM
**To:** MIT_Harman
**Cc:** Harman-MIT@kirkland.com
**Subject:** MIT v. Harman/Meet and Confer Earlier Today
**Auto forwarded by a Rule**

Jake:

Thank you for agreeing to meet and confer with me today concerning MIT's pending discovery motion and other discovery topics.

As we discussed, Harman believes we have produced sufficient non-privileged, non-cumulative documents to show the structure, function and operation of the Accused Products as requested by MIT during the fact discovery period. We have produced product specifications, software requirements specifications, operation and installation guides, map database documentation and speech files, just to name a few examples. Additionally, we also produced the source code in February, which I understand MIT just reviewed last week. And we produced four product samples in February, from which MIT selected only one to review. Note that payment for that sample is long past due.

You stated that MIT doubts Harman's representations concerning the completeness of its production. We regret MIT feels that way. To remedy this, Harman is willing to make available for inspection its technical project libraries so that MIT can confirm Harman's representations, provided MIT is willing to suspend or withdraw its motion to allow time for this. The relevant technical project libraries and databases are located in Germany and Michigan, and are too large to produce via traditional means. You agreed to confer with Steve Bauer and your client to determine whether MIT wants to inspect Harman's technical project libraries and databases in Germany and Michigan. Please let us know MIT's position before Noon CST tomorrow, so that we may finalize our response to the Court.

You indicated that MIT would like to supplement its expert reports, assuming Harman has additional documents to produce. As you know, Harman does not agree that any supplementation of expert reports is appropriate, given MIT's repeated failure to take full advantage of the discovery Harman provided. Nevertheless, to avoid addressing this with the Court in either MIT's or a motion by Harman, Harman is willing to negotiate an agreed amended schedule to allow for delayed dispositive motions and appropriate supplementation of expert reports and rebuttals. Alternatively, if MIT intends to pursue its motion with the Court, Harman is willing to agree to extend the deadline for dispositive motions an additional 60 days beyond from the currently agreed date. This will allow sufficient time for the court ruling on MIT's motion, and for that parties to assess the impact of the court's decision. Also, we should

3

probably contact the court regarding the status of our currently pending joint motion to extend the deadline for dispositive motions. You also agreed to confer with Steve and your client regarding the schedule changes Harman has proposed. As with the document production issue, please let us know MIT's position before Noon CST tomorrow.

I reiterated my colleague Michelle Francis' request for the drafts that MIT's experts relied upon in preparing their reports, as testified at their respective depositions. As you know, MIT has refused to produce these drafts as requested, relying upon the parties agreement concerning production of expert drafts. Harman did not agree to waive its rights under Rule 26, to review all documents and things an expert relied upon in preparing its reports. You agreed to review again the parties' agreement concerning expert drafts, and the relevant deposition transcripts of Drs. Streeter, Cannon and Kunin, and to provide MIT's response soon. Please also provide MIT's response by Noon CST tomorrow, so that Harman can decide whether to raise this issue with the court.

If you have any objections or corrections to the foregoing, please let me know immediately. Please contact me with any questions.

Thank you for your cooperation.

Best,

Jamal.

**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**
**200 East Randolph Drive | Chicago, IL 60601 | ☎ (312) 861-3143 | ✉(312) 660-0616 |Ⓢ**
http://www.kirkland.com/jedwards

**PRIVILEGED & CONFIDENTIAL - PREPARED BY ATTORNEY - FORWARDING PROHIBITED WITHOUT CONSENT**

*********************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*********************************************************

4

----------------------------------------------------------------
--------------

This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,
forwarding or saving them, and notify the sender
immediately.

================================================================
============

# Exhibit B to be filed under seal later, pending agreement of the parties.

# Exhibit C to be filed under seal later, pending agreement of the parties.

# Exhibit D to be filed under seal later, pending agreement of the parties.

# Exhibit E to be filed under seal later, pending agreement of the parties.

# EXHIBIT F

One International Place
22ⁿᵈ Floor
Boston, MA 02110
Telephone 617-526-9600
Fax 617-526-9899

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

Kimberly A. Mottley
Direct Dial: 617-526-9616
Email: kmottley@proskauer.com

September 20, 2005

**Via Email**

Jamal M. Edwards, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

> Re:    MIT v. Harman International Industries, Inc.,
>         Civil Action No. 05-10990 DPW, U.S.D.C. Mass.

Dear Jamal:

I write to memorialize our September 15 conversation, and to raise certain issues with respect to Harman's responses to MIT's initial round of discovery.

## I.    Issues Addressed In September 15, 2005 Conversation

### A.    Protective Order

I have discussed with MIT your proposal for a one-tiered protective order (where everything has the same level of "confidentiality"), as opposed to the two-tiered order ("confidential" and "highly confidential - attorney's-eyes only") attached to my August 24, 2005 email to you. For MIT to agree to a one-tiered order, it would need to include a provision which would permit certain named individuals at MIT's Technology Licensing Office (for example, Jack Turner) to have access to certain of Harman's documents. There is no reason to limit disclosure to Mr. Turner, as he works for MIT (as opposed to any of Harman's competitors), and he would be willing to sign an undertaking representing that he would be bound by the use restrictions of the protective order. Similarly, it should be clear that a "one-tiered" protective order should not be used as a way to prevent us from sharing pleadings filed with the Court with our client.

I understand that you may have additional, more minor issues with the draft order to discuss with me once you hear back from your client.

PROSKAUER ROSE LLP

Jamal M. Edwards
September 20, 2005
Page 2

I also asked you to agree that, in the event that the order is not finalized before document production, the parties would produce documents on an attorneys' eyes only basis pending execution of the order. You said you didn't anticipate that that will be a problem, but that you needed to check with your client and let me know.

B.    Document Production

You told me that Harman is unwilling to agree to exchange copy sets of the parties' document productions. You told me that you wanted each party to produce its documents for inspection at the parties' firm's offices (in Chicago for Harman's documents collected in the U.S., and Munich for its documents collected in Germany, and in Boston, for MIT's documents). You stated that you hope to have all the Harman documents collected by this week, and at that time you will let me know the volume of the production, and a summary of the contents of the production, at each location so that we can assess whether we need to do an on-site inspection prior to Bates labeling and copying, or whether we should send a vendor in to get a copy set of all of the documents.

As for products, you stated that the sample products your client could make available are those it uses in its testing, and are therefore not generally available to be housed at your offices for the duration of the inspection period. Your suggestion is that you will provide color digital photographs of the products, and after we see those photographs, we can decide which products warrant in-person inspection.

While photographs of "sample" products are helpful, we need samples of actual products as commercially sold by Harman, so that we have no dispute later that we are using and analyzing official Harman products.

C.    Depositions

We discussed the depositions of Mr. Hart, Mr. Perracchio, and Mr. Swartz. I asked that you provide dates of availability for Mr. Hart and Mr. Perracchio, as requested in my August 24, 2005 email to you. You told me that you would prefer that MIT send formal deposition notices for whatever depositions we want to take, and that only then would you work on rescheduling the depositions to mutually agreeable dates, and that going forward, that was the only way Harman would request depositions.

You also confirmed that, although Mr. Swartz's deposition was noticed for September 22, 2005, it will not take place on that date. We also agreed that we'd try to work together to get a full schedule for a first round of depositions (for both parties) before we agree to specific individual dates.

**PROSKAUER ROSE LLP**

Jamal M. Edwards
September 20, 2005
Page 3

## II.    Harman's Discovery Responses

Based on our initial review of Harman's Responses to MIT's first round of discovery requests, we have identified certain issues that require supplementation or clarification, which are addressed below.  Please note that these issues are only those we have noted to date, and we reserve the right to raise additional issues in the future, if necessary.

A.    Harman's Limitation of Its Responses to Only Products Sold In the United States, and Specifically, to its TrafficPro, Rb3/Rb4, and M.O.A.R. Products

Harman has objected to MIT's requests for discovery concerning "any automobile navigation system products or services used, manufactured, or sold by Harman," based on Harman's claims that the scope of that request "includes products not used, made, sold, offered for sale or imported into the United States," and on the basis of overbreadth.  (See General Objection 7, and Specific Objections in response to MIT's Request Nos. 7, 8, 9, 10, 11, 12, 13, 14, 15, and 22 and Interrogatory Nos. 1, 3, and 4.)

It appears that Harman has responded or will respond to these requests to the extent that the information or documents pertain to three products – the TrafficPro, Rb3/Rb4, and M.O.A.R. products as they are sold in the United States.  Harman's general objection is inappropriate, but given your answers, we can reserve further discussion about necessary supplementation until we have information about and samples of those products, and see which documents Harman has produced.

B.    Harman's Objections Based on Lack of a Time Period Limitation

To the extent Harman objected to MIT's Request No. 13 and Interrogatory No. 1, 2, 3, and 4 based on lack of a time period limitation, please consider the limitation on such requests to be August 9, 1990 to present.

C.    Harman's Refusal to Produce Documents Relevant to Damages, Validity, Doctrine of Equivalents, and Willfulness

Harman appears to refuse to produce *any* documents concerning, among other things, its first awareness of the '685 Patent (Request No. 6); Harman's efforts after such awareness to modify its products (Request No. 7); Harman's future production capacity (Request No. 11); Harman's communications with its customers about its products (Request No. 13); documents sufficient to identify its customers (Request No. 14); pricing of its products (Request No. 15); Harman's policies on licensing and royalty rates (Request No. 17); and other claims of patent infringement made against Harman (Request No. 18).

**PROSKAUER ROSE LLP**

Jamal M. Edwards
September 20, 2005
Page 4

Clearly, these requests are relevant to damages, validity of the '685 patent, Harman's potential infringement under the doctrine of equivalents, and/or the potential willfulness of Harman's infringement. Please supplement the written responses to these requests immediately, to confirm that Harman will be producing documents responsive to MIT's Request Nos. 6, 7, 11, 13, 14, 15, 17, and 18.

  D.  Harman's "Counting" Objections to MIT's Interrogatories

Throughout its responses to MIT's interrogatories, Harman has decided to count single interrogatories as multiple interrogatories, thereby counting the eleven (11) interrogatories MIT served as seventeen (17). This is inappropriate, as MIT's interrogatories were numbered correctly. Indeed, using Harman's counting method, Harman has served at least 29 interrogatories already, thereby exceeding the 25 interrogatories permitted under Fed. R. Civ. P. 34. If Harman will not withdraw its counting objections, we will need to confer before MIT's responses are due, so that we have consistent counting methodology.

  E.  Harman's Reference to Its Entire Document Production, In Lieu of
     Answering Interrogatories

In response to MIT's Interrogatory Nos. 3, 4, 5, 6, 7, and 8, Harman merely refers to "documents and things that Harman has made available for inspection." This reference to Harman's entire document production is inappropriate, and insufficient.

Federal Rule of Civil Procedure 33(d) states:

Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served ... and the burden of deriving or ascertaining the answer is *substantially the same* for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained ... . A specification shall be *in sufficient detail* to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

Thus, Harman is only permitted to refer to documents (rather than providing substantive answers to interrogatories) when it would be as easy for MIT to glean the requested information from Harman's documents as it would be for Harman, and if Harman is to make such a reference to documents, it has to be to specific documents so that MIT can locate and identify the requested information.

**PROSKAUER ROSE LLP**

Jamal M. Edwards
September 20, 2005
Page 5

First, Harman has failed to identify documents with any specificity in response to any of these interrogatories, and must *at a minimum* supplement its responses by including references to specific documents within its production, or attach copies of the documents to any supplementation.

Second, as to Interrogatory Nos. 5 through 8, these are not interrogatories for which the information is as readily available to MIT through Harman's documents as it is to Harman. These interrogatories request that Harman identify its arguments as to why the '685 patent is invalid or unenforceable (both in general, and with specific reference to specified pieces of prior art) and the basis for Harman's claim that it does not infringe the '685 patent. Such information is clearly more readily available to Harman than to MIT through Harman's documents, and thus, Harman's responses to Interrogatory Nos. 5, 6, 7, and 8 require immediate substantive supplementation, beyond mere reference to documents within Harman's production.

F.    Information Missing from Harman's Responses to Interrogatory Nos. 2 and 10

Harman's response to Interrogatory No. 2 fails to identify the persons in charge of / most knowledgeable about the named activities therein, the time periods of their involvement in those activities, and the nature of their involvement. This information was requested by the interrogatory, and a wholesale reference to Harman's Initial Disclosures does not supply the requested information. Clearly, here, we are trying to get information to help us choose those individuals best suited for depositions in this case, to save both parties time and expense of unnecessary and duplicative depositions. Please supplement this interrogatory immediately.

Similarly, Harman's response to Interrogatory No. 10 lacks the specific information requested by the interrogatory, and instead only provides a list of names of people who "provided factual information in response to these Interrogatories." Furthermore, Harman refused to answer part (d) of the interrogatory, which seeks information about the completeness of Harman's discovery search efforts. Please supplement this interrogatory immediately.

G.    Executed Certification of Interrogatories

Finally, Harman's Responses to MIT's Interrogatories lack the necessary certification by your client. Please send us an executed certification page at your earliest convenience.

*              *              *

**PROSKAUER ROSE LLP**

Jamal M. Edwards
September 20, 2005
Page 6

     I suggest we have a Rule 37 meet and confer later this week. How is this Thursday, at 3:00 p.m.?

