UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) ) ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) ) | NO. 05-10990-DPW |
| HARMAN INTERNATIONAL INDUSTRIES, INC., | ) ) ) ) | |
| Defendant. | ) | |

### ORDER REGARDING REVIEW OF DOCUMENTS
### SUBMITTED FOR IN CAMERA INSPECTION

This court has reviewed "MIT's (Second) In Camera Submission of Documents Related to Harman and NEC Over Which MIT Continues to Assert Work Product and Attorney-Client Privilege Protections" as well as "Harman's August 21, 2006 Submission for In Camera Review Pursuant to the Court's August 4, 2006 Order." In addition, this court has reviewed document number 471 listed on MIT's privilege log, which MIT had submitted to the court on August 8, 2006. Based on this review, this court concludes as follows:

1.   The following documents identified on MIT's privilege log were properly withheld from production pursuant to the work product doctrine: Nos. 329, 337, 471, 558, 559, 562, 564, 566, 567, 568, 605, 762 and 782. MIT has shown that these documents were prepared by a party and "can be fairly said to have been prepared or

obtained because of the prospect of litigation" or in connection with ongoing litigation. In re Grand Jury Subpoena, 220 F.R.D. 130, 146 (D. Mass. 2004).

    2.    The following documents identified on MIT's privilege log were properly withheld from production based on the attorney-client privilege: Nos. 280 and 336 (redacted portions). MIT has demonstrated that these documents consist of or describe confidential communications between MIT and its counsel "for the purpose of seeking, obtaining, or providing legal assistance to the client." E. Epstein, The Attorney-Client Privilege and the Work Product Doctrine (4th ed.) at 46 (ABA 2001). See also City of Worcester v. HCA Mgmt. Co., Inc., 839 F. Supp. 86, 88 (D. Mass. 1993) (describing privilege).

    3.    MIT has not established that the community of interest or common interest doctrine provides an exception to the waiver of the attorney-client privilege with respect to documents that were disclosed to NEC. As an initial matter, nothing in the NEC related documents or in MIT's submissions demonstrates that MIT and NEC were joint clients of MIT's patent counsel during the prosecution of the '685 patent or at any other time. See Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 228 (1st Cir. 2005) (in evaluating common interest doctrine, proper focus is on the joint representation of the parties by one party's attorney), cert. denied, 126 S. Ct. 2292, 164 L. Ed. 2d 814 (2006); Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 167 F. Supp. 2d 108, 117-124 (D. Mass. 2001) (analyzing objective reasonableness of party's belief that joint attorney-client relationship existed for purposes of applying

common interest doctrine).  See also In re Regents of the Univ. of Cal., 101 F.3d 1386, 1389-90 (Fed. Cir. 1996) (evaluating, for purposes of applying the attorney-client privilege, whether the same attorney was representing two entities on the same matter and whether the clients shared a common legal interest).  Rather, the documents indicate that MIT's counsel at first represented only MIT, without any involvement of NEC, and later communicated with NEC's own counsel for informational purposes only.  Thus, the record does not support the conclusion that there was a professional relationship between MIT's counsel and NEC, or that NEC consulted with MIT's counsel for the purpose of seeking legal advice.  Id. at 1390.  Thus, MIT has not "met its burden of establishing that [NEC] shared an attorney-client relationship with [MIT's counsel] on the preparation and prosecution of the [relevant patent] application."  Mass Eye & Ear Infirmary, 167 F. Supp. 2d at 117-18.

Moreover, MIT has not established that it shared a common legal interest with NEC.  In particular, with the exception of document no. 7, all of the documents at issue appear to post-date the license agreement between MIT and NEC.[1]  Therefore, although NEC was a sponsor of the technology that MIT was seeking to patent and had an option to obtain an exclusive license, at the time when the documents were generated NEC had only a non-exclusive, royalty-free non-transferable license.  Accordingly, MIT has not shown that NEC shared its interest in obtaining a valid and enforceable patent.  See

---

[1] Although it is unclear when NEC entered into the license agreement, MIT executed the agreement on May 28, 1991.

3

Regents, 101 F.3d at 1390 (in contrast to a situation where the parties' legal interests were "substantially identical because of the potentially and ultimately exclusive nature of the [parties'] license agreement," a patentee and a nonexclusive licensee do not share identical interests). Consequently, the following documents identified on MIT's privilege log must be produced in their entirety: Nos. 3, 40, 41, 68, 84, 116, 120, 122 and 128. Additionally, MIT must produce the following documents in redacted form in order to protect the attorney-client communications contained therein: Nos. 6, 7 and 663. Document No. 212 was properly withheld based on the attorney-client privilege. Finally, document No. 17 was not disclosed to NEC and need not be disclosed unless it is responsive.

      4.    Harman has demonstrated that all of the documents that it submitted to this court for in camera review on August 21, 2006 were properly withheld from production pursuant to the attorney-client privilege.

                                / s / Judith Gail Dein  
                                Judith Gail Dein  
                                United States Magistrate Judge

DATED: September 27, 2006