IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>    Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br><br>    Defendant. | Civil Action No.: 05-10990 DPW<br><br>Magistrate Judge Judith G. Dein |

### MIT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM HARMAN'S TECHNICAL EXPERT ROBERT L. FRENCH PURSUANT TO SUBPOENA

Harman International Industries, Inc. ("Harman") has retained Robert L. French as an expert to testify on issues relating to the validity of the patent in suit – U.S. Patent No. 5,177,685 (the "'685 Patent"). During his deposition, Mr. French testified that he had documents in his possession that show that when the invention was made, he knew about it and, in fact, had considered it then "fresh" and "different." By a narrowly-drafted subpoena properly executed and timely served on Mr. French, MIT has sought these specific documents from Mr. French. Harman's counsel, on Mr. French's behalf, has refused to produce the documents. Thus, MIT herein seeks the Court's assistance in obtaining production of these documents.

By way of background, the '685 Patent resulted from work done by its named inventors, MIT Professor Chris Schmandt and MIT graduate student Jim Davis, as Dr. Davis's Ph.D. research project called the "Back Seat Driver."

1

In September of 1989, Dr. Davis and Prof. Schmandt presented their Back Seat Driver research at the Institute of Electrical and Electronics Engineers ("IEEE") Vehicle Navigation and Information Systems ("VNIS") conference. Harman has retained as its technical expert the Vice Chairman and organizer for that conference, Mr. French, who stated in his expert report that the conference was his first exposure to the Back Seat Driver work:

> Regarding the 1989 time frame, I first learned of the MIT work around January of that year when, as Technical Program Vice Chairman of the IEEE VNIS '89 conference held in Toronto, September 11-13, 1989, I reviewed an abstract entitled 'The Back Seat Driver: Real Time Spoken Driving Instructions,' that Davis and Schmandt submitted for that conference. VNIS '89 ('Vehicle Navigation and Information Systems') was the first major technical conference to be devoted exclusively to topics relating to vehicle navigation and route guidance. Many of the other papers presented at VNIS '89 reported on, or alluded to, much of the prior art cited in this report.

At his September 15, 2006 deposition, Mr. French testified that he selected the Back Seat Driver paper for presentation at that conference because he thought the ideas were "fresh" and "different." He also testified in his deposition to what he could recall about that conference nearly 18 years ago, concerning the process of submission of papers for consideration, and acceptance of papers for inclusion and presentation at that conference. He also testified that he might still have relevant papers from that conference in his "archives" in his home.

Harman has stated its intent to introduce Mr. French's testimony as an expert at trial on the "obviousness" of the '685 Patent's inventions. Clearly, his selection of the Back Seat Driver paper at the IEEE VNIS conference because he thought it was "fresh" and "different" is a highly relevant topic for discovery and is clearly admissible, and within the scope of permissible discovery here. Fed. R. Civ. P. 26.

On September 29, 2006, immediately after his deposition and still during the period of expert discovery, MIT served on Harman's counsel, who had agreed to accept service on Mr.

French's behalf, a very narrowly tailored subpoena seeking "copies of all documents and things relating to the 1989 [IEEE VNIS] Conference, including but not limited to calls for papers, acceptance letters, internal reviews, and selection criteria." The subpoena sought production of these documents two weeks later, on October 13, 2006, or on such other date as agreed-to by the Parties. Service of the subpoena was accepted on Mr. French's behalf by Harman's counsel in this case, Kirkland & Ellis. See Ex. 1 attached hereto.

On October 12, 2006, Harman's counsel, on behalf of Mr. French, responded to the subpoena, stating that Mr. French would not produce any documents in response to the subpoena, because Harman's counsel believed that the subpoena was "overly broad," "not reasonably calculated to lead to the discovery of admissible evidence," and irrelevant to the merits of the case. Harman's counsel stated that Mr. French simply would not produce anything requested.

Of course, these objections are meritless. The subpoena is narrow, directed to a specific category of documents that go to the heart of Harman's witness's testimony, and frame the basis for all of his testimony about the '685 Patent. On October 16, 2006, at the request of MIT's counsel, a call was held with Kirkland & Ellis. On that call, Harman's counsel continued to refuse to produce any documents, standing by their objections. On October 23, 2006, Harman's counsel sent another letter on Mr. French's behalf, again standing on the objection that regardless of how relevant the documents in Mr. French's possession are, so long as Mr. French says that he "didn't rely on them" in preparing his expert report, MIT has no right to obtain them.

Of course, if Mr. French has in his possession historic fact-related documents that directly bear on his testimony, MIT has the right to see them. The fact that MIT did not learn about these documents until Mr. French's deposition cannot serve as defense to their production.

