UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY,<br><br>    Plaintiff,<br><br>v.<br><br>HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,<br><br>    Defendant. | Civil Action No. 05-10990-DPW<br><br>Magistrate Judge Judith Dein |

## MIT'S OPPOSITION
## TO DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Plaintiff, Massachusetts Institute of Technology ("MIT") hereby opposes Defendant Harman International Industries, Inc.'s ("Harman") Motion For Protective Order (D.I. 115).

The third-party subpoenas MIT served seek only three clearly identified documents -- expert reports, deposition transcripts and trial transcripts -- relating to prior testimony of Harman's damages expert in other cases. The subpoenas were timely served during the open period of expert discovery. Importantly, Harman has no standing to seek a protective order against third-party subpoenas, particularly where the third parties appear ready to cooperate.

Indeed, the point of Harman's motion appears clear -- its expert has taken extreme positions in his expert report, and Harman seems bent on preventing MIT from learning about his prior opinions on similar matters in other litigations. It appears that Harman's counsel has actively been contacting the subpoenaed parties, *even those who had no objection to the subpoena and were prepared to produce documents*, asking them not to comply with MIT's subpoenas. As a result, MIT now bears the expensive burden of negotiating with many law firms

around the country, explaining to them why the subpoenas were timely, and potentially needing to now file motions in a number of courts to compel compliance.

Not only should Harman's motion be denied, but Harman should be ordered to identify who it has contacted and to send a letter to each party citing this Court's denial of Harman's motion, explaining that the subpoenas were timely served and seek relevant information, and *soliciting* compliance with the subpoenas.

## I.  HARMAN HAS NO STANDING TO SEEK TO QUASH THESE THIRD PARTY SUBPOENAS.

Harman objects to MIT's subpoenas, claiming they were issued to "oppress, annoy and impose undue burden and expense on Harman and Dr. Vellturo," and that MIT's requests are overly broad and duplicative.

Notably, Harman has no legal standing to challenge as oppressive or burdensome MIT's subpoenas to a number of law firms, asking them to produce no more than three documents -- the expert report, deposition testimony and prior trial testimony (if any) of Harman's damages expert. *Donahoo v. Ohio Dept. of Youth Services*, 211 F.R.D. 303, 306 (N.D. Ohio 2002) ("The law is clear, absent a claim of privilege, a party has no standing to challenge a subpoena to a nonparty.  The party to whom the subpoena is directed is the only party with standing to oppose it.") (internal citations omitted).  "[A] party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *Nova Products, Inc. v. Kisma Video, Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004).  Harman has not alleged that MIT's subpoenas seek to invade Harman's privileged information, therefore, Harman's motion should be denied for lack of standing.

## II.  THE SUBPOENAS ARE NARROWLY TAILORED.

MIT's request is not overly broad and duplicative.  Harman argues as though MIT is blindly serving 19 subpoenas on everyone Harman's damages expert has ever worked with.  In fact, MIT issued the 19 subpoenas to law firms representing both plaintiff and defendant (and in one case a third party) involved in *nine* different cases in which Dr. Vellturo had served as an expert.[1]  MIT asked for no more than three carefully identified documents.  MIT's goal, from the outset, has been to minimize the effort for anyone to produce the documents -- MIT has made clear to anyone who has asked that it only seeks the relevant documents from one of the two law firms.  Further, to the extent there is confidential information, MIT is prepared to accept redacted copies in the first instance, before negotiating for additional information.

Nor is there any legitimate way Harman can argue that MIT's subpoenas were intended to oppress, annoy or impose undue burden and expense on Harman and Dr. Vellturo.  Indeed, quite the opposite is true -- if the subpoenas have cost Harman an hour of attorneys' time, it is only because Harman's counsel has been busy contacting the subpoenaed parties and asking them not to comply.

For example, in the case of the Alston & Bird firm, after MIT's counsel received a phone call stating that he had no objection to turning over public trial testimony, MIT's counsel received a letter stating that Alston & Bird had been contacted by Harman's counsel, who advised it of the motion for protective order, and that it would now wait until this Court decides Harman's motion.  (Ex. A).  Harman complains of unnecessary expense and burden, but it is because of Harman's efforts to disrupt the subpoenas that MIT will now have to contact the

---

[1] This procedure was followed in case a party on one side of a dispute did not keep the materials MIT seeks.  To the extent requested materials are obtained from one side in a litigation, MIT will withdraw its subpoena as to the other side.

subpoenaed parties informing each of the Court's decision on Harman's motion and possibly file motions to compel.

