**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, <br><br>      Plaintiff, <br><br> v. <br><br> HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, <br><br>      Defendant. | Civil Action No.: 05-10990 DPW <br><br> Magistrate Judge Judith G. Dein |

**MIT'S REPLY TO HARMAN'S OPPOSITION TO MIT'S CROSS-MOTION
FOR PARTIAL SUMMARY JUDGMENT THAT CLAIMS 1, 42, AND 45 OF
THE '685 PATENT ARE NOT INVALID UNDER 35 U.S.C. § 102(b)**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT ...............................................................................................................1

      A.    Harman Ignores The Clear Law Of *Invitrogen* On The "Public Use" Issue ...........1

            1.    The Inventors' Control Over Both The Car And The Subjects'
                  Experience In The Car Ensured The Invention Was Not "Accessible
                  To The Public" During The Field Trials......................................................2

            2.    Harman Cannot Meet Its Burden Of Showing That The Field Trials
                  Constituted "Commercial Exploitation" Of The Invention .......................4

      B.    Harman's Argument That The Thesis Was A "Printed Publication" Before
            The Critical Date Is Based On Speculation Without Regard To The
            Undisputed Facts, And Harman Cannot Meet Its Burden At Trial ......................5

III.  CONCLUSION ............................................................................................................8

# TABLE OF AUTHORITIES

## CASES

*Am. Ceramicraft, Inc. v. Eisenbaum Reiss, Inc.*, Civ. No. 92-2851, 1993 WL 498863 (D.N.J. June 16, 1993) ............................................................................................................3

*Baxter Int'l, Inc. v. COBE Labs., Inc.*, 88 F.3d 1054 (Fed. Cir. 1996) ...........................................3

*Egbert v. Lippman*, 104 U.S. 333 (1881) .....................................................................................3

*Hall v. Macneale*, 107 U.S. 90 (1883) .........................................................................................3

*In re Cygnus Telecomms. Tech., LLC Patent Litig.*, 481 F. Supp. 2d 1029 (N.D. Cal. 2007) ........3

*In re Klopfenstein*, 380 F.3d 1345 (Fed. Cir. 2004) .................................................................6, 7

*In re Smith*, 714 F.2d 1127 (C.A. Fed. 1983) .............................................................................3

*Invitrogen Corp. v. Biocrest Mfg., Inc.*, 424 F.3d 1374 (Fed. Cir. 2005) .............................1, 2, 4

*MIT v. AB Fortia*, 774 F.2d 1104 (Fed. Cir. 1985) ......................................................................6

*Moleculon Research Corp. v. CBS, Inc.* 793 F.2d 1261 (Fed. Cir. 1986) .....................................5

*Taskett v. Dentlinger*, 344 F.3d 1337 (Fed. Cir. 2003) ...............................................................3

*Trading Techs., Int'l, Inc. v. eSpeed, Inc.*, Civ. No. 04-5312, 2007 WL 2410382 (N.D. Ill. Aug. 16, 2007) ............................................................................................................2

## STATUTES AND REGULATIONS

35 U.S.C. § 102(b) .....................................................................................................................1

## I.   <u>INTRODUCTION</u>

MIT submits this reply pursuant to the Court's August 9, 2007 Scheduling Order.  *See*

Docket No. 157.

## II.   <u>ARGUMENT</u>

Harman's Opposition to MIT's Cross-Motion continues to ignore the facts of this case

adverse to its position, instead grabbing sound bites from factually-distinguishable cases, and

simply restating -- with emphasis added -- the legal conclusions Harman must, but cannot, prove

by clear and convincing evidence.

### A.   <u>Harman Ignores The Clear Law Of *Invitrogen* On The "Public Use" Issue.</u>

Harman's Opposition argues that everything that occurred after the inventions were

"reduced to practice" is "irrelevant" to the issue of whether there was an invalidating "public

use."  Harman's position, however, is simply contrary to the controlling Federal Circuit case on

"public use."  *Invitrogen Corp. v. Biocrest Mfg., Inc.*, 424 F.3d 1374, 1379-80 (Fed. Cir. 2005).

According to Harman, all it needs to show is that the invention was "used in public."  It

then argues that once "use in public" is shown,  the burden shifts to MIT to prove that such

"uses" fall under an "experimental use exception" to 35 U.S.C. § 102(b).  Harman finally argues

that MIT, however, is barred from relying on this "exception" because the inventors reduced the

invention to practice before the critical date.

