**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY | ) ) ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | Civil Action No. 05-10990-DPW |
| HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED, | ) ) ) | |
| Defendant. | ) ) | |

**HARMAN'S RESPONSE TO MIT'S OBJECTIONS**
**TO THE REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR**
**SUMMARY JUDGMENT AS TO INVALIDITY**

## TABLE OF CONTENTS

I.   THE UNDISPUTED FACTS DEMONSTRATE INVALIDATING PUBLIC USE
     UNDER THE LAW ................................................................................................. 3

     A.   Both Public Accessibility and a Lack of Confidentiality Obligations
          Weigh In Favor of Invalidating Public Use .............................................. 4

     B.   The Nature of the 50 Public Uses Weighs In Favor Of Invalidating Public
          Use.............................................................................................................. 6

     C.   Federal Circuit Law Dictates That MIT's Admission of Reduction to
          Practice Ends Experimentation. ................................................................ 7

II.  *MOLECULON* AND *TP LABS.,* TWO FACTUALLY DISTINCT PRE-*PFAFF*
     CASES, COMPORT WITH AN INVALIDITY RULING ................................. 8

III. PUBLIC POLICY FURTHER SUPPORTS AN INVALIDITY RULING ........................ 9

IV.  CONCLUSION .................................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**

*American Ceramicraft, Inc. v. Eisenbraun Reiss Inc.*,
    Case No. 92-2851, 1993 WL 498863 (D.N.J. June 16, 1993) ............................................ 7

*Atlanta Attachment Co. v. Leggett & Platt, Inc.*,
    516 F.3d 1361 (Fed. Cir. 2008) ..................................................................................... 8

*Baxter Int'l., Inc. v. COBE Labs., Inc.*,
    88 F.3d 1054 (Fed. Cir. 1996) ....................................................................................... 3

*Beachcombers v. WildeWood Creative Prods., Inc.*,
    31 F.3d 1154 (Fed. Cir. 1994) ................................................................................... 1, 9

*Egbert v. Lippman*,
    104 U.S. 333 (1881) ...................................................................................................... 7

*Hall v. Macneale*,
    107 U.S. 90 (1883) ........................................................................................................ 7

*In re Cygnus Telecommunications Tech., LLC Patent Litigation*,
    481 F. Supp. 2d 1029 (N.D. Cal. 2007) ........................................................................ 8

*In re Epstein*,
    32 F.3d 1559 (Fed. Cir. 1994) ....................................................................................... 7

*Invitrogen Corp. v. Biocrest Mfg. L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005) ..................................................................................... 4

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005) ..................................................................................... 8

*Lough v. Brunswick Corp.*,
    86 F.3d 1113 (Fed. Cir. 1996) ....................................................................................... 7

*Moleculon Research Corp. v. CBS, Inc.*,
    793 F.2d 1261 (Fed. Cir. 1986) ................................................................................. 5, 9

*Netscape Communications Corp. v. Konrad*,
    295 F.3d 1315 (Fed. Cir. 2002) .......................................................................... 1, 2, 6, 9

*New Railhead Mfg., LLC v. Vermeer Mfg. Co.*,
    298 F.3d 1290 (Fed. Cir. 2002) ............................................................................ 2, 7, 8

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998) ........................................................................................................ 7

*TP Labs., Inc. v. Prof. Positioners, Inc.*,
    724 F.2d 965 (Fed. Cir. 1984) ........................................................................ 5, 9

**Statutes**

35 U.S.C. § 102(b) ............................................................................... 1, 3, 6, 7

In the March 26, 2008 Report And Recommendation On Cross-Motions For Summary Judgment As To Invalidity ("R&R"), Judge Dein recommends that this Court grant Harman's Motion for Summary Judgment That Claims 1, 42 and 45 Of The '685 Patent Are Invalid Under 35 U.S.C. § 102(b) Due To Public Use "because it is undisputed 'that *after* MIT reduced to practice claims 1, 42, and 45 of the patent-in-suit and *before* the critical date, 50 members of the public, including General Motors ("GM") employees, used the Back Seat Driver for its intended purpose on the public streets of Boston, without any confidentiality obligation.'" R&R at 30 (quoting same "This court agrees."). The undisputed facts Judge Dein cited, which MIT admits are "generally fair and uncontroversial" and the relevant Federal Circuit law compel that conclusion. *See* MIT's Objection to Magistrate Judge's March 26, 2008 Report and Recommendation ("Objection") at 1; *see also Beachcombers v. WildeWood Creative Prods., Inc.,* 31 F.3d 1154, 1159-60 (Fed. Cir. 1994); *Netscape Commc'ns. Corp. v. Konrad*, 295 F.3d 1315, 1321-22 (Fed. Cir. 2002).

