# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

Jamal M. Edwards
To Call Writer Directly:
(312) 861-3143
jedwards@kirkland.com

(312) 861-2000

www.kirkland.com

Facsimile:
(312) 861-2200
Dir. Fax: (312) 660-0616

July 10, 2008

**VIA ELECTRONIC FILING**

Hon. Douglas P. Woodlock
U.S. District Court for the District of
Massachusetts
Moakely U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210

Re:    Case No. 05-10990-DPW, *Mass. Inst. of Tech. v. Harman Int'l Indus. Inc.*,

Dear Judge Woodlock:

This letter responds to your request for supplemental briefing regarding the appropriate evidentiary burden to be applied to the facts of this case and, more particularly, whether that evidentiary burden adversely impacts Judge Dein's recommendation that this Court grant summary judgment for Harman on the issue of MIT's prior public use. For the reasons set forth herein, and in our briefs and Judge Dein's Report & Recommendation, Harman respectfully submits it is entitled to summary judgment because the "clear and convincing" standard applies to disputed facts and, here, all of the material facts are conclusively established by admission or MIT's failure to dispute them. Alternatively, weighing the evidence of public use is not necessary because no reasonable juror could find that Harman has not proven the materials facts by clear and convincing evidence. In either case, Harman is entitled to judgment as a matter of law.

The invalidity case law demonstrates that only "the ***disputed facts*** underlying the legal conclusion must be established by clear and convincing evidence, not the ultimate legal conclusion [] itself." *See e.g. Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 767 (Fed. Cir. 1988) (internal citations omitted; emphasis added). In other words, because "[q]uantums of proof relate to proof of facts, not legal conclusions,"*id.*, "the evidentiary burden to show ***facts*** supporting a conclusion of invalidity is one of clear and convincing evidence." *Liebel-Flarsheim Co. v. Medrad Inc.*, 481 F.3d 1371, 1377 (Fed. Cir. 2007) (emphasis added); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005) (invalidity "requires a showing of ***facts*** proved by clear and convincing evidence") (emphasis added).

# KIRKLAND & ELLIS LLP

Hon. Douglas P. Woodlock
July 10, 2008
Page 2

"The clear and convincing standard is an intermediate standard which lies somewhere between the 'beyond a reasonable doubt' and the 'preponderance of the evidence' standards of proof. Although an exact definition is elusive, 'clear and convincing evidence' has been described as evidence that 'place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable.'" *Pfizer, Inc. v. Apotex. Inc.*, 480 F.3d 1348, 1359, n. 5 (Fed. Cir. 2007) (internal citations omitted). That the "clear and convincing" burden applies to facts and not questions of law is demonstrated by this Court's jury instructions. In *Conhesive Techn., Inc. v Waters Corp*, No. 98-12308-DPW (11/27/2001, Dkt. No. 274 ) this Court instructed the jury, as follows:

> Clear and convincing evidence is the ***kind of evidence*** and the kind of persuasion that produces in your mind a firm belief as to the truth of the contention at issue so that you are satisfied that the contention is highly probable. (emphasis added).

Similarly, Judge Zobel of this Court explained in *CytoLogix Corp. v. Ventana Medical Systems, Inc.,* Case Nos. 00-12231; 01-10178; (August 16, 2007) that:

> Now, we have also talked about the fact that the plaintiff, CytoLogix, has to prove the facts that are essential to proving its claims. We call that the burden of proof. And in most civil cases, and it is certainly true in this case, the party who makes a claim then has to prove the facts necessary to sustain that claim. The burden of proof on plaintiff in this case is what we call a preponderance of the evidence. That simply means that the plaintiff has to ***prove every fact essential to its claim***, or to any claim in its case, to be more likely true than not. That's all it means. (emphasis added).

Also, District of Delaware Uniform Jury Instruction for Patent Cases, No. 1.3 (2004), states:

> Defendant has the burden to prove that any patent is not valid by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the ***truth of a fact*** is highly probable. (emphasis added).