                Yours truly,

                Kimberly A. Mottley

# KIRKLAND & ELLIS LLP
### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamal M. Edwards
To Call Writer Directly:
(312) 861-2464
jedwards@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: (312) 660-0719

October 3, 2005

**VIA FACSIMILE**

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place, 14th Floor
Boston, MA 02110-2600

Re:     *MIT v. Harman Int'l Indus. Inc.,*
        Case No. 05-10990 DPW

Dear Ms. Mottley:

This letter responds *in seriatim* to your September 20, 2005 letter.

## I. September 15, 2005 Teleconference

### A.     Protective Order

Harman's comments on MIT's proposed Protective Order are addressed in the redline I sent you. I look forward to discussing them with you. In the meantime, Harman is willing to agree that the parties will produce all documents on an outside-attorney's-eyes-only-basis, pending execution and entry of an agreed protective order.

### B.     Document Production

We have collected electronic media onto a CD that is available for your inspection at Kirkland's Chicago office. Also available is approximately one standard box of paper documents. We are investigating whether Harman has samples of accused products "commercially sold by Harman." In the interim, if MIT needs samples of actual products "as commercially sold by Harman," such samples are available for purchase by MIT, upon request. Our document collection continues, and I can provide further updates when we speak.

### C.     Depositions

We have properly noticed the deposition of Mr. Swartz. MIT refused to produce Mr. Swartz as noticed on September 22, 2005. Kindly provide us with a date for Mr. Swartz's

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 3, 2005
Page 2

deposition to occur within the next three weeks.  We will discuss scheduling of other depositions upon receipt of a Notice of Deposition.

## II.   Harman's Discovery Responses

### A.   MIT's Objection to Harman's Agreement to Provide Discovery Regarding Harman's U.S. Navigation System Sales.

As you know, products *not* made, used, sold or offered for sale within the U.S. are beyond the reach of the U.S. patent laws and outside the scope of this lawsuit.  35 U.S.C. § 271(a).  Should MIT disagree, kindly provide us legal authority in support of MIT's position.

### B.   MIT's Time Limitation on Its Discovery Request

We acknowledge MIT's proposal to limit its discovery requests to the time period of August 9, 1990 to present.  We will review our responses and supplement or further respond accordingly in the near future.

### C.   MIT's Request For Discovery to Which It Is Not Entitled.

We do not understand MIT's objection to our responses to MIT's Request Nos. 6, 7, 11, 13, 14, 15, 17 and 18.  In particular, MIT's position that these "requests are relevant to damages, validity of the '685 patent, Harman's potential infringement under the doctrine of equivalents, and/or the potential willfulness of Harman's infringement" includes topics that are not as issue in this case.  For example, because "MIT merely seeks a royalty on Harman's sales, and all the jury will need to do is decide the amount of that royalty," *see* Joint Statement, MIT's Position, MIT admits that many of these requests are not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  We request that MIT identify the specific claim to which it contends each request is relevant.

### D.   MIT's Failure to Properly Number Its Interrogatories

MIT's unsubstantiated claim that Harman's interrogatories are excessive in number does not toll the 30 days allowed for MIT to respond.  Should MIT disagree, kindly provide us with legal authority supporting MIT's position.

### E.   Harman's Use of Rule 33(d) In Lieu of An Answer to Certain of MIT's Interrogatories

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 3, 2005
Page 3

Harman will supplement its interrogatory responses that rely on Rule 33(d) as soon as bates labeling of collected documents is complete. Regarding MIT's conclusion that Harman's reliance on Rule 33(d) for interrogatories 5 through 8 is inappropriate, such conclusion is premature given that MIT has not yet seen the documents to which Harman refers. Moreover, as you know, during the parties' two years of negotiations, Harman provided MIT with detailed claim charts, correspondence and presentations regarding the invalidity, non-infringement and unenforceability of the '685 patent. And, Harman provided significant detail in its Illinois complaint against MIT. Thus the requested information is "as easy for MIT to glean...as it would be for Harman." Harman will further supplement its responses when and as required under Rule 26(e).

     F.     <u>MIT's Objections to Harman's Reliance Upon Its Initial Disclosures</u>

Regarding our response to Interrogatory No. 2, Harman's initial disclosures identify with specificity, the people most knowledgeable about relevant Harman activities and products, where they are located, and their respective areas of expertise or knowledge. This information is directly responsive to MIT's interrogatory and surely allows MIT to "choose those individuals best suited for depositions in this case."

Regarding our response to Interrogatory No. 10, we have identified the Harman employees who provided the factual information supporting our responses. This provides MIT with sufficient non-privileged information in response to Interrogatory No. 10.

     G.     <u>Harman's Certification of its Interrogatory Responses</u>

Harman's verification of its interrogatory responses were sent via express mail on Thursday, September 29, 2005. Please confirm receipt at your earliest convenience.

Finally, we are willing to meet and confer on each of these issues.

## KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 3, 2005
Page 4

Very truly yours,

Jamal M. Edwards/SLM

Jamal M. Edwards

cc: Robert J. Muldoon, Esq.

10/03/2005 10:55 FAX 312 861 2200 1          KIRKLAND & ELLIS LLP                              ☑001

```
                    *********************************
                ***    MULTI TX/RX REPORT    ***
                    *********************************

TX/RX NO           3447
PGS.               5
TX/RX INCOMPLETE   -----
TRANSACTION OK     (1)   2371140601#0000216175269899
                   (2)   2371140601#0000216176462222
ERROR INFORMATION  -----
```

# KIRKLAND & ELLIS LLP

### *Fax Transmittal*

200 East Randolph Drive
Chicago, Illinois 60601
Phone: 312 861-2000
Fax: 312 861-2200

Please notify us immediately if any pages are not received.

**THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY
BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND
IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE,
DISCLOSURE OR COPYING IS STRICTLY PROHIBITED AND MAY BE UNLAWFUL.**

**IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR,
PLEASE NOTIFY US IMMEDIATELY AT:
312 861-2356.**

| *To:* | *Company:* | | *Fax #:* | *Direct #:* |
|-------|-----------|---|----------|-------------|
| Kimberly A. Mottley | Proskauer Rose LLP | | 617-526-9899 | 617-526-9600 |
| Robert J. Muldoon | Sherin & Lodgin, LLP | | 617.646.2222 | 617.646.2225 |

| *From:* | *Date:* | *Pages w/cover:* | *Fax #:* | *Direct #:* |
|---------|---------|------------------|----------|-------------|
| Jamal M. Edwards | October 3, 2005 | 5 | (312) 660-0719 | (312) 861-2464 |

*Message:*



Jamal
Edwards/Chicago/Kirkland-Ell
is

10/10/2005 11:38 AM

To "Mottley, Kimberly" <kmottley@proskauer.com>

cc "MIT_Harman" <MIT_Harman@proskauer.com>, Michelle
Francis/Chicago/Kirkland-Ellis, rjmuldoon@sherin.com,
CAClark@sherin.com

bcc Colleen Garlington/Chicago/Kirkland-Ellis

Subject Re: Joint Statement / Rule 37 Conference

Thanks Kim, I look forward to seeing your draft.

I am checking into our position regarding the discovery issues you've raised below. During our call today, you confirmed that MIT will not be amending its complaint at all, even to cure the objections Harman has raised. As I stated during our conversation, Harman will object to any attempts to raise discovery issues with the Court during the 10/20 hearing. As you know, Rule 37 requires the parties to exhaust their meet and confer obligations *before* seeking the Court's assistance. Also, raising a discovery issue with the Court would be equivalent to a motion to compel, which requires adequate time for briefing. This has not occurred. Prior to raising this issue with the Court, we would appreciate the opportunity to discuss this with our client contact, who as I told you, is travelling this week. We were not expecting this to be an issue for the 10/20 hearing. We are, nonetheless, hopeful the parties can reach substantial agreement on discovery issues, and avoid resorting to the Court. We do not believe this goal will be furthered by precipitously raising discovery issues at the 10/20 hearing.

Also, we have not received MIT's discovery responses. Harman's first set of discovery requests were served on 9/06/05, and responses were due on 10/06/05. Please confirm that MIT's responses are forthcoming today, via facsimile or e-mail.

Thanks,

Jamal.

**JAMAL M. EDWARDS | KIRKLAND & ELLIS LLP**
200 East Randolph Drive ♦ 53rd Floor |Chicago, IL 60601 | 312.861.2464 **Direct** | 312.861.2200 **FAX**
www.kirkland.com/jedwards

"Mottley, Kimberly" <kmottley@proskauer.com>



"Mottley, Kimberly"
<kmottley@proskauer.com>

10/10/2005 11:26 AM

To "Jamal Edwards" <jedwards@kirkland.com>

cc "MIT_Harman" <MIT_Harman@proskauer.com>

Subject Joint Statement / Rule 37 Conference

Jamal -

Following up on our conversation earlier this afternoon, I will send you a draft of the joint statement no later than tomorrow so we can finalize the pleading and get it filed with the Court by Thursday.

Also, I look forward to hearing back from you later today whether Harman will produce documents responsive to MIT's Request Nos. 6, 7, 11, 13-15, 17, and 18. I understand that you're checking with folks at Kirkland, and trying to get in touch with the client. Please let me know when you're ready to have our Rule 37 discussion on that topic. As I mentioned, MIT will want to add this issue as an item on the agenda

for the hearing on October 20, should the parties not be able to come to agreement.

Thanks.

Kim

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place – 22nd Floor
Boston, MA 02210
Tel. 617-526-9616
Fax. 617-526-9899
kmottley@proskauer.com

------------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

# EXHIBIT G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, <br><br> Defendant. | Civil Action No. 05-10990 DPW |

## MIT'S FIRST REQUEST FOR THE
## PRODUCTION OF DOCUMENTS AND THINGS (1-26)

Plaintiff Massachusetts Institute of Technology ("MIT"), pursuant to Rule 34 of the Federal Rules of Civil Procedure, hereby requests that Defendant Harman International Industries, Inc. ("Harman") produce for inspection and copying the documents and tangible things identified below. Such documents and things shall be produced within thirty (30) days of service of these requests at the office of PROSKAUER ROSE LLP, One International Place, 22nd Floor, Boston, MA 02110 or at another mutually convenient location.

These requests are to be deemed continuing and any information secured subsequent to service of such documents and things must be furnished with supplemental responses upon receipt of such information in accordance with Federal Rule of Civil Procedure 26(e).

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in this request for documents and things is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. For purposes of these document requests, the following definitions, regardless of whether the defined word is capitalized, shall apply:

  A.  "MIT" means the Massachusetts Institute of Technology, including its servants, agents, representatives, employees, principals, attorneys, and all other persons, forms or corporations acting with it or on its behalf.

  B.  "Harman" means Harman International Industries, Inc., including its servants, agents, representatives, employees, principals, attorneys, parents, subsidiaries, divisions, affiliates, predecessors-in-interest, successors-in-interest, and all other persons, forms or corporations acting with it or on its behalf.

  C.  "'685 Patent" means U.S. Patent No. 5,177,685.

  D.  The term "prior art" encompasses, by way of example and without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102-03.

  E.  "Automobile navigation system product[s] or service[s]" refers to any product or service, or portion or component thereof which provides or is designed to provide real-time spoken driving instructions. The term includes, but is not limited to, products or services, or portions or components thereof capable of being installed by an automobile manufacturer or independently of an automobile manufacturer. The term includes, but is not limited to, Harman's TrafficPro® brand of automobile navigation system, its TrafficPro II™ brand of automobile navigation system, its RB3 and RB4 brands of automobile navigation system, and

equipment or components made, used, or sold by Harman for use in the Porsche®

Communication Management System.

       F.      "All" means "any and all."

       G.     Any word written in the singular shall be construed as plural and vice versa.

       H.     "Concerning" means referring to, relating to, describing, evidencing, or

constituting.

       I.      As used herein, the term "Document[s]" shall be synonymous in meaning and

equal in scope to the usage of the term in Fed. R. Civ. P. 34(a).  Electronic correspondence is

also included within the meaning of this term.  A draft or non-identical copy is a separate

document within the meaning of this term.

       J.      As used herein, the term "or" means "and/or."

       K.     As used herein, the term "Communication[s]" means all letters, memoranda, notes

and messages, whether printed, typed or handwritten, including but not limited to all electronic

modes of correspondence such as electronic mail and faxes, and including documents reflecting

conversations and meetings.

       L.      "Person" means any natural person or juridical person including any corporation,

partnership, sole proprietorship, agency, or business association of any type or character.

       M.    As used herein, the term "Identify" means:

              a)      with respect to persons, give, to the extent known, the person's full name,

present or last known address, and when referring to a natural person, the present or last known

place of employment, his/her title and position with that employer; and

b)      with respect to documents, give, to the extent known, the: (i) type of document; (ii) general subject matter; (iii) date of the document; and (iv) author(s), addressee(s), and recipient(s).

## INSTRUCTIONS

A.      When a claim of privilege is asserted in the objection to any request or any subpart thereof, and any document is not provided on the basis of that assertion, identify in the objection the nature of the privilege that is being claimed with respect to each such document.  If the privilege is being asserted in the connection with a claim or defense governed by state law, indicate the particular privilege rule that is being invoked.

B.      When an objection is made to any request, or subpart thereof, state with specificity all grounds for the objection.

C.      With respect to each document which is withheld from production for any reason, provide a statement setting forth:

    (i)     the name and title of the author(s);

    (ii)     the name and title of the person(s) to whom the document was addressed;

    (iii)     the name and title of the person(s) to whom copies of the document were sent;

    (iv)     the date on which the document was written or otherwise produced and the date on which it was mailed, sent or delivered to its addressees;

    (v)     the number of pages contained in the document;

    (vi)     a brief description of the nature and subject matter;

    (vii)     the grounds upon which it is being withheld; and

    (viii)     the paragraph number to which the document is otherwise responsive.