3

A narrowly-tailored Rule 45 subpoena seeking production of these documents is the appropriate discovery mechanism for MIT to obtain these documents from Mr. French. As one court specifically noted, "a subpoena *duces tecum* issued pursuant to Rule 45 *is* an appropriate discovery mechanism against nonparties such as a party's expert witness." Expeditors Int'l of Washington, Inc. v. Vastera, Inc., 2004 WL 406999, at *3 (N.D. Ill. Feb. 26, 2004) (attached for the Court's reference as Exhibit 2 hereto) (emphasis added). This is especially true here, as to documents an expert mentions during his deposition which relate directly to his testimony, whether or not he relied upon those specific documents in drafting his expert report in the case. See Quaile v. Carol Cable Co., Inc., 1992 WL 277981, at *2 (E.D. Pa. Oct. 5, 1992) (attached for the Court's reference as Exhibit 3 hereto) (granting motion to compel "requested documents on matters specifically mentioned in [retained expert's] deposition as being related to his opinion in the current case. … [where] defendant's requests are designed to elicit information specifically related to the testimony of Plaintiff's expert with respect to his expected testimony… .").

Harman's counsel attempts to confuse the issue, arguing that Mr. French does not need to produce factual documents in his possession because MIT's subpoena exceeds the automatic disclosure requirements of Fed. R. Civ. P. 26. The subpoena was served under Fed. R. Civ. P. 45, Harman's counsel accepted service, and the subpoena requests a small set of documents relevant to the case, and about which Mr. French testified during his deposition.[1]

---

[1] Notably, Harman's counsel used the exact same discovery mechanism after the deposition of MIT's expert Dr. Lynn Streeter, when Harman served a similar third-party subpoena for old historical documents she had mentioned in her deposition that she had in her possession, even though they were documents she had not considered in rendering her opinion. MIT's counsel, on behalf of Dr. Streeter, produced the documents sought by Harman's subpoena. Only after that production did Harman take the position that a subpoena such as it had issued to Dr. Streeter was in fact "invalid," and that MIT's counsel erred in providing the discovery beyond what Dr. Streeter had considered.

4

Harman's counsel have told MIT that they intend to rely on a series of inapposite cases for the proposition that a Rule 45 subpoena *duces tecum* is not an appropriate discovery mechanism to obtain factual relevant documents from a retained expert. As shown by the case law cited above, that is simply not the law – a Rule 45 subpoena is appropriate for the type of discovery MIT seeks herein. The Court in <u>Expeditors</u> expressly considered and distinguished the case Harman says it intends to cite as supporting its broad and incorrect proposition:

> At most, <u>Marsh</u> criticizes the service of subpoenas on experts to obtain information pertaining directly to the party [here, Harman], but it does not prohibit the use of a subpoena 'to uncover information about other cases' in which an expert has served.

<u>Expeditors</u>, 2004 WL 406999, at *3 (upholding use of the Rule 45 subpoena to obtain documents from other cases in which the retained expert had testified).

Here, MIT is not seeking information given to Mr. French by Harman by virtue of his expert retention in preparation for this litigation. Rather, MIT is seeking information in Mr. French's possession by virtue of his factual experience with the '685 Patent prior to his retention by Harman, gathered and kept by him outside of his role as an expert in this case, and which directly impact his expert testimony in this case as they frame his initial exposure to the '685 Patent back in 1989.

The Advisory Committee Notes to Rule 26 make quite clear that the expert discovery limitations of Rule 26 do not apply to discovery of this nature:

> It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness.

5

Fed. R. Civ. P. 26, Advisory Committee's Notes to 1970 amendments to Rule 26(b)(4). Indeed, this *must* be the law – otherwise, a party could insulate a fact witness from Rule 45 discovery merely by designating him an expert.

In their October 23, 2006 letter, Harman's counsel also raised for the first time a new objection (not timely raised in their October 12 letter) based on MIT's "fail[ure]…to confirm[] its agreement to pay Mr. French a reasonable fee to search for and produce these documents," citing Fed. R. Civ. P. 26(b)(4)(C) and referencing Mr. French's $400 hourly rate. These documents are fact related documents, sitting in Mr. French's basement. Mr. French merely needs to collect the documents he testified he has, and produce them. Harman has no right to demand that MIT pay Mr. French $400 per hour to search for these documents.

For the reasons above-stated, MIT hereby requests that this Court compel Mr. French, a purported expert expecting to render testimony within this jurisdiction and who has already submitted to the jurisdiction of this Court by signing the protective order which this Court is authorized to administer and by providing expert disclosures in this case, to produce the documents sought by MIT's subpoena.