Harman also seems to argue that MIT's subpoenas are harassing, because MIT did not request the materials from Harman or Dr. Vellturo first. Yet, prior to Harman filing this motion, MIT informed Harman's counsel that MIT would withdraw any subpoena for any particular matter, to the extent Harman or Dr. Vellturo produce the information themselves. *Harman* simply refused to even discuss the issue, and notably, to date, has *never* offered to produce the information -- which is not surprising since it is MIT's understanding that Harman had no involvement in the nine cases for which MIT is subpoenaing materials. Thus, while Harman's motion *offers* to meet and confer about producing the materials, prior to filing its motion, Harman refused to make any representation that it is in possession of *any* of the materials MIT seeks, and to date it still has not offered to produce *any* of the materials MIT seeks. Indeed, in the case of one of the subpoenas, Kirkland & Ellis (Harman's counsel) was a subpoenaed party because it represented a third party in an unrelated litigation in which Dr. Vellturo prepared an expert report. The appropriate Kirkland & Ellis attorney (Robbie Robertson) contacted MIT's counsel and represented that Kirkland & Ellis did not possess the requested materials because the portion of the case in which it was involved was bifurcated, and did not involve Dr. Vellturo. MIT's counsel informed Kirkland & Ellis that, based on his representation, it seemed that no further action was needed.

Until Harman filed its motion and began calling the subpoenaed parties seeking non-compliance, MIT had been working cooperatively with the subpoenaed parties who called MIT to discuss the subpoenas. MIT had no intention of imposing heavy burdens on third parties or engaging in unnecessary motion practice. In all cases in which MIT's counsel had been in

discussions with the subpoenaed parties, MIT's counsel had expressed willingness to work cooperatively with them, repeating that MIT sought only one copy of the materials per case, so that if the parties to one case could agree that one of them would produce the requested information, the other party need not undertake any search or production. In one case, MIT's counsel is in discussions with another party about agreeing to permit that party to redact out certain sensitive financial information from a Vellturo expert report to ease client concerns about confidentiality of that information.

These subpoenas were narrowly tailored, seeking only signed expert reports (*not* drafts or attorney work-product) and transcripts of testimony. These materials may be used to impeach Dr. Vellturo if Harman chooses to call him at trial. The recipients of the subpoenas are legally sophisticated entities -- namely law firms with an understanding of the subpoena process -- who will not be overburdened by responding to a subpoena.

The subpoenas are not unnecessarily duplicative. MIT does not know which entities will have kept copies of Dr. Vellturo's expert reports and transcripts of testimony, so MIT subpoenaed both parties who would have had access to the materials and may have kept copies. As noted above, MIT's counsel has expressed to subpoenaed counsel that only one set of the requested materials per case is necessary. MIT will withdraw duplicative subpoenas when responsive materials are produced.

### III. THE SUBPOENAS WERE TIMELY SERVED.

Finally, Harman argues that the subpoenas were untimely, because *fact* discovery had closed. *Expert* discovery, however, remains open and is not scheduled to close until December 1, 2006 -- after the subpoenaed parties were to respond to the subpoenas.

The materials MIT seeks *are expert discovery*. They relate to prior testimony given by Harman's expert in other cases. MIT served the subpoenas only to gain information related to his opinions. Production of these materials at this time will not impose any prejudice on Harman.

## CONCLUSION

For the foregoing reasons, MIT respectfully requests that Harman's motion be denied and that Harman be ordered to disclose which of the subpoenaed parties it has contacted, when they were contacted, and by whom they were contacted, and that Harman should be ordered to send a letter to each of the contacted parties attaching this Court's order denying Harman's motion.

Moreover, because MIT is now likely to need to file motions to compel in various district courts around the country, MIT seeks an order that specifies that the subpoenas are timely served, seek relevant information, and narrow in scope.

November 28, 2006

Respectfully Submitted,

Massachusetts Institute of Technology,
By its Attorneys,

/s/ Steven M. Bauer
Steven M. Bauer (BBO# 542531)
Jacob K. Baron (BBO# 652568)
Kimberly A. Mottley (BBO# 651190)
John W. Pint (BBO# 660548)
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
Phone: 617-526-9600
Fax:   617-526-9899

**CERTIFICATE OF SERVICE**

    I certify that on November 28, 2006, I caused a copy of MIT'S Opposition To Defendant's Motion For A Protective Order to be served upon counsel of record for Harman International Industries by electronic means using the Court's ECF system.