The problem with Harman's burden-shifting framework, however, is that it simply

ignores the *Invitrogen* case, whose holding could not have been clearer: "evidence of

experimental use may negate <u>*either*</u> the 'ready for patenting' or 'public use' prong" of the two-

part public use test under § 102(b).  *Invitrogen*, 424 F.3d at 1379-80 (emphasis added).  Harman

mischaracterizes *Invitrogen*, which did not "resurrect a totality of the circumstances test" for

public use, but instead set forth the factors a court should consider in determining whether the "public use" prong of the test is met:

> [T]he test for the public use prong includes the consideration of evidence relevant to experimentation, as well as, *inter alia*, the nature of the activity that occurred in public; public access to the use; confidentiality obligations imposed on members of the public who observed the use; and commercial exploitation…That evidence is relevant to discern whether the use was a public use that could raise a bar to patentability, *but it is distinct from evidence relevant to the ready for patenting component*.

*Invitrogen*, 424 F.3d at 1380 (emphasis added); *see also Trading Techs., Int'l, Inc. v. eSpeed, Inc.*, Civ. No. 04-5312, 2007 WL 2410382, at *6 (N.D. Ill. Aug. 16, 2007) (citing *Invitrogen* and also "whether progress records…were kept; whether persons other than the inventor…conducted the experiments…the scale of the tests compared with commercial conditions; the length of the test period…" for determining whether a use is public).

### 1.    The Inventors' Control Over Both The Car And The Subjects' Experience In The Car Ensured The Invention Was Not "Accessible To The Public" During The Field Trials.

The MIT inventors protected the Back Seat Driver invention from becoming "publicly accessible" during the field trials because: (1) the inventors always rode in the car; (2) the driver's access was limited to the bare minimum required to test the communications links and spoken directions (six of the components of the invention were at the Media Lab); (3) the car was kept in a private MIT garage with card access and never driven without the inventors' permission; (4) drafts of Davis' thesis and the source code were kept under lock and key at MIT; and (5) the field trials did not in fact commercially exploit the invention, nor were the field trials for the purposes of commercial exploitation.  The precautions MIT took during the field trials ensured that anyone aware of the field trials only had access to the bare minimum information about the Back Seat Driver prototypes.

Even the cases Harman cites in its latest brief do not support Harman's argument that public accessibility of components of the invention is immaterial to the public use issue.  *See Hall v. Macneale*, 107 U.S. 90 (1883) (invention was sold to a third party more than two years before the filing date); *Egbert v. Lippman*, 104 U.S. 333 (1881) (invention was given away as a gift before the critical date); *Taskett v. Dentlinger*, 344 F.3d 1337, 1340 (Fed. Cir. 2003) (addressing "reduction to practice," not "public accessibility" or "commercial exploitation"); *Baxter International, Inc. v. COBE Labs., Inc.*, 88 F.3d 1054, 1059 (Fed. Cir. 1996) (patentee was not entitled to benefit of secrecy of third party prior inventors' laboratory); *In re Smith*, 714 F.2d 1127, 1135 (Fed. Cir. 1983) (involving *market* research during which housewives were given samples of the invention, and some samples were not returned); *In re Cygnus Telecomms. Tech., LLC Patent Litig.*, 481 F. Supp. 2d 1029, 1049-50 (N.D. Cal. 2007) (addressing the "on-sale" bar of § 102(b) and "public use" not an issue); *Am. Ceramicraft, Inc. v. Eisenbaum Reiss, Inc.*, Civ. No. 92-2851, 1993 WL 498863, at *14 n. 14 (D.N.J. June 16, 1993) (case not cited by any other court, holding a public use occurs only where "any non-secret use of a completed and operative invention…[is] open to the public or where any member of the public can see it if such a member so desires").

While Harman conclusorily states that "MIT freely and widely disseminated information about the Back Seat Driver," Harman has not shown and cannot show that the drivers in the field trials knew anything about the workings of the invention.  The MIT papers that Harman points to discuss the "Back Seat Driver" as a "prototype," and the prototypes evolved over several versions.  Harman has no evidence to show that the *invention* was *publicly* accessible during the field trials.   All that was "public" was that there was a car -- not specially identified -- driving around on the public streets.  *That*, however, is not "public use" of an invention.