MIT's Objection does not compel a different result. The way that MIT strains to find fault with Judge Dein's opinion only serves to confirm this. For example, MIT labels the 50 members of the public who drove the Back Seat Driver "test subjects (mostly undergraduate students)" even though "MIT has not been able to identify the drivers with any specificity." Objection at 1, R&R at 14; *see also* Recording of November 16, 2007 Hearing on Motion for Summary Judgment ("Hearing") at 49:10-17[1] (Counsel for MIT stating "Of the 50, we don't have the details of who the exact 50 are, so whether there was a friend in there or not -- that's not in the record your honor...").

---

[1]   A transcript of the November 16, 2007 hearing is not yet available, despite Harman's best efforts to obtain it. *See* Affidavit of Colleen M. Garlington, Esq. (attached hereto). Harman has cited to the audio recording of the hearing provided by the Court referring to citations by minute:second. Harman will file an amended version of this Response with citations to the official transcript after the transcript is available.

More troublesome is MIT's disregard of its own admissions, upon which Judge Dein relied, regarding reduction to practice. First, "MIT has unequivocally admitted that claim 1 was reduced to practice by the prototype used in the field trials, and the undisputed facts further establish that the dependent claims 42 and 45 were reduced to practice by that prototype as well." R&R at 2. MIT confirmed this during oral argument. *See* Hearing at 39:53 (Counsel for MIT stating "…it's reduced to practice.") Second, it remains undisputed that "the asserted claims of the patent at issue in this case were reduced to practice by June 1989, and were incorporated in the prototype used during the field trials which took place prior to the critical date." R&R at 9, 13.

Most telling, however, is MIT's demonstrably wrong argument that the R&R was based solely on one fact, namely "the lack of a written confidentiality agreement with the test subjects." Objection at 1. Here, MIT mischaracterizes what it calls "the Magistrate Judge's key mistake," claiming "she found that the fact that MIT's inventor used test drivers who had no *legal* obligation to keep their test experience secret" dispositive. Objection at 2 (emphasis in original). She did not. Judge Dein reached a legal conclusion based on the undisputed facts: "most, if not all, of the participants in the field trials were under no *express or implied duty* to keep the information confidential and that the field trials involved the use of the claimed invention 'by a person other than the inventor who [was] under no limitation, restriction or obligation of secrecy to the inventor' more than one year prior to MIT's application." R&R at 2-3 (emphasis added); *see also New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297 (Fed. Cir. 2002) ("The statutory phrase 'public use'… includes any use of the claimed invention by a person other than the inventor who is under no limitation, restriction, or obligation of secrecy to the inventor."); *accord Netscape*, 295 F.3d at 1320.

2

Each of MIT's "three reasons" is flawed, as explained in detail below. MIT does not dispute any material fact upon which Judge Dein relied, and thus there is no genuine issue of material fact for trial. Nor has MIT demonstrated that Judge Dein misapplied the law. Neither the two pre-*Pfaff* cases MIT reargues nor the policies underlying the public use bar necessitate a different result. In short, Federal Circuit law and the undisputed record evidence support the R&R. Harman, therefore, respectfully requests that this Court adopt Judge Dein's recommendation and grant Harman's Motion for Summary Judgment That Claims 1, 42 and 45 Of The '685 Patent Are Invalid Under 35 U.S.C. §102 (b) Due To Public Use.

## I.    THE UNDISPUTED FACTS DEMONSTRATE INVALIDATING PUBLIC USE UNDER THE LAW

MIT objects that Judge Dein misapplied the law, claiming she found the lack of written confidentiality agreements to be dispositive and thus failed to consider other relevant factors. This objection is meritless.