Ultimately, if the underlying material facts are undisputed or admitted, the issue is a question of law that requires no burden-weighing. *See e.g. New Railhead Mfg., LLC v. Vermeer Mfg. Co.*, 298 F.3d 1290 (Fed. Cir. 2002) (finding public use based on admissions and "undisputed and indisputable facts" and thus not discussing the evidentiary weight). Here, the material facts supporting Harman's motion are undisputed and, in many cases, admitted. That means that Harman has "conclusively established" (*i.e.*, beyond clearly and convincingly, and

# KIRKLAND & ELLIS LLP

Hon. Douglas P. Woodlock
July 10, 2008
Page 3


beyond any doubt) the material facts. *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1338 (Fed. Cir. 2005) (relying on undisputed facts as "conclusively establish[ed]" to affirm 102(b) invalidity of a patent); *Solivellas v. Nat'l. City Bank of N.Y.*, 182 F.2d 585, 587 (1st Cir. 1950) (finding "the admitted facts conclusively establish[ed]").

All that remains is a legal conclusion based on the conclusively established facts. Here, "it is undisputed 'that *after* the critical date, 50 members of the public … used the Back Seat Driver for its intended purpose on the public streets of Boston, without any confidentiality obligation.'" R&R at 30-31. During the July 2, 2008 hearing, MIT agreed. *See also* Pl. Obj. at 1 ("The Magistrate Judge's statement of underlying facts is generally fair and uncontroversial…"). Judge Dein, thus, determined, as a matter of law, that those undisputed, material facts constitute an invalidating public use: "Harman asserts that it is entitled to summary judgment because it is undisputed 'that *after* the critical date, 50 members of the public … used the Back Seat Driver for its intended purpose on the public streets of Boston, without any confidentiality obligation.'… This court agrees." R&R at 24-27, 30-31.

Once a *prima facie* case of public use before the critical date has been made, the patent owner must come forward with clear and convincing evidence to counter that showing. *U.S. Envtl. Prods., Inc. v. Westall*, 911 F.2d 713, 716 (Fed. Cir. 1990); *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1535 (Fed. Cir. 1984). Yet, even if a material fact is disputed, but the record as a whole "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 578 (1986); *see also Zenith Elecs. Corp. v. PDI Commc'n. Sys., Inc.*, 522 F.3d 1348, 1359 (Fed. Cir. 2008) (finding the district court "properly considered [elements of factual statements not objected to] undisputed" and therefore established); *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000) (patentee's admission (in the form of allegation of infringement) satisfied the patent challengers' burden of showing that the device offered for sale embodied the claims).

To the extent the Court believes there are any disputed *material* facts, there is no need to weigh the evidence because no reasonable juror could conclude other than that Harman clearly and convincingly established the requisite facts. MIT has not "'produce[d] [convincing] evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it." *Ayala-Gerena v. Bristol Myers-Squibb Co.*, 95 F.3d 86, 94 (1st Cir. 1996); *see also Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425 (Fed. Cir. 1996) ("On summary judgment, once an alleged infringer presents facts sufficient to establish a *prima facie* case of public use, it falls to the patent owner to come forward with some [convincing] evidence raising a genuine issue of material fact to the contrary."). Because MIT "cannot produce such evidence, the motion must be granted." *Ayala-Gerena,* 95 F.3d at 94. As Judge Dein stated:

# KIRKLAND & ELLIS LLP

Hon. Douglas P. Woodlock
July 10, 2008
Page 4

> Harman has established by clear and convincing evidence that most, if not all, of the participants in the field trials were under no express or implied duty to keep the information confidential and that the field trials involved the use of the claimed invention 'by a person other than the inventor who [was] under no limitation, restriction or obligation of secrecy to the inventor' more than one year prior to MIT's application.

R&R at 2-3.

So, MIT argued during the July 2, 2008 hearing that the field trials were not invalidating because they either were (i) not enabling; (ii) were "experimental" (although admittedly not "experimental use"); or (iii) because MIT placed some tenuous limitation or restriction on the test drivers by virtue of the inventor's silent presence in the back seat of the car, thus, implying some degree of restriction.  Not only are MIT's claims unsupported, they are immaterial and thus not germane to this Court's legal analysis.