D.    When a document contains both privileged and non-privileged material, the non-privileged material should be disclosed to the fullest extent possible without thereby disclosing the privileged material.  If a privilege is asserted with regard to part of the material contained in a document, specifically indicate the portions as to which the privilege is claimed.  When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and person performing the redaction or alteration.  Any notice of redaction must be clearly visible on the redacted document.

E.    If production of any requested document is objected to on the grounds that production is unduly burdensome, set forth the burden or expense of the proposed discovery and why Harman contends that the burden or expense outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues, as set forth in Fed. R. Civ. P. 26(b)(2).

F.    If requested documents are maintained in a file, the file folder is included in the request for production of those documents.

G.    For all documents produced by Harman in this litigation,

1.    Provide, by document Bates number range, the source of the original documents;

2.    Provide a log of all documents withheld on grounds of privilege; and

3.    Describe the company's document retention policies and efforts to preserve e-mail and other electronic documents responsive to MIT's discovery requests.

DOCUMENT REQUESTS

REQUEST NO. 1:

All documents and things concerning the scope, validity, infringement, or enforceability of the

'685 Patent.

RESPONSE TO REQUEST NO. 1:


REQUEST NO. 2:

All documents and things concerning any search, investigation, review, opinion, study, analysis,

event or reference concerning, without limitation, the scope, validity, infringement or

enforceability of the '685 Patent, including but not limited to, opinions, summaries, notes,

memoranda, or the equivalent prepared by Harman or any of its representatives.

RESPONSE TO REQUEST NO. 2:


REQUEST NO. 3:

All documents ever considered, evaluated, or possessed by Harman regarding the scope, novelty,

patentability, validity, or enforceability of the subject matter disclosed and claimed in the '685

Patent.

RESPONSE TO REQUEST NO. 3:

REQUEST NO. 4:

All documents and things tending to support or refute any argument by Harman that the

'685 Patent is invalid, void, and/or unenforceable under the patent laws of the United States,

Title 35 of the United States Code.

RESPONSE TO REQUEST NO. 4:


REQUEST NO. 5:

All prior art patents and publications that Harman considers pertinent to the subject matter of the

'685 Patent.

RESPONSE TO REQUEST NO. 5:


REQUEST NO. 6:

All documents and things concerning Harman's first awareness of the '685 Patent.

RESPONSE TO REQUEST NO. 6:


REQUEST NO. 7:

All documents and things concerning any of Harman's efforts, after Harman became aware of

the '685 Patent, to modify any automobile navigation system products or services used,

manufactured, or sold by Harman.

RESPONSE TO REQUEST NO. 7:

REQUEST NO. 8:

All documents and things concerning the design, development, manufacture, marketing, sale or offer for sale of any automobile navigation system products or services used, manufactured or sold by Harman, including but not limited to: all laboratory notebooks, test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental versions of such products.

RESPONSE TO REQUEST NO. 8:


REQUEST NO. 9:

If Harman contends that its automobile navigation system products and services do not infringe the '685 Patent, all documents and things that support or refute such a contention.

RESPONSE TO REQUEST NO. 9:


REQUEST NO. 10:

All documents concerning comparisons of any automobile navigation system product or service manufactured or sold by Harman, and any of the claims of the '685 Patent.

RESPONSE TO REQUEST NO. 10:

REQUEST NO. 11:

All documents concerning any plans, commitments, projections or reports relating to Harman's

future production capacity for any automobile navigation system products or services.

RESPONSE TO REQUEST NO. 11:


REQUEST NO. 12:

All documents concerning the promotion, advertisement, demonstration, marketing and sale of

any automobile navigation system products or services used, manufactured or sold by Harman,

including, but not limited to: all advertising, press releases, product announcements, bulletins,

solicitations, articles, speech or lecture texts, sales presentations, PowerPoint presentations,

product brochures, memoranda, and catalogs.

RESPONSE TO REQUEST NO. 12:


REQUEST NO. 13:

All documents concerning any communication with, or relating to, any agent, dealer, wholesaler,

distributor, customer, or potential customer of any automobile navigation system products or

services, in the United States, or any other person, concerning transfers or projected transfers of

such products in the United States, including without limitation, costs and sales, and anticipated

or actual sales.

RESPONSE TO REQUEST NO. 13:

REQUEST NO. 14:

All documents sufficient to identify all prospective, existing and past customers of any automobile navigation system products or services, including documents concerning the dissemination of promotional materials for such products including, but not limited to: mailing lists, tear sheets, and periodicals in which promotional materials have appeared.

RESPONSE TO REQUEST NO. 14


REQUEST NO. 15:

All documents comprising pricing, price quotes, price lists, price announcements, actual prices, or projected prices, paid by, or expected to be paid by, customers for any automobile navigation system products or services.

RESPONSE TO REQUEST NO. 15:


REQUEST NO: 16:

All documents concerning communications, whether to or from suppliers or customers or any other persons, that relate to MIT or the subject matter of the '685 Patent.

RESPONSE TO REQUEST NO. 16:


REQUEST NO. 17:

All documents concerning any policy, guideline or agreement of Harman with respect to patent procurement, patent licensing and royalty rates.

RESPONSE TO REQUEST NO. 17:

REQUEST NO. 18:

All documents concerning any communication by or to persons other than MIT asserting patent infringement by Harman.

RESPONSE TO REQUEST NO. 18:


REQUEST NO. 19:

All documents passing between Harman and any person who Harman expects to offer testimony of at trial in this action, including, without limitation, any expert witness.

RESPONSE TO REQUEST NO. 19:


REQUEST NO. 20:

All documents and things reviewed, considered or relied upon by any experts retained by Harman in connection with this matter or that are a basis for each opinion to be reached by such experts.

RESPONSE TO REQUEST NO. 20:


REQUEST NO. 21:

All documents and things, including but not limited to, reports, studies, books, articles or publications prepared by each expert retained by Harman in this matter concerning the subject matter about which such expert is expected to testify.

RESPONSE TO REQUEST NO. 21:

REQUEST NO. 22:

A sample of each automobile navigation system product or service, used, manufactured or sold by Harman.

RESPONSE TO REQUEST NO. 22:

REQUEST NO. 23:

All documents and things Harman may use or intend to rely upon at trial.

RESPONSE TO REQUEST NO. 23:

REQUEST NO. 24:

All documents and things identified, relied upon, or referred to in response to MIT's First Set of Interrogatories.

RESPONSE TO REQUEST NO. 24:

REQUEST NO. 25:

Documents sufficient to reflect Harman's document retention policies or practices over the past two (2) years.

RESPONSE TO REQUEST NO. 25:

REQUEST NO. 26:

Copies of organizational charts sufficient to show Harman's organizational structures and

corporate management over the past two (2) years.

RESPONSE TO REQUEST NO. 26:


                                      MASSACHUSETTS INSTITUTE OF
                                      TECHNOLOGY,

                                      By its Counsel,

                                      *Kimberly A. Mottley*
                                      Steven M. Bauer (BBO #542531)
                                      Kimberly A. Mottley (BBO #651190)
                                      PROSKAUER ROSE LLP
                                      One International Place
                                      Boston, MA  02110
                                      Tel: (617) 526-9600
                                      Fax: (617) 526-9899

Dated:  July 26, 2005


<div align="center">

### Certificate of Service

</div>

I hereby certify that on July 26, 2005, a true and correct copy of the foregoing document
was served upon opposing counsel by hand.

                          *Kimberly A. Mottley*
                          Kimberly A. Mottley

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br> Plaintiff, <br><br> v. <br><br> HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case No(s).: 05-10990 DPW |

## HARMAN'S RESPONSES TO MIT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS (1-26)

Defendant Harman International Industries, Incorporated ("Harman") responds to plaintiff Massachusetts Institute of Technology's ("MIT") First Request For The Production Of Documents And Things (1-26) with the answers and objections set forth below. Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, Harman reserves the right to supplement these responses and its production of documents to the extent it learns of additional responsive information and/or documents.

## GENERAL OBJECTIONS

Harman incorporates the following General Objections into its response to each Request for Production. Each of Harman's responses is made without waiver of or prejudice to these general objections.

1.    Harman objects to MIT's First Request For Production Of Documents And Things to the extent it seeks information and/or documents protected by the attorney–client

privilege, the attorney work product doctrine, or Rule 26(b)(3) of the Federal Rules of Civil Procedure. Any information or documents withheld on these grounds will be identified on a separate privilege schedule. With respect to any privileged or work product documents that were created or that came into being after the initiation of this lawsuit, Harman objects to listing any such documents on a privilege schedule because to do so would be unduly burdensome, would chill Harman in its communications with its attorneys about the subject matter of this litigation, and would abrogate Harman's work product privilege in this matter. For example, if Harman had to schedule documents that were created or that came into being after the initiation of this lawsuit, before Harman could communicate in writing with its attorneys about the subject matter of this litigation, Harman would be forced to make a choice between (a) confining its communications with its attorneys to oral communications, or (b) running the risk of abrogating its attorney work product privilege by having to provide plaintiffs with a log of each written communication it has with its attorneys.

2.    Harman objects to MIT's First Request For Production Of Documents And Things to the extent it seeks information and/or documents constituting trade secrets or other confidential research, development, or commercial information, including without limitation internal marketing, financial, strategic and customer information, within the meaning of Fed. R. Civ. P. 26(c). *See Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 578-89 (N.D. Ga. 1989) ("Courts have consistently held that marketing information is confidential commercial information and have afforded it some protection from discovery.") (citing *American Standard v. Pfizer, Inc.*, 828 F.2d 734 (Fed. Cir. 1987)). The parties are negotiating an agreed protective order. Once the Court enters the agreed protective order, the balance of the responsive, non–privileged documents will be produced.

2

3.    Harman objects to MIT's First Request For Production Of Documents And Things to the extent it purports to impose upon Harman duties and/or responsibilities greater than those imposed by the Federal Rules of Civil Procedure or the local rules of this Court.

4.    Harman objects to MIT's First Request For Production Of Documents And Things to the extent it seeks to limit the documents or information that Harman may rely upon at trial in this matter.  Harman's fact investigation, discovery and trial preparations are continuing, and Harman reserves the right to provide additional information and supplement its production of documents in response to these requests.

5.    Harman will make its document production available to MIT for inspection and copying at MIT's expense at the offices of Kirkland & Ellis nearest the site where the documents can be found.

6.    Harman objects to MIT's definition of "Harman" to the extent it includes in the term "subsidiaries" and any officers, directors, agents, servants, employees, etc. of those companies which are not related to this action.  Harman will respond only on behalf of the entities disclosed in Harman's initial disclosures.

7.    Harman objects to MIT's definition of "automobile navigation system product[s] or service[s]" overly broad, unduly burdensome, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny.  As defined, "automobile navigation system product[s] or service[s]" includes products or services that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States.  MIT is not permitted "to conduct 'fishing expeditions' in hopes of finding

3

products that might be infringing. . . ." *Moore U.S.A., Inc., v. Standard Register Co.*, 229 F.3d 1091, 1116 (Fed. Cir. 2000).

8.      Harman objects to these requests to the extent that they seek information already known to MIT, or available to MIT from documents in its own files or from public sources, or that Harman provided to MIT during the parties' 2 years of negotiations.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST NO. 1:

All documents and things concerning the scope, validity, infringement, or enforceability of the '685 Patent.

### RESPONSE TO REQUEST NO. 1:

Harman objects to Request No. 1 insofar as it purports to suggest that the '685 patent is something other than invalid, not infringed, and unenforceable as detailed in Harman's numerous presentations and correspondence throughout the parties' 2 years of negotiations, each of which is incorporated by reference.  Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

### REQUEST NO. 2:

All documents and things concerning any search, investigation, review, opinion, study, analysis, event or reference concerning, without limitation, the scope, validity, infringement or enforceability of the '685 Patent, including but not limited to, opinions, summaries, notes, memoranda, or the equivalent prepared by Harman or any of its representatives.

### RESPONSE TO REQUEST NO. 2:

Harman objects to Request No. 2 insofar as it purports to suggest that the '685 patent is something other than invalid, not infringed, and unenforceable as detailed in Harman's numerous presentations and correspondence throughout the parties' 2 years of negotiations, each of which

4

is incorporated by reference. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 3:**

All documents ever considered, evaluated, or possessed by Harman regarding the scope, novelty, patentability, validity, or enforceability of the subject matter disclosed and claimed in the '685 Patent.

**RESPONSE TO REQUEST NO. 3:**

Harman objects to Request No. 3 insofar as it purports to suggest that the '685 patent is something other than invalid, not infringed, and unenforceable as detailed in Harman's numerous presentations and correspondence throughout the parties' 2 years of negotiations, each of which is incorporated by reference. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 4:**

All documents and things tending to support or refute any argument by Harman that the '685 Patent is invalid, void, and/or unenforceable under the patent laws of the United States, Title 35 of the United States Code.

**RESPONSE TO REQUEST NO. 4:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 5:**

All prior art patents and publications that Harman considers pertinent to the subject matter of the '685 Patent.

**RESPONSE TO REQUEST NO. 5:**

Harman objects to Request No. 5 as vague and ambiguous as to the phrase "pertinent to the subject matter of the '685 Patent." Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents that establish the invalidity, unenforceability and/or non-infringement of the patent-in-suit.