**Compliance with Local Rule 7.1**

As discussed above, MIT's counsel discussed the matters raised herein with Mr. French's counsel, telephonically and through correspondence, attempting to resolve these disputes. As the disputes remain unresolved, MIT now seeks the Court's assistance.

October 25, 2006                                      Respectfully Submitted,

                                                      Massachusetts Institute of Technology,
                                                      By its Attorneys,

                                                      /s/ Steven M. Bauer
                                                      Steven M. Bauer (BBO# 542531)
                                                      Jacob K. Baron (BBO# 652568)
                                                      Kimberly A. Mottley (BBO# 651190)
                                                      John W. Pint (BBO# 660548)
                                                      PROSKAUER ROSE LLP
                                                      One International Place
                                                      Boston, Massachusetts 02110-2600
                                                      Phone:  617-526-9600
                                                      Fax:    617-526-9899


**CERTIFICATE OF SERVICE**

I certify that on October 25, 2006, I caused a copy of the forgoing document to be served upon counsel of record for Harman International Industries by electronic means using the Court's ECF system.

                                                        /s/ Steven M. Bauer
                                                        Steven M. Bauer

AO88 (Rev. 1/94) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

MIDDLE    DISTRICT OF    TENNESSEE

Massachusetts Institute of Technology

**SUBPOENA IN A CIVIL CASE**

v.

Case Number: 05-10990-DPW
District of Massachusetts

Harman International Industries, Inc.

TO:     Robert L. French
        6137 Tuliptree Lane
        Nashville, TN
        c/o Kirkland & Ellis, LLP

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):   See Schedule A (attached).

| PLACE   Proskauer Rose LLP, One International Place – 22nd Floor, Boston, MA 02110, or another mutually agreeable location | October 13, 2006, or as agreed by the Parties |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Kimberly A. Mottley* | 9/29/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Kimberly A. Mottley, Esq. (attorney for plaintiff), Proskauer Rose LLP, One International Place, Boston, MA 02110-2600

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

AO88 (Rev. 1/94) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | TIME |
| SERVED<br>By agreement of the Parties | 9/29/06 | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| Joanna Belle Gunderson, Kirkland & Ellis LLP on behalf of Robert French | | |
| SERVED BY (PRINT NAME) | | TITLE |
| Kimberly A. Mottley | | Attorney for Plaintiff MIT |
| DECLARATION OF SERVER | | |

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____                    _____
                             DATE                                          SIGNATURE OF SERVER

                                                                            _____
                                                                            ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## SCHEDULE A

## DEFINITIONS

1. The term "Back Seat Driver" shall mean any and all files referring or relating to Dr. Jim Davis' thesis work, the thesis itself, or U.S. Patent No. 5,177,685.

2. The term "1989 Conference" shall refer to the IEEE VNIS '89 conference held in Toronto, September 11-13, 1989, at which Mr. French served as Program Vice Chairman, and which Mr. French refers to in Footnote 1 to Mr. French's July 18, 2006 expert report.

3. The term "documents" shall mean any and all documents or things, in electronic or in paper form.

## DOCUMENTS REQUESTED

1. Copies of all documents and things relating to the 1989 Conference, including but not limited to calls for papers, acceptance letters, internal reviews, and selection criteria.

Westlaw

Not Reported in F.Supp.2d                                                                                    Page 1
Not Reported in F.Supp.2d, 2004 WL 406999 (N.D.Ill.)
**(Cite as: 2004 WL 406999 (N.D.Ill.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
EXPEDITORS INTERNATIONAL OF
WASHINGTON, INC., a Washington corporation,
and
Expeditors Tradewin, L.L.C., a Washington limited
liability company,
Plaintiffs,
v.
VASTERA, INC., a Delaware corporation, Vastera
Solution Services Corporation, a
Delaware corporation, and Jennifer Sharkey, an
individual, Defendants.
**No. 04 C 0321.**

Feb. 26, 2004.

Paul D. Cranley, Wildman, Harrold, Allen & Dixon, Chicago, IL, Ali Reza Sharifahmadian, Michael C. Augustini, Arnold & Porter, Washington, DC, for Defendants.

MEMORANDUM OPINION AND ORDER

ZAGEL, J.

Underlying Action Pending in United States District
Court for the Eastern
District of Michigan, Docket No. 01-71000.
(Borman, J.).