                                                */s/ Steven M. Bauer*
                                                   Steven M. Bauer

This facsimile message and its contents are legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, copying or other use of this message and its contents is strictly prohibited. If you have received this telecopy in error, please notify us immediately by telephone and return the original message to us at the address shown below via the Postal Service. Thank You.

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
404-881-7000
Fax: 404-881-7777

## TELECOPY

PLEASE DELIVER AS SOON AS POSSIBLE

| Date: | |
|---|---|
| November 27, 2006 | |
| **Recipient:** | **Company:** |
| Steven M. Bauer, Esq. | Proskauer Rose LLP |
| **Fax Number:** | **Voice Number:** |
| 617-526-9899 | 617-526-9700 |
| **Sender:** | |
| David M. Maxwell, Esq. | |
| **Message:** | |

Number of Pages: (including cover page) 3

IF NOT RECEIVED PROPERLY, PLEASE NOTIFY US IMMEDIATELY AT 404-881-4244.

| USER CODE: | MAXWD | REQUESTED BY: | Valerie Dotson |
|---|---|---|---|
| CLIENT/MATTER: | 009990/030000 | OPERATOR: | |

LEGAL02/30170239v1

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax: 404-881-7777
www.alston.com

**David M. Maxwell**  Direct Dial: 404-881-7261  E-mail: david.maxwell@alston.com

November 27, 2006

*Via Facsimile and U.S. Mail*

Steven M. Bauer, Esq.
PROSKAUER ROSE LLP
One International Place
Boston, MA 02110

    Re:    Subpoena to Alston & Bird in Connection with the Matter
*Massachusetts Institute of Technology v. Harman International Industries,
Inc.*, Civil Action No.: 05-10990 DPW United States District Court for
the District of Massachusetts (the "Massachusetts Action")

Dear Steve:

    Alston & Bird is in receipt of your subpoena served in connection with the above-referenced matter. As we discussed on the phone on Wednesday, November 22, 2006, Alston & Bird is searching its files for responsive materials. I am aware that we are in possession of a trial transcript of the testimony given by Dr. Christopher Vellturo. It is also possible that we have a copy of his reports and a copy of his deposition transcripts.

    Alston & Bird has no objection to producing to you the transcript of the trial because that testimony was offered in open court not subject to any protective order. However, the reports authored by Dr. Vellturo and the transcripts of his deposition testimony are covered by a protective order entered in the matter in which Alston & Bird represented a client adverse to Dr. Vellturo's client: *Milliken & Co. v. Mohawk Industries, Inc., et al.*, Civil Action No. 7:02-1631-20 United States District Court for the District of South Carolina (the "South Carolina Action"). Accordingly, Alston & Bird objects to the production of any materials covered by the protective order in the South Carolina Action on the grounds that it is not in possession, custody or control of those materials within the meaning of Federal Rule of Civil Procedure 45 and/or that, in light of the protective order, the requirement for such production is oppressive and burdensome upon Alston & Bird and/or its clients. Notably, we already have been contacted by the

Steven M. Bauer, Esq.
November 27, 2006
Page 2

counsel for the plaintiff in the South Carolina Action who has indicated that the plaintiff believes the materials sought by your subpoena are covered by the protective order.

    I have spoken with Joanna Gunderson of the Kirkland & Ellis firm and she has informed me that a motion for protective order has been filed by her client in the above-referenced Massachusetts Action and that a hearing on that motion is scheduled for November 29, 2006. In light of the effort to secure a protective order, and the pendency of the hearing on November 29th – one day prior to the date on which Alston & Bird is required to produce materials pursuant to your subpoena – Alston & Bird will withhold any production until the Court in the Massachusetts Action has had an opportunity to rule on the motion for a protective order. To the extent the Court permits your subpoena to Alston & Bird to proceed, we ask that you notify us of such order and give us at least seven (7) days within which to respond to the subpoena after such notice. Thank you in advance for your professional courtesy in that regard.

                                      Very truly yours,

                                      David M. Maxwell

DMM:vd
cc:    Joanna B. Gunderson, Esq.
        Phillip A. Kilgore, Esq.
        Steven M. Collins, Esq.

LEGAL02/30168856v1