3

The fact that the field trials of the Back Seat Driver prototypes were conducted to assess the durability of the Back Seat Driver system, including the quality of spoken instructions and generated discourse and the functional connections between the in-car components and off-site components, is really incontrovertible. The record is replete with evidence that the tests were for (1) measuring and recording the length of cellular telephone calls between the car and Media Lab before calls dropped; (2) changing the type of modem in the car; (3) observing, on every field trial, driver reaction to spoken instructions; (4) incorporating an on-board location system in the vehicle; and (5) ensuring that the prototype navigation system could reliably provide directions along the entirety of the route, *i.e.*, an outdoor environment. The invention did not durably work outdoors until the communications problems were solved, *i.e.*, after the computer was moved on-board the vehicle, after Jim Davis signed his thesis, and thus *after* the critical date.

MIT has demonstrated that the invention was neither accessible to the public nor commercially exploited. Based on the undisputed and relevant facts, Harman will not be able to prove by clear and convincing evidence at trial that claims 1, 42, and 45 are invalid under § 102(b) based on the field trials, and summary judgment for MIT is appropriate.

> ### 2.    Harman Cannot Meet Its Burden Of Showing That The Field Trials Constituted "Commercial Exploitation" Of The Invention.

Harman must show the field trials "commercially exploited" the invention to satisfy the first prong of the *Invitrogen* test and thereby invalidate the '685 patent under § 102(b). 424 F.3d at 1380. Harman cannot, however, show that the field trials rendered the invention of claims 1, 42, and 45 "accessible to the public." In fact, the evidence points to the opposite conclusion – that the inventors did not commercially exploit the invention with the field trials.

Harman argues that internal MIT correspondence that refers to NEC, the project's research sponsor, as a "customer" demonstrates MIT was trying to commercially exploit the

Back Seat Driver invention.  Docket No. 164 at 11.  Of course, an inventor funded by sponsored research is permitted to discuss the research with the sponsor, and Harman can cite to no law supporting a finding that side discussions render a subsequent patent invalid.  In fact, "[d]iscussion between employer and employee does not by itself convert an employee's private pursuit into commercial enterprise with the employer."  *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1267 (Fed. Cir. 1986) (noting similarly that in the context of the "on-sale" bar of § 102(b), "an assignment or sale of the rights in the invention and potential patent rights is not a sale of 'the invention' within the meaning of section 102(b)").

As a second basis for commercial exploitation, Harman says "MIT admits…GM employees participated in some of the public uses."  Docket No. 164 at 11.  However, Harman has failed to demonstrate *when* GM personnel drove the Back Seat Driver automobile.  In fact, as MIT's brief pointed out, the facts support an inference that GM personnel drove the car only *after* Jim Davis signed his thesis, and therefore, *after* the critical date.  Docket No. 159 at 8-9; Docket No. 160 at 12 (MIT's SOF 58-60).

As a result, Harman cannot prove by any evidence, let alone clear and convincing evidence, that the field trials constituted "commercial exploitation" of the invention within the first prong of *Invitrogen*.  This, coupled with Harman's failure to show "public accessibility" of the invention, entitles MIT to summary judgment under § 102(b).

**B.**  **Harman's Argument That The Thesis Was A "Printed Publication" Before The Critical Date Is Based On Speculation Without Regard To The Undisputed Facts, And Harman Cannot Meet Its Burden At Trial.**

MIT also cross-moved for summary judgment that Jim Davis' Ph.D. thesis is not an invalidating "printed publication" under § 102(b).  For Harman to prevail at trial, it must show

that Davis' thesis satisfies the requirements of a printed publication before the critical date by clear and convincing evidence to overcome the statutory presumption of validity.  Because Harman is unable to do so, summary judgment for MIT is appropriate.

Harman's opposition says, "If the Davis thesis is § 102 art…then the entire '685 patent is invalid…because MIT never challenged the Examiner's determination, that the Davis thesis disclosed each limitation of each claim."  Docket No. 164 at 15.  *Harman's assertion misses the mark by a wide margin* – MIT was not required to address the *substance* of the Examiner's rejection because *procedurally* Davis' thesis was not a "printed publication" -- it was not available to the public before the critical date.  MIT informed the Patent Office of this fact in response to the Examiner's initial rejection.  Having fully addressed the rejection by pointing out that the thesis was not prior art, MIT was not required to go further to rebut the Examiner's rejection.