Judge Dein expressly found the nature of the activity factor weighed in favor of invalidating public use based on the undisputed fact that the 50 members of the public who used the Back Seat Driver used it "as it was intended." *See* R&R at 34. She also expressly found that the experimentation factor weighed in favor of invalidating public use given MIT's reduction to practice admissions. *See* R&R at 2, 8-14, 31-33. Her invalidity recommendation is further supported by two additional factors. *See e.g. Baxter Int'l., Inc. v. COBE Labs., Inc.*, 88 F.3d 1054, 1059 (Fed. Cir. 1996) (lack of confidentiality and public accessibility "supports only one conclusion: that the [invention] was in public use."); *Netscape*, 295 F.3d at 1321 (lack of a confidentiality agreement and potential for public to share information supports invalidating public use); *Beachcombers*, 31 F.3d at 1159-60 (failure to control dissemination of information or impose any secrecy or confidentiality restrictions supports invalidating public use). Thus, not

3

only did Judge Dein consider the factors that MIT claims she did not, she found those factors favored granting Harman's Motion for Summary Judgment.

A.    **Both Public Accessibility and a Lack of Confidentiality Obligations Weigh In Favor of Invalidating Public Use**

Judge Dein considered "public access to the use" and "confidentiality obligations imposed on members of the public" and found both factors favored an invalidating public use ruling. R&R at 34 (citing *Invitrogen Corp. v. Biocrest Mfg. L.P.*, 424 F.3d 1374, 1380 (Fed. Cir. 2005); 36-39. In particular, she found that "Harman has met its burden of proving by clear and convincing evidence that the Back Seat Driver was *accessible to the public* with *no limitation, restriction or obligation of secrecy* to the inventor." R&R at 30 (emphasis added).

In assessing confidentiality, Judge Dein did not, as MIT asserts, simply find the lack of written confidentiality agreements determinative. She looked to "the relationships between the parties and other surrounding circumstances to determine if the inventor had a legitimate 'expectation of privacy and confidentiality.'" R&R at 37. She cited many undisputed facts that clearly and convincingly demonstrate there was nothing confidential about the 50 pre-critical date uses of the Back Seat Driver, including:

- "[a]mong those who participated in the field trials were MIT students, members of Davis' thesis committee, NEC employees, a Bellcore employee and General Motors personnel." R&R at 14, citing DF ¶ 7[2]; PR ¶ 7.

- none of the drivers signed a written confidentiality agreement. R&R at 14, *see also* Hearing at 32:44-47 ("...there was no written confidentiality agreement, we don't take issue with that.")

- none of the drivers were, in any way, prohibited from disclosing what they had seen or been doing. R&R at 37-39; Hearing at 47:33-34 (counsel for MIT agreeing there was "no legal obligation").

And, she considered the paucity of contrary evidence:

---

[2]    Harman adopts herein the designations set forth in the R&R at p. 4, n. 2.

> MIT has not countered this evidence with anything more than a hope that students or other drivers would keep the workings of the Back Seat Driver confidential. Such a hope seems particularly unfounded given the openness with which the inventors themselves discussed their prototype at conferences and in articles.[3]

R&R at 39.

Given the undisputed evidence, Judge Dein correctly rejected MIT's claim of implied confidentiality, instead finding "[i]n the instant case, there is insufficient evidence to establish that such implied [confidentiality] obligations existed." R&R at 37; *see also* Dkt. 164, discussion at Section IIB. She further found that "[t]he record...leaves numerous field trials unencumbered by any confidentiality obligation" and "Harman has established that, to the extent there was a philosophy at MIT, it was not one of secrecy, but of openness and disclosure." R&R at 38.

Similarly robust is the record supporting "public accessibility." Yet, MIT objects to Judge Dein's legal conclusion that "the undisputed facts support Harman's contention that MIT took no steps to limit the dissemination of information gathered during the field trials", presumably because that conclusion proves fatal to MIT's reliance on *Moleculon* and *TP Labs*. R&R at 14; *see also* Objection at 12-14 (citing *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986) and *TP Labs., Inc. v. Prof. Positioners, Inc.*, 724 F.2d 965 (Fed. Cir. 1984); *see also* discussion *infra* Section II. Tellingly, MIT does not dispute a single fact upon which Judge Dein relied in reaching that conclusion:

- "MIT has not been able to identify the drivers with any specificity." R&R at 14.