*First,* MIT's argument that the public field trials were not enabling is irrelevant to the public use inquiry and thus cannot create a genuine issue of ***material*** fact.  *See e.g.* P. Opp. at 7; PF ¶ 27, 28, 30.  A public use need not be enabling—the user need not understand how the invention works—to be invalidating.  *See e.g. Zenith*, 522 F.3d at 1356 (emphasis added, internal citations omitted) (affirming district court's grant of summary judgment and noting "[c]ontrary to Zenith's arguments, however, we note that the ***public use itself need not be enabling.***  Rather we must simply determine whether the public use related to a device that embodied the invention.")[1]  Here, the clear and convincing evidence confirms that: (i) the field trials utilized a prototype that embodied the claims at issue, (ii) each of those claims was "reduced-to-practice;" and (iii) the drivers used the navigation system in its natural and intended way, is undisputed. R&R at 8-14, 31-33, 34-35; *see also* DF ¶¶ 10-11, 18-24, 28-31, 35-37; PR ¶¶ 10-11, 18-24, 28-31, 35-37; D. Rep ¶¶ 10-11, 18-24, 28-31, 35-37; Def. Ex. 3 at Rog. 14; Def. Ex. 7 at 24; Def. Ex. 18 at Rog. 14; Pl. Ex. 19 at Rog. 14; Pl. Opp. at 6-7; MF 30; DR 30.

---

[1]  Similarly incorrect are MIT's allegations of implicit confidentiality between an MIT graduate student/faculty researcher and undergraduate test subjects (*See* DR ¶42, in which MIT notes that those allowed to use the inventions included other categories of users, including Davis' now-wife).  R&R at 2-3 (finding MIT "took no steps to limit or control the dissemination of information about the invention," and finding "no express or duty" to keep that information confidential) Furthermore, this alleged duty is irrelevant as no more than 14 were MIT student experimental subjects.

# KIRKLAND & ELLIS LLP

Hon. Douglas P. Woodlock
July 10, 2008
Page 5

*Second*, MIT's attempt to create an issue of fact as to experimentation is equally misplaced. "Experimental use is a question of law." *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1426 (Fed. Cir. 1996). "[E]xperimental use, which means perfecting or completing an invention to the point of determining it will work for its intended purpose, ends with an actual reduction to practice." *See e.g., New Railhead Mfg. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297-98 (Fed. Cir. 2002).

"MIT has unequivocally admitted that claim 1 was reduced to practice by the prototype used in the field trials, and the undisputed facts further establish that the depended claims 42 and 45 were reduced to practice by that prototype as well." R&R at 2. As a matter of law, there can be no experimental use *after* an actual reduction to practice. Reduction to practice only occurs when the inventor has constructed an embodiment that meets all the limitations of the claimed invention and has determined that the invention works for its intended purpose. *Taskett v. Dentlinger*, 344 F.3d 1337, 1340 (Fed. Cir. 2003). Once that has occurred, the statute requires that he file for patent within one year of any public use of that invention.

Neither *Invitrogen* nor *Atlanta Attachment* changes this. Indeed, *Invitrogen,* citing *EZ Dock*, confirms that there is an the overlap of evidence relevant to experimentation and ready for patenting. In *EZ Dock,* the Federal Circuit noted that both experimentation and reduction to practice involve proof that an invention will work for its intended purpose. *See EZ Dock v. Schafer Systems, Inc.*, 276 F.3d 1347, 1352 (Fed. Cir. 2002) (citing *Gould Inc. v. United States*, 579 F.3d 571, 583 (Ct. Cl. 1978) (in which the court noted "the legal definition of the date of reduction to practice appears to equate it precisely with the end of the experimental period for the purpose of §102(b)")). Similarly, the opinion of the Court in *Atlanta Attachment* confirms that the Federal Circuit is "interested only in the actions of [the inventor] in determining whether the machine was ***suitable to the purpose of the invention***." *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1366 (Fed. Cir. 2008) (emphasis added). Further*,* although the concurring opinion questions the rule, both judges expressly acknowledged that Federal Circuit precedent holds "that the experimental use doctrine cannot provide an exception to the on-sale bar once an invention is reduced to practice." *Id.* at 1368 (Prost, J., concurring). Neither *Invitrogen n*or *Atlanta Attachment* created a new or additional experimentation factor. *See Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1366 (Fed. Cir. 2008) (emphasis added) (finding patentee's evidence of experimentation immaterial to its analysis of the first prong because "Atlanta Attachment was not experimenting within the contemplation of the experimental use doctrine.") *Atlanta Attachment* is an offer for sale case, and makes clear that evidence of experimentation relevant to this Court's determination of the first *Pfaff* prong, remains confined to the experimental use doctrine. *See id.* (analyzing the first prong of the on-sale bar and finding irrelevant evidence of experimentation that "does not fall within the