**REQUEST NO. 6:**

All documents and things concerning Harman's first awareness of the '685 Patent.

**RESPONSE TO REQUEST NO. 6:**

Harman objects to Request No. 6 as not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 7:**

All documents and things concerning any of Harman's efforts, after Harman became aware of the '685 Patent, to modify any automobile navigation system products or services used, manufactured, or sold by Harman.

**RESPONSE TO REQUEST NO. 7:**

Harman objects to Request No. 7 as not reasonably calculated to lead to the discovery of admissible evidence. Harman further objects to this Request as overly broad, unduly burdensome, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Harman further objects to this Request as impermissible under Rule 407 of the

Federal Rules of Evidence to the extent it seeks documents related to any subsequent remedial measures Harman may or may not have taken.

**REQUEST NO. 8:**

All documents and things concerning the design, development, manufacture, marketing, sale or offer for sale of any automobile navigation system products or services used, manufactured or sold by Harman, including but not limited to: all laboratory notebooks, test results, reports, memoranda, evaluations, analysis, any prototype, precursor, or experimental versions of such products.

**RESPONSE TO REQUEST NO. 8:**

Harman objects to Request No. 8 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

**REQUEST NO. 9:**

If Harman contends that its automobile navigation system products and services do not infringe the '685 Patent, all documents and things that support or refute such a contention.

**RESPONSE TO REQUEST NO. 9:**

Harman objects to Request No. 9 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations

under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny. "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

## REQUEST NO. 10:

All documents concerning comparisons of any automobile navigation system product or service manufactured or sold by Harman, and any of the claims of the '685 Patent.

## RESPONSE TO REQUEST NO. 10:

Harman objects to Request No. 10 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence because MIT has not identified any asserted claim from the 58 claims of the patent-in-suit and because this Request is counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system product or service manufactured or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

## REQUEST NO. 11:

All documents concerning any plans, commitments, projections or reports relating to Harman's future production capacity for any automobile navigation system products or services.

**RESPONSE TO REQUEST NO. 11:**

Harman objects to Request No. 11 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "any plans, commitments, projections or reports." Harman further objects to this Request as counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman.

**REQUEST NO. 12:**

All documents concerning the promotion, advertisement, demonstration, marketing and sale of any automobile navigation system products or services used, manufactured or sold by Harman, including, but not limited to: all advertising, press releases, product announcements, bulletins, solicitations, articles, speech or lecture texts, sales presentations, PowerPoint presentations, product brochures, memoranda, and catalogs.

**RESPONSE TO REQUEST NO. 12:**

Harman objects to Request No. 12 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States. Subject to its asserted objections,

Harman will produce existing, responsive, non-privileged documents relating to its TrafficPro®, Rb3/Rb4® and M.O.A.R. products in the United States.

**REQUEST NO. 13:**

All documents concerning any communication with, or relating to, any agent, dealer, wholesaler, distributor, customer, or potential customer of any automobile navigation system products or services, in the United States, or any other person, concerning transfers or projected transfers of such products in the United States, including without limitation, costs and sales, and anticipated or actual sales.

**RESPONSE TO REQUEST NO. 13:**

Harman objects to Request No. 13 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks "transfers or projected transfers" and fails to specify a time period. Harman further objects to this request as counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services used, manufactured, or sold by Harman" includes products that MIT cannot or has not accused of infringement.

**REQUEST NO. 14:**

All documents sufficient to identify all prospective, existing and past customers of any automobile navigation system products or services, including documents concerning the dissemination of promotional materials for such products including, but not limited to: mailing lists, tear sheets, and periodicals in which promotional materials have appeared.

**RESPONSE TO REQUEST NO. 14:**

Harman objects to Request No. 14 as not reasonably calculated to lead to the discovery of admissible evidence as Harman's "all prospective, existing and past customers" are not relevant

to any claim or defense. Harman further objects to this Request as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman.

## REQUEST NO. 15:

All documents comprising pricing, price quotes, price lists, price announcements, actual prices, or projected prices, paid by, or expected to be paid by, customers for any automobile navigation system products or services.

## RESPONSE TO REQUEST NO. 15:

Harman objects to Request No. 15 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[A]ny automobile navigation system products or services" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman.

## REQUEST NO: 16:

All documents concerning communications, whether to or from suppliers or customers or any other persons, that relate to MIT or the subject matter of the '685 Patent.

11

**RESPONSE TO REQUEST NO. 16:**

Harman objects to Request No. 16 as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks documents unrelated to the patent-in-suit and/or without specifying a time frame. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents concerning communications that relate to the '685 Patent.

**REQUEST NO. 17:**

All documents concerning any policy, guideline or agreement of Harman with respect to patent procurement, patent licensing and royalty rates.

**RESPONSE TO REQUEST NO. 17:**

Harman objects to Request No. 17 as overly broad, unduly burdensome and not likely to lead to the discovery of admissible evidence insofar as it seeks all "patent procurement, patent licensing and royalty rates."

**REQUEST NO. 18:**

All documents concerning any communication by or to persons other than MIT asserting patent infringement by Harman.

**RESPONSE TO REQUEST NO. 18:**

Harman objects to Request No. 18 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence. Harman further objects to this Request to the extent it seeks evidence that would not be admissible under Federal Rule of Evidence 404.

**REQUEST NO. 19:**

All documents passing between Harman and any person who Harman expects to offer testimony of at trial in this action, including, without limitation, any expert witness.

**RESPONSE TO REQUEST NO. 19:**

Harman objects to Request No. 19 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order. *See* August 4, 2005 Hearing Tr. at 13-15.

**REQUEST NO. 20:**

All documents and things reviewed, considered or relied upon by any experts retained by Harman in connection with this matter or that are a basis for each opinion to be reached by such experts.

**RESPONSE TO REQUEST NO. 20:**

Harman objects to Request No. 20 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order. *See* August 4, 2005 Hearing Tr. at 13-15. Harman further objects to this Request to the extent it seeks privileged documents and things regarding a non-testifying expert. *See* Fed. R. Civ. P. 26(b)(3) and (4); *Edward Lowe Industries, Inc. v. Oil-Dri Corporation of America*, 1995 WL 399712, *2-3 (N.D. Ill. 1995) (tests done on allegedly infringing products protected as reports of non-testifying expert under Rule 26(b)(4)(B)); *Oueen's University at Kingston v. Kinedyne Corp.*, 161 F.R.D. 443, (D. Kan. 1995) (expert report regarding opposing party's patent protected under Rule 26(b)(4)(B)); *Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994) (documents prepared by non-testifying accounting expert constituted privileged work product under Rule 26(b)(3)).

**REQUEST NO. 21:**

All documents and things, including but not limited to, reports, studies, books, articles or publications prepared by each expert retained by Harman in this matter concerning the subject matter about which such expert is expected to testify.

**RESPONSE TO REQUEST NO. 21:**

Harman objects to Request No. 21 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order. *See* August 4, 2005 Hearing Tr. at 13-15. Harman further objects to this Request to the extent it seeks privileged documents and things regarding a non-testifying expert. *See* Fed. R. Civ. P. 26(b)(3) and (4); *Edward Lowe Industries, Inc. v. Oil-Dri Corporation of America*, 1995 WL 399712, *2-3 (N.D. Ill. 1995) (tests done on allegedly infringing products protected as reports of non-testifying expert under Rule 26(b)(4)(B)); *Oueen's University at Kingston v. Kinedyne Corp.*, 161 F.R.D. 443, (D. Kan. 1995) (expert report regarding opposing party's patent protected under Rule 26(b)(4)(B)); *Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994) (documents prepared by non-testifying accounting expert constituted privileged work product under Rule 26(b)(3)). Harman further objects to this Request to the extent it calls for documents and things that MIT can ascertain through materials already in MIT's custody or control or materials that are as readily available to MIT as Harman, or materials created by MIT.

**REQUEST NO. 22:**

A sample of each automobile navigation system product or service, used, manufactured or sold by Harman.

**RESPONSE TO REQUEST NO. 22:**

Harman objects to Request No. 22 as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and counter to MIT's obligations under Rule 11 of the Federal Rules of Civil Procedure and *Antonious v. Spalding & Evenflo Companies, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) and its progeny: "[E]ach automobile navigation system product or service, [sic] used, manufactured or sold by Harman" includes products that MIT cannot or has not accused of infringement, such as products that are not used, made, sold, offered for sale or imported into the United States by Harman. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged representative samples of its United States TrafficPro®, Rb3/Rb4® and M.O.A.R. products.

**REQUEST NO. 23:**

All documents and things Harman may use or intend to rely upon at trial.

**RESPONSE TO REQUEST NO. 23:**

Harman objects to Request No. 23 as premature in light of the agreed schedule disclosed in the parties' Joint Statement submitted to the Court on August 4, 2005 and adopted, in part, by the Court during the August 4, 2005 scheduling conference and order. *See* August 4, 2005 Hearing Tr. at 13-15. Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 24:**

All documents and things identified, relied upon, or referred to in response to MIT's First Set of Interrogatories.

**RESPONSE TO REQUEST NO. 24:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

15

**REQUEST NO. 25:**

Documents sufficient to reflect Harman's document retention policies or practices over the past two (2) years.

**RESPONSE TO REQUEST NO. 25:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

**REQUEST NO. 26:**

Copies of organizational charts sufficient to show Harman's organizational structures and corporate management over the past two (2) years.

**RESPONSE TO REQUEST NO. 26:**

Subject to its asserted objections, Harman will produce existing, responsive, non-privileged documents.

Dated:  September 6, 2005

Respectfully submitted,


/s/ Jamal M. Edwards /s/
Robert J. Muldoon, Jr., BBO# 359480
James W. Matthews, BBO# 560560
Edward S. Cheng, BBO# 634063
Courtney A. Clark, BBO# 651381
**SHERIN AND LODGEN, LLP**
101 Federal Street
Boston, MA 02110

William A. Streff Jr., P.C.
Michelle A. H. Francis
Jamal M. Edwards
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL  60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 6, 2005, I caused a true and correct copy of HARMAN'S RESPONSES TO MIT'S FIRST REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS (1-26) to be served on the following counsel of record via email with a courtesy copy via U.S. Mail:

Steven M. Bauer, Esq. (sbauer@proskauer.com)
Kimberley A. Mottley, Esq. (kmottley@proskauer.com)
Proskauer Rose LLP
One International Place  14th Floor
Boston, Massachusetts  02110-2600

By: _____
Attorney for Defendant

# EXHIBIT H

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Michelle A. H. Francis
To Call Writer Directly:
312 861-2416
mfrancis@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200

October 27, 2005

**VIA FACSIMILE: 617-526-9899**

David J. Cerveny
Proskauer Rose LLP
One International Place, 22nd Floor
Boston, MA 02110

Re:    *MIT v. Harman Int'l Indus. Inc.,*
       Case No. 05-10990 DPW

Dear David:

Your October 19th letter is inaccurate in many respects, and your suggestion that Harman has done something other than respond fully to MIT's discovery requests and negotiate in good faith any issues related to those responses is unsubstantiated. Nonetheless, we address here what we understand to be the parties' outstanding discovery issues in the hope that we can reach resolution without involving the Court. We propose a meet-and-confer on these issues at 1:00 p.m. (central) today. Please let me know if you are available then.

## I.    MIT's Refusal To Provide Discovery Of Its Pre-Filing Investigation

MIT has refused to answer interrogatories calling for, *inter alia*, the at least one "properly construed claim" that MIT presumably compared against at least one "accused [Harman] device to determine whether all of the claim limitations are present either exactly or by a substantial equivalent" before it filed suit against Harman. Specifically, MIT refuses to identify its "proposed construction" (interrogatory nos. 1 and 2), whether it based the allegations in its complaint on literal or doctrine of equivalents infringement and how it read the patent-in-suit against the Harman products it accused of infringement (interrogatory nos. 3, 4, and 5). In addition, MIT has refused to produce the "documents and things, upon which MIT relied" (i) "at the time MIT filed its Complaint, to support the allegations that Harman has infringed the Patent-In-Suit (RFP no. 2) , (ii) "at the time MIT sent its [assertion] letter to [Harman's customer] Porsche" (RFP no. 3), and (iii) at the time MIT sent [assertion] letters to competitors or potential customers of Harman" (RFP no 4). And, MIT has refused to produce documents concerning its "decision to assert the Patent-In-Suit" (RFP no. 14), and the persons or entities who asserted the patent-in-suit against Harman, namely "Robert Swartz and/or Web Telephony LLC" (RFP no. 12) and "Charles G. Call" (RFP no. 25).

# KIRKLAND & ELLIS LLP

David Cerveny
October 27, 2005
Page 2

We again request that MIT provide responsive documents to these RFPs and substantive responses to these Interrogatories. If we do not receive the properly requested documents and responses by the close of business on Friday, October 28, we will understand that MIT has not conducted the pre-filing investigation that the law requires before bringing a patent infringement suit, and we will seek the appropriate sanction from the court.