*Introduction*

**\*1** In March 2001, Expeditors International of Washington, Inc., *et al.* (collectively "Expeditors") filed a trade secret misappropriation action against Vastera, Inc. *et al.* (collectively "Vastera") in the United States District Court for the Eastern District of Michigan. Louis G. Dudney is Expeditors' designated expert on damages issues in the lawsuit. On May 2, 2003, Dudney signed a Federal Rule of Civil Procedure 26 report rending his opinion that Expeditors has "suffered" more than $20 million in damages as a result of Vastera's alleged misappropriation of trade secrets. To buttress his damages opinion against Vastera, Dudney touted his qualifications and professional experience in various types of litigation, including intellectual property litigation. As required by Rule 26(a)(2)(B), Dudney also provided Vastera with a listing of his recent trial and deposition testimony.

In light of Dudney's claimed intellectual property experience, Vastera promptly requested in a letter dated May 15, 2003, the production of Dudney's prior testimony and reports in trade secret and patent infringement litigations. When Dudney did not produce the requested materials, Vastera served him with a subpoena *duces tecum* on August 27, 2003. [FN1] In addition to several other requests not at issue here, the subpoena included the following two requests:

> FN1. As a designated expert, Dudney agreed to abide by the protective order entered by the Michigan Court in the underlying litigation, which by its terms covers responses to subpoenas *duces tecum*. Vastera's counsel advised Dudley that he could designate as confidential any materials he produced pursuant to Vastera's subpoena under the protective order. Moreover, Vastera's counsel made it clear that Vastera was not interested in using any confidential business information that might be contained in Dudney's prior reports and testimony, and that Vastera's counsel was willing to review redacted materials and then consider whether there was a need for further information from Dudney. For months, Dudney's counsel rejected Vastera's offers, asserting that "it was not feasible" to redact portions of the reports, and thus Dudney, as of November 2003, produced nothing in response to Requests No. 6 and 7. Shortly before Vastera filed the instant motion to enforce the subpoena, Dudney made an incomplete production of redacted *plaintiff* reports from selected prior matters.

6. All transcripts of the deposition testimony, trial testimony, and/or expert reports of Louis G. Dudney, in any matter involving allegations of trade secret misappropriation during the past ten years.
7. All transcripts of the deposition testimony, trial testimony, and/or expert reports of Louis G.

Not Reported in F.Supp.2d                                                                                         Page 2
Not Reported in F.Supp.2d, 2004 WL 406999 (N.D.Ill.)
**(Cite as: 2004 WL 406999 (N.D.Ill.))**

Dudney, in any matter involving allegations of patent infringement during the past five years.

The subpoena was issued by the United States District Court for the Northern District of Illinois, Eastern Division, and directed Dudney to produce the requested materials by September 15, 2003. [FN2] He made no production by that response date.

> FN2. Because Dudney is based in Chicago, the subpoena properly issued from this Court under the signature of Vastera's counsel. See Fed.R.Civ.P. 45(a)(2) & (3).

In the ensuing four months after the subpoena's issue, Vastera made a good faith effort, pursuant to Rule 37(a)(2)(B), to encourage Dudney to comply with the subpoena without a court order. After the deadline for objections as well as the deadline for production had passed, Vastera requested by letter dated September 18, 2003 that Dudney immediately comply with the subpoena. It was then suggested that Dudney would produce at least some responsive materials, but despite Vastera's additional follow up efforts, Dudney produced no prior reports or testimony.

On October 20, 2003, Dudney's counsel represented that Dudney might be willing to produce his prior expert reports and testimony without a motion to compel, and so the attorney requested an additional ten days for Dudney to contact the clients. Yet ten more days passed, and Vastera again received no response from either Dudney or his counsel.

On November 7, 2003, Vastera again inquired why Dudney had not produced his prior reports and testimony, as required by subpoena, and advised Dudney's counsel that further delays would not be acceptable. In response, Dudney again requested additional time, and Vastera agreed to give Dudney another week to comply with the subpoena. But another week came and went, and Dudney did not comply.

**\*2** Vastera followed up with another letter on November 20, 2003 advising that it would have no choice but to proceed with a motion to compel and for sanctions should Dudney refuse to provide concrete assurances that he would produce the requested materials. Dudney's counsel replied by email on the same day, confirming that Dudney had provided his prior reports and testimony to Expeditors' counsel prior to the September 15 response date of the subpoena and further representing that "[Expeditors' counsel] acknowledges that he did not make a timely production." Nonetheless, Dudney refused to produce the materials requested. Accordingly, Vastera filed the instant motion, pursuant to Rule 37 and Rule 45, to enforce the subpoena *duces tecum* against Dudney and to request that Dudney be ordered to pay all expenses associated with the motion should Vastera prevail.