To support its position, Harman relies on two factually distinguishable cases.  In the first, *MIT v. AB Fortia*, the Federal Circuit found a paper that was orally presented to the International Cell Culture Congress, with 50-500 attendees, was a printed publication because copies of the paper were distributed after the conference but *before the critical date* without restriction.  774 F.2d 1104, 1108-09 (Fed. Cir. 1985).  Importantly, the 50-500 conference attendees "were actually told of the existence of the paper and informed of its contents by…oral presentation, and the document itself was actually disseminated without restriction."  *Id.* at 1109.

Harman also points to *In re Klopfenstein*, in which the Federal Circuit found a slide show to be a "printed publication" where the slide show was publicly posted for a total of three days at two different conferences, the contents of the slides were easily copied, and the general subject

matter of the slides was well-known in the art.   380 F.3d 1345, 1347 (Fed. Cir. 2004). *Klopfenstein* also involved dissemination of the publication *before the critical date*.

In arguing against MIT's motion, Harman conveniently overlooks its problem that it lacks *any* evidence, let alone clear and convincing proof, that Jim Davis' thesis was disseminated before the critical date to anyone.   In fact, MIT has demonstrated, point-by-point, that each "fact" Harman intends to rely upon at trial supports *MIT's* cross-motion for no invalidity:

(1)    Harman argues that Jim Davis defended his thesis before the critical date, and Davis distributed copies of his thesis at his defense before the critical date, even though *there is no evidence that the defense took place before the critical date*.   All Harman points to to create a "question of fact" here is an unauthenticated, draft document that even the producer of the document refuses to testify about to show when the thesis defense took place.   There is no question that this document does not prove, or even tend to prove, anything, particularly in view of the unquestioned facts that show that the thesis defense did *not* occur at the time or date on the draft document;

(2)    Harman argues that Davis' research sponsor's representative, Phil Rittmueller of NEC, might have received Davis' thesis before the critical date, but the *only* evidence on this is that Mr. Rittmueller testified, under oath, that he got Davis' thesis *after* the thesis was published in the MIT library;

(3)    Harman argues that Lynn Streeter, a colleague of Davis' thesis committee member Mike Lesk, might have received Davis' thesis before the critical date, but the only evidence is that *Streeter* testified that she received a copy of the thesis some time after Davis' thesis defense and the thesis was published (thus, after the critical date);

7

(4)    Harman argues that Jim Davis might have sent a draft of his thesis to a University of Minnesota graduate student, solely because she said in an e-mail she could "wait a couple of weeks" to see Davis' thesis; and

(5)    Harman argues that Davis might have handed out his thesis, simply because Schmandt's testified that Davis "could" print a copy of thesis drafts -- without saying that Davis ever did so.

The undisputed facts leave no other conclusion -- Harman cannot carry its burden at trial that Jim Davis' thesis was "publicly accessible," "disseminated," indexed, catalogued, or otherwise available before the critical date.  Therefore, Harman cannot prove by clear and convincing evidence that the thesis invalidates the '685 patent under § 102(b), and summary judgment for MIT is warranted.

**IV.    CONCLUSION**

For the reasons set forth above and in MIT's moving brief, MIT respectfully requests that the Court grant MIT's cross-motion for summary judgment that claims 1, 42, and 45 of the '685 patent are not invalid under § 102(b).


October 5, 2007                                  Respectfully Submitted,
                                                 Massachusetts Institute of Technology,
                                                 By its Attorneys,

                                                 */s/ Steven M. Bauer*
                                                 Steven M. Bauer (BBO# 542531)
                                                 Jacob K. Baron (BBO# 652568)
                                                 Kimberly A. Mottley (BBO# 651190)
                                                 John W. Pint (BBO# 660548)
                                                 PROSKAUER ROSE LLP
                                                 One International Place
                                                 Boston, Massachusetts 02110-2600
                                                 Phone:  617-526-9600
                                                 Fax:    617-526-9899

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on October 5, 2007, I caused a copy of the forgoing document to be served upon counsel of record for Harman International Industries by the Court's ECF system.

<u>*/s/ Steven M. Bauer*</u>
Steven M. Bauer