- "The record, however, leaves numerous field trials unencumbered by any confidentiality obligation." R&R at 38.

---

[3]  MIT now argues that the references discussed in the R&R "not authored by the inventors" "are merely cumulative of the information already before the Patent Office." Objection at 7, n.4. This is irrelevant and wrong. For example, MIT did not inform the Patent Office that the inventors had provided interview comments and diagrams of the prototype for disclosure in industry press, *e.g.* the system description and block diagram published in <u>Automotive Electronic News</u> before the critical date. *See* R&R at 21, Def. Ex. 29. Nor did MIT disclose the quarterly reports it sent to NEC. *See* R&R at 22, DF ¶49; PR ¶49.

- "[T]o the extent there was a philosophy at MIT, it was not one of secrecy, but of openness and disclosure." R&R at 38; Def. Ex. 24 (MIT's general written policy entitled "Open Research and Free Exchange of Information").

- "[T]he Media Lab's policies seem to reflect a reluctance to keep information confidential during the ordinary course of operations at the Lab." R&R at 38-39.

- "Davis and Schmandt ... presented and made available without restriction to attendees at the International Conference on Consumer Electronics [a document in which they] described various aspects of the research prototype. R&R at 20-21; Def. Ex. 6.

- "A similar description of the Back Seat Driver prototype, as well as a block diagram of the system, was included in a newspaper article published in <u>Automotive Electronic News</u>." R&R at 21; Def. Ex. 29.

- "MIT also provided information regarding the Back Seat Driver project to its corporate sponsor, NEC." R&R at 22.

- "MIT also provided information about the Back Seat Driver research to employees at Bellcore, a corporate sponsor of the Media Lab. ... Dr. Streeter testified that these reports were in the 'public domain.'" R&R at 22.

*See also* discussion *infra* at Section III. At bottom, the only legal conclusion from these undisputed facts is that there was "no limitation, restriction or obligation of secrecy to the inventor." *Netscape*, 295 F.3d at 1320.

**B.     The Nature of the 50 Public Uses Weighs In Favor Of Invalidating Public Use.**

MIT admits that more than 50 "person[s] other than the inventor" used the invention and that some of them did so in July, 1989, which is after reduction to practice and before the critical date. *See* Pl. Ex. 14; R&R at 6; *Netscape*, 295 F.3d at 1320-21 ("Public use includes any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor."). As a matter of law, any one of those 50 actual uses is sufficient to invalidate the patent under § 102(b). Judge Dein properly reached this inevitable legal conclusion: "As long as an individual other than the inventor uses the invention *in its natural and intended way* without efforts to conceal its operation, the invention may be in 'public

use' within the meaning of U.S.C. §102(b)." R&R at 35 (emphasis added); *see also New Railhead*, 298 F.3d at 1297 (citing *Lough v. Brunswick Corp.*, 86 F.3d 1113, 1119 (Fed. Cir. 1996) (public use does not require use that is open and visible)); *In re Epstein*, 32 F.3d 1559, 1568 (Fed. Cir. 1994) (public use does not require a use that discloses the invention to the public); *see also* Dkt. 164, discussion at Section III.

MIT's factual assertions regarding what the 50 drivers were exposed to are neither material nor relevant. What matters is that just one of the 50 drivers used the Back Seat Driver in its natural and intended way. *See American Ceramicraft, Inc. v. Eisenbraun Reiss Inc.*, Case No. 92-2851, 1993 WL 498863, at *14 n. 14 (D.N.J. June 16, 1993) ("the invention need only be used 'in its natural and intended way.' That is, as long as the public use is natural, it need not disclose all the elements of every claim.") (internal citations omitted) (Dkt. 165, Ex. 42); *see also Hall v. Macneale*, 107 U.S. 90, 97 (1883) (safe mechanism held in public use although not visible); *Egbert v. Lippman*, 104 U.S. 333, 336 (1881) (found public use despite invention's concealment in corset). MIT admits that all 50 drivers did. Objection at 5-6; PF ¶ 30.