# KIRKLAND & ELLIS LLP

Hon. Douglas P. Woodlock
July 10, 2008
Page 6

experimental use exception" stating "we are interested only in actions of *Atlanta Attachment* [] in determining whether the machine was suitable to the purpose of the invention").

Ready-for-patenting and reduction-to-practice are different concepts. The ready for patenting condition "'may be satisfied in at least two ways: by proof of reduction to practice before the critical date; or by proof that prior to the critical date the inventor had prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention.'" *Netscape*, 295 F.3d 1315, 1323 (Fed. Cir. 2002) (citing *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998)). Thus, an invention can be ready for patenting, but not reduced to practice. The converse, however, is not true. Where the inventor has only prepared such descriptions of the invention, but he has not yet constructed an embodiment that was determined by him to work for its intended purpose (*i.e.*, the invention is ready-for-patenting, but not reduced to practice), experimental use can still occur and operate to avoid a statutory bar under § 102(b). That is because, the inventor may conduct experiments to determine whether the invention works "for its intended purposes." When an invention has been reduced to practice, however, the inventor already has performed sufficient experiments to know that it "works for its intended purpose." Where claimed experimentation is not directed at determining if the invention will work for its intended purpose (*i.e.*, toward a reduction to practice), but instead at "further refinement" or "consumer reaction," *after reduction to practice*, such uses are not excused as experimental. *See e.g. Baxter Int'l., Inc. v. Cobe Labs., Inc.*, 88 F.3d 1054, 1059-60 (Fed. Cir. 1996) (use of reduced-to-practice centrifuge covered by patent by other researcher more than one year before patent application was "public use" for purposes of public use bar, and not experimental). This is why evidence of experimentation is relevant when an invention is merely ready for patenting  (in the sense that detailed drawings are finished and/or a prototype exists but has not yet been reduced to practice), but is not relevant *after* the invention has been reduced to practice.

MIT thus could not have been experimenting with the reduced-to-practice, claimed features of claims 1, 42 and/or 45 of the patent, which are the only claims and features at issue in this case. R&R at 2, 9-14, Def. Ex. 18 at Rog. 14; Def. Ex. 19 at Rog. 14. The Federal Circuit "has limited experimentation sufficient to negate a pre-critical date public use or commercial sale to cases where the testing was performed to perfect claimed features…." *Electromotive Div. of GM Corp. v. Transp. Sys. Div. of GE*, 417 F.3d 1203, 1211 (Fed. Cir. 2005) (invalidating as on-

# KIRKLAND & ELLIS LLP

Hon. Douglas P. Woodlock
July 10, 2008
Page 7

sale because uses of alleged spare compressor bearings to customer was not primarily for experimentation).[2]

Further, as discussed above, Harman has made its *prima facie* case and MIT has come forward with no convincing evidence to dispute it.  There are no records pertaining to any of the 50 field trials or who the drivers were, except for NEC's Rittmueller, who had a commercial interest, and Davis' "now-wife"[3] who wasn't under any confidentiality obligation.  DF ¶7; PR ¶7; R&R at 3.  Nor are there any academic or personnel records for either of the inventors showing what they did, when they did it, or with whom.  Notwithstanding MIT's complete failure to preserve and produce any evidence concerning the field trials, and in contrast to the undisputed evidence, MIT and the inventors now oppose Harman's motion relying solely on the subjective and litigation-inspired declarations of the inventors.  But an inventor's testimony cannot not raise a genuine issue of material fact here.  "[C]ertain things are settled. Significantly, an inventor's subjective intent to experiment cannot establish that his activities are, in fact, experimental."  *Electromotive Div. of GM Corp. v. Transp. Sys. Div. of GE*, 417 F.3d 1203, 1212 (Fed. Cir. 2005).  Regardless, it is undisputed that only 14 of the 50 drivers were test subjects, leaving 36 others—particularly one commercially motivated and admittedly "not a test subject" NEC representative, and Davis' then-romantic interest, as two examples of non-experimental public uses.