## II.    MIT's Improper "General Objections"

MIT's "responses" to Harman's First Set of Requests For The Production of Documents and Things (Nos. 1-29) ("RFPs") and to Harman's First Set of Interrogatories (Nos. 1-7) do not comport with the Federal Rules regarding discovery. As an initial matter, MIT's 18 "General Objections" to Harman's Requests for Production and 17 "General Objections" to Harman's Interrogatories are improper.[1] None of the general objections identifies to which Harman Request or Interrogatory it applies, nor does it identify what documents MIT is withholding. Illustrative of this defect is RFP general objection no. 17, which purports to withhold documents that "do not fall within one of the General Objections...or within any of the objections contained in the specific responses." MIT's "General Objections" also are improper for at least the reasons identified in J. Edwards' 10/12/05 letter to K. Mottley and the following:

1.    Blanket objections of, for example, "not relevant to the subject matter of the present lawsuit and/or not reasonably calculated to lead to the discovery of admissible evidence" (no. 1), "impose obligations on MIT beyond those required by the [rules]" (no.4), "seek documents already in Harman's possession, equally accessible to Harman and/or publicly available" (no. 5), "seek documents or materials not in MIT's possession, custody, or control" (no. 6), "overly broad or unduly burdensome" (no. 10), "vague, ambiguous, confusing, incomprehensible and/or unanswerable because of undefined or ill-defined terms and/or confusing syntax" (no. 11) do not comport with the rules; please withdraw them.

2.    As to general objection no. 3, please confirm that MIT is not withholding any documents given the parties' agreement to produce document as "attorney's eyes only" pending entry of the protective order.

---

[1]    MIT's RFP General Objections nos. 1, 2, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 16 match MIT's General Objections nos. 9, 3, 4, 5, 6, 13, 8, 7, 12, 11, 15, 14, 16, respectively, to Harman's Interrogatories. As such, the issues identified with respect to the RFP General Objections apply equally to the corresponding Interrogatories General Objections.

# KIRKLAND & ELLIS LLP

David Cerveny
October 27, 2005
Page 3

3.      As to general objection no. 14, please confirm that MIT has stated its "interpretation" and "understanding" of each request to which this general objection applies.

4.      Please withdraw general objection no. 15 because, as you know, any objection not timely made by MIT is waived, and the Rules do not allow MIT to preserve objections "on any other grounds" not specified. Fed. R. Civ. P. 33(b) and 37(d).

## III.    MIT's Refusal To Produce Documents

MIT objected to all but one of Harman's 29 Requests for Production (*i.e.*, Request nos. 1-15 and 17-29) as "overly broad, unduly burdensome, and unlikely to lead to the discovery of admissible evidence" without stating any basis for that objection. Please withdraw those objections and confirm that MIT has not withheld any documents based on it.

MIT's objections to 12 of Harman's 29 Requests (nos. 1, 6-11, 17, 18, 24, 27 and 28 "because validity and enforceability of the "685 Patent are not presently at issue in this case" are wrong. In any event, those objections were cured by Harman's answer and counterclaims filed and served on October 18th. Please confirm that MIT has withdrawn each of these objections and produced responsive documents.

MIT objected to 24 of Harman's 29 Requests (nos. 1-21, 24, 25, and 27) as "seek[ing] documents protected by attorney-client privilege and/or the work- product doctrine." We fail to understand how, for example, documents concerning "the first sale, first offer for sale, or first public use" (no. 9), "experimental use, field test, and/or prototype" (no. 10), or "prototype...used, sold, offered for sale, or imported into the United States" (no. 11) of the patent-in-suit or documents concerning "Robert Swartz and/or Web Telephony, LLC" (no. 12), "the complete chain of title for, and MIT's ownership of and standing to sue under" (no. 16), "MIT's document retention policies" (no. 19) are covered by any privilege. Please withdraw these objections and confirm that MIT has identified any documents withheld on that basis in the privilege log provided to Harman on October 25th.

MIT's objections to 18 of Harman's 29 Requests (nos. 5, 7-13, 15, 17-20, 22, 24, 25, 27, and 28) as "seeking documents that are beyond the custody or control of MIT and are equally available to Harman" do not relieve MIT of its obligation to search for and produce documents within its "possession, custody or control." Fed. R. Civ. P. 34(a)(1). Please withdraw these objections and confirm that MIT has not withheld any documents. Please also confirm that MIT has searched for and produced documents in the possession, custody or control of its agents Robert Swartz and Charles Call.

# KIRKLAND & ELLIS LLP

David Cerveny
October 27, 2005
Page 4

MIT objected to 19 of Harman's 29 Requests (nos. 1, 5, 7-13, 15, 17, 18, 20, 22-25, 27, and 28) as seeking "documents that are beyond the custody or control of MIT." Here again, such objection does not relieve MIT of its obligation to search for and produce documents within its "possession, custody or control." Fed. R. Civ. P. 34(a)(1). Please withdraw these objections and confirm that MIT has not withheld any documents. Please also confirm that MIT has not withheld documents in the possession, custody or control of its agents Robert Swartz and Charles Call.

## IV.    MIT's Requests For Production

Harman has already produced thousands of pages in response to MIT's Requests for Production. We have another approximately 30 pages ready for inspection in Chicago. And, as we told you and although we have no obligation to do so, we have attempted to collect documents responsive to your requests from a third party located in Germany that we believe may have responsive documents without requiring MIT to navigate the German courts or Hague Convention procedures.

Please note that we do not understand MIT's initial infringement contentions (due November 4) to be wholly contingent on discovery provided by Harman. MIT, as discussed above, was obliged to conduct an investigation before it filed suit against Harman.

Regarding MIT's document request nos. 6 and 7, we timely objected and suggested that MIT amend its complaint to assert willfulness before the deadline for amending pleadings passed. MIT refused. We provided case law in support of our objection and again suggested that MIT amend its complaint. And, we offered to seek client approval for MIT to amend after the deadline. Again, MIT refused and you told us "not to bother" seeking client approval.

Now you cite two cases in your October 19th letter in support of MIT's refusal to allege willfulness in its complaint. Both are distinguishable: MIT's complaint contains no allegation forming the basis of a willfulness claim, does not seek treble damages, and cites 35 U.S.C. § 284 only as to "costs and reasonable attorney's fees." We fail to understand why MIT refuses to amend its complaint to allege willfulness while insisting on discovery unrelated to any claim or defense. We understand that the parties have reached an impasse on this issue.

Your statement that "Harman had not produced any (but a few pages) of the two-years' of negotiation correspondence between Robert Swartz and Harman" is wrong. Harman has produced more than 500 pages relating to the parties' negotiations.

# KIRKLAND & ELLIS LLP

David Cerveny
October 27, 2005
Page 5

Regarding MIT's document request nos. 11, 13-15, you overstate the scope and effect of Harman's counterclaims. MIT's requests are objectionable (and Harman timely objected) because they seek documents concerning "any automobile navigation system products" when the patent itself and the patent laws severely limit the universe of potential accused products. MIT is not entitled to discover Harman's most confidential business information, including future production capacity (no. 11), the identities and communications with Harman's past, current, and future customers (nos. 12, 13) or pricing (no. 15) for products that MIT has not or cannot accuse of infringement. At present, MIT has accused only "the Harman/Kardon TrafficPro product." Harman, in response to other discovery requests, has identified additional potential accused products and provided information related to those products from which MIT can determine whether to accuse them or not. Meanwhile, MIT has denied Harman any discovery regarding the basis for MIT's accusations (even its accusations as to the TrafficPro product) in its complaint against Harman.

Your October 19th proposal, which is not at all "similar to what we discussed," is unacceptable. We are not willing to agree to MIT's new discovery requests that demand *inter alia* Harman provide (i) "a product list of all of its 'car navigation systems' and 'navigation system products', including a brief description of each product," and (ii) "limited technical information on such products." In the spirit of cooperation, we renew the offer we previously made: If MIT will agree to limit these requests to accused products, Harman will agree to supplement its responses and production if/when MIT accuses (through supplemental interrogatory responses or the like) additional products.

As to the M.O.A.R. product, we already informed you that we produced all existing, responsive, non-privileged documents. Your statement that "Harman has failed to produce documents" and your inference that "Harman has not yet thoroughly searched for responsive documents" are unsupported and wrong.

Regarding request nos. 13 and 14 for "potential" or "prospective" customers, your proposed limitation but "reserv[ation] [of] the right to seek information regarding prospective or potential customers" is simply a restatement of the objectionable requests and does not cure Harman's timely objections.

Your "assurance[s]" regarding third party discovery do not comport with your verbal statement that "we understand 'harass' to mean different things." To be clear, we understand MIT's "assurance" here to mean that MIT will seek discovery from Harman first (before seeking it from any Harman customer) and seek discovery from Harman's customers only if Harman is unable to provide the same discovery and only after notifying Harman. This

# KIRKLAND & ELLIS LLP

David Cerveny
October 27, 2005
Page 6

alleviates Harman's concerns caused by MIT's numerous threats during the parties' negotiations to "harass" Harman's customers.

Regarding MIT's lack of a time period limitation, Harman has not waived or withdrawn its timely objections. Rather, Harman is willing to agree to waive or withdraw its time period objections pending full resolution of the disputed issues.

Regarding request no. 17, Harman accepts MIT's offer "to limit the request to call for only those documents related to 'rates paid by Harman for use of other patents comparable to the patent in suit'." And, Harman will supplement its response and production accordingly.

Regarding request no. 18, Harman accepts MIT's offer to "limit the request to call for documents related to claims of infringement by the TrafficPro, RB3/RB4, and M.O.A.R. products." Harman will supplement its response and production accordingly.

Regarding documents that "belong to a third party," you mischaracterize our representation. We informed you that we believe a third party located in Germany may have responsive documents. We do not know whether that party has responsive documents. We further informed you that we have been attempting to contact that party and gain access to potentially responsive documents that may exist so that MIT will not have to seek the assistance of the German courts or the Hague Convention. We have made those attempts in the spirit of cooperation, and we are under no obligation to even contact that party.

Regarding, the "mapping document," we provided that to you again on October 20th. Please let us know if you need another copy.

I look forward to resolving these and any other issues at 1 P.M. (central) today or some other mutually agreeable time.

Very truly yours,

Michelle A. H. Francis

MAHF/djk

cc:     Courtney Clark

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamal M. Edwards
To Call Writer Directly:
(312) 861-2464
jedwards@kirkland.com

312 861-2000

www.kirkland.com

Facsimile:
312 861-2200
Dir. Fax: (312) 660-0719

October 19, 2005

**VIA E-MAIL**

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place, 14th Floor
Boston, MA 02110-2600

> Re:   *MIT v. Harman Int'l Indus. Inc.,*
>        Case No. 05-10990 DPW

Dear Ms. Mottley:

This letter memorializes our continued teleconference yesterday afternoon. We also look forward to your response to my letter of yesterday.

## I.     MIT's Requests for Production

### Request Nos. 6 - 7

You again reiterated MIT's position that it believes that it has adequately plead willful infringement and that MIT refuses to amend its complaint to cure our objections. We advised you that we are not withholding any documents in response to these request, as we have not searched for any responsive documents because we object to these requests as stated in our responses. We understand that the parties have reached an impasse on this issue.

### Requests Nos. 11, 13, 14, 15

As you know, wide reaching discovery regarding Harman's financial and performance data for *all* of Harman's navigations systems products is improper for at least the reasons stated in our responses. We proposed that MIT narrow the scope of each of these requests to apply only to "Accused Products," and that MIT identify the Harman products it accuses of infringement. Again, we understand from the pleadings that MIT has accused the Traffic Pro product. We also reminded you that Harman has provided discovery as to two additional products, namely RB3/RB4 and M.O.A.R. You stated that you need to discuss our proposal with your client.

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 19, 2005
Page 2

MIT's proposal to limit the time period of its requests to August 1990 does not cure all of Harman's time period objections, as discussed below. However, you agreed to limit these requests, and interrogatories 1-4, to the expiration of the '685 patent.

Regarding Request No. 13, MIT is not entitled to any discovery prior to May 12, 1999 (6 years before filing suit on May 12, 2005). You stated you will discuss this with your client and respond.

Regarding Request Nos. 13-14, we stated that, notwithstanding the foregoing proposal and any agreements to cure Harman's "lack of time period" objections, we continue to object to providing any discovery regarding "potential customers" and "prospective customers," because such discovery is improper for at least the reasons stated in our responses.

Regarding Request No. 17, you stated that MIT will limit this request to seek "rates paid by Harman for the use of patents comparable to the patent-in-suit," in accordance with the *Georgia-Pacific* factors. We will discuss MIT's proposal with our client and respond shortly.

Regarding Request No. 18, you stated that MIT will narrow this request to seek documents regarding any accusations of infringement against Harman as a result of its Traffic Pro, RB3/RB4 and M.O.A.R. products. Again, we will discuss MIT's proposal with our client and respond shortly.

## II.   Harman's Document Production

We discussed the general status of Harman's document production, which as we advised you is on-going. We advised you that MIT has received all the documents that Harman's reasonable investigation to date has identified as responsive and non-privileged and that our investigation is on-going. We further advised you that we anticipate identifying some additional responsive, non-privileged documents from the Harman Consumer Products group. However, as I previously advised you, the responsible employees and document custodians are unavailable until the later part of this month. I will attempt to contact them again next week to see if they have become available. I expect that they will address MIT's requests as soon as their schedules permits. I will keep you posted on our progress.

In the spirit of cooperation, we also informed you that we are taking reasonable steps to gain access to a substantial volume of paper documents located in Hamburg, Germany but not presently in the possession, custody or control of Harman. These documents are in the legal custody of the former owners of Harman innovative systems gmbh's predecessor. Although we have no obligation to do so, we are attempting to gain access to these documents and will

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 19, 2005
Page 3

produce them, to the extent they are responsive and non-privileged, when they become available, as a professional courtesy. I will keep you informed of our progress.