*Motion to Enforce Subpoena* Duces Tecum

As noted above, Expeditors has sued Vastera for trade secret misappropriation, and based on the damages opinion proffered by Dudney, Expeditors claims more than $20 million in damages. To defend against these claims, Vastera is entitled to explore the purported factual and legal bases of Dudney's damages opinions as well as potential inconsistencies between the views he intends to express in the underlying case and the testimony and opinions he has given, and the damages theories and methodologies he had adopted, in his prior trade secret and patent cases. See Fed.R.Civ.P. 26(b)(1) (authorizing parties to obtain discovery regarding "any matter, not privileged, that is relevant to the claim or defense of any party"); Ortiz-Lopez v. Sociedad Espanola de Auxilio Muto y Benefiencia de P.R., 248 F.3d 29, 34-35 (1st Cir.2001) (holding that an expert's credibility and qualifications, including prior testimonial experience in cases involving similar claims, was "directly at issue" and affirming the preclusion of expert's testimony for failing to make a timely disclosure of the cases in which the expert previously had testified). Indeed, Rule 26(a)(2)(B) now requires that an expert report contain a complete listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years, and the Advisory Committee notes authorize the pursuit of an expert's prior testimony even beyond the four year period for which a listing is required. Advisory Comm. Notes for 1993 Amendments to Fed.R.Civ.P. 26(a). Accordingly, Vastera's requests for copies of the transcripts of Dudney's deposition testimony, trial testimony, and expert reports in trade secret during the past ten years and patent matters during the past five years are within the bounds of permissible discovery. See Western Res., Inc. v. Union Pac. R.R. Co., No. 00-2043-CM, 2002 WL 1822428, at \*3 (D.Kan. July 23, 2002) (ordering testifying expert to produce prior testimony from other litigations, administrative proceedings, and arbitrations that related to the subject matter or his opinions in the underlying action, as well as documents considered in forming those prior opinions); *Ladd Furniture, Inc.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                            Page 3
Not Reported in F.Supp.2d, 2004 WL 406999 (N.D.Ill.)
**(Cite as: 2004 WL 406999 (N.D.Ill.))**

*v. Ernst & Young,* No. 2:95CV00403, 1998 WL 1093901, at *10-11 (M.D.N.C. Aug.27, 1998) (compelling production of prior expert reports and prior deposition and trial testimony dating back six years).

**\*3** Regarding any opposition from Dudney, Vastera argues that Dudney waived all objections to the subpoena by failing to object within 14 days of service, and that he thus has no basis to refuse to produce the requested materials. In response, Dudney argues that the 14-day time limit in which to object does not apply to those objections that relate to information subject to a privilege or other prohibition on disclosure, citing *Vente v. Datronic Rental Corp.,* No. 92 C 3289, 1995 WL 42345, at *4 (N.D.Ill. Feb.2, 1995). This argument regarding waiver of objections may be irrelevant in light of the fact that a party cannot waive certain discovery protections. *See Ludwig v. Pilkington North America, Inc. .,* No. 03 C 1086, 2003 WL 22242224, at *3 (N.D.Ill. Sept.29, 2002). More importantly, this discussion is irrelevant because considering Dudney's objections on the merits, I find that they are not valid.

Dudney first argues that the motion should be denied because a document discovery regarding a party's testifying expert must proceed against that party under Rule 26 and the appropriate provisions of Rule 34, not through the use of a subpoena *duces tecum* directed to the expert under Rule 45. He points out that subpoenas issued under Rule 45 may not be used to circumvent the limitations on expert discovery set forth in Rule 26, citing *Marsh v. Jackson,* 141 F.R.D. 431, 432 (W.D.Va.1992). However, a subpoena *duces tecum* issued pursuant to Rule 45 is an appropriate discovery mechanism against nonparties such as a party's expert witness. Fed.R.Civ.P. 34(c) ("A person not a party to the action may be compelled to produce documents and things ... as provided in Rule 45"); *All W. Pet Supply Co. v. Hill's Pet Prods. Div.,* 152 F.R.D. 634, 639 (D.Kan.1993) ("With regard to nonparties such as plaintiff's expert witness, a request for documents may be made by subpoena *duces tecum* pursuant to Rule 45."); *Western Res.,* 2002 WL 1822428, at *3 (ordering expert to produce testimony pursuant to Rule 45 subpoena). Dudney's reliance on *Marsh* in support of the proposition regarding a blanket prohibition against serving document subpoenas on experts is misplaced. At most, *Marsh* criticizes the service of subpoenas on experts to obtain information pertaining directly to the party, but it does not prohibit the use of a subpoena "to uncover information about other cases" in which an expert has served. *Thomas v. Marina Assocs.,* 202 F.R.D. 433, 434 (E.D.Pa.2001) (denying motion to quash subpoenas directed to expert); *Quaile v. Carol Cable Co.,* Civ. A. No. 90-7415, 1992 W: 277981, at *2 (E.D.Pa. Oct. 5, 1992) (discussing *Marsh* and granting motion to compel discovery regarding expert's opinions pursuant to subpoena). Unlike the *Marsh* case, Vastera is not seeking to circumvent the normal discovery process by pursuing from Dudney information relating to Expeditors, the party in the underlying action. Rather, as in *Thomas,* Vastera is attempting to uncover information regarding Dudney's damages opinions in his prior trade secret and patent cases. Accordingly, Rule 26 does not prohibit the use of a subpoena in this situation.