C.    **Federal Circuit Law Dictates That MIT's Admission of Reduction to Practice Ends Experimentation.**

None of the 50 public uses qualify as "experimental" because MIT unequivocally admitted that claims 1, 42 and 45 were reduced to practice in the Back Seat Driver prototype that the 50 members of the public used. *See* discussion *supra* at 2 (citing R&R at 2); *see also* Dkt. 164, discussion at Section I; *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998) ("[E]xperimental use, which means perfecting or completing an invention to the point of determining that it will work for its intended purpose, *ends with an actual reduction to practice*."); *New Railhead*, 298 F.3d at 1297-98 (emphasis added, internal citations omitted); *see also In re Cygnus Telecomms.*

*Tech., LLC, Patent Litig.*, 481 F. Supp. 2d 1029, 1052 (N.D. Cal. 2007) (post-*Invitrogen* case holding that admission of reduction to practice "cut[s] off the ability to claim any experimental use."). MIT conceded reduction to practice again during oral argument on November 16, 2007. *See* Hearing at 39:44-53 (Counsel for MIT stating "...so its reduced to practice in that it is operatable ... it is able to operate...its reduced to practice ...").

Nothing in *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361 (Fed. Cir. 2008) changed the long-standing principle that "experimental use ... ends with an actual reduction to practice." *See* R&R at 33 (citing Dkt. 166); *see also New Railhead*, 298 F.3d at 1297-98. Even the *Atlanta Attachment* concurrence that MIT cites acknowledges that the Federal Circuit "following pre-*Pfaff* decisions, has stated on several occasions, post-*Pfaff,* that the experimental use doctrine cannot provide an exception to the on-sale bar once an invention is reduced to practice." *Atlanta Attachment*, 516 F.3d at 1368 (Prost, S., concurring). Judge Dein correctly stated that "post *Invitrogen* cases continue to hold that reduction to practice 'cut[s] off the ability to claim any experimental use.'" R&R at 33. Accordingly, she properly concluded as a matter of law that "the field trials cannot be considered experimentation" and that experimentation favored invalidating public use. R&R at 2, 8-9, 31-33; 33, n. 15.

## II.    *MOLECULON* AND *TP LABS.*, TWO FACTUALLY DISTINCT PRE-*PFAFF* CASES, COMPORT WITH AN INVALIDITY RULING

MIT claims that Judge Dein's decision is irreconcilable with the Federal Circuit's pre-*Pfaff* decisions in *Moleculon* and *TP Labs*, repeating arguments Judge Dein already considered and rejected. To be sure, even though those cases may not be good law after *Pfaff*[4], Judge Dein correctly distinguished the present case. The *Moleculon* inventor "at all times retained control

---

[4]    *See Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1379 (Fed. Cir. 2005) ("Following the Court's guidance in *Pfaff*, [the Federal Circuit] rejected the totality of the circumstances test in the context of statutory bar disputes.")

over its use *as well as over the distribution of information concerning it.*" whereas MIT "fail[ed] to impose any obligation of confidentiality on the distribution of information about the Back Seat Driver. R&R at 36-37 (citing *Moleculon*, 793 F.2d at 1265 (emphasis added); *see also Netscape*, 295 F.3d at 1322 (distinguishing *Moleculon* as relying on inventor's control over dissemination of information); *accord Beachcombers*, 31 F.3d at 1160. Unlike the inherent "pledge of confidentiality" in *TP Labs.*, "numerous [Back Seat Driver] field trials [were] unencumbered by *any* confidentiality obligation" and "most, if not all, of the participants in the field trials were under *no express or implied duty* to keep the information confidential..." R&R at 3, 38 (emphasis added); *TP Labs.*, 724 F.2d at 972.

"[W]hether the relationship between an MIT graduate student and research scientist, on the one hand, and undergraduate test subjects involved in experimentation on the other hand, is of the nature which would lead those test subjects to believe that the invention they were testing was in the public domain," as MIT argues now, makes no difference. Objection at 14. MIT cannot identify the 50 members of the public who used the Back Seat Driver before the critical date. R&R at 14; *see also* Hearing at 49:10-17. It is undisputed that some of the 50 users were *not* undergraduate students (R&R at 14, citing DF ¶ 7; PR ¶ 7) and thus were not "undergraduate test subjects involved in experimentation." Moreover, MIT admitted that not even the undergraduate students "were in any way prohibited from disclosing what they were doing." Hearing at 47:20-44. Rather than *Moleculon* and *TP Labs*, the closer precedential case perhaps is *Beachcombers,* 31 F.3d at 1159-60 (demonstration by inventor for the purpose of obtaining feedback, without any effort to keep information confidential constituted public use).