*Finally*, MIT's new arguments, made for the first time at the July 2nd hearing, that it placed either a "limitation" or "restriction" on the test drivers are also easily dispatched because neither is supported by any evidence.[4]  It is undisputed that none of the drivers signed a

---

[2]    Moreover, each claim of the patent must be considered individually when evaluating a public use bar.  Thus, some claims of a patent may be found to be barred while others are not.  *Allen Eng'g Corp. v. Bartell Indus.*, Inc., 299 F.3d 1336, 1353 (Fed. Cir. 2002); *EZ Dock,* 276 F.3d at 1357; *Lough v. Brunswick*, 86 F.3d 1113, 1122 n.5 (Fed. Cir. 1996).

[3]    As noted above, uses of a reduced to practice invention by the inventor's wife or other romantic interest have long been held to constitute invalidating public uses.  *See e.g.*, *Egbert v. Lippmann,* 104 U.S. 333, 335-38 (1881) (public use where inventor's lady friend wore corset in public).

[4]    *See* D. Rep. at 2. The non-movant may not "rest upon the mere allegations or denials of the adverse party's pleading."  "[T]he adverse party's response … must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  MIT's mere allegations of a factual dispute (such as its unsupported claims of implied confidentiality), without specific facts are insufficient to oppose Harman's motion. FED. R. CIV. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); *Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)* ("Neither party may rely on conclusory allegations or unsubstantiated denials,

(Continued…)

# KIRKLAND & ELLIS LLP

Hon. Douglas P. Woodlock
July 10, 2008
Page 8

confidentiality agreement.  R&R at 14; DF ¶9; PR ¶¶ 8-9.  MIT took no steps to impose any confidentiality obligation.  R&R at 37.  "Neither Davis nor Schmandt seems to have made 'any discernible effort to inform the [test drivers] of the requirement of confidentiality, or otherwise indicate to them that they would owe [the inventors] a duty of confidentiality."  R&R at 38.  It is undisputed that each time the inventor(s) participated in the field trials, they did not speak, and thus did not place any "restriction [or] limitation" on the drivers.  Pl. Ex. 17; R&R at 16 (discussing Pl. Ex. 17, an unexecuted consent form expressly reserving all of the users rights, making "absolutely no reference to either the need for confidentiality or any obligation to keep information confidential" and stating that "this person will not answer questions while the experiment is in progress, unless [the driver's] safety requires it").  Thus, the clear and convincing evidence shows MIT made no "discernible effort to inform the [test drivers] of the requirement of confidentiality, *or otherwise* indicate to them that they would owe [the inventors] a duty confidentiality."  R&R at 38 (emphasis added).

For the foregoing reasons, Harman respectfully requests that the Court follow the Magistrate's Report and Recommendation and enter summary judgment of invalidity of claims 1, 42 and 45 of the '685 patent under 35 U.S.C. §102(b) due to public use.

* * * *

---

but must identify specific facts deriving from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact.").  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson* 477 U.S. at 266.

# KIRKLAND & ELLIS LLP

Hon. Douglas P. Woodlock
July 10, 2008
Page 9

Respectfully Submitted,

Jamal M. Edwards

Robert J. Muldoon, Jr., BBO# 359480
Courtney A. Clark, BBO# 651381
SHERIN AND LODGEN, LLP
101 Federal Street
Boston, MA  02110
(617) 646-2000

William A. Streff Jr., P.C.
Michelle A.H. Francis
Craig D. Leavell
Jamal M. Edwards
Colleen M. Garlington
(admitted pro hac vice)
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

*Attorneys for Defendant
Harman International Industries,
Incorporated*

cc:    Steven M. Bauer, Esq.
       Jacob K. Baron, Esq.
       Kimberly A. Mottley, Esq.
       John W. Pint, Esq.