## III.    MIT's Interrogatories

Regarding Interrogatory No. 1, we stated that we continue to stand on our objections to this interrogatory, notwithstanding MIT's 1990 time period limitation. Provided MIT will limit the scope of this interrogatory to "Accused Products," as discussed above, Harman is willing to agree to provide a response regarding any responsive products from August 1990 to present. You stated that you would have to discuss this with your client.

Regarding Interrogatory No. 2, we agreed to supplement this interrogatory, and advised you that our supplemental response will not vary much from the information currently disclosed in Harman's initial disclosures. You agreed to review our supplemental response and that we would have further discussions after that point, if MIT has further concerns or objections.

Regarding Interrogatories Nos. 3 and 4, we stated that MIT's time period limitation does not cure Harman's objections, and that we are willing to agree to provide discovery in response to these requests from May 12, 1999 to present. In addition, we proposed that MIT limit these interrogatories to "Accused Products," as discussed above regarding certain document requests. Specifically regarding Request No. 3, we stated that we continue to stand on our objections to disclosing the identities of Harman's customers absent adequate assurances from MIT that it will not harass (as it threatened to do) our customers. Also, specifically regarding Request No. 4, we stated that MIT's time period limitation does not cure our objections and that Harman will provide discovery in response to this request from May 12, 1999 to present only.

Finally, we agreed to supplement our responses to identify the bates ranges of documents produced pursuant to Rule 33(d) in lieu of a response to certain of MIT's interrogatories. We also advised you that we would accept notices of deposition for Harman employees, including those located in Germany. As for any non-employee witnesses, we will confirm our representation of those witnesses as soon as possible.

# KIRKLAND & ELLIS LLP

Kimberly A. Mottley Esq.
October 19, 2005
Page 4

Very truly yours,

Jamal M. Edwards

cc: Robert J. Muldoon, Esq.

# EXHIBIT I

One International Place
Boston, MA 02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

**Jacob K. Baron**
Attorney at Law

Direct Dial 617.526.9886
jbaron@proskauer.com

August 25, 2006

**VIA EMAIL**

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Re:   MIT v. Harman International Industries, Inc., 05-10990 DPW (D. Mass.)

Dear Craig:

I write regarding the Rebuttal Expert Report of Robert French and Harman's August 1, 2006 production of documents via email.

1.      Harman produced almost 1,600 pages of relevant technical documents attached to six emails as TIFF files. No range of Bates Nos. was provided with the emails, but the documents appear to incompletely cover the range from HAR279532-HAR281113. Documents bearing Bates Nos. HAR 280615-20 and 280768-823 do not appear to have been produced. Please confirm that these gaps are intentional.

2.      The documents produced on August 1, 2006 still do not bring Harman's production into compliance with the Court's March 30, 2006 Order (*see* 7/26/2006 ltr from Baron to Leavell). In particular, Harman still has not produced or identified the relevant technical documents requested for the following products: DVD Navimodule for Audi, W220 and W221 for Mercedes, which based on Harman's financial documents, appear to be some of the products with the highest volume of sales. MIT requests that Harman produce responsive documents immediately, or if Harman contends that the documents have already been produced, please identify them by Bates number.

3.      The documents produced on August 1, 2006 do not appear to be complete. For example, where are the MU_DST, MU_POI, ME_NAV, and ME_WID documents referenced relating to the Mercedes products? *See* HAR 279688. These documents are obviously very relevant to this case as these unproduced documents purport to describe the technical aspects of the Mercedes products, including Acoustic Driving Recommendations of Harman's navigation systems, i.e., the discourse generated.

**PROSKAUER ROSE LLP**

Craig D. Leavell, Esq.
August 25, 2006
Page 2

4.      Throughout his Rebuttal Expert Report, Mr. French states that Mr. Belgard and Professor Cannon have not demonstrated that particular versions of documents apply to the Harman products analyzed for many of the asserted claims.  This is true for at least the following aspects of Harman's systems:

Positioning and Sensoric (which Mr. Jeske testified all of Harman's products include);

Scout module (which Mr. Jeske testified all of Harman's products include);

XAC Database (version B18).

We have not found any document in Harman's production that ties the version of technical specifications or software code to particular Harman products.  Where are these documents?

5.      Mr. Jeske was asked specifically during his deposition to associate versions of the XAC database with the products listed in the April 21, 2006 Letter Leavell to Mottley, and he stated that he was unable to do so.  Is Harman's position that no one at Harman can identify which products include which versions of software?  Or does Harman take the view that all of its navigation products are backwards compatible such that subsequent software releases work with previously sold navigation systems?  If the latter is the case, then the documents relied on by Mr. Belgard are properly associated with each analyzed product.

6.      We find it impossible to believe that Harman provides commercially available releases of its software without a tracking system that memorializes the version of software for each aspect of navigation that is shipped with each system.  Please immediately produce or identify documents that show which accused products use which versions of Harman's software.

7.      Mr. Jeske testified that all of Harman's navigation systems use a speech database or speech file in providing speech output.  We have not seen anything resembling such a database or file.  Please produce or identify the speech database or file listing of all speech fragments that Harman's systems use immediately, so MIT can properly analyze the design-around claims in Mr. French's report, and please identify the version of the database associated with each of the accused products.

8.      Throughout his report, Mr. French cites to conversations that he had with Mr. Jens Molzen, and Mr. Hanika-Heidl in support of Mr. French's positions.  *See, e.g.*, page 19, 21, 44, and 65.  Where are Mr. French's notes from these conversations?  Please make sure to bring them to Mr. French's deposition.

9.      Mr. French identifies in his Rebuttal Expert Report that he was unable on August 16, 2006 to access the website http://www.trafficpro2.com/features.asp.  MIT has serious concerns that Harman has destroyed evidence in this case.  Harman can either put the website

**PROSKAUER ROSE LLP**

Craig D. Leavell, Esq.
August 25, 2006
Page 3

back up, or provide MIT with a copy of the executable code that produced the output viewed by
Mr. Belgard. If Harman refuses to do so, MIT will seek sanctions for the destruction of this
evidence.

10.     Harman previously offered samples of the RB4, TrafficPro 2, and the Harley
Davidson Radio to MIT for purchase. However, no such offer has been made for the accused
products identified on April 21, 2006. Is Harman willing to offer samples of such products for
sale at cost as the parties had previously arranged? If so, please provide us with price quotes for
the Porsche PCM 2, Porsche PCM 2.1, and the DVD Navimodule for Audi (D3 product), so MIT
can determine which product samples to purchase.

11.     As you know, the NTG4 family of navigation radios is also accused in this case.
Please let us know when we can expect to receive final documents for the NTG4 family of
products, which we understand were ready to ship as early as September 2006. We are looking
for the same types of technical documents that Harman produced on August 1, 2006 as well as
the versions of Harman's software that is used in the NTG4 products. Alternatively if the NTG4
products are not yet finalized, MIT will accept current versions of the relevant documents. Also,
please let us know if MIT may purchase a working sample of one of the navigation radios of the
NTG4 family.

12.     MIT understands that Harman continues to make its source code available at
Sherin & Lodgen. MIT is planning to review this source code. Please let us know who we
should contact to arrange a time on Monday to review the source code.

                          *       *       *

If Harman produces the information requested herein by August 30, 2006, Mr. Belgard
will be prepared to testify regarding these aspects of Harman's systems at his deposition, in lieu
of formal supplementation of Mr. Belgard's report.

                                   Very truly yours,

                                   Jacob K. Baron

# EXHIBIT J



"Mottley, Kimberly"
&lt;kmottley@proskauer.com&gt;
08/24/2005 03:07 PM

To  "Jamal Edwards" &lt;jedwards@kirkland.com&gt;
cc
bcc
Subject  MIT/Harman

Hi Jamal -

I write to follow-up on next steps for discovery in this case.

First, can you please confirm that we will receive Harman's initial disclosures on Tuesday, September 6? (The scheduling order calls for them on Sunday, the 4th, but that is during the holiday weekend.)

Also, I understand from your July 28, 2005 email that Harman may consider MIT's discovery requests served as of August 2, 2005, rather than on July 26, 2005 (the date they were served on your local counsel). While we disagree with this calculation, and think Harman's discovery responses are actually due tomorrow, we would be willing to grant an extension to allow Harman to provide responses to MIT's requests through September 1, 2005 (30 days from August 2, 2005) if you need one. Please confirm that we will receive responses by that date.

With the document production upcoming, we should discuss mode of production for this case. In this high-tech world, I've found it helpful and cost-effective to use electronic document exchange, rather than paper document productions. Can you please let me know whether your client will be willing to handle document discovery this way? This would mean we'd exchange CDs with the TIFF image files of each page produced, and an upload file (showing where each TIFF page file is connected to the next to form documents).

We also should start discussing the protective order needed in this case. Attached is a draft agreement to get us started on these discussions.

Finally, in order to start planning dates on our calendars for depositions, please let me know when Robert Hart and John Peracchio would be available for depositions the weeks of October 3 and October 10.

Please let me know when you are available to discuss these issues. I am generally available through the end of the week.

Thanks.

Kim

Kimberly A. Mottley, Esq.
Proskauer Rose LLP
One International Place - 22nd Floor
Boston, MA 02210
Tel. 617-526-9616
Fax. 617-526-9899
kmottley@proskauer.com

&lt;&lt;Proposed Protective Order(v1).DOC&gt;&gt;

-----------------------------------------------------------------------------

This message and its attachments are sent from a law firm and may contain information that is confidential and protected by privilege from disclosure. If you are not the intended recipient, you are prohibited from printing, copying, forwarding or saving them. Please delete the message and attachments without printing, copying, forwarding or saving them, and notify the sender immediately.

Proposed Protective Order[v1].DOC

# EXHIBIT K

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MASSACHUSETTS INSTITUTE OF TECHNOLOGY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,**<br><br>**Defendant.** | **Case No: 05-10990 DPW**<br>**Hon. Douglas P. Woodlock** |

### MIT'S NOTICE OF RULE 30(b)(6) DEPOSITION OF
### HARMAN INTERNATIONAL INDUSTRIES, INC.

Please take notice that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, counsel for Massachusetts Institute of Technology ("MIT") will take the deposition upon oral examination of Harman International Industries, Inc. ("Harman"), through its designated representative(s), on the examination subjects listed on Schedule A attached to this Notice.

Pursuant to Rule 30(b)(6), Harman shall designate and produce at this deposition those of its officers, directors, employees, managing agents, or other representatives to testify on Harman's behalf with respect to the Schedule A examination subjects.

This deposition of Harman will occur at the offices of Proskauer Rose LLP, One International Place, Boston, MA 02110, beginning at 9:00 a.m. on November 2, 2005, or at such other time and place as mutually agreed upon by the parties, and will continue thereafter day to day until completed. The deposition will be taken before a notary public or other officer authorized by law to administer oaths. The deposition shall be recorded by a stenographer or court reporter, and may be recorded by video and sound means.

Dated: September 28, 2005

Respectfully submitted,

Massachusetts Institute of Technology,

By its Attorneys,

Steven M. Bauer (BBO# 542531)
Kimberly A. Mottley (BBO# 651190)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:    617-526-9899

## SCHEDULE A

## DEFINITIONS AND INSTRUCTIONS

1.    The term "MIT" shall mean the plaintiff in this action, Massachusetts Institute of Technology.

2.    The term "Harman" shall mean the defendant in this action, Harman International Industries, Inc., and any of its predecessors, successors, subsidiaries, divisions, departments, assigns, parent corporations, foreign and domestic affiliates, organizational operating units, and all present or former partners, principles, employees, officers, directors, agents, legal representatives, consultants, or other persons acting for or on its behalf.

3.    The term "'685 patent" shall mean U.S. Patent No. 5,177,685 entitled "Automobile Navigation System Using Real Time Spoken Driving Instructions" issued on January 5, 1993.

4.    The expression "automobile navigation system product[s] or service[s]" shall mean any product or service, or portion or component thereof, which provides or is designed to provide real-time spoken driving instructions.  The expression includes, but is not limited to, products or services or components thereof capable of being installed by an automobile manufacturer or independently of an automobile manufacturer.

5.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

6.    The terms "any," "all," or "each" shall be construed as "any, all and each" inclusively.

7.    The term "relating" means concerning, embodying, containing, comprising, constituting, indicating, referring to, identifying, describing, discussing, involving, supporting, reflecting, evidencing, or otherwise in any way pertaining directly or indirectly to.

8.    The use of the singular form of any word shall include the plural and vice versa.

## SCHEDULE A

### NOTICE OF RULE 30(b)(6) DEPOSITION
### EXAMINATION SUBJECTS OF HARMAN INTERNATIONAL INDUSTRIES, INC.

1.     The design, development, manufacture, testing, operation and performance of each of Harman's automobile navigation systems products or services.

2.     Harman's first knowledge of the '685 patent, any prior art related thereto, and any opinion, assessment, or inquiry rendered for, or by, Harman regarding the validity, enforceability, and/or scope of any of the claims of the '685 patent.

3.     Harman's marketing and advertising, sales, offers for sale, licensing, offers to license, pricing and revenues for each of Harman's automobile navigation system products or services.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 28, 2005, I caused a true and correct copy of

MIT'S NOTICE OF RULE 30(b)(6) DEPOSITION OF HARMAN INTERNATIONAL

INDUSTRIES, INC. to be served on the following counsel of record via email:

Robert J. Muldoon, Jr.
**SHERIN AND LODGEN, LLP**
101 Federal Street
Boston, MA 02110

Jamal M. Edwards
**KIRKLAND & ELLIS LLP**
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000 (phone)
(312) 861-2200 (fax)

By: _____
Kimberly A. Mottley

# EXHIBIT L

One International Place
Boston, MA 02110-2600
Telephone 617.526.9600
Fax 617.526.9899

NEW YORK
LOS ANGELES
WASHINGTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

**Jacob K. Baron**
Attorney at Law

Direct Dial 617.526.9886
jbaron@proskauer.com

September 13, 2006

**VIA EMAIL**

Craig D. Leavell, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Re:     MIT v. Harman International Industries, Inc., 05-10990 DPW (D. Mass.)

Dear Craig:

This is with regard to the Rule 30(b)(6) deposition of Harman on June 7, 2006. We have not received a signed copy of the deposition transcript. We understand that Mr. Jeske, Harman's Rule 30(b)(6) designee, gave incomplete answers to a number of questions. We expected that any incomplete answers would have been corrected within the 30 days allowed by the Federal Rules for changes to the transcript and signing.

Just days ago, you told counsel for MIT, Steve Bauer, that during Harman's Rule 30(b)(6) deposition, Mr. Jeske had the answer to a number of unanswered questions, which he obtained "during the breaks." However, neither you nor Mr. Jeske ever suggested during the deposition that he had obtained information which he knew was appropriate to supplement his answers -- answers which were incomplete when given.

MIT believes that the rules require supplementation either at the deposition, or after the transcript was received. Given that Mr. Jeske (and Harman) have apparently waived their right to supplement their answers to these deposition questions by failing to review and sign the transcript within the required period, it seems to us that Harman has waived the right to now suggest that it has the answers -- and that the court is allowed to direct the jury to assume that the answers are favorable to MIT.

**PROSKAUER ROSE LLP**

Craig D. Leavell, Esq.
September 13, 2006
Page 2

    Of course, we would prefer the information.  At the very least, Harman is obligated to provide the answers to those questions that Mr. Jeske investigated during the breaks.  Please let us know if you have any suggestions on how you might address your waiver.

                        Very truly yours,

                        Jacob K. Baron

# EXHIBIT M

Not Reported in F.Supp.2d                                                                    **Page   1**
Not Reported in F.Supp.2d, 2003 WL 22232844 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**
**H**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
  United States District Court,N.D. Illinois, Eastern
                      Division.
  Diane CARTER, Individually, and as Special
  Administrator for the Estate of Kurt A. Carter,
  Deceased, and for use and benefit of Sean Carter,
  Kate Carter and Christopher Carter, minors,
                      Plaintiff,
                         v.
  THE FINELY HOSPITAL, an Iowa Corporation d/
  b/a Galena Health Clinic, Defendant.
                  No. 01 C 50468.

                  Sept. 22, 2003.

Robert Hugh Clark, Jeffrey Joseph Zucchi, Cynthia
J. Hedrick Koroll, Clark, Justen & Zucchi Ltd.,
Rockford, IL, for petitioners.
Angela C. Simon, Philip F. Jensen, Hammer,
Simon & Jensen, Dubuque, IA, for defendant.

            *MEMORANDUM OPINION AND ORDER*

REINHARD, J.
**\*1** Diane Carter ("Plaintiff"), on behalf of the estate
of her husband, Kurt Carter, and on behalf of her
three minor children, filed a Motion to Strike
Defendant's Supplemental Rule 26(a) Disclosure of
Expert Witnesses ("Motion to Strike") presumably
FN1 under Federal Rule of Civil Procedure 37(c)(1)
. Plaintiff alleges that the Finley Hospital
("Defendant") violated Rule 26(a) by disclosing
supplemental expert opinions after the close of
discovery. Defendant filed its response on August
12, 2003. Plaintiff filed her reply on August 29,
2003. (PL's Reply at 1.) For the following reasons,
Plaintiff's Motion to Strike is granted.

FN1. Plaintiff failed to cite any Federal Rule of
Civil Procedure in her Motion to Strike and failed to
cite Rule 37(c)(1) in its reply. Plaintiff's claims of
discovery violations concerning expert witness
disclosures necessarily implicate Rule 26(a)(2).
Relief for violations of discovery disclosure
requirements under Rule 26(a) is provided for in
Rule 37(c)(1).

                   *Background*

The case management order in this case established
that Defendant was to make its Rule 26(a)(2)
disclosures by December 18, 2002. Defendant
disclosed three expert witnesses on November 8,
2002: Dr. Ian Robins, Dr. Diane MacDonald, and
Dr. Bruce Brockstein. (*Id.* at 1-3). Plaintiff deposed
Dr. Robins on March 4, 2003; Dr. MacDonald on
March 10, 2003; and Dr. Brockstein on March 25,
2003. (*Id.* at 2-3). Each of the deponents provided
expert testimony that Kurt Carter died from the
disease, Malignant Fibrous Histiocytoma. (*Id.* at 2-
3).

On May 27, 2003, Defendant's counsel faxed a
request to the University of Iowa Pathology
Department for a supplemental autopsy report for
Mr. Carter. (Pl.'s Mot. to Strike, Ex. 13). The
report was completed and available for printing on
November 18, 2002. (*Id.*). The request, dated
March 3, 2003, included a release signed by Diane
Carter and dated February 28, 2003. (*Id.*). The
Pathology Department faxed the supplemental report
to Defendant's counsel on May 30, 2003. (*Id.;*
Def.'s Resp. at 4).

Defendant subsequently forwarded the supplemental
autopsy report to its three expert witnesses. (Def.'s
Resp. at 4). Upon reviewing the supplemental
report, Drs. MacDonald and Brockstein changed
their opinions as to the cause of Mr. Carter's death.
(Def.'s Reply at 3). All three of Defendant's experts
testified at their respective depositions that Mr.
Carter died from Malignant Fibrous Histiocytoma.
(Pl.'s Mot. to Strike at 2-4). These opinions were
consistent with Plaintiff's allegations that
Defendant's negligence in diagnosing and treating
Mr. Carter actually and proximately caused Mr.
Carter to die from his disease. Drs. MacDonald and
Brockstein now opine that Mr. Carter died from
complications caused by his medical treatment rather
than from the disease from which he suffered. (Pl.'s
Mot. to Strike, Ex. 4, 5). In July 2003, Defendant
disclosed these supplemental opinions to Plaintiffs.
(Pl.'s Mot. to Strike at 2-3).

                    *Discussion*

Rule 26(a)(2) requires that a party disclose expert
witness reports within the time period established by
the court. Fed.R.Civ.P. 26(a)(2)(C). Rule

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

26(a)(2)(B) requires that expert witness disclosures include, *inter alia,* "a complete statement of all opinions to be expressed" by the witness. Rule 26(e) imposes a duty on all parties to supplement their expert witness disclosures when "the party learns that in some material respect the information disclosed is incomplete or incorrect." Fed.R.Civ.P. 26(e)(1).

**\*2** Plaintiff asserts that the Federal Rules of Civil Procedure 26(a) prohibit Defendant from using supplemental expert witness reports to disclose entirely new expert opinions, albeit by experts previously disclosed. (Pl.'s Reply at 2). Defendant counters that Rule 26(e) compels its supplemental expert witness reports, as the new opinions correct the previously disclosed expert opinions. (Def.'s Resp. at 2). Defendant asserts that the late date of its supplemental disclosures is due to Plaintiff withholding Mr. Carter's supplemental autopsy report. (*Id.* at 4). However, Defendant has never established that Plaintiff did, in fact, possess the supplemental report and did not disclose the report, in violation of 26(a)(1). In fact, Plaintiff states, and this Court has no reason to doubt Plaintiff's assertion, that "Plaintiff had no supplemental autopsy report until it was received from Defendant, but instead, relied upon the communication from the pathologist, Dr. Carter, in his discussion of the report in letter format." FN2 (Pl.'s Reply at 6).

FN2. Plaintiff did in turn provide the letter from Dr. Carter to the Defendant and incorporated it as an exhibit to the deposition of Diane Carter. (Pl.'s Reply at 6.)

Defendant apparently believes that the duty imposed under Rule 26(e)(1) gives it the right to disclose material information relating to expert testimony at any time before pretrial disclosures are due. (Def.'s Reply at 3). Defendant overlooks that Rule 26(e)(1) imposes a *duty* to supplement their disclosures to reveal incomplete or incorrect information to an opposing party, not a *right* to extend discovery deadlines. *See Salgado v. General Motors Corp.,* 150 F.3d 735, 742 n. 6 (7th Cir.1998) (stating that "[d]isclosures must not be used as a means to extend a discovery deadline.") (citing *Sierra Club v. Cedar Point Oil Co.,* 73 F.3d 546, 571 (5th Cir.1996)). It is disingenuous to argue that the duty to supplement under Rule 26(e)(1) can be used as a vehicle to disclose entirely new expert opinions after the

deadline established by the court under Rule 26(a)(2)(C). This is particularly true where, as here, the materials on which the new expert opinions are based were available to the Defendant prior to Plaintiff deposing her expert witnesses. (Def.'s Resp. at 3). Therefore, Defendant's late disclosure of new expert opinions is in violation of the deadline established by this Court. However, if Defendant can establish that Plaintiff did possess the supplemental autopsy report and failed to provide the report to Defendant, in violation of Rule 26(a)(1), then this Court would consider extending the deadline.

Federal Rule of Civil Procedure 37(c)(1) enforces the requirements of Rule 26(a)(2) and Rule 26(e). Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a)(2) or 26(e)(1) ... is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." The Seventh Circuit has stated that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir.2003) (quoting *Salgado v. Gen. Motors Corp.* ., 150 F.3d 735, 742 (7th Cir.1998). In weighing the sanctioned party's explanation for substantial justification or harmlessness, the court should consider four factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption at trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.*

**\*3** The only justification that Defendant offers to explain its late Rule 26(a)(2) disclosure is a claim that Plaintiff improperly withheld Mr. Carter's supplemental autopsy report. (Def.'s Resp. at 2). However, the Defendant has not factually supported this claim. The Defendant has not demonstrated a discovery request that covered the document or that Plaintiff had the document and did not produce it. Additionally, if Defendant believed that Plaintiff possessed the report and was not disclosing it, then Defendant should have sought this Court's assistance under Rule 37 to compel Plaintiff's cooperation with the discovery of Mr. Carter's supplemental autopsy report. Also, as this Court has

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

previously pointed out, the Defendant had an obligation to obtain this third party discovery on its own. As Defendant has failed to provide a credible justification for its untimely delay, its "supplemental" disclosures are excluded under Rule 37(c)(1).

*Conclusion*

For the above stated reasons, Plaintiff's Motion to Strike Defendant's supplemental expert witness disclosures is granted. The expert witnesses will not be allowed to testify as to the opinions expressed in the supplemental autopsy report.

N.D.Ill.,2003.
Carter v. Finely Hosp.
Not Reported in F.Supp.2d, 2003 WL 22232844 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

. 2004 WL 1685891 (Trial Motion, Memorandum and Affidavit) Response to Defendant's Motion in Limine (Mar. 22, 2004) Original Image of this Document (PDF)
. 2004 WL 1685889 (Trial Motion, Memorandum and Affidavit) Memorandum of Authorities in Support of Motion to Bifurcate (Mar. 17, 2004) Original Image of this Document (PDF)
. 2004 WL 1685887 (Trial Motion, Memorandum and Affidavit) Response and Memorandum Submitted in Support of Response to Plaintiffs' Motions in Limine (Mar. 5, 2004) Original Image of this Document (PDF)
. 2003 WL 23683726 (Trial Motion, Memorandum and Affidavit) Response to Defendant's Rule 72 Objection to Magistrate Judge Mahoney's Order (Oct. 3, 2003) Original Image of this Document (PDF)
. 2003 WL 23683720 (Trial Motion, Memorandum and Affidavit) Response to Defendant's Rule 72 Objection to Magistrate Judge Mahoney's Order (Aug. 29, 2003) Original Image of this Document (PDF)
. 2003 WL 23683724 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Strike Defendant's Supplemental Rule 26(a) Disclosure of Expert Witnesses (Aug. 29, 2003) Original Image of this Document (PDF)
. 2003 WL 23683708 (Trial Motion, Memorandum

and Affidavit) Response to Plaintiffs' ""Brief in Opposition to Defendant's Second Motion for Summary Judgment on Additional and Supplemental Grounds'' (Aug. 12, 2003) Original Image of this Document (PDF)
. 2003 WL 23683712 (Trial Motion, Memorandum and Affidavit) Response to Plaintiffs' Motion to Strike Defendant's Supplemental Rule 26(a) Disclosure of Expert Witnesses (Aug. 12, 2003) Original Image of this Document with Appendix (PDF)
. 2003 WL 23683716 (Trial Motion, Memorandum and Affidavit) Reply to Plaintiffs' Brief in Opposition to Defendant's Motion for Leave to Amend Answer (Aug. 12, 2003) Original Image of this Document (PDF)
. 2003 WL 23417881 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Opposition to Defendant's Motion for Leave to File Amended Answer (Aug. 6, 2003) Original Image of this Document (PDF)
. 2003 WL 23417886 (Trial Motion, Memorandum and Affidavit) Motion to Strike Defendant's Supplemental Rule 26(a) Disclosure of Expert Witnesses (Aug. 6, 2003) Original Image of this Document (PDF)
. 2003 WL 23417875 (Trial Motion, Memorandum and Affidavit) Brief in Opposition to Defendant's Second Motion for Summary Judgment on Additional and Supplemental Grounds (Aug. 5, 2003) Original Image of this Document (PDF)
. 2003 WL 23683701 (Trial Motion, Memorandum and Affidavit) Brief in Opposition to Defendant's Second Motion for Summary Judgment on Additional and Supplemental Grounds (Aug. 5, 2003) Original Image of this Document (PDF)
. 2003 WL 23417871 (Trial Motion, Memorandum and Affidavit) Motion for Sanctions (Jul. 7, 2003) Original Image of this Document (PDF)
. 2003 WL 23417857 (Trial Motion, Memorandum and Affidavit) Motion for Leave to Amend (Jun. 23, 2003) Original Image of this Document with Appendix (PDF)
. 2003 WL 23417848 (Trial Motion, Memorandum and Affidavit) Motion to Dismiss (Apr. 25, 2003) Original Image of this Document with Appendix (PDF)
. 2003 WL 23417841 (Trial Motion, Memorandum and Affidavit) Motion to Strike (Apr. 16, 2003) Original Image of this Document (PDF)
. 2003 WL 23417836 (Trial Motion, Memorandum and Affidavit) Response Brief in Support of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Defendant's Motion for Summary Judgment (Apr. 2, 2003) Original Image of this Document (PDF)

. 2003 WL 23683698 (Trial Motion, Memorandum and Affidavit) Response Brief in Support of Defendant's Motion for Summary Judgment (Apr. 2, 2003) Original Image of this Document (PDF)

. 2003 WL 23417831 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to the Defendant's Motion for Summary Judgment (Mar. 26, 2003) Original Image of this Document (PDF)

. 2003 WL 23683688 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to the Defendant's Motion for Summary Judgment (Mar. 26, 2003) Original Image of this Document (PDF)

. 2003 WL 23683691 (Trial Motion, Memorandum and Affidavit) Response to Defendant's Statement of Undisputed Material Facts (Mar. 26, 2003) Original Image of this Document (PDF)

. 2003 WL 23683695 (Trial Motion, Memorandum and Affidavit) Response to Defendant's Amended Statement of Undisputed Material Facts (Mar. 26, 2003) Original Image of this Document (PDF)

. 2003 WL 23683685 (Trial Motion, Memorandum and Affidavit) Response to Defendant's Motion to Compel (Mar. 3, 2003) Original Image of this Document (PDF)

. 2003 WL 23417825 (Trial Motion, Memorandum and Affidavit) Motion for Summary Judgment (Feb. 25, 2003) Original Image of this Document (PDF)

. 2003 WL 23417820 (Trial Motion, Memorandum and Affidavit) Motion to Compel (Feb. 21, 2003) Original Image of this Document with Appendix (PDF)

. 2003 WL 23417810 (Trial Motion, Memorandum and Affidavit) Motion for Protective Order Pursuant to F.R.C.P. 26 (Feb. 14, 2003) Original Image of this Document with Appendix (PDF)

. 2003 WL 23417803 (Trial Motion, Memorandum and Affidavit) Motion to Extend Dispositive Motions Deadline (Jan. 27, 2003) Original Image of this Document (PDF)

. 2002 WL 32601966 (Trial Motion, Memorandum and Affidavit) Response to Defendant's Objection to Plaintiffs' Notice of ""Oral'' Motion and Request to Quash. (Nov. 26, 2002) Original Image of this Document (PDF)

. 2002 WL 32451544 (Trial Motion, Memorandum and Affidavit) Motion for Leave to File Amended Complaint (Nov. 18, 2002) Original Image of this Document (PDF)

. 2002 WL 32601959 (Trial Motion, Memorandum and Affidavit) Brief In Response to Defendant's Motion to Determine Costs. (Oct. 25, 2002) Original Image of this Document (PDF)

. 2002 WL 32451539 (Trial Motion, Memorandum and Affidavit) Motion to Determine Costs (Oct. 21, 2002) Original Image of this Document (PDF)

. 2001 WL 34905702 () (Partial Testimony) (Dec. 14, 2001) Original Image of this Document (PDF)

. 2001 WL 34905703 () (Partial Testimony) (Dec. 14, 2001) Original Image of this Document (PDF)

. 3:01CV50468 (Docket) (Dec. 14, 2001)

. 2001 WL 34483928 (Trial Motion, Memorandum and Affidavit) Motion for Protective Order Pursuant to F.R.C.P. 26 (2001) Original Image of this Document with Appendix (PDF)

. 2001 WL 34483938 (Trial Motion, Memorandum and Affidavit) Motion for Summary Judgment Submitted on Additional and Supplemental Grounds (2001) Original Image of this Document (PDF)

. 2001 WL 34483943 (Trial Motion, Memorandum and Affidavit) Response in Support of Motion in Limine (2001) Original Image of this Document with Appendix (PDF)

. 2001 WL 34617903 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion in Limine (2001) Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT N

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1472778 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**
н

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
TEXAS CAPITAL CORPORATION, et al.
v.
FLEET CAPITAL CORPORATION, et al
No. Civ.A.03-1605.

Filed March 14, 2003.
June 14, 2004.

represented by Eric F. Spade, Frey Petrakis Deeb, Blum Briggs & Mitts, P.C., Philadelphia, PA, Lead Attorney, Attorney to be Noticed, Maurice R. Mitts , Frey Petrakis Deeb, Blum Briggs & Mitts, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, for Texas Capital Corporation, Plaintiff.
represented by Eric F. Spade, Maurice R. Mitts, (See above for address), Lead Attorney, Attorney to be Noticed, for Guy William Morgan, Plaintiff.
represented by Eric F. Spade, Maurice R. Mitts, (See above for address), Lead Attorney, Attorney to be Noticed, for Robin F. Morgan, Plaintiff.
represented by Patricia Casperson, Stradley Ronon, Stevens and Young LLP, Philadelphia, PA, Lead Attorney, Attorney to be Noticed, William E. Mahoney, Jr., Stradley, Ronon, Stevens & Young, Phila, PA, Lead Attorney, Attorney to be Noticed, for Fleet Capital Corporation, Defendant.
represented by Patricia Casperson, William E. Mahoney, Jr., (See above for address), Lead Attorney, Attorney to be Noticed, for Summit Bank, N.A., Defendant.
represented by Patricia Casperson, William E. Mahoney, Jr., (See above for address), Lead Attorney, Attorney to be Noticed, for Fremont Financial Corporation, Defendant.
represented by Maurice R. Mitts, (See above for address), Attorney to be Noticed, for Guy William Morgan, Counter Defendant.
represented by Maurice R. Mitts, (See above for address), Attorney to be Noticed, for Robin F. Morgan, Counter Defendant.
represented by Maurice R. Mitts, (See above for address), Attorney to be Noticed, for Texas Capital Corporation, Counter Defendant.

*MEMORANDUM AND ORDER*

HART, Magistrate J.

*1 The underlying dispute in this case involves a line of credit extended to Texas Capital by Fremont Financial Corporation. Fremont was purchased by Summit Bank, which eventually merged with Fleet. FN1 Texas Capital was in the business of re-lending, purchasing accounts receivable from small businesses and collecting the money directly from the debtors. In an effort to expand its business, Texas Capital obtained a line of credit from Fremont. After Fleet began servicing the line of credit, Fleet found that Texas Capital was in default. It is Plaintiffs' contention that certain employees of Fleet misrepresented the existence of an event of default. Fleet and Guy William Morgan, Texas Capital's principal, entered into a "Forbearance Agreement," and eventually, Texas Capital went under.

FN1. In its answer to the Complaint, Fleet denied that Fremont was purchased by Summit. However, it did so because it lacked knowledge and information to support the assertion. For purposes of this Memorandum, we accept that Fremont was the originator of the line of credit and it has been passed from Fremont to Summit to Fleet.

In this discovery dispute, the Plaintiffs have filed a Motion to Compel production of documents responsive to many discovery requests and have requested a privilege log for those documents which Fleet claims are privileged. In response to the discovery requests, Fleet agreed to make all non objectionable, non-privileged, responsive documents available for inspection and copying. Plaintiffs' counsel has not yet made such an inspection. Fleet also argues that certain of the production requests are irrelevant, overly broad, and unduly burdensome. Moreover, Fleet contends that it has not produced a privilege log because it has not yet withheld anything.

With respect to the privilege log, we disagree with the Defendants. At this point, the defense has been asked to produce responsive documents. In response they have agreed to make responsive documents available, with the exception of those that are privileged. Although Plaintiffs' counsel has not inspected and copied the documents, defense counsel has contemplated that some documents are privileged and those documents have not been made

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                       **Page   2**
**(Cite as: Not Reported in F.Supp.2d)**

available for counsel's inspection. Thus, the
Defendants have already asserted the privilege. A
log describing those documents not made available
is in order.

With respect to the Defendants' objections to the
document requests, we believe the information
sought is irrelevant, overly broad, and burdensome.
Guided by Federal Rule of Civil Procedure 26(b)(1),
the federal court will allow discovery of information
if it "appears reasonably calculated to lead to the
discovery of admissible evidence." However, the
court will not permit a fishing expedition into
matters unrelated to the claims presented in a case.

The crux of the problem here is that this is a case
involving the revocation of one line of credit to one
company, Texas Capital. Plaintiffs seek information
to support a theory, which is not pleaded in the
Complaint, that Fleet acted as it did in dealing with
Texas Capital because it sought to terminate all of
Summit Bank's re-lending business. "It is believed
that Fleet's wrongful conduct toward the Plaintiffs
was part of a systematic plan by Fleet to eliminate
the re-lending business of Summit Bank." (Motion,
at 5). In support of this theory, in Requests 6, 7, 8,
9, and 11, the Plaintiffs seek all documents
concerning the elimination or termination of Summit
Bank's re-lending business and its Rediscount
Finance Group. The Plaintiffs also seek the
acquisition agreement for Fleet's purchase of
Summit, and the portfolio reviews done when
Summit purchased Fremont and those done when
Fleet purchased Summit. The problem with these
requests is that production of such documents would
appear to shed no light whatsoever on the single
contract/credit line between Texas Capital and Fleet,
or on whether Texas Capital defaulted on the credit.
Rather, it involves a fishing expedition into Fleet's
entire portfolio of lines of credit. We will not permit
such discovery at this time. If during the course of
discovery, Plaintiffs actually uncover facts to
support their non-pleaded theory that Fleet was
trying to shed an entire line of business by
mistreating its customers, the Court will entertain a
motion to amend the complaint.

**\*2** Plaintiffs also seek a substantial amount of
information related to the loan officer that serviced
Texas Capital's line of credit and his direct
supervisor. The requests are clearly overbroad.
Texas Capital seeks the entire employment file for

each, any documents concerning their termination,
any agreements that the Defendants had with them,
and any communications between either of the two
and the Defendants. (Document Requests 13-22). By
Plaintiffs' own admission, the loan officer for whom
they seek this information was employed by the
Defendants for more than a decade. (Response to
Motion, at 5). His employment file will contain
information far beyond that relevant to this action.
Similarly, a request for the communications between
the loan officer and his employer for the length of
his employment could very well fill an office. Such
request is, to say the least, burdensome. In addition,
the bulk of information sought here would not relate
to the Plaintiffs' loan. We suggest that counsel
narrow these requests to limit the information
sought to the facts of this case and the relationship
between the Plaintiffs and Defendants.

### ORDER

AND NOW, this 14 day of June, 2004, upon
consideration of the Plaintiffs' Motion to Compel
Discovery, the response, thereto, and for the reasons
stated in the accompanying Memorandum, IT IS
HEREBY ORDERED that the Motion is
GRANTED IN PART and DENIED IN PART. To
the extent the Plaintiffs seek a privilege log for all
responsive documents for which the Defendants
claim a privilege, the Motion is GRANTED. To the
extent the Plaintiffs seek responses to Requests 6-9,
11, and 13-22, the Motion is DENIED. The
Defendants' objections to these requests are
sustained.

E.D.Pa.,2004.
Texas Capital Corp. v. Fleet Capital Corp.
Not Reported in F.Supp.2d, 2004 WL 1472778
(E.D.Pa.)

Briefs and Other Related Documents (Back to top)

. 2004 WL 2716256 (Trial Motion, Memorandum
and Affidavit) Motion (Jul. 6, 2004) Original Image
of this Document with Appendix (PDF)
. 2004 WL 2716251 (Trial Motion, Memorandum
and Affidavit) Order (Jun. 21, 2004) Original Image
of this Document (PDF)
. 2004 WL 2716246 (Trial Motion, Memorandum
and Affidavit) Motion (Jun. 3, 2004) Original Image
of this Document with Appendix (PDF)
. 2004 WL 2716240 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
**(Cite as: Not Reported in F.Supp.2d)**

and Affidavit) Motion (May 20, 2004) Original
Image of this Document (PDF)
. 2003 WL 23902410 (Trial Pleading) Answer to
Counterclaim of Texas Capital Corporation and the
Estate of G. William Morgan (May 19, 2003)
Original Image of this Document (PDF)
. 2003 WL 23902402 (Trial Motion, Memorandum
and Affidavit) Motion of Plaintiffs, Texas Capital
Corporation, G. William Morgan, and Robin F.
Morgan, to Remand Pursuant to 28 U.S.C.   1447
(Apr. 3, 2003) Original Image of this Document
(PDF)
. 2:03cv01605 (Docket) (Mar. 14, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.