**\*4** Dudney also argues that the motion should be denied because the subpoena was improperly issued during a stay of discovery in the underlying action in Michigan. However, I find no legal support for the argument that an expired stay in discovery requires the denial of a motion to compel compliance with a subpoena issued during the stay. *See In re Air Crash Disaster,* 130 F.R.D. 627, 630 (E.D.Mich.1989). In addition, even if there was a stay at some point, it is undisputed that there presently is no stay in the underlying action and thus no prohibition against Vastera seeking this discovery from Dudney at this time.

Dudney further argues that the propriety of the discovery requests should be decided by the Michigan Court. In *Kearney v. Jandernoa,* 172 F.R.D. 381 (N.D.Ill.1997), this Court faced a scenario that is nearly identical to the one presented here. However, as the Court in *Kearney* recognized, a motion dealing with a subpoena "must be filed and decided in the court from which the subpoena issued," so the approach in *Kearney*--namely deferring to the decision of the Michigan Court-- cannot be used here. *Id.* at 383 n. 4.

Finally, Dudney argues that the motion to compel should be denied because protective orders in his other engagements preclude him from complying with the subpoena. As a general rule, however, protective orders should not be used as shields to resist the production of relevant information even when the information is considered to be confidential. *See Jepson, Inc. v. Makita Elec. Works, Ltd.,* 30 F.3d 854, 859-60 (7th Cir.1994). There is a strong presumption that pretrial discovery must take place in public, and it is Dudney's burden to prove with specific evidence that his prior reports and testimony should be afforded some protection. *Id.,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                         Page 4
Not Reported in F.Supp.2d, 2004 WL 406999 (N.D.Ill.)
**(Cite as: 2004 WL 406999 (N.D.Ill.))**

see also Andrew Corp. v. Rossi, 180 F.R.D. 338, 341-42 (N.D.Ill.1998) (noting that protective orders are designed to encourage apprehensive litigants to produce responsive materials and should not be used as an excuse to avoid discovery). Dudney's conclusory and unsupported assertions are insufficient for me to exempt prior reports and testimony from discovery, but even if I find that some confidentiality protection is warranted, this cannot serve as a proper basis to deprive Vastera of this discovery. See Western Res., 2002 WL 1822428, at \*3 (rejecting expert's protective order argument and ordering expert to produce prior testimony).

In the end, I see no reason to deny the instant motion. Accordingly, Dudney is hereby ordered to produce without further delay all materials responsive to Requests Nos. 6 and 7 in Vastera's subpoena.

*Motion for Sanctions*

Rule 37(a)(4) "presumptively requires" every loser to pay the attorneys' fees and costs that the prevailing party incurred in connection with a motion to compel. Rickels v. City of South Bend, 33 F.3d 785, 786-87 (7th Cir.1994). In this case, by requiring a motion to compel in order to obtain materials that he should have produced voluntarily, Dudney engaged in sanctionable conduct under Rule 37(a)(4). *Illinois Tool Works, Inc. v. Metro Mark Prods., Ltd.,* 43 F.Supp.2d 951, 960 (N.D.Ill.1999). In addition to having no valid objection to complying with the subpoena, Dudney has failed to make timely objections to the requests, failed to timely seek a protective order if one was needed, ignored the response date of the subpoena, and still has not produced the materials requested. Accordingly, I find that it is entirely appropriate to order Dudney to reimburse Vastera for its fees and costs. *See Sparks Tune-Up Ctrs., Inc. v. Strong,* No. 92 C 5902, 1994 WL 87458, at \*3 (N.D.Ill. March 16, 1994) (granting motion for sanctions where party should have lodged objections or sought a protective order, but instead let deadlines pass). Vastera is instructed to submit a bill of costs detailing the fees and costs incurred in connection with this motion, to which Dudney will have an opportunity to respond.

**\*5** For the reasons above, Vastera's Motion to Enforce Subpoena *Duces Tecum* against Louis G. Dudney and for Sanctions is GRANTED.

Not Reported in F.Supp.2d, 2004 WL 406999 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 3710562 (Expert Report and Affidavit) Affidavit of Louis G. Dudney (Mar. 11, 2004)Original Image of this Document (PDF)

• 1:04cv00321 (Docket) (Jan. 16, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1992 WL 277981 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents
Quaile v. Carol Cable Co.E.D.Pa.,1992.Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
Richard H. QUAILE
v.
CAROL CABLE COMPANY, INC., et al.
**Civ. A. No. 90-7415.**

Oct. 5, 1992.

Sidney P. Rossi, Marvin I. Barish, Robert J. Meyers, Marvin I. Barish Law Offices, Philadelphia, Pa., for plaintiff.
Jeffrey S. Adler, Richard A. O'Halloran, Baldwin, Renner, Bragg & Adler, P.C., Philadelphia, Pa., for Carol Cable Co., Inc.
Jeffrey S. Adler, Richard A. O'Halloran, Baldwin, Renner, Bragg & Adler, P.C., Jerome E. Marks, Marks, Kent & O'Neill, P.C., Philadelphia, Pa., for Supermarkets General Corp.

MEMORANDUM AND ORDER
HUTTON, District Judge.
**\*1** Presently before the Court are motions relating to the discovery of documents and things in the possession of William M. Mazer, an expert witness expected to testify at trial on behalf of the plaintiff, Richard H. Quaile ("Quaile"). Plaintiff has moved both to quash a subpoena and for a protective order barring production of the requested documents. Defendants have cross-moved to compel the discovery.

FACTUAL BACKGROUND

The Plaintiff filed a complaint against the defendants alleging injuries to his hand and back as a result of an electric shock he sustained while using a drop light. Plaintiff purchased the light manufactured by defendant Carol Cable Company from defendant Supermarkets General Corporation.

Plaintiff procured Dr. William M. Mazer as a liability expert for the trial. On July 21, 1992, defendants deposed Dr. Mazer. At his deposition, Dr. Mazer produced his office file. During questioning, Dr. Mazer referred to other cases, some pending and some concluded, in which he was retained. The file which Dr. Mazer produced did not contain the information which he discussed during the deposition. Defendants requested the documents covering the information. Plaintiff objected.

On September 1, 1992, Dr. Mazer was served with a subpoena *duces tecum* requesting the production of the following items:
1) All materials concerning investigations of a shock and/or electrocution which occurred in the State of Florida concerning a Carol Cable Lamp.
2) All materials concerning any investigation into a shock and/or electrocution in Pittsburgh Pennsylvania arising out of an ITT manufactured portable lamp.
3) All materials concerning a portable x-ray machine with a ground or wire fault referred to in the deposition of July 21, 1992.
4) All materials concerning a Leviton electrical socket defect.
5) Copies of all written or videotaped depositions or testimony relating to electrical equipment, electrical components, electrical hazards, electrical shocks, or electrocutions.
6) All materials concerning investigations where a ground wire or grounding problem was identified in any electrical equipment.
7) All materials concerning electrical shocks to or the electrocution of users of electrical products or electrical component parts.
8) All publications and seminar materials identified in the curriculum vitae of William M. Mazer which relates to electricity, electrical equipment or electrical accident investigation.

The subpoena called for production of the documents and things on September 2, 1992.

Plaintiff asserts that the defendants' requests go beyond the proper scope of discovery. Plaintiff also argues that some of the materials are protected by the work product doctrine and attorney-client privilege. Defendants, citing portions of Dr. Mazer's deposition, contend that the requested documents are discoverable because Dr. Mazer based his opinion on the information.

ANALYSIS

**\*2** Under 45(c)(3)(A) of the Federal Rules of Civil

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1992 WL 277981 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

Procedure, the Court must quash or modify an issued subpoena if the subpoena:
(i) fails to allow reasonable time for compliance;

...

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

It is also recognized that a subpoena under Fed.R.Civ.P. 45, with respect to experts expected to be called at trial, is limited by Fed.R.Civ.P. 26. *Marsh v. Jackson,* 141 F.R.D. 431 (W.D.Va.1992). Accordingly, this Court in considering the validity of the subpoena *duces tecum,* must determine whether the document requests meet the limitations of Fed.R.Civ.P. 26 as well as Fed.R.Civ.P. 45.

Rule 26(b)(4) permits "discovery of facts known and opinions held by experts ... acquired or developed in anticipation of litigation or for trial." Fed.R.Civ.P. 26(b)(4). Discovery may be had by interrogatories under Rule 26(b)(4)(A) or "by other means subject to such restrictions as to scope ... as the court may deem appropriate." Fed.R.Civ.P. 26(b)(4)(A)(ii).

The scope of expert discovery has been described as being limited to "materials possessed by an expert and related to the case at hand." *In Re Air Crash Disaster At Stapleton Intern.,* 720 F.Supp. 1442, 1444 (D.Colo.1988). The Court in *Stapleton* explained:
"inquiry into the background and experience of an expert witness does not include the production of every deposition or trial transcript given by the expert in any litigation. [...] The focus of information to be gathered under the Rule, either for general understanding of an expert's position or for impeachment, is on the events giving rise to the litigation at hand and the opinions to be received in evidence during that litigation.

720 F.Supp. at 1444-1445. The Court held that a list of cases which would lead to discoverable opinions regarding other cases with similar or parallel facts were admissible. 720 F.Supp. at 1445.

Under the aforementioned analysis of the scope of expert discovery for an expert expected to testify at trial, this Court finds that the requested documents numbers 1-4 and 6-8 are discoverable.[FN1] Defendants have requested documents on matters specifically mentioned in Dr. Mazer's deposition as being related to his opinion in the current case. Further, in respect to possible cross-examination, defendants' requests are designed to elicit information specifically related to the testimony of Plaintiff's expert with respect to his expected testimony involving electrocution or electrical injury, which may provide impeachment evidence. Plaintiff's protestations that the document requests are "unfettered" and "overly broad" are without merit. The document requests numbers 1-4 and 6-8 in this case are not the all inclusive type which the *Stapleton* Court warned against.

However, this is not the case with request number 5. The scope of this request must be tailored. Request number 5 must be limited to situations where electric shock or electrocution resulted from a defect similar to the one in the case at bar.

**\*3** An appropriate Order follows.

ORDER

AND NOW, this 2nd day of October, 1992, upon consideration of Plaintiff Richard H. Quaile's Motion to Quash Subpoena and for a Protective Order Barring Production of Documents and Things from William M. Mazer, IT IS HEREBY ORDERED that Plaintiff's Motion is DENIED.

IT IS FURTHER ORDERED that Defendants' Cross-Motion to Compel Compliance with Subpoena is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that:

(1) William M. Mazer must respond to subpoena requests numbers 1-4 and 6-8;

(2) With respect to request number 5, William M. Mazer must only produce depositions or testimony which involve electrocution or electric shock resulting from an electrical failure similar to the grounding wire defect in the drop light which allegedly caused Plaintiff's injuries;

(3) William M. Mazer has ten (10) days from the date of this Order to respond to the subpoena; and

(4) Pursuant to Federal Rule of Civil Procedure 26(b)(4)(C)(i), Defendants shall pay William M. Mazer a reasonable fee for the time spent in the preparation and response to this Order.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 3
Not Reported in F.Supp., 1992 WL 277981 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

FN1. Plaintiff's arguments concerning the privileges of work product and attorney-client of parties in other matters are not persuasive. The information given to an expert on which the expert bases his opinion is an exception to the work product doctrine. *In Re Air Crash Disaster At Stapleton International,* 720 F.Supp. 1442, 1444; *Boring v. Keller,* 97 F.R.D. 404 (1983). Further, the plaintiff has the burden of showing the existence of the attorney-client privilege. *Heathman v. United States District Court for the District of California,* 503 F.2d 1032 (9th Cir.1974) *citing* 8 Wright & Miller, Federal Practice & Procedure: Civil, § 2016 at 126. Plaintiff's simple statement that the privilege exists does not satisfy this burden.

E.D.Pa.,1992.
Quaile v. Carol Cable Co.
Not Reported in F.Supp., 1992 WL 277981 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:90cv07415 (Docket) (Nov. 20, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 3
Not Reported in F.Supp., 1992 WL 277981 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

FN1. Plaintiff's arguments concerning the privileges of work product and attorney-client of parties in other matters are not persuasive. The information given to an expert on which the expert bases his opinion is an exception to the work product doctrine. *In Re Air Crash Disaster At Stapleton International,* 720 F.Supp. 1442, 1444; *Boring v. Keller,* 97 F.R.D. 404 (1983). Further, the plaintiff has the burden of showing the existence of the attorney-client privilege. *Heathman v. United States District Court for the District of California,* 503 F.2d 1032 (9th Cir.1974) *citing* 8 Wright & Miller, Federal Practice & Procedure: Civil, § 2016 at 126. Plaintiff's simple statement that the privilege exists does not satisfy this burden.

E.D.Pa.,1992.
Quaile v. Carol Cable Co.
Not Reported in F.Supp., 1992 WL 277981 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:90cv07415 (Docket) (Nov. 20, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.