## III.    PUBLIC POLICY FURTHER SUPPORTS AN INVALIDITY RULING

Despite MIT's contrary claims, the R&R is rooted in and furthers the policies underlying the public use bar. Judge Dein's public accessibility determination supports a justified

expectation in the public that the inventions of claims 1, 42 and 45 were available to the public. *See e.g.* discussion at Section I.A *supra*.    Furthermore, policies "favor[ing] prompt and widespread disclosure of inventions" and "prohibit[ing] an extension of the period for exploiting the invention" favor prompt filing of patent applications.    MIT could have avoided invalidation by timely filing its patent application.    MIT had knowledge of all of the facts Magistrate Judge Dein cited *before* MIT filed its patent application.    Yet, MIT knowingly elected not to seek a patent protection within the statutory one year period.    MIT cannot now be heard to complain that its decision not to timely file its patent following such public use comports with the statute and the underlying policies.

## IV.    CONCLUSION

For these reasons, Harman respectfully requests that this Court adopt the Honorable Magistrate Judge's March 26, 2008 Report and Recommendation as it relates to Harman's Motion for Summary Judgment that Claims 1, 42 and 45 of the '685 Patent are Invalid under 35 U.S.C. §102 (b) Due To Public Use.

Date:  May 2, 2008                         Respectfully submitted,


                                           /s/ Courtney A. Clark
                                           Robert J. Muldoon, Jr., BBO# 359480
                                           Courtney A. Clark, BBO# 651381
                                           SHERIN AND LODGEN, LLP
                                           101 Federal Street
                                           Boston, MA  02110

                                           William A. Streff Jr., P.C.
                                           Michelle A.H. Francis
                                           Craig D. Leavell
                                           Jamal M. Edwards
                                           Colleen M. Garlington
                                           KIRKLAND & ELLIS LLP
                                           200 East Randolph Drive
                                           Chicago, Illinois 60601
                                           (312) 861-2000 (phone)
                                           (312) 861-2200 (fax)

                                           *Attorneys for Defendant*
                                           *Harman International Industries, Incorporated*


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on May 2, 2008.

                         /s/ Courtney A. Clark
                         Courtney A. Clark


11

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **MASSACHUSETTS INSTITUTE OF TECHNOLOGY** | ) ) ) ) | |
| **Plaintiff,** | ) ) ) | |
| **v.** | ) ) | Civil Action No. 05-10990-DPW |
| **HARMAN INTERNATIONAL INDUSTRIES, INCORPORATED,** | ) ) ) ) | |
| **Defendant.** | ) ) ) | |

**AFFIDAVIT OF COLLEEN M. GARLINGTON, ESQ. IN SUPPORT OF HARMAN'S
RESPONSE TO MIT'S OBJECTIONS TO THE REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AS TO INVALIDITY**

I, Colleen M. Garlington, hereby depose and state as follows:

1.      I am an attorney duly licensed to practice in the State of Illinois and have been admitted *pro hac vice* in the District of Massachusetts in this action.  My firm, Kirkland & Ellis LLP, represents Defendant Harman International Industries, Inc. ("Harman") in this action.  I make this affidavit based on my personal knowledge.

2.      On November 16, 2007, the parties argued *Harman's Motion for Summary Judgment That Claims 1, 42 and 45 Of The '685 Patent Are Invalid Under 35 U.S.C. § 102(b) Due To Public Use* and the Massachusetts Institute of Technology's cross-motion before Magistrate Judge Dein (the "Hearing").

3.      Following the Hearing, Harman obtained an audio recording of the Hearing.

4.      In addition, I requested a transcript of the Hearing, but despite my best efforts, a transcript is not yet available.

5.      Portions of the hearing have been cited in *Harman's Response to MIT's Objections to the Report and Recommendation on Cross-Motions for Summary Judgment as to Invalidity* (the "*Response*"), which this affidavit supports.  These citations are based on careful listening to the audio recording of the Hearing.

6.      Harman intends to file an amended version of the *Response* incorporating citations to the transcript of the Hearing after the transcript is made available.

Colleen M. Garlington